1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**HON. JAMAL N. WHITEHEAD**

**UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF WASHINGTON**

**AT SEATTLE**

| | |
|---|---|
| VALVE CORPORATION,<br><br>  Plaintiff,<br><br>  v.<br><br>LEIGH ROTHSCHILD, ROTHSCHILD BROADCAST DISTRIBUTION SYSTEMS, LLC, DISPLAY TECHNOLOGIES, LLC, PATENT ASSET MANAGEMENT, LLC, MEYLER LEGAL, PLLC, AND SAMUEL MEYLER,<br><br>  Defendants. | Case No. 2:23-cv-1016<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Complaint Filed:  07/07/2023 |

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS
CASE NO. 2:23-CV-1016

1

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600)

1

## TABLE OF CONTENTS

2

Page

3    I.    INTRODUCTION ..................................................................................1

4    II.   ARGUMENT ........................................................................................1

5          A.   The GSLA Permits Valve to Challenge the Validity and
                Enforceability of the '221 Patent Because Defendants
6               Asserted the '221 Patent Against Valve..............................................1

7          B.   The Complaint Plausibly Alleges that Defendants Breached
                the GSLA ............................................................................................4
8

9          C.   The Complaint Plausibly Alleges a Violation of Washington's
                Patent Troll Prevention Act...............................................................8

10              1.   Defendants Ask the Court to Improperly Weigh
                     Evidence at the Pleading Stage ................................................8
11

12              2.   Defendants Mischaracterize Valve's Complaint....................9

13         D.   Valve Has Stated a Claim Against the Myler Defendants ...............11

14              1.   The Meyler Defendants Cannot Invoke the Litigation
                     Privilege ..................................................................................11

15              2.   Valve Voluntarily Dismisses Without Prejudice Count
                     V: Conspiracy to Commit Violations of Washington
16                   Patent Troll Prevention Act....................................................15

17         E.   The GSLA Explicitly Authorizes Valve to Seek Damages .............15

18         F.   Should the Court Grant in Full or in Part Defendants' Motion,
                Valve Should Be Granted Leave to Amend......................................17
19

20    III.  CONCLUSION....................................................................................17

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS
CASE NO. 2:23-CV-1016                                - i -

Kilpatrick Townsend & Stockton LLP,
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600)

1

# TABLE OF AUTHORITIES

2

<u>Page(s)</u>

3

4

**Cases**

5

*Asia Vital Components Co. v. Asetek Danmark A/S*,
6
    837 F.3d 1249 (Fed. Cir. 2016) ............................................................................................ 2

7

*Bedrosian v. Tenet Healthcare Corp.*,
    208 F.3d 220 (9th Cir. 2000) ........................................................................................ 2, 16

8

9

*Benitec Australia, Ltd. v. Nucleonics, Inc.*,
    495 F.3d 1340 (Fed. Cir. 2007) ............................................................................................ 4

10

*Demopolis v. Peoples Nat. Bank of Washington*,
11
    59 Wash. App. 105 (1990) ..................................................................................... 13, 14, 15

12

*Dow Jones & Co. v. Ablaise Ltd.*,
    606 F.3d 1338 (Fed. Cir. 2010) ............................................................................................ 4

13

*Engelmohr v. Bache*,
14
    66 Wash. 2d 103 (1965) ..................................................................................................... 13

15

*Gen-Probe Inc. v. Vysis, Inc.*,
16
    359 F.3d 1376 (Fed. Cir. 2004), *abrogated on other grounds by MedImmune,*
    *Inc. v. Genentech, Inc.,* 549 U.S. 118 (2007) ............................................................. 2, 3, 4

17

*Gunn v. Drage*,
18
    65 F.4th 1109 (9th Cir. 2023) .......................................................................................... 9, 15

19

*Hewlett-Packard Co. v. Acceleron LLC*,
    587 F.3d 1358 (Fed. Cir. 2009) ............................................................................................ 2

20

*Iten v. Los Angeles*,
21
    No. 22-55480, 2023 WL 5600292 (9th Cir. Aug. 30, 2023) ............................................. 10

22

*Jones v. L.A. Cent. Plaza LLC*,
23
    74 F.4th 1053 (9th Cir. 2023) ............................................................................................ 10

24

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ................................................................................................ 5

25

*Kurczaba v. Pollock*,
26
    318 Ill. App. 3d 686 (2000) ............................................................................................... 13

27

*Mason v. Mason*,
28
    19 Wash. App. 2d 803, 835 (2021), *review denied*, 199 Wash. 2d 1005 (2022) ................. 12

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS
CASE NO. 2:23-CV-1016                                     - ii -

Kilpatrick Townsend & Stockton LLP,
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600

1

2

**TABLE OF AUTHORITIES**
(continued)

<u>Page</u>

3

4

*Moore v. Smith*,
89 Wash. 2d 932, 578 P.2d 26 (1978)................................................................. 12

5

*Negrel v. Drive N Style Franchisor SPV LLC*,
No. SACV1800583JVSKESX, 2018 WL 6136151 (C.D. Cal. Aug. 27, 2018) .................... 16

6

7

*Olympus Spa v. Armstrong*,
No. 22-CV-00340-BJR, 2023 WL 3818536 (W.D. Wash. June 5, 2023) ............................ 17

8

9

*Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*,
768 F.3d 938 (9th Cir. 2014)................................................................. 5, 6, 8, 15

10

*Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*,
858 F.3d 1383 (Fed. Cir. 2017)................................................................. 10

11

12

*Scott v. Am. Express Nat'l Bank*,
22 Wash. App. 2d 258, 265, *review denied*, 200 Wash. 2d 1021 (2022)............................ 11

13

14

*Silvas v. E\*Trade Mortg. Corp.*,
514 F.3d 1001 (9th Cir. 2008)................................................................. 5

15

*Story v. Shelter Bay Co.*,
52 Wash. App. 334, 760 P.2d 368 (1988) ........................................................ 12, 13

16

17

*Thomas v. State Farm Mut. Auto. Ins. Co.*,
No. C22-1730-JCC, 2023 WL 2611889 (W.D. Wash. Mar. 23, 2023) ................................... 7

18

19

20

*Ticey v. Fed. Deposit Ins. Corp.*,
No. C22-1110 MJP, 2023 WL 2742055 (W.D. Wash. Mar. 31, 2023),
*reconsideration denied*, No. C22-1110 MJP, 2023 WL 3382506 (W.D. Wash.
May 11, 2023)................................................................. 2

21

22

*US Dominion, Inc. v. My Pillow, Inc.*
2022 WL 774080 (D.C. Cir. Jan. 20, 2022), *cert. denied sub nom. MyPillow, Inc.
v. US Dominion, Inc*., 143 S. Ct. 294 (2022) ...................................................... 14

23

24

*US Dominion, Inc. v. Powell*,
554 F. Supp. 3d 42 (D.D.C. 2021) ................................................................. 14

25

*Wyckoff Farms, Inc. v. Indus. Control Concepts, Inc.*,
No. 4:20-CV-5095-TOR, 2020 WL 13490269 (E.D. Wash. Oct. 27, 2020)........................... 6

26

27

*Young v. Rayan*,
533 P.3d 123 (Wash. Ct. App. 2023) ................................................................. 11

28

1

## TABLE OF AUTHORITIES
(continued)

2

Page

3

**Statutes**

4

California Civil Code § 1668 ............................................................................................ 16

5

RCW 19.350.005............................................................................................................... 12

6

RCW 19.350.010(1)(a)-(d) ............................................................................................... 14

7

RCW 19.350.010(1)(d) ..................................................................................................... 14

8

RCW 19.350.020(2)(f)........................................................................................................ 9

9

RCW 19.350.020(2)(g) ..................................................................................................... 11

10

**Other Authorities**

11

Fed. R. Civ. Proc.  12 ....................................................................................................... 10

12

Fed. R. Civ. Proc. 12(b)(6).................................................................................... 5, 7, 10

13

Fed. R. Civ. Proc.  56 ....................................................................................................... 10

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## I.     INTRODUCTION

2      Defendants' motion almost entirely ignores the legal standard for a motion to dismiss.

3  Instead of arguing beyond a doubt that Valve's First Amended Complaint ("Complaint," Dkt. 23)

4  contains no set of facts that supports their claims, Defendants focus their motion on disputing

5  Valve's factual allegations and improperly weighing the evidence. Valve's factual allegations in

6  its Complaint, however, must be taken as true. Any factual dispute identified by Defendants

7  confirms that Defendants' motion should be denied and that the case should proceed to discovery.

8      Defendants only arguments appropriate for resolution on the pleadings are based on

9  Defendants' mischaracterization of the Complaint and the 2016 Global Settlement and Licensing

10  Agreement ("GSLA"). When the appropriate legal standards and provisions of the GSLA are

11  applied to the facts contained in Valve's Complaint, each of Defendants' arguments fail. As

12  described below, Valve has continued to comply with the GSLA, despite Defendants' repeated

13  material breaches of the same. While Defendants attempt to recast their bad faith assertion of

14  patent infringement as "clerical errors" or "compliance" with the GSLA, Defendants' motion

15  confirms that they have no intention of policing their own actions. Without Court intervention,

16  Defendants will continue to force Valve to litigate patent infringement lawsuits asserting patents

17  Valve already has a license to.

## II.    ARGUMENT

18

19      ### A.    The GSLA Permits Valve to Challenge the Validity and Enforceability of the '221 Patent Because Defendants Asserted the '221 Patent Against Valve

20

21      Defendants argue that Valve is barred by the GSLA from bringing Counts I and II of

22  unenforceability and invalidity of the '221 Patent. Defendants are incorrect. Counts I and II are

23  allowed under the GSLA. Moreover, Valve has a reasonable apprehension that Defendants will

24  file a lawsuit against Valve for infringement of the '221 Patent—despite the GSLA barring such

25  lawsuits—due to Defendants' explicit threats to do so and Defendants' repeated material breaches

26  of the GSLA. Thus, there is a justiciable case or controversy regarding the invalidity and

27  unenforceability of the '221 Patent.

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS                     - 1 -
CASE NO. 2:23-CV-1016

Kilpatrick Townsend & Stockton LLP,
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600)

*First*, Counts I and II do not violate the GSLA. The GSLA explicitly permits Valve to challenge the validity and unenforceability of the '221 Patent when Defendants assert it against them: "[N]othing in this Paragraph or in this Agreement shall prevent Licensee . . . from asserting that any of the Licensed Patents are invalid, not infringed or unenforceable if the Licensed Patents are asserted against Licensee . . . ." Dkt. 23-1, § 2.3. As alleged in the Complaint, Defendants asserted the '221 Patent against Valve in the June 2023 demand letter. Dkt. 23, ¶¶ 27-33. In that demand letter, Defendants threatened to "file[] . . . their complaints" for patent infringement, attaching "preliminary claim charts" "that have been prepared in anticipation of litigation" and which noted Valve as a "Defendant." Dkt. 23-8. On the face of the Complaint, Valve has plausibly alleged that Defendants asserted[1] the '221 Patent against it. *See, e.g., Asia Vital Components Co. v. Asetek Danmark A/S*, 837 F.3d 1249, 1253-55 (Fed. Cir. 2016) (holding that listing asserted patents in a demand letter that referenced the sender "enforced its IP" was sufficient assertion of patent infringement to confer standing.); *see also Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1362-64 (Fed. Cir. 2009) (holding that twice contacting a target, identifying patents as relating to a target's products, and a target's statement of disagreement is sufficient to confer declaratory judgment jurisdiction). Thus, under Section 2.3 of the GSLA, Valve is permitted to seek a declaration of invalidity and unenforceability of the '221 Patent. And there is a judiciable case or controversy because the June 2023 demand letter is "an explicit threat" by Defendants that "creates a reasonable apprehension on behalf of [Valve] that it will face an infringement suit" based on Valve's "present activity" offering the Steam app. *Gen-Probe Inc. v. Vysis, Inc.*, 359 F.3d 1376 (Fed. Cir. 2004), *abrogated on other grounds by MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007).

---

[1] To the extent that Defendants attempt to argue ambiguity regarding the word "assert," the meaning of ambiguous contract language is inappropriate for review on a motion to dismiss because discovery could uncover extrinsic evidence to resolve that ambiguity. *See Bedrosian v. Tenet Healthcare Corp.*, 208 F.3d 220 (9th Cir. 2000) (holding that resolution of contractual claims on a motion to dismiss is only proper if the terms are unambiguous); *see also Ticey v. Fed. Deposit Ins. Corp.*, No. C22-1110 MJP, 2023 WL 2742055, at *3 (W.D. Wash. Mar. 31, 2023), *reconsideration denied*, No. C22-1110 MJP, 2023 WL 3382506 (W.D. Wash. May 11, 2023) (stating that extrinsic evidence can be used to ascertain the true intentions and agreement of the parties for ambiguous claim language).

1      *Second*, even if Valve's actions were somehow in violation of the GSLA (they are not), the

2  GSLA will only divest the Court of jurisdiction to hear Counts I and II if the parties "have each

3  fulfilled their obligations without material breach." *Gen-Probe,* 359 F.3d at 1381. The Federal

4  Circuit in *Gen-Probe* dismissed the Plaintiff's declaratory judgment claims precisely because

5  without a material breach, "no facts [] have arisen since the [parties'] license to give Gen–Probe a

6  reasonable apprehension of a lawsuit." *Id*. In this case, the particular facts alleged in Valve's

7  Complaint point to ***multiple*** material breaches in the GSLA that placed Valve in "a reasonable

8  apprehension of a lawsuit."

9      Defendants' repeated material breaches of the GSLA prevent Defendants from relying on

10  that agreement to wrest jurisdiction from this Court. In the Complaint, Valve has alleged how

11  Defendant has committed material breaches of the GSLA no less than three times in

12  approximately a year.

13
14  - Defendants' employee, Daniel Falcucci, messaged multiple Valve employees to execute a new, additional license agreement to Defendants' "inventory catalog." Dkt 23, ¶ 15. That inventory catalog included patents already covered under the GSLA. *Id*.

15
16
17
18  - When Valve declined to engage in additional negotiations with Falcucci, Display Technologies disregarded the covenant not to sue and filed a lawsuit accusing Valve of infringing U.S. Patent No. 9,300,723. *Id*., ¶ 20. Valve already had a license to U.S. Patent No. 9,300,723 under the GSLA. *Id*., ¶ 22. Valve was forced to undertake the expense of reviewing the complaint, comparing the asserted patents to the GSLA, and writing opposing counsel to inform them that Valve already had a license. *Id*., ¶ 23; Dkt. 23-6.

19
20
21  - Defendants sent a demand letter in June 2023 threatening to sue Valve for alleged infringement of the '221 Patent, another patent Valve already licensed. *Id*., ¶ 27. The June 2023 demand letter attached claim charts "prepared in anticipation of litigation" and gave Valve nine days to respond before the Defendants would "assume that Valve would prefer to litigate" the '221 Patent. Dkt. 23-8.

22  Defendants have not withdrawn or repudiated any of their demands made in violation of the

23  GSLA, including the ones that led to this present suit. Instead, Defendants doubled down and

24  stated their clear intent to assert counterclaims of infringement of the '221 Patent against Valve in

25  any Answer they file in this case. Dkt. 28, ¶ II.5 (Parties' Joint Status Report).

26      Defendants' June 2023 demand letter was an unambiguous threat to file a patent

27  infringement lawsuit asserting the '221 Patent. Based on Defendants' repeated disregard of their

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS
CASE NO. 2:23-CV-1016

- 3 -

Kilpatrick Townsend & Stockton LLP,
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600)

obligations under the GSLA, Valve had a "reasonable apprehension" that it will be sued for infringing the '221 Patent, despite the fact that Defendants should be barred from doing so. *Gen-Probe*, 359 F.3d at 1380. The existence of the GSLA cannot negate Valve's reasonable apprehension in light of Defendants' repeated material breach of the agreement, including doing the exact same thing in the past that it threatened to do in June 2023: filing a patent infringement lawsuit asserting patents to which Valve is already licensed. Dkt. 23, ¶ 33.

The cases that Defendants cite, *Dow Jones* and *Benitec*, do not support Defendants' position because neither involve breach, much less repeated breaches, of a covenant not to sue. *See Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1345 (Fed. Cir. 2010); *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1347-48 (Fed. Cir. 2007). In *Dow Jones* the parties disputed whether the covenant not to sue covered Dow Jones' affiliates and subsidiaries; there were no allegations regarding Ablaise breaching the covenant by asserting the patent against Dow Jones directly. 606 F.3d at 1348-49. In *Benitec*, the Federal Circuit found no case or controversy because Nucleonics' present activities were not and could not be infringing until Nucleonics filed a new drug application. 495 F.3d at 1346-47. Here, there is no dispute that Defendants accuse Valve's present activities of infringing the '221 Patent. *See, e.g.*, Dkt. 23-8.

Defendants' motion to dismiss Counts I & II should be denied.

## B.  The Complaint Plausibly Alleges that Defendants Breached the GSLA

Defendants' arguments that they did not breach the GSLA rely on self-serving statements contradicting factual allegations in the Complaint. The Court, however, must take as true all of Valve's allegations in the Complaint. It is inappropriate to consider Defendants' new factual assertions outside of the Complaint during a motion to dismiss. Moreover, as explained below, Defendants' new assertions are incorrect or dubious at best.

*First*, regarding Defendants' breach of Section 3.1 of the GSLA, Defendants attempt to contradict Valve's allegations in the Complaint by reframing their demand to "explore a potential resolution to" their allegations of infringement as not "demand[ing] any payment." Dkt. 27 at 13. Yet Valve alleges that "[t]he 'potential resolution' and 'resolution' discussed in the 2023 demand

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS
CASE NO. 2:23-CV-1016

- 4 -

Kilpatrick Townsend & Stockton LLP,
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600)

1   letter send by Meyler on behalf of Rothschild and RBDS is a monetary payment for additional

2   rights to patents to which Valve is already licensed, including the '221 Patent." Dkt. 27, ¶ 71.[2]

3   Valve's factual allegation must be accepted as true. *Retail Prop. Tr. v. United Bhd. of Carpenters*

4   *& Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) ("In reviewing a motion to dismiss pursuant

5   to Rule 12(b)(6), we must accept as true all factual allegations in the complaint."). Defendants'

6   self-serving statements are outside of the pleading and thus inappropriate to consider during a

7   motion to dismiss. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018)

8   ("Generally, district courts may not consider material outside the pleadings when assessing the

9   sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure."). Taken

10  as true, Defendants' demand for monetary payment is a violation of Section 3.1 states of the

11  GSLA, which grants Valve a "perpetual, irrevocable, royalty-free, fully paid-up, worldwide

12  license" and requiring "[n]o royalties or additional payments of any kind . . . in order to maintain

13  this Agreement in force." Dkt. 23-1, § 3.1.

14          *Second*, regarding Defendants' anticipatory breach of Section 3.2 of the GSLA, Defendants

15  argue that Valve has not "alleged facts sufficient to support the claim that RBDS would have sued

16  Plaintiff, or maintained a suit against Plaintiff had one been filed, *once learning that the '221*

17  *patent was subject to the GSLA.*" Dkt. 27 at 13 (emphasis added). Defendants' argument proves

18  the point—Defendants have never been willing to ensure their own compliance with the GSLA.

19  Instead, Defendants place the onus on *Valve* to inform Defendants that Defendants have breached

20  the GSLA. Only then would Defendants act. Moreover, Defendants' subsequent compliance with

21  the GSLA after breaching the agreement does not negate the breach. Defendants' argument does

22  not amount to an assertion that "no set of facts support [Valve's] claim that would entitle [Valve]

23  to relief." *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1004 (9th Cir. 2008). Instead,

24  Defendants' argument that only once Valve had informed them of their breach, they allegedly

25

26  ────────────────────
    [2] It is difficult to fathom what "potential resolutions" would convince non-practicing entities such

27  as Defendants to forego patent infringement claims besides monetary payments. Indeed, since
    2022, Defendants have been seeking more money from Valve for a renegotiated license to

28  Rothschild's patents. Dkt. 23-5.

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS                          - 5 -
CASE NO. 2:23-CV-1016

Kilpatrick Townsend & Stockton LLP,
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600)

1    would have acted differently.[3]

2          On the face of the Complaint, Valve alleged sufficient facts to plausibly support a claim for

3    anticipatory breach. "Under Washington law, an anticipatory breach occurs when a party to a

4    bilateral contract either expressly or impliedly repudiates the contract prior to performance."

5    *Wyckoff Farms, Inc. v. Indus. Control Concepts, Inc.*, No. 4:20-CV-5095-TOR, 2020 WL

6    13490269, at *3 (E.D. Wash. Oct. 27, 2020) (citing *Wallace Real Estate Inv., Inc. v. Groves*, 124

7    Wash. 2d 881, 898 (1994)). Valve alleged, "RBDS made a positive statement indicating distinctly

8    and unequivocally that it would not substantially perform its obligations under the covenant not to

9    sue without receiving additional monetary payment that goes beyond Valve's payment obligations

10   under the [GSLA]." Dkt. 23, ¶ 74; *see also id.*, ¶¶ 27-33, 67-73. Valve described how RBDS

11   expressly repudiated the GSLA by announcing its intention to sue Valve in the June 2023 demand

12   letter. Dkt. 23, ¶¶ 67-71, 73-74. RBDS's intention in the June 2023 was clear: RBDS had created

13   infringement contentions "in anticipation of litigation" and if Valve did not respond to the June

14   2023 demand letter within nine days, the Defendants would understand that "Valve preferred to

15   litigate." Dkt. 23-8; *see also id.* ("[M]y clients are willing to delay the filing of their complaints as

16   long as they feel that Valve is working toward a resolution in good faith."). Yet Valve had already

17   resolved any and all claims related to the '221 Patent by signing the GSLA. Announcing its

18   intention to breach the GSLA by filing a complaint alleging infringement of the '221 Patent within

19   nine days is a clear repudiation of RBDS's obligations under the agreement.

20         *Third*, with regards to Display Technologies breach of the GSLA, Defendants first take

21   issue with the characterization of Mr. Falcucci's correspondence. Valve's allegations, however,

22   are presumed to be true, and any factual dispute should not be resolved at a motion to dismiss.

23   *Retail Prop. Tr.*, 768 F.3d at 945. Moreover, Defendants' assertions that "a demand letter . . . is

24   ────────────────

25   [3] Defendants claim that they would act in good faith once informed of their breach is belied by their actions after the filing of this lawsuit. This lawsuit informed Defendants that the '221 Patent was subject to the GSLA and was being asserted against Valve in bad faith. Instead of withdrawing its
26   June 2023 demand letter or coming into compliance with the GSLA, Defendants filed three retaliatory lawsuits in the Eastern District of Texas with the express intent of driving up Valve's
27   litigation expenses and informed Valve of their intent to bring counterclaims asserting the '221 Patent against Valve. Dkt. 28, ¶ II.5 (Parties' Joint Status Report).
28

Kilpatrick Townsend & Stockton LLP,
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600)

not the same as filing a lawsuit" is irrelevant and does not foreclose Valve's claims as a matter of law. As described above, a demand letter is an "assertion" under the GSLA and thus can be a breach of the GSLA. *Supra* § **Error! Reference source not found.**. Defendants' disputes regarding whether Mr. Falucci's correspondence were a "demand" are fact-intensive issues of contract interpretation that should be subject to discovery and not ripe for adjudication on a motion to dismiss. *Thomas v. State Farm Mut. Auto. Ins. Co*., No. C22-1730-JCC, 2023 WL 2611889, at*2 (W.D. Wash. Mar. 23, 2023) ("[I]t is black letter law that, at this stage, the Court must draw reasonable inferences *in Plaintiff's* favor … By urging the Court to interpret the [contract] in their favor, Defendant would ask the Court to do the opposite, which it cannot do on a Rule 12(b)(6) motion." (citation omitted) (emphasis in original)).

Defendants next assert that Display Technologies was in full compliance with Section 3.5 of the GSLA because, when it was informed by Valve that it filed a lawsuit alleging infringement of a licensed patent, Display Technologies promptly dismissed its lawsuit. As discussed above, however, merely coming ***back*** into compliance with the GSLA does not negate the breach. For this reason alone, Defendants' argument should be rejected.

Moreover, to support Defendants' argument that they allegedly complied with the GSLA, Defendants mislead the Court by selectively quoting Section 3.5 and omitting the key language that confirms that section does not apply to lawsuits against Valve. Dkt. 27 at 14. Section 3.5 states "[i]n the event that Licensor brings a claim under the Licensed Patents against ***any Licensee Third-Party***, or any entity that claims that the alleged infringing conduct arises out of any communication, integration, transaction, cooperation, or contractual obligation ***with or on behalf of Licensee*** . . . ." Dkt. 23-1, § 3.5 (emphasis added). The plain language of Section 3.5 does not apply to suing Valve. Instead, Section 3.5 contemplates only the situation where Defendants inadvertently sue a third party. Section 3.5 does not protect Defendants when they disregard the GSLA and sue Valve itself. Thus, it cannot foreclose Valve's breach of contract claim as a matter of law.

*Fourth*, Defendants' make the dubious claim that when the Meyler Defendants sent the

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS
CASE NO. 2:23-CV-1016

- 7 -

Kilpatrick Townsend & Stockton LLP,
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600)

1  June 2023 Demand Letter to Valve, it was "[u]nbeknownst to" them that the '221 Patent was

2  covered under the GSLA. Dkt. 27, at 7. Valve alleged that the Meyler Defendants were aware of

3  the terms of the GSLA when they sent the June 2023 demand letter to Valve. *Id.*, ¶ 30. These

4  allegations must be taken as true and cannot be contradicted in Defendants' motion with

5  unsupported attorney argument. *Retail Prop. Tr.*, 768 F.3d at 945. Moreover, Defendants' self-

6  serving statement is belied by the simple fact that the '221 Patent is identified on the face of the

7  GSLA as a licensed patent. Dkt. 23-1 at 19. The Meyler Defendants represented the other

8  Defendants for over a year (Dkt. 23, ¶¶ 21-28) and during that time were send a copy of the GSLA

9  by Valve twice, in October and December 2022 (*id.*, ¶ 23). If the Meyler Defendants did not know

10 that the '221 Patent was covered under the GSLA, the only reasonable conclusion based on the

11 allegations in the Complaint is that the Meyler Defendants did not review the GSLA prior to

12 sending the June 2023 demand letter and thus violated at least Washington Rule of Professional

13 Conduct 2.1. *C.f. id.*, ¶¶ 31-32.

14 　　Because Valve plausibly alleged actual and anticipatory breach of contract against both

15 RBDS and Display Technologies, Valve's allegations against Leigh Rothschild are also sufficient.

16 　　The Court cannot credit Defendants' self-serving statements made for the first time in its

17 motion to dismiss over Plaintiff's well-pleaded allegations in its Complaint. Therefore,

18 Defendants' motion to dismiss Count III should be denied.

19 　　**C.　　The Complaint Plausibly Alleges a Violation of Washington's Patent Troll Prevention Act**

20

21 　　　　**1.　　**Defendants Ask the Court to Improperly Weigh Evidence at the Pleading Stage

22 　　Defendants' arguments for dismissal of Count IV amount to nothing more than a request to

23 have the Court weigh evidence, which is inappropriate at this stage in the case. *See, e.g.*, Dkt. 27 at

24 16 ("When all of the factors showing good faith are ***properly weighed***, the only reasonable

25 conclusion that can be drawn is that Defendants' assertion of infringement of the '221 patent was

26 made in good faith." (emphasis added)). At this stage in the case, however, the Court must accept

27 Valve's allegations as true. Any weighing of factors is only appropriate after discovery.

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS
CASE NO. 2:23-CV-1016

- 8 -

Kilpatrick Townsend & Stockton LLP,
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600)

1   *See, e.g., Gunn v. Drage*, 65 F.4th 1109, 1120 (9th Cir. 2023) ("[W]here a defendant

2   asserts "a factual challenge," courts must treat the motion to strike as "a motion for summary

3   judgment," triggering discovery."). It is inappropriate to weigh Defendants' bad faith actions

4   against any good faith actions (which are nowhere to be found in Valve's complaint) at the

5   pleading stage.

6   Moreover, Defendants argue that because Valve failed to address the "good-faith" factors

7   at all, it has not pleaded a claim upon which relief can be granted. No court has held that such

8   factors must be mentioned in the complaint to plausibly plead a claim for violation of the Patent

9   Troll Prevention Act. Nor have Defendants adduced any reason "good-faith" factors would be

10   required. Defendants' unsupported argument should be rejected.

11   2.   Defendants Mischaracterize Valve's Complaint

12   In addition to their request to improperly weigh the enumerated factors of the Patent Troll

13   Prevention Act, Defendants repeatedly mischaracterize the allegations made in Valve's complaint

14   in an attempt to distance themselves from their repeated bad-faith threats against Valve.

15   *First*, Defendants allege that they cannot meet RCW 19.350.020(2)(f) because "[a]s

16   conceded in the FAC . . . no court has ever found Defendant's assertions of infringement to be

17   without merit or containing false, misleading, or deceptive information." Dkt. 27 at 15. Valve did

18   not so concede. Valve only noted that Defendants' assertions *of the '221 Patent* had not yet been

19   found to be meritless, due to Defendants' litigation strategy of avoiding any substantive decisions

20   on the merits of its allegations. The Complaint sets forth facts that confirm that "courts have found

21   that patent claims made by other Rothschild-controlled entities are without merit" and one court

22   "found [Rothschild's assertions of patent infringement] to be so lacking in merit that it awarded

23   fees to the opposing party." Dkt. 23, ¶ 89(b); Dkt. 23-3 at 3 ("And Rothschild has been hit with fee

24   awards for filing objectively baseless lawsuits against defendants who clearly did not infringe his

25   patents."). RCW 19.350.020(2)(f) considers not just the actions of Defendants but their

26   subsidiaries and affiliates. Valve's allegations that claims made by Rothschild's subsidiaries and

27   affiliates have been found meritless must be taken as true and are relevant under Factor (f). *See,*

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS                                    - 9 -
CASE NO. 2:23-CV-1016

Kilpatrick Townsend & Stockton LLP,
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600)

*e.g.*, *Iten v. Los Angeles*, No. 22-55480, 2023 WL 5600292, at *3 (9th Cir. Aug. 30, 2023) ("We assume all [Plaintiff's] allegations to be true and draw all reasonable inferences in his favor.").

Defendants also assert, without analysis or support, that a case involving a different Rothschild entity and different patent is *per se* not "based on the same or substantially equivalent assertion of patent infringement." Dkt. 27 at 15. Such analysis, however, can only be performed once discovery into the full scope of Defendants' affiliates' and subsidiaries' meritless assertions of infringement is complete. Without the benefit of discovery, it is improper to determine whether such meritless assertions are "the same or substantially equivalent assertion of patent infringement" to Defendants' assertion of the '221 Patent. Valve's allegations that lawsuits filed by Rothschild affiliates and subsidiaries have been found without merit are relevant to a determination of whether a violation of the Patent Troll Prevention Act has occurred. Valve's allegations are plausible on their face and will be further refined as Valve seeks discovery into Defendants' "pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims." *Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*, 858 F.3d 1383, 1390 (Fed. Cir. 2017).

*Second*, Defendants attempt to recast Mr. Meyler's June 2023 Demand letter as a "clerical error" rather than a bad-faith assertion of patent infringement. Again, Defendants assertions are self-serving, unsupported by evidence, and mischaracterize the allegations in the complaint. *See, e.g.*, Dkt. 23, ¶¶ 82, 87-90. Valve's allegations of bad faith must be taken as true. *See, e.g.*, *Iten*, 2023 WL 5600292, at *3. Nor can the Court consider Defendants' assertions extrinsic to the Complaint. *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1059 (9th Cir. 2023) ("[W]hen presented with 'matters outside the pleadings' in connection with a motion to dismiss for failure to state a claim under Rule 12(b)(6) . . . , the district court may choose to exclude such extrinsic matters and address the motion under the applicable Rule 12 standards, or it may convert the motion into "one for summary judgment under Rule 56.").

Valve has alleged that Mr. Meyler knew of the GSLA prior to sending the June 2023

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS
CASE NO. 2:23-CV-1016

- 10 -

Kilpatrick Townsend & Stockton LLP,
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600)

1   Demand Letter, and that he was sent a copy of the GSLA by Valve. Dkt. 23, ¶ 89(c). Valve also

2   alleged that Mr. Meyler's twice-repeated tactic of seeking additional money for a license to a

3   patent already covered by the GSLA amounts to bad faith assertion of patent infringement. Dkt.

4   23, ¶¶ 89-90. Accepted as true, these well-pled allegations are evidence of bad-faith patent

5   infringement under RCW 19.350.020(2)(g) and are sufficient to "state a claim to relief that is

6   plausible on its face." *Ashcroft*, 556 U.S. at 678.

7           In sum, none of Defendants' arguments regarding the Patent Troll Prevention Act go to the

8   sufficiency of Valve's allegations or allege that Valve is legally barred from seeking relief under

9   the Patent Troll Prevention Act. Instead, Defendants attempt to contradict factual allegations in the

10  Complaint, identify factual disputes that are best explored during discovery, and ask the Court to

11  weigh factors based on a completely undeveloped record. These arguments are insufficient to

12  overcome Valve's factual allegations in the Complaint, taken as true.

13          Defendants' motion to dismiss Count IV should be denied.

14  **D.      Valve Has Stated a Claim Against the Myler Defendants**

15          1.      <u>The Meyler Defendants Cannot Invoke the Litigation Privilege</u>

16          The litigation privilege cannot provide the Meyler Defendants absolute immunity from

17  abuse of the legal system as contemplated in the Patent Troll Prevention Act. Doing so would

18  violate the public policy considerations underlying the privilege and undermine the integrity of the

19  judicial process. Further, the litigation privilege does not apply to Valve's allegations against the

20  Meyler Defendants because they are not "statements made in the course of a judicial proceedings."

21  *Young v. Rayan*, 533 P.3d 123, 128 (Wash. Ct. App. 2023) (emphasis added). The litigation

22  privilege does not extend to private communications between two private parties when there is no

23  pending litigation.

24          *First*, litigation privilege should not extend to allegations under Washington Patent Troll

25  Prevention Act. Courts have excluded from the scope of the litigation privilege allegations against

26  attorneys "for the tortious use of the legal process," including claims of abuse of process or

27  malicious prosecution. *Scott v. Am. Express Nat'l Bank*, 22 Wash. App. 2d 258, 265, *review denied*,

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS                                                    - 11 -
CASE NO. 2:23-CV-1016

200 Wash. 2d 1021 (2022) (explaining that litigation privilege does not extend to malicious prosecution or malicious use of the legal system); *see also Mason v. Mason*, 19 Wash. App. 2d 803, 835 (2021), *review denied*, 199 Wash. 2d 1005 (2022) ("Consequently, litigation privilege does not apply, and an attorney can be liable for abuse of process . . . ."). Washington's Patent Troll Prevention Act is exactly the type of tortious use of the legal process that has been excluded from the litigation privilege. The Washington Legislature passed the Patent Troll Prevention Act to "protect Washington's economy from abusive and bad faith assertions of patent infringement." RCW 19.350.005. These "abusive and bad faith assertions of patent infringement" are nearly identical to the abuse of process and malicious prosecution claims that Washington courts have declined to immunize attorneys from. Like an abuse of process claim, integral to a violation of the Patent Troll Prevention Act is "abusive" and "bad faith" conduct, which is "not related to the *legitimate* purposes of a judicial proceeding." *Mason*, 19 Wash. App. 2d at 835 (emphasis added).

The public policy underlying litigation privilege would not be served by allowing the Meyler Defendants to invoke such broad absolute privilege to avoid liability for violating the Washington Patent Troll Prevent Act. Immunizing the Meyler Defendants from violation of the Patent Troll Prevention Act would immunize them from "misappropriate[ing] a judicial proceeding to achieve an improper and extrinsic end," which "neither preserves 'integrity of the judicial process,' nor 'further[s] the administration of justice.'" *Id.* at 837 (second alternation in original) (internal citations omitted). Moreover, because of the "extraordinary scope" of the litigation privilege, courts will not apply the litigation privilege where there are no "safeguards to prevent abuse of the privilege." *Story v. Shelter Bay Co.*, 52 Wash. App. 334, 338, 760 P.2d 368, 371 (1988) (holding that absolute privilege does not extend to "proceedings which, although official and public, are not judicial in substance, as a nonjudicial forum may lack safeguards to prevent abuse of the privilege"). Therefore, "absolute privileges have been limited to situations in which authorities have the power both to discipline persons whose statements exceed the bounds of permissible conduct and to strike such statements from the record." *Moore v. Smith*, 89 Wash. 2d 932, 937, 578 P.2d 26, 29 (1978); *see also Mason v. Mason*, 19 Wash. App. 2d 803, 832 (2021), *review denied*, 199 Wash.

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS
CASE NO. 2:23-CV-1016

- 12 -

Kilpatrick Townsend & Stockton LLP,
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600)

2d 1005 (2022) ("Safeguards inherent to the judicial process, such as swearing an oath, cross-examination, and the threat of perjury, ensure the reliability of testimony.").

No such safeguards would apply to the statements of the Meyler Defendants alleged in this action if the claims are dismissed against them. If the Myler Defendants were given absolute privilege from litigation for all private communications made outside of any pending judicial proceeding, there would be essentially no safeguards to prevent such abuse of that absolute privilege. *Story*, 760 P.2d at 371. In light of these lack of safeguards and consistent with courts' exclusion of similar abuse of process claims, the Court should find that the litigation privilege does not apply to the Meyler Defendants' violation of the Washington Patent Troll Prevention Act.

*Second*, the Meyler Defendants communications in the June 2023 demand letter were not made during the course of any litigation or judicial proceeding, as alleged in the Complaint. Dkt. 23, ¶ 86 ("To avoid any doubt, [the June 2023] demand letter was a private communication between two private parties outside of the context of any judicial or quasi-judicial proceeding."). Nor did Defendants identify any connection to any actual judicial proceeding that these communications were allegedly related to. Dkt. 27 at 19. "[S]tatements made during an occasion outside a judicial proceeding are not covered." *Kurczaba v. Pollock*, 318 Ill. App. 3d 686, 706 (2000). Valve's allegation that the Meyler Defendants' communications were outside the context of any judicial or quasi-judicial proceeding must be taken as true.

Moreover, Defendants have not cited a case where the litigation privilege was applied to statements or actions made when there was no pending litigation or judicial proceeding. Indeed, Defendants only cite two cases that allegedly state the proposition that litigation privilege may apply to "communications preliminary to a proposed judicial proceeding." Dkt. 27 at 18. However, neither of those cases support the extension of the litigation privilege doctrine that Defendants advocate for here. In *Engelmohr,* the Supreme Court of Washington held that a statement made before an administrative body that was not conducted in a quasi-judicial proceeding did ***not*** have the benefit of the absolute litigation privilege. *Engelmohr v. Bache*, 66 Wash. 2d 103, 107 (1965). In *Demopolis*, allegedly defamatory statements made outside the courtroom but during the

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS
CASE NO. 2:23-CV-1016

- 13 -

Kilpatrick Townsend & Stockton LLP,
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600)

1    pendency of court proceedings were also not found to be privileged. *Demopolis v. Peoples Nat.*

2    *Bank of Washington*, 59 Wash. App. 105, 110 (1990) As the Court in *Demopolis* acknowledged, "an

3    absolute privilege is allowed only in 'situations in which authorities have the power to discipline as

4    well as strike from the record statements which exceed the bounds of permissible conduct.'" *Id.*

5    (quotation omitted). Here, none of the Myler Defendants' actions or statements were made in the

6    context of a judicial or quasi-judicial proceeding, nor were they made in a situation in which

7    authorities had the power to strike the statements. Thus, the statements should not be given absolute

8    privilege. Dkt. 23, ¶ 86.

9          The text of the Patent Troll Prevention Act is consistent with limiting the litigation privilege

10    to applying only to statements made during an active litigation or judicial proceeding. The Patent

11    Troll Prevent Act includes in its definitions "[s]ending or delivering a demand to a target,"

12    "[t]hreatening a target with litigation," and "otherwise making claims or allegations." RCW

13    19.350.010(1)(a)-(d). These examples are precisely the extra-judicial actions taken by the Meyler

14    Defendants (who, as alleged in the Complaint, has access to and was aware of the terms of the

15    GSLA when they sent the June 21, 2023 demand letter to Valve (Dkt. 23, ¶ 23, 29-30)) on behalf of

16    the other Defendants. Dkt. 82-90. The Patent Troll Prevent Act excludes from the definition of

17    "Assertion of patent infringement" allegations "made in litigation against a target" because those

18    assertions are the type of statements that would likely be covered under the litigation privilege.

19    RCW 19.350.010(1)(d) (emphasis added).

20          Adopting Defendants' interpretation of litigation privilege would allow an attorney to shield

21    themselves from all repercussions for both their speech and actions merely by claiming it was

22    related to "their representation of their clients and communication(s) on behalf of their clients." Dkt.

23    27 at 19. That is not the law. *See, e.g., US Dominion, Inc. v. Powell*, 554 F. Supp. 3d 42 (D.D.C.

24    2021), *appeal dismissed sub nom. US Dominion, Inc. v. My Pillow, Inc.*, 2022 WL 774080 (D.C.

25    Cir. Jan. 20, 2022), *cert. denied sub nom. MyPillow, Inc. v. US Dominion, Inc.*, 143 S. Ct. 294

26    (2022) (denying defendant Sydney Powell's motion to dismiss defamation claims related to the

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS
CASE NO. 2:23-CV-1016

- 14 -

Kilpatrick Townsend & Stockton LLP,
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600)

1    2020 presidential election because "an attorney's out-of-court statements to the public can be

2    actionable, even if those statements concern contemplated or ongoing litigation.").

3            To the extent Defendants now attempt to create a fact dispute regarding the context of the

4    Meyler Defendants' communications, that is inappropriate to resolve at the pleading stage without

5    the benefit of discovery. *Gunn*, 65 F.4th at 1120 ("[W]here a defendant asserts "a factual

6    challenge," courts must treat the motion to strike as "a motion for summary judgment," triggering

7    discovery."). Further, to the extent there is any question of whether the litigation privilege should

8    apply, the application of the litigation privilege is fact intensive and should not be resolved at the

9    motion to dismiss stage. *See, e.g.*, *Demopolis*, 59 Wash. App. at 111(1990) ("Resolution of the issue

10   is hampered by the lack of a record from the estate litigation, and by the fact-specific nature of

11   relevant decisions from this and other jurisdictions.") (collecting cases).

12           Defendants' motion to dismiss the Meyler Defendants should be denied.

13                       2.      Valve Voluntarily Dismisses Without Prejudice Count V: Conspiracy to
                                 Commit Violations of Washington Patent Troll Prevention Act
14

15           The parties filed a joint stipulation to amend the complaint to remove Count V: Conspiracy

16   to Commit Violations of Washington Patent Troll Prevention Act and to agree that the parties'

17   briefing on Valve's First Amended Complaint (Dkt. 27, Valve's Response, and Defendants' Reply)

18   shall apply to the allegations and claims in the Second Amended Complaint and that no further

19   briefing on Valve's Second Amended Complaint will occur.

20           Valve's Second Amended Complaint renders moot Defendants argument that the parties

21   cannot be co-conspirators (Dkt. 27 at 17-18) and that Defendants' actions were consistent with a

22   lawful or honest purpose (*id.* at 20). Moreover, even if considered on the merits, Defendants'

23   argument that they acted with "lawful and honest purpose" is merely another attempt to dispute

24   Valve's allegations in the complaint relying on only unsupported attorney argument and should be

25   rejected. *Retail Prop. Tr.*, 768 F.3d at 945.

26       **E.      The GSLA Explicitly Authorizes Valve to Seek Damages**

27           Defendants' argument yet again misdirects the Court to an inapplicable and irrelevant

28
     PLAINTIFF'S OPPOSITION TO DEFENDANTS'                          Kilpatrick Townsend & Stockton LLP,
     MOTION TO DISMISS                              - 15 -                1420 Fifth Avenue, Suite 3700
     CASE NO. 2:23-CV-1016                                                      Seattle, WA  98101
                                                                                 (206) 467-9600)

1  section of the GSLA to argue that Valve is not entitled to any damages for any claim in this case

2  against any Defendant. Dkt. 27 at 21. This argument fails.

3      Section 6.2 of the GSLA confirms that Valve may seek damages for breach of the GSLA,

4  including the damages sought by Valve in this case: "the Parties reserve all rights and remedies,

5  including damages and equitable relief, for breach of this Agreement by the other Party." Dkt. 23-

6  1 at 7, ¶ 6.2. Section 6.2 confirms that "nothing herein . . . prevents any Party from enforcing the

7  terms and conditions of this Agreement against the other." *Id.* Defendants misdirect the Court to

8  Section 9.5 which involves damages and liabilities "arising out of, or in connection with, this

9  Agreement." Dkt. 27 at 21 (quoting Dkt. 23-1 at 11, ¶ 9.5). On its face, Section 9.5 deals with

10  damages and liabilities incurred through *compliance* with the terms of the Agreement—not

11  breach. The GSLA expressly and unambiguously permits damages and equitable relief for breach.

12      To the extent there is any ambiguity in the Agreement language, it would be inappropriate

13  to resolve that ambiguity at the motion to dismiss stage. *Bedrosian v. Tenet Healthcare Corp.*, 208

14  F.3d 220 (9th Cir. 2000) (unpublished opinion) ("Resolution of contractual claims on a motion to

15  dismiss is proper if the terms of the contract are unambiguous."). Any such ambiguity should

16  benefit from the parties being able to take discovery on these issues.

17      The only case cited by Defendants supports denial of dismissal. *Negrel v. Drive N Style*

18  *Franchisor SPV LLC*, No. SACV1800583JVSKESX, 2018 WL 6136151, at *5 (C.D. Cal. Aug.

19  27, 2018). The *Negrel* court did not resolve issues of contract interpretation at the pleading stage.

20  Instead, in *Negrel*, defendants moved to dismiss plaintiff's claims for punitive, exemplary,

21  incidental, special, and consequential damages as waived under the Franchise Agreement. *Id.* at

22  *5. Plaintiff disputed that such damages were waived because any waiver provision in the

23  Franchise Agreement are unconscionable and unenforceable and prohibited by state law. *Id.* At the

24  pleading stage, the court resolved only the fact that the waiver provision of the Franchise

25  Agreement was inconsistent with California Civil Code § 1668. *Id.* at *7-8. The court declined to

26  resolve whether a contract clause was unconscionable at the dismissal stage. *Id.* at *6 (noting that

27  the analysis of unconscionability is "highly fact-specific"). Similarly, any resolution of allegedly

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS
CASE NO. 2:23-CV-1016

- 16 -

Kilpatrick Townsend & Stockton LLP,
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600

ambiguous contract language is also highly fact-specific and should not be resolved without the opportunity to develop evidence.

Defendants' motion to dismiss Count III should be denied.

### F.     Should the Court Grant in Full or in Part Defendants' Motion, Valve Should Be Granted Leave to Amend

Should the Court grant in full or in part any of Defendants' arguments, such a grant should be without prejudice and allow Valve leave to amend the Complaint. *Olympus Spa v. Armstrong*, No. 22-CV-00340-BJR, 2023 WL 3818536, at *18 (W.D. Wash. June 5, 2023) (granting leave to amend because there was no bad faith, undue delay, or prejudice to defendants given the early nature of the proceedings and cannot say that the amendment would be futile).

## III.    CONCLUSION

Defendants' motion to dismiss is based on identifying factual disputes that should not be resolved at the pleading stage and misdirecting the Court to irrelevant contract terms and legal. Each of Defendants' arguments should be denied.

DATED:  December 4, 2023          Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By: */s/ Kathleen R. Geyer*
    Dario A. Machleidt (State Bar No. 41860)
    Kathleen R. Geyer (State Bar No. 55493)
    Christopher P. Damitio (State Bar No. 58633)
    1420 Fifth Avenue, Suite 3700
    Seattle, WA 98101
    Telephone:  (206) 467-9600
    dmachleidt@kilpatricktownsend.com
    kgeyer@kilpatricktownsend.com
    cdamitio@kilpatricktownsend.com

    Attorneys for Plaintiff
    VALVE CORPORATION

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS
CASE NO. 2:23-CV-1016

- 17 -

Kilpatrick Townsend & Stockton LLP,
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600)