# EXHIBIT 6



Valve Corporation
10400 NE 4th Street, Suite 1400
Bellevue, WA  98004

valvesoftware.com
vox 425 889 9842
fax 425 827 4843

Samuel M. Meyler
Meyler Legal, PLLC
1700 Westlake Ave. N., Ste. 200
Seattle, Washington 98109

Via email to samuel@meylerlegal.com with a copy to: Jay Johnson at Kizzia Johnson PLLC via email to jay@kjpllc.com and akearney@kjpllc.com

Attorney Meyler,

This concerns the lawsuit brought by your client Social Positioning Input Systems, LLC ("Social Input") against Valve Corporation ("Valve").  The complaint in that matter, dated September 29, 2022 was signed by you as counsel for Social Input.  Please be advised that Valve firmly believes that there is no sufficient factual or legal basis, formed after reasonable inquiry by you, for the claims against Valve for alleged infringement of U.S. Pat. No. 9,261,365 ("the '365 Patent").  If you continue to press these claims against Valve, Valve will seek sanctions and recovery of all attorney's fees and expenses Valve incurs in defending against the suit under Fed. R. Civ. P. 11(c).

We assume at the time you signed the complaint you were aware, or could have been aware on reasonable inquiry, of the history between Valve and your ultimate client, inventor Leigh Rothschild ("Rothschild").  In 2015, one of Rothschild's companies, Display Technologies, LLC, brought suit against Valve for infringement of U.S. Pat. No. 8,671,195.  To resolve that lawsuit, and prevent future lawsuits against Valve by Display Technologies and Rothschild, Valve entered into a Global Settlement and License Agreement with both Display Technologies and Rothschild (the "Global Settlement").  The Global Agreement granted Valve a license to all of Rothschild's patents that could conceivably be construed to cover any portion of Valve's business.  We assume you have the Global Settlement, but another copy is enclosed with this letter.

After the Global Settlement, Valve did not hear from Rothschild again for about 6 years.  But then, earlier this year, Valve received a few marketing messages from a Daniel Falcucci, apparently a representative or agent of another of Rothschild's companies, Patent Asset Management.  Here is the substance of one of those messages:

> My name is Daniel Falcucci, and I'm the Director of Business Development at Patent Asset Management. Our company is headed by Leigh Rothschild, a prolific and well known inventor, and we focus on enforcing the rights of patent holders. Around 2015/16, our company had entered into an Agreement with Valve Corporation, titled "Global Settlement and License Agreement."

> We were happy to reach an agreement then, and I'm wondering if you or someone at Valve would like to discuss reaching a new deal? Our company has acquired a number of valuable patent assets in the past few years, and I'd like to propose a renewed agreement that includes our new inventory.

1

*Please let me know, and I'd be happy to schedule a time to talk more.*

*Regards,*

*Daniel*

Mr. Falcucci clearly had not done any analysis of Valve's activities, or compared those activities to any of Rothschild's patents. Instead, he merely invited Valve to pay more fees and enter into another license agreement with Rothschild simply because it had done so in the past.

When Valve did not respond to Mr. Falcucci's inquiries, your firm filed suit against Valve on behalf of two Rothschild entities, Display Technologies, LLC and Social Input Positioning Systems, LLC. You clearly had no knowledge of the Global Settlement prior to filing those lawsuits, as when I provided you with a copy you immediately dismissed the suit on behalf of Display Technologies, LLC because Valve already had a license to the patent asserted in that lawsuit. This behavior indicates that you had failed to do the appropriate Rule 11 inquiry before filing either suit. Your filing of the suit on behalf of Display Technologies was also a clear breach of the terms of the Global Settlement by both Display Technologies and Rothschild.

The lawsuit on behalf of Social Input Positioning Systems is as baseless as the one that you filed on behalf of Display Technologies, LLC. The '365 Patent is clearly related to a positional information device used to help drivers of vehicles find addresses, and has absolutely nothing to do with the tracking done by a virtual reality gaming device. This fact is readily apparent from the face of the patent and the text of the patent claims. Social Input Positioning Systems' long history of litigating the '365 Patent against makers of GPS systems confirms that it is well aware of the potential scope of its patent.

Moreover, the device that Social Input Positioning Systems asserts infringes the '365 patent is the HTC Vive—a product that Valve does not make or sell. Indeed, the page on Valve's Steam website that is referenced in the claim chart attached to the complaint very clearly shows that you cannot purchase the HTC Vive from Valve—you would have needed to visit the HTC website to purchase it (*See* https://store.steampowered.com/app/358040/VIVE_Cosmos_Elite/).

The '365 Patent is also invalid under 35 U.S.C. § 101 at least because it is directed to the abstract idea of sharing addresses.

To date, Valve has not formally retained outside counsel for this matter. That said, we will do so no later than January 2, 2023. We urge you to immediately make a reasonable investigation of the information provided here. That investigation should lead to dismissal of the complaint. But, if you persist in pursuing the case against Valve on behalf of Social Input Positioning Systems after that date, Valve will seek sanctions as determined by the Court under Fed. R. Civ. P. 11.

Sincerely,

Christopher Schenck
Legal Counsel, Valve Corporation

## GLOBAL SETTLEMENT AND LICENSE AGREEMENT

This Settlement and License Agreement (this "Agreement") is made effective as of ~~August 10~~, 201̶5̶̶6̶ (the "Effective Date"), by and between, Display Technologies, LLC, a Texas limited liability company ("Display"), with a principal place of business at 1400 Preston Road, Ste. 400, Plano, TX 75093, and Leigh Rothschild ("Inventor") (Display and Inventor, collectively, are referred to as "Licensor"), on the one hand, and Valve Corporation ("Licensee"), a corporation, with a principal place of business at 10900 NE 4th St., Ste. 500, Bellevue, WA 98004, on the other hand. The term "Parties" shall refer collectively to Display, Inventor, and Licensee and each, individually as appropriate, a "Party."

WHEREAS, Display owns U.S. Patent No. 8,671,195, respectively entitled "Digital Media Communication Protocol," and has asserted that Licensee is infringing one or more claims of this patent through the sale of Licensee products;

WHEREAS Display brought suit in the United States District Court for the Eastern District of Texas, Marshall Division, Civil Action No. **2:15-cv-999** (the "Pending Litigation"), regarding U.S. Patent No. 8,671,195;

WHEREAS Licensee denies Display's allegations of infringement;

WHEREAS the Parties desire to minimize the time and expense of litigation and therefore desire to resolve the Pending Litigation on the terms set forth herein;

WHEREAS Inventor controls Display, as well as a number of other entities that have been assigned all necessary rights to license patents on which Inventor is the named inventor; and

WHEREAS the Parties desire to enter into a license agreement for patents assigned to entities controlled by Inventor, listed in Exhibit C attached to this agreement, including but not limited to the '195 patent assigned to Display;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. **Definitions**

The terms set forth below shall have the following meanings in the Agreement:

    1.1.    "Affiliate" means, in relation to any Party hereto, any and all "Persons" (as hereinafter defined) now, at any time since the filing of the Pending Litigation, or in the future "Controlled" (the term "Control" and correlatives thereof shall have the meaning more particularly set forth herein) by, Controlling, or under common Control with that Party or any parent company of a Party and any subsidiary thereto.

CONFIDENTIAL OUTSIDE
ATTORNEYS' EYES ONLY

1.2     In the event that a Person is not an Affiliate as of the Effective Date of this Agreement, but later becomes an Affiliate through an acquisition by Licensee (an "Acquired Affiliate"), such Acquired Affiliate shall be deemed to be an Affiliate for the purposes of this Agreement upon completion of such transaction or transactions, but nothing herein shall limit or impair Licensor's rights to prosecute or maintain any claim against any Acquired Affiliate with respect to activities, events or transactions occurring prior to the time when such Person became an Acquired Affiliate. To the extent Licensee is acquired by or merges with another entity or reorganizes organizations in the future in a manner that meet the Control requirements herein, this shall be deemed a change in Control subject to Section 7.1.

1.3     Furthermore, in the event an Affiliate covered by this Agreement ceases to be an Affiliate (a "Departing Affiliate"), any rights under this Agreement shall continue to apply to such Departing Affiliate to the extent of the Departing Affiliate's pre-departure Licensed Products as an Affiliate of Licensee, but shall not extend to any products of any Third Party that acquires such Departing Affiliate or any products of any Third Party acquired by such Departing Affiliate.

1.4.     "Control" (and correlatives thereof) with respect to a Party or Person means (a) the legal, beneficial, or equitable ownership, directly or indirectly of fifty percent (50%) or more of the securities (or other equity interests) of the Person that ordinarily have voting rights in the election of the directors or equivalent managers of the Person, or (b) the possession, directly or indirectly, of the power to direct or cause the direction of management or policies of the Person, whether through the legal, beneficial, or equitable ownership or control of voting securities of the Person, appointment of more than fifty percent (50%) of the board of directors of the Person, by contract, or otherwise.

1.5.     "Licensed Patents" means the patents identified in Exhibit C and any continuations, divisionals, continuations-in-part, extensions, reissues, reexaminations, and any other patents or patent applications claiming priority to or through the patents identified in Exhibit C, and/or substitution patents and/or patent applications thereof, as well as any and all foreign counterparts of any of the foregoing. In the event that Licensor gains control or ownership of any patent listed in Exhibit D, attached to this agreement, "Licensed Patents" shall include those patents from Exhibit D which Licensor gains ownership or control over..

1.6.     "Exploit" means to, in whole or in part, directly or indirectly: own, make, have made, design, develop, author, write, use, sell, offer to sell, supply, purchase, license, offer to license, distribute, lease, import, export, operate, perform, provide, display, transmit, or otherwise transfer, practice, or dispose of, and the exercise of all other activities.

2

*lmr*

VALVE_TH_0013843

1.7.   "Licensed Products" means all past, present and future machines, manufactures, compositions of matter, methods, processes, apparatuses, devices, hardware, software, applications, data, products, web sites, systems and other products and services, or any combination of one or more of the foregoing, ever Exploited by or on behalf of Licensee, which in the absence of this Agreement would infringe at least one of the claims of the Licensed Patents. "Licensed Products" shall not include the machines, manufactures, compositions of matter, methods, processes, apparatuses, devices, products, web sites, systems or services of any Third Party (any of the foregoing a "Third Party Product"), except to the extent such Third Party Product is or was Exploited: (i) within or as any part or portion of Licensee's Licensed Product; (ii) for the direct benefit of Licensee;  or (iii) by or on behalf of Licensee.

1.8.   "Person" shall mean a trust, corporation, partnership, joint venture, limited liability company, association, unincorporated organization or other legal or governmental entity.

1.9.   "Third Party" means a Person other than the Parties.

2.   **<u>Releases and Covenants</u>**

2.1.   **Licensor Release of Licensee.**  Subject to the payment provided under Section 5.1, Licensor irrevocably releases, acquits and forever discharges Licensee, its Affiliates, and its respective officers, directors and attorneys from any and all past, present, or future claims or liabilities of any kind and nature, at law, in equity, or otherwise, known or unknown, suspected or unsuspected, disclosed or undisclosed, arising out of or relating in any way to acts of Licensee or its Affiliates in connection with: (i) the claims and counterclaims asserted in the Pending Litigation; (ii) the Licensed Patents solely with respect to the Licensed Products; and/or (iii) the conduct of settlement negotiations occurring before the Effective Date (except for representations or obligations expressly included in this Agreement).

2.2.   **Licensor Release of Third Parties.**  Subject to the payment provided under Section 5.1, Licensor irrevocably releases, acquits and forever discharges all vendors, suppliers, manufacturers, developers, depositors, distributors, contractors, partners, hosts, direct and indirect customers, and end-users of Licensee or the Licensed Product (such third parties individually referred to herein as a "Licensee Third Party" and collectively as the "Licensee Third Parties") from any and all past, present, or future claims or liabilities of any kind and nature, at law, in equity, or otherwise, known and unknown, suspected and unsuspected, disclosed and undisclosed, arising out of or relating in any way to acts of a Licensee Third Party or the Licensee Third Parties in connection with the Licensed Patents solely with respect to the Licensed Products.  For clarity, this release shall only protect Licensee Third Parties to the extent their activities concern or relate to Licensed Products.

3

*Lmr*

CONFIDENTIAL OUTSIDE
ATTORNEYS' EYES ONLY

2.3. **Licensee's Release.** Subject to the compliance by Licensor with the terms and conditions of this Agreement, Licensee irrevocably releases, acquits and forever discharges Licensor and their respective officers, directors, shareholders, members, employees, agents, consultants, experts, representatives, and attorneys from any and all claims or liabilities of any kind and nature, at law, in equity, or otherwise, known or unknown, suspected or unsuspected, disclosed or undisclosed, arising out of or relating in any way to acts of Licensor in connection with the claims and counterclaims asserted in the Pending Litigation, with respect to the Licensed Patents and with respect to the conduct of settlement negotiations occurring before the Effective Date (except for representations or obligations expressly included in this Agreement). Notwithstanding the foregoing, nothing in this Paragraph or in this Agreement shall prevent Licensee or any Licensee Third Party (other than as provided in Paragraph 3.5 hereof) from asserting that any of the Licensed Patents are invalid, not infringed or unenforceable if the Licensed Patents are asserted against Licensee or any Licensee Third Party.

3. **Grants and Covenants**

3.1. **Licensor License to Licensee.** Subject to the payment provided under Section 5.1, Licensor hereby grants to Licensee and Licensee's Affiliates a non-exclusive, non-transferable (except as provided for in Section 7.1), perpetual, irrevocable, royalty-free, fully paid-up, worldwide license, without the right to sublicense, in and to the Licensed Patents solely to Exploit the Licensed Products. Licensor hereby also grants to Licensee Third Parties, manufacturers, developers, vendors, suppliers, distributors, contractors, depositors, partners, hosts, direct or indirect customers and end-users a non-exclusive, non-transferable (except as provided for in Section 7.1), perpetual, irrevocable, royalty-free, fully paid-up, worldwide license, without the right to sublicense in and to the Licensed Patents solely to Exploit the Licensed Products. Under the terms of this Agreement, Licensee shall have no right to sublicense and further, there is no right to further sublicense by any Third Party. No royalties or additional payments of any kind shall be required in order to maintain this Agreement in force.

3.2. **Covenant Not to Sue Licensee.** Subject to the payment provided under Section 5.1, Licensor covenants not to sue Licensee or its Affiliates for actual or alleged infringement of the Licensed Patents. Licensor further covenants not to sue Licensee Third Parties and their respective direct or indirect customers, depositors, end-users, suppliers, vendors, manufacturers, hosts, partners, distributors, contractors, developers and other Third Parties for actual or alleged infringement of any Licensed Patents to the extent such actual or alleged infringement is based on activities that concern or relate to Licensed Products.

3.3. **Covenant Not to Sue Licensor.** Subject to the compliance by Licensor with the terms and conditions of this Agreement, Licensee covenants not to sue Licensor for any claims with respect to the Licensed Patents.

4

*lmr*

CONFIDENTIAL OUTSIDE
ATTORNEYS' EYES ONLY

VALVE_TH_0013845

3.4. **No Other Rights.** No rights are granted under any Patents except as expressly provided in this Agreement, whether by implication, estoppel, or otherwise. No right to grant covenants, rights, or sublicenses or to become a foundry for Third Parties is granted under this Agreement.

3.5. **Future Enforcement Activity by Licensor.** In the event that Licensor brings a claim under the Licensed Patents against any Licensee Third Party or any entity that claims that the alleged infringing conduct arises out of any communication, interaction, transaction, cooperation, or contractual obligation with or on behalf of Licensee, then upon Licensee providing written notice and sufficient written evidence to corroborate that claim, then Licensor shall within ten (10) days cause such claim to be dismissed with respect to such entity, to the extent the claim is based on conduct that is properly subject to protection from suit under Section 2.1, 2.2, 3.1 or 3.2.

4. **Dismissal of Litigation**

4.1. **Timing of Dismissal.** Within five (5) court days after the payment of the consideration to Licensor under Section 5.1 below, the Parties shall cause their respective counsel to file the stipulated motion as set forth in Exhibit A, dismissing with prejudice all claims brought by Licensor against Licensee, dismissing with prejudice all non-infringement counterclaims brought by Licensee, and dismissing without prejudice all invalidity counterclaims brought by Licensee in the Pending Litigation, to the extent any such claims or counter claims have been raised in litigation between the Parties at that time. The Parties shall promptly proceed with any and all additional procedures needed to effect the above dismissal. If for any reason (except for Licensee's failure to make the payment under Section 5.1), Licensor or its counsel refuses to file the motion as set forth in Exhibit A, Licensee shall have the right to demand Licensor immediately refund in full the Consideration to Licensee.

4.2. **Costs.** The Parties agree that they shall bear their own costs and attorneys' fees relating to the Pending Litigation and to the negotiation of this Agreement.

4.3. **Dismissal of Licensee Third Parties.** To the extent Licensor has any pending lawsuits against Licensee Third Parties related to the Licensed Products and the Licensed Patents, Licensor will undertake to dismiss with prejudice all claims against Licensee Third Parties related to the Licensed Products within 5 days after Licensor's receipt of the payment of the "Consideration" (as hereinafter defined), provided Licensee provides written notice to Licensor of the lawsuits involving such Licensee Third Parties.

5. **Consideration**

5.1. **Payment.** In consideration of the licenses, releases, and covenants granted by Licensor and the dismissal by Licensor of the Pending Litigation, Licensee agrees

5

*lmr*

to pay to Licensor **Redacted for Confidentiality**
**Redacted for Confidentiality** The Consideration shall be paid within five
(5) days of the Effective Date. Such payment shall be by electronic or wire
transfer to an account specified by Licensor and attached to this Agreement as
Exhibit B. No other payments are required by this Agreement. Notwithstanding
anything contained herein to the contrary, this Agreement shall not be effective
until the Consideration has been received by Licensor. The Parties hereby agree
that this is a settlement and no representation is made by Licensor that the
foregoing Consideration represented a reasonable royalty from the infringement
alleged in the Litigation. The Consideration paid to Licensor under this
Agreement shall be nonrefundable, including in the event of a finding of
invalidity, unenforceability, or non-patentability of the Licensed Patents.

5.2.   **Taxes.** Licensor shall bear all U.S. taxes imposed with respect to payments made
to it hereunder. For clarity, this does not include any other taxes, charges, or fees,
for example, non-U.S. taxes or non-U.S. tax withholdings.

5.3.   **No Withholding.** Licensee's payment of the Consideration hereunder shall be
made free and clear of any taxes, withholding taxes, assets, duties, permits, tariffs,
fees and other charges of any kind.

# 6.   Term and Termination

6.1.   **Term.** The term of this Agreement shall be from the Effective Date until the
expiration of the last-to-expire Licensed Patents, unless earlier terminated as
allowed by this Agreement, provided that the licenses, releases, and covenants
granted by Licensor herein shall survive in perpetuity.

6.2.   **Agreement Obligations Not Released.** Notwithstanding anything to the
contrary herein, the Parties reserve all rights and remedies, including damages
and equitable relief, for breach of this Agreement by the other Party and nothing
herein releases any Party from its respective obligations under this Agreement or
prevents any Party from enforcing the terms and conditions of this Agreement
against the other.

# 7.   Assignment and Change of Control

7.1.   **Assignment by Licensee.** Licensee may assign its rights under this Agreement
without prior written consent of Licensor as follows: (A) In the event of a change
of Control of Licensee, this Agreement shall continue to benefit and obligate
Licensee or the successor entity and the licenses granted in Subsection 3.1 may
be assigned to such successor entity, provided that (i) such licenses will extend
only to the Licensed Products and that part of the business relating to the Licensed
Products prior to such change of Control and will not extend to any machines,
manufactures, compositions of matter, methods, processes, apparatuses, devices,

6

*Lmr*

CONFIDENTIAL OUTSIDE
ATTORNEYS' EYES ONLY

products, web sites, systems of the successor or acquiring entity (other than the Licensed Products (or reasonable extensions of the foregoing and whether rebranded or not) of the Licensee's business that existed prior to the change of Control); and (ii) the obligations of Licensee are similarly assigned. (B) Licensee may assign its rights under this Agreement, in whole or in part, as part of a sale, transfer, or spin-off of a substantial portion of Licensee or its Affiliate's business, provided that any assignment of rights under this Agreement shall only extend to the Licensed Products of Licensee and/or of its Affiliates immediately prior to the date of the sale, transfer or spin-off and will not extend to any other products, services or activities prior to, on or after the effective date of the assignment except with respect to the same type and scope of Licensed Products that were conducted immediately prior to the sale, transfer, or spin-off. All rights under this Agreement shall continue to apply to a Departing Affiliate to the extent of the Departing Affiliate's pre-departure Licensed Products as an Affiliate of Valve, but shall not extend to any activities of any Third Party that acquires such Departing Affiliate or any activities of any Third Party acquired by that Departing Affiliate.

Any assignment or transfer of licenses in violation of this Subsection 7.1 shall be null and void, but only from such time as the violation occurs. Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the Parties and their permitted successors and assigns. Except as set forth in this Section 7.1, this Agreement may not be assigned by Licensee without the prior written permission of Licensor, and any attempt to assign without such permission will be void.

7.2.   **Assignment by Licensor.** Licensor may not assign, or exclusively license, any of the Licensed Patents without such assignee or licensee agreeing to be bound by the obligations of Licensor hereunder as if it were a party hereto, and any assignment or exclusive license made in violation of this provision shall be void.

7.3.   **Notice of Assignments.** To the extent either Party makes an assignment, whether complete or partial, of its rights under this Agreement where permitted by the express terms of the Agreement, that Party shall provide written notice to the nonassigning Party. In the event of any change of control of Licensee, a public announcement of such change of control shall be deemed to constitute written notice of assignment for purposes of this section.

7

*lmr*

CONFIDENTIAL OUTSIDE
ATTORNEYS' EYES ONLY

VALVE_TH_0013848

8. <u>**Notices**</u>

8.1.   Notices and other communications regarding or under this Agreement shall be
sent (i) by overnight courier or by registered or certified mail and (ii) if available,
electronic mail to the following addresses:

    **1.1.1.**   Notices to Licensor shall be sent to Licensor's agents at:

        Ni Wang & Massand, PLLC
        8140 Walnut Hill Lane
        Suite 310
        Dallas, Texas 75231
        nmassand@nilawfirm.com

        ...................................................................

    **1.1.2.**   Notices to Licensee shall be sent to Licensee at:

        Valve Corporation
        c/o General Counsel
        10900 NE 4th Street
        Suite 500
        Bellevue, WA 98004

        With a copy to:

        Ed Cavazos
        Pillsbury Winthrop Shaw Pittman LLP
        111 Congress Ave., Suite 400
        Austin, Texas 78701
        ed.cavazos@pillsburylaw.com

8.2.   A Party may change the above addresses for notices relating to this Agreement in
a written notice to the other Party complying as to delivery with the terms of
Section 8.1. All such notices, requests, demands and other communications shall
be effective, if by mail or overnight courier, when delivered or if not delivered
due to refusal or failure to advise the other Party of a change of address, five (5)
days after depositing such notice in the U.S. mail or one (1) day after depositing
such notice with an overnight courier.

9. <u>**Representations, Warranties and Disclaimers**</u>

9.1.   Each Party and each person signing this Agreement on behalf of a Party
represents and warrants to the other that it has the full right and power to enter

*Lmr*

CONFIDENTIAL OUTSIDE
ATTORNEYS' EYES ONLY

VALVE_TH_0013849

into this Agreement, and the person executing this Agreement has the full right and authority to enter into this Agreement on behalf of such Party and the full right and authority to bind such Party to the terms and obligations of this Agreement.

9.2.  Licensor represents and warrants that as of the Effective Date (a) Licensor is the sole owner of the entire right, title and interest in and to the Licensed Patents, including all rights to enforce and sue for past damages, as reflected by the "Assignee" entities listed in Exhibit C; and (b) Licensor has the right and authority to grant the rights, licenses and releases hereunder on behalf of the entities listed in Exhibit C.

9.3.  Other than that which is required of Licensee by Court Order or rule of law, Licensee represents and warrants that it will not contest or assist in contesting the validity or enforceability of the Licensed Patents and will so instruct its counsel and consultants retained for this case other than those retained in conjunction with co-defendants not to contest or assist in contesting the validity or enforceability of the Licensed Patents on Licensee's behalf.  If Licensee (or its counsel on Licensee's behalf) intentionally or knowingly contests or assists in the contesting of the validity or enforceability of the Licensed Patents, Licensor will have the right to unilaterally terminate this Agreement.  For the avoidance of doubt, no production or response by Licensee to a subpoena or other order of a court of competent jurisdiction shall be considered contesting or assisting with a contest under this Section.  Nothing in this section shall be construed so as to restrict any counsel, including Licensee's counsel in the Pending Litigation, from taking any action whatsoever (including challenging the validity and enforceability of the Licensed Patents in any judicial or administrative forum) on behalf of their clients who are not parties to this Agreement.  Nothing in this Paragraph or in this Agreement shall prevent Licensee from asserting that any of the Licensed Patents are invalid, not infringed or unenforceable if the Licensed Patents are asserted against Licensee or its Licensee Third Parties.

9.4.  EXCEPT AS EXPRESSLY PROVIDED IN THIS AGREEMENT, NEITHER LICENSOR NOR LICENSEE MAKES ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND, EITHER EXPRESS OR IMPLIED, OR ASSUMES ANY RESPONSIBILITIES WHATSOEVER WITH RESPECT TO THE COMMERCIAL SUCCESS, USE, SALE, OR OTHER DISPOSITION BY OR FOR ANY OTHER PARTY (OR ITS SUBSIDIARIES) OR THEIR DISTRIBUTORS, USERS, OTHER CUSTOMERS, OR SUPPLIERS OF PRODUCTS INCORPORATING OR MADE BY THE USE OF INVENTIONS LICENSED HEREIN.  LICENSOR DOES NOT CONVEY ANY RIGHT OR LICENSE (EXCEPT TO THE EXTENT NECESSARY TO EXERCISE THE RIGHTS EXPRESSLY GRANTED HEREIN) BY IMPLICATION,

9

*LMF*

CONFIDENTIAL OUTSIDE
ATTORNEYS' EYES ONLY

VALVE_TH_0013850

ESTOPPEL, OR OTHERWISE, EXCEPT AS EXPRESSLY GRANTED HEREIN.

9.5.  In no event shall Licensor be liable for any special, punitive or exemplary damages or for loss of profits or revenue, or any indirect, consequential or incidental damages arising out of, or in connection with, this Agreement and the Licensed Products. Further, in no event shall Licensor be found liable for damages to any party for any amount that exceeds the aggregate total amount of Consideration paid hereunder with respect to this Agreement and the Licensed Products. In no event shall Licensee be liable for any special, punitive or exemplary damages or for loss of profits or revenue, or any indirect, consequential or incidental damages arising out of, or in connection with, this Agreement.

## 10.  **Confidentiality, Publicity Material and Marketing**

10.1.  Nothing in this Agreement shall confer upon any Party any right to include in advertising, packaging or other commercial activities, any reference to the other Parties in any manner whatsoever.

10.2.  Each Party agrees not to disclose the terms of this Agreement to any third party without the prior written consent of the other Party, which may be withheld in such parties sole and absolute discretion. This obligation is subject to the following exceptions:

1.1.1.  disclosure is permissible if required by government or court order, including litigation document requests and SEC (or equivalent) reporting requirements, but only to the extent so required, provided that such disclosure is subject to confidential treatment to the fullest extent allowed by law;

1.1.2.  disclosure is permissible if otherwise required by law or required during the course of litigation (e.g., subpoena, discovery request or equivalent), but only to the extent so required and provided that such disclosure does not affect the confidential nature of such information;

1.1.3.  disclosure is permissible to the extent the information becomes publicly available by judicial order or action;

1.1.4.  disclosure is permissible if required to enforce rights under this Agreement; and

1.1.5.  each Party may disclose this Agreement or its contents to the extent reasonably necessary, on a confidential basis, to its Affiliates, accountants, attorneys, auditors, and financial advisors or those of any third party in connection with a financing or corporate transaction.

10

*lmr*

CONFIDENTIAL OUTSIDE
ATTORNEYS' EYES ONLY

1.1.6. Licensee may disclose this Agreement to all Licensee Third Parties covered by the releases, grants, and covenants provided in Sections 2 and 3 above.

1.1.7. Licensor may disclose the fact that a settlement and/or license agreement has been reached with Licensee in connection with any other litigation or enforcement efforts by Licensor with respect to the Licensed Patents. The terms of the settlement or license shall remain confidential pursuant to the terms hereof.

## 11.   General Terms

11.1. The construction, validity and performance of the Agreement shall be governed in all respects (without regard to conflicts of law provisions) by the law of the State of Texas, United States of America, as such law applies to contracts signed and fully performed in the State of Texas. The Parties hereby submit to the jurisdiction of, and waive any venue objections against, the State and Federal courts in Texas.

11.2. Nothing in the Agreement is to be construed as requiring the commission of any act contrary to law. Wherever there is any conflict between any provision of the Agreement and any statute, law or ordinance, or a treaty and its valid regulations, the statute, law, ordinance, or treaty and its valid regulations shall prevail. In such event the provisions of the Agreement shall be curtailed and limited only to the extent necessary to bring them within the legal requirements, and such provisions, so curtailed and limited, together with all other provisions of the Agreement shall continue in full force and effect.

11.3. All rights granted under the covenants not to assert, releases, discharges and other rights granted under or pursuant to this Agreement are, and shall otherwise be deemed to be, for purposes of Section 365(n) of Title 11, U.S. Code (the "Bankruptcy Code"), licenses and rights to "intellectual property" as defined under Section 101 of the Bankruptcy Code. The Parties agree that each Party shall retain and may fully exercise and enjoy all rights and elections available to them under the Bankruptcy Code and other applicable laws and regulations.

11.4. This Agreement will not be binding upon the Parties until it has been signed herein below by or on behalf of each Party, in which event, it shall be effective as of the Effective Date. No amendment or modification hereof shall be valid or binding upon the Parties unless made in writing and signed as aforesaid.

11.5. The failure of a Party to enforce any provision of this Agreement shall not prevent the subsequent enforcement of such provision. No waiver of any provision of this Agreement shall be deemed or shall constitute a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing

11

*lmr*

waiver unless expressly stated in writing by the party making the waiver. No waiver of any provision shall be binding in any event unless executed in writing by the party making the waiver.

11.6.    The headings of the several Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the meaning and interpretation of this Agreement.

11.7.    This Agreement embodies the entire understanding of the Parties and supersedes all previous communications, representations or understandings, either oral or written, between the Parties relating to the subject matter hereof.

11.8.    Each Party shall bear its own costs, expenses and attorneys' fees incurred in connection with the making of this Agreement, and its performance under this Agreement. Each Party expressly waives any claim of costs and attorneys' fees from or against the other Party, including, without limitation, any attorneys' fees or costs that may already have been awarded in any action.

11.9.    The language of this Agreement has been approved by counsel for each Party, and neither Party (nor their respective counsel) shall be deemed to be the draftsman of this Agreement. Thus, any rule of construction to the effect that ambiguities are to be resolved against the drafting Party will not be applied in the interpretation of this Agreement. The words "include" and "including" and variations thereof, will not be deemed to be terms of limitation in this Agreement, but rather will be deemed to be followed by the words "without limitation." The headings in this Agreement are for convenience and organization only, and not intended to constitute the substance of this Agreement and will not be referred to in connection with the construction or interpretation of this Agreement.

11.10.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute but one and the same instrument. Such counterparts may be exchanged by fax, or scanned and exchanged by electronic mail, confirmed with printed copy, but shall be effective upon receipt of fax/electronic mail as applicable. The Parties agree that facsimile or scanned copies of signatures shall be deemed originals for all purposes hereof and that either Party may produce such copies, without the need to produce original signatures, to prove the existence of this Agreement in any proceeding brought hereunder.

11.11.  Marking. Licensee asserts that it has not infringed any claim of the Licensed Patents and that it is not currently infringing any claim of the Licensed Patents. Licensee further acknowledges that, before entering into this Agreement, Licensee was not authorized to make, have made, sell, offer for sale, or import into the United States any product that infringed any claim of the Licensed Patents. From the Effective Date forward, for products that are not Licensed

*lmr*

CONFIDENTIAL OUTSIDE
ATTORNEYS' EYES ONLY

VALVE_TH_0013853

Products, Licensee will have no products that must be marked with notice of the Licensed Patents under 35 U.S.C. § 287.

13

*lmr*

CONFIDENTIAL OUTSIDE
ATTORNEYS' EYES ONLY

VALVE_TH_0013854

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed with intent to be bound as of the Effective Date.

**Display Technologies, LLC**

By _____

Name: ___Leigh M. Rothschild___

Title: ___Managing Director___

Date: ___01/11/2016___

**Valve Corporation**

By _____

Name: ___Scott Lynch___

Title: ___COO___

Date: ___1/14/2016___

**Leigh Rothschild (on his own and on behalf of all entities listed as "Assignee" in Exhibit C)**

By _____

Name: ___Leigh M. Rothschild___

Title: ___Managing Director___

Date: ___01/11/2016___

THIS AGREEMENT DOES NOT BIND OR OBLIGATE EITHER PARTY IN ANY MANNER UNLESS DULY EXECUTED BY AUTHORIZED REPRESENTATIVES OF BOTH PARTIES

14

CONFIDENTIAL OUTSIDE
ATTORNEYS' EYES ONLY

**EXHIBIT A**

## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

**DISPLAY TECHNOLOGIES, LLC**

             Plaintiff,

     v.

**VALVE CORPORATION,**

             Defendant.

**Civil Action No. 2:15-cv-999**

**JURY TRIAL DEMANDED**

### MOTION TO DISMISS

Under Federal Rule of Civil Procedure 41(a), Display Technologies, LLC ("Display") dismisses its claims against Valve Corporation ("Valve") with prejudice against Valve and each party bears its own attorneys' fees and costs.

15

*lmr*

CONFIDENTIAL OUTSIDE
ATTORNEYS' EYES ONLY

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| DISPLAY TECHNOLOGIES, LLC | |
| Plaintiff, | Civil Action No. 2:15-cv-999 |
| v. | |
| VALVE CORPORATION, | JURY TRIAL DEMANDED |
| Defendant. | |

## ORDER

In light of the Motion to Dismiss filed by Plaintiff Display Technologies, LLC ("Display"), the Court HEREBY ORDERS as follows:

1.      Display's claims against Valve Corporation are hereby dismissed WITH PREJUDICE

2.      Display and Valve Corporation shall each bear their own attorneys' fees and costs incurred in connection with this action.

16

*lmr*

CONFIDENTIAL OUTSIDE
ATTORNEYS' EYES ONLY

VALVE_TH_0013857

## EXHIBIT B
## Wire Instructions

| | |
|---|---|
| Account Name: | Ni Law Firm, PLLC IOLTA Account |
| Reference: | Display Technologies, LLC |
| Account No.: | 413981346 |
| Routing No.: | 111000614 |
| SWIFT Code: | CHASUS33 |
| Name of Bank: | JPMorgan Chase Bank, N.A. |
| Bank Address: | 3610 McKinney Ave., Dallas, TX 75204 |
| Bank Phone No.: | 214-443-1555 |

17

*lmr*

CONFIDENTIAL OUTSIDE
ATTORNEYS' EYES ONLY

VALVE_TH_0013858

Exhibit C
Licensed Patents

| No. | Patent Number | Title | Assignee |
|-----|---------------|-------|----------|
| 1 | 9054860 | Digital verified identification system and method | SRR Patent Holdings, LLC; |
| 2 | 8897833 | Wireless image distribution system and method | Leigh Rothschild |
| 3 | 8671195 | Digital media communication protocol | Display Technologies, LLC; |
| 4 | 8594722 | Wireless image distribution system and method | Rothschild Storage Retrieval Innovations, LLC; |
| 5 | 8437797 | Wireless image distribution system and method | Rothschild Storage Retrieval Innovations, LLC; |
| 6 | 8346920 | Managing network resource requests | SRR Patent Holdings, LLC; |
| 7 | 8307089 | System and method for storing broadcast content in a cloud-based computing environment | Ariel Inventions, LLC; |
| 8 | 8219590 | Media validation system | Rothschild Trust Holdings, L.L.C.; |
| 9 | 8204437 | Wireless image distribution system and method | Rothschild Storage Retrieval Innovations, LLC; |
| 10 | 7979434 | System and method for storing and retrieving digital content with physical file systems | SRR Patent Holdings, LLC; |
| 11 | 6101534 | Interactive, remote, computer interface system | Rothschild Digital Media LLC; |

18

*lmr*

CONFIDENTIAL OUTSIDE
ATTORNEYS' EYES ONLY

VALVE_TH_0013859

| | | | |
|----|---------|---------------------------------------------------------------------------------------------------------------|---------------------------|
| 12 | 8856221 | System and method for storing broadcast content in a cloud-based computing environment | Ariel Inventions, LLC; |
| 13 | 9053498 | Systems and methods for indicating the existence of accessible information pertaining to articles of commerce | Reagan Inventions, LLC; |
| 14 | 8799088 | System and method for verifying user identity information in financial transactions | SRR Patent Holdings, LLC; |
| 15 | 7698164 | Method and system for providing a payment incentive for distributing digital files over a network | Matthew Inventions, LLC; |
| 16 | 8832542 | System and method of embedding symbology in alphabetic letters and then linking the letters to a site or sites on the global computer network | Leigh Rothschild |
| 17 | 8469270 | Systems and methods for indicating the existence of accessible information pertaining to articles of commerce | Reagan Inventions, LLC |
| 18 | 8151180 | System and method of embedding symbology in alphabetic letters and then linking the letters to a site or sites on the global computer network | Reagan Inventions, LLC |
| 19 | 8799263 | Systems, devices, and methods for providing multidimensional search results | Ariel Inventions, LLC |
| 20 | 8370141 | Device, system and method for enabling speech recognition on a portable data device | Reagan Inventions, LLC |

*lmr*

19

CONFIDENTIAL OUTSIDE
ATTORNEYS' EYES ONLY

VALVE_TH_0013860

**Exhibit D**
**Patents Licensed if Licensor Gains Ownership or Control**

| No. | Patent Number | Title | Assignee |
|---|---|---|---|
| 1 | 8838693 | Multi-user media delivery system for synchronizing content on multiple media players | Portulim Foundation LLC; |
| 2 | 8504652 | Method and system for selectively supplying media content to a user and media storage device for use therein | Portulim Foundation LLC; |
| 3 | 8473514 | Media validation system | Schust Development LLC; |
| 4 | 8396931 | Interactive, multi-user media delivery system | Portulim Foundation LLC; |
| 5 | 8122466 | System and method for updating digital media content | Portulim Foundation LLC; |
| 6 | 8069164 | Media validation system | Schust Development LLC; |
| 7 | 8046813 | Method of enhancing media content and a media enhancement system | Portulim Foundation LLC; |
| 8 | 7711774 | Interactive, multi-user media delivery system | Portulim Foundation LLC; |
| 9 | 7631000 | Media validation system | Schust Development LLC; |
| 10 | 7318061 | Media validation and registration system | Schust Development LLC; |
| 11 | 8909729 | System and method for sharing digital media content | No apparent assignment; |
| 12 | 7503059 | Method of enhancing media content and a media enhancement system | Portulim Foundation LLC; |

20

*lmr*

CONFIDENTIAL OUTSIDE
ATTORNEYS' EYES ONLY

VALVE_TH_0013861

| 13 | 6952697 | Media validation system | Schust Development LLC |
| 14 | 6766363 | System and method of linking items in audio, visual, and printed media to related information stored on an electronic network using a mobile device | Neomedia Technologies, Inc. |
| 15 | 6430554 | Interactive system for investigating products on a network | Neomedia Technologies, Inc. |

*lmr*

21

CONFIDENTIAL OUTSIDE
ATTORNEYS' EYES ONLY