HON. JAMAL N. WHITEHEAD

# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF WASHINGTON

### AT SEATTLE

| | |
|---|---|
| VALVE CORPORATION,<br><br>       Plaintiff,<br><br>     v.<br><br>LEIGH ROTHSCHILD, ROTHSCHILD BROADCAST DISTRIBUTION SYSTEMS, LLC, DISPLAY TECHNOLOGIES, LLC, PATENT ASSET MANAGEMENT, LLC, MEYLER LEGAL, PLLC, AND SAMUEL MEYLER,<br><br>       Defendants. | Case No. 2:23-cv-1016<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>Complaint Filed:     07/07/2023<br><br>**ORAL ARGUMENT REQUESTED** |

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS
CASE NO. 2:23-CV-1016

1

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 370
Seattle, WA  981
(206) 467-9600)

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION .......................................................................................................1

II.   ARGUMENT ...........................................................................................................1

      A.    The GSLA Permits Valve to Challenge the Validity and
            Enforceability of the '221 Patent Because Defendants
            Asserted the '221 Patent Against Valve...............................................1

      B.    The Complaint Plausibly Alleges that Defendants Breached
            the GSLA ...............................................................................................5

            1.    Defendants Rothschild and RBDS Breached the GSLA.......................5

            2.    Defendants Rothschild and RBDS Anticipatorily
                  Breached the GSLA ..........................................................................6

            3.    Defendants Rothschild and Display Technologies
                  Breached the GSLA ..........................................................................8

      C.    The Complaint Plausibly Alleges a Violation of Washington's
            Patent Troll Prevention Act...............................................................10

            1.    Defendants Ask the Court to Improperly Weigh
                  Evidence at the Pleading Stage .........................................................10

            2.    Defendants Mischaracterize Valve's Complaint....................................11

      D.    Valve Stated a Claim Against the Myler Defendants ........................13

            1.    The Meyler Defendants Cannot Invoke the Litigation
                  Privilege ..........................................................................................13

      E.    The GSLA Explicitly Authorizes Valve to Seek Damages ...............17

      F.    Should the Court Grant in Full or in Part Defendants' Motion,
            Valve Should Be Granted Leave to Amend........................................18

III.  CONCLUSION .......................................................................................................18

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS
CASE NO. 2:23-CV-1016

- i -

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Asia Vital Components Co. v. Asetek Danmark A/S*,

5

　837 F.3d 1249 (Fed. Cir. 2016) ............................................................................................... 2

6

*Bedrosian v. Tenet Healthcare Corp.*,
　208 F.3d 220 (9th Cir. 2000) ............................................................................................... 2, 17

7

*Benitec Australia, Ltd. v. Nucleonics, Inc.*,

8

　495 F.3d 1340 (Fed. Cir. 2007) ........................................................................................... 4, 5

9

*Chi Chen v. U.S. Bank Nat'l Ass'n*,
　No. 16-cv-1109-RSM, 2020 WL 6781399 (W.D. Wash. Nov. 18, 2020) ............................... 8

10

*Demopolis v. Peoples Nat. Bank of Washington*,

11

　59 Wash. App. 105 (1990) ............................................................................................... 16, 17

12

*Dow Jones & Co. v. Ablaise Ltd.*,

13

　606 F.3d 1338 (Fed. Cir. 2010) ........................................................................................... 4, 5

14

*Engelmohr v. Bache*,
　66 Wash. 2d 103 (1965) ...................................................................................................... 15

15

*Gen-Probe Inc. v. Vysis, Inc.*,

16

　359 F.3d 1376 (Fed. Cir. 2004), *abrogated on other grounds by MedImmune,*

17

　*Inc. v. Genentech, Inc.,* 549 U.S. 118 (2007) ................................................................. 2, 3, 4

18

*Gunn v. Drage*,
　65 F.4th 1109 (9th Cir. 2023) ........................................................................................ 10, 17

19

20

*Hewlett-Packard Co. v. Acceleron LLC*,
　587 F.3d 1358 (Fed. Cir. 2009) ............................................................................................... 2

21

*Iten v. Los Angeles*,

22

　No. 22-55480, 2023 WL 5600292 (9th Cir. Aug. 30, 2023) .......................................... 11, 12

23

*Jones v. L.A. Cent. Plaza LLC*,
　74 F.4th 1053 (9th Cir. 2023) ............................................................................................... 12

24

*Khoja v. Orexigen Therapeutics, Inc.*,

25

　899 F.3d 988 (9th Cir. 2018) .................................................................................................. 6

26

*Kurczaba v. Pollock*,

27

　318 Ill. App. 3d 686 (2000) .................................................................................................. 15

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS
CASE NO. 2:23-CV-1016

- ii -

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

# TABLE OF AUTHORITIES
(continued)

Pages

*Landover Corp. v. Bellevue Master LLC*,
    252 F. App'x 800 (9th Cir. 2007) ........................................................................ 8

*Mason v. Mason*,
    19 Wash. App. 2d 803, 835 (2021), *review denied*, 199 Wash. 2d 1005 (2022) ............. 13, 14

*Moore v. Smith*,
    89 Wash. 2d 932, 578 P.2d 26 (1978) ................................................................. 14

*Negrel v. Drive N Style Franchisor SPV LLC*,
    No. SACV1800583JVSKESX, 2018 WL 6136151 (C.D. Cal. Aug. 27, 2018) ..................... 18

*Olympus Spa v. Armstrong*,
    No. 22-CV-00340-BJR, 2023 WL 3818536 (W.D. Wash. June 5, 2023) ............................ 18

*Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*,
    768 F.3d 938 (9th Cir. 2014) ................................................................... 5, 6, 9

*Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*,
    858 F.3d 1383 (Fed. Cir. 2017) ................................................................... 12

*Scott v. Am. Express Nat'l Bank*,
    22 Wash. App. 2d 258, 265, *review denied*, 200 Wash. 2d 1021 (2022) .............................. 13

*Silvas v. E*Trade Mortg. Corp.*,
    514 F.3d 1001 (9th Cir. 2008) ..................................................................... 7

*Silver States Land LLC v. United States*,
    155 Fed. Cl. 209 (Ct. Cl. 2021) ................................................................ 8, 9

*Story v. Shelter Bay Co.*,
    52 Wash. App. 334, 760 P.2d 368 (1988) ....................................................... 14, 15

*Thomas v. State Farm Mut. Auto. Ins. Co.*,
    No. C22-1730-JCC, 2023 WL 2611889 (W.D. Wash. Mar. 23, 2023) ................................ 10

*Ticey v. Fed. Deposit Ins. Corp.*,
    No. C22-1110 MJP, 2023 WL 2742055 (W.D. Wash. Mar. 31, 2023),
    *reconsideration denied*, No. C22-1110 MJP, 2023 WL 3382506 (W.D. Wash.
    May 11, 2023) .................................................................................... 2

*US Dominion, Inc. v. Powell*,
    554 F. Supp. 3d 42 (D.D.C. 2021), *appeal dismissed sub nom. US Dominion, Inc.*
    *v. My Pillow, Inc*., 2022 WL 774080 (D.C. Cir. Jan. 20, 2022), *cert. denied sub*
    *nom. MyPillow, Inc. v. US Dominion, Inc*., 143 S. Ct. 294 (2022) ........................ 16

1

**TABLE OF AUTHORITIES**
(continued)

2

<u>Pages</u>

3

*Voelker v. Joseph*,
    62 Wash. 2d 429 (1963) ........................................................................................... 8

4

5

*Wyckoff Farms, Inc. v. Indus. Control Concepts, Inc.*,
    No. 4:20-CV-5095-TOR, 2020 WL 13490269 (E.D. Wash. Oct. 27, 2020) ............................ 7

6

*Young v. Rayan*,
    533 P.3d 123 (Wash. Ct. App. 2023) ...................................................................... 13

7

8

**Statutes**

9

California Civil Code § 1668 ........................................................................................ 18

10

RCW 19.350.005 ...................................................................................................... 14

11

RCW 19.350.010(1)(a)-(d) ......................................................................................... 16

12

RCW 19.350.010(1)(d) .............................................................................................. 16

13

RCW 19.350.020(2)(f) ............................................................................................... 11

14

RCW 19.350.020(2)(g) .............................................................................................. 13

15

**Other Authorities**

16

Fed. R. Civ. P. 12 .................................................................................................... 12

17

Fed. R. Civ. P. 12(b)(6) ................................................................................ 5, 6, 10, 12

18

Fed. R. Civ. P.  56 ................................................................................................... 12

19

Washington Patent Troll Prevention Act ................................................................ *passim*

20

Washington Rule of Professional Conduct 2.1 ................................................................ 6

21

22

23

24

25

26

27

28

1

**I.     INTRODUCTION**

2

Defendants' motion almost entirely ignores the legal standard for a motion to dismiss.

3

Instead of arguing beyond a doubt that Valve's Second Amended Complaint ("Complaint," Dkt.

4

38) contains no set of facts that supports their claims, Defendants focus their motion on disputing

5

Valve's factual allegations and improperly weighing the evidence on an incomplete factual record.

6

Valve's factual allegations in its Complaint, however, must be taken as true. Any factual dispute

7

identified by Defendants confirms that Defendants' motion should be denied and that the case

8

should proceed to discovery.

9

Defendants only arguments appropriate for resolution on the pleadings are based on

10

Defendants' mischaracterization of the Complaint and the 2016 Global Settlement and Licensing

11

Agreement ("GSLA"). When the appropriate legal standards and provisions of the GSLA are

12

applied to the facts contained in Valve's Complaint, each of Defendants' arguments fail. As

13

described below, Valve has continued to comply with the GSLA, despite Defendants' repeated

14

material breaches of the same. While Defendants attempt to recast their bad faith assertion of

15

patent infringement as "clerical errors" or "compliance" with the GSLA, Defendants' motion

16

confirms that they have no intention of policing their own actions. Without Court intervention,

17

Defendants will continue to force Valve to litigate patent infringement lawsuits asserting patents

18

Valve already has a license to.

19

**II.    ARGUMENT**

20

**A.     The GSLA Permits Valve to Challenge the Validity and Enforceability of the
'221 Patent Because Defendants Asserted the '221 Patent Against Valve**

21

22

Defendants argue that Valve is barred by the GSLA from bringing Counts I and II of

23

unenforceability and invalidity of the '221 Patent. Defendants are incorrect. Counts I and II are

24

allowed under the GSLA. Moreover, Valve has a reasonable apprehension that Defendants will

25

file a lawsuit against Valve for infringement of the '221 Patent—despite the GSLA barring such

26

lawsuits—due to Defendants' explicit threats to do so and Defendants' repeated material breaches

27

of the GSLA. Thus, there is a justiciable case or controversy regarding the invalidity and

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS                                    - 1 -
CASE NO. 2:23-CV-1016

Kilpatrick Townsend & Stockton LLP,
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600)

1    unenforceability of the '221 Patent.

2        *First*, Counts I and II do not violate the GSLA. The GSLA explicitly permits Valve to

3    challenge the validity and unenforceability of the '221 Patent when Defendants assert it against

4    them: "[N]othing in this Paragraph or in this Agreement shall prevent Licensee . . . from asserting

5    that any of the Licensed Patents are invalid, not infringed or unenforceable if the Licensed Patents

6    are asserted against Licensee . . . ." Dkt. 38-1, § 2.3. As alleged in the Complaint, Defendants

7    asserted the '221 Patent against Valve in the June 2023 demand letter. Dkt. 38, ¶¶ 27-33. In that

8    demand letter, Defendants threatened to "file[] . . . their complaints" for patent infringement,

9    attaching "preliminary claim charts" "that have been prepared in anticipation of litigation" and

10   which noted Valve as a "Defendant." Dkt. 38-8. On the face of the Complaint, Valve has plausibly

11   alleged that Defendants asserted[1] the '221 Patent against it. *See, e.g.*, *Asia Vital Components Co.*

12   *v. Asetek Danmark A/S*, 837 F.3d 1249, 1253-55 (Fed. Cir. 2016) (holding that listing asserted

13   patents in a demand letter that referenced the sender "enforced its IP" was sufficient assertion of

14   patent infringement to confer standing.); *see also Hewlett-Packard Co. v. Acceleron LLC*, 587

15   F.3d 1358, 1362-64 (Fed. Cir. 2009) (holding that twice contacting a target, identifying patents as

16   relating to a target's products, and a target's statement of disagreement is sufficient to confer

17   declaratory judgment jurisdiction). Thus, under Section 2.3 of the GSLA, Valve is permitted to

18   seek a declaration of invalidity and unenforceability of the '221 Patent. And there is a judiciable

19   case or controversy because the June 2023 demand letter is "an explicit threat" by Defendants that

20   "creates a reasonable apprehension on behalf of [Valve] that it will face an infringement suit"

21   based on Valve's "present activity" offering the Steam app. *Gen-Probe Inc. v. Vysis, Inc.*, 359

22   F.3d 1376 (Fed. Cir. 2004), *abrogated on other grounds by MedImmune, Inc. v. Genentech, Inc.*,

---

[1] To the extent that Defendants attempt to argue ambiguity regarding the word "assert," the
meaning of ambiguous contract language is inappropriate for review on a motion to dismiss because
discovery could uncover extrinsic evidence to resolve that ambiguity. *See Bedrosian v. Tenet*
*Healthcare Corp.*, 208 F.3d 220 (9th Cir. 2000) (holding that resolution of contractual claims on a
motion to dismiss is only proper if the terms are unambiguous); *see also Ticey v. Fed. Deposit Ins.*
*Corp.*, No. C22-1110 MJP, 2023 WL 2742055, at *3 (W.D. Wash. Mar. 31, 2023), *reconsideration*
*denied*, No. C22-1110 MJP, 2023 WL 3382506 (W.D. Wash. May 11, 2023) (stating that extrinsic
evidence can be used to ascertain the true intentions and agreement of the parties for ambiguous
claim language).

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS                    - 2 -
CASE NO. 2:23-CV-1016

Kilpatrick Townsend & Stockton LLP,
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600)

549 U.S. 118 (2007).

*Second*, even if Valve's actions were somehow in violation of the GSLA (they are not), the GSLA will only divest the Court of jurisdiction to hear Counts I and II if the parties "have each fulfilled their obligations without material breach." *Gen-Probe*, 359 F.3d at 1381. In *Gen-Probe*, the district court found that plaintiff had standing based on the defendant's history of litigious activities, including "oral notification [of possible infringement], the letters regarding possible infringement of the '338 patent, and the history of litigation between these parties." *Id*. On appeal, the Federal Circuit reversed because all of the defendant's litigious actions credited by the district court "occurred **before** the consummation of the license agreement." *Id*. (emphasis added). Therefore, none of those activities were in breach of the license agreement. The Federal Circuit in *Gen-Probe* dismissed plaintiff's declaratory judgment claims because without a material breach of the parties' license agreement, "no facts [] have arisen since the [parties'] license to give Gen–Probe a reasonable apprehension of a lawsuit." *Id*.

The opposite is true here. Unlike in *Gen-Probe*, Defendants sent multiple emails and letters regarding alleged infringement and sued Valve **after** the parties signed the GSLA and in violation of the same. *See, e.g.*, Dkt. 38, ¶¶ 14, 18-21, 26-27; *see also* Dkt. 38-5. The Federal Circuit in *Gen-Probe* considered a situation like this case where a material breach of a covenant not to sue would give rise to a reasonable apprehension of a lawsuit. *Id*. ("This license, **unless materially breached**, obliterated any reasonable apprehension of a lawsuit based on the **prior circumstances** cited by the district court for jurisdiction." (emphasis added)). Here, Valve's Complaint set forth numerous actions taken by Defendants **after** entering in the GSLA that constitute **multiple** material breaches of the GSLA that placed Valve in "a reasonable apprehension of a lawsuit." Thus, unlike in *Gen-Probe*, Valve set forth numerous "facts that have arisen since the license to give [Valve] a reasonable apprehension of a lawsuit." *Id*.

Specifically, Defendants' repeated material breaches of the GSLA prevent Defendants from relying on that agreement to wrest jurisdiction from this Court. In the Complaint, Valve has alleged how Defendant has committed material breaches of the GSLA no less than three times in

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS
CASE NO. 2:23-CV-1016

- 3 -

Kilpatrick Townsend & Stockton LLP,
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600)

approximately a year.

- Defendants' employee, Daniel Falcucci, messaged multiple Valve employees to execute a new, additional license agreement to Defendants' "inventory catalog." Dkt 38, ¶ 15. That inventory catalog included patents already covered under the GSLA. *Id.*

- When Valve declined to engage in additional negotiations with Falcucci, Display Technologies disregarded the covenant not to sue and filed a lawsuit accusing Valve of infringing U.S. Patent No. 9,300,723. *Id.*, ¶ 20. Valve already had a license to U.S. Patent No. 9,300,723 under the GSLA. *Id.*, ¶ 22. Valve was forced to undertake the expense of reviewing the complaint, comparing the asserted patents to the GSLA, and writing opposing counsel to inform them that Valve already had a license. *Id.*, ¶ 23; Dkt. 38-6.

- Defendants sent a demand letter in June 2023 threatening to sue Valve for alleged infringement of the '221 Patent, another patent Valve already licensed. *Id.*, ¶ 27. The June 2023 demand letter attached claim charts "prepared in anticipation of litigation" and gave Valve nine days to respond before the Defendants would "assume that Valve would prefer to litigate" the '221 Patent. Dkt. 38-8.

Defendants have not withdrawn or repudiated any of their demands made in violation of the GSLA, including the ones that led to this present suit. Instead, Defendants doubled down and stated their clear intent to assert counterclaims of infringement of the '221 Patent against Valve in any Answer they file in this case. Dkt. 28, ¶ II.5 (Parties' Joint Status Report).

Defendants' June 2023 demand letter was an unambiguous threat to file a patent infringement lawsuit asserting the '221 Patent. Based on Defendants' repeated disregard of their obligations under the GSLA, Valve had a "reasonable apprehension" that it will be sued for infringing the '221 Patent, despite the fact that Defendants should be barred from doing so. *Gen-Probe*, 359 F.3d at 1380. The existence of the GSLA cannot negate Valve's reasonable apprehension in light of Defendants' repeated material breach of the agreement, including doing the exact same thing in the past that it threatened to do in June 2023: filing a patent infringement lawsuit asserting patents to which Valve is already licensed. Dkt. 38, ¶ 33.

The cases that Defendants cite, *Dow Jones* and *Benitec*, do not support Defendants' position because neither involve breach, much less repeated breaches, of a covenant not to sue. *See Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1345 (Fed. Cir. 2010); *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1347-48 (Fed. Cir. 2007). In *Dow Jones* the parties disputed whether the covenant not to sue covered Dow Jones' affiliates and subsidiaries; there were no

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS
CASE NO. 2:23-CV-1016

- 4 -

Kilpatrick Townsend & Stockton LLP,
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600)

allegations regarding Ablaise breaching the covenant by asserting the patent against Dow Jones directly. 606 F.3d at 1348-49. In *Benitec*, the Federal Circuit found no case or controversy because Nucleonics' present activities were not and could not be infringing until Nucleonics filed a new drug application. 495 F.3d at 1346-47. Here, there is no dispute that Defendants accuse Valve's present activities of infringing the '221 Patent. *See, e.g.*, Dkt. 38-8.

Defendants' motion to dismiss Counts I & II should be denied.

### B.        The Complaint Plausibly Alleges that Defendants Breached the GSLA

Defendants' arguments that they did not breach the GSLA rely on self-serving statements contradicting factual allegations in the Complaint. The Court, however, must take as true all of Valve's allegations in the Complaint. It is inappropriate to consider Defendants' new factual assertions outside of the Complaint during a motion to dismiss. Moreover, as explained below, Defendants' new assertions are incorrect or dubious at best.

### 1.        Defendants Rothschild and RBDS Breached the GSLA

Valve alleges that Defendant RBDS, under the control of PAM and Rothschild, breached section 3.1 of the 2016 GSLA when it sent the August 2023 demand letter to Valve. Dkt. 38, ¶¶ 72-74; Ex. 8. Defendants attempt to contradict Valve's well-pleaded allegations in the Complaint by reframing their demand to "explore a potential resolution to" their allegations of infringement (Dkt. 38, Ex. 8) as not "demand[ing] any payment" (Dkt. 40 at 14). Yet Valve alleges that "[t]he 'potential resolution' and 'resolution' discussed in the 2023 demand letter sent by Meyler on behalf of Rothschild and RBDS is a monetary payment for additional rights to patents to which Valve is already licensed, including the '221 Patent." Dkt. 38, ¶ 71.[2] Valve's factual allegation must be accepted as true. *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) ("In reviewing a motion to dismiss pursuant to Rule 12(b)(6), we must accept as true all factual allegations in the complaint."). Defendants' self-serving statements are outside of the pleading and thus inappropriate to consider during a motion

---

[2] It is difficult to fathom what "potential resolutions" would convince non-practicing entities such as Defendants to forego patent infringement claims besides monetary payments. Indeed, since 2022, Defendants have been seeking more money from Valve for a renegotiated license to Rothschild's patents. Dkt. 38-5.

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS
CASE NO. 2:23-CV-1016

- 5 -

Kilpatrick Townsend & Stockton LLP,
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600)

to dismiss. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) ("Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure."). Taken as true, Defendants' demand for monetary payment is a violation of Section 3.1 of the GSLA, which grants Valve a "perpetual, irrevocable, royalty-free, fully paid-up, worldwide license" and requiring "[n]o royalties or additional payments of any kind . . . in order to maintain this Agreement in force." Dkt. 38-1, § 3.1.

Defendants' also make the dubious claim that when the Meyler Defendants sent the June 2023 Demand Letter to Valve, it was "[u]nbeknownst to" them that the '221 Patent was covered under the GSLA. Dkt. 40 at 7. Valve alleged that the Meyler Defendants were aware of the terms of the GSLA when they sent the June 2023 demand letter to Valve. Dkt. 38, ¶ 30. These allegations must be taken as true and cannot be contradicted in Defendants' motion with unsupported attorney argument. *Retail Prop. Tr.*, 768 F.3d at 945. Moreover, Defendants' self-serving statement is belied by the simple fact that the '221 Patent is identified on the face of the GSLA as a licensed patent. Dkt. 38-1 at 19. Prior to the filing of the Complaint, the Meyler Defendants represented the other Defendants for over a year (Dkt. 38, ¶¶ 21-28) and during that time, Valve sent the Meyler Defendants a copy of the GSLA *twice*, in October and December 2022 (*id.*, ¶ 23). If the Meyler Defendants did not know that the '221 Patent was covered under the GSLA, the only reasonable conclusion is that the Meyler Defendants did not review the GSLA prior to sending the June 2023 demand letter, potentially violating at least Washington Rule of Professional Conduct 2.1. *C.f. id.*, ¶¶ 31-32.

## 2. Defendants Rothschild and RBDS Anticipatorily Breached the GSLA

Valve alleges that Defendant RBDS, under the control of PAM and Rothschild, also anticipatorily breached section 3.2 of the GSLA by sending the August 2023 demand letter to Valve. Dkt. 38, ¶¶ 72-74; Ex. 8. Defendants argue that "[t]here is no reason to believe that RBDS would have sued Plaintiff *once learning that the '221 patent was subject to the GSLA.*" Dkt. 40 at 14 (emphasis added). Defendants' argument proves the point—Defendants have never been

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS
CASE NO. 2:23-CV-1016

- 6 -

Kilpatrick Townsend & Stockton LLP,
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600)

willing to ensure their own compliance with the GSLA. Instead, Defendants place the onus on *Valve* to inform Defendants that Defendants have breached the GSLA. Only then would Defendants act. Moreover, Defendants' subsequent compliance with the GSLA after breaching the agreement does not negate the breach. Defendants' argument does not amount to an assertion that "no set of facts support [Valve's] claim that would entitle [Valve] to relief." *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1004 (9th Cir. 2008). Instead, Defendants' argument that only once Valve had informed them of their breach, they allegedly would have acted differently.[3]

On the face of the Complaint, Valve alleged sufficient facts to plausibly support a claim for anticipatory breach. "Under Washington law, an anticipatory breach occurs when a party to a bilateral contract either expressly or impliedly repudiates the contract prior to performance." *Wyckoff Farms, Inc. v. Indus. Control Concepts, Inc.*, No. 4:20-CV-5095-TOR, 2020 WL 13490269, at *3 (E.D. Wash. Oct. 27, 2020) (citing *Wallace Real Estate Inv., Inc. v. Groves*, 124 Wash. 2d 881, 898 (1994)). Valve alleged, "RBDS made a positive statement indicating distinctly and unequivocally that it would not substantially perform its obligations under the covenant not to sue without receiving additional monetary payment that goes beyond Valve's payment obligations under the [GSLA]." Dkt. 38, ¶ 74; *see also id.*, ¶¶ 27-33, 67-73. Valve described how RBDS expressly repudiated the GSLA by announcing its intention to sue Valve in the June 2023 demand letter. Dkt. 38, ¶¶ 67-71, 73-74. RBDS's intention in the June 2023 was clear: RBDS had created infringement contentions "in anticipation of litigation" and if Valve did not respond to the June 2023 demand letter within nine days, the Defendants would understand that "Valve preferred to litigate." Dkt. 38-8; *see also id.* ("[M]y clients are willing to delay the filing of their complaints as long as they feel that Valve is working toward a resolution in good faith."). Yet Valve had already resolved any and all claims related to the '221 Patent by signing the GSLA. Announcing its

---

[3] Defendants' claim that they would act in good faith once informed of their breach is belied by their actions after the filing of this lawsuit. This lawsuit informed Defendants that the '221 Patent was subject to the GSLA and was being asserted against Valve in bad faith. Instead of withdrawing its June 2023 demand letter or coming into compliance with the GSLA, Defendants filed three retaliatory lawsuits in the Eastern District of Texas with the express intent of driving up Valve's litigation expenses and informed Valve of their intent to bring counterclaims asserting the '221 Patent against Valve. Dkt. 28, ¶ II.5 (Parties' Joint Status Report).

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS                                           - 7 -
CASE NO. 2:23-CV-1016

Kilpatrick Townsend & Stockton LLP,
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600)

1   intention to breach the GSLA by filing a complaint alleging infringement of the '221 Patent within

2   nine days is a clear repudiation of RBDS's obligations under the agreement.

3                   3.      Defendants Rothschild and Display Technologies Breached the GSLA

4          Valve alleges that Display Technologies, under the control of PAM and Rothschild,

5   breached Section 3.2 of the GSLA when it sued Valve in 2022 for infringement of patents Valve

6   already had a license to. Dkt. 38, ¶¶ 19-24. Defendants make a number of cursory arguments in its

7   motion, none of which support dismissal of Valve's claim.

8          *First*, in a single sentence, Defendants argue that because Valve did not sue Display

9   Technologies for breach of contract in 2022, it has "long since waived any right to do so." Dkt. 40

10  at 15. Defendants are incorrect. To prevail on a defense of waiver, Defendants' must prove that

11  Valve "intended to permanently relinquish [its] right" and that Valve's conduct was "inconsistent

12  with any other intent." *Chi Chen v. U.S. Bank Nat'l Ass'n*, No. 16-cv-1109-RSM, 2020 WL

13  6781399, at *5 (W.D. Wash. Nov. 18, 2020). Defendants' conclusory attorney assertion cannot

14  meet this standard. Defendants have not identified any action taken by Valve but instead rely on

15  Valve's **inaction**. Dkt. 40 at 15. Yet "[s]ilence alone never constitutes waiver unless a party has an

16  obligation to speak." *Landover Corp. v. Bellevue Master LLC*, 252 F. App'x 800, 803 (9th Cir.

17  2007) (applying Washington law and acknowledge that "Washington law clearly sets forth a high

18  standard for proving waiver"). Indeed, mere delay is insufficient to find Valve waived its breach

19  of contract claim against Display Technologies. *See Voelker v. Joseph*, 62 Wash. 2d 429 (1963)

20  (holding that "the trial court erred in giving an instruction which permitted the jury to find that a

21  mere delay on the part of the appellant in bringing suit . . . could constitute a waiver of his right to

22  sue"). Instead, whether Valve impliedly waived its rights is a fact-intensive question of intent

23  inappropriate for resolution on the pleadings. *See, e.g.*, *Chi Chen*, 2020 WL 6781399, at *5 ("To

24  constitute an implied waiver, there must exist unequivocal acts or conduct evidencing an intent to

25  waive; intent may not be inferred from doubtful or ambiguous facts." (citations omitted)).

26         Further, the single case Defendants rely on does not support their position. The waiver

27  discussed in *Silver States* deals with waiver of a specific remedy for breach of contract—not

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS                                      - 8 -
CASE NO. 2:23-CV-1016

Kilpatrick Townsend & Stockton LLP,
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600)

waiver of the legal right to bring a breach of contract claim. Instead, *Silver States* discusses waiver in the context of election of remedies doctrine that "applies where two possible remedies are available for the same legal injury" to prevent double collection of damages. *Silver States Land LLC v. United States*, 155 Fed. Cl. 209, 214 (Ct. Cl. 2021) (quotation omitted). For breach of contract, the election of remedies doctrine prevents Valve from collecting both expectation and restitution damages." *Id.* Instead, Valve has two options regarding the form of damages: "allege a total breach, terminate the contract and bring an action [for restitution], or, instead, elect to keep the contract in force, . . . and recover those damages caused by that partial breach[.]" *Id.* (alterations in original) (quotation omitted). *Silver States* is both premature and inapplicable here: Valve will only seek one form of damages arising from Defendants' breach of the GSLA supported by evidence developed during fact discovery. There is no risk of double recovery simply by bringing a breach of contract claim, nor have Defendants alleged otherwise.

*Second*, Defendants take issue with the characterization of Mr. Falcucci's correspondence that preceded Display Technologies 2022 lawsuit against Valve. Dkt. 40 at 15. Specifically, Defendants assert that "Mr. Falcucci did not write to [Valve] on behalf of" Display Technologies (*id.*), which directly contradicts Valve's allegations that "Mr Falcucci's demands included that Valve take a license to at least two patents assigned to Display Technologies," including the '723 Patent at issue in the 2022 lawsuit and to which Valve already had a license (Dkt. 38, ¶¶ 18-21). Valve's allegations are presumed to be true, and any factual dispute should not be resolved at a motion to dismiss. *Retail Prop. Tr.*, 768 F.3d at 945. Further, even if Defendants were correct (they are not), whether Mr. Falcucci wrote on behalf of Display Technologies does not negate the fact that Display Technologies filed a lawsuit against Valve in breach of the GSLA. Dkt. 38, ¶¶ 23-24.

*Third*, Defendants' assertions that "a demand letter . . . is not the same as filing a lawsuit" is irrelevant and does not foreclose Valve's claims as a matter of law. As discussed above, even setting aside Mr. Falcucci's demand letter, Display Technologies breached the GSLA by filing the 2022 lawsuit asserting a patent to which Valve was already licensed. Dkt. 38, ¶¶ 19-21. Yet even

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS                                      - 9 -
CASE NO. 2:23-CV-1016

Kilpatrick Townsend & Stockton LLP,
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600)

1   Mr. Falcucci's letters can be considered a breach because, as described above, a demand letter is

2   an "assertion" under the GSLA and thus can be a breach of the GSLA. *Supra* § **Error! Reference**

3   **source not found.**. Defendants' disputes regarding whether Mr. Falcucci's correspondence were a

4   "demand" are fact-intensive issues of contract interpretation that should be subject to discovery

5   and not ripe for adjudication on a motion to dismiss. *Thomas v. State Farm Mut. Auto. Ins. Co.*,

6   No. C22-1730-JCC, 2023 WL 2611889, at*2 (W.D. Wash. Mar. 23, 2023) ("[I]t is black letter law

7   that, at this stage, the Court must draw reasonable inferences *in Plaintiff's* favor … By urging the

8   Court to interpret the [contract] in their favor, Defendant would ask the Court to do the opposite,

9   which it cannot do on a Rule 12(b)(6) motion." (citation omitted) (emphasis in original)).

10      Because Valve plausibly alleged actual and anticipatory breach of contract against both

11   RBDS and Display Technologies, and because Defendants do not dispute that Leigh Rothschild

12   controls these entities (Dkt. 40 at 16), Valve's allegations against Leigh Rothschild are also

13   sufficient.

14      The Court cannot credit Defendants' self-serving statements made for the first time in its

15   motion to dismiss over Plaintiff's well-pleaded allegations in its Complaint. Therefore,

16   Defendants' motion to dismiss Count III should be denied.

17   **C.    The Complaint Plausibly Alleges a Violation of Washington's Patent Troll**
18   **        Prevention Act**

19          1.    Defendants Ask the Court to Improperly Weigh Evidence at the Pleading
                 Stage

20      Defendants' arguments for dismissal of Count IV amount to nothing more than a request to

21   have the Court weigh evidence, which is inappropriate at this stage in the case. *See, e.g.*, Dkt. 40 at

22   18 ("Plaintiff has therefore failed to allege facts sufficient to show that Defendants' assertion of

23   infringement of the '221 patent was not made in good faith, particularly when the factors that

24   Plaintiff chose to ignore all support such a conclusion."). At this stage in the case, however, the

25   Court must accept Valve's allegations as true. Any weighing of factors is only appropriate after

26   discovery. *See, e.g., Gunn v. Drage*, 65 F.4th 1109, 1120 (9th Cir. 2023) ("[W]here a defendant

27   asserts "a factual challenge," courts must treat the motion to strike as "a motion for summary

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS                                          - 10 -
CASE NO. 2:23-CV-1016

Kilpatrick Townsend & Stockton LLP,
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600)

judgment," triggering discovery."). It is inappropriate to weigh Defendants' bad faith actions against any good faith actions (which are nowhere to be found in Valve's complaint) at the pleading stage.

Moreover, Defendants argue that because Valve failed to address the "good-faith" factors at all, it has not pleaded a claim upon which relief can be granted. No court has held that such factors must be mentioned in the complaint to plausibly plead a claim for violation of the Patent Troll Prevention Act. Nor have Defendants adduced any reason "good-faith" factors would be required. Defendants' unsupported argument should be rejected.

2.    <u>Defendants Mischaracterize Valve's Complaint</u>

In addition to their request to improperly weigh the enumerated factors of the Patent Troll Prevention Act, Defendants repeatedly mischaracterize the allegations made in Valve's complaint in an attempt to distance themselves from their repeated bad-faith threats against Valve.

*First*, Defendants allege that they cannot meet RCW 19.350.020(2)(f) because "[a]s conceded in the FAC . . . no court has ever found Defendant's assertions of infringement to be without merit or containing false, misleading, or deceptive information." Dkt. 40 at 16. Valve did not so concede. Valve only noted that Defendants' assertions *of the '221 Patent* had not yet been found to be meritless, due to Defendants' litigation strategy of avoiding any substantive decisions on the merits of its allegations. The Complaint sets forth facts that confirm that "courts have found that patent claims made by other Rothschild-controlled entities are without merit" and one court "found [Rothschild's assertions of patent infringement] to be so lacking in merit that it awarded fees to the opposing party." Dkt. 38, ¶ 89(b); Dkt. 38-3 at 3 ("And Rothschild has been hit with fee awards for filing objectively baseless lawsuits against defendants who clearly did not infringe his patents."). RCW 19.350.020(2)(f) considers not just the actions of Defendants but their subsidiaries and affiliates. Valve's allegations that claims made by Rothschild's subsidiaries and affiliates have been found meritless must be taken as true and are relevant under Factor (f). *See, e.g.*, *Iten v. Los Angeles*, No. 22-55480, 2023 WL 5600292, at *3 (9th Cir. Aug. 30, 2023) ("We assume all [Plaintiff's] allegations to be true and draw all reasonable inferences in his favor.").

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS                                     - 11 -
CASE NO. 2:23-CV-1016

Kilpatrick Townsend & Stockton LLP,
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600)

Defendants also assert, without analysis or support, that a case involving a different Rothschild entity and different patent is *per se* not "based on the same or substantially equivalent assertion of patent infringement." Dkt. 40 at 17. Such analysis, however, can only be performed once discovery into the full scope of Defendants' affiliates' and subsidiaries' meritless assertions of infringement is complete. Without the benefit of discovery, it is improper to determine whether such meritless assertions are "the same or substantially equivalent assertion of patent infringement" to Defendants' assertion of the '221 Patent. Valve's allegations that lawsuits filed by Rothschild affiliates and subsidiaries have been found without merit are relevant to a determination of whether a violation of the Patent Troll Prevention Act has occurred. Valve's allegations are plausible on their face and will be further refined as Valve seeks discovery into Defendants' "pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims." *Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*, 858 F.3d 1383, 1390 (Fed. Cir. 2017).

*Second*, Defendants attempt to recast Mr. Meyler's June 2023 Demand letter as a "clerical error" rather than a bad-faith assertion of patent infringement. Again, Defendants assertions are self-serving, unsupported by evidence, and mischaracterize the allegations in the complaint. *See, e.g.*, Dkt. 38, ¶¶ 82, 87-90. Valve's allegations of bad faith must be taken as true. *See, e.g.*, *Iten*, 2023 WL 5600292, at *3. Nor can the Court consider Defendants' assertions extrinsic to the Complaint. *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1059 (9th Cir. 2023) ("[W]hen presented with 'matters outside the pleadings' in connection with a motion to dismiss for failure to state a claim under Rule 12(b)(6) . . . , the district court may choose to exclude such extrinsic matters and address the motion under the applicable Rule 12 standards, or it may convert the motion into "one for summary judgment under Rule 56.").

Valve has alleged that Mr. Meyler knew of the GSLA prior to sending the June 2023 Demand Letter, and that he was sent a copy of the GSLA by Valve. Dkt. 38, ¶ 89(c). Valve also alleged that Mr. Meyler's twice-repeated tactic of seeking additional money for a license to a

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS
CASE NO. 2:23-CV-1016

- 12 -

Kilpatrick Townsend & Stockton LLP,
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600)

1   patent already covered by the GSLA amounts to bad faith assertion of patent infringement. Dkt.

2   38, ¶¶ 89-90. Accepted as true, these well-pled allegations are evidence of bad-faith patent

3   infringement under RCW 19.350.020(2)(g) and are sufficient to "state a claim to relief that is

4   plausible on its face." *Ashcroft*, 556 U.S. at 678.

5        In sum, none of Defendants' arguments regarding the Patent Troll Prevention Act go to the

6   sufficiency of Valve's allegations or allege that Valve is legally barred from seeking relief under

7   the Patent Troll Prevention Act. Instead, Defendants attempt to contradict factual allegations in the

8   Complaint, identify factual disputes that are best explored during discovery, and ask the Court to

9   weigh factors based on a completely undeveloped record. These arguments are insufficient to

10  overcome Valve's factual allegations in the Complaint, taken as true.

11       Defendants' motion to dismiss Count IV should be denied.

12       **D.    Valve Stated a Claim Against the Myler Defendants**

13              1.    The Meyler Defendants Cannot Invoke the Litigation Privilege

14       The litigation privilege cannot provide the Meyler Defendants absolute immunity from

15  abuse of the legal system as contemplated in the Patent Troll Prevention Act. Doing so would

16  violate the public policy considerations underlying the privilege and undermine the integrity of the

17  judicial process. Further, the litigation privilege does not apply to Valve's allegations against the

18  Meyler Defendants because they are not "statements made in the course of a judicial proceedings."

19  *Young v. Rayan*, 533 P.3d 123, 128 (Wash. Ct. App. 2023) (emphasis added). The litigation

20  privilege does not extend to private communications between two private parties when there is no

21  pending litigation.

22       *First*, litigation privilege should not extend to allegations under Washington Patent Troll

23  Prevention Act. Courts have excluded from the scope of the litigation privilege allegations against

24  attorneys "for the tortious use of the legal process," including claims of abuse of process or

25  malicious prosecution. *Scott v. Am. Express Nat'l Bank*, 22 Wash. App. 2d 258, 265, *review denied*,

26  200 Wash. 2d 1021 (2022) (explaining that litigation privilege does not extend to malicious

27  prosecution or malicious use of the legal system); *see also Mason v. Mason*, 19 Wash. App. 2d 803,

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS
CASE NO. 2:23-CV-1016

- 13 -

Kilpatrick Townsend & Stockton LLP,
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600)

835 (2021), *review denied*, 199 Wash. 2d 1005 (2022) ("Consequently, litigation privilege does not apply, and an attorney can be liable for abuse of process . . . ."). Washington's Patent Troll Prevention Act is exactly the type of tortious use of the legal process that has been excluded from the litigation privilege. The Washington Legislature passed the Patent Troll Prevention Act to "protect Washington's economy from abusive and bad faith assertions of patent infringement." RCW 19.350.005. These "abusive and bad faith assertions of patent infringement" are nearly identical to the abuse of process and malicious prosecution claims that Washington courts have declined to immunize attorneys from. Like an abuse of process claim, integral to a violation of the Patent Troll Prevention Act is "abusive" and "bad faith" conduct, which is "not related to the *legitimate* purposes of a judicial proceeding." *Mason*, 19 Wash. App. 2d at 835 (emphasis added).

The public policy underlying litigation privilege would not be served by allowing the Meyler Defendants to invoke such broad absolute privilege to avoid liability for violating the Washington Patent Troll Prevent Act. Immunizing the Meyler Defendants from violation of the Patent Troll Prevention Act would immunize them from "misappropriate[ing] a judicial proceeding to achieve an improper and extrinsic end," which "neither preserves 'integrity of the judicial process,' nor 'further[s] the administration of justice.'" *Id.* at 837 (second alternation in original) (internal citations omitted). Moreover, because of the "extraordinary scope" of the litigation privilege, courts will not apply the litigation privilege where there are no "safeguards to prevent abuse of the privilege." *Story v. Shelter Bay Co.*, 52 Wash. App. 334, 338, 760 P.2d 368, 371 (1988) (holding that absolute privilege does not extend to "proceedings which, although official and public, are not judicial in substance, as a nonjudicial forum may lack safeguards to prevent abuse of the privilege"). Therefore, "absolute privileges have been limited to situations in which authorities have the power both to discipline persons whose statements exceed the bounds of permissible conduct and to strike such statements from the record." *Moore v. Smith*, 89 Wash. 2d 932, 937, 578 P.2d 26, 29 (1978); *see also Mason v. Mason*, 19 Wash. App. 2d 803, 832 (2021), *review denied*, 199 Wash. 2d 1005 (2022) ("Safeguards inherent to the judicial process, such as swearing an oath, cross-examination, and the threat of perjury, ensure the reliability of testimony.").

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS                                                    - 14 -
CASE NO. 2:23-CV-1016

Kilpatrick Townsend & Stockton LLP,
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600)

1        No such safeguards would apply to the statements of the Meyler Defendants alleged in this

2  action if the claims are dismissed against them. If the Myler Defendants were given absolute

3  privilege from litigation for all private communications made outside of any pending judicial

4  proceeding, there would be essentially no safeguards to prevent such abuse of that absolute

5  privilege. *Story*, 760 P.2d at 371. In light of these lack of safeguards and consistent with courts'

6  exclusion of similar abuse of process claims, the Court should find that the litigation privilege does

7  not apply to the Meyler Defendants' violation of the Washington Patent Troll Prevention Act.

8        *Second*, the Meyler Defendants communications in the June 2023 demand letter were not

9  made during the course of any litigation or judicial proceeding, as alleged in the Complaint. Dkt.

10  38, ¶ 86 ("To avoid any doubt, [the June 2023] demand letter was a private communication between

11  two private parties outside of the context of any judicial or quasi-judicial proceeding."). Nor did

12  Defendants identify any connection to any actual pending judicial proceeding that these

13  communications were allegedly related to. Dkt. 40 at 19.[4] "[S]tatements made during an occasion

14  outside a judicial proceeding are not covered." *Kurczaba v. Pollock*, 318 Ill. App. 3d 686, 706

15  (2000). Valve's allegation that the Meyler Defendants' communications were outside the context of

16  any judicial or quasi-judicial proceeding must be taken as true.

17        Moreover, Defendants have not cited a case where the litigation privilege was applied to

18  statements or actions made when there was no pending litigation or judicial proceeding. Indeed,

19  Defendants only cite two cases that allegedly state the proposition that litigation privilege may

20  apply to "communications preliminary to a proposed judicial proceeding." Dkt. 40 at 18-19.

21  However, neither of those cases support the extension of the litigation privilege doctrine that

22  Defendants advocate for here. In *Engelmohr,* the Supreme Court of Washington held that a

23  statement made before an administrative body that was not conducted in a quasi-judicial proceeding

24  did ***not*** have the benefit of the absolute litigation privilege. *Engelmohr v. Bache*, 66 Wash. 2d 103,

25

26  [4] Defendants reply responding to identical arguments in the prior briefing regarding the First Amended Complaint purport to identify the retaliatory lawsuits filed in Eastern District of Texas as well as this lawsuit itself pending judicial proceedings in June 2023. Dkt. 36 at 8-9. This is false.

27  Valve filed its original complaint in July 2023. These retaliatory lawsuits were filed after Valve

28  filed its complaint in this action.

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS      - 15 -
CASE NO. 2:23-CV-1016

Kilpatrick Townsend & Stockton LLP,
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600)

107 (1965). In *Demopolis*, allegedly defamatory statements made outside the courtroom but during the pendency of court proceedings were also not found to be privileged. *Demopolis v. Peoples Nat. Bank of Washington*, 59 Wash. App. 105, 110 (1990) As the Court in *Demopolis* acknowledged, "an absolute privilege is allowed only in 'situations in which authorities have the power to discipline as well as strike from the record statements which exceed the bounds of permissible conduct.'" *Id*. (quotation omitted). Here, none of the Myler Defendants' actions or statements were made in the context of a judicial or quasi-judicial proceeding, nor were they made in a situation in which authorities had the power to strike the statements. Thus, the statements should not be given absolute privilege. Dkt. 38, ¶ 86.

The text of the Patent Troll Prevention Act is consistent with limiting the litigation privilege to applying only to statements made during an active litigation or judicial proceeding. The Patent Troll Prevent Act includes in its definitions "[s]ending or delivering a demand to a target," "[t]hreatening a target with litigation," and "otherwise making claims or allegations." RCW 19.350.010(1)(a)-(d). These examples are precisely the extra-judicial actions taken by the Meyler Defendants (who, as alleged in the Complaint, has access to and was aware of the terms of the GSLA when they sent the June 21, 2023 demand letter to Valve (Dkt. 38, ¶ 23, 29-30)) on behalf of the other Defendants. Dkt. 82-90. The Patent Troll Prevent Act excludes from the definition of "Assertion of patent infringement" allegations "made in litigation against a target" because those assertions are the type of statements that would likely be covered under the litigation privilege. RCW 19.350.010(1)(d) (emphasis added).

Adopting Defendants' interpretation of litigation privilege would allow an attorney to shield themselves from all repercussions for both their speech and actions merely by claiming it was related to "their representation of their clients and communication(s) on behalf of their clients." Dkt. 40 at 19. That is not the law. *See, e.g., US Dominion, Inc. v. Powell*, 554 F. Supp. 3d 42 (D.D.C. 2021), *appeal dismissed sub nom. US Dominion, Inc. v. My Pillow, Inc*., 2022 WL 774080 (D.C. Cir. Jan. 20, 2022), *cert. denied sub nom. MyPillow, Inc. v. US Dominion, Inc*., 143 S. Ct. 294 (2022) (denying defendant Sydney Powell's motion to dismiss defamation claims related to the

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS
CASE NO. 2:23-CV-1016

- 16 -

Kilpatrick Townsend & Stockton LLP,
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600)

1    2020 presidential election because "an attorney's out-of-court statements to the public can be

2    actionable, even if those statements concern contemplated or ongoing litigation.").

3          To the extent Defendants now attempt to create a fact dispute regarding the context of the

4    Meyler Defendants' communications, that is inappropriate to resolve at the pleading stage without

5    the benefit of discovery. *Gunn*, 65 F.4th at 1120 ("[W]here a defendant asserts "a factual

6    challenge," courts must treat the motion to strike as "a motion for summary judgment," triggering

7    discovery."). Further, to the extent there is any question of whether the litigation privilege should

8    apply, the application of the litigation privilege is fact intensive and should not be resolved at the

9    motion to dismiss stage. *See, e.g.*, *Demopolis*, 59 Wash. App. at 111(1990) ("Resolution of the issue

10   is hampered by the lack of a record from the estate litigation, and by the fact-specific nature of

11   relevant decisions from this and other jurisdictions.") (collecting cases).

12         Defendants' motion to dismiss the Meyler Defendants should be denied.

13         **E.      The GSLA Explicitly Authorizes Valve to Seek Damages**

14         Defendants' argument yet again misdirects the Court to an inapplicable and irrelevant

15   section of the GSLA to argue that Valve is not entitled to any damages for any claim in this case

16   against any Defendant. Dkt. 40 at 19-20. This argument fails.

17         Section 6.2 of the GSLA confirms that Valve may seek damages for breach of the GSLA,

18   including the damages sought by Valve in this case: "the Parties reserve all rights and remedies,

19   including damages and equitable relief, for breach of this Agreement by the other Party." Dkt. 38-

20   1 at 7, ¶ 6.2. Section 6.2 confirms that "nothing herein . . . prevents any Party from enforcing the

21   terms and conditions of this Agreement against the other." *Id.* Defendants misdirect the Court to

22   Section 9.5 which involves damages and liabilities "arising out of, or in connection with, this

23   Agreement." Dkt. 40 at 19-20 (quoting Dkt. 38-6 at 11, ¶ 9.5). On its face, Section 9.5 deals with

24   damages and liabilities incurred through *compliance* with the terms of the Agreement—not

25   breach. The GSLA expressly and unambiguously permits damages and equitable relief for breach.

26         To the extent there is any ambiguity in the Agreement language, it would be inappropriate

27   to resolve that ambiguity at the motion to dismiss stage. *Bedrosian v. Tenet Healthcare Corp.*, 208

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS
CASE NO. 2:23-CV-1016

- 17 -

Kilpatrick Townsend & Stockton LLP,
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600)

F.3d 220 (9th Cir. 2000) (unpublished opinion) ("Resolution of contractual claims on a motion to dismiss is proper if the terms of the contract are unambiguous."). Any such ambiguity should benefit from the parties being able to take discovery on these issues.

The only case cited by Defendants supports denial of dismissal. *Negrel v. Drive N Style Franchisor SPV LLC*, No. SACV1800583JVSKESX, 2018 WL 6136151, at *5 (C.D. Cal. Aug. 27, 2018). The *Negrel* court did not resolve issues of contract interpretation at the pleading stage. Instead, in *Negrel*, defendants moved to dismiss plaintiff's claims for punitive, exemplary, incidental, special, and consequential damages as waived under the Franchise Agreement. *Id.* at *5. Plaintiff disputed that such damages were waived because any waiver provision in the Franchise Agreement are unconscionable and unenforceable and prohibited by state law. *Id.* At the pleading stage, the court resolved only the fact that the waiver provision of the Franchise Agreement was inconsistent with California Civil Code § 1668. *Id.* at *7-8. The court declined to resolve whether a contract clause was unconscionable at the dismissal stage. *Id.* at *6 (noting that the analysis of unconscionability is "highly fact-specific"). Similarly, any resolution of allegedly ambiguous contract language is also highly fact-specific and should not be resolved without the opportunity to develop evidence.

Defendants' motion to dismiss Count III should be denied.

### F. Should the Court Grant in Full or in Part Defendants' Motion, Valve Should Be Granted Leave to Amend

Should the Court grant in full or in part any of Defendants' arguments, such a grant should be without prejudice and allow Valve leave to amend the Complaint. *Olympus Spa v. Armstrong*, No. 22-CV-00340-BJR, 2023 WL 3818536, at *18 (W.D. Wash. June 5, 2023) (granting leave to amend because there was no bad faith, undue delay, or prejudice to defendants given the early nature of the proceedings and cannot say that the amendment would be futile).

### III.   CONCLUSION

Defendants' motion to dismiss is based on identifying factual disputes that should not be resolved at the pleading stage and misdirecting the Court to irrelevant contract terms and legal. Each of Defendants' arguments should be denied.

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS                                    - 18 -
CASE NO. 2:23-CV-1016

Kilpatrick Townsend & Stockton LLP,
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600)

1

2

DATED:  February 20, 2024          Respectfully submitted,

3                                   KILPATRICK TOWNSEND & STOCKTON LLP

4

5                                   By: */s/ Kathleen R. Geyer*
                                        Dario A. Machleidt (State Bar No. 41860)
6                                       Kathleen R. Geyer (State Bar No. 55493)
                                        Christopher P. Damitio (State Bar No. 58633)
7                                       1420 Fifth Avenue, Suite 3700
                                        Seattle, WA 98101
8                                       Telephone:  (206) 467-9600
                                        dmachleidt@kilpatricktownsend.com
9                                       kgeyer@kilpatricktownsend.com
                                        cdamitio@kilpatricktownsend.com

10                                  Attorneys for Plaintiff
                                    VALVE CORPORATION
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS                    - 19 -
CASE NO. 2:23-CV-1016

Kilpatrick Townsend & Stockton LLP,
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600)