```
 1                    UNITED STATES DISTRICT COURT

 2              WESTERN DISTRICT OF WASHINGTON AT SEATTLE

 3      _____

                                    )
 4      VALVE CORPORATION,          ) CV23-01016-JNW
                                    )
 5                     Plaintiff,    ) SEATTLE, WASHINGTON
                                    )
 6      v.                          ) September 20, 2024 -
                                    ) 10:00 a.m.
 7      LEIGH ROTHSCHILD, ROTHSCHILD )
        BROADCAST DISTRIBUTION       )
 8      SYSTEMS, LLC, DISPLAY        ) MOTION HEARING
        TECHNOLOGIES, LLC,          )
 9      PATENT ASSET MANAGEMENT, LLC,)
        MEYLER LEGAL, PLLC, AND SAMUEL)
10      MEYLER,                      )
                                    )
11                     Defendants.   )
                                    )
12      _____

13                  VERBATIM REPORT OF PROCEEDINGS
                BEFORE THE HONORABLE JAMAL N. WHITEHEAD
14                 UNITED STATES DISTRICT JUDGE

15      _____

16      APPEARANCES:

17      For the Plaintiff:     Dario Machleidt
                               Christopher P. Damition
18                             Kathleen Geyer
                               Kilpatrick Townsend & Stockton LLP
19                             1420 5th Avenue
                               Suite 3700
20                             Seattle, WA 98101

21

22      For the Defendants:    Donald R. McPhail
                               Merchant & Gould
23                             1900 Duke Street
                               Suite 600
24                             Alexandria, Virginia 22314

25
```

Proceedings stenographically reported and transcript produced with computer-aided technology

Nickoline Drury, RMR, CRR - Federal Court Reporter - (206)370-8508 - 700 Stewart Street, Suite 17205, Seattle, WA  98101

 1          THE COURT:  Please be seated.

 2      This is the matter of Valve Corporation versus Rothschild, et

 3  al., Cause No. CR23-1016, assigned to this court.

 4      Will counsel please rise and make their appearances for the

 5  record?

 6          MR. MACHLEIDT:  Your Honor, Dario Machleidt on behalf of

 7  Valve.  Starting at the end of the table, we have Chris Damition

 8  and then Kate Geyer, both, also, outside counsel for Valve, and

 9  then next to me is Chris Schenck, in-house counsel for Valve.

10          THE COURT:  Very good.  Good morning, all.

11          MS. GEYER:  Good morning.

12          MR. SCHENCK:  Good morning.

13          MR. MCPHAIL:  Don McFail of Merchant & Gould for all of

14  the defendants.  Good morning, Your Honor.

15          THE COURT:  Good morning.

16      All right.  Well, we are here this morning on defendants'

17  motion to dismiss.  This has been pending longer than I'd like,

18  so I do apologize for that, but we are here today.  I'm not going

19  to rule from the bench, but I do suspect that we will have a

20  ruling for you all in very short order.

21      So with that, let's hear from defendants here.  We will start

22  with defendants, we will go to plaintiff, and then we will give

23  defendants the final word.

24          MR. MCPHAIL:  Thank you, Your Honor.  Thank you very

25  much.

1       This case is, to be blunt, a monumental waste of the court's
2  resources and time.  What could have been resolved with a simple
3  e-mail has been turned into a federal case by Valve.  There's no
4  reason that we should be here; there's no reason we should be
5  using the court's time; there's no reason so many lawyers should
6  be in this courtroom.

7       In terms of the declaratory judgment action, the case law is
8  very, very clear that an enforceable covenant not to sue divests
9  this court of jurisdiction on patent validity and enforceability
10  claims.  They have an enforceable covenant not to sue.  To the
11  extent that is not sufficient for them, we have offered to give
12  them whatever covenant they need, we will put in any language
13  they want, but there are no grounds for this court to be looking
14  at the validity or enforceability of any patent in this matter.

15       THE COURT:  Well, I mean, to the extent there are
16  grounds, I mean, isn't this a case of Rothschild perhaps creating
17  this case or controversy?  I mean, that's certainly what they
18  have alleged here.  You're right, I mean, I have looked at the
19  case law about covenants not to sue, and I think it's fairly
20  clear in its operation, but in looking at those cases, I really
21  struggle to find one that matched up with this scenario, where we
22  have got agreements that were made, expectations settled between
23  the parties, and then the patent holder sending out demand
24  letters, detailed demand letters at that, perhaps creating a case
25  or controversy.  So what am I do with that?  I mean, we have got

1   affirmative acts by the Rothschild defendants perhaps putting the

2   patent '221 into play.

3           MR. MACHLEIDT:  Even with the letters, with the covenant

4   not to sue, they could never have brought suit under the '221

5   patent, right?  That would have been their immediate defense.

6   They could have dismissed any action for infringement on that

7   covenant not to sue.  We would have had no response to it.

8       What you have here is an unfortunate situation of a couple of

9   clerical errors, the first due to an attorney who was very ill

10  and passing at the time, and the second to a new attorney to the

11  whole field.  Each time -- in the first instance, they resolved

12  it by sending a letter.  The case was immediately dismissed.

13  They could have done the same thing here on the demand letters,

14  just a simple e-mail back saying:  Guys, here's a reminder, we

15  have a license to this patent.  That would have been the end of

16  it.  But, instead, they have decided they want to file a case and

17  bring us all here into court.

18          THE COURT:  I mean, is that really their burden?

19  Perhaps with the earlier action on the '723 patent, maybe, but we

20  have got perhaps a repeated course of conduct on the part of the

21  Rothschild defendants in asserting -- alleging, I should say,

22  infringement against someone that has a license.  So, again, what

23  am I do with that when I'm looking at the totality of the

24  circumstances?

25          MR. MCPHAIL:  Well, in that letter you're referring to,

1   the June 2023 letter, there were three patents raised.  In two of

2   those, there were actually colorable claims for infringement.  It

3   was only one of those patents where they had a license, the '221.

4   So, again, I don't deny that it was an error on the part of the

5   Rothschild defendants to even include that in the letter, but it

6   could have been resolved by them just responding again.  Is it

7   their burden to do that?  I think it's their burden to avoid

8   bringing an action where there's no real damage, there's no real

9   controversy other than the fact that they're annoyed.  And I'm

10  sorry they're annoyed.  We've promised we will never do it again.

11  I can promise you it will never happen again.  But it did happen

12  twice.

13          THE COURT:  The law would couch it in terms of

14  reasonable apprehension of litigation.  I mean, I think that's

15  what they've have alleged, in looking at these letters and the

16  course of conduct, is a reasonable apprehension.

17      So tell me this, I mean, if this case were to proceed, would

18  the Rothschild defendants raise counterclaims of infringement?

19          MR. MCPHAIL:  Yes, in this instance, we would.  We would

20  raise breach of contract and patent infringement.

21          THE COURT:  All right.  What else would you like to tell

22  me?

23          MR. MCPHAIL:  In terms of the contract actions, we've

24  just been sort of talking about that.  I will concede to you that

25  there was a breach of the contract in 2022, but that breach was

1    remedied promptly, and they never bothered to raise anything

2    about it until the June letters and this whole action was

3    brought.  We think they waived any right to complain about it,

4    but even if they hadn't, there were no damages that arose from

5    that.  It was inconvenience.  They wrote a letter back to us,

6    that's it.  I don't see how there's any damages there even if

7    there was a technical breach of the contract.  Again, no reason

8    for this court to be dealing with this.

9        And in terms of the Washington State Patent Troll Act, I have

10   to confess, I'm walking in unchartered territory.  It's my

11   understanding this is the only case that has ever been brought

12   that invokes that statute in a private party action.  My

13   understanding is the only other action was brought by the

14   Washington State Attorney General against *Landmark.*  And this

15   case is not *Landmark.*  Mr. Rothschild is not *Landmark.*  He is an

16   inventor himself.  He is a prolific inventor.  He has a lot of

17   his own patents and he's acquired a lot of patents.  He learned

18   the value of patents.  And I'm not going to deny that he does try

19   to enforce those patents when he thinks there's an opportunity to

20   do so, but that in and of itself is not a bad act.  He has

21   justifiable grounds.  Investigations are done before any letters

22   are ever sent.  There are claim charts usually associated with

23   his letters.  This isn't frivolous.  This isn't Shipping and

24   Handling sending out thousands of letters and settling for $5,000

25   a pop.  These are legitimate claims, to the extent they exist,

1   and that's the sort of thing that the Washington State Troll Act

2   I think is supposed to be permitting.  It shouldn't be

3   foreclosing it.

4       If you take their position, it's going to have a tremendous

5   chilling effect on patent owners.  They will be unable to send

6   out notice letters without fear that all of a sudden someone is

7   going to raise a private cause of action under the Washington

8   State Patent Troll Act.  So we don't think that has any grounds

9   to be a part of this case either and that should also be

10  dismissed.

11      And the final thing is the issue of damages.  To the extent

12  they're entitled to damages under the settlement agreement from

13  2016, they haven't actually suffered any damages.  They have been

14  inconvenienced, but their business has not been harmed in any

15  way.  They have suffered no actual loss.  There's nothing here

16  for the court to judge on.  There's nothing here for the court to

17  give them.  They, at best, have some attorneys' fees, but that in

18  and of itself is not a damage.  And so we think this case should

19  be dismissed.  There's no reason it should be here.

20          THE COURT:  All right.

21          MR. MCPHAIL:  Thank you.

22          THE COURT:  Thank you.

23          MR. MACHLEIDT:  Your Honor, Dario Machleidt on behalf of

24  Valve.

25      Can you see the slides?  And you should have a hard copy with

1    you.

2         THE COURT:  Yes, I have got them in front of me now.

3    Thank you.

4         MR. MACHLEIDT:  Your Honor, there's plenty that defense

5    counsel just went into that I will respond to, but I want to

6    begin with this point:  The actions of Mr. Rothschild, his

7    companies, and his lawyers are exactly the type of conduct that

8    the Washington Troll Act is meant to stop.  They repeatedly

9    asserted licensed patents against Valve despite the fact that

10   Valve sent them, sent their lawyer, the license agreement;

11   therefore, reminded them about the agreement.  They still kept

12   going after Valve again and again.  I understand that the

13   defendants wish Valve had not brought this lawsuit, but nothing

14   that they have argued, nothing that they have raised, justifies

15   dismissing the case, certainly not at this stage.

16        Your Honor, I do think it helps to begin with the cause of

17   action for a violation of the Washington Troll Act.  I think when

18   you look at the facts and the evidence that we have alleged, that

19   you see in the complaint, that gives rise to our Troll Act claim,

20   that sort of colors every other cause of action and allows you to

21   see why none of their arguments in favor of dismissal carry any

22   weight.

23        THE COURT:  Okay.  Yeah, I mean, I will certainly hear

24   you out if you're saying this is going to contextualize other

25   arguments, but, I mean, you know, starting with jurisdiction

1    seems like the logical place to me.  I mean, they're arguing that

2    the court is divested of jurisdiction by the covenant not to sue,

3    that there isn't a case or controversy.  So I'll listen to you

4    now and I will look at the slides, but, you know, it's important

5    that we make that connection because that's really the threshold

6    question:  Can I hear this?

7         MR. MACHLEIDT:  Absolutely, Your Honor.  I'm happy to

8    ping-pong to the relevant part of the slides because, I agree, it

9    is certainly a threshold question.

10        And I think the way you phrased it to defense counsel is

11   exactly right.  The court takes into account the totality of the

12   circumstances.  That's what the Federal Circuit cases talk about.

13   We have *Gen-Probe* here on the slide, that's one of the examples,

14   and that's why the covenant not to sue never starts and stops the

15   inquiry.  You have to look at everything around it.  And as you

16   pointed out here, we have breaches, we have -- Valve has

17   plausibly alleged material breaches of the license agreement and,

18   therefore, the covenant not to sue.  That did not happen

19   factually in the *Gen-Probe* case because -- I'll admit, I have not

20   found a published decision where the licensor, not once but

21   multiple times, breached the license by going after the licensee

22   either with a lawsuit, here, for example, the *Display*

23   *Technologies* case on the '723 patent.  That was a breach.

24   Defense counsel -- and I respect that he admitted it.  That was a

25   breach.  That takes this case out of all of the decades of

1  history that the defendants referred to in their briefing about
2  the importance of a covenant not to sue.
3     And the same is true for the letter that Mr. Meyler sent in
4  June of 2023.  That was, yet again, another breach of the
5  agreement and, therefore, the covenant not to sue.  And you see
6  the language that the Federal Circuit talks about here in
7  *Gen-Probe.*  When you have a material breach, all bets are off.
8  You cannot breach that agreement and then in court rely on it to
9  the detriment of the licensee.  It's not a heads-they-win-
10 tails-we-lose situation.  That's why this court absolutely has
11 declaratory judgment jurisdiction.
12    Valve had a reasonable apprehension of suit.  You will see
13 the timeline, it's in the slides, and I will touch on it in a
14 moment, but this was not a one-off instance where an errant
15 letter went to the wrong party.  Mr. Rothschild, his company, and
16 his lawyers know what they were doing.  They are very experienced
17 in patent assertion.  I believe defense counsel called Mr.
18 Rothschild a prolific inventor.  I have no opinion on that at the
19 moment.  He is certainly a prolific patent asserter, and they
20 went after Valve again and again and again.
21    When you look at the totality of the circumstances, this
22 court has declaratory judgment jurisdiction to hear Valve's
23 claims for both invalidity and unenforceability.
24    I will answer any questions you have, of course, Your Honor,
25 but if I may add --

1          THE COURT:  Go ahead.

2          MR. MACHLEIDT:  -- not once have the defendants

3   responded to our arguments about *Gen-Probe* and the fact that even

4   the Federal Circuit has focused on the relevance of a material

5   breach.  Perhaps defense counsel will say something in his

6   rebuttal.  You mentioned he gets the last word.  If he does,

7   whatever he says about *Gen-Probe* will be the first that Valve has

8   heard of it.  They simply cannot get around the fact that they

9   have created the situation here and they have to contend with it.

10          THE COURT:  All right.  And I think that's what I'm

11   coming back to, just sort of the fundamental nature of what it is

12   that we're dealing with here.  I mean, is there truly a

13   reasonable apprehension, given that we have a broad, robust

14   covenant not to sue?  I mean, it simply took an e-mail, as it

15   relates to the '723 litigation, to get the Rothschild defendants

16   to back off.

17      So, I mean, is there a case or controversy around, you know,

18   the validity of the patent or am I really looking at a lawsuit

19   about a breach of a prior settlement agreement and perhaps

20   enforcement of this Washington statute, the Patent Troll statute?

21   I mean, is this something that should be in state court?

22          MR. MACHLEIDT:  No, Your Honor.

23      And to your broad question, the answer is yes, Valve's causes

24   of action fit under everything you just said.  This is a

25   declaratory judgment case.  The facts justify that.  It is also a

 1   case about breach.  It is also a case about the Washington Troll

 2   Act.

 3        And to sort of get to the first point you touched on, this,

 4   right here on the slide, is the Mr. Meyler letter from June of

 5   2023.  I believe the question you asked was, you know, is there

 6   an apprehension of suit, and you certainly touched on that when

 7   speaking with defendant counsel.  The answer is yes.  You see

 8   that in this letter.  And mind you, this letter came after ample

 9   history between, on the one hand, Rothschild, his companies, and

10   his lawyers, and, on the other hand, Valve.  That was not the

11   first correspondence.  This comes after Valve had already

12   reminded Mr. Meyler about that license agreement.  You're right,

13   it did eventually lead to the dismissal without prejudice of the

14   *Display Technologies* case, but this comes not at the beginning of

15   the parties' interactions, it comes at the end.  And what you

16   have -- it's a short letter, which is great for me because you

17   can see it right here on the slide -- Mr. Meyler goes after Valve

18   on behalf of Rothschild yet again.  And this is a highly

19   aggressive, assertive letter.  Mr. Meyler references the fact

20   that there are claim charts attached to this letter.  He's

21   certainly right.  They're in the record at the docket sites.

22   There were three claim charts for three patents.  One of those

23   three was the '221 patent.  It is expressly licensed in the

24   parties' license agreement.  I believe when you look, it is

25   Patent No. 12.  You don't have to do any patent analysis.  The

1   number is right there.  Mr. Meyler attached a claim chart

2   accusing Valve of infringement of the '221 patent, and it refers

3   to Valve as the defendant.  To avoid any doubt, Mr. Meyler says

4   these charts "have been prepared in anticipation of litigation,"

5   and the letter was sent on June 21st and wanted a response by

6   June 30th.  That's nine days.  It's six business days.

7   Mr. Meyler ends this letter by saying if we don't hear from you

8   within those nine days -- those six business days -- we're going

9   to assume that you'd "prefer to litigate."

10      Again, going back to the totality of the circumstances that

11  matters here, knowing that this letter, aggressive on its own,

12  came after ample history between the parties, this gives rise to

13  your main question, sort of the threshold question, this letter

14  gives rise to that declaratory judgment jurisdiction.

15      And if I may, Your Honor, I have more of a timeline

16  beforehand, but let me end with -- or let me talk about this

17  timeline right here.  Mr. Schenck reminded me of something that

18  I -- let me talk about it once more, confirm it again.  Defense

19  counsel also said, in response to your question -- and I'm so

20  glad you asked it -- if this case proceeds, the defendants will

21  assert the '221 patent against Valve.  And by the way, globally,

22  the fact that, in theory, technically and legally, you know, that

23  Valve would win a lawsuit because it has the defense of the

24  agreement, that's not the question under the Declaratory Judgment

25  Act and whether there's a reasonable apprehension of suit, right?

1    The answer is, there is.  And when Valve was given that June

2    letter that said we're coming after you once more, early July,

3    Valve decided to stop being the punching bag, to stop being kind

4    of sort of on its back, on its heels, and it said, no, enough is

5    enough.  That letter was sort of the one assertion too many, and

6    that's why we're here.  And you see it in the complaint.  We have

7    alleged the whole history that leads us to that letter.  But

8    that's why Valve said enough is enough and it brought this case.

9         THE COURT:  On the issue of damages, that was an issue

10   that was raised by counsel, arguing the absence of in this case.

11   What would you say to that?

12        MR. MACHLEIDT:  I have two answers to that specific

13   question.  The first is, Valve paid real money to get what should

14   have been peace between it and Rothschild.  It did not get what

15   it paid for, right?  That is a measure of damages.

16        The other thing I'll say is any time you have lawyers

17   involved, damages are at play.  It takes time, effort, and money

18   to ensure that whether you respond or not, or whatever course of

19   conduct you go into, it costs you something to do that.  So there

20   certainly are damages.

21        Now, I will also add this:  At the 12(b)(6) stage, the

22   extent, the amount, the scope, that's not teed up here.  What I

23   will say is I think defense counsel, what they did brief is this

24   notion that under the agreement, both -- I think he said waiver

25   and then he also said that the agreement forecloses damages.  I

 1   won't put words in his mouth, but they briefed it, and he brought

 2   that back up.

 3        You just asked me about damages.  So let me make sure that I

 4   touch on this.  This is Section 9.5 of the parties' license

 5   agreement.  This is what the defendants rely on to say that even

 6   if everything we allege is sufficient to get past this stage,

 7   should we go forward, we're not entitled to damages under the

 8   contract.  That's simply not true.

 9        You see the highlighted sentence from Section 9.5 and then

10   there's the red underline.  This section talks about damages

11   arising -- or a lack of damages arising out of the agreement and

12   the licensed products.  This is a term that appears quite

13   commonly in license agreements of this nature, where the

14   licensor, meaning Rothschild, doesn't want to get sued if one of

15   Valve's customers, who is technically licensed under this

16   agreement because the parties were supposed to have peace, that

17   Rothschild doesn't want to get sued because that customer, who

18   knows, trips and falls and one of Valve's products injures that

19   person.  That is what this section is dealing with.

20        We have underlined in red that last little bit, "and the

21   Licensed Products," because it's important.  In their briefing,

22   they just use little ellipses and they pretend that Section 9.5

23   talks about no special punitive or exemplary damages relating to

24   the agreement.  That's not what this section talks about.  It's

25   exactly as I just mentioned.

1      Section 6.2 leaves no doubt.  When there's breach, when we

2   have a fight like what we have here, both sides can go after

3   damages.  So this absolutely is a case where damages exist and

4   are in play.

5           THE COURT:  All right.  Thank you.

6           MR. MACHLEIDT:  Your Honor, I'm going to look to my

7   colleagues, if I may have ten seconds?  Because we kind of jumped

8   around, I want to make sure --

9           THE COURT:  Sure.

10          MR. MACHLEIDT:  -- that defense counsel didn't raise

11  something that I have forgotten to.

12      There's more in the briefing.  I'm happy to talk about all of

13  those other issues as well.  I'm here to respond.  I want to make

14  sure that I do that.

15          THE COURT:  Yes.  We have certainly read all the briefs,

16  looked very closely at the case law.  So, yeah, take a moment to

17  confer with co-counsel.  There's nothing wrong with a co-counsel

18  assist, but you have addressed the issues that are front and

19  center for the court.

20          MR. MACHLEIDT:  And, actually, before I walk over there

21  and do that -- and thank you for that, Your Honor -- I recall

22  defense counsel pointed out he wasn't aware of a private right of

23  action case under the Troll Act.  I understand why he said that.

24  There's certainly the *Landmark* case.  He mentioned that

25  Rothschild is not *Landmark*.  And somewhere on one of my slides, I

1   think there's something that relates exactly to that.

2      Sure, no two patent owners are exactly the same, but what you

3   see here, and what we have mentioned in the complaint, is that

4   Mr. Rothschild, through his companies -- himself, his companies,

5   his lawyers -- he is a highly assertive person through his

6   company's entity. Recently, just recently, I believe,

7   Mr. Rothschild, through his various companies, surpassed the

8   1,200 mark in terms of number of lawsuits brought. Now, when I

9   think about the *Landmark* case, I believe there's reference to

10   about a thousand, maybe 1,800, demand letters being sent out by

11   *Landmark.* Mr. Rothschild had cracked a thousand when it comes to

12   actual lawsuits. I would like this case to proceed, and we will

13   see if discovery proves how many demands. I assume it's a

14   funnel, many more demands than lawsuit, but there are very close

15   parallels between the parties in *Landmark* and Mr. Rothschild.

16      Also, yes, the *Landmark* case is a few steps ahead of us, but

17   I know in California, for example, I believe Microsoft, in maybe

18   the Northern District, did bring a private right of action case

19   against a patent owner under the Washington Troll Act. A

20   procedure there led to that claim sort of stopping early. But

21   parties have certainly brought the type of case that we have

22   here.

23      With that, Your Honor, may I confer real quick, make sure I'm

24   not missing anything?

25        THE COURT: Of course.

1          MR. MACHLEIDT:  Thank you.

2      Your Honor, briefly, my colleagues reminded me that waiver

3  kind of at least was touched upon.  I believe it's Section 11.5

4  of the agreement.  It says that the parties, even if facts arise

5  that, you know, in other circumstances, would potentially allow

6  somebody to argue waiver, the contract says there is no waiver.

7  That aside, waiver, especially when it comes to waiver by

8  inaction, is a highly fact-specific analysis that, for that

9  reason as well, certainly cannot be resolved at this stage.

10      Your Honor, with that, I'm always happy to answer your

11  questions.  If I have to, I'll ask your indulgence for a

12  surrebuttal.  But with that, I will give it back to defense

13  counsel.

14          THE COURT:  All right.  Thank you.

15          MR. MACHLEIDT:  Thank you, Your Honor.

16          MR. MCPHAIL:  Thank you, Your Honor.  I will try to be

17  brief.

18      One thing I think is rather interesting here is they make a

19  great deal of Mr. Rothschild as a troll, but at no point have

20  they ever bothered to file a complaint with the Washington

21  Attorney General.  It's an online form.  I mean, it would have

22  taken them no time at all, if they thought there was a legitimate

23  beef here, if they thought there was a legitimate violation of

24  the Act, to report it and let the Washington State Attorney

25  General do the work for them, right?  He's doing it against

1   *Landmark*.  If Rothschild is so bad, then he would do it against

2   Rothschild.  Or perhaps maybe they did and the Attorney General

3   decided there was nothing to do here, there was not a basis for

4   acting, right?  We don't know that right now.  If this case goes

5   on, discovery will tell.

6       They talk about a reasonable apprehension of suit.  Your

7   Honor has brought that up as well.  There may be an apprehension,

8   but it's not reasonable.  And I think the '723 showed that.  If

9   there was an error made and the suit was filed, it only took a

10  letter for that to go away immediately.  No harm, no foul.

11      The Meyler letters.  Two out of those three parties that he

12  mentioned in that letter had legitimate claims and eventually

13  brought suit against Valve on those claims.  He made a clerical

14  error on the '221 patent.  Again, all it would have taken was a

15  single letter to say, hey, not about QTI, not about the other

16  one, but at least this patent we have a license to, so you need

17  to drop it, and then it would have been two out of three they

18  were arguing about.  But, instead, we get this lawsuit.

19      Even if they're entitled, as I've said, to claim damages

20  here under the contract, I don't think they have actually been

21  damaged.  I don't think they have actually been harmed.  Lawyers'

22  fees are not damages.

23      And, finally, being assertive in and of itself, as they've

24  talked about Mr. Rothschild, doesn't make you a patent troll.

25  *Landmark* wrote a lot of letters.  That's not a good thing.

1   Rothschild legitimately brought suits.  That, under the Patent

2   Troll Act, is supposed to factor into being a legitimate -- a

3   good factor, right, that you are actually able to enforce your

4   claims.  The fact that he has filed so many suits should be a

5   factor in his favor, not weighed against him.

6       Thank you.

7       THE COURT:  I guess my final question to you is, you

8   know -- I guess I will just state it plainly -- what's your best

9   case on the declaratory judgment issue?  There's plenty of case

10  law about the operation of the covenant not to sue.  I think

11  that's clear.  But the posture here is not like the cases that

12  are cited in the brief, where there's litigation and then the

13  parties come to an agreement that results in a covenant not to

14  sue and the court finds that it's divested of its jurisdiction on

15  the declaratory judgment action.  We have got a situation here

16  where there was a covenant not to sue and then there are these

17  subsequent acts.  I couldn't find a case.

18      MR. MCPHAIL:  We will give them any covenant they want.

19  And that act in and of itself, me standing here telling you that,

20  is sufficient to divest this court of jurisdiction.  I will give

21  them any covenant they want not to sue.  There is no reason for

22  this case to go forward.  We will put whatever language they want

23  in writing and have it signed and notarized.  But we are willing

24  during this case to give them whatever covenant they want to take

25  care of this.  There was never, ever any intent to enforce the

1    '221 against them.

2            THE COURT:  All right.

3            MR. MCPHAIL:  Thank you.

4            THE COURT:  Thank you.

5            MR. MACHLEIDT:  Your Honor, because we seem to be making

6    good time, may I surrebut?  And I'm always happy to let Mr. --

7            THE COURT:  Briefly.  Yeah, briefly.

8            MR. MACHLEIDT:  So many of their arguments -- Dario

9    Machleidt on behalf of Valve.

10       So many of their arguments ignore the 12(b)(6) standard.  I'm

11   going to begin with the last point first.  Part of the reason

12   we're here is because Rothschild has repeatedly ignored an

13   existing covenant.  We don't want another private promise from

14   them.  That is why the DJ jurisdiction exists.  It's easy for

15   them to break their promise.  I imagine it's a lot harder for

16   them to violate a court order.

17       Issues that he raised about what we could have done with the

18   Attorney General, issues about this notion that if we had written

19   an e-mail, then they would have dismissed like they did last

20   time, it is utterly irrelevant to the 12(b)(6) stage.  Those are

21   not facts.  It's speculation.  At best, it's argument that they

22   can save for a later day, after discovery, after we hear from

23   their people, who probably will say what they would have done had

24   things been different.

25       What we are doing here at the 12(b)(6) stage is looking at

1   what actually happened and has Valve plausibly alleged enough to

2   carry the day to get to the next stage, to get to discovery.  The

3   answer is yes.  We don't have to show or prove or discuss what

4   they would have done.  We know what they did.

5       A question that keeps coming up kind of with my team is how

6   many times is enough.  Defense counsel says we will give them

7   anything and had they just written another letter or an e-mail,

8   this would have been over.  This was the third time.  It's a

9   slippery slope to talk about what could have happened if people

10  had done things differently.  Because if we go down that road,

11  I'm going to say, well, very likely, Mr. Rothschild and

12  Mr. Meyler, they're going to come back against Valve a fourth, a

13  fifth, a sixth.  We don't have to do that.  The facts that we

14  have alleged that you see in the complaint get us more than we

15  need to pass the 12(b)(6) stage.

16      I'm going to try to end with this, Your Honor.  There was

17  argument about how the fact that Rothschild has filed many

18  lawsuits somehow counts in his favor and relates to the good

19  faith factors.  They can argue what they want come summary

20  judgment or trial, but my response to that is it's not true.

21      You see in the complaint the standard operating procedure by

22  Mr. Rothschild is to sue and bail when pressed.  The vast

23  majority, and I believe all of them, they don't make it to the

24  merits, they don't make it down the road, because when the

25  defendants stand up and fight and defend themselves, Rothschild

1    and his companies run away.  We had that in Texas, again,

2    relating to this same issue.

3        Defense counsel is right, two of those other patents in

4    Rothschild's entities, referred to in Mr. Meyler's letter, they

5    did ultimately sue Valve.  They sued valve in East Texas within,

6    I think, about two months of Valve filing this lawsuit.  We view

7    them as complete retaliatory actions.  Just recently -- and by

8    the way, both parties referenced those cases, which is why I'm

9    talking about them now.  Just recently, all of those actions in

10   Texas were dismissed.  The magistrate judge agreed with Valve

11   that those cases should never have been filed in East Texas, and

12   Valve is currently seeking sanctions for those very lawsuits.  We

13   don't need to go into good faith, they can argue that down the

14   road, but that is not evidence of good faith.

15       Any questions, Your Honor?

16           THE COURT:  No.  That's it.

17           MR. MACHLEIDT:  Thank you for giving me, giving us,

18   giving Valve, the opportunity to present our case.

19           THE COURT:  Very good.

20       All right.  I'm a firm believer in the moving party getting

21   the last word.  So if there's anything that you would like to

22   respond to there that was said, something either outside of your

23   reply or your rebuttal, but if you would like to address any of

24   it.

25           MR. MCPHAIL:  Thank you, Your Honor, but I think I have

1    said enough.  Thank you very much.

2            THE COURT:  Very good.

3        Well, thank you all for coming and arguing.  I have been

4    sitting with the briefs.  We have got a draft order that we need

5    to complete, so I suspect that we will get an order out fairly

6    soon.

7        I'm looking at the issue here, the threshold issue about the

8    court's jurisdiction, of course, and, you know, I'm not finding

9    any cases with this exact posture.  So perhaps this is a one of

10   one, maybe this is that unique case.  But you all will have our

11   answer very soon.

12       Is there anything else that you would like to address while

13   we're all convened?

14           MR. MACHLEIDT:  No, Your Honor.

15           MR. MCPHAIL:  Not from defendants, Your Honor.  Thank

16   you.

17           THE COURT:  All right.  Thank you, all.  Take care.

18   Have a good weekend.

19           MR. MACHLEIDT:  Thank you, Your Honor.

20                   (Adjourned.)

21

22

23

24

25

1          C E R T I F I C A T E

2

3        I, Nickoline M. Drury, RMR, CRR, Court Reporter for the

4    United States District Court in the Western District of

5    Washington at Seattle, do certify that the foregoing is a correct

6    transcript, to the best of my ability, from the record of

7    proceedings in the above-entitled matter.

8

9

10                        /s/ Nickoline Drury

11                        Nickoline Drury

12

13

14

15

16

17

18

19

20

21

22

23

24

25