UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VALVE CORPORATION,

              Plaintiff,

     v.

LEIGH ROTHSCHILD; ROTHSCHILD
BROADCAST DISTRIBUTION
SYSTEMS, LLC; DISPLAY
TECHNOLOGIES, LLC; PATENT
ASSET MANAGEMENT, LLC;
MEYLER LEGAL, PLLC; SAMUEL
MEYLER,

              Defendants.

CASE NO. 23-cv-1016

ORDER

## 1.  INTRODUCTION

Plaintiff Valve Corporation sues Defendant Leigh Rothschild and his affiliates, alleging that their patent enforcement attempts violate Washington state law. Dkt. No. 38. Valve also seeks a declaratory judgment that the patent at issue is invalid and unenforceable. *Id.* Rothschild moves to dismiss, arguing that since he has already issued Valve an irrevocable license for the patent and covenanted not to sue Valve for any "actual or alleged infringement," there is no live case or

controversy between the parties. Dkt. No. 40. Rothschild also argues that Valve has failed to state facts sufficient to support its state-law claims. *Id.*

The Court disagrees. Rothschild's recent actions—including his 2022 lawsuit against Valve and 2023 demand letter—have made Valve understandably fearful that an infringement suit is still to come despite any prior agreement between the parties. Thus, under all the circumstances, the Court finds that Valve has pled an actual, judiciable controversy. And because Valve's other claims pass muster under Rule 12(b)(6), the Court DENIES Defendants' motion to dismiss in its entirety.

## 2.  BACKGROUND

The facts below are taken from Valve's Second Amended Complaint. *See* Dkt. No. 38.

Valve alleges that Defendant Leigh Rothschild ("Rothschild") controls defendant companies Display Technologies, LLC, Rothschild Broadcast Distribution Systems ("RBDS"), and Patent Asset Management ("PAM") (together, "Rothschild Defendants")—all of which exist "for the sole purpose of asserting patent infringement claims." *Id.* ¶ 44. Valve alleges that the Rothschild Defendants, as a business model, "accuse others of patent infringement" to "extract a quick settlement from the accused infringers rather than actually litigate the merits of the infringement claims." *Id.* ¶ 9. Valve calls this "a pattern of behavior indicative of entities commonly referred to as 'patent trolls.'" *Id.* ¶ 7.

The parties have a history of litigation. More than nine years ago, on June 8, 2015, Display Technologies sued Valve, alleging Valve infringed on its U.S. Patent No. 8,671,195 ("'195 Patent"). *Id.* ¶ 11. They settled the dispute a year later by

entering a Global Settlement and License Agreement ("GSLA") on November 14, 2016. *Id.* ¶ 12. Rothschild signed the GSLA in his own name and on behalf of Display Technologies and all entities listed as "Assignee" in the agreement. *Id.* ¶ 13. The GSLA granted Valve a "perpetual, irrevocable, royalty-free, fully paid-up, worldwide license" to numerous patents owned by Rothschild and his companies. *Id.* ¶ 12. It also provided that "[n]o royalties or additional payments of any kind shall be required in order to maintain this Agreement in force" (GSLA Section 3.1) and that "Licensor [i.e., Display Technologies and Rothschild] covenants not to sue Licensee [i.e., Valve] or its Affiliates for actual or alleged infringement of the Licensed Patents" (GSLA Section 3.2). *Id.* ¶¶ 66-67. Valve paid for these rights. *Id.* ¶ 12.

More recently, in March 2022, Daniel Falcucci, PAM's Director of Business Development, sent a series of email and LinkedIn messages to Valve's legal team, urging Valve to negotiate a new licensing agreement for Rothschild's patents. *Id.* ¶ 14. In these messages, Falcucci acknowledged that PAM, headed by Rothschild, had entered the GSLA. *Id.* Yet, Falcucci still demanded that Valve take license to at least two patents—the '195 Patent and U.S. Patent 9,300,723 ("'723 Patent")—to which Valve already had license under the GSLA. *Id.* ¶ 18.

Display Technologies—represented by attorney Samuel Meyler ("Meyler") and Meyler Legal, PLLC (together, "Meyler Defendants")—eventually sued Valve in the Western District of Washington in September 2022, alleging infringement of the '723 Patent. *Id.* ¶¶ 19-20; *see Display Technologies LLC v. Valve Corp.*, 2-22-cv-01365 (W.D. Wash. Sept. 27, 2022). But the '723 Patent is a continuation of the '195

Patent, which is expressly included in the GSLA. *Id.* ¶ 21. Valve told Display Technologies and the Meyler Defendants that Valve already had a license to the '723 Patent. *Id.* ¶ 22. Valve sent the GSLA to the Meyler Defendants twice—once in October 2022, and again in December 2022. *Id.* In the December communication, Valve explained the history of the 2015 litigation and informed the Meyler Defendants that Valve held license to "all of Rothschild's patents that could conceivably be construed to cover any portion of Valve's business." *Id.*

On October 13, 2022, Display Technologies dismissed its action without prejudice. *Id.* ¶ 23. Since dismissal, however, Falcucci still has not withdrawn his demands made on behalf of Rothschild and PAM that Valve take license to multiple patents assigned to Display Technologies, which Valve contends are already licensed to Valve under the GSLA. *Id.* ¶ 24.

On June 21, 2023, the Meyler Defendants sent another letter to Valve—this time on behalf of RBDS, a different Rothschild-controlled entity—threatening to sue Valve for infringing U.S. Patent No. 8,856,221 ("'221 Patent") unless Valve negotiated a resolution of RBDS's claims. *Id.* ¶ 26. The '221 Patent is expressly included in the GSLA. *Id.* ¶ 28. Valve contends that because of the 2022 lawsuit over the '723 Patent, the Meyler Defendants knew about the GSLA before issuing this letter. *Id.* ¶ 29.

On July 7, 2023, Valve filed this lawsuit. *See* Dkt. No. 1. On January 30, 2024, Valve filed its Second Amended Complaint ("SAC"). *See* Dkt. No. 38. In the SAC, Valve seeks declaratory judgment that the '221 Patent is invalid (Count I) and unenforceable against Valve (Count II); judgment that Defendants breached the

GSLA (Count III); and judgment that Defendants violated RCW 19.350 (Patent Troll Prevention Act) and RCW 19.86 (Washington State Consumer Protection Act) (Count IV). Defendants move to dismiss for lack of subject matter jurisdiction and failure to state a claim. *See* Dkt. No. 40.

## 3. DISCUSSION

### 3.1 Legal standards.

#### 3.1.1 Rule 12(b)(1).

The party asserting jurisdiction bears the burden of establishing that jurisdiction exists. *Vacek v. U.S.P.S.*, 447 F.3d 1248, 1250 (9th Cir. 2006). The Court must dismiss a complaint under Rule 12(b)(1) if it lacks subject matter jurisdiction. Thus, an action will be dismissed if it (1) does not arise under the Constitution, laws, or treaties of the United States, or falls outside one of the other enumerated categories of Article III, Section 2, of the Constitution; (2) is not a case or controversy within the meaning of the Constitution; or (3) is not one described by any jurisdictional statute. *See Baker v. Carr*, 369 U.S. 186, 198 (1962).

A Rule 12(b)(1) jurisdictional attack may be facial, in which the defendant asserts the allegations within the complaint are not enough on their face to invoke federal jurisdiction, or factual, in which the defendant disputes the truth of the factual claims. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749

F.3d 1117, 1121 (9th Cir. 2014). In a factual attack, however, "[t]he court need not presume the truthfulness of the plaintiff's allegations," and it may "review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air*, 373 F.3d at 1039.

Here, Defendants argue that the allegations in the SAC—in particular, the allegations regarding the covenant not to sue contained in GSLA Section 3.2, Dkt. No. 38-1 at 5—divest the Court of subject matter jurisdiction. Dkt. No. 40 at 12-13. As such, the Court construes Defendants' 12(b)(1) jurisdictional attack as facial, not factual.

### 3.1.2    Rule 12(b)(6).

The Court will grant a motion to dismiss for failure to state a claim only if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The plausibility standard is less than probability, "but it asks for more than a sheer possibility" of wrongdoing. *Id.* When considering a motion to dismiss, the Court accepts facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff. *Lund v. Cowan*, 5 F.4th 964, 968 (9th Cir. 2021). But courts "do not assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (citation

omitted). Thus, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Id.* (internal quotation marks omitted).

### 3.2   The Court has subject matter jurisdiction over Valve's declaratory judgment action.

Valve seeks a declaratory judgment that the '221 Patent is invalid or unenforceable. Defendants move to dismiss these claims under Rule 12(b)(1), arguing that Valve fails to satisfy the case-or-controversy requirement for a declaratory judgment action because Defendants have already covenanted not to sue Valve for "actual or alleged infringement." Dkt. No. 40 at 12-13.

Defendants' challenge hinges on the jurisdictional constraint inherent in the Declaratory Judgment Act, which authorizes federal courts to "declare the rights and other legal relations of any interested party seeking such declaration," but only "[i]n a case of actual controversy." 28 U.S.C. § 2201(a); *see generally Aetna Life Ins. Co. of Hartford, Conn. v.. Haworth*, 300 U.S. 227, 240 (1937) (upholding constitutionality of the Act). The "actual controversy" requirement is to ensure that "the judgment does not become an unconstitutional advisory opinion." *Rhoades v. Avon Prods.*, Inc., 504 F.3d 1151, 1157 (9th Cir. 2007) (citing *Pub. Serv. Comm'n v. Wycoff, Co.*, 344 U.S. 237, 244 (1952)). "Absent a true case or controversy, a complaint solely for declaratory relief under 28 U.S.C. § 2201 will fail for lack of jurisdiction under Rule 12(b)(1)." *Id.* (citing *Fleck and Assoc., Inc. v. Phoenix, an Arizona Mun. Corp.*, 471 F.3d 1100, 1103–04 (9th Cir. 2006)).

Whether an actual case or controversy exists is typically "a procedural question … governed by regional circuit law." *Apple Inc. v. VoIP-Pal.com, Inc.*, 506

F. Supp. 3d 947, 967 (N.D. Cal. 2020) (Koh, J.) (quoting *Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1380 (Fed. Cir. 2002)). But whether this standard is met in an "action for declaratory judgment of non-infringement and/or invalidity is governed by Federal Circuit law." *Id.* (quoting *3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1377 (Fed. Cir. 2012)).

The Federal Circuit has recognized that covenants not to sue can "sometimes" divest the trial court of jurisdiction. *ArcelorMittal v. AK Steel Corp.*, 856 F.3d 1365, 1370 (Fed. Cir. 2017). "Although a patentee's grant of a covenant not to sue a potential infringer can sometimes deprive a court of subject matter jurisdiction, the patentee bears the formidable burden of showing that it could not reasonably be expected to resume its enforcement activities against the covenanted, accused infringer." *Id.*

In assessing the effect of a covenant not to sue on a declaratory judgment action, courts must consider whether "the facts alleged, *under all the circumstances*, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (emphasis added) (citing *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). This totality-of-the-circumstances approach admits no bright-line rules. *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1336 (Fed. Cir. 2008) ("The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether

there is such a controversy.") (cleaned up) (quoting *Md. Cas. Co.*, 312 U.S. at 273).

In general, though, the standard does require "'some affirmative act'" by the patent

holder. *Id.* at 1339 (quoting *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d

1372, 1381 (Fed. Cir. 2007)).

One way for a declaratory-judgment plaintiff to establish a "substantial

controversy" over the validity of a patent is to prove that they have a "reasonable

apprehension of suit" for infringing the patent at issue. *See Prasco, LLC v. Medicis*

*Pharm. Corp.*, 537 F.3d 1329, 1336 (Fed. Cir. 2008) ("While the Supreme Court

rejected the reasonable apprehension of suit test as the sole test for jurisdiction, it

did not completely do away with the relevance of a reasonable apprehension of suit.

Rather, following *MedImmune*, proving a reasonable apprehension of suit is one of

multiple ways that a declaratory judgment plaintiff can satisfy the more general all-

the-circumstances test to establish that an action presents a justiciable Article III

controversy.").

Looking at the totality of the circumstances, the Court finds that Valve has

pled a substantial and real controversy between the parties with the requisite

immediacy. As alleged in the SAC and supported by the attached documents,[1]

Defendants sent Valve a demand letter *after* entering the covenant not to sue,

alleging Valve's current products and services infringed the '221 and other patents.

---

[1] Defendants argue the Court may consider documents attached to and referenced
in Valve's SAC on the pending motion. Dkt. No. 42 at 9 (citing *Marder v. Lopez*, 450
F.3d 445, 448 (9th Cir. 2006)). The Court agrees and will treat the GSLA, Dkt. No.
38-1, Falcucci's LinkedIn message, Dkt. No. 38-5, and Meyler's demand letter, Dkt.
No. 38-8, as part of the complaint without converting the motion to one for
summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

1     The letter threatened litigation if Valve failed to respond within nine days. Dkt. No.

2     38-8 at 2. The letter also included a detailed claims chart mapping the extent of

3     Valve's alleged infringement of the '221 and other patents. *Id.* at 3-42; *see*

4     *ActiveVideo Networks, Inc. v. Trans Video Elecs., Ltd.*, 975 F. Supp. 2d 1083, 1087-

5     88 (N.D. Cal. 2013) (when deciding whether a patent holder has taken an

6     "affirmative act" to enforce a patent, considering, among other things, "the strength

7     of any threatening language in communications between the parties"; "the depth

8     and extent of infringement analysis conducted by the patent holder"; and "whether

9     the patent holder imposed a deadline to respond").

10          Defendants claim the letter was sent by mistake—"a simple clerical error," as

11    they put it. But Defendants' subjective intent is irrelevant. *See Hewlett-Packard Co.*

12    *v. Acceleron, LLC*, 587 F.3d 1358, 1363 (Fed. Cir. 2009) (considering defendant's

13    "subjective[ ]" beliefs as "irrelevant"). "The test for declaratory judgment jurisdiction

14    in patent cases, however stated, is *objective*." *Id.* (cleaned up; emphasis in original).

15    "Indeed, it is the objective words and actions of the patentee that are controlling."

16    *Id.* (citation omitted). Valve reasonably did not interpret the Meyler letter as an idle

17    threat given Defendants' history of suing, and threatening to sue, Valve for

18    infringement of patents to which Valve has a valid license after Rothschild

19    covenanted not to sue. *See Danisco U.S. Inc. v. Novozymes A/S*, 744 F.3d 1325, 1331

20    (Fed. Cir. 2014) ("[A] history of patent litigation between the same parties involving

21    related technologies, products, and patents is another circumstance to be

22    considered, which may weigh in favor of the existence of subject matter

23    jurisdiction."); *Arkema Inc. v. Honeywell Int'l, Inc.*, 706 F.3d 1351, 1358 (Fed. Cir.

2013) (concluding that prior litigation was a "sufficient affirmative act on the part of the patentee for declaratory judgment purposes"); *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1344 (Fed. Cir. 2007) ("[R]elated litigation involving the same technology and the same parties is relevant in determining whether a justiciable declaratory judgment controversy exists on other related patents.").

As pled, these facts show that Valve had a "reasonable apprehension" that Defendants would sue for alleged infringement of the '221 Patent despite the covenant barring such lawsuits. *See Asia Vital Components Co. v. Asetek Danmark A/S*, 837 F.3d 1249, 1253-56 (Fed. Cir. 2016) (listing asserted patents in demand letter was sufficient to create declaratory judgment jurisdiction); *Cf. Gen-Probe Inc. v. Vysis, Inc.*, 359 F.3d 1376, 1381 (Fed. Cir. 2004), *abrogated by MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007) (holding that licensing agreement with covenant not to sue divested court of declaratory judgment jurisdiction because "[s]ince the formation of the license, [the parties] have each fulfilled their obligations without material breach" and "[t]he record discloses no facts that have arisen since the license to give [plaintiff] a reasonable apprehension of a lawsuit.").

The legal authority cited by Defendants does not dictate otherwise. Defendants mainly rely on *Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338 (Fed. Cir. 2010) and *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340 (Fed. Cir. 2007), both of which made fact-specific holdings that no justiciable controversy existed after a patentee-defendant promised not to sue the declaratory-judgment

plaintiff for infringement of the patent at-issue. But neither case dealt with the same circumstance as here where the patentee-defendant's post-covenant conduct has created the controversy.

Similarly, Defendants' suggestion during oral argument on their motion that they would enter a second covenant does not negate the controversy here. Another promise not to sue, or disavowal of any further attempts to sue, "is engaging in the kinds of 'extra-judicial patent enforcement with scare-the-customer-and-run tactics' that the Declaratory Judgment Act was intended to obviate." *SanDisk Corp.*, 480 F.3d at 1383 (quoting *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 735 (Fed.Cir.1988)). Defendants' actions speak loudly, showing both a preparedness and willingness to enforce the '221 Patent that cannot be ignored in the context of the pending motion. *See id.* at 1382-83 (holding that defendant's "direct and unequivocal" statement that it would not sue for patent infringement did not "eliminate[ ] the justiciable controversy created by [defendant's] actions, because [defendant] has engaged in a course of conduct that shows a preparedness and willingness to enforce its patent rights despite [defendant's] statement").

Accordingly, Defendants' motion to dismiss Valve's declaratory judgment action is DENIED.

### 3.3    Valve's Second Amended Complaint alleges sufficient facts to maintain a cause of action for breach of contract.

Valve alleges that Rothschild, RBDS, Display, and PAM breached or anticipatorily breached the GSLA. Dkt. No. 38 at 13-14. Defendants contend that Valve fails to allege sufficient facts to maintain this claim and move to dismiss.

1
2
3
4
5

The parties agree that Texas law applies to Valve's contract claim. *See* Dkt. No. 38-1 at 12 (GSLA choice-of-law provision) ("The construction, validity and performance of the Agreement shall be governed in all respects… by the law of the State of Texas[.]"); *see also* Dkt. Nos. 49-50 (parties agreeing, in supplemental briefing, that Texas law governs).

6
7
8
9
10

### 3.3.1    Valve has pled sufficient facts alleging Defendants breached the GSLA.

Under Texas law, a breach of contract claim requires that "(1) a valid contract exists; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender

11
12
13
14
15

performance as contractually required; and (4) the plaintiff sustained damages due to the breach." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019). "The issue of whether a party 'breached a contract' is a question of law rather than fact, and should not be submitted to the jury." *Garza v. Southland Corp.*, 836 S.W.2d 214, 219 (Tex. App. 1992).

16
17
18
19
20
21
22
23

Valve alleges the GSLA is a valid contract and that Valve performed under it by, among other things, paying for rights to the covered patents. Dkt. No. 38 ¶ 12. Valve alleges (1) Display is bound by the GSLA as a signatory, *Id.* ¶ 70; (2) RBDS is bound by the GSLA as a condition of the '221 Patent assignment, *Id.* ¶ 69; (3) Rothschild, who is a signatory to the GSLA, "owns, controls, and directs the actions of RBDS and Display Technologies," *Id.* ¶ 77; and (4) PAM, which is controlled by Rothschild and owns 100% of RBDS and Display, engages in communications and actions through Display and RBDS. *Id.* ¶¶ 24, 27, 43, 44.

Valve alleges that Defendants breached the GSLA in at least two ways.

First, Valve alleges that RBDS, PAM, and Rothschild breached their obligations under GSLA Section 3.1 in their June 2023 letter, sent by the Meyler Defendants on behalf of Rothschild and RBDS, "demanding additional payment" for rights to the '221 Patent. Dkt. No. 38 ¶¶ 72-75. Section 3.1 of the GSLA prohibits seeking "additional payments of any kind… in order to maintain this Agreement in force." Dkt. No. 38-1 at 5. Valve alleges that the "resolution" expressly sought in the June 2023 letter was a "monetary payment for additional rights to patents to which Valve is already licensed, including the '221 Patent." Dkt. No. 38 ¶ 71.

Defendants counter that the June 2023 letter, seeking only "resolution" of RBDS's claims, did not expressly demand monetary payment as proscribed by GSLA Section 3.1. Dkt. No. 40 at 14. But the Court need not consider this argument at the Rule 12(b)(6) stage. Valve's allegation that the "resolution" sought in the letter refers to a monetary payment is enough to satisfy the pleading standard. *See Lund*, 5 F.4th at 968. Thus, the Court finds the June 2023 letter plausibly breaches GSLA Section 3.1.

Second, Valve alleges that Display, under the control of PAM and Rothschild, breached its obligations under GSLA Section 3.2 when it sued Valve in 2022 for infringement of the '723 Patent, as well as GSLA Section 3.1 through its continued refusal to retract the 2022 Falcucci demand letters regarding the '195 and '723 Patents. Dkt. No. 38 ¶¶ 21, 76. Section 3.2 of the GSLA states that "Licensor covenants not to sue Licensee or its Affiliates for actual or alleged infringement of the Licensed Patents." *Id.* ¶ 67. Valve alleges that the '723 Patent is licensed under

the GSLA, and therefore, the 2022 lawsuit constitutes a breach. *Id.* ¶ 21. This allegation also plausibly states a breach.

Defendants offer two lines of counterargument. First, they make several factual assertions about Falcucci's messages—specifically, that the messages did not mention Display, were not sent on behalf of Display, and did not demand monetary payment. Dkt. No. 40 at 15. But the Court decides the sufficiency of the pleadings based only on the factual assertions in the SAC, construed in the light most favorable to Valve. *See Lund*, 5 F.4th at 968.

Second, Defendants argue that Valve waived its breach of contract claim for the 2022 lawsuit by failing to pursue the claim at some earlier time. Dkt. No. 40 at 15. Defendants point out that "inaction in asserting a known right" can sometimes be sufficient to waive the right. Dkt. No. 49 at 3 (citing *Martin v. Birenbaum*, 193 S.W.3d 677 (Tex. App. 2006)). But inaction is not always decisive. "Courts will not find an implied waiver… unless the intent to waive the party's right is clearly demonstrated by the surrounding facts and circumstances"—a "factual issue" that "may only be established as a matter of law when the facts and circumstances are admitted or clearly established." *Martin*, 193 S.W.3d at 681; *see also In re Gen. Elec. Cap. Corp.*, 203 S.W.3d 314, 316 (Tex. 2006) (holding that failure to raise contractual right to a non-jury trial did not waive that right) ("The circumstances here may indicate inattention or a certain lack of care on the part of General Electric, but they do not imply that General Electric intended to waive its previously asserted contractual right by not complaining sooner."); *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) ("There can be no waiver of a right if the

person sought to be charged with waiver says or does nothing inconsistent with an intent to rely upon such right. Waiver is ordinarily a question of fact[.]") (citations omitted). Here, the allegations in the SAC, construed in Valve's favor, do not show an "intentional relinquishment" of Valve's contractual right to pursue relief for Defendants' 2022 lawsuit in violation of GSLA Section 3.2. *See In re Gen. Elec. Cap. Corp.*, 203 S.W.3d at 316.

Valve has adequately pled that Defendants breached the GSLA with their June 2023 demand letter on the '221 Patent; the 2022 lawsuit on the '723 Patent; and the continued failure to withdraw the 2022 Falcucci demands.

### 3.3.2   Valve has pled sufficient facts alleging Defendants anticipatorily breached the GSLA.

The Court also finds that Valve has sufficiently pled anticipatory breach. A claim for anticipatory breach under Texas law requires "(1) an absolute repudiation of the obligation; (2) a lack of a just excuse for the repudiation; and (3) damage to the non-repudiating party." *Good Shepherd Hosp., Inc. v. Select Specialty Hosp. - Longview, Inc.*, 563 S.W.3d 923, 929 (Tex. App. 2018) (internal quotation marks and citation omitted).

GSLA Section 3.2 obligates the Rothschild Defendants not to sue Valve for infringement of the licensed patents, including the '221 Patent. Dkt. No. 38-1 at 5. Valve alleges that Defendant RBDS, under control of PAM and Rothschild, anticipatorily breached this obligation "when it asserted the '221 Patent against Valve in its most recent demand letter" and "threaten[ed] to sue Valve if it did not pay additional money to RBDS." Dkt. No. 38 ¶¶ 72-73.

1
2
3
4
5
6
7
8

Defendants claim that if Valve had simply notified Defendants that the '221 Patent is subject to the GSLA, rather than filing this lawsuit, then Defendants would never have sued Valve for infringing on the '221 Patent. Dkt. No. 40 at 14. But this argument is misplaced, as the Court need not entertain counterfactual assertions at this point about what Defendants would have done if Valve had not sued them. The SAC adequately alleges that Defendants, by threatening to sue Valve for infringing on the '221 Patent, repudiated their obligations under GSLA Section 3.2.

9
10

Defendants motion to dismiss Valve's breach of contract claim is thus DENIED.

11

### 3.4   Valve has adequately pled its claims under RCW 19.86 and 19.350.

12
13
14
15
16
17
18
19
20
21
22

Under Washington's Patent Troll Prevention Act (PTPA), "[a] person may not make assertions of patent infringement in bad faith." RCW 19.350.020. An "[a]ssertion of patent infringement" includes "[s]ending or delivering a demand to a target" and "[t]hreatening a target with litigation asserting, alleging, or claiming that the target has engaged in patent infringement." RCW 19.350.010(1)(a)-(b). A violation of RCW 19.350.020 is an "unfair or deceptive act in trade or commerce and an unfair method of competition for purposes of applying the consumer protection act, chapter 19.86 RCW." RCW 19.350.030; *see Microsoft Corp. v. MediaPointe, Inc.*, 626 F. Supp. 3d 1129 (C.D. Cal. 2022) ("Because a violation of the PTPA is an unfair method of competition in violation of section 19.86.020, section 19.86.090… gives a private right of action for a violation of the PTPA.").

23

1    Valve alleges that Defendants made bad-faith assertions of patent

2  infringement through (1) Falcucci's "March 2022 demands to Valve, which falsely

3  and misleadingly requested that Valve pay additional fees to obtain a license to U.S.

4  Patents 8,671,195 and 9,300,723, patents owned by Display Technologies to which

5  Valve already had a license," and (2) Meyler's "June 2023 demand letter to Valve,

6  which claimed that Valve has infringed the '221 Patent and encouraged Valve to

7  obtain a license to the '221 Patent to avoid litigation." Dkt. No. 38 ¶¶ 79, 81. Valve

8  pleads that at least three of the PTPA's enumerated factors for finding bad faith are

9  satisfied: factors (d), (f), and (g). Dkt. No. 38 ¶ 89; *see* RCW 19.350.020(2)(a)-(g)

10  (listing "nonexclusive factors" a court may consider "as evidence that a person has

11  made an assertion of patent infringement in bad faith").

12    Defendants argue that Valve has failed to adequately plead facts to satisfy

13  the statutory bad-faith factors. Dkt. No. 40 at 16-17. Defendants make several

14  factual assertions here, including that the Meyler Defendants' inclusion of the '221

15  Patent in its June 2023 demand letter stemmed from a "clerical error." *Id.* But the

16  Court cannot consider such allegations by defendants on a motion to dismiss. *Lund*,

17  5 F.4th at 968. Thus, the Court finds Valve's allegations of bad faith sufficient.

18    Defendants also argue that Valve failed to address the statutory *good-faith*

19  factors. Dkt. No. 40 at 16-17; *see* RCW 19.350.020(4) (listing factors that a "court

20  may consider… as evidence that a person has made an assertion of patent

21  infringement in good faith"). But while the Court *may* consider these factors,

22  nothing in the PTPA *requires* Valve to allege or deny each statutory factor in its

23  pleadings. *See* RCW 19.350.020.

The Court finds that Valve has plausibly alleged bad-faith assertions of patent infringement.

### 3.5 Litigation privilege does not bar Valve's claims against the Meyler Defendants.

Defendants argue that litigation privilege bars Valve's claims against the Meyler Defendants. Originally, Defendants argued this theory under Washington law, *see* Dkt. No. 40 at 19, but they have since pivoted to arguing that federal common law applies; that "[u]nder federal common law, the litigation privilege is applied very broadly to protect the counsel"; and that "[a]ccordingly, all of Mr. Meyler's actions and statements at issue in this case should be found to be protected by the litigation privilege." Dkt. No. 49 at 5. Valve argues that Washington privilege law governs. *See* Dkt. No. 41 at 18-22; Dkt. No. 50 at 4-6. No matter which law is applied, however, the result remains the same: Defendants may not invoke litigation privilege.

Defendants fail to explain how federal litigation privilege immunizes them from Valve's lawsuit. Federal litigation privilege does not confer absolute immunity upon private counsel for their actions. *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996). The Supreme Court has noted that under common law, private attorneys have "never enjoyed immunity from liability for intentional misconduct." *Tower v. Glover*, 467 U.S. 914, 915 (1984). Defendants cite only *Briscoe v. LaHue* for their assertion that the federal litigation privilege applies "very broadly to protect the counsel." Dkt. No. 49 at 5; *see Briscoe*, 460 U.S. 325 (1983). But *Briscoe* addressed whether a police officer can be held liable under 42 U.S.C. § 1983 for giving perjured

testimony at a criminal trial. *Id.* Neither *Briscoe* nor any identifiable precedent supports the invocation of federal litigation privilege to bar liability for the issuance of a bad-faith demand letter outside the context of any judicial proceeding.

Nor does Washington's litigation privilege doctrine, if applicable, bar the claims against the Meyler Defendants. Washington's litigation privilege protects attorneys from civil liability for statements made in the context of judicial proceedings. *Young v. Rayan*, 533 P.3d 123, 128 (Wash. Ct. App. 2023). Defendants argue that Washington's litigation privilege also applies to extrajudicial communications, like the Meyler letter, when those communications are "preliminary to a proposed judicial proceeding." Dkt. No. 40 at 18 (citing Restatement of Torts 2d § 586 (stating that attorneys enjoy absolute privilege from defamation liability for "communications preliminary to a proposed judicial proceeding… if [the communication] has some relation to the proceeding")).

This Court declines to extend Washington's absolute litigation privilege to extrajudicial attorney demand letters making bad-faith assertions about patent infringement. "Absolute privilege is usually confined to cases in which the public service and administration of justice require complete immunity." *Bender v. City of Seattle*, 664 P.2d 492, 504 (Wash. 1983). "Litigation privilege 'has traditionally been limited to situations in which authorities have the power to discipline as well as strike from the record statements which exceed the bounds of permissible conduct.'" *Mason v. Mason*, 497 P.3d 431, 447-48 (Wash. Ct. App. 2021) (quoting *Twelker v. Shannon & Wilson, Inc.*, 564 P.2d 1131, 1133 (Wash. 1977)). Washington courts have specifically restricted the invocation of litigation privilege in cases alleging

abuse of judicial process, malicious prosecution, or malicious use of the legal system. *See Scott v. Am. Express Nat'l Bank*, 514 P.3d 695, 699-700 (Wash. Ct. App. 2022); *Mason,* 497 P.3d at 449 ("[A]n attorney can be liable for abuse of process where the attorney was alleged to have intentionally employed legal process for an inappropriate and extrinsic end.").

Affording absolute privilege to bad-faith threats of patent infringement litigation would thwart the purpose of the PTPA to stem "abusive patent litigation, and especially the assertion of bad faith infringement claims," RCW 19.350.005, because such threats are, by their very nature, "preliminary to a proposed judicial proceeding," Restatement of Torts 2d § 586. Issuing bad-faith infringement claims represents a "malicious use of the legal system." *See Scott*, 514 P.3d at 699-700. Immunizing bad-faith demand letters from liability would render the PTPA a dead letter. The Court concludes that the Washington legislature ably accommodated Washington's litigation privilege doctrine in its drafting of the PTPA by defining the "[a]ssertion of patent infringement" to *include* "sending or delivering a demand to a target" and "threatening a target with litigation" while *excluding* "claims or allegations… *made in litigation* against a target" *See* RCW 19.350.010(1)(d) (emphasis added).

Accepting the facts alleged in the SAC, the Court finds that the June 2023 demand letter sent by the Meyler Defendants was an extrajudicial, bad-faith assertion of patent infringement unrelated to any actual litigation and therefore unprotected by litigation privilege and actionable under the PTPA. It follows that

1
2

the motion to dismiss Valve's Washington statutory claims against the Meyler
Defendants is DENIED.

3
4

**3.6     Valve may seek damages under the GSLA.**

Finally, Defendants contend that Valve's claims must be dismissed because

5
6

GSLA Section 9.5 precludes Valve "from recovering any of its alleged damages," and

7

Valve's "SAC therefore fails to state facts sufficient to show that Plaintiff is entitled

8

to any of the damages it seeks." Dkt. No. 40 at 19-20. Valve responds that

9

Defendants misconstrue GSLA Section 9.5, and that under GSLA Section 6.2, Valve

10

may pursue damages. Dkt. No. 41 at 22-23. Valve argues that any ambiguity in the

GSLA should not be resolved on Defendants' motion to dismiss. *Id.*

11

Section 9 of the GSLA is titled "Representations, Warranties and

12

Disclaimers." Dkt. No. 38-1 at 9. Section 9.5, relied on by Defendants, states "[i]n no

13
14

event shall Licensor be liable for any special, punitive or exemplary damages or loss

of profits or revenue, or any indirect, consequential or incidental damages arising

15

out of, or in connection with, this Agreement and the Licensed Products." *Id.* at 11.

16

But in the next sentence, the same provision contemplates damages, stating, "in no

17

event shall Licensor be found liable for damages to any party for any amount that

18

exceeds the aggregate total amount of Consideration paid hereunder with respect to

19

this Agreement and the Licensed Products." *Id.*

20

Section 6 of the GSLA is titled "Term and Termination." Dkt. No. 38-1 at 7.

21

Section 6.2, relied on by Valve, provides the following:

22
23

> **Agreement Obligations Not Released.** Notwithstanding anything to the contrary herein, the Parties resolve all rights and remedies, including damages and equitable relief, for breach of this Agreement by the other Party and nothing herein releases any Party from its respective obligations under this Agreement or prevents any Party from enforcing the terms and conditions of this Agreement against the other.

*Id.* (emphasis in original).

Defendants are correct that Section 9.5 appears to restrict certain damages, including "special, punitive or exemplary damages or for loss of profits or revenue, or any indirect, consequential or incidental damages arising out of, or in connection with, this Agreement and the Licensed Products." *Id.* at 11. But the same provision clearly contemplates damages, limited to "the aggregate total amount of Consideration" paid for the GSLA. *Id.*

Further, Section 6.2 provides—"notwithstanding anything to the contrary" in the GSLA—"the Parties reserve all rights and remedies, including damages and equitable relief, for breach of this Agreement by the other Party and nothing herein releases any Party from its respective obligations under this Agreement or prevents any Party from enforcing the terms and conditions of this Agreement against the other." *Id.* at 7 (emphasis added).

While the Court will not determine the exact damages that Valve may be allowed under the GSLA at this stage, it finds that the GSLA does not foreclose Valve from recovering some damages and equitable relief.

/

/

/

1

## 4. CONCLUSION

For the reasons above, Defendants' motion to dismiss is DENIED.


It is so ORDERED.

Dated this 26th day of September, 2024.


Jamal N. Whitehead
United States District Judge

ORDER - 24