1

**HON. JAMAL N. WHITEHEAD**

2

3

4

5

6

7

**UNITED STATES DISTRICT COURT**

8

**FOR THE WESTERN DISTRICT OF WASHINGTON**

9

**AT SEATTLE**

10

11   VALVE CORPORATION,                     Case No. 2:23-cv-1016

12          Plaintiff,

**LCR 37 JOINT SUBMISSION**

13      v.

NOTE ON MOTION CALENDAR:
**March 28, 2025**

14   LEIGH ROTHSCHILD, ROTHSCHILD
     BROADCAST DISTRIBUTION SYSTEMS,

15   LLC, DISPLAY TECHNOLOGIES, LLC,       Complaint Filed:      07/07/2023
     PATENT ASSET MANAGEMENT, LLC,

16   MEYLER LEGAL, PLLC, AND SAMUEL
     MEYLER,

17                                           ORAL ARGUMENT REQUESTED
            Defendants.

18

19

20

21

22

23

24

25

26

27

28

LCR 37 JOINT SUBMISSION
CASE NO. 2:23-CV-1016

## I.    MOVING PARTY'S (VALVE) INTRODUCTORY STATEMENT

Valve served its first set of requests for production on July 9, 2024. For each of the disputed document requests addressed through this submission, the Rothschild Defendants[1] agreed to search for and produce responsive materials. Yet in the nearly eight months since Valve served its requests, as of March 12, the Rothschild Defendants have only produced 46 documents from their own internal files.[2] All other documents—over 3,000—appear to come from defense counsel pulling and producing public filings from past Rothschild cases. This delay has hindered Valve's ability to prosecute its case. Valve therefore asks this Court to require the Rothschild Defendants to complete their production of documents responsive to the July 2024 requests no later than seven days after resolution of the issues in this submission.[3]

"This is not a case in which the parties dispute opposing views of the law, such as a challenge to the relevancy of [Valve's] discovery requests …." *Underdog Trucking, L.L.C. v. Verizon Services Corp.*, 273 F.R.D. 372, 377 (S.D.N.Y. 2011). Instead, this discovery dispute is one of non-production of otherwise promised documents. For that reason, Valve's "introductory statement" carries greater weight than the individually discussed requests and responses that the parties attach as Joint Exhibits A-D.

Valve is mindful of Your Honor's requirement that "[d]iscovery motions should be filed only as a last resort" and that, before "filing a discovery motion, parties must meet and confer and exhaust all reasonable alternatives to a formal motion." *See* Chambers Procedures – Civil for United States District Judge Jamal N. Whitehead of the Western District of Washington, § 3.1. Valve believes this motion is indeed its "last resort." The Rothschild Defendants have shown an

---

[1] "Rothschild Defendants" encompasses Leigh Rothschild and the defendant companies he owns or controls: Patent Asset Management ("PAM"); Rothschild Broadcast Distribution Systems ("RBDS"); and Display Technologies. "Defendants" covers the Rothschild Defendants as well as Samuel Meyler and Meyler Legal, PLLC (Mr. Meyler and his firm, collectively, the "Meyler Defendants").

[2] The Rothschild Defendants' first production of any internal documents happened mere days after the parties met and conferred about Valve's contemplated motion to compel. The Rothschild Defendants made a production of a mere 46 documents, which is an incomplete set of settlement agreements that is partially responsive to only a single document request.

[3] April 25, 2025 is the parties' deadline to substantially complete all document production. Dkt. 61.

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600

unfortunate tendency to treat Court deadlines and agreements with Valve as guidelines rather than rules. Valve therefore needs the Court's assistance to ensure that this pattern ends.

**A.     Valve seeks the Court's intervention because Rothschild Defendants have engaged in a pattern of ignoring deadlines to delay production.**

Throughout extensive calls, emails, and letters, Valve attempted to get the documents the Rothschild Defendants agreed to look for early on in the case. Defendants, however, delayed their search for months.

Their delay started from the very first discovery deadline and persists to this day. In July 2024, all Defendants failed to timely serve their Initial ESI Disclosures. Already then, Valve expressed concern about their decision to ignore Court-ordered deadlines. Ex. 1[4] (Geyer July 25, 2024 email) ("We are concerned with Defendants' emerging pattern of missing Court deadlines that it previously agreed to."). Since that date, however, Defendants have missed, without explanation or comment, numerous deadlines. These include, but are not limited to, the following Court- or self-imposed deadlines:

1. Service of all Defendants' responses to Valve's first interrogatories four (4) days late.

2. Service of Display Technologies', RBDS's, and the Meyler Defendants' responses to Valve's first document requests six (6) days late.

3. Service of PAM's and Leigh Rothschild's responses to Valve's first document requests twelve (12) days late.

4. An October 30th broken promise to provide supplemental interrogatory responses and begin document production by November 8, 2024. Ex. 2 (Damitio Nov. 11, 2024 email).

5. A November 11th broken promise to provide supplemental interrogatory responses and begin document production by November 15, 2024. Ex. 3 (Damitio Nov. 19, 2024 email).

---

[4] All exhibits are attached to the accompanying declaration of Dario A. Machleidt.

1    Defendants' late interrogatory responses contained scant detail despite having unilaterally

2    given themselves extra time to answer. Only after Valve repeatedly pressed the issue did

3    Defendants supplement and, even then, only after more than five months had passed since Valve

4    served its interrogatories. *See, e.g.*, Ex. 4 (Rothschild Suppl. Interrog. Resps.). But even the

5    supplements remained incomplete. As one example, Valve asked Rothschild—the individual who

6    owns and controls each of the Rothschild Defendants—to explain his involvement in deciding to

7    sue Valve in 2022. Rothschild's initial answer lacked any substantive content. His supplement did

8    not improve the situation. Rather than explain what Rothschild actually, factually did leading to

9    that earlier lawsuit, he merely referenced various things he "would have" done, leaving Valve to

10   guess as to whether he *in fact did them*:

> Defendant states that prior to initiating the lawsuit, Mr. Rothschild or Mr. Falcucci
> *would have* communicated with Pitch Scientific requesting a claim chart be prepared
> mapping Valve's product (i.e., the Steam Deck) to the claims of the asserted patent,
> U.S. Patent No. 9,300,723. Pitch Scientific prepared that claim chart which *would
> have* been sent back to Mr. Rothschild, Mr. Falcucci, *or* one of PAM's staff
> members at their PAM email addresses. Thereafter, Mr. Rothschild, Mr. Falcucci, *or*
> one of PAM's staff members *would have* provided Mr. Johnson or staff member of
> Kizzia Johnson with that claim chart. Mr. Johnson *would have* prepared the
> Complaint on behalf of the patent owner Display Technologies, LLC, including the
> claim chart as support for Display Technologies, LLC's allegations. Mr. Johnson's
> paralegal then provided the Complaint with claim chart to Mr. Meyler.

18   *Id.* (emphasis added). Defendants assured Valve that further supplements were on their way, thus

19   temporarily delaying disputes over these types of non-responses. Defendants, however, have yet to

20   remedy these deficiencies.

21   Additionally, on an October 29, 2024 meet and confer, the parties discussed Defendants'

22   numerous privilege objections. Valve raised the issue in light of the very real risk that Defendants

23   take a sword-and-shield approach to waiver, for instance, to attempt to prove the "good faith"

24   factors under the Washington Troll Act while shielding unsavory materials. At that meeting,

25   "Defendants confirmed that they are not currently withholding any responsive documents on the

26   basis of privilege and, going forward, *intend to waive all privilege objections*. To the extent that

27   Defendants choose not to waive privilege over certain documents, they agreed to notify Valve to

28   work through any issues." Ex. 5 (Machleidt Oct. 31, 2024 email) (emphasis added). Two months

LCR 37 JOINT SUBMISSION
CASE NO. 2:23-CV-1016                    - 3 -

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600

1   later, however, Defendants backtracked. Ex. 6 (Chad Dec. 20, 2024 email); Ex. 7 (Stradley

2   Dec. 30, 2024 email) ("We understand that is has been Plaintiff's position that Defendants have

3   already waived the attorney-client privilege. It remains Defendants' position that no such waiver

4   has taken place.").

5          This changed strategy on Defendants' part forced Valve to likewise adjust its discovery

6   approach. Ex. 8 (Machleidt Jan. 10, 2025 Privilege Waiver Ltr.). Indeed, "Valve proceeded for

7   nearly two months under an understanding of the scope of Defendants' waiver from which [they]

8   now retreat." *Id.* Defendants' months' long delay in producing documents means Valve still does

9   not know the extent of Defendants' retreat from their prior waiver position. This dispute might

10  come to a head soon and, as Valve explained to them, "it's improper for Defendants to condition

11  production of documents or interrogatory responses on potential agreement between the parties

12  about the scope of waiver. Defendants can choose whether to withhold documents as privileged or

13  not, and Valve reserves its right to seek appropriate relief." *Id.*

14         To avoid any doubt, the Rothschild Defendants never explained or attempted to excuse

15  their pattern of missing deadlines beyond merely claiming "mistake." But their persistent inability

16  to meet deadlines has far surpassed a simple mistake. In a recent letter, Valve emphasized the

17  brazenness shown by such unexcused delays:

18         Display Technologies' months-late discovery response highlights this problem.
           Responses to Valve's Request for Production No. 15 were due on August 8, 2024.
19         Display Technologies missed that deadline. On October 16, we pointed out this fact
           to you. Yet Display Technologies did not serve what it incorrectly styled as a
20         "supplemental" response until January 3, 2025. It is remarkable that it took nearly
           five months to rectify what you call "obviously an error."
21

22  Ex. 8 (Machleidt Jan. 10, 2025 Privilege Waiver Ltr.); *see also* Ex. 9 (Machleidt Oct. 16, 2024

23  Ltr.) (explaining that defendants waived any objections by not timely responding); Ex. 8

24  (Machleidt Jan. 10, 2025 Privilege Waiver Ltr.) (same); *see also Bussiere v. Softmart Com. Servs.*

25  *Inc.*, No. C08-1461-RSM, 2009 WL 10675540, at *1 (W.D. Wash. June 1, 2009) (explaining that

26  "failing to respond to a Rule 34 request within the time permitted waives all objections thereto").

27         Despite Valve's best efforts (*see supra*), the Rothschild Defendants' delay strategy has

28  extended to their failure to produce documents for nearly eight months (and counting). Such a

delay is simply unacceptable. Unsurprisingly, other courts have acknowledged that, eventually, a requesting party's patience can be exhausted and judicial assistance required. In *Water, Inc. v. Everpure Inc.*, for instance, defendant "Everpure served the disputed discovery requests in April of 2010 … [and] Water eventually responded[], but failed to produce any documents whatsoever in response to the request for production of documents." No. CV0903389, 2011 WL 13176616 (C.D. Cal. Mar. 1, 2011). Water's document production eventually came 11 months later. In granting Everpure's motion to compel, the court described this "failure to produce any documents in response to legitimate requests for production of documents, without any agreement from opposing counsel that Water could delay the production, [a]s a violation of Water's discovery obligations." *Id.*

The exact same finding applies here. The Rothschild Defendants have violated their discovery obligations by not producing any documents from their own custodial and non-custodial data sources until nearly eight months after Valve served legitimate requests. Even now, eight months later and only six weeks away from the deadline to substantially complete document production, the extent of the Rothschild Defendants' production of internal materials amounts only to forty-six settlement/license agreements. By any measure, this is not enough to comply with their discovery obligations.

**B.    The Rothschild Defendants cannot use the parties' negotiations regarding search terms to delay production or excuse their missed deadlines.**

The Rothschild Defendants also used ESI discovery as an excuse for their late (and largely non-existent) production. The ESI Order requires the producing party to disclose a reasonable search methodology when looking for responsive, electronic documents. This makes sense because the producing party knows the systems it uses, their search functionality and parameters, and any attendant limitations. Here, however, the Rothschild Defendants "put the onus on Valve to come up with a set of" initial search terms. Ex. 10 (Geyer Jan. 29, 2025 email). While defense counsel characterized this abdication of its duty as "merely [an] attempt[] to be helpful," Ex. 11 (Stradley Feb. 2, 2025 Ltr.), it was anything but that. *See also D.M. v. Cnty. of Merced*, No. 1:20-cv-00409, 2022 WL 4792420, at *7 (E.D. Cal. Oct. 3, 2022) ("Similarly, the Court determined the

failure to conduct any ESI searches for documents responsive to Plaintiffs' requests (served in October 2020) until after the motion to compel was filed (in June 2021) … not only demonstrated the necessity of Plaintiffs' motion[] but also amounted to an unreasonable delay. Further, the Court found the onus on providing the ESI search terms fell on Defendants.").

The Rothschild Defendants' "disclosure of proposed ESI search terms" (Ex. 12) relating to Valve's requests fell far short of this requirement in the ESI Order. Dkt. 52 § C.2.a.i. As Valve explained in one of its many discovery-related letters, "[s]everal of Defendants' proposed terms bear no relation to Valve's requests for production and … Defendants did not propose any search terms containing the word 'Valve,' despite a number of requests to which that search term is necessary to identify responsive documents …" Ex. 13 (Machleidt Aug. 16, 2024 Ltr.).

In response to Valve's complaints, the Rothschild Defendants suggested that the parties "decide which, if any, of the terms [defendants] originally proposed Valve wants us to search. To the extent that is less than 10, [defendants] will allow Valve to propose alternative terms to make up the difference as well as propose the additional 10 terms it is entitled to under the Court's order." Ex. 14 (McPhail Oct. 8, 2024 email).

On a meet and confer, the Rothschild Defendants "also agreed that they would run the search terms Defendants previously suggested and provide hit counts to assist Valve in crafting additional search terms." Ex. 5 (Machleidt Oct. 31, 2024 email). Valve also asked "whether any of the custodians or systems … have different search capabilities with respect to Boolean searches and any limitations to those capabilities." *Id.* Defendants promised to provide this information by November 2024. Yet as of December 20, 2024, the Rothschild Defendants still had not informed Valve of the "[s]earch capabilities for Defendants' custodians." Ex. 15 (Machleidt Dec. 20, 2024 ltr); *see also* Ex. 10 (Geyer Jan. 29, 2025 email).

Lacking this critical information yet all the while losing time in the discovery schedule, Valve was forced to "assume[] Defendants have basic Boolean search capabilities" and proposed terms accordingly. Ex. 15 (Machleidt Dec. 20, 2024 Ltr.). Valve, however, was wrong. Not until December 30 did defense counsel explain that their custodians do not "possess or maintain

sophisticated document management systems." Ex. 7 (Stradley Dec. 30, 2024 email). What followed was the search-term negotiations that should have started, and ended, long ago.

Even though the Rothschild Defendants finally began engaging in discussions around the scope of ESI discovery, they inexplicably failed to provide any hit counts, search capabilities, or other disclosures related to two ESI custodians until *after* January 10, including for the named Defendant Leigh Rothschild, who is at the center of every issue in this case. Ex. 16 (Machleidt Jan. 10, 2025 Search Term Ltr.).

**C.    The Rothschild Defendants' problematic search and production strategy.**

Several recent events have led Valve to further doubt the sufficiency of the Rothschild Defendants' search for responsive documents.

**1.    The Discord agreement.**

Valve knew from public filings that another company (Discord, Inc.) settled a lawsuit that Display Technologies filed against it in the Northern District of California mere weeks after Valve served its document requests. *Display Techs., LLC v. Discord Inc*., 5:24-cv-00703, Dkts. 56 & 57 (N.D. Cal.).

Despite this fact, as of January 2025, the Rothschild Defendants had not produced any agreement with Discord. Valve therefore served a targeted document subpoena to Discord, seeking any settlement agreement stemming from the dismissed lawsuit. Ex. 17 (Discord Subpoena). In response, on February 18, Discord produced a "Settlement and License Agreement" between itself as the licensee and, among others, Display Technologies (the named plaintiff). Ex. 18.

After Valve provided the Discord production (namely, the license agreement) to Defendants, a dispute arose regarding the alleged confidentiality of that agreement. During the parties' related correspondence, Valve wrote that it was "unfortunate [Defendants'] dilatory discovery strategy forced Valve to incur the expense of subpoenaing Discord for an agreement [Defendants] should have produced months ago." Ex. 19 (Machleidt Feb. 25, 2025 email). The Rothschild Defendants responded: "[f]urther, you state that [Display Technologies] should have produced the settlement agreement with Discord 'months ago.' Please point us to the document

1    request in which Valve has requested DT's settlement agreements. *We see no such request.*" Ex.

2    20 (Stradley Mar. 4, 2025 email) (emphasis added).[5]

3        Valve, however, served three such requests in July 2024. Request No. 5 to Display

4    Technologies; Request No. 6 to Rothschild; and Request No. 8 to PAM seek documents

5    "[r]elating to any proposed or executed License to, assignment of, or any other grant of rights to

6    the '723 Patent, including all offers and negotiations of any such License, assignment, or any other

7    grant of rights." Exs. A, B, & D. Display Technologies asserted that very patent against Discord,

8    and it was part of the agreement resolving that suit. Ex. 21 (Machleidt Mar. 4, 2025 email).

9        The Rothschild Defendants should have produced this agreement months ago. This holds

10   true regardless of the parties' ongoing discussions regarding search terms. As this Court recently

11   found, a "reasonably accessible electronic document that is responsive to a discovery request is no

12   different than a reasonably accessible paper document and must be produced without regard to the

13   parties' agreement to use search terms." *Albert v. Lab'y Corp. of Am.*, 536 F. Supp. 3d 798, 801

14   (W.D. Wash. 2020). License agreements are just one type of document that fit within the scope of

15   this rule.

16       This same reasoning applies across all of Valve's discovery requests. The Rothschild

17   Defendants cannot use the shadow of search terms to avoid timely searching for and producing

18   "reasonably accessible electronic document[s]." Contending otherwise is "an incorrect

19   interpretation of a responding party's duty under Rule 34 and the ESI Agreement." *Id.*

20       **2.    The Rothschild Defendants' production of public court filings.**

21       The Rothschild Defendants attempt to obscure their discovery deficiencies by downloading

22   and producing thousands of public court filings from prior cases. Of the almost 4,000 total

23   documents produced by all Defendants as of March 12, 2025, over 3,700 are public court filings

24   downloaded days before being produced to Valve. Machleidt Decl., ¶ 32. Of the documents

25   produced by Meyler Legal PLLC, 99 of them are also public filings or discovery requests from

26   this case, including several documents listing the originating author as an employee of Kilpatrick

27   _____

28   [5] Defense counsel later conceded that Valve's requests covered the Discord agreement.

LCR 37 JOINT SUBMISSION
CASE NO. 2:23-CV-1016
- 8 -
Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

Townsend & Stockton from when the documents were served by Valve's counsel on Defendants. *See, e.g.*, Ex. 22 (ROTHSCHILD0000314). *Id.*, ¶ 33.

Defendants' production also includes 52 public court filings from the case "*Display Technologies, LLC v. Display Industries, LLC*." *See, e.g.*, Ex. 23 (ROTHSCHILD0015435). Machleidt Decl., ¶ 34. This case, however, was filed by an entity bearing the same name, yet being entirely unrelated to, the defendant "Display Technologies" in this action.

### D.    The Rothschild Defendants' delay prejudices Valve.

Defendants have consistently relied on the April 25th deadline for the substantial completion of document production as a reason to avoid bringing this dispute to the Court. But by refusing to reasonably participate in the discovery process, Defendants have condensed the entirety of fact discovery into six weeks and, accordingly, have prejudiced Valve's ability to prepare its case.

First, the Rothschild Defendants' eight-month delay prejudices Valve's ability to serve follow-up discovery requests or search terms gleaned from Defendants' internal documents. Without documents, Valve is left guessing as to the specific words and phrases Defendants use to describe critical issues. For this reason, Valve has been unable to serve any of the 10 search terms allotted to it under the Court's ESI Order *for its July 2024 requests*. Without the production of responsive documents, Valve does not know what to look for.

Second, Valve has subpoenaed nine law firms used by the Rothschild Defendants to assert their patents, including counsel who litigated cases where entities owned by Rothschild were found to have litigated in bad faith. The same counsel that represents the Rothschild Defendants also represents these law firms and, unfortunately, has blocked any third-party discovery until the completion of party discovery. According to counsel, "[a]ll documents and information should be obtained from Defendants and public sources before burdening [the law firms] with a request for materials that could be obtained from Defendants." *See, e.g.* Ex. 24 at 1. But Valve cannot obtain this information from the Rothschild Defendants because they have thus far refused to participate in discovery. The catch-22 imposed on Valve prevents it from seeking discovery, party or third-party, until the last moments of fact discovery.

LCR 37 JOINT SUBMISSION
CASE NO. 2:23-CV-1016                                   - 9 -

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600

1      Further, Defendants' undue delay in participating in party discovery prevents Valve from

2 conducting its own investigation into the veracity of their claim that its subpoenas are "a request

3 for materials that could be obtained from Defendants," especially in light of the prior

4 representations, under oath from Mr. Rothschild, that "[n]o one in my company would know

5 [about prior litigations]. *The attorneys who are litigating these cases would have information on*

6 *the status of the cases*." Ex. 25 (81:13-15) (emphasis added).

7      The Rothschild Defendants have stalled Valve's persistent attempts to move this case

8 forward. Valve has for months endeavored to find a solution with them short of seeking the

9 Court's assistance. Valve's informal efforts, however, have failed. It therefore asks this Court to

10 impose a concrete deadline of seven days after resolution of this motion for the Rothschild

11 Defendants to substantially complete their production of documents responsive to requests served

12 in the middle of 2024.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.    RESPONDING PARTY'S (ROTHSCHILD DEFENDANTS) INTRODUCTORY STATEMENT.

The Rothschild Defendants have collected their respective documents, have produced over 3,750 documents over the past approximately month and a half, and continue to review those documents and engage in a rolling production of responsive, non-privileged documents. There is nothing for the Court to compel, and Valve's request should be denied.

Valve's motion really amounts to a complaint that it is not happy with the documents that the Rothschild Defendants have produced to date because those documents have largely been public filings, rather than the Rothschild Defendants' internal documents and communications. But it is neither surprising nor indicative of undue delay that the majority of the documents produced to date are public documents. First, the produced public documents are responsive to Valve's document requests, a fact on which Valve is silent. Second, the internal documents and communications that Valve seeks, and which it is upset have not yet been produced, are primarily documents that have been collected via use of search terms. But the parties only reached agreement on certain search terms in the past month or two. Until initial search terms were agreed upon, the majority of the internal documents and communications Valve seeks could not be gathered. The process of exchanging and agreeing on search terms has taken a significant amount of time—it began in the fall of 2024 and, while the parties have reached agreement on certain terms, the parties continue to negotiate regarding others. Valve attempts to stick Defendants with the blame for the length of this process but ignores its own delay in responding to Defendants' proposed search terms, including an approximate one-month delay. Finally, the 19.350 RCW claim in this action focuses on the Defendants' litigation and enforcement efforts associated with the Rothschild Defendants' patents. Because of the very nature of this claim, the internal documents and communications sought by Defendants implicate privilege and work product, requiring a manual review of the thousands of documents and communications collected from the Rothschild Defendants. In other words, this is not an instance where documents can easily be mass coded for production.

LCR 37 JOINT SUBMISSION
CASE NO. 2:23-CV-1016                    - 11 -

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

1      Despite the fact that, since agreement on certain search terms, the Rothschild Defendants

2   have been gathering and producing documents, Valve asks this Court to modify the Court's

3   Scheduling Order (Dkt. 61) to move up the substantial completion of production deadline with

4   respect to Valve's first set of requests by up to three weeks. There is no basis to do so. The

5   Rothschild Defendants engaged in numerous back and forth exchanges with Valve to come to

6   agreed-upon search terms, eventually reached agreement on several terms, have gathered and

7   produced documents thereafter, and continue to review and produce responsive, nonprivileged

8   documents. Moving up that deadline and requiring to the Rothschild Defendants to review

9   thousands of documents in a shortened timeframe would be unduly burdensome. Moreover, the

10  Court's current substantial completion deadline still allows for ample time for the parties to

11  complete depositions and nonparty discovery.

12      Valve's request that the Court require the Rothschild Defendants to complete their

13  production of documents responsive to Valve's first set of requests no later than seven days after

14  resolution of the issues in this submission should be denied.[6]

15      **A.      The Rothschild Defendants have participated in good faith in the discovery process.**

16      Throughout the discovery process, Defendants have actively engaged with Valve in an

17  effort to reach agreement as to the production of documents. After service of Valve's first set of

18  requests, the Defendants provided search terms that they proposed be used to locate ESI likely to

19  contain responsive and discoverable information. (Ex. 12.) Thereafter, in the fall of 2024, the

20  parties began discussing the Defendants' proposed search terms. Rather than provide up to 10

21  additional search terms for the Defendants to run as contemplated by the Court's ESI Order (Dkt.

22  51 at § C(2)(a)), Valve instead claimed that the Defendants' search terms were not sufficient. In an

23  effort to address Valve's concerns regarding Defendants' proposed terms, Defendants proposed

24  the parties "meet and confer and decide which, if any, of the terms we originally proposed Valve

25  wants us to search. To the extent that is less than 10, we will allow Valve to propose alternative

26

27  ---
[6] Defendants understand Valve's requested relief to be directed only to the Rothschild Defendants and not to the Meyler Defendants. Indeed, as of today, the Meyler Defendants have substantially completed their production of documents in response to Valve's first set of document requests.

28

terms to make up the difference as well as propose the additional 10 terms it is entitled to under the Court's order." (Ex. 14 at 10/8/24 McPhail email.) Toward the end of October, the parties met and conferred during which Defendants agreed, *inter alia*, to provide hits for the search terms they originally proposed and to begin producing "physical documents responsive to Valve's discovery requests" by November 8, 2024. (Ex. 2 at 10/31/24 Machleidt email.) During the meet and confer process, counsel for Defendants made clear that Defendants would collect its ESI once the parties had agreed on search terms, rather than in a piecemeal fashion. (Declaration of Donald McPhail ("McPhail Decl.") ¶12; *see also*, *e.g.*, Ex. 33 at General Objection No. 14.)

Following those meet and confers, on November 26, 2024, Defendants provided hits for its proposed search terms[7] and also confirmed that it had no physical documents to produce responsive to Valve's discovery requests. (Ex. 26 at 11/26/24 Chad email.) It was not until nearly a month later (December 20, 2024), however, that Valve provided any response to Defendants' original proposed search terms and corresponding hits. (Ex. 15.) On January 3 and 9, 2025, Defendants provided hit counts relating to Valve's proposed modifications to search terms. (Ex. 27 at 1/3 and 1/9 Stradley emails.) The next day, the parties agreed on some initial search terms (Ex. 16) and, thereafter, have continued to negotiate additional terms (*e.g.*, Ex. 11; Ex. 28 at 2/10 Stradley email & 2/25 Geyer email). In doing so, Valve has taken its time in these negotiations. For instance, on February 10, 2025, Defendants proposed search terms for use in connection with Mr. Rothschild's gmail account. It took over two weeks for Valve to respond to Defendants' proposed terms. (Ex. 28 at 2/10 Stradley email & 2/25 Geyer email.) To date, the parties have agreed to certain search terms but continue to negotiate others. (*E.g.*, Ex. 29 at 3/11 and 3/19 Stradley emails.)

Even though the parties had not (and still have not) agreed to all terms, consistent with the Court's ESI Order, Defendants began running searches and collecting documents for review and production. Indeed, at the parties' February 4, 2025 meet and confer, Defendants stated that they anticipated beginning production of documents in the next two weeks and that they would be

---

[7] The Rothschild Defendants are not a technologically, sophisticated parties. They have no internal IT department and have few employees.

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

doing a rolling production of documents. (Ex. 28 at 2/4 Damitio email & 2/10 Stradley email.) At that time Defendants also told Valve they would be pulling and producing public filings of Defendants Display Technologies ("DT") and Rothschild Broadcast System ("RBDS") lawsuits involving the asserted patents. (*Id.* at 2/10 Stradley email.) The Defendants did just that, producing the following production sets:

| Date of Production | Number of Documents | Bates Numbers | Custodians |
|---|---|---|---|
| 2/12/2025 | 481 | ROTHSCHILD1-6513 | Meyler Legal PLLC; Public |
| 2/17/2025 | 1128 | ROTHSCHILD6514-15434 | Public |
| 2/25/2025 | 561 | ROTHSCHILD15435-18436 | Daniel Falcucci[8] |
| 2/27/2025 | 1753 | ROTHSCHILD18437-29445 | Public |
| 3/07/2025 | 46 | ROTHSCHILD29446-30193 | Daniel Falcucci |
| 3/19/2025 | 27 | ROTHSCHILD30194-30620 | Daniel Falcucci |
| 3/24/2025 | 120 | ROTHSCHILD30621-31682 | Meyler Legal PLLC; Daniel Falcucci; Leigh Rothschild; Christina Arias; and Public |

(McPhail Decl. ¶10.) These productions include public filings of patent lawsuits brought by Defendants DT and RBDS; communications between Mr. Meyler[9] and opposing counsel; communications between Mr. Meyler and counsel for Valve; patent assignments; settlement and

---

[8] While Mr. Falcucci is identified as the custodian of these documents, this set of documents is public documents.
[9] Mr. Meyler served as local counsel for DT and RBDS in Washington for various lawsuits.

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600

license agreements; and management agreements of Defendants DT and RBDS; and operations agreements of DT, RBDS, and Patent Asset Management, LLC ("PAM"). (*Id.*)

The Rothschild Defendants' production to date has been substantial, and they continue to review the electronic documents that they have collected.[10] Valve points to missed deadlines that it alleges evidence a pattern of delay, focusing on service of responses to discovery requests a few days late and missed self-imposed deadlines to produce documents. But the latter refers to production of physical documents, and Defendants simply had no such physical documents responsive to Valve's requests for production. (Ex. 26 at 11/26/24 Chad email.) And, with respect to the former, while regrettable, Valve points to no legitimate prejudice it suffered from receiving discovery responses a few days late. Taken as a whole, these past few months the Rothschild Defendants have actively participated in discovery, including significant back-and-forth with Valve regarding search terms, the collection of thousands of documents, and production of approximately 3,750 responsive documents. In such circumstances, where Defendants have and continue to produce documents and the substantial completion of production deadline is still over a month away, the court should deny Valve's motion to compel. *SiteLock LLC v. GoDaddy.com LLC*, No. CV-19-02746-PHX-DWL, 2020 WL 6135189, at *14-15 (D. Ariz. Oct. 19, 2020) (denying motion to compel where party had begun producing documents and was set to finish production of documents by the deadline for substantial completion set by the Court and finding the movant had "put the cart before the horse").

Valve's cases do not support finding otherwise. In *Water, Inc. v. Everpure Inc.* the nonmovant had produced no responsive documents. No. CV0903389, 2011 WL 13176616, at *5 (C.D. Cal. Mar. 1, 2011). Similarly, in *D.M. v. Cnty. of Merced*, the nonmovant had not conducted any ESI searches for responsive documents until after the movant had filed its motion to compel. No. 1:20-cv-00409, 2022 WL 4792420, at *7 (E.D. Cal. Oct. 3, 2022). In other words, the nonmovants in those cases had failed to engage in any discovery efforts. That is not the case here:

---

[10] The Rothschild Defendants have collected documents from the business email accounts of employees Daniel Falcucci and Christina Arias; from the business and personal email accounts of Leigh Rothschild; and from non-email electronic storage locations associated with Daniel Falcucci and Christina Arias.

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

the Rothschild Defendants have run search terms, collected documents, produced documents, and continue to review and produce documents.

**B.      Valve's arguments that the Rothschild Defendants have delayed production of documents fail.**

**1.      The Rothschild Defendants' documents are responsive to Valve's requests.**

Valve complains that the Rothschild Defendants' production includes a large amount of public filings. This complaint makes little sense as these public filings are responsive to Valve's documents requests to the Rothschild Defendants as well as to Valve's subpoenas to nonparty law firms. For example, Valve seeks:

- Request No. 4 to RBDS and DT: "Documents sufficient to identify all cases You filed in any court in Washington, the status of any ongoing cases, and the outcome (i.e., settlement, voluntary dismissal, final judgment, etc.) of any completed cases." (*E.g.*, Ex. C at No. 4.)

- Request No. 11 to RBDS: "All Documents, Communications, and Things Relating to any lawsuit You filed against a third party asserting infringement of a patent to which the third party was already licensed." (*E.g.*, *id.* at No. 11; *see also*, Ex. D at No. 11.)

- Request No. 14 to DT and No. 17 to RBDS: "All Communications received by You or any legal representative stating that You or the legal representative were engaged in meritless, frivolous, or bad-faith assertions of patent infringement." (*E.g.*, Ex. C at No. 17.)

- Request No. 25 to DT: "Specific to the '723 Patent, all Documents, Communications, and Things that Relating to whether You have 'demonstrated reasonable business practices in previous efforts to enforce the '723 patent' or 'successfully enforced the '723 patent, or a substantially similar patent, through litigation,' per RCW 19.350.020(4)I(i)-(ii)." (*E.g.*, Ex. D at No. 25; *see also*, Ex. C at No. 28.)

- Request No. 30 to RBDS: "Documents and Communications Relating to the

ownership and assignment of the '221 Patent, including the assignment of the '221 Patent from Ariel Inventions to You." (Ex. C at No. 30.)

- *Request No. 1 to nonparty law firms*: "All files related to Display Technologies or RBDS, including, but not limited to, all files related to the assertion of any of Display Technologies' or RBDS' patents." (Ex. 30 at Schedule A at No. 1.)

- *Request No. 2 to nonparty law firms*: "Documents sufficient to identify each case in which You have previously represented any Defendant, regardless of whether You entered an appearance in the case." (*Id.* at No. 2.)

- *Request No. 11 to nonparty law firms*: "All Communications alleging that You or any Defendant engaged in meritless, frivolous, or bad-faith assertions of patent infringement in the course of Your representation of any Defendant." (*Id.* at No. 11.)

Indeed, counsel for Defendants told counsel for Valve that Defendants would be pulling and producing ECF filings of RBDS and DT patent lawsuits involving the asserted patents. (Ex. 28 at 2/10 Stradley email.) Counsel for Valve never objected nor complained that such documents are irrelevant, nonresponsive, or the like. (*Id.* at 2/25 Geyer email). Rather, they appeared to agree such documents are relevant and responsive. (*Id.*) The Rothschild Defendants' production of public filings was proper, and Valve's complaints otherwise are belied by their own requests and actions.

At bottom, Valve's real issue appears to be that they want more internal documents and communications from the Rothschild Defendants. But, apart from agreements (which, as described below, the Rothschild Defendants have produced and are producing) the categories of internal documents and communications that Valve seeks are likely to be privileged or work product. For example, Valve seeks:

- *Request No. 3 to RBDS*: "All Documents, Communications, and Things Relating to Your identification of third parties to send Demand Letters to, and Your decision Relating to which patents to include in those Demand Letters." (Ex. C at No. 3.)

LCR 37 JOINT SUBMISSION
CASE NO. 2:23-CV-1016                              - 17 -

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600

1

2

3

4

5

6

7

8

9

10

11

12

- Request No. 13 to RBDS: "All Documents, Communications, and Things Relating to the decision to assert the '221 Patent in the June 2023 Demand letter." (*Id.* at No. 13.)

- Request No. 15 to RBDS: "All Documents, Communications, and Things Relating to the infringement charts (i.e., claim charts) comparing the '221 Patent to Valve's Steam platform in the June 2023 Demand Letter, including all Communications with Pitch Scientific Relating to the creation of the infringement charts." (*Id.* at No. 15.)

- Request No. 19 to RBDS: "All Documents, Communications, and Things Relating to any investigation conducted prior to sending the June 2023 Demand Letter, including any investigation by the Meyler Defendants and Pitch Scientific regarding the allegations made in the June 2023 Demand Letter." (*Id.* at No. 19.)

13    In short, Valve's 19.350 RCW claim focuses on the Defendants' litigation and

14    enforcement efforts associated with the Rothschild Defendants' patents, and the documents sought

15    by Valve relevant to that claim are likely to implicate privilege and work product. Accordingly, it

16    is not surprising that the Rothschild Defendants' production has largely been public documents,

17    rather than internal communications. And, because privilege issues are implicated, the Rothschild

18    Defendants must engage in a time-consuming manual review of documents and communications

19    collected from the Rothschild Defendants.[11]

20

21

22

23    ───────────────

[11] Valve argues that the Rothschild Defendants previously stated that they intended to waive

24    privilege. (*See*, *supra*, at p. 3.) Counsel for the Rothschild Defendants, however, merely stated that the nature of the case was likely to implicate privilege issues and that the Rothschild Defendants

25    may need to produce privileged documents. (McPhail Decl. ¶12.) But the Rothschild Defendants have not waived privilege. They have not intentionally produced any privilege or work-product

26    materials. While the Rothschild Defendants had also previously proposed what it believed was a reasonable scope of waiver if it were to waive, Valve took the position that the production of any

27    privileged documents would waive all privilege, including privilege as to communications with counsel representing the Rothschild Defendants in this action. (Ex. 31 at 12/30 & 1/8 Stradley

28    emails; Ex. 8.) This ended the parties' discussion as to waiver.

LCR 37 JOINT SUBMISSION
CASE NO. 2:23-CV-1016                                    - 18 -

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600

2.      **The Rothschild Defendants have produced settlement and license agreements.**

Valve makes much ado about the Rothschild Defendants' agreement with nonparty Discord. But Valve's arguments are moot. The Rothschild Defendants agreed to produce responsive settlement and license agreements and are not withholding such agreements. Rather, to date, the Rothschild Defendants have collected and produced over 70 settlement and license agreements. And, the Rothschild Defendants continue reviewing the remaining settlement and license agreements they have been able to locate after a reasonable search for production. Several variants of the Rothschild Defendants' settlement and license agreements have notice provisions, requiring that the licensor provide the licensee with notice prior to production. The Rothschild Defendants are also waiting on such notice periods to pass and then anticipate producing additional settlement and license agreements.

Valve further attempts to paint the Rothschild Defendants as dilatory by noting that, on March 4, 2025, counsel for the Rothschild Defendants asked about which request the Discord agreement was responsive and stated it did not see such a request. But, within a day, counsel for the Rothschild Defendants recognized that it had inadvertently missed the request at issue. In any event, this exchange between counsel is irrelevant because the Rothschild Defendants had already begun collecting relevant license and settlement agreements, intended to produce the same, and, in fact, produced approximately 40 agreements three days later. (McPhail Decl. ¶11.)

Because the Rothschild Defendants have already produced numerous license and settlement agreements and are reviewing additional license and settlement agreements they have located after a reasonable search for production (following completion of any notice period), there is nothing to compel.

3.      **There is no prejudice to Valve.**

Valve argues that the Court's April 25 deadline for the substantial completion of production deadline does not provide sufficient time to complete fact discovery and asks this Court to move up that deadline. But the close of fact discovery is still three months away, leaving ample time for the parties to engage in depositions and nonparty discovery. Moreover, Valve

LCR 37 JOINT SUBMISSION
CASE NO. 2:23-CV-1016                    - 19 -
Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600

1   ignores their own delay, which includes, for example, an approximate one-month delay in

2   responding to Defendants' original search term hits and an additional two-week delay in

3   responding to Defendants' proposed search terms for Mr. Rothschild's gmail account during the

4   parties' search negotiations. (Ex. 26; Ex. 15; Ex. 28 at 2/10 Stradley email (identifying search

5   terms for gmail account) & 2/25 Geyer email.) Valve cannot complain of the slow electronic

6   discovery process when they contributed to any such delay.

7           Valve's other arguments also fail. First, Valve claims it is left guessing as to the specific

8   words and phrases that the Rothschild Defendants use in their internal communications which it

9   needs to enable them to determine additional search terms to propose. Not so. The Rothschild

10  Defendants have already produced and continue to produce, on a rolling basis, nonprivileged,

11  internal documents and communications which Valve is free to review and use in crafting

12  additional search terms. And, as described above, the vast majority of relevant and responsive

13  internal documents and communications are highly likely to be privileged and/or work product.

14  (*See*, *supra*, pp. 17-18.)

15          Second, Valve argues that counsel for the Rothschild Defendants "has blocked any third-

16  party discovery until the completion of party discovery" because "[a]ccording to counsel, 'all

17  documents and information should be obtained from Defendants and public sources before

18  burdening [the law firms] with a request for materials that could be obtained from Defendants."

19  (*See*, *supra*, at 9.) Rule 45 requires that the party issuing a subpoena on a nonparty take reasonable

20  steps to avoid imposing an undue burden or expense on the nonparty. Fed. R. Civ. P. 45.

21  Counsel's objections to these nonparty subpoenas is not an attempt to block or delay discovery;

22  rather, it is consistent with the goals of Rule 45 to not unduly burden nonparties. Counsel for

23  Valve appeared to agree that it was proper to get discovery from Defendants first as it agreed to

24  hold off on pursuing discovery from the nonparty law firms until the substantial production of

25  discovery deadline of April 25th. (Ex. 32.) After that deadline, the parties may assess what, if any,

26  documents are appropriately obtained from nonparty law firms. Separately, this is yet another

27  reason that the Rothschild Defendants produced public filings from DT and RBDS lawsuits—

28

LCR 37 JOINT SUBMISSION
CASE NO. 2:23-CV-1016                                    - 20 -

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600

1   these are responsive documents that the subpoenaed law firms would likely have. (*See*, *supra*, p.

2   17.)

3        **C.**    **Conclusion.**

4        The Rothschild Defendants have produced documents and continue to review and produce

5   documents on a rolling basis. They are not delaying their production of documents, and Valve's

6   request to compel production of documents in advance of the deadline for substantial completion

7   of documents should be denied.

LCR 37 JOINT SUBMISSION
CASE NO. 2:23-CV-1016

- 21 -

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600

1  **III.    DISPUTED DISCOVERY REQUESTS.**

2      **A.    Valve's position.**

3          The parties attach as Exhibits A-D the disputed document requests and each Rothschild

4  Defendant's response. As those attachments show, subject to their objections, the Rothschild

5  Defendants agreed to search for documents responsive to each of these requests. The actual

6  dispute here is, accordingly, merely one of timing. Valve requires the Defendants' documents to

7  take the necessary next steps in this litigation. Defendants' pattern of delay has led Valve to this

8  point, where it requests the Court to impose a hard deadline on the Rothschild Defendants by

9  when they must substantially complete the production of documents response to requests served in

10  July 2024.

11      **B.    The Rothschild Defendants' response.**

12          The documents produced by the Rothschild Defendants to date are responsive to Valve's

13  discovery requests, and the Rothschild Defendants continue to review and produce responsive

14  documents on a rolling basis. Valve's complaint is really directed to the timing of the Rothschild

15  Defendants' production of internal communications and documents, but the review of these

16  documents and communications must be done manually to assess privilege and work product, a

17  time-consuming process. There is no basis to move up the substantial production of document

18  deadline by weeks, as Valve requests, when the production of documents by the Rothschild

19  Defendants to date shows it is not intentionally delaying the production of documents.

20      **C.    Valve's reply.**

21          Through unreasonable delay, Defendants shrank an 18-month discovery period down to 4

22  months. *See* Dkt. 28; Dkt. 61. Defendants provide no excuses for their continued failure to

23  produce documents they are required to produce separate from using search terms. *See Benanav v.*

24  *Healthy Paws Pet Ins. LLC*, No. C20-00421-LK, 2022 WL 3587982, at *3 (W.D. Wash. Aug. 22,

25  2022) (the "*first* step" of discovery is "asking witnesses to gather documents both paper and stored

26  electronically" before engaging in the "*second*" step using search terms (emphasis in original)).

27  The Proposed Order lists categories of such highly-relevant documents, ranging from simple

28  organizational documents to those related to central issues of this case—documents related to

LCR 37 JOINT SUBMISSION
CASE NO. 2:23-CV-1016                                - 22 -

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

1    instances Defendants have been subject to sanctions and monies received from exploitation of the

2    '221 Patent.

3            Defendants' dilatory behavior cannot continue. Defendants should be ordered to

4    immediately produce documents responsive to Valve's Requests for Production listed in Joint

5    Exhibits A-D, specifically including documents that do not require search terms to locate, such as

6    those categories specifically enumerated in the Proposed Order.

7

8    DATED: March 28, 2025            Respectfully submitted,

9                                    KILPATRICK TOWNSEND & STOCKTON LLP

10

11                                   By:  /s/ Dario A. Machleidt
                                         Dario A. Machleidt (State Bar No. 41860)
12                                       Kathleen R. Geyer (State Bar No. 55493)
                                         Christopher P. Damitio (State Bar No. 58633)
13                                       1420 Fifth Avenue, Suite 3700
                                         Seattle, WA 98101
14                                       Telephone:  (206) 467-9600
                                         dmachleidt@kilpatricktownsend.com
15                                       kgeyer@kilpatricktownsend.com
                                         cdamitio@kilpatricktownsend.com
16
                                         Attorneys for Plaintiff
17                                       VALVE CORPORATION

18

19                                   Respectfully submitted,

20
                                     By:  /s/ Donald R. McPhail
21                                       Donald R. McPhail (admitted *phv*)
                                         1900 Duke Street
22                                       Alexandria, Virginia 22314
                                         Tel: (703) 518-4516
23                                       Fax: (612) 332-9081
                                         Email:  dmcphail@merchantgould.com
24

25                                       Eric R. Chad (admitted *phv*)
                                         150 South Fifth Street, Suite 2200
26                                       Minneapolis, Minnesota 55402
                                         Tel: (612) 332-5300
27                                       Fax: (612) 332-9081
                                         Email: echad@merchantgould.com
28

LCR 37 JOINT SUBMISSION
CASE NO. 2:23-CV-1016                        - 23 -

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
(206) 467-9600

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Matthew J. Cunanan (#42530)
DC LAW GROUP
12055 15th Ave NE, Suite B
Seattle, WA 98125
Tel: (206) 494-0400
Fax: (855) 494-0400
Email: matthew@dclglawyers.com

*Attorneys for Defendants Leigh Rothschild,*
*Rothschild Broadcast Distribution Systems,*
*LLC, Display Technologies, LLC, Patent Asset*
*Management, LLC, Meyler Legal, PLLC, and Samuel Meyler*

LCR 37 JOINT SUBMISSION
CASE NO. 2:23-CV-1016

- 24 -

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

1

## CERTIFICATE OF JOINT FILING

2

3
I hereby certify that the above Joint Submission contains both Parties' positions on the discovery disputes, any declarations submitted by the Parties, and the proposed form of order, in accordance with LCR 37(H).

4

5
/s/ Dario A. Machleidt
Dario A. Machleidt

6

## CERTIFICATE OF CONFERENCE

7

8
I hereby certify that the Parties met via teleconference on March 5, 2025, in an attempt to resolve the disputes addressed in this Joint Submission. Participating in the conference on behalf of Defendants were Eric R. Chad and Paige S. Stradley from the law firm Merchant & Gould. Participating in the conference on behalf of Valve were Dario A. Machleidt and Christopher P. Damitio from the law firm Kilpatrick Townsend. The Parties were unable to resolve the dispute during the teleconference.

9

10

11

12
/s/ Dario A. Machleidt
Dario A. Machleidt

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LCR 37 JOINT SUBMISSION
CASE NO. 2:23-CV-1016

- 25 -

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600