# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **ANALYTICAL TECHNOLOGIES, LLC,** ) | |
| ) | |
| Plaintiff- ) | |
| Counterclaim Def., ) | Civil Action No. 2:24-cv-00445-JRG-RSP |
| ) | (LEAD) |
| ) | (2:24-cv-00448) |
| ) | |
| v. ) | |
| ) | |
| **STARBUCKS CORPORATION** ) | |
| ) | |
| Defendant- ) | |
| Counterclaim Pft. ) | |
| v. ) | |
| ) | |
| **LEIGH ROTHSCHILD** ) | |
| Counterclaim Def. ) | |
| ) | |

**DEFENDANT STARBUCKS CORPORATION'S AMENDED ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS IN RESPONSE TO
PLAINTIFF'S COMPLAINT**

Defendant Starbucks Corporation ("Defendant" or "Starbucks"), by and through its undersigned counsel, hereby files its Amended Answer, Affirmative Defenses, and Counterclaims to Analytical Technologies LLC's ("Plaintiff's" or "AT's") Complaint for Patent Infringement (Dkt. No. 1) and alleges a Counterclaim against Leigh Rothschild individually.

Starbucks files this amended pleading with written permission from Plaintiff pursuant to Federal Rule of Civil Procedure 15(a)(2).

1

**NATURE OF ACTION**

As to each allegation in Plaintiff's Complaint, Starbucks denies the allegations and characterizations in the Complaint unless expressly admitted in the following numbered paragraphs.

1.      Starbucks admits that this is an action for patent infringement and that AT has alleged infringement of the '083 Patent. Starbucks expressly denies that it has infringed any claim of the Asserted Patent.

**THE PARTIES**

2.      Starbucks lacks sufficient information as to AT's corporate formation and location. Starbucks lacks sufficient information as to AT's business model. As to any remaining allegations, denied.

3.      Starbucks admits that it is a Washington corporation and admits that it has a principal place of business in Seattle Washington. Starbucks admits that it has a registered agent for service of process in Austin Texas. Starbucks admits that it operates a cafe in this District, but denies the remaining allegations of paragraph 3.

**JURISDICTION**

4.      Starbucks admits that AT filed an action for patent infringement arising under the patent laws of the United States, Title 35 of United States Code, and that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), but denies that AT has any valid claim thereunder.

5.      Starbucks does not contest personal jurisdiction for purposes of this litigation alone and denies any allegations or inferences of infringement in paragraph 5.

6.      Denied.

2

7.      Starbucks admits that it operates a cafe in this District, but denies the remaining allegations of paragraph 7.

8.      Starbucks admits that it operates a cafe in this District, but denies the remaining allegations of paragraph 8.

9.      Starbucks admits that it operates a cafe in this District, but denies the remaining allegations of paragraph 9.

10.     Starbucks admits that it operates a cafe in this District, but denies the remaining allegations of paragraph 10.

11.     Starbucks does not contest personal jurisdiction for purposes of this litigation alone and denies any allegations or inferences of infringement in paragraph 11.

## VENUE

12.     Starbucks does not contest venue for purposes of this litigation alone and denies any allegations or inferences of infringement in paragraph 12.

## THE PATENT IN SUIT

13.     To the extent Paragraph 13 contains any information properly considered an "allegation" under Rule 8, Starbucks admits that it appears that the USPTO issued the '083 Patent with the title so affixed to said patent. Starbucks admits that a copy of what purports to be the '083 Patent was filed concurrent with AT's Complaint. Starbucks denies any remaining allegations herein.

14.     To the extent Paragraph 14 contains any information properly considered an "allegation" under Rule 8, Starbucks admits that the face of the '083 Patent states that it was filed on June 27, 2012.  Starbucks denies that the assignment of the '083 Patent to AT was valid.

15.     Denied.

16.     Denied.

## Overview of the Technology

17.     Starbucks denies that Paragraph 17 contains an accurate description of the scope of the claims of the Asserted Patent.

18.     Starbucks admits that the '083 Patent contains the statement in Paragraph 18 at 1:37-41 but Starbucks denies the statement is true or accurate.

19.     Starbucks is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

20.     Starbucks is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

## The Patented Invention

21.     Starbucks denies that Paragraph 21 contains an accurate description of the scope of the claims of the Asserted Patent.  As to any remaining allegations, denied.

22.     Starbucks denies that Paragraph 22 contains an accurate description of the scope of the claims of the Asserted Patent.  As to any remaining allegations, denied.

23.     Starbucks denies that Paragraph 23 contains an accurate description of the scope of the claims of the Asserted Patent.  As to any remaining allegations, denied.

24.     Starbucks denies that Paragraph 24 contains an accurate description of the scope of the claims of the Asserted Patent.  As to any remaining allegations, denied.

25.     Starbucks denies that Paragraph 25 contains an accurate description of the scope of the claims of the Asserted Patent.  As to any remaining allegations, denied.

26.     Starbucks denies that Paragraph 26 contains an accurate description of the scope of the claims of the Asserted Patent.  As to any remaining allegations, denied.

27.     Starbucks denies that Paragraph 27 contains an accurate description of the scope

of the claims of the Asserted Patent.  As to any remaining allegations, denied.

28.     Starbucks denies that Paragraph 28 contains an accurate description of the scope of the claims of the Asserted Patent.  As to any remaining allegations, denied.

**The Claims are Directed to Patentable Subject Matter[1]**

29.     Starbucks admits that some of the language in Paragraph 29 appears in Claim 1 of the Asserted Patent.  As to any remaining allegations, denied.

**The claims are directed to a solving an existing problem
with restaurant ordering systems**

30.     Denied.

31.     Denied.

**The claims are not directed to an abstract idea or law of nature**

32.     Denied.

33.     Denied.

**The claims do not preempt their field**

34.     Denied.

35.     Starbucks is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

**The claimed method could not be performed mentally or by hand**

36.     Denied.

**<u>DEFENDANT'S SYSTEM AND SERVICES</u>**

37.     Starbucks admits that it is a successful and beloved coffee chain.  As to any remaining allegations, Starbucks is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

---

[1] Section titles do not contain factual allegations under Rule 8 but to the extent any of the section titles are considered factual allegations, Starbucks denies that the claims of the Asserted Patent are patent eligible, owned by Plaintiff, valid, or infringed.

38.     Starbucks admits that its customers may download a mobile app and that some customers may choose to pay for food using that mobile app.  Starbucks denies that its mobile app infringed the Asserted Patent.

39.     Denied.

40.     Denied.

<u>FIRST CAUSE OF ACTION</u>

**(Direct Infringement of the '083 Patent)**

41.     Starbucks repeats and incorporates its statements made in paragraphs 1–40 above.

42.     Starbucks admits that patents are presumed valid upon issuance.  Starbucks denies that the Asserted Patent is valid.

43.     Denied.

44.     Starbucks admits that AT attached an infringement chart to its Complaint. Starbucks denies infringement of the Asserted Patent. AT's own chart demonstrates Starbucks non-infringement.

45.     Denied.

46.     Denied.

47.     Starbucks admits that it has not attempted to design around the '083 Patent or that it has any need to design around the Asserted Patent as Starbucks does not infringe the Asserted Patent.  As to all remaining allegations, denied.

48.     Denied.

**<u>SECOND CAUSE OF ACTION</u>**
**(Indirect Infringement of the '083 Patent)**

49.     Starbucks repeats and incorporates its statements made in paragraphs 1–48 above.

50.     Denied.

51.     Denied.

52.     Denied.

53.     Denied.

54.     Denied.

55.     Starbucks admits that it has not attempted to design around the '083 Patent or that it has any need to design around the Asserted Patent as Starbucks does not infringe the Asserted Patent. As to all remaining allegations, denied.

56.     Denied.

## PRAYER FOR RELIEF

Starbucks denies that AT is entitled to any relief so requested.

## STARBUCKS AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE:

### Standing

AT does not have standing to assert the '083 Patent. The previous owner of the '083 Patent, Andrew Silver, sold the '083 Patent to Table Top Media in 2008. Mr. Silver thus did not have the authority or power to assign the '083 Patent to AT.

### SECOND AFFIRMATIVE DEFENSE:

### Non-Infringement

Starbucks does not infringe and has not infringed any valid claim of the Asserted Patent.

### THIRD AFFIRMATIVE DEFENSE:

### Invalidity under 35 U.S.C. § 102

All of the claims of the Asserted Patent are invalid under 35 U.S.C. § 102 because the claimed invention was disclosed either expressly or inherently in the prior art.

### FOURTH AFFIRMATIVE DEFENSE:

**Invalidity under 35 U.S.C. § 103**

All of the claims of the Asserted Patent are invalid pursuant to 35 U.S.C. § 103 because any differences between the subject matter of the Asserted Patent and the prior art are such that each claim of the Asserted Patent would have been obvious to a person having ordinary skill in the art before the alleged date of the invention of the claims.

**FIFTH AFFIRMATIVE DEFENSE:**

**Invalidity under 35 U.S.C. § 112**

All of the claims of the Asserted Patent are invalid pursuant to 35 U.S.C. § 112 because they are indefinite, not enabled, and/or lack sufficient written description.

**SIXTH AFFIRMATIVE DEFENSE:**

**Invalidity under 35 U.S.C. § 101**

All of the claims in the Asserted Patent are invalid pursuant to 35 U.S.C. § 101 and *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014), because they are directed to an abstract idea and do not recite an inventive concept sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the abstract idea itself.

**SEVENTH AFFIRMATIVE DEFENSE:**

**Prosecution History Estoppel**

AT's claim of infringement with respect to the Asserted Patent is barred, in whole or in part, by the doctrine of prosecution history estoppel.

**EIGHTH AFFIRMATIVE DEFENSE:**

**Failure to Mark**

AT's claim for damages arising from the alleged infringement of the Asserted Patent is limited under 35 U.S.C. § 287 because AT failed to properly mark the Asserted Patent on articles made in the United States.

### NINTH AFFIRMATIVE DEFENSE:

### No Injunctive Relief

At is not entitled to injunctive relief because it has failed to plead the requisite elements for such relief, any alleged injury to AT is not immediate or irreparable, AT has an adequate remedy at law for any alleged injury, the balance of hardships does not warrant a remedy in equity, there is no compelling public interest that would be disserved by an Injunction, and/or AT is not entitled to an injunction after the expiration of the Asserted Patent.

### TENTH AFFIRMATIVE DEFENSE:

### No Willful Infringement

AT is not entitled to enhanced damages because Starbucks has not willfully infringed any claim of the Asserted Patent.

### ELEVENTH AFFIRMATIVE DEFENSE:

### Estoppel, Laches, Implied License, and/or Waiver

AT's attempted enforcement of the Asserted Patent is barred, in whole or in part, by the doctrines of estoppel, laches, implied license, and/or waiver.

### COUNTERCLAIMS

Starbucks Corporation ("Starbucks") asserts the following counterclaims against Analytical Technologies, LLC ("AT") and Leigh Rothschild.

### NATURE OF THE ACTION

1.      This is an action for judgment declaring United States Patent No. 8,799,083 (the "'083 Patent" or the "Asserted Patent") not infringed, invalid, and unenforceable. Starbucks also alleges and asserts a claim against Leigh Rothschild personally under the Texas Uniform Fraudulent Transfer Act.

## THE PARTIES

2.      Starbucks is a corporation organized under the laws of Washington having its principal place of business at 2401 Utah Avenue South, Seattle, Washington, 98134.

3.      According to the Complaint, AT is a limited liability company organized and existing under the laws of the State of Wyoming with its principal place of business at 1712 Pioneer Ave Suite 500, Cheyenne, Wyoming 82001.

4.      Leigh M. Rothschild is an individual living in the state of Florida. Rothschild is an or the owner of Patent Asset Management ("PAM") either directly or indirectly. PAM is the owner of Analytical Technologies either directly or indirectly.

## JURISDICTION AND VENUE

5.      Starbucks counterclaim arises under the United States patent laws, 35 U.S.C. §§ 101 et seq., and seek declaratory relief for which this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338, 1367, 2201, 2202.

6.      An actual and justiciable controversy exists under the Declaratory Judgment Act with respect to the alleged infringement, validity, and enforceability of the Asserted Patent. This controversy has sufficient immediacy and reality to warrant the issuance of declaratory relief.

7.      The Court has personal jurisdiction over AT by virtue of its filing of this action.

8.      This Court has specific personal jurisdiction over Leigh Rothschild.

    a.   Rothschild owns AT, directly or indirectly.

    b.   AT is an underfunded shell entity.

    c.   Rothschild is the sole manager of PAM. PAM is the sole manager of AT.

    d.   AT and PAM are sham entities formed to shield Rothschild from personal liability for filing meritless patent infringement actions, such as the case at-bar.

e.  Mr. Rothschild is the corporate decisionmaker behind all conduct complained of herein (except inequitable conduct). Rothschild is the driving force behind the AT shell entity who conceived and carried out every step leading to this meritless lawsuit.

f.  Mr. Rothschild has a pattern and practice of underfunding shell entities in order to avoid liability. AT is used to promote fraud upon this Court and the public as it purports to be a distinct entity but is in fact a mere shell and corporate fiction.

g.  Rothschild consistently disregards the corporate form and corporate formalities.

h.  For example, Rothschild has signed settlement agreements on behalf of his shell litigation entities that grant defendants licenses to each and every patent for which Rothschild is a named inventor regardless of which shell entity purports to hold those patents.

i.  The signing of a settlement agreement on behalf of a shell entity by Rothschild that grants a license from that shell entity to all of Rothschild's patents, regardless of which shell holds those patents, demonstrates the complete disregard of the corporate form by Rothschild.

j.  It also demonstrated that all of Rothschild's entities are mere shams, improper fictions created to shield Rothschild from the ramifications of filing meritless litigations.

k.  Further, Mr. Rothschild personally directed the fraudulent transfers of settlement monies that went to PAM and Rothschild instead of Plaintiff AT.

l.  The alter ego exception to the fiduciary shield doctrine applies to Rothschild because (1) AT is undercapitalized, (2) PAM/Rothschild is actually the bookkeeper for AT, (3) Rothschild commingles his finances with AT (actually diverts

settlement monies intended for AT to himself through PAM) (4) AT is used to promote fraud or illegality (5) Rothschild fails to observe corporate formalities, and (6) AT is merely a sham.  Detailed facts supporting these allegations are contained in Counterclaim 2, *infra*.

9.      This Court has supplemental jurisdiction over Starbucks TUTFA claim against Rothschild (Counterclaim 2) pursuant to § 1367.

10.     To the extent venue of this action commenced by AT is found to be proper, venue for Starbucks Counterclaims is also proper in the district pursuant to 28 U.S.C. § 1391(b)–(c).

## COUNTERCLAIM 1:

### Non-Infringement (against AT & Rothschild)

11.     Starbucks incorporates by reference the allegations in paragraphs 1-10, *supra*.

12.     Starbucks does not infringe the Asserted Patent.

13.     The asserted claims are method claims requiring customer use for infringement to occur.  As such, Starbucks can only be an indirect infringer. Since the Asserted Patent expired before AT filed its Complaint, and since Starbucks had no pre-suit knowledge of the Asserted Patent, Starbucks cannot be liable for infringement of the Asserted Patent.

14.     Starbucks first became aware of the Asserted Patent on June 15, 2024.

15.     Starbucks had no knowledge of the Asserted Patent before AT filed its Complaint.

16.     The Asserted Patent has expired.

17.     The Asserted Patent expired before AT filed its Complaint here.

18.     The Asserted Patent expired before June 14, 2024.

19.     The following statement in AT's Complaint is false, "Defendant has had actual notice of the '083 Patent and Defendant's infringing activities since at least March 23, 2023." Complaint ¶ 16 (hereafter, "Actual Notice Allegation").

20.     AT has no evidence in support of its Actual Notice Allegation.

21.     Counsel for Starbucks asked counsel for AT to provide any evidence in support of AT's Actual Notice Allegation.

22.     Neither AT nor its counsel has provided to Starbucks or its counsel any support for AT's Actual Notice Allegation.

23.     On August 2, 2024, counsel for AT emailed counsel for Starbucks and stated, "We can agree to remove that statement [the Actual Notice Allegation] if we cannot provide you proof on Monday [August 5, 2024]."

24.     But counsel for AT did not provide proof of AT's Actual Notice Allegation on August 5, 2024.  And counsel for AT did not remove the Actual Notice Allegation.

25.     On September 5, 2024, counsel for AT admitted in an email that the Actual Notice Allegation was a "misrepresentation" and the result of a "typo/cut and paste problem".

26.     Andrew Silver did not send a letter to Starbucks citing the Asserted Patent.

27.     Andrew Silver did not send an email to Starbucks citing the Asserted Patent.

28.     Andrew Silver did not telephone Starbucks citing the Asserted Patent.

29.     Andrew Silver did not contact Starbucks in any manner citing the Asserted Patent.

30.     Raffi Gostanian did not send a letter to Starbucks citing the Asserted Patent.

31.     Raffi Gostanian did not send an email to Starbucks citing the Asserted Patent.

32.     Raffi Gostanian did not telephone Starbucks citing the Asserted Patent.

33.     Raffi Gostanian did not contact Starbucks in any manner citing the Asserted Patent.

34.     Leigh Rothschild did not send a letter to Starbucks citing the Asserted Patent.

35.     Leigh Rothschild did not send an email to Starbucks citing the Asserted Patent.

36.     Leigh Rothschild did not telephone Starbucks citing the Asserted Patent.

37.  Leigh Rothschild did not contact Starbucks in any manner citing the Asserted Patent.

38.  No person or entity has ever sent a letter to Starbucks citing the Asserted Patent.

39.  No person or entity has ever sent an email to Starbucks citing the Asserted Patent.

40.  No person or entity has ever telephoned Starbucks citing the Asserted Patent.

41.  No person or entity has ever sent contacted Starbucks in any manner citing the Asserted Patent.

42.  The infringement chart attached to AT's Complaint, Dkt. No. 1-2, alleges infringement of Claim 1 of the Asserted Patent.

43.  Claim 1 is a method claim.

44.  Method claims are not infringed when sold.

45.  Method claims are only infringed when the steps of the method claim are performed.

46.  Claim 1 of the Asserted Patent contains the following limitation, "performing a self-checkout by a at least one customer".

47.  In Claim 1, the customer performs the self-checkout.

48.  In AT's infringement chart, Dkt. No. 1-2, the following language appears under limitation 1.2, "For example, once the user receives the bill, the application allows the user to pay the bill through a checkout option ("self-checkout by at least one customer") where the user pays the bill ("payment") through multiple payment methods such as a credit card, debit card or a PayPal account ("payment is submitted without interaction with the staff associated with the restaurant")."

49.  In its Complaint, AT alleged that Starbucks infringes Claim 1 of the Asserted Patent.

50.    Starbucks cannot be a direct infringer of Claim 1 because the customer performs at least limitation 1(c) (what AT calls limitation 1.2).

51.    Starbucks cannot be an indirect infringer of the Asserted Patent because said patent expired before Starbucks had knowledge of the Asserted Patent.

52.    Starbucks should be paid its attorneys' fees and any other sanction the Court deems appropriate for asserting an expired patent against Starbucks on these facts pursuant to 35 U.S.C. § 285 and 28 U.S.C. § 1927 and the Court's inherent authority.

53.    AT, Rothschild, and AT's counsel are liable to Starbucks for filing and maintaining this meritless lawsuit.

## COUNTERCLAIM 2:

### TUFTA (against Rothschild)

54.    Starbucks incorporates by reference the allegations in paragraphs 1-53, *supra*.

55.    Mr. Rothschild is liable to Starbucks under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Tex. Bus. & Com. Code §§ 24.001-24.05.

56.    Starbucks is a creditor under TUFTA given its claim for attorneys' fees against AT.

57.    Rothschild has in the past and will likely in the future fraudulently transfer demand and litigation settlement monies that should be used to pay Starbucks attorneys' fees through his shell entities and to himself personally as part of his fraudulent transfer scheme.

58.    Leigh Rothschild created AT as a sham shell entity to shield himself from personal liability.

59.    Given Rothschild's pattern and practice of underfunding (or not funding) his shell entities, AT is likely an underfunded shell entity.

60.    AT has no employees (other than possibly Rothschild).

61.    AT does not have an accountant (other than possibly Rothschild and his business partner Medina).

62.    AT does not have a board of directors (other than possibly Rothschild).

63.    AT does not have a bank account.

64.    Rothschild caused AT to be created as a Wyoming corporation because Wyoming does not disclose the managers and owners of Wyoming corporations.

65.    Rothschild created sham parent entity PAM to shield himself from personal liability.

66.    Any distinction between AT and PAM and Rothschild is a shame and legal fiction.

67.    For example, Leigh Rothschild signed the change of power of attorney for the parent '007 Patent of the Asserted Patent on 3/27/2023.  He signed it as a "principal with authority to sign" on behalf of AT, with PAM as the recipient address for AT.

68.    By way of example, the email address for AT's outside counsel has PAM in the email address: "Garteiser Honea Patent Asset Management Team, ghpam@ghiplaw.com".

69.    Counsel for AT litigates on behalf of several Rothschild shell entities using the PAM email designation.

70.    Rothschild caused PAM to be created in 2017 in order to avoid debts incurred by Rothschild's previous sham parent corporation Rothschild Trust Holdings LLC ("RTH").

71.    Mr. Rothschild admitted in a 2022 deposition that his sham parent companies (first RTH and then PAM) pay all of the expenses for all of Rothschild's shell entities.

72.    Mr. Rothschild admitted in a 2022 deposition that he "owns or controls" the various shell companies that hold and litigate his patents.

73.    Mr. Rothschild admitted in a 2022 deposition that his shell entities have no income.

74.    Mr. Rothschild admitted in a 2022 deposition that RTH used to "pay the bills" for his shell entities and that role is now performed by PAM.

75.    Mr. Rothschild admitted in a 2022 deposition that the demand letter and litigation settlement monies earned from his shell entities are paid directly to his sham parent entities (RTH and now PAM). Specifically, by way of example, Rothschild testified under oath that any litigation settlement monies paid in his Symbology Innovations litigations would be paid directly to RTH, not Symbology.

76.    Mr. Rothschild admitted in the 2022 deposition that his shell companies have no accountant other than himself and person with a financial interest in PAM named Medina.

77.    Mr. Rothschild admitted in the 2022 deposition that all of his income is derived from his patent litigations.

78.    Rothschild understands that attorneys' fees can result from filing meritless litigations, and has understood that fact since at least 2019, and likely prior.

79.    Rothschild creates underfunded shell entities to protect himself from personal liability. For example, neither Rothschild nor his shell entity Rothschild Connected Devices Innovations, LLC ever paid the attorneys' fees owed ADS Security.  And, neither Rothschild nor his shell entity Rothschild Dig. Confirmation LLC ever paid the attorneys' fees owed CompanyCam, Inc.

80.    Rothschild causes demand letter and litigation settlement monies to be transferred fraudulently directly to PAM as opposed to his litigation shell entities such as AT, with the actual intent to hinder, delay, or defraud creditors with a contingent claim for attorneys' fees (like Starbucks).

81. In 2017, a long-time business partner of Rothschild (Kazanjian) sued Rothschild. Ms. Kazanjain was a co-architect of Rothschild's patent litigation shell company structure and patent litigation scheme.

82. In her suit, Ms. Kazanjian alleged:

   a. Rothschild is self-dealing. From his patent litigation campaigns, Rothschild pays his attorneys fees first, pays questionable costs, pays for expenses both unreasonable and unrelated to the specific transaction.

   b. Rothschild improperly diverts the monies received from his litigation campaigns in order to defraud creditors and withhold monies that are due and owing.

   c. Rothschild transfers each patent to a specific corporation from those listed above. Kazanjian created all the listed [litigation shell] corporations for the exclusive purpose of using the corporation to assert Rothschild's patents in Court. However, when settlement monies are received they do not flow to the corporation named as a Plaintiff in the suit, instead the money is transferred to Defendant, RTH [later PAM] where it is fraudulently converted for Rothschild's personal use in order to defraud creditors from monies that are due and owing.

   d. Settlement monies have been received by Corporate Defendants, Symbology Innovations, LLC Rothschild Patent Imaging, LLC, Geographic Location Innovations, LLC, Rothschild Broadcast Distribution Systems, LLC, Rothschild Connected Devices Innovations, LLC, Rothschild Digital Confirmation, LLC, Display Technologies, LLC, Scanning Technologies Innovation, LLC, Rothschild Biometric Systems, Digital Verification Systems, Location Based Services, and Exafer. Upon receipt Rothschild transfers all monies to RTH [now PAM] where the

18

settlement monies are wrongfully and fraudulently converted for Rothschild's personal use.

e. Plaintiff is seriously concerned that anticipated future verdicts and/or settlement monies received will be transferred to Rothchild's personal trust account and various other personal accounts.

83. Rothschild's fraudulent intent is evidenced by many of the badges of fraud (Tex. Bus. & Com. Code § 24.005(b)) including:

a. the fraudulent transfers are to an insider;

b. patent litigation is Rothschild's only source of income;

c. Rothschild retained possession or control of the property transferred after the transfer;

d. the transfer or obligation was concealed. Rothschild secrets the business relationships facilitating his fraudulent transfers;

e. Rothschild understands that entities like Starbucks are creditors with contingent claims to Section 285 fees given his meritless suits, such as the case at-bar; and

f. The litigant shell companies do not receive reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

84. Rothschild has created an intricate and secreted scheme of sham parents and shell litigants in order to fraudulently transfer settlement monies to himself personally with the express intent to defraud creditors like Starbucks.

85. Any attorneys' fees or sanctions levied against AT or Rothschild should be paid by Rothschild personally and all monies collect by Rothschild's entities should be enjoined from further fraudulent transfer.

86.     Starbucks may seek a preliminary and/or permanent injunction against anticipated or further fraudulent transfers.

## Counterclaim 3:

### Inequitable Conduct (Against AT)

87.     Starbucks incorporates by reference the allegations in paragraphs 1-86, *supra*.

88.     The Asserted Patent is unenforceable due to the inequitable conduct of Andrew Silver and Raffi Gostanian (Silver's patent agent).

89.     On April 14, 2008, Table Top Media ("TTM") purchased the application that would mature into the parent '007 Patent and said patent's progeny, including the application that would mature into the Asserted '083 Patent.

90.     During the prosecution of the parent '007 Patent, the application was abandoned because Silver failed to respond to an office action (a Notice of Abandonment dated 04/13/2010 stated that there was no reply to the Final Rejection mailed on 02/04/2009).

91.     Silver and Gostanian revived the abandoned '007 Patent by telling the USPTO that Silver's former patent agent, Steven McDonald, had "unexpectedly passed away". '007 PxHx, 11/9/2010. But Steven McDonald was still alive and assisting Silver with the '007 prosecution when the patent went abandoned as the privilege logs on the TTM litigation demonstrate:

| PRIV000055 | mcdonald.steve<br>@sbcglobal.net<br><mcdonald.steve<br>@sbcglobal.net> | Andrew Silver<br><andrewsilver@y<br>ahoo.com> | | 11/19/2009 21:07 | Attorney-<br>Client | Email communications between Silver and his patent attorney, who is providing professional legal advice about the prosecution of Silver's patent application. |
|---|---|---|---|---|---|---|

92.     The Final Rejection at-issue was mailed on February 4, 2009.  But, as shown above, Mr. McDonald was still working for Silver as of at least 11/19/2009, well into the abandonment period.

93.    A Revival Petition requires a statement that *the entire delay* in filing the required reply from the due date for the reply until the filing of a grantable petition pursuant to this section was unintentional. 37 C.F.R. § 1.137(b)(4).

94.    Both McDonald and Gostanian were working for Silver on the prosecution of the parent '007 Patent during the period of delay, as the privilege logs in the TTM litigation demonstrate:

| PRIV000053 | Andrew Silver <andrewsilver@yahoo.com> | McDonald Steve <mcdonald.steve@sbcglobal.net> | Silver Andrew <andrewsilver@yahoo.com> | 11/1/2009 0:10 | Attorney-Client | Email communications between Silver and his patent attorney, who is providing professional legal advice about the prosecution of Silver's patent application |
| PRIV000054 | Andrew Silver <andrewsilver@yahoo.com> | McDonald Steve <mcdonald.steve@sbcglobal.net> | Silver Andrew <andrewsilver@yahoo.com> | 11/2/2009 14:26 | Attorney-Client | Email communications between Silver and his patent attorney, who is providing professional legal advice about the prosecution of Silver's patent application |

June 19, 2015                    Page 6 of 34

| PRIV000055 | mcdonald.steve@sbcglobal.net <mcdonald.steve@sbcglobal.net> | Andrew Silver <andrewsilver@yahoo.com> | | 11/19/2009 21:07 | Attorney-Client | Email communications between Silver and his patent attorney, who is providing professional legal advice about the prosecution of Silver's patent application. |
| PRIV000056 | Silver Andrew <silverandrew@gmail.com> | Raffi Gostanian <patentpatent@gmail.com> | Silver Andrew <silverandrew@gmail.com> | 3/30/2010 17:16 | Attorney-Client | Email communications between Silver and his patent agent, who is providing professional legal advice about the prosecution of Silver's patent application, with documents attached |
| PRIV000057 | Silver Andrew <silverandrew@gmail.com> | Raffi Gostanian <patentpatent@gmail.com> | Silver Andrew <silverandrew@gmail.com> | 3/30/2010 17:16 | Attorney-Client | Email communications between Silver and his patent agent, who is providing professional legal advice about the prosecution of Silver's patent application, with documents attached |
| PRIV000058 | Silver Andrew <silverandrew@gmail.com> | Raffi Gostanian <patentpatent@gmail.com> | | 3/30/2010 17:18 | Attorney-Client | Email communications between Silver and his patent agent, who is providing professional legal advice about the prosecution of Silver's patent application |
| PRIV000059 | Silver Andrew | Raffi Gostanian | | 4/1/2010 20:49 | Attorney- | Email communications between Silver and his |

95.    Thus, failure to respond during the entire delay period could not have been cause by McDonald's alleged "sudden death," as Gostanian's falsely represented.

96.    Secondly, in addition to the above fraudulent statement, Gostanian made a material misleading omission: Gostanian's Revival Petition does not contain the required statement that the

entire period of delay was unintentional.

97.    That is because Mr. McDonald was still alive during a portion of the period of delay and Mr. Silver had a new patent agent (Gostanian) during a portion of the period of delay.

98.    Mr. Gostanian is charged with knowing the federal codes mandating practice before the USPTO, including 37 C.F.R. § 1.137(b)(4).

99.    Because Gostanian could not honestly make the requisite statement in his November 9, 2010 Revival Petition, he failed to make the requisite statement that the entire period of delay was unintentional, omitting material information in the Revival Petition.

100.    Both Silver and Gostanian had a financial interest in the '007 Patent based on the TTM purchase of the patent family at-issue amounting to millions of dollars.

101.    Silver and Gostanian were motivated by their financial interests in the '007 Patent to intentionally submit false statements and make material omissions to the USPTO.

102.    Silver and Gostanian committed inequitable conduct:

    a.  Who: Andrew Silver and Patent Agent Gostanian.

    b.  What: Gostanian and Silver made material misstatements and material omissions in the November 9, 2010 Revival Petition with intent to deceive. Specifically, they falsely told the USPTO that Silver's abandonment of the '007 Patent application was due to McDonald's sudden death and Gostanian intentionally omitted the requisite statement that the entire period of delay leading to abandonment was unintentional when both McDonald and Gostanian where prosecuting the '007 Patent application during the time in question.

    c.  When: November 9, 2010.

    d.  Where: before the USPTO.

    e.  How: submitted a Revival Petition with false information and material omitted

22

information to obtain revival with intent to deceive.

103.    Silver and Gostanian lied to the USPTO to revive the abandoned '007 Patent.  The child '083 Asserted Patent is unenforceable due to the fruits of the poisonous tree.

104.    And the above instance is not the only time Silver and Gostanian lied to the Patent Office.  Multiple examples of material misstatements and fraudulent omissions is circumstantial evidence that any one misstatement is not accidental and is in fact intentional.

105.    Even though TTM had a contract for the purchase of the parent '007 Patent and its progeny, when the '007 Patent issued, Silver and Gostanian entered into a contract where each would receive 50% of the monies paid by TTM for the patent family at-issue. They then entered into a scheme to try to renegotiate with TTM to get more money than provided for in the 2008 contract.

106.    As part of this scheme to push TTM for more money than contractually allowed, Gostanian told Silver, "if we can get a second issued patent and file another [continuation] we will be in a better position."  Obtaining the Asserted '083 Patent was critical to their scheme.

107.    On November 20, 2013, the examiner rejected the claims of the '083 Patent, finding them obvious over the parent '007 Patent and requesting that Silver/Gostanian file a terminal disclaimer to overcome the rejection.

108.    On February 19, 2014, Gostanian told the USPTO that Silver was the "100% owner" of the Asserted Patent in order to file a terminal disclaimer and obtain issuance, even though Gostanian and Silver understood that TTM had an "existing contract" and was the owner of the '083 Patent application.

109.    *At the same time* that Gostanian submitted the terminal disclaimer to the USPTO stating that Silver owns 100% of the '083 Patent, Silver and Gostanian were preparing a lawsuit to

sue TTM for specific performance because Silver sold the Asserted '083 Patent family to TTM in 2008.

110.    Mr. Silver submitted a sworn declaration in his lawsuit against TTM stating unequivocally that TTM bought the '083 Patent family in 2008:

> Subject to and without waiving the foregoing objections, Silver responds as follows:
>
> 1. **Tabletop signed the April 14, 2008 Patent Purchase Agreement, which said that Tabletop "has agreed to purchase and is purchasing" Silver's patent application and patent.**
>
> On April 14, 2008, Tabletop entered into a legally binding contract that said that Tabletop "has agreed to purchase and is purchasing" the patents at issue. (Ag. ¶ 2). The Patent Purchase Agreement was drafted and signed by Tabletop's lawyer, Ira Tobolowsky. As a part of its duty to purchase the patents, Tabletop is required to pay Silver $3.5 million, which it has still not paid.
>
> 2. **Jack Baum and Bhaveeni Parmar said they believe Tabletop owns the patents on a conference call on August 6, 2014.**
>
> On a conference call between Tabletop and Dyntastic, Parmar cited the April 14, 2008 Patent Purchase Agreement and said that the "owner" listed on the Terminal Disclaimer should have been Tabletop, not Silver. Because Tabletop was not listed as the owner of the patent, Parmar said that this created a "fatal flaw."
>
> During this same conference call, Jack Baum said to Silver and Gostanian, ***"You are trying to sell me a patent I already own."***
>
> Executed in Frisco, Texas, on the __8__ day of May 2015.
>
> _Andrew Silver_
> ANDREW SILVER

*Silver v. TTM*, SJ APPX, 742-747.

[remainder of page intentionally left blank]

24

111.    Multiple times in the above sworn interrogatory responses, Silver states that TTM purchased the patents at-issue in 2008 and that he sold the patents to TTM in 2008, e.g.:

> Subject to and without waiving the foregoing objections. Silver responds as follows: Silver actually sold the patent assets to Tabletop pursuant to the April 14, 2008 Patent Purchase Agreement, which was signed by Tabletop's outside counsel, Ira Tobolowsky. Tabletop has refused to pay Silver what is owed to him under the Agreement.

Executed in Frisco, Texas, on the ___8___ day of May 2015.

ANDREW SILVER

112.    Further, TTM told Silver that he improperly listed himself as the owner of the Asserted '083 Patent:

> On a conference call between Tabletop and Dyntastic, Parmar cited the April 14, 2008 Patent Purchase Agreement and said that the "owner" listed on the Terminal Disclaimer should have been Tabletop, not Silver. Because Tabletop was not listed as the owner of the patent, Parmar said that this created a "fatal flaw."

> During this same conference call, Jack Baum said to Silver and Gostanian, *"You are trying to sell me a patent I already own."*

Executed in Frisco, Texas, on the ___8___ day of May 2015.

ANDREW SILVER

113.    In that same litigation with TTM, Silver submitted a second declaration stating:

> 9.  In January 2014, I anticipated litigation with Tabletop because they had breached the contract, so I sought the advice of attorneys, including Kyle Ferguson of Ferguson, Braswell & Fraser, PC and Seth Traxler of Kirkland & Ellis, LLP, in bringing a claim against Tabletop to get the money I earned under our Agreement. I consulted Gostanian in preparing a timeline and compiled information to facilitate Ferguson and Traxler in the rendering of professional legal services. Other than attorneys, I only shared these documents with Gostanian. When creating documents labeled PRIV000547-48 and 550-52, I reasonably anticipated litigation with Tabletop, and I discussed my mental impressions, opinions, and conclusions in connection with potential litigation with Tabletop with Gostanian, Ferguson, and Traxler.

114.    That is, in January 2014, Silver submitted a sworn declaration to a court in Texas saying he and Gostanian were preparing to sue TTM because TTM purchased the Asserted Patent family in 2008.

115.    In February 2014, Gostanian told the USPTO that Andrew Silver "100% owned" the '083 Patent family in order to secure issuance. At the same time, Gostanian and Silver were preparing a lawsuit against TTM alleging that TTM media bought the '083 Patent family in 2008.

116.    Gostanian and Silver were trying to obtain millions of extra dollars from TTM and were financially motivated to obtain issuance of the '083 Patent.  They did so by committing fraud upon the USPTO.

117.    Silver committed fraud before the USPTO to obtain issuance of the '083 Patent.

  a.  Who: Andrew Silver and Patent Agent Gostanian.

  b.  What: told the USPTO that Silver was the 100% owner of the Asserted Patent in order to file a terminal disclaimer and obtain issuance while knowing that TTM was the actual owner of the Asserted Patent.

  c.  When: February 19, 2014.

  d.  Where: before the USPTO.

  e.  How: submitted a terminal disclaimer with false information in order to obtain

issuance.

## COUNTERCLAIM 4:

### Invalidity (against AT)

118.    Starbucks incorporates by reference the allegations in paragraphs 1-117, *supra*.

119.    The Asserted Patent is invalid pursuant to 35 U.S.C. 101, 102, 103, and 112.

120.    The claims of the Asserted Patent are not patent eligible pursuant to Section 101 as they claim the abstract idea of ordering food and paying for food electronically without any inventive concept to save the claim.

121.    The claims of the Asserted Patent are not novel and are obvious pursuant to §§ 102-103.  The concept of ordering and paying for food with an electronic device has existed long before the priority date. For example Wendy's Self Order Kiosks from 1992-93.

122.    The claims of the Asserted Patent are invalid pursuant to § 112.  For example, the term "one service" is fatally ambiguous.


### <u>Jury Trial Demanded</u>


### <u>PRAYER FOR RELIEF</u>

Starbucks prays the Court enters an Order:

(a) dismissing AT's Complaint with prejudice;

(b) declaring that Starbucks has not infringed and is not infringing the Asserted Patent, either literally or by the doctrine of equivalents;

(c) The Asserted Patent is invalid;

(d) The Asserted Patent is unenforceable;

(e) declaring, at least because of AT's false statements in its Complaint, inadequate prefiling investigation, and the impossibility of its infringement position, that this is an exceptional case under 35 U.S.C. § 285 and awarding Starbucks its attorneys' fees and expenses in this action;

(f) Finding AT's counsel violated 28 U.S.C. § 1927 and awarding Starbucks fees and costs against counsel;

(g) determining that this case was brought in bad faith without a proper pre-filing investigation, and awarding Starbucks its costs in this action;

(h) enjoining AT from litigating any action in any other court against Starbucks or its customers for infringement of the Asserted Patent;

(i) Finding Rothschild personally liable under TUFTA;

(j) Awarding Netflix fees and costs against Rothschild and AT; and

(k) granting such other and further relief to Starbucks that this Court deems just and proper.


September 5, 2024,                    Respectfully submitted,

                                     /s/ Melissa R. Smith
                                     Melissa R. Smith
                                     State Bar No. 24001351
                                     GILLAM & SMITH, LLP
                                     303 South Washington Avenue
                                     Marshall, Texas 75670
                                     Telephone: (903) 934-8450
                                     Facsimile: (903) 934-9257
                                     Email:  melissa@gillamsmithlaw.com

Rachael Lamkin
BAKER BOTTS L.L.P.
101 California Street
Suite 3200
San Francisco, CA  94111
Tel: (415) 291-6264
Fax: (415) 291-6364
Email: rachael.lamkin@bakerbotts.com

*Counsel for Defendant, Counterclaimant Starbucks*

## CERTIFICATE OF SERVICE

On this date, September 5, 2024, I did personally serve upon Plaintiff Starbucks Amended Answer, Affirmative Defenses, and Counterclaims using the Court's ECF System.

/s/ Melissa R. Smith
Melissa R. Smith