# EXHIBIT 4

1  Kalpana Srinivasan (237460)
   ksrinivasan@susmangodfrey.com
2  SUSMAN GODFREY L.L.P.
   1900 Avenue of the Stars, Suite 1400
3  Los Angeles, California 90067-6029
   Telephone: (310) 789-3100
4  Facsimile: (310) 789-3150

5  Meng Xi (280099)
   mxi@susmangodfrey.com
6  Thomas V. DelRosario (236264)
   tdelrosario@susmangodfrey.com
7  Justin Kenney (pro hac vice)
   jkenney@susmangodfrey.com
8  SUSMAN GODFREY L.L.P.
   1000 Louisiana, Suite 5100
9  Houston, Texas 77002-5096
   Telephone: (713) 651-9366
10 Facsimile: (713) 654-6666

11 Attorneys for Defendants

12            UNITED STATES DISTRICT COURT

13           CENTRAL DISTRICT OF CALIFORNIA

14

15 MICROSOFT CORPORATION          Civil Action No. 2:22-CV-1009

16        Plaintiff,              Assigned for All Purposes to the
                                  Hon. Mark C. Scarsi
17 v.
                                  **MEMORANDUM OF POINTS AND**
18                                **AUTHORITIES IN SUPPORT OF**
19 MEDIAPOINTE, INC., AMHC, INC., **MEDIAPOINTE'S MOTION TO**
   AND STEVEN E. VILLORIA         **DISMISS AND STRIKE**
20                                **COMPLAINT**
21        Defendants.
                                  Filed concurrently with a declaration of
22                                Justin Kenney, a request for judicial
23                                notice, and a proposed order.
24
25                                Hearing Date:  June 27, 2022
                                  Hearing Time:  9:00 a.m.
26                                Location: Courtroom 7C
27
28

1

2

### Table of Contents

Page

Memorandum of Points and Authorities ................................................................. 1

    I.     Background. ............................................................................... 2

    II.    Microsoft's PTPA Claim (Claim V) Should be Stricken ..................... 2

          a.    California's Anti-SLAPP Act Applies to this Action ............... 3

          b.    Legal Standard For Motions to Strike ........................................ 4

          c.    The PTPA Claim Arises from Protected Conduct ..................... 5

          d.    Microsoft Cannot Demonstrate A Reasonable Likelihood
              of Success ................................................................................... 6

    III.   In the Alternative, Microsoft's PTPA Claim Should Be
         Dismissed Under Rule 8 and Under the PTPA's Own Terms........... 13

    IV.   Microsoft's Declaratory Judgment Act Claims (Counts I-IV)
         Should be Dismissed for Lack of Subject Matter Jurisdiction .......... 13

          a.    Rule 12(b)(1) Standard. ........................................................... 14

          b.    Microsoft's Own Allegations Deprive It of Standing And
              the Court of Subject Matter Jurisdiction Under the
              Declaratory Judgment Act ........................................................ 15

    V.    Defendants are Entitled to Fee Shifting Under the Anti-SLAPP
         Act. .......................................................................................... 18

    VI.   Conclusion ....................................................................................... 18

1
2

<u>Table of Authorities</u>

Page(s)

3

**Cases**

4
5

*A123 Sys., Inc. v. Hydro-Quebec*,
   626 F.3d 1213 (Fed. Cir. 2010)..................................................16

6

*Anthis v. Copland*,
   173 Wash. 2d 752 (2012) .............................................................8

7
8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................7

9
10

*Aspex Eyewear, Inc. v. Miracle Optics, Inc.*,
   2009 WL 10699035 (C.D. Cal. July 14, 2009) ....................16, 17

11
12

*Baral v. Schnitt*,
   1 Cal.5th 376 (2016)......................................................................4

13
14

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................7

15
16

*Bird-Johnson Corp. v. Dana Corp.*,
   119 Wash. 2d 423 (1992) ............................................................10

17
18

*Bui v. Meriwest Credit Union*,
   2013 WL 12126751 (C.D. Cal. Nov. 4, 2013) ............................5

19

*Burgert v. Lokelani Bernice Pauahi Bishop Tr.*,
   200 F.3d 661 (9th Cir. 2000).........................................................7

20
21

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*,
   824 F.3d 1156 (9th Cir. 2016).......................................................7

22
23

*Chaquico v. Freiberg*,
   2018 WL 3368733 (N.D. Cal. July 10, 2018)..............................5

24
25

*Digitech Image Techs., LLC v. Newegg Inc.*,
   2013 WL 1871513 (C.D. Cal. May 3, 2013).........................15, 18

26
27

*Enzo APA & Son, Inc. v. Geapag A.G.*,
   134 F.3d 1090 (Fed. Cir. 1998)...................................................16

28

*Fina Rsch., S.A. v. Baroid Ltd.*,
   141 F.3d 1479 (Fed. Cir. 1998)...................................................15

*GoDaddy.com, LLC v. RPost Commc'ns Ltd.*,
   2014 WL 7263537 (D. Ariz. Dec. 9, 2014)......................................................... 15

*Graham-Sult v. Clainos*,
   756 F.3d 724 (9th Cir. 2014)............................................................................ 4

*Herring Networks, Inc. v. Maddow*,
   8 F.4th 1148 (9th Cir. 2021)......................................................................... 4, 5

*Hilton v. Hallmark Cards*,
   599 F.3d 894 (9th Cir. 2010)........................................................................ 3, 5

*Homedics, Inc. v. Valley Forge Ins. Co.*,
   315 F.3d 1135 (9th Cir. 2003)......................................................................... 3

*Hurtado v. Superior Court*,
   11 Cal. 3d 574 (1974).................................................................................... 3

*Indep. Wireless Tel. Co. v. Radio Corp. of Am.*,
   269 U.S. 459 (1926) ..................................................................................... 16

*In re Digimarc Corp. Derivative Litig.*,
   549 F.3d 1223 (9th Cir. 2008)......................................................................... 8

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018).......................................................................... 9

*L.A. Triumph, Inc. v. Ciccone*,
   2011 WL 13217374 (C.D. Cal. Feb. 16, 2011)................................................. 18

*Landmark Technology LLC, v. Gensco, Inc.*,
   Case No. 3:17-CV-05872 (W.D. Wash) ......................................................... 11

*Lil' Man in the Boat, Inc. v. City & Cty. of San Francisco*,
   5 F.4th 952 (9th Cir. 2021)........................................................................... 11

*Macom Tech. Sols. Holdings, Inc. v. Infineon Techs. AG*,
   2016 WL 6495373 (C.D. Cal. Oct. 31, 2016)................................................. 17

*Makaeff v. Trump Univ., LLC*,
   715 F.3d 254 (9th Cir. 2013).......................................................................... 5

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007) ..................................................................................... 15

*Mindys Cosmetics, Inc. v. Dakar*,
   611 F.3d 590 (9th Cir. 2010)................................................................4

*Mutascu v. Botezatu*,
   2019 WL 2719407 (C.D. Cal. June 28, 2019) ...................................14

*Newmatic Sound Sys., Inc. v. Magnacoustics, Inc.*,
   2010 WL 1691862 (N.D. Cal. Apr. 23, 2010) ...................................18

*Paris v. Steinberg & Steinberg*,
   828 F. Supp. 2d 1212 (W.D. Wash. 2011)........................................10

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
   890 F.3d 828 (9th Cir. 2018), *amended*, 897 F.3d 1224 (9th Cir. 2018)............6

*Resolute Forest Prod., Inc. v. Greenpeace Int'l*,
   302 F. Supp. 3d 1005 (N.D. Cal. 2017) ..............................................4

*Rhoades v. Avon Prod., Inc.*,
   504 F.3d 1151 (9th Cir. 2007)...........................................................15

*Rocha v. King Cty.*,
   195 Wash. 2d 412 (2020) ..................................................................10

*Rusheen v. Cohen*,
   37 Cal. 4th 1048 (2006).......................................................................5

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004)...........................................................14

*Thomas v. Fry's Elecs., Inc.*,
   400 F.3d 1206 (9th Cir. 2005).............................................................3

*United States v. Schlenker*,
   24 F.4th 1301 (9th Cir. 2022)...........................................................15

*United Tactical Sys., LLC v. Real Action Paintball, Inc.*,
   143 F. Supp. 3d 982 (N.D. Cal. 2015) ................................................4

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000)...........................................................14

*Wolfe v. Strankman*,
   392 F.3d 358 (9th Cir. 2004).............................................................14

iv

*Wright v. Lyft, Inc.*,
    189 Wash. 2d 718 (2017) ................................................................. 10

*Zhou v. Breed*,
    2022 WL 135815 (9th Cir. Jan. 14, 2022) ......................................... 7

**Statutes**

28 U.S.C. § 2201(a) .............................................................................. 15

California's Anti-SLAPP Act, Cal. Code Civ. Proc. § 425.16 ...................... *passim*

Declaratory Judgment Act .......................................................... 15, 16, 17

Revised Code of Washinton § 19.100.190 ............................................ 8, 9

Revised Code of Washinton § 19.100.210 ................................................ 9

Revised Code of Washinton § 19.116.100 ................................................ 8

Revised Code of Washinton § 19.138.280 ................................................ 8

Washington's Anti-SLAPP Act, Revised Code of Washington
    § 19.350.010 *et seq.* ................................................................. *passim*

Washington's Consumer Protection Act, Revised Code of Washington
    § 19.86 ................................................................................... 7, 8

Washington State's Patent Troll Prevention Act, Revised Code of
    Washington § 4.105.010, *et seq.*. .................................................... 3

**Other Authorities**

Fed. R. Civ. Pro. 41(a)(1)(A) ................................................................. 2

Fed. R. Civ. Pro. 12(b)(6) ......................................................... 6, 9, 13

Fed. R. Civ. Pro. 12(b)(1) ................................................................... 14

Memorandum of Points and Authorities

Microsoft's Complaint falls on its face. It includes two sets of claims – four for declaratory relief and one for monetary and injunctive relief – all of which are deficient as a matter of law.

Microsoft's requests for declaratory judgment concerning the patents at issue are self-contradictory and self-defeating. Its Complaint is based on the assertion that MediaPointe does not own, or otherwise have rights to assert the patents-in-suit. Nevertheless, it asks the Court to decide whether those patents are valid and, if so, whether Microsoft infringes them, even though Microsoft asserts the case lacks the presence of the one party necessary to this action – the patents' owner. Microsoft cannot have its cake and eat it too. Microsoft has effectively pled that it lacks standing to seek declaratory relief, and those claims must therefore be dismissed.

Microsoft's attempt to penalize MediaPointe under Washington State's Patent Troll Prevention Act (the "PTPA") fares no better. *See* PTPA, Revised Code of Washington ("RCW") §§ 19.350.010–19.350.900. As a private party, Microsoft has no standing to enforce that statute. Instead,"*[t]he attorney general* [of Washington State] may bring an action in the name of the state, or as parens patriae on behalf of persons residing in the state, to enforce this chapter." *Id.* at § 19.350.010 (emphasis added). And even if it did create a private right of action, the PTPA does not apply to the only conduct Microsoft complains of – MediaPointe's previous act of bringing a patent infringement lawsuit against Microsoft. *See id.* That express conduct is carved out from the PTPA and protected by California's anti-Strategic Lawsuit Against Public Participation Act (the "anti-SLAPP Act"). *See* RCW § 19.350.010(1)(d) (statutory definition of "assertion of patent infringement" excludes certain claims and allegations "made in litigation against a target."). Microsoft's non-viable claim based upon such protected conduct is therefore subject to a special motion to strike. *See* Cal. Code Civ. Proc. §§ 425.16–425.17. Because all of these claims are so facially flawed, MediaPointe respectfully requests that the Court dismiss the

1

Complaint, strike Microsoft's PTPA claim, and grant MediaPointe all other relief provided for by the anti-SLAPP Act.

I.    Background.

Microsoft intends for this lawsuit to be the sequel to a patent infringement case that MediaPointe brought against Microsoft in the Western District of Texas (the "Prior Action"). MediaPointe filed that suit on August 16, 2021, alleging that Microsoft had infringed U.S. Patent Nos. 8,559,426 ("'426 Patent") and 9,426,195 ("'195 Patent") (the "Patents"). On Friday, February 11, 2022, MediaPointe exercised its right to voluntarily dismiss the Prior Action without prejudice. *See* Fed. R. Civ. P. 41(a)(1)(A). At that early point in time, Microsoft's motion to dismiss MediaPointe's complaint was still pending, no invalidity contentions had been served, and merits discovery had yet to commence.

The Monday after MediaPointe dismissed the Prior Action, February 14, 2022, Microsoft filed its Complaint in this Court. *See* Compl. (Dkt. No. 1). Microsoft's Complaint includes five claims for relief. Claims I and II seek a declaratory judgment that Microsoft does not infringe either of the Patents. Claims III and IV ask the Court to declare that the Patents are invalid. Claim V requests injunctive relief and monetary damages under the PTPA.

Notably, Microsoft did not first seek relief from the Western District of Texas on any of the issues that had been before that court – including its allegations about that litigation alleged in the Complaint here.

II.   Microsoft's PTPA Claim (Claim V) Should be Stricken.

Microsoft's PTPA claim is a legally deficient attempt to recover fees and costs from the Prior Action after it failed to seek that relief (though entirely unwarranted) from the Western District of Texas. As explained below, Microsoft cannot bring a claim under the PTPA because there is no private right of action under that statute. And in any event, Microsoft has not plausibly stated a claim for bad faith assertions of patent infringement. Instead, Microsoft alleges that MediaPointe

2

brought a patent infringement case against it where Microsoft contested ownership of the patents. *See* Compl. (Dkt. No. 1) at 39:17–41:25. That conduct does not violate the PTPA, which has as its stated purpose to target abusive and extortionist demand letters, not patent infringement litigation. It is, however, an act in furtherance of MediaPointe's right to free speech and petition in a public forum. Microsoft's non-viable PTPA claim based on that protected conduct should be stricken.

a. California's Anti-SLAPP Act Applies to this Action.

MediaPointe moves to strike Microsoft's PTPA claim under California's anti-SLAPP Act. "California anti-SLAPP motions to strike and entitlement to fees and costs are available to litigants proceeding in federal court." *Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1206 (9th Cir. 2005). This special motion to strike applies to state law causes of action like Microsoft's PTPA claim. *See, e.g., Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010) ("a federal court can only entertain anti-SLAPP special motions to strike in connection with state law claims"). Although Microsoft's PTPA claim is brought under Washington law, the Court may nonetheless apply California's anti-SLAPP Act under California choice of law rules, which state that where there is no "meaningful conflict between California law and the law of another state, California courts apply California law." *Homedics, Inc. v. Valley Forge Ins. Co.*, 315 F.3d 1135, 1138 (9th Cir. 2003). Indeed, although MediaPointe could seek the same relief that it requests under California law pursuant to Washington's anti-SLAPP statute, *see* RCW §§ 4.105.010–4.105.903, it would be more appropriate to apply California law here because Microsoft sued MediaPointe in California, and the defendant/movant, here MediaPointe, resides in California, which gives California a compelling interest in having its own anti-SLAPP statute applied to a claim based on its resident's expressive acts. *See Hurtado v. Superior Court*, 11 Cal. 3d 574, 579–80 (1974) (governmental interest approach "requir[es] an analysis of the respective interests of the states involved . . . the objective of which

3

is to determine the law that most appropriately applies to the issue involved." (quotation omitted)).

Federal courts employing California's choice of law rules have regularly applied California's anti-SLAPP Act to claims brought under another state's substantive laws. *See, e.g., Resolute Forest Prod., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1015 (N.D. Cal. 2017) (applying California anti-SLAPP statute, rather than Georgia anti-SLAPP statute, to Georgia state and common law claims brought against California defendants); *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 143 F. Supp. 3d 982, 1000–01 (N.D. Cal. 2015) (applying California anti-SLAPP statute to counterclaims arising under Indiana law). MediaPointe respectfully urges this Court to do the same.

   b. <u>Legal Standard For Motions to Strike</u>.

California's anti-SLAPP Act was enacted to combat "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Cal. Code Civ. Proc. § 425.16(a). It accordingly "provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity" through a special motion to strike. *Baral v. Schnitt*, 1 Cal.5th 376, 384 (2016) (emphasis in original). "To achieve [its] purpose, courts are directed to 'construe[ ]' the anti-SLAPP statute 'broadly.'" *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155 (9th Cir. 2021) (quoting Cal. Code Civ. Proc. § 425.16(a)). A case predicated on suing a party for positions taken in a complaint and litigation falls quintessentially into this category.

Evaluation of an anti-SLAPP motion to strike proceeds in two steps. First, the court determines "whether the defendant showed that the plaintiff's causes of action 'arise from an act in furtherance of the defendant's rights of petition or free speech.'" *Graham-Sult v. Clainos*, 756 F.3d 724, 735 (9th Cir. 2014) (quoting *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010)). "If the defendant satisfies this requirement, '[t]he burden then shifts to the plaintiff . . . to

establish a reasonable probability that it will prevail on its claim in order for that claim to survive dismissal.'" *Herring Networks*, 8 F.4th at 1155 (quoting *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013)).

### c. The PTPA Claim Arises from Protected Conduct.

Microsoft's PTPA claim is entirely based on acts in furtherance of MediaPointe's constitutional rights of free speech and petition. "The phrase 'act … in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue' is defined by four specific categories of communications." *Hilton*, 599 F.3d at 903 (quoting Cal. Code Civ. Proc. § 425.16(e)(1)-(4)). These include "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law," or "made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." *Id.* § 425.16 (e)(1)-(2).

A cause of action, like Microsoft's PTPA claim, "'arising from' a party's litigation activity may appropriately be the subject of an anti-SLAPP motion to strike.' Such activity 'includes communicative conduct such as the filing, funding, and prosecution of a civil action.'" *Chaquico v. Freiberg*, 2018 WL 3368733, at *3 (N.D. Cal. July 10, 2018) (quoting *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1056 (2006)). Accordingly, "the filing of a civil lawsuit is protected activity under the California anti-SLAPP statute." *Bui v. Meriwest Credit Union*, 2013 WL 12126751, at *6 (C.D. Cal. Nov. 4, 2013).

Here, ***all*** of Microsoft's allegations in support of its PTPA claim are based on MediaPointe's acts of filing and maintaining a patent infringement case against it in the Western District of Texas. Microsoft alleges:

- "On August 16, 2021, MediaPointe filed suit against Microsoft accusing Microsoft of infringing the Patents. In so doing, MediaPointe expressly

took the position that the claims of the Patents are valid and that they are infringed by Microsoft," Compl. at 2:13–18;

- "Defendants[] did not have a sufficient legal basis to bring the WDTX Litigation against Microsoft in the Western District of Texas," *id.* at 39:22–26;

- Defendants' infringement allegations suffered from several deficiencies which made them "objectively baseless and absurdly overbroad," *id.* at 41:21–22; and

- "[Defendants'] assertion of baseless claims of infringement when it did not even have the right to make such claims constitutes a bad faith assertion of patent infringement under RCW 19.350," *id.* at 41:22–25.

Each of these alleged acts – filing suit, taking a legal position, asserting legal claims – is litigation conduct that falls within the statutory definition of an "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue." Cal. Code Civ. Proc. § 425.16(e). And, they do not implicate any statutory or other exception which would exempt Microsoft's claim from the anti-SLAPP Act. *See id.* § 425.17. MediaPointe has therefore met its burden to show that Microsoft's PTPA claim arises from activity that is protected under Cal. Code Civ. Proc. § 425.16.

    d.  <u>Microsoft Cannot Demonstrate A Reasonable Likelihood of Success</u>.

Because Microsoft's PTPA claim arises from protected activity, the burden now shifts to Microsoft to show that "there is a probability that [Microsoft] will prevail on the claim." *See id*. § 425.16(b)(1). Here, MediaPointe moves to strike Microsoft's PTPA claim because it is facially insufficient. Where "an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018), *amended*, 897 F.3d 1224 (9th Cir. 2018). Under the Rule 12(b)(6) standard, the Court "must accept all well-

pleaded material facts as true and draw all reasonable inferences in favor of the plaintiff.'" *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016). However, "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice' to state a cognizable claim." *Zhou v. Breed*, 2022 WL 135815, at *2 (9th Cir. Jan. 14, 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Rather, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Microsoft cannot show that its PTPA claim is even facially plausible for two reasons. First, as a private party, it has no right to bring an action to enforce the PTPA. *See Burgert v. Lokelani Bernice Pauahi Bishop Tr.*, 200 F.3d 661, 663 (9th Cir. 2000) (claim under statute which creates no private right of action is subject to dismissal for failure to state a claim). Second, the PTPA applies to ***threats*** to bring patent infringement claims, not to patent infringement litigation itself, which is protected speech and conduct. The statute built-in the very protection contemplated by the anti-SLAPP act – to prevent turning litigation conduct into a cause of action. Microsoft ignores the plain language of the PTPA and in doing so, places its Complaint squarely into anti-SLAPP territory.

As the text of the PTPA shows, this statute does not create a private right of action that Microsoft can enforce. In fact, it does not expressly create a cause of action at all. Rather, the PTPA empowers the Washington State Attorney General to enforce its provisions by bringing a claim under a separate statute – Washington's Consumer Protection Act, RCW § 19.86 (the "WCPA"). The PTPA provides: "*The attorney general* may bring an action in the name of the state, or as parens patriae on behalf of persons residing in the state, to enforce this chapter." RCW § 19.350.030 (emphasis added). It also states that "[f]or actions brought by the *attorney general* to enforce the provisions of this section, the legislature finds that

7

the practices covered by this section are matters vitally affecting the public interest for the purpose of applying the consumer protection act." *Id.* (emphasis added). That finding makes a violation of the PTPA an act which is *per se* "injurious to the private interest," as is required to bring a claim under WCPA, but again, only if the case is brought by the Attorney General. *See* RCW §§ 19.86.020, 19.86.093. These provisions of the PTPA mean what they expressly say: the Attorney General of Washington State, and only the Attorney General, can enforce the PTPA.

Microsoft cannot inject a private right of action into the PTPA where the Washington State legislature did not include one. Under both Washington state and Federal law, a court should not "read into [a] statute language the legislature has omitted, whether intentionally or inadvertently, unless it is required to make the statute rational or to effectuate the clear intent of the legislature." *Anthis v. Copland*, 173 Wash. 2d 752, 765 (2012). This is especially true where, as here, "the legislature had a clear blueprint for express language." *Id.* at 764; *see also In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1231 (9th Cir. 2008) ("[A]nalogous provisions expressly providing for private causes of action can imply [legislative] intent not to create an implied cause of action." (quotation omitted)).

Unlike the PTPA, there are several statutes under the same Title 19 of the Revised Code of Washington which do allow a party to bring a private action. However, those statutes that prescribe a private right of action do so explicitly. *See, e.g.*, RCW § 19.100.190 ("Any person who sells or offers to sell a franchise in violation of this chapter shall be liable to ***the franchisee or subfranchisor who may sue*** at law or in equity for damages caused thereby for rescission or other relief as the court may deem appropriate." (emphasis added)); RCW § 19.138.280 ("In addition to any other penalties or remedies under chapter 19.86 RCW, **a person who is *injured*** by a violation of this chapter ***may bring an action*** for recovery of actual damages, including court costs and attorneys' fees." (emphasis added)); RCW § 19.116.100 (listing persons who may bring an action for damages). Notably, some

8

of these statutes also separately allow the Attorney General to bring his or her own claim for civil penalties and other relief. *Compare* RCW § 19.100.190 (creating private right of action for violation of statute), *with* RCW § 19.100.210 (empowering attorney general to bring an action to enforce the same statute). As these statutes demonstrate, where the Washington State Legislature intends to empower any party, public or private, to enforce a statute, it does so in explicit terms. If the Washington State legislature intended to provide a private right of action under the PTPA, it could easily have used the same language as it did in those neighboring statutes. Its decision not to do so should be honored.

The legislative history of the PTPA additionally confirms that the Washington State Legislature consciously chose not to create a private right of action under this statute.[1] During a January 20, 2015 hearing before the Washington Senate Law & Justice Committee, Senator Frockt, a sponsor of the bill that became the PTPA, testified about the purpose and effect of the PTPA. *See* Exhibit 1 (Hearing on SSB 5059 Before the Sen. Law & Jus. Comm, (Jan. 20, 2015), recording by TVW, Washington State's Public Affairs Network, available at https://www.tvw.org/watch/?eventID=2015011178).[2] He acknowledged that SSB 5059 was introduced at the request of the Attorney General. *See id.* at 5:22–6:16. Senator Frockt further stated: "I think that the fact that attorney general will kind of serve as a gatekeeper for enforcement of these actions is important and will prevent sort of a reverse abuse from happening. I think that's very important." *Id.* at 6:16–22. In that same hearing, John Nelson, a consumer protection attorney for the Office

---

[1] These legislative history documents are the subject of MediaPointe's request for judicial notice. The Court can consider these documents while assessing MediaPointe's motion to strike under the Rule 12(b)(6) standard. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("[A] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." (quotation omitted)).

[2] "Exhibit 1" refers to the exhibit appended to the Kenney Decl. filed concurrently with this motion.

9

of the Attorney General for the State of Washington similarly testified: "One noteworthy part about this proposed legislation ***is that it does not involve a private cause of action***. First and foremost, the Attorney General will be the gatekeeper." *Id.* at 17:22–25 (emphasis added). These statements from sponsors and supporters of the bill that became the PTPA all clearly reflect the legislature's intent for the Attorney General to enforce the PTPA, not private parties like Microsoft.

Microsoft also has no implied right to bring an action under the PTPA. To determine whether a statute creates an implied private right of action, Washington courts consider three factors: "(1) whether the plaintiff is within the class for whose especial benefit the statute was enacted, (2) whether legislative intent supports creating or denying a remedy, and (3) whether implying a remedy is consistent with the underlying purpose of the legislation." *Rocha v. King Cnty.*, 195 Wash. 2d 412, 424–25 (2020) (quotation omitted). Here, the Washington State legislature has made clear its express intent for how the PTPA should be enforced – as a WCPA action brought by the Washington State Attorney General. The Supreme Court of Washington has held that where a statute like the PTPA provides for relief under the WCPA, it does not create any additional private right of action by implication. *See Wright v. Lyft, Inc.*, 189 Wash. 2d 718, 726 (2017) (plaintiff had no private right of action under statute which indicated that claims should be brought under the WCPA); *Paris v. Steinberg & Steinberg,* 828 F. Supp. 2d 1212, 1218 (W.D. Wash. 2011) (same). Moreover, creating an implied private right of action under the PTPA would allow a party to circumvent the Washington State Attorney General's authority as the "gatekeeper" of PTPA actions, and thus frustrate the intent of the legislature that enacted this statute. Washington courts "will not imply a private cause of action when the drafters of a statute evidenced a contrary intent; public policy is to be declared by the Legislature, not the courts." *Bird-Johnson Corp. v. Dana Corp.*, 119 Wash. 2d 423, 428 (1992). This Court, interpreting Washington State law, should similarly not imply a private cause of action where the Washington

10

State legislature intended for none to exist.  *See also Lil' Man in the Boat, Inc. v. City & Cnty. of San Francisco*, 5 F.4th 952, 959 (9th Cir. 2021) ("Without evidence of a congressional intent to create both a private right and a private remedy, a private right of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." (quotation omitted)).

MediaPointe has searched for and found no cases where a private party has successfully pursued a claim under the PTPA.  The only case MediaPointe is aware of where a party even ***attempted*** to pursue a claim under this statute, *Landmark Technology LLC, v. Gensco, Inc.*, ended in a settlement after the Washington State Attorney General intervened.  *See Landmark Tech. LLC, v. Gensco, Inc.*, Case No. 3:17-CV-05872 (W.D. Wash) (Dkt. Nos. 24, 31).  During the parties' conference regarding this motion, Microsoft pointed to no cases where a private action under the PTPA was allowed to proceed.  This absence of private litigation in the seven years since the PTPA was enacted reinforces what the text and legislative history of that statute make plain: there is no private right of action under the PTPA.

Even if Microsoft ***could*** bring a claim under the PTPA as a private party enforcer, it has done so in name only.  The PTPA states: "A person may not make *assertions of patent infringement* in bad faith."  RCW § 19.350.020(1) (emphasis added).  It defines "assertion of patent infringement" as pre- or extra-litigation conduct:

> (a) Sending or delivering a demand to a target;
> (b) Threatening a target with litigation asserting, alleging, or claiming that the target has engaged in patent infringement;
> (c) Sending or delivering a demand to the customers of a target; or
> (d) Otherwise making claims or allegations, ***other than those made in litigation against a target***, that a target has engaged in patent infringement or that a target should obtain a license to a patent in order to avoid litigation.

RCW § 19.350.010(1) (emphasis added).  "Demand," in turn, is defined as "a letter, an email, or any other communication asserting that a person has engaged in patent

infringement." *Id.* § 19.350.010(3).  Although the statute includes "person . . .
against whom a lawsuit has been filed alleging patent infringement" in its definition
of "target," that inclusion does not indicate the PTPA applies to litigation conduct.
Instead, this definition is necessary for the PTPA to cover bad faith conduct beyond
litigation that is directed at a patent infringement defendant or that defendant's
customers.  In other words, the PTPA bars a person from making bad faith
***allegations*** of patent infringement in a communication ***outside of litigation*** – even
if directed at a party in litigation – but it does not apply to patent infringement
litigation itself.  In addition, the PTPA provides a list of non-exhaustive factors
which courts can consider as evidence that a person has made an assertion of patent
infringement in good or bad faith. *See* RCW § 19.350.020(2), (4).  Although many
of these factors refer to the content of the "demand," a cease-or-desist
communication, or a "demand letter," none of them address the contents of a
***complaint*** that was filed in court or other litigation conduct—*i.e.*, official, public-
facing conduct which would qualify as protected speech under either the Washington
or California anti-SLAPP acts.  The absence of litigation-related or protected-speech
factors further shows that the PTPA does not apply to the actual filing and
maintenance of a patent infringement suit itself.  Instead, it is patently obvious that
Washington sought to carve out litigation conduct precisely to avoid running
headlong into the very type of conduct Microsoft is engaging in now: attacking the
protected right to petition in court.

On the merits, Microsoft also has not plausibly pled that MediaPointe made
bad faith assertions of patent infringement within the meaning of the PTPA.  It makes
no allegation that MediaPointe ever sent it a demand letter, that MediaPointe ever
***threatened*** it or any other person with patent infringement litigation, or that
MediaPointe made any allegation of patent infringement against it outside of the suit
filed in the Western District of Texas.  Nor could it.  Instead, the only conduct
Microsoft complains of is MediaPointe's actions of filing and maintaining the Prior

Action, which conduct does not fall within the definition of "assertion of patent infringement" under the PTPA, RCW § 19.350.010(1), and Microsoft thus fails to plausibly plead a claim under that statute. Additionally, the Prior Action was dismissed in the Western District of Texas and no finding was ever made of any wrongful conduct by MediaPointe. Microsoft did not even seek such a finding— because it would have failed on the record there—before rushing to bring this action in the Central District of California.

Because Microsoft cannot meet its burden to show that it has a reasonable probability of prevailing on its PTPA claim—not even under the plausibility standard of Rule 12(b)(6)—the Court should strike Microsoft's PTPA claim under the anti-SLAPP Act.

III. <u>In the Alternative, Microsoft's PTPA Claim Should Be Dismissed Under Rule 8 and Under the PTPA's Own Terms</u>.

For all of the reasons discussed in the proceeding section, Microsoft's PTPA is subject to the California anti-SLAPP Act. If, however, the Court determines that the anti-SLAPP Act does not apply to Microsoft's PTPA claim, that claim should still not be permitted to proceed. As explained in the preceding section, Microsoft has no standing to pursue a claim under the PTPA because that statute does not provide a private right of action. Moreover, Microsoft's PTPA claim is not facially plausible and therefore fails to meet the pleading standard of Rule 8 of the Federal Rules of Civil Procedure. Therefore, if the Court does not strike the claim, it should nevertheless dismiss it under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

IV. <u>Microsoft's Declaratory Judgment Act Claims (Counts I-IV) Should be Dismissed for Lack of Subject Matter Jurisdiction</u>.

Microsoft's Declaratory Judgment Act claims are also facially deficient and should be dismissed as well. This Court lacks subject matter jurisdiction over those claims because they suffer from a fatal standing defect. Microsoft alleges that it has brought these claims against a party it claims has no rights to the Patents. Indeed

13

the fundamental premise of Microsoft's Complaint is that MediaPointe lacks rights to the Patents.  Nevertheless, Microsoft asks the Court to declare that it does not infringe the Patents and that those Patents are invalid.  Microsoft's allegations concerning the ownership of the Patents are inconsistent with its relief sought – it cannot have it both ways.  Microsoft has no standing to seek declaratory relief in the absence of acknowledging MediaPointe as the patent owner.  This it refuses to do.  For this reason, Microsoft's Declaratory Judgment Act claims should be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction.

        a.  <u>Rule 12(b)(1) Standard.</u>

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides the proper vehicle for dismissal of Microsoft's Declaratory Judgment Act claims: "Because standing . . . pertain[s] to a federal court's subject-matter jurisdiction under Article III, [it is] properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)."  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  Jurisdictional attacks under Rule 12(b)(1) "can be either facial or factual." *Id.*  "[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  By contrast, in a facial attack "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.*  MediaPointe brings just such a facial challenge.  "Whether subject matter jurisdiction exists therefore does not depend on resolution of a factual dispute, but rather on the allegations in [the] complaint." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).  In deciding this facial challenge, the court "'take[s] the allegations in the plaintiff's complaint as true.'" *Mutascu v. Botezatu*, 2019 WL 2719407, at *1 (C.D. Cal. June 28, 2019) (quoting *Wolfe*, 392 F.3d at 362).

b. <u>Microsoft's Own Allegations Deprive It of Standing And the Court of Subject Matter Jurisdiction Under the Declaratory Judgment Act.</u>

Microsoft relies on the Declaratory Judgment Act to establish subject matter jurisdiction. "Under the Declaratory Judgment Act, a federal court 'may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought,' but only '[i]n a case of actual controversy.'" *United States v. Schlenker*, 24 F.4th 1301, 1306 (9th Cir. 2022) (quoting 28 U.S.C. § 2201(a)). "When presented with a claim for a declaratory judgment, therefore, federal courts must take care to ensure the presence of an actual case or controversy," *Rhoades v. Avon Prod., Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007), which "[t]he declaratory judgment plaintiff bears the burden of proving . . . ." *Digitech Image Techs., LLC v. Newegg Inc.*, 2013 WL 1871513, at *2 (C.D. Cal. May 3, 2013) (citing *Fina Rsch., S.A. v. Baroid Ltd.*, 141 F.3d 1479, 1481 (Fed. Cir. 1998)). In the patent context, an actual controversy exists when "the facts alleged, under all the circumstances, show that there is a substantial controversy, ***between parties having adverse legal interests***, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (emphasis added).

For a declaratory judgment plaintiff like Microsoft "to have [Article III] standing in a declaratory judgment action involving infringement allegations, the defendant must have been able to bring suit against the plaintiff in the first place." *Digitech Image Techs.*, 2013 WL 1871513 at *2. In other words, "a plaintiff lacks standing when the defendants have insufficient interest in the patents in question such that the defendants would be unable to enforce the patents against infringement." *GoDaddy.com, LLC v. RPost Commc'ns Ltd.*, 2014 WL 7263537, at *3 (D. Ariz. Dec. 9, 2014). *See also Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1094 (Fed. Cir. 1998) ("If a court concludes that a purported patentee is without standing . . . , it follows that the court lacks jurisdiction over [the alleged

infringer's] declaratory judgment claims."); *A123 Sys., Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1217 (Fed. Cir. 2010) (accord).

Accordingly, for Microsoft to have the standing necessary to establish subject matter jurisdiction under the Declaratory Judgment Act, it must acknowledge and accept that MediaPointe would have standing to bring a patent infringement suit against it. "A potential patent infringement plaintiff must have both Article III standing and 'prudential' standing to sue for infringement. The former derives from Article III and is based on the principle of separation of powers; the latter is a judicially created doctrine based on policy concerns." *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 2009 WL 10699035, at *4 (C.D. Cal. July 14, 2009). Under the doctrine of prudential standing, it is axiomatic that "the owner of the patent as a party is indispensable . . . to give jurisdiction under the patent laws." *Indep. Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459, 468 (1926).

But Microsoft wants to play it both ways. It wants to contend that MediaPointe lacks standing—that is the premise of its lawsuit—while also attempting to pursue declaratory relief against the Patents which it contends MediaPointe does not own. Microsoft has unambiguously alleged that Defendants do not have standing to sue it for patent infringement, as follows:

- "Defendants allege their title is derived through a series of transactions that ultimately ***purport*** to assign all right title and interest to MediaPointe."
- "The only known purported assignment from both inventors is from 2001 and was made to SMA" – not MediaPointe;
- "SMA was dissolved or deregistered in Australia in 2003 ***before*** transferring whatever rights it had in the Patents to anyone."

Compl. (Dkt. No. 1) at 8:10–17. Indeed, Microsoft claims that Defendants "did not have a sufficient legal basis to bring the WDTX Litigation [asserting the same Patents] against Microsoft in the Western District of Texas. The chain of title was broken at SMA and MediaPointe did not have legal right to sue Microsoft." *Id.* at

16

39:22–26.  The veracity of these allegations is irrelevant to the disposition of this motion.  Microsoft has pled that MediaPointe does not own the Patents and would therefore have no standing to sue it for patent infringement.

In *Macom Tech. Sols. Holdings, Inc. v. Infineon Techs. AG*, a court in this District granted a motion to dismiss a declaratory judgment claim for non-infringement brought against Infineon AG, a party that did not own the patents at issue in that case.  2016 WL 6495373, at *14–15 (C.D. Cal. Oct. 31, 2016).  There, the plaintiffs contended that they could bring a declaratory judgment action against Infineon AG because it had previously held itself out as the owner of the patents in an annual report and press release.  *Id.* at *14.  The court disagreed, holding: "[P]laintiffs have failed to show that Infineon AG, even if it *had* held itself out as the owner of the patents, would have standing to sue for infringement absent *actual* ownership. . . . Accordingly, the court GRANTS without prejudice Infineon AG's motion to dismiss plaintiffs' claim for relief as against Infineon AG for lack of subject matter jurisdiction."  *Id.* at *14–15, *aff'd in part*, 881 F.3d 1323 (Fed. Cir. 2018).

Here too, the Court should dismiss Microsoft's Declaratory Judgment Act claims for lack of subject matter jurisdiction based on Microsoft's allegations that MediaPointe is not the patentee and its refusal to so acknowledge.  Although MediaPointe has held itself out as the owner of the Patents, Microsoft disputes MediaPointe's ownership and alleges "[t]he chain of title [to the Patents] was broken at SMA and MediaPointe did not have legal right to sue Microsoft."  Compl. at 39:22–26.  Microsoft's allegations control at the pleading stage.  Because Microsoft alleges MediaPointe currently lacks standing to sue Microsoft, Microsoft itself lacks standing to sue MediaPointe as well.  Without that essential component of standing, Microsoft's claims under the Declaratory Judgment Act must be dismissed.  *See, e.g., Digitech Image Techs.,* 2013 WL 1871513 at *5 (dismissing declaratory judgment counterclaims against party that lacked title to patents for lack of subject

matter jurisdiction); *Newmatic Sound Sys., Inc. v. Magnacoustics, Inc.*, 2010 WL 1691862, at *3 (N.D. Cal. Apr. 23, 2010) ("In a case brought as a declaratory relief claim, a district court must dismiss the complaint where the party sued is neither the patent owner or the exclusive licensee of the patent owner."); *L.A. Triumph, Inc. v. Ciccone*, 2011 WL 13217374, at *5 (C.D. Cal. Feb. 16, 2011) (Declaratory judgment of trademark non-infringement could not be brought against party who did not own the mark).

## V.      Defendants are Entitled to Fee Shifting Under the Anti-SLAPP Act.

California's anti-SLAPP statute provides: "Except as provided in paragraph (2), in any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." *See* Cal. Code Civ. Proc. § 425.16(c)(1). None of the exceptions in paragraph (2), which concern motions to strike an action brought under specific California statutes, apply here. *See id.* at § 425.16(c)(2). Accordingly, MediaPointe respectfully requests that the order granting this motion include the shifting of fees and costs as called for by statute in an amount to be determined upon a noticed motion if the parties are unable to resolve that matter without the Court's intervention.

## VI.     Conclusion

In view of the foregoing, MediaPointe respectfully requests that the Court dismiss Microsoft's Complaint in its entirety pursuant to Rule 12 and grant its special motion to strike Claim V of Microsoft's Complaint with MediaPointe seeking fees and costs as provided for by the statute.

Dated:  April 20, 2022

SUSMAN GODFREY L.L.P.

By: */s/ Kalpana Srinivasan*
    Kalpana Srinivasan
    Meng Xi
    Thomas V. DelRosario
    Justin Kenney

Attorneys for Defendants