# EXHIBIT 2



**Kilpatrick Townsend & Stockton LLP**
ktslaw.com

Suite 3700, 1420 Fifth Avenue
Seattle, WA 98101

October 3, 2025

Dario A. Machleidt
direct dial 206 224 2857
direct fax 206 374 2199
DMachleidt@ktslaw.com

Via E-Mail

Joseph Zito
René Vazquez
DNL Zito
1250 Connecticut Ave. NW
Suite 200
Washington DC, 20036

      *Re:* Valve's recovery of its attorneys' fees and costs due to defendants' prosecution of a knowingly frivolous infringement counterclaim

Dear Joe and René:

      As previously detailed in Valve's response to Interrogatory No. 15 and in its May 9, 2025 letter, Valve's intends to pursue defendants[1] for its attorneys' fees and expenses under 35 U.S.C. § 285. Valve will ask the Court to order at least Rothschild, PAM, and RBDS to reimburse Valve for defending against RBDS's infringement counterclaim for at least the reasons detailed below. Defendants have known since it filed its counterclaim that their argument is frivolous. Making matters worse, defendants failed to prosecute this counterclaim on which they bear the burden of proof. Remarkably, defendants never requested to review the source code Valve made available since at least February 2025. Despite this failure to litigate their affirmative case, defendants nevertheless dishonestly fought Valve's effort to dispose of their counterclaim on the pleadings. And on the day opening expert reports were due, instead of serving any expert report on infringement, defendants attempted to shield themselves from the consequences of their actions—namely, an exceptional case finding and fees awarded under § 285—by asking Valve to agree to dismissal with prejudice with "[e]ach party to bear its own costs and fees[.]" *See* Ex. 2 (9/15/2025 René Vasquez Email).

      Defendants' actions confirm that their infringement case has been "exceptional" all along and justifies an award of Valve's fees and expenses.[2]

---

[1] Valve refers to Leigh Rothschild ("Rothschild"), Patent Asset Management LLC ("PAM"), and Rothschild Broadcast Distribution Systems LLC ("RBDS"), collectively, as "Defendants" or "defendants." Valve incorporates its prior correspondence regarding the exceptional nature of defendants' infringement case (*see* Ex. 1 (May 9, 2025 Machleidt Section 285 Ltr re Infringement Counterclaim) as well as Valve's Motion for Judgment on the Pleadings (Dkts. 87 & 116).

[2] Defendants' actions also show they vexatiously multiplied the proceedings and litigated in bad faith by raising and maintaining a knowingly meritless infringement counterclaim. Valve reserves its right to seek

Joseph Zito
René Vazquez
October 3, 2025
Page 2

## I. Defendants' infringement counterclaim was baseless from the start.

Defendants' infringement allegations never had merit. Defendants never raised a colorable read on the limitations of asserted Claim 7 of U.S. Patent 8,856,221 ("the '221 patent"), and they ignored (when helpful to them) the fact that Valve is, and has been, licensed to that patent.

Defendants threatened Valve with suit over the '221 patent in June 2023 by letter from the Meyler Defendants.[3] The Meyler Defendants attached a claim chart written by third-party Pitch Scientific supposedly mapping features of Valve's Steam Cloud to the limitations of Claim 7 based on limited publicly available information. Defendants made good on their threat when they raised their infringement counterclaim on October 17, 2024. *See* Dkt. 59.[4] Defendants served infringement contentions on November 6, 2024, which merely repackaged the deficient Pitch Scientific claim chart while citing the same superficial public evidence. Defendants never amended or supplemented their infringement contentions.

Remarkably, defendants' contentions ignored the requirements of their own patent. For example, Claim 7 requires "receiving a request message including media data . . . wherein the media data includes time data that indicates a length of time to store the requested media content." This claim element, which was specifically added to the claim to secure allowance, explicitly requires media data to indicate "a length of time to store the requested media content." Finding no indication that Steam Cloud performs this limitation, defendants instead mapped "creation and modification dates" associated with game files to the "time data" element, ignoring the absence of any connection between data showing when a file was created or modified to "a length of time to store" a file.

As another example of an implausible claim mapping, defendants attempted to map the "consumer device identifier" of Claim 7 to a user's Steam ID even though a Steam ID plainly identifies *a user* rather than *a consumer device*. Defendants are well aware of the distinction between a user ID and a device ID. Defendants previously argued that the '221 patent is not directed to an unpatentable abstract idea akin to the job of a video store clerk who performs functions like checking a customer's membership card. *See* Plaintiff's Response in Opposition to Defendant's Motion to Dismiss 16, *RBDS v. UStream, Inc.*, No. 6:15-cv-230 (E.D. Tex. June 25, 2015), Dkt. 17. There, defendants argued that "a 'membership card' is not analogous to a 'consumer device identifier' because the membership card identifies an account; the consumer device identifier, by the plain language of the claim term, corresponds to a particular *consumer device* (several of which may in turn correspond to an account)." *Id.* 16–17 (emphasis in

---

fees and expenses under other authority, including as a sanction under 28 U.S.C. § 1927 and the Court's inherent authority and, where appropriate, under the Patent Troll Prevention Act.
[3] The Meyler Defendants include Samuel Meyler and Meyler Legal PLLC.
[4] In the first answer to Valve's Second Amended Complaint, Defendants erroneously pled that Display Technologies owned the '221 patent. In the operative version of the counterclaim (Dkt. 80), defendants plead that RBDS is the assignee of the '221 patent.

Joseph Zito
René Vazquez
October 3, 2025
Page 3

original). Despite knowing that a user or account ID is not equivalent to a device ID—indeed, insisting on that distinction to another court—defendants wrongly and misleadingly tried to map Steam ID to a "consumer device identifier."

Defendants have also long been aware that Steam Cloud predates the '221 patent. Steam Cloud was released to the public in 2008 and was immediately put into wide public use in a variety of games. *See, e.g.*, Valve's Resp. to Interrogatory No. 13; VALVE_00326352; VALVE_00326358; VALVE_00326331; VALVE_00326335. Steam Cloud thus predates the '221 patent, which claims a 2011 priority date. "A product which would literally infringe if later in time anticipates if earlier." *Upsher-Smith Lab'ys, Inc. v. Pamlab, LLC*, 412 F.3d 1319, 1322 (Fed. Cir. 2005) (citation modified). Courts have awarded attorneys' fees when a patentee presses infringement despite the accused product predating the patent. *See, e.g.*, *WPEM, LLC v. SOTI Inc.*, No. 2:18-cv-00156-JRG, 2020 WL 555545, at *4 (E.D. Tex. Feb. 4, 2020) (awarding fees where "[i]t is reasonably clear that the Accused Technology is in fact prior art).

Valve does not and has never infringed the '221 patent. But as so many targets before and since have done, Valve sought to avoid the hassle of dealing with defendants' baseless infringement allegations by entering into the 2016 Global Settlement and License Agreement ("GSLA" or "Agreement"). Regardless of which shell company Rothschild chooses to own the '221 patent at any particular time, Valve is licensed to practice that patent. *See, e.g.*, Rothschild Tr. at 214:14–20. Defendants' position on the scope and import of Valve's license has been internally inconsistent and self-contradictory throughout this case. When arguing against Valve's standing to pursue declaratory judgment, Defendants claimed that "the GSLA between the Parties remains in effect" and that "the covenant not to sue in the GSLA also binds RBDS." Dkt. 40 at 12. Despite this admission, defendants pled and forced Valve to contend with its infringement counterclaim, and defendants fought to keep the counterclaim in the case until the day opening expert reports were due.

## II. Defendants' failure to investigate the functionality of the accused Steam Cloud instrumentality is irreconcilable with a good-faith belief in its counterclaim.

Defendants had ample opportunity and a duty to investigate the accuracy of its infringement contentions. No defendant ever did so. Defendants requested documents "relating the operation and function of the Accused Products, including any . . . source code." Defendants' RFP No. 6. Valve replied on February 25, 2025, that "the Steam Cloud source code is available for review at the Seattle office of Kilpatrick Townsend & Stockton LLP, U.S. Bank Centre, 1420 5th Ave #3700, Seattle, WA 98101, consistent with the safeguards set forth in the Court's Protective Order (Dkt. 52)." *See* Valve's Response to Defendants' 1st RFPs.[5] Defendants never inspected or even requested access to Valve's Steam Cloud source code.

---

[5] Valve also produced non-public technical documents on the same day. *See* VALVE_00005480–VALVE_00005489. RBDS never amended its infringement contentions to account for this non-public information.

      Without inspecting source code, defendants' infringement counterclaim never had a chance of success. The Western District of Washington has held that once a party claiming infringement "has had sufficient time to review the accused source code," the party "is under an obligation to promptly and appropriately amend its infringement contentions." *REC Software USA, Inc. v. Bamboo Sols. Corp.*, No. C11-0544 JRL, 2012 WL 3545056, at *3 (W.D. Wash. Aug. 16, 2012). An infringement claim against accused software cannot survive summary judgment if contentions are not amended to point to infringing elements of the source code. *See Corus Realty Holdings, Inc. v. Zillow Grp., Inc.*, 860 F. App'x 728, 734 (Fed. Cir. 2021).

      In the unlikely event defendants were unaware of the requirement to supplement contentions with source code citations, Valve cited this very authority in its interrogatory responses. *See, e.g.*, Feb. 20, 2025 Valve Interrog. Resp., Preliminary Stmt ¶5 ("Several of Valve's responses reference Defendants' obligation to amend their contentions in light of Valve's concurrent production of the Steam Cloud source code. *See Corus Realty Holdings, Inc. v. Zillow Grp., Inc.*, No. C18-0847-JLR, 2020 WL 488545, at *5 (W.D. Wash. Jan. 30, 2020), aff'd, 860 F. App'x 728 (Fed. Cir. 2021) ('In cases involving software allegations, the party asserting infringement has an obligation to 'promptly and appropriately' amend its contentions to identify pinpoint citations to source code after it has had the opportunity to review the code.')."); *see also id.* at 10, 14, 17. Defendants ignored this legal requirement, confirming they never intended to actually pursue Valve for infringement for the licensed '221 patent.

      On August 20, 2025, Defendants deposed Taylor Sherman, Valve's 30(b)(6) designee for "[o]peration of the Valve system and software for storage and retrieval of user information." Throughout his deposition, Mr. Sherman answered questions about the functionality of Steam Cloud. But for certain details, Mr. Sherman explained that the requested information was in the source code:

> **Q**    **So a person might play a game for free, upload some saved files, but then the game becomes -- they have the purchase -- the user hasn't purchased it. At that point, if they request the saved files, they will be denied the files?**
> **A**    Yes, that's what I was describing. I don't remember if I said earlier, I'm not a hundred percent sure if we have this check in there right now, because I don't want to say something incorrect. I don't remember if we have this authentication check on the download side -- sorry -- for the ownership check of the app. It might be something that we had in the past and we don't anymore. I'm not a hundred percent sure.
> **Q**    **Who would you have to talk to at Valve to find the answer to that question?**
> **A**    I would just look at the source code.
> **Q**    **That's something you do have access to?**
> **A**    Not at the moment, no.

> **Q** Right. Not at the moment. But if you went back to your office, you could check it?
> **A** I could, yes.

Sherman Tr. at 30:9–31:7 (bold added, objections omitted). Defendants did not request to inspect the code either before, during, or after Mr. Sherman's deposition. Defendants' failure to take such a basic—and legally required—step confirms they used RBDS to raise an infringement counterclaim simply to drive up Valve's expenses until the time when defendants faced actual costs—namely, paying an expert to support their theory of infringement. Having never even disclosed a technical expert, defendants' conduct regarding Valve and the '221 patent aligns perfectly with their long history of vexatious litigation without any desire to test the merits of their claims.

### III. Defendants' delay in dismissing its infringement counterclaim continues to cost Valve the expense of preparing an infringement defense.

On September 15, 2025, the day opening expert reports were due, Defendants proposed to dismiss the infringement counterclaim "[i]n view of the evidence produced during discovery." Ex. 2 (9/15/2025 René Vasquez Email). Defendants have since claimed that their "evidence" is Mr. Sherman's testimony. *Id.* But Mr. Sherman's testimony was consistent with (i) information that has been publicly available since well before the infringement counterclaim was filed and (ii) Valve's non-infringement position throughout the case, including Valve's non-infringement contentions served on December 6, 2024. Nothing revealed during Mr. Sherman's deposition was new.

Defendants' unresponsiveness to simple inquiries during expert discovery has also added to Valve's expenses. After serving an opening expert report by Dr. Adam Sorini on the invalidity of the '221 patent on September 15, 2025, Valve proposed a deposition date for Dr. Sorini of October 2, 2025. But defendants did not respond to Valve's emails on September 26 and September 30 attempting to set and confirm Dr. Sorini's deposition. Defendants finally notified Valve on October 1, 2025—the eve of Dr. Sorini's proposed deposition—that they would not depose him, causing Valve to spend unnecessary time preparing for Dr. Sorini's deposition.

Even now, Valve remains uncertain whether defendants will abandon their counterclaim. Defendants have only proposed dismissing the counterclaim, with the offer contingent on unacceptable concessions from Valve. Valve thus cannot abandon its preparation of a non-infringement defense. Valve must also reserve the right to supplement its expert reports to include additional non-infringement positions if defendants do not follow through with dismissing their infringement counterclaim.

Because defendants confirmed that they no longer have a good faith belief in their own infringement claim, defendants must take unilateral steps to dispose of it—including

Joseph Zito
René Vazquez
October 3, 2025
Page 6

withdrawing their opposition to Valve's pending motion for judgment on the pleadings—rather than attempting to leverage the dismissal of the claim for concessions from Valve.[6]

\* \* \*

      Defendants' actions stand out both because of the weakness in their infringement case from the outset and because of the unreasonable manner in which defendants refused to prosecute their case. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). Indeed, all of defendants' counterclaims were ultimately meritless and dropped by defendants only after Valve incurred expenses to tell defendants they were wrong. Defendants' infringement counterclaim only highlights defendants' vexatious litigation strategy to assert meritless counterclaims solely to drive up Valve's litigation costs. Therefore, Valve intends to pursue defendants for its attorneys' fees and expenses under at least 35 U.S.C. § 285 and reserves the right to seek its attorneys' fees and expenses under any other applicable authority. *See supra* note 2.

Sincerely,

*[signature]*

Dario A. Machleidt
Enclosures

---

[6] To the extent Valve's participation is needed to support a motion to dismiss at this stage, Valve has offered to meet and confer under Judge Whitehead's chamber rules. *See* Chamber Rule 5.6. To date, defendants have not responded.

# EXHIBIT 1



**Kilpatrick Townsend & Stockton LLP**
ktslaw.com

Suite 3700, 1420 Fifth Avenue
Seattle, WA 98101

May 9, 2025

direct dial 206 224 2857
direct fax 206 299 3458
dmachleidt@ktslaw.com

*Via Email*

Donald McPhail
Eric R. Chad
Paige S. Stradley
Merchant & Gould
150 S 5th St Unit 2200,
Minneapolis, MN 55402

      Re:   <u>*Valve Corp. v. Leigh Rothschild et al.*, No. 2:23-cv-1016 (W.D. Wash.) – Defendants' counterclaim of infringement of U.S. Patent No. 8,856,221</u>

Counsel:

    Defendants must immediately dismiss their counterclaim for infringement of U.S. Patent No. 8,856,221 (the "'221 patent) because Defendants—again—assert infringement of a patent that Valve is already licensed to.

    Defendants admitted that the 2016 Global Settlement and License Agreement ("GSLA") granted Valve a "perpetual, irrevocable, royalty-free, fully paid-up, worldwide license" to patents controlled by Leigh Rothschild. Dkt. 80 at Answers to ¶¶ 12-13. Defendants also admitted that the '221 patent is expressly listed in the GSLA as a patent Valve has a license to. Dkt. 80 at Answer to ¶ 28. The GSLA is thus a complete defense to Defendants' patent infringement claim. *See* Section 271(a) ("whoever without authority" performs certain acts "infringes"); *FireBlok IP Holdings, LLC v. Hilti, Inc.*, 855 F. App'x 735, 738 (Fed. Cir. 2021) (affirming summary judgment of noninfringement for licensed products). Defendants have made no allegations that Valve breached the GSLA nor any other basis to excuse Defendants' performance under the GSLA. *See generally* Dkt. 80.

    Defendants' claim of infringement of the '221 patent is thus objectively unreasonable in light of the law and facts of the case. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 545 (2014) (holding that courts may consider "the substantive strength of a party's litigating position" when determining if the case "stands out from the others"). Courts uniformly conclude that a case is exceptional and warrants fee shifting under Section 285 where a patent owner asserts infringement of a patent in the face of an existing license. *See, e.g.*, *Brilliant Optical Sols., LLC v. Comcast Corp.*, No. 13-CV-00886-REB, 2015 WL 1476691, at *3 (D. Colo. Mar. 27, 2015) (awarding fees under 35 U.S.C. § 285 because "[defendant] had a license to use the covered device or devices in the manner at issue here. Such a license is a complete defense to a claim of infringement …. Prosecution of an infringement claim in the face of such a license is objectively unreasonable"); *Bayer CropScience AG v. Dow AgroSciences LLC*, No. cv 12-256-RMB-JS, 2015 WL 108415, at *4 (D. Del. Jan. 5, 2015), report and recommendation adopted in relevant part, No. CV 12-256-RMB-JS, 2015 WL 1197436 (D. Del. Mar. 13, 2015),

Page 2

aff'd, 851 F.3d 1302 (Fed. Cir. 2017) (awarding fees and finding plaintiff's infringement claims baseless because "Bayer insisted on forging ahead while it unsuccessfully searched for a theory to defeat Dow's license or contract defense").

     Due to Defendants' baseless allegations, Valve continues to incur unnecessary costs defending against infringement claims related to a patent it already licensed. If Defendants do not withdraw their infringement counterclaim, Valve will seek its fees and costs incurred as a result of being forced to defend itself, including but not limited to all fees and costs relating to discovery into Valve's Steam Cloud platform, all depositions relating to Valve's Steam Cloud platform, and expert costs for non-infringement report.[1]

     Please confirm by May 14, 2025, that Defendants will agree to dismiss their counterclaim for infringement of the '221 patent.

Sincerely,

Dario A. Machleidt

---

[1] Valve reserves its rights to seek these fees and costs even if Defendants drop their infringement counterclaim.

# EXHIBIT 2

**Geyer, Kate**

| | |
|---|---|
| **From:** | Rene Vazquez <rvazquez@dnlzito.com> |
| **Sent:** | Monday, September 15, 2025 11:23 AM |
| **To:** | Machleidt, Dario |
| **Cc:** | Litigation Folder; Joseph Zito; Geyer, Kate |
| **Subject:** | Re: Valve v. Rothschild et al. |
| **Attachments:** | Stipulated dismissal of Counterclaim.docx |

**\*\*CAUTION: External Email\*\***

Hi Dario,

In view of the evidence produced during discovery, RBDS would like to dismiss, with prejudice, the Counterclaim against Valve Corporation for infringement of the '221 Patent. Such a dismissal would also remove the case or controversy requirement for Count I (Declaratory Judgment of Invalidity) and Count II (Declaratory Judgment of Unenforceability) of the Second Amended Complaint, and thus those counts would be dismissed without prejudice.

To this end, attached is a draft Joint Stipulation Dismissal of RBDS' Counterclaim and Stipulated Dismissal of Counts I and II of the Second Amended Complaint for your review.

Please let us know if your client will agree to the proposed dismissals and, if so, if the draft Joint stipulation is acceptable.

—René

René A. Vazquez
**DNL Zito**
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
(703) 989-2244
rvazquez@dnlzito.com


> On Sep 12, 2025, at 8:52 AM, Machleidt, Dario <dmachleidt@ktslaw.com> wrote:
>
> René,

Valve rejects your clients' offer and will oppose any request to mediate. Please keep in mind the following guidance from Judge Whitehead before you ask him to order mediation:

> "I mean, **I'm not going to order the parties to mediation. I'm not going to, you know, send you to a magistrate judge**. I mean, if the parties are interested in talking resolution, I encourage you all to do so. Mr. Rothschild, I mean, you are still represented by Merchant & Gould and local counsel, so I would say to perhaps work through them if you have any desires on that front. But there is nothing that would stop the parties from discussing and engaging in sort of private dispute resolution. That's not a court deadline or something that would be impacted by a stay." Motion to Withdraw Hearing Tr. 13:24 – 14:8 (emphasis added).

Sincerely,

Dario Machleidt
dmachleidt@ktslaw.com
Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue | Suite 3700 | Seattle, WA 98101
**T** 206 224 2857 | **F** 206 374 2199
My Profile | vCard

---

**From:** Rene Vazquez <rvazquez@dnlzito.com>
**Sent:** Thursday, September 11, 2025 4:25 PM
**To:** Machleidt, Dario <dmachleidt@ktslaw.com>
**Cc:** Litigation Folder <litigation@dnlzito.com>; Joseph Zito <jzito@dnlzito.com>; Geyer, Kate <KGeyer@ktslaw.com>
**Subject:** Re: Valve v. Rothschild et al.

**Settlement Communication - Subject to FRE 408**
_____

Hi Dario,

On August 19, 2025 we emailed you (see below) a settlement proposal following a telephone discussion with you, Joe Zito and me. It is surprising and concerning that almost a month has gone by with no response whatsoever from your client, in spite of my repeated inquiries regarding the same.

If we have not received a formal response from your client by close of business tomorrow, September 12, 2025, we intend to inform the Court of our attempts to reach a settlement and will ask the Court to order the Parties to participate in mediation.

I look forward to hearing from you.

—René

René A. Vazquez
**DNL Zito**
1250 Connecticut Avenue, NW

Suite 700
Washington, DC 20036
(703) 989-2244
rvazquez@dnlzito.com

On Aug 19, 2025, at 7:39 PM, Rene Vazquez <rvazquez@dnlzito.com> wrote:

**Settlement Communication - Subject to FRE 408**
_____

Hi Dario,

Further to our call today, our client is willing to agree in principal to a settlement that includes the following major provisions:

• Mr. Rothschild will issue an apology for the lawsuit that was mistakenly filed against Valve by his previous attorney (who was terminally ill at the time), as well as for the messages inadvertently sent to Valve offering Valve a license to patents that Valve already had a license to under the 2016 Global Settlement Agreement.

• Mr. Rothschild will deny liability under Washington State's Patent Troll Prevention Act (RCW 19.86) and Consumer Protection Act (WRC 19.35).

• Mr. Rothschild will agree to pay a nominal amount to be negotiated.

• All claims and counterclaims against all parties, including the Meyler defendants, will be dismissed.

• A general release by all parties.

Please let us know if your client would be amenable to a settlement along these lines.

—René

René A. Vazquez
**DNL Zito**
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
(703) 989-2244
rvazquez@dnlzito.com

3

'

Confidentiality Notice:
This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 U.S.C. Section 2510, and its disclosure is strictly limited to the recipient intended by the sender of this message. This transmission, and any attachments, may contain confidential attorney-client privileged information and attorney work product. If you are not the intended recipient, any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. Please contact us immediately by return e-mail or at 404 815 6500, and destroy the original transmission and its attachments without reading or saving in any manner.
'