# EXHIBIT 10
# FILED UNDER SEAL

```
 1              UNITED STATES DISTRICT COURT

 2          FOR THE WESTERN DISTRICT OF WASHINGTON

 3                     AT SEATTLE

 4   ----------------------------------------x
     VALVE CORPORATION,
 5
                        Plaintiff,
 6
               - versus -     Case No.:  2:23-cv-1016-JNW
 7
     LEIGH ROTHSCHILD, ROTHSCHILD
 8   BROADCAST DISTRIBUTION SYSTEMS,
     LLC, DISPLAY TECHNOLOGIES, LLC,
 9   PATENT ASSET MANAGEMENT, LLC,
     MEYLER LEGAL, PLLC, and SAMUEL
10   MEYLER,
                        Defendants.
11   ----------------------------------------x

12

13         * * * C O N F I D E N T I A L * * *

14

15            VIDEOTAPED DEPOSITION OF:

16

17                  LEIGH ROTHSCHILD

18

19            Wednesday, August 27, 2025

20            9:55 a.m. ET - 8:34 p.m. ET

21

22

23         REPORTED STENOGRAPHICALLY BY:

24          Stacey E. Raikes, RMR, CRR

25               Job No. 10171404
```

Confidential

Leigh Rothschild

Valve Corporation vs.
Leigh Rothschild, et al.

1

2

3

4                          * * * * * * * * * * *

5

6

7              VIDEOTAPED STENOGRAPHIC DEPOSITION of LEIGH

8    ROTHSCHILD, taken in the above-entitled matter before

9    STACEY E. RAIKES, a stenographic machine reporter,

10   Registered Merit Reporter, Certified Realtime

11   Reporter, and Notary Public for the State of Florida,

12   taken on Tuesday, August 27, 2025, commencing at 9:55

13   a.m. ET.

14

15

16

17                          * * * * * * * * * * *

18

19

20

21

22

23

24

25

2

```
1    A P P E A R A N C E S:

2

3    KILPATRICK TOWNSEND & STOCKTON LLP

4    BY:  DARIO A. MACHLEIDT, ESQ.

5              - and -

6    BY:  KATHLEEN R. GEYER, ESQ.

7    1420 Fifth Avenue, Suite 3700

8    Seattle, Washington  98101

9    (206) 467.9600

10   dmachleidt@kts.com

11   kgeyer@kts.com

12   Attorneys for the Plaintiff

13

14

15   KILPATRICK TOWNSEND & STOCKTON LLP

16   BY:  KENGYEH K. CHU, ESQ.

17   4208 Six Forks Road, Suite 1400

18   Raleigh, North Carolina  27609

19   (919) 420.1733

20   kchu@ktslaw.com

21   Attorneys for the Plaintiff

22

23

24

25
```

3

Confidential

Leigh Rothschild                                                    Valve Corporation vs.
                                                              Leigh Rothschild, et al.

1    A P P E A R A N C E S:   (Continued)

2

3    DNL ZITO

4    BY:  RENÉ A. VAZQUEZ, ESQ.

5    1250 Connecticut Avenue Northwest, Suite 700

6    Washington, DC  20036

7    (202) 466.3500

8    rvazquez@dnlzito.com

9    Attorneys for the Defendants

10

11

12

13

14

15

16

17

18

19

     ALSO PRESENT:

20

21   Paul Smith, Legal Video Specialist

22

23

24

25

1        A.    Right.

2        Q.    Please read into the record what your

3   notes say.

4        A.    Personal financial information.

5              Questions probing into your personal

6   finances, net worth, or assets are generally

7   irrelevant unless punitive damages are directly at

8   issue.

9              Response:  "I decline to answer as this

10  question seeks personal financial information

11  irrelevant to the claims at issue."

12             Irrelevant personal history or unrelated

13  business matters.

14             If asked about unrelated lawsuits,

15  unrelated business ventures, or personal matters

16  that do not touch on the patents or statutory

17  factors, you may refuse.

18             Response:  "I decline to answer as this

19  question is irrelevant, harassing, and outside the

20  scope of this litigation."

21             Refusal language.

22             If a refusal is necessary, it should be

23  respectful and note willingness to abide by a court

24  ruling.

25             Response:  "On advice of counsel, I

1    respectfully decline to answer this question.  I

2    will abide by any court order directing me to

3    respond."

4         Q.   You referenced near the tail end of that

5    the statement on the advice of counsel.  Did any

6    lawyers help you put together that sheet of notes?

7         A.   No.

8         Q.   When did you put together -- when did you

9    prepare that sheet of notes?

10         A.   Yesterday.

11         Q.   Why did you do so?

12         A.   Preparation for the depo.  Anticipation of

13    being asked irrelevant, harassing questions by you.

14         Q.   Any other reasons why you decided to

15    prepare that sheet of notes?

16         A.   Preparation for the deposition.

17         Q.   Have you been deposed before?

18         A.   Yes.

19         Q.   In any of your past depositions, did you

20    also have a sheet of notes similar to the one in

21    front of you today?

22         A.   I do not recollect.

23         Q.   Have you given a copy of that sheet of

24    notes to your lawyer?

25         A.   No.

Leigh Rothschild

1     Q.   You're not sure whether, at any point

2  during the past 12 years, you personally had a

3  greater than 20 percent ownership?

4     A.   No I'm not.

5     Q.   Does more than one person own the

6  remaining 80 percent ownership stake in PAM?

7     A.   Yes.

8     Q.   Who are all the people who have an

9  ownership stake --

10          ATTORNEY MACHLEIDT:  Strike that.

11  BY ATTORNEY MACHLEIDT:

12     Q.   Who are all the people or entities who

13  currently have an ownership stake --

14          ATTORNEY VAZQUEZ:  Objection.  Relevance.

15     I'm sorry.

16     Q.   -- in PAM?

17          ATTORNEY VAZQUEZ:  Objection.  Relevance.

18          THE WITNESS:  I'm sorry, am I instructed

19     to answer?

20          ATTORNEY VAZQUEZ:  Yes.

21     A.   All right.  I decline to answer the

22  question as it's irrelevant and outside the scope of

23  the litigation.

24     Q.   Please tell me the names of all the

25  individuals that currently have an ownership stake

Leigh Rothschild

1    in PAM.

2         A.   I decline to answer the question as it's

3    irrelevant, outside the scope of this litigation.

4              ATTORNEY MACHLEIDT:  We're going to do

5         this a lot.  For everything like that, can you

6         put an asterisk next to, whatever's easiest,

7         probably the question.  And then I just want,

8         you know, designation of the question and the

9         answer.

10             THE COURT REPORTER:  Sure.

11             ATTORNEY MACHLEIDT:  Thank you.

12   BY ATTORNEY MACHLEIDT:

13        Q.   Is there anything I can do to get you to

14   answer that question today short of having a judge

15   compel you to answer?

16        A.   Counsel, are you threatening me?

17        Q.   I'm asking you a question.

18             Is there anything I can do today short of

19   having Judge Whitehead order you to answer that

20   question?  Is there anything I can do, a compromise,

21   middle ground in order to get an answer to that

22   question?

23        A.   Counsel, I respectfully decline to answer

24   your question as it is irrelevant, outside the scope

25   of litigation.  However, Counsel, you mention the

1    judge.  I will abide, absolutely, by any court order

2    by Judge Whitehead or anyone of competent authority

3    to answer the question.

4            ATTORNEY VAZQUEZ:  I'd like to confer with

5        my client.  Can we go off the record?

6            THE VIDEOGRAPHER:  Going off record at

7        10:18 a.m.

8                    (Recess.)

9            THE VIDEOGRAPHER:  Back on record at 10:26

10       a.m.

11           ATTORNEY VAZQUEZ:  We would like the

12       transcript of this deposition to be designated

13       confidential attorney eyes only, please.

14           ATTORNEY MACHLEIDT:  René, do you take the

15       position that whatever you and Mr. Rothschild

16       discussed now on the break is entirely

17       privileged meaning --

18           ATTORNEY VAZQUEZ:  Yes.

19           ATTORNEY MACHLEIDT:  -- meaning any

20       outcome you want me to get from questions of

21       Mr. Rothschild?  I can say that in a more

22       normal way.

23           Do you want to put anything on the record

24       in terms of what you intend to consider sort of

25       the boundaries of the PAM related questions or

1    do we just go forward and see where we get?

2         ATTORNEY VAZQUEZ:  I will put it on the

3    record as appropriate based on your questions.

4         ATTORNEY MACHLEIDT:  I know it's a very

5    long time ago.  Do you mind asking the question

6    that I asked before we went on a break.

7       (Record read back by the Court Reporter.)

8    A.    There's a trust that has an ownership

9    stake in PAM.

10    Q.    Do you, Mr. Rothschild, personally,

11    separate from the trust, have an ownership stake in

12    PAM?

13    A.    Counsel, I answered that before, and said

14    I do.

15    Q.    Is the trust the only other entity that

16    also has an ownership stake in PAM?

17    A.    It is.

18    Q.    What is the name of the trust that also

19    has an ownership stake in PAM?

20    A.    I don't remember it with specificity.

21    Q.    Is the name of the trust the Rothschild

22    Family Holdings Trust?

23    A.    It might be.  I don't recollect it with

24    specificity.

25    Q.    Approximately, how long has the trust had

1    an ownership stake in PAM?

2         A.    For many years.  I don't know exactly how

3    long.

4         Q.    Who are the beneficiaries of the trust

5    that has an ownership stake in PAM?

6              ATTORNEY VAZQUEZ:  Objection.  Relevance.

7         Q.    I'll say this certainly not to give legal

8    advice, but you are aware that, in general, the

9    rules of the road are, unless your lawyer instructs

10   you not to answer after he poses an objection, at a

11   deposition, you are still expected to answer; are

12   you aware of that?

13        A.    I am, sir.

14        Q.    Not a problem.

15        A.    I am.  I decline to --

16        Q.    Would you like to ask --

17        A.    I decline to answer the question, as it

18   seeks personal and irrelevant financial information

19   irrelevant to the claims at issue, Counsel.

20        Q.    This will be repetitive because I think

21   the record might have gotten a bit muddy.

22              Who are the beneficiaries of the trust

23   that also has an ownership interest in PAM?

24        A.    I decline to answer the question as it

25   seeks personal financial information clearly

Leigh Rothschild

1    irrelevant to the claims at issue.

2        Q.   Is Mr. Falcucci a beneficiary of the

3    trust?

4        A.   He is not.

5        Q.   Is Ms. Arias a beneficiary of the trust?

6        A.   She is not.

7        Q.   Is Ms. Constance Casangen a beneficiary of

8    the trust?

9        A.   She is not.

10       Q.   Are any individuals who are not related to

11   you by family beneficiaries of the trust?

12       A.   They are not.

13       Q.   What is the relationship, if any, between

14   PAM and Symbology Innovations?

15       A.   Counsel, I believe you asked that, but I'm

16   more than happy to answer it, again.  PAM is 100

17   percent owner of Symbology Innovations.

18       Q.   What is the relationship between PAM and

19   Social Positioning Input Systems?

20       A.   There is no company, Counsel, to the best

21   of my knowledge, named Social Position Input

22   Systems.

23       Q.   I might have misspoke.  The company that I

24   mentioned was Social --

25            ATTORNEY MACHLEIDT:  Strike that.

1    BY ATTORNEY MACHLEIDT:

2        Q.    I meant to say Social Positioning Input

3    Systems; is that a company that you're aware of?

4        A.    I understand you made a mistake.  So could

5    you readdress the question correctly?

6        Q.    Absolutely.

7        A.    Thank you.

8        Q.    What is the relationship, if any, between

9    PAM and Social Positioning Input Systems?

10       A.    I don't believe, Counsel -- let me

11   repeat -- that there's any company named Social

12   Positioning Input Systems.

13                    (Pause.)

14   BY ATTORNEY MACHLEIDT:

15       Q.    Mr. Rothschild, are you aware of a company

16   named Social Positioning Input Systems LLC?

17       A.    I don't believe, Counsel -- I may be

18   incorrect, I may be incorrect on this matter, but I

19   don't believe that the company is correctly named

20   that you mentioned, Social Positioning Input

21   Systems.  I do not recollect that.  I don't believe

22   I have a company, that PAM has a company related to

23   it named Social Positioning Input Systems.

24           ATTORNEY MACHLEIDT:  Let's do Exhibit 1.

25       And I take that back.  Let's do whatever the

1    next exhibit is in the order.

2        (Documents Bates stamped Valve_000010121 -

3    10133 are received and marked as Exhibit 6 for

4                Identification.)

5    BY ATTORNEY MACHLEIDT:

6        Q.   You've been handed Exhibit 6.  Certainly,

7    take a look at it.

8        A.   Uh-huh.

9        Q.   And let me know when I can ask you some

10   questions about it.

11       A.   Uh-huh.  (Perusing.)

12            Counsel, can I go off the record to ask my

13   attorney a question?  Or I can ask you.

14            Do you want me to read -- I can ask you

15   the question, Counsel.  Do you want me to read all

16   of this?  You've given me Exhibit 6.  Do you want me

17   to go through all of it and have a -- refresh my

18   memory on all of it or do you want me to --

19       Q.   No.

20       A.   -- just look at the cover page, Counsel?

21       Q.   It's a fair question.

22       A.   Thank you, Counsel.

23       Q.   No, I don't think you need to go through

24   the whole thing.  Certainly, as I ask you questions,

25   if you feel the need to look through more of the

Leigh Rothschild

1    entirety of Exhibit 6, just say so and I won't stop

2    you.  Does that work for you?

3         A.   Thank you.  That works for me, Counsel.

4         Q.   Do you see on the first page of Exhibit 6,

5    near the top left, it says Social Positioning Input

6    Systems LLC?

7         A.   Yes.

8         Q.   And do you see that below that, it says

9    plaintiff?

10        A.   Yes.

11        Q.   Still below those two things, it says

12   Valve Corporation and Gearbox Software LLC as

13   defendants?

14        A.   Yes.

15        Q.   Looking at this Exhibit 6, does this

16   refresh your recollection on whether a company named

17   Social Positioning Input Systems exists?

18        A.   Counsel, I did not think the name of the

19   company was Social Positioning Input Systems.

20   Apparently or perhaps I was wrong and the company

21   is.  I thought it was Social -- for the record, I

22   thought it was Social Positioning Information

23   Systems, but either the complaint's wrong or I'm

24   wrong.  Probably, I'm wrong.  So that is the

25   situation, Counsel.

1      Q.    Maybe I can simplify this for us in the

2    future.

3            The name of the company that appears on

4    Exhibit 6 under plaintiff, do you sometimes refer to

5    that as SPIS?

6      A.    Absolutely, Counsel.

7      Q.    What relationship, if any, is there

8    between PAM on the one hand and SPIS?

9      A.    Social Positioning Systems, SPIS, as you

10   refer to it, is 100 percent owned by its parent,

11   which is Patent Asset Management, referred to today

12   as PAM.

13     Q.    Does PAM have 100 percent ownership of the

14   company Quantum Technology Innovations?

15     A.    I believe so.

16     Q.    Are you familiar with the named defendants

17   in this case, Display Technologies and Rothschild

18   Broadcast Dis --

19            ATTORNEY MACHLEIDT:  Strike that.

20                      (Pause.)

21   BY ATTORNEY MACHLEIDT:

22     Q.    Are you familiar with the named defendant

23   Display Technologies?

24     A.    I am.

25     Q.    Does PAM have 100 percent ownership in

Leigh Rothschild                                              Valve Corporation vs.
                                                    Leigh Rothschild, et al.

1    discussed with any of your lawyers, what did you do

2    to prepare for today's deposition?

3         A.   Discussion with my attorneys.

4         Q.   Did you review any documents during the

5    discussion with your attorneys?

6         A.   I did not.

7         Q.   Do you draw or take a salary from Patent

8    Asset Management?

9         A.   I do.

10        Q.   At what intervals are you paid your salary

11   from PAM?

12             ATTORNEY VAZQUEZ:  Objection.  Relevance.

13             You can answer.

14        A.   Draws as needed.

15        Q.   Does that mean that there is no regular

16   interval by which you, Mr. Rothschild, receive a

17   salary from PAM?

18        A.   Correct.

19        Q.   Because your salary from PAM is drawn as

20   needed, does the amount of salary that you receive

21   vary from time to time?

22             ATTORNEY VAZQUEZ:  Objection.  Relevance.

23             You can answer.

24        A.   Yes.

25        Q.   Understanding that you draw a salary from

Leigh Rothschild

1   PAM at -- I'll call it -- irregular intervals, in

2   any given year, is there an expectation on the

3   amount of money that will constitute your salary

4   from PAM?

5        A.   There is not.

6        Q.   Are you an hourly employee with PAM?

7        A.   I am not.

8        Q.   Do you have a written contract that

9   specifies the financial terms of your salary with

10  PAM?

11       A.   I have an employment agreement.

12       Q.   Does your employment agreement with PAM --

13       A.   Sorry.

14            ATTORNEY MACHLEIDT:  Strike that.

15  BY ATTORNEY MACHLEIDT:

16       Q.   Please.  If you have more to say.  No, no,

17  please.

18       A.   No, nothing.

19       Q.   Does your employment agreement with PAM

20  make mention of anything relating to salary?

21       A.   I don't recollect with specificity.

22       Q.   In terms of taxes, is PAM on a K1?

23       A.   I'm not an accountant, Counsel, so I don't

24  know what a K1 is in this context.

25       Q.   Have you ever heard of a K1 in the context

1    Q.   Do Display Technologies and RBDS file

2   their own annual taxes?

3    A.   The filing for all the subsidiaries is

4   done through the parent company on the parent's tax

5   return through our accountants who I named earlier,

6   accountant and accounting firm that I mentioned

7   earlier.

8    Q.   Does that mean that for companies like

9   Display Technologies, RBDS, SPIS, Quantum

10   Technologies, their taxes are reported on the taxes

11   of the parent, which is Patent Asset Management?

12    A.   That would be a correct statement, to the

13   best of my knowledge, Counsel.

14    Q.   Do any of the taxes for the -- I'll call

15   them the children if you treat PAM as the parent.

16   So, for example, Display Technologies and RBDS, do

17   any of the taxes for those companies get reported on

18   your own personal 1040?

19    A.   No, I believe that PAM passes on to my

20   personal tax return.  I don't know the accounting

21   principles, but -- not being an accountant, but I

22   believe PAM flows through, in some manner, to -- and

23   again, I don't know, because I'm not an

24   accountant -- to my personal tax return.

25    Q.   Understanding you're not an accountant,

Leigh Rothschild

1    Q.    Does that work for you?

2    A.    Absolutely.

3    Q.    Mr. Rothschild, sticking with 2024, you

4  mentioned that you were employed by PAM; correct?

5    A.    Correct.

6    Q.    You were not employed by any other

7  company?

8    A.    No.

9    Q.    Other than the salary that you drew from

10  PAM in 2024, did you receive money from any other

11  sources excluding gains, capital gains, things like

12  that?

13        ATTORNEY VAZQUEZ:  Objection to form.

14    A.    Not to the best of my knowledge.

15    Q.    What was the total amount of your salary

16  in 2024 that came from PAM?

17        ATTORNEY VAZQUEZ:  Objection.  Relevance.

18        THE WITNESS:  Right.

19    A.    I decline to answer this question as it

20  seeks personal financial information irrelevant to

21  the claims at issue.

22        ATTORNEY MACHLEIDT:  And, René, is that

23     your cutoff?

24        ATTORNEY VAZQUEZ:  I concur.

25  BY ATTORNEY MACHLEIDT:

1    Q.   Mr. Rothschild, do you have children?

2    A.   I do.

3    Q.   How many children do you have?

4    A.   I decline to answer the question as it's

5    irrelevant to the claims at issue.

6         ATTORNEY VAZQUEZ:  Objection.  Relevance.

7    I concur.

8         ATTORNEY MACHLEIDT:  When you say concur,

9    do you mean you're instructing him not to

10   answer?

11        ATTORNEY VAZQUEZ:  I'm advising him not to

12   answer.

13        ATTORNEY MACHLEIDT:  You're not

14   instructing him.  You are not telling your

15   client to refuse to answer the question how

16   many --

17        ATTORNEY VAZQUEZ:  I'm leaving it up to my

18   client.

19   A.   On my own advice, I respectfully decline

20   to answer the question.  Of course, I'll abide by

21   any court order directing me to respond, Counsel.

22   Q.   Do any of your children have management

23   responsibility with respect to PAM?

24   A.   They do not.

25   Q.   Are any of your children in positions of

Leigh Rothschild

1    management with PAM?

2        A.    No, I have a daughter who's an

3    executive -- I wouldn't say executive assistant, but

4    does some work for the company.  A young daughter.

5        Q.    Is the daughter that you mentioned the

6    only child of yours who does any work for PAM?

7        A.    Correct.

8        Q.    How many bank accounts does PAM currently

9    have?

10       A.    I don't know.

11       Q.    Does PAM currently have more than one bank

12   account?

13       A.    Yes, yes.

14       Q.    Do you know how much money, as of today,

15   sits in all of PAM's bank accounts?

16       A.    I don't.

17       Q.    How many bank accounts does Display

18   Technologies have?

19       A.    Either one or two.  I'm not sure.  It's

20   either one or two.

21       Q.    How many bank accounts does RBDS have?

22       A.    Either one or two.

23       Q.    What types of bank accounts do Display

24   Technologies and RBDS have?

25       A.    Checking accounts.

Confidential

```
1   PAM -- at least one of the PAM accounts?
2        A.   Yes, there is.
3        Q.   How many debit cards are you aware of
4   associated with PAM bank accounts?
5        A.   I have no idea.
6        Q.   You know at least one?
7        A.   Could you repeat the question?
8        Q.   You're aware that PAM has at least one
9   debit card connected to one of its checking
10  accounts?
11       A.   Correct, as I just testified.
12       Q.   You're also aware that PAM has at least
13  one credit card connected to its checking account?
14       A.   Yes, sir, as I just testified.
15       Q.   Who has the right to use the PAM debit
16  card?
17       A.   I do and, currently, Christina Arias and
18  also our chief operating officer, Mr. Falcucci.
19       Q.   Yourself, Ms. Arias, and Mr. Falcucci, do
20  you all also have the right to use the PAM credit
21  card?
22       A.   I don't know what -- how you define the
23  right.  There is usage by Ms. Arias and myself, but
24  the credit card is solely in the company's name with
25  my name attached to it.
```

Leigh Rothschild                                          Valve Corporation vs.
                                                        Leigh Rothschild, et al.

1        Q.    Is the same thing true for the debit card?

2        A.    Yes, there are no -- to cut to the chase,

3   Counsel, there are no debit or credit cards with any

4   names other than mine on them.

5        Q.    Understanding that the --

6        A.    And PAM's name.  Corporate cards.

7        Q.    Understanding that the PAM corporate

8   credit card has PAM's name and your name, who else

9   is an authorized user of that account, of that

10  credit card?

11       A.    I thought I just testified to that, but

12  let me repeat it, again, so that we have it correct,

13  and that would be I've given permission for

14  Mr. Falcucci and Ms. Arias to use those cards.

15       Q.    Understanding that the PAM debit card

16  names PAM and yourself, are Ms. Arias and

17  Mr. Falcucci both authorized by you to also make use

18  of the PAM debit card?

19       A.    Right, that's what I thought I just

20  test -- the answer is yes.  I thought I just

21  testified to that.

22       Q.    When was the last time that you personally

23  used the PAM credit card?

24       A.    I don't recollect with specificity.

25       Q.    Was it more than one month ago?

Leigh Rothschild

```
 1        A.   We've used numerous lawyers over the
 2   years.  Probably in-house counsel.  Outside counsel,
 3   Greenberg Traurig, other attorneys that we've used
 4   as outside counsel.  Many large -- large and smaller
 5   law firms over the years.
 6             I don't recall -- to answer your question
 7   on point, but I don't recall with specificity which
 8   firm or firms gave us that advice.
 9             I will say that the accounting advice came
10   from Michael Felson's firm, our CPA, and from our
11   previous CPA, Jay Howard Linn, CPA.  Mr. Linn is no
12   longer around.  Unfortunately, he passed away.
13        Q.   Was a Mr. Wassermann ever an accountant of
14   yours?
15        A.   Yes, I think so, but the name rings a
16   bell, but I don't know.  I believe that was one of
17   the accountants that we used.  But it doesn't ring a
18   current bell.
19        Q.   Is it fair to call RBDS an assertion
20   entity?
21             ATTORNEY VAZQUEZ:  Objection to form.
22        A.   One could call it an assertion entity, but
23   in actuality, it's a licensing company that holds
24   intellectual property that attempts to monetize the
25   patents through licensing and, if necessary, through
```

70

Confidential

Leigh Rothschild                                                      Valve Corporation vs.
                                                               Leigh Rothschild, et al.

1   litigation.

2        Q.   In contrast to that, Ariel Inventions is

3   not considered a licensing entity; correct?

4        A.   That is correct.

5        Q.   Any patents that are owned by Ariel

6   Inventions, they are not part of any licensing or

7   assertion attempts while they are owned by Ariel

8   Inventions?

9        A.   That would be a correct statement, to the

10  best of my knowledge.

11       Q.   Going back to the shorthand, is it okay if

12  I refer to RBDS as a monetizing entity?

13       A.   Yeah, I think that's fine.

14       Q.   Do you have a similar shorthand for

15  companies like Ariel Inventions?

16       A.   Ariel Inventions is a company that holds

17  intellectual property.  It does not seek to monetize

18  them.

19       Q.   Do you have a rough idea in terms of how

20  many monetizing entities you own or control versus

21  the non-monetizing entities such as Ariel

22  Inventions?

23       A.   I think there's probably two or three

24  monetizing -- something in that range.  Two or three

25  or four or so.  Less than five, I believe,

```
1        A.    And when the internet goes out in the
2   middle of the deposition, or someone has a problem
3   on either end, even more so of a nightmare.
4        Q.    Somewhat moving to a different topic, I'm
5   sure there's relationship to others, what is
6   Rothschild Trust Holdings?
7        A.    It's another individual company that I
8   have for personal use.
9        Q.    The trust that you mentioned earlier that
10  you didn't want to answer more personal questions
11  about, is it the same as Rothschild Trust Holdings?
12       A.    It is not.
13       Q.    You don't recall the name of the trust
14  that you were previously mentioning?
15       A.    As I testified to earlier, I do not.
16       Q.    Other than that trust whose name we don't
17  know or recall --
18       A.    Uh-huh.
19       Q.    -- Rothschild Trust Holdings, are there
20  any other trusts that name you in any way, that
21  you're aware of?
22       A.    I think I testified to that earlier and I
23  gave you the answer, which would be the same answer
24  now, as no.
25       Q.    Your memory is better than mine.
```

Leigh Rothschild

1    A.    Thank you for the compliment, Counsel.

2    Q.    I blame mine on lack of sleep and probably

3  other things.

4    A.    That would be a reasonable excuse,

5  Counsel.

6    Q.    You mentioned that the Rothschild Trust

7  Holdings is something that you use only for personal

8  use?

9    A.    Correct.

10   Q.    Is the Rothschild Trust Holdings -- and

11  correct me if my language is wrong -- but still

12  active today?

13   A.    I don't think it has any activity.  In the

14  past, it had activity, but I don't believe there's

15  any current activity, but I'm not sure.  Certainly

16  not involved in the patent business.

17   Q.    Has the Rothschild Trust Holdings been

18  closed?

19   A.    I don't know that.

20     (Documents Bates stamped ROTHSCHILD0035889 -

21   35899 are received and marked as Exhibit 12 for

22              Identification.)

23  BY ATTORNEY MACHLEIDT:

24   Q.    Mr. Rothschild, you have Exhibit 12.  I'm

25  very big on, obviously, you can take a look at

1   anything or all things of a document when I hand it

2   to you.  Sometimes it's more helpful if I ask a few

3   targeted questions, and if you need to look at more,

4   either you or your lawyer will advise me of that.

5            Does that work for you?

6        A.   Absolutely.  If I need more time, as you

7   told me, I'd be happy to look for -- look further at

8   the agreement.  At the documents.  The exhibits,

9   excuse me.  Exhibits.

10       Q.   May I ask you a question about Exhibit 12?

11  I don't want to interrupt.

12       A.   Certainly.

13       Q.   Is Exhibit 12 an attorney engagement

14  agreement where the attorney or the law firm is

15  Kizzia Johnson?

16       A.   Yes, I believe it is.

17       Q.   Are the parties -- and I don't want to

18  hide anything.  I'm looking at Page 1 in the first

19  paragraph.

20           Are the parties to this engagement

21  agreement the law firm Kizzia Johnson and then

22  Rothschild Broadcast Distribution Systems or RBDS?

23       A.   Yes, it appears to be so.

24       Q.   This Exhibit 12 engagement agreement

25  refers to RBDS as the client; is that fair?

Leigh Rothschild

1    Q.    Topic 41 on this page, and we're simply

2    using the PAM designations for now, references your,

3    meaning PAM -- we have equivalent ones for Display

4    Technologies and RBDS -- financials including annual

5    revenue, costs, and profits.  Do you see that?

6    A.    Yes, I do.

7    Q.    Moving to the right, do you see LMR, which

8    I understand to be your initials?

9    A.    Yes.

10    Q.    Are you prepared to testify on behalf of

11    the PAM annual revenue costs and profits?

12    A.    On the PAM -- am I -- could you repeat the

13    question?

14    Q.    Are you prepared to testify on behalf of

15    PAM and Display Technologies and RBDS as to their

16    annual revenue costs and profits?

17    A.    Regarding PAM; correct?

18    Q.    Yes, but if you take a look and continuing

19    flipping the pages, eventually, you'll see that it

20    says RBDS at the top and you have very similar

21    looking topics.

22    If you continue to flip the pages, you see

23    Display Technologies.  And I believe if you look at

24    number -- topic number 40 or 41, for each of those

25    three corporate parties, it's the same thing, the

134

1   financials and there are your initials next to that.

2          So that's why my question included all

3   three companies.

4      A.   Yes.

5      Q.   Does that make sense?

6      A.   To answer your question on point, I'm

7   prepared to testify to the best of my knowledge

8   about the financials of PAM, RBDS, Display, or any

9   of the other corporate entities.

10     Q.   Based on your prior testimony, is it fair

11  to say that, to the best of your knowledge, you

12  don't know what PAM's 2024 annual revenue was?

13     A.   I so testify.  That is a correct

14  statement.

15     Q.   Are there any documents within PAM or,

16  potentially, in the possession of the accountant,

17  that would have that information?

18     A.   Not to my knowledge.  Except any internal

19  ledgers that Ms. Arias would be maintaining.  Or the

20  bank statements, which, of course, we have, which I

21  believe we may have turned over to Valve.  Bank

22  statements.

23     Q.   What did you do to prepare to testify, for

24  instance, on behalf of PAM with respect to topic 41

25  about the financials?

1          A.   I did not do anything other than appear

2    today.

3               ATTORNEY MACHLEIDT:  René, before we turn

4         this into a dispute, is it your position that

5         Mr. Rothschild is adequately prepared for this

6         topic?  And just in general, the financial

7         topics?

8               I ask because he punts to the accountant

9         on a lot and I've given him leeway, but I don't

10        want to talk out of school, but to his point

11        about the documents, you and I both know we

12        don't have them.  We expected to, ideally, be

13        able to backfill with testimony here, and the

14        answers are I don't know for corporate topics

15        that he could know.

16              Let me know what you envision for this

17        issue.

18              ATTORNEY VAZQUEZ:  It was my understanding

19        that he would be able to testify as to these

20        topics.  Apparently, he doesn't recollect or he

21        got his information through the accountant.  I

22        mean, I'm open to suggestions here.

23              ATTORNEY MACHLEIDT:  And I'll say this:

24        Understanding --

25              ATTORNEY VAZQUEZ:  Right.

Leigh Rothschild

```
 1        A.   Yeah, we can confer now.  And that will

 2   give you a chance maybe to look at what you need to

 3   look at.

 4             THE VIDEOGRAPHER:  Going off record at

 5        3:55 p.m.

 6                      (Recess.)

 7             THE VIDEOGRAPHER:  Back on record at 4:00

 8        p.m.

 9             ATTORNEY MACHLEIDT:  Again, putting it on

10        the record for others down the road, the

11        conference that, René, you had with your client

12        outside, do you take the position that it's

13        privileged outside of anything you relayed to

14        me about tomorrow's deposition?

15             ATTORNEY VAZQUEZ:  Correct.

16             ATTORNEY MACHLEIDT:  Mr. Falcucci is going

17        to speak about whatever financial document he

18        comes with, but to your point, he is not, for

19        example, the CFO of the company, his knowledge

20        will be limited.

21             ATTORNEY VAZQUEZ:  Correct.

22   BY ATTORNEY MACHLEIDT:

23        Q.   Mr. Rothschild, before the break, I asked

24   you a question about patents and invalidation.  I'm

25   going to do my best to do that again, but
```

Leigh Rothschild

1    BY ATTORNEY MACHLEIDT:

2        Q.    What is it about that question that you

3    find harassing?

4        A.    I find it irrelevant, which I think, if

5    you're asking irrelevant questions, they border on

6    harassment.  Or actually, I don't know.  I guess

7    this would be a personal matter of definition.  I

8    find them to be harassing.

9              So in my context, in my definitional,

10   definition of harassment, but on my own advice, I

11   respectfully decline to answer the question.  Of

12   course I would abide, absolutely, by any court order

13   that would direct me to respond and give you that

14   what I consider to be irrelevant information to the

15   causes of action that your client has sued me under.

16   Or sued my entities under.

17       Q.    Do you understand that, while you may view

18   it as irrelevant, I don't know because I don't have

19   it in my hands.

20       A.    Uh-huh.

21       Q.    Does that make sense to you?

22       A.    It does.

23       Q.    I know you're not a lawyer, but you've

24   been involved in one way or another with a lot of

25   lawsuits.

Leigh Rothschild

```
1          A.    Uh-huh.

2          Q.    Do you generally think it's appropriate

3    for the party that holds the information to

4    determine what's relevant and what's not in a case

5    like this?

6          A.    I think that, if there's a cause of action

7    in a lawsuit that's brought against someone, you

8    would have -- certain questions would be allowed,

9    certain questions wouldn't.

10              Now, if Tim Cook were to fall in WalMart,

11   they might ask him the circumstances, and they

12   should, about how he fell in WalMart, but I don't

13   think the fact that he had an executive assistant

14   four years ago to know what he settled with her or

15   maybe who he's dating or what food that he's buying

16   from Whole Food in the morning, I would find those

17   questions, and I think Mr. Cook's attorney, if he

18   has a good attorney, would find them to be

19   harassing, irrelevant, and I would hope that if Cook

20   has a good attorney, Mr. Cook has a good attorney,

21   his attorney would, you know, tell Mr. Cook not to

22   answer.  And only then the Court, you know, would

23   tell him to answer.  And you would hope that, you

24   know, the judge would also agree that the questions

25   are abusive, harassing, and irrelevant to the fact
```

255

Leigh Rothschild

1    that, you know, that the matter at hand.  In the

2    example I gave, what does his assistant have to do

3    with him falling in a WalMart?

4              So I find the same thing to be true here.

5    You're asking a lot of questions, and in all due

6    respect, that are totally irrelevant to the matters

7    at hand, which are the causes of action that your

8    client has brought against me.  But it would be up

9    to the Court, I realize, as, I guess, a relatively

10   sophisticated litigant, for the Court to determine

11   that.

12             ATTORNEY MACHLEIDT:  René, I think you and

13        I both got tossed under the bus with that

14        answer.

15   BY ATTORNEY MACHLEIDT:

16        Q.   Do you intend to testify in trial, if this

17   case goes that far?

18        A.   Absolutely.

19        Q.   Do you believe that Valve has the ability

20   to probe the credibility of witnesses that testify

21   against it?

22        A.   I'm not an attorney.  I would rely upon my

23   counsel -- hopefully, good counsel -- to tell me

24   what they can and can't ask and to take it from

25   there so.

256

Leigh Rothschild

1    wrong, that you've received many letters similar to

2    what we see in Exhibit 23?

3         A.   Well, I don't, but let me correct my

4    testimony, if that's what I said.  But my attorneys

5    receive many letters disputing once they're sued,

6    many letters, you know, and defense letters, which

7    purport to defend, you know, why they're not

8    infringing our patents based on our complaints.  So

9    yes, many times.  Many, many, many letters.

10        Q.   This letter is dated July 2021.  It

11   references the '221 patent and, as you said earlier,

12   you, of course, have no specific recollection of

13   this letter?

14        A.   That's correct.

15        Q.   Is RBDS, as of August 2025, continuing to

16   assert the '221 patent?

17        A.   I think they are.  I think they are, but

18   I'm not positive about that.  I believe they are.

19   But I'm not -- I'm not certain.  We have a number of

20   entities, as you know from today's testimony.  So

21   I'm not certain of that.  But I think so, but --

22        Q.   If RBDS --

23             ATTORNEY MACHLEIDT:  Strike that.

24   BY ATTORNEY MACHLEIDT:

25        Q.   When RBDS files a new lawsuit accusing an

Leigh Rothschild                                                    Valve Corporation vs.
                                                                   Leigh Rothschild, et al.

1  entity of infringing the '221 patent, is it correct

2  that you have to approve the filing of that lawsuit?

3       A.   Yes.  Any suits that are filed, I

4  absolutely approve.

5       Q.   And the same goes for back in 2021, for

6  example, the lawsuit between RBDS and Blue Jeans

7  Network relating to the '221 patent, you would have

8  approved that lawsuit?

9       A.   Right.  Not only would I have approved it,

10 but the attorneys filing it would have approved it.

11 And our research group usually provides the evidence

12 that's attached to the complaint.

13      Q.   This letter, as I mentioned -- let's

14 ignore the non-infringement piece for a moment -- it

15 references invalidity under three separate grounds

16 and the allegations are specific to claim 7 of the

17 '221 patent.  Do you see that?

18      A.   Yes.

19      Q.   This is a yes or no.  If you have this

20 memory, I don't want the details.  But do you

21 remember whether RBDS had a response to the

22 invalidity allegations about the '221 patent in this

23 Exhibit 23 letter?

24      A.   I do not remember with specificity.  Nope.

25 Many cases, as you referenced earlier.  Don't

1        Q.    Yeah, let's do that.

2        A.    So I'm going to pull them off now, put

3    them on here, scan them, and then hand them to you.

4        Q.    That's perfect.  And I think all of that

5    can happen off the record.  Unless --

6        A.    Or on the record.

7             ATTORNEY MACHLEIDT:  René, it's getting

8        hot in here.  So I imagine --

9             ATTORNEY VAZQUEZ:  Yeah.

10            THE WITNESS:  Well, when they turn off the

11       air conditioning, it's probably a sign it's

12       time to go.

13            ATTORNEY MACHLEIDT:  All right.  Ready to

14       go off the record?

15            ATTORNEY VAZQUEZ:  Yeah.

16            THE VIDEOGRAPHER:  Going off record at

17       8:34 p.m.  And this concludes the deposition

18       for today.

19         (Proceedings were concluded at 8:34 p.m.)

20                 *  *  *  *  *  *  *  *  *

21         (Handwritten notes of the witness are received

22       and marked as Exhibit 25 for Identification.)

23

24

25

317

```
 1                  C E R T I F I C A T E

 2

 3    STATE OF FLORIDA    )

 4    COUNTY OF LEE       )

 5

 6

 7           I, STACEY E. RAIKES, a Registered Merit

 8    Reporter, Certified Realtime Reporter, and Notary

 9    Public within and for the State of Florida, do

10    hereby certify:

11           That the witness whose examination is

12    hereinbefore set forth was duly sworn by me and

13    that this transcript of such examination is a true

14    record of the testimony given by such witness.

15           I further certify that I am not related to

16    any of the parties to this action by blood or

17    marriage and that I am in no way interested in the

18    outcome of this matter.

19           IN WITNESS WHEREOF, I have hereunto set my

20    hand this 2nd of September 2025.

21

22

23

24              _____

25              STACEY E. RAIKES, RMR, CRR
```

Confidential                          Valve Corporation vs.
Leigh Rothschild                                              Leigh Rothschild, et al.

```
1               DECLARATION UNDER PENALTY OF PERJURY

2      Case Name: Valve Corporation
              vs. Leigh Rothschild, et al.
3      Date of Deposition: 08/27/2025

4      Job No.: 10171404

5

6              I, LEIGH ROTHSCHILD, hereby certify

7      under penalty of perjury under the laws of the State of

8      _____ that the foregoing is true and correct.

9              Executed this _____ day of

10     _____, 2025, at _____.

11

12

13                  _____

14                      LEIGH ROTHSCHILD

15

16     NOTARIZATION (If Required)

17     State of _____

18     County of _____

19     Subscribed and sworn to (or affirmed) before me on

20     this _____ day of _____, 20__,

21     by_____,    proved to me on the

22     basis of satisfactory evidence to be the person

23     who appeared before me.

24     Signature: _____ (Seal)

25
```

319