Honorable Jamal N. Whitehead

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| VALVE CORPORATION <br><br> Plaintiff, <br><br> v. <br><br> LEIGH ROTHSCHILD, ROTHSCHILD BROADCAST DISTRIBUTION SYSTEMS, LLC, DISPLAY TECHNOLOGIES, LLC, PATENT ASSET MANAGEMENT, LLC, MEYLER LEGAL, PLLC, AND SAMUEL MEYLER <br><br> Defendants. | Case No.: 2:23-cv-01016 <br><br> **DEFENDANTS' COMBINED OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> NOTE ON MOTION CALENDAR: **December 15, 2025** <br><br> **ORAL ARGUMENT REQUESTED** |

1.  **OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COUNT III, BREACH OF CONTRACT**

2.  **CROSS MOTION FOR SUMMARY JUDGEMENT DISMISSING COUNT III, BREACH OF CONTRACT**

3.  **MOTION FOR SUMMARY JUDGEMENT DISMISSING COUNT IV, VIOLATION OF THE WASHINGTON BAD FAITH ASSERTIONS OF PATENT INFRINGEMENT ACT**

4.  **MOTION TO DISMISS THE MEYLER DEFENDANTS BASED ON LITIGATION PRIVILEGE**

5.  **MOTION TO DISMISS THE MEYLER DEFENDANTS UNDER NOERR-PENINGTON**

6.  **DISMISSAL OF THE MEYLER DEFENDANTS FROM THE WASHINGTON CONSUMER PROTECTION ACT CLAIMS**

DEFENDANTS' COMBINED OPPOSITION AND MOTIONS FOR PARTIAL SUMMARY JUDGMENT Case No. 2:23-cv-01016

Page **1** of 31

DNL Zito
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
Phone: (202) 466-3500

# TABLE OF CONTENTS

I.    OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON
      COUNT III, BREACH OF CONTRACT ........................................................... 7

   A.    Introduction ....................................................................................... 7

   B.    Summary Judgment Standard ............................................................ 8

   C.    The Court Should Grant Summary Judgment In Favor Of Defendants And Dismiss
         Count Iii, Breach Of Contract .......................................................... 8

      1.    Plaintiff cannot recover any damages for the 2022 Breach ................ 8

      2.    There Was No 2023 Anticipatory Breach of The GSLA. ................... 9

         a)   Repudiation. ................................................................................ 10

         b)   Just Excuse .................................................................................. 11

         c)   Not Only Did Valve Fail To Mitigate, Valve Rushed To File Suit And Thus Caused
              Its Own Damages. ....................................................................... 11

   D.    Conclusion ......................................................................................... 12

II.   CROSS MOTION FOR SUMMARY JUDGMENT DISMISSING COUNT III,
      BREACH OF CONTRACT ..................................................................... 12

III.  MOTION FOR SUMMARY JUDGEMENT DISMISSING COUNT IV, VIOLATION
      OF THE WASHINGTON BAD FAITH ASSERTIONS OF PATENT INFRINGEMENT
      ACT........................................................................................................ 12

IV.   MOTION TO DISMISS THE MEYLER DEFENDANTS BASED ON LITIGATION
      PRIVILEGE ........................................................................................... 14

   A.    Introduction ....................................................................................... 14

   B.    Statement Of Facts ............................................................................ 15

      1.    The Rothschild Defendants. .............................................................. 15

      2.    The 2016 Global Settlement and License Agreement and History with Plaintiff. ... 16

      3.    The 2022 infringement lawsuits and engagement of the Meyler Defendants.......... 17

      4.    The '221 Patent Claim Chart and June 2023 Letter. ........................ 18

   C.    Argument ........................................................................................... 19

      1.    The litigation privilege bars Valve's claims against the Meyler Defendants because
            the June 2023 FRE 408 letter was pertinent or material to the redress or relief sought
            on behalf of their clients. ................................................................. 19

DEFENDANTS' COMBINED OPPOSITION AND          Page 2 of 31          1250 Connecticut Avenue, NW, Suite 700
MOTIONS FOR PARTIAL SUMMARY JUDGMENT                              Washington, DC 20036
Case No. 2:23-cv-01016                                            Phone: (202) 466-3500

DNL Zito

V.    MOTION TO DISMISS THE MEYLER DEFENDANTS UNDER NOERR-
      PENINGTON..................................................................................................... 23

   A.    Valve's Claim Against The Meyler Defendants Fails Because The Act OF Sending
         The Prelitigation Letter Is Subject To Immunity Under *Noerr-Pennington*. ............... 23

   B.    Valve Cannot Establish Objective Baselessness. ........................................................ 24

   C.    Valve Cannot Establish Subjective Baselessness. ....................................................... 25

VI.   DISMISSAL OF THE MEYLER DEFENDANTS FROM THE WASHINGTON
      CONSUMER PROTECTION ACT CLAIMS .................................................................... 26

   A.    Valve Cannot Establish Any Of The CPA Elements Against The Meyler Defendants.
         ..................................................................................................................................... 26

   B.    Valve Cannot Establish The "Unfair/Deceptive Act" Element Against The Meyler
         Defendants ................................................................................................................... 26

   C.    Valve Cannot Establish The "Trade Of Commerce" Element Against The Meyler
         Defendants. ................................................................................................................... 27

   D.    Valve Cannot Establish The "Public Interest" Element Against The Meyler
         Defendants. ................................................................................................................... 28

VII.  CONCLUSION................................................................................................................... 29

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Atkinson v. Affronti,*
  369 Ill. App. 3d 828, 836, 861 N.E.2d 251, 258 (Ill. App. Ct. 2006) ...................................... 23

4

*Blanchard v. DIRECTV, Inc.,*
  123 Cal. App. 4th 903, 919–922, 20 Cal. Rptr. 3d 385 (2004) ................................................. 23

5

6

*Celotex Corp. v. Catrett,*
  477 U.S. 317, 322-26 (1986) ..................................................................................................... 8

7

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.,*
  690 F.2d 1240, 1251 (9th Cir. 1982) ........................................................................................ 23

8

9

*Deatherage v. Examining Bd. of Psychology,*
  134 Wash. 2d 131, 136 (1997) .................................................................................................. 21

10

*Demopolis v. Peoples Nat. Bank of Washington,*
  59 Wn. App. 105, 119, 796 P.2d 426, 434 (1990) .................................................................... 27

11

12

*Eriks v. Denver,*
  118 Wn.2d 451, 463, 824 P.2d 1207 (1992) ............................................................................. 27

13

*Front, Inc. v. Khalil,*
  24 N.Y.3d 713, 720, 28 N.E.3d 15, 19, 4 N.Y.S.3d 581, 585 (2015) ....................................... 22

14

*Hall v. Smith,*
  214 Ariz. 309, 152 P.3d 1192, 1196–99 (Ct. App. 2007) ......................................................... 23

15

16

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,*
  105 Wn.2d 778, 784–93, 719 P.2d 531 (1986) .................................................................... 26, 28

17

*Jackson v. R.G. Whipple, Inc.,* 225 Conn. 705, 727, 627 A.2d 374 (1993) ................................. 27

18

*Jeckle v. Crotty,*
  120 Wash. App. 374, 386, 85 P.3d 931 (2004) .................................................................... 20, 27

19

20

*Lightfoot v. MacDonald,*
  86 Wn.2d 331, 333, 544 P.2d 88, 89 (1976) ............................................................................. 28

21

*Lubbock Mfg. Co. v. Sames,*
  598 S.W.2d 234, 237  (Tex. 1980) .............................................................................................. 9

22

23

*Mason v. Mason,*
  19 Wn. App. 2d 803, 835 (2021) ............................................................................................... 21

24

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
  475 U.S. 574, 587 (1986) ............................................................................................................ 8

25

26

*MBM Fin. Corp. v. Woodlands Operating Co., L.P.,*
  292  S.W.3d 660, 664 (Tex. 2009) .............................................................................................. 9

27

DEFENDANTS' COMBINED OPPOSITION AND
MOTIONS FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:23-cv-01016

Page **4** of 31

DNL Zito
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
Phone: (202) 466-3500

*McNeal v. Allen,*
    95 Wash.2d 265, 267, 621 P.2d 1285 (1980) ................................................. 20, 21

*Meridian Project Sys., Inc. v. Hardin Const. Co., LLC,*
    404 F. Supp. 2d 1214, 1222 (E.D. Cal. 2005) ........................................................ 24

*Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP,*
    110 Wn. App. 412, 438, 40 P.3d 1206, 1220 (2002) .............................................. 26

*Prof'l Real Estate Inv'rs, Inc. ("PREI") v. Columbia Pictures Indus., Inc.,*
    508 U.S. 49, 50, 113 S. Ct. 1920, 1922, 123 L. Ed. 2d 611 (1993) ........................ 24

*Rock River Commc'n., Inc. v. Universal Music Group, Inc.,*
    745 F.3d 343, 347 n.1 (9th Cir. 2014) .................................................................... 24

*Rounds v. Union Bankers Ins. Co.,*
    22 Wn. App. 613, 615, 590 P.2d 1286, 1287 (1979) .............................................. 28

*Ruberton v. Gabage,*
    280 N.J. Super. 125, 654 A.2d 1002 (N.J. Super. Ct. App. Div. 1995) ................... 23

*Short v. Demopolis,*
    103 Wn.2d 52, 65, 691 P.2d 163, 170 (1984) ........................................................ 27

*Sosa v. DIRECTV, Inc.,*
    437 F.3d 923, 942 (9th Cir. 2006) .......................................................................... 23

*Sriberg v. Raymond,*
    370 Mass. 105, 109, 345 N.E.2d 882, 884 (1976) .................................................. 22

*State of Washington v Landmark Technology A, LLC, et al.,*
    Case No. 2:21-cv-00728 (WD Wash.) ...................................................................... 29

*Valve Corp. v. Bucher Law PLLC,*
    34 Wn. App. 2d 727, 571 P.3d 312 (2025) ................................................. 14, 20, 21

*Young v. Rayan,*
    27 Wash. App. 2d 500, 503, 533 P.3d 123, 128 (2023)................................... 20, 21

**Statutes**

28 USC 2201 ................................................................................................................. 13

35 USC 271 ................................................................................................................... 13

35 USC sec. 1 ................................................................................................................ 13

RCW 19.350.010(d) ...................................................................................................... 13

RCW 19.350.020(3) ....................................................................................................... 13

RCW 19.86.010(2) ......................................................................................................... 27

DEFENDANTS' COMBINED OPPOSITION AND
MOTIONS FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:23-cv-01016

Page **5** of 31

DNL Zito
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
Phone: (202) 466-3500

RCW 19.86.920 ............................................................................................................... 28

DEFENDANTS' COMBINED OPPOSITION AND
MOTIONS FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:23-cv-01016

Page **6** of 31

DNL Zito
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
Phone: (202) 466-3500

I.    **OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COUNT III, BREACH OF CONTRACT**

A.    **Introduction**

Defendant Display Technologies, LLC ("DT") breached and properly timely cured the breach of the Global Settlement and License Agreement ("GSLA"). The breach occurred under clause 3.2 of the GSLA when, on September 27, 2022, , DT sued Valve alleging patent infringement of U.S. Patent No. 9,300,723 ("the '723 Patent). Defendant DT cured that breach on October 13, 2022, under clause 3.5 of the GSLA, when DT dismissed the lawsuit eight days after notice from Valve.

Defendants' letters and e-mails were never a breach of the GSLA. The GSLA does not include any prohibition on communications.

GSLA  Clause 3.2:

3.2     Covenant not to Sue Licensee.   Subject to the payment provided under Section 5.1, Licensor covenants not to sue Licensee or its Affiliates for actual or alleged infringement of the Licensed Patents…

GSLA  Clause 3.5:

3.5.     Future Enforcement Activity by Licensor.  In the event that Licensor brings a claim under the Licensed Patents against any Licensee Third Party or any entity that claims that the alleged infringing conduct arises out of any communication, interaction, transaction, cooperation, or contractual obligation with or on behalf of Licensee, then upon Licensee providing written notice and sufficient written evidence to corroborate that claim, then Licensor shall within ten (10) days cause such claim to be dismissed with respect to such entity, to the extent the claim is based on conduct that is properly subject to protection from suit under Section 2.1, 2.2, 3.1 or 3.2.

The timeline is quite simple, consisting of three events, all three of which are set out in the Second Amended Complaint. Dkt. 38 at Paragraphs 19 - 23.  Event 1, the filing of the *Display Technologies LLC v. Valve Corporation*, 2-22-cv-01365 (W.D. Wash) on September 27, 2022. *See* Meyler Decl., Ex. 1.  Event 2, Valve's written notice and evidence (e-mail) of October 5, 2022 from Christopher Schenck, in-house counsel for Valve, to Mr. Samuel Meyler, local counsel for Display Technologies, LLC.  *See* Meyler Decl., Ex. 3 at ROTHSCHILD0000199-0000200.  Event 3,

DEFENDANTS' COMBINED OPPOSITION AND MOTIONS FOR PARTIAL SUMMARY JUDGMENT Case No. 2:23-cv-01016

Page **7** of 31

DNL Zito
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
Phone: (202) 466-3500

1    Dismissal of the lawsuit on October 13, 2022, thus curing any breach within eight days as allowed

2    under Clause 3.5.  *See* Meyler Decl., Ex. 1.

3          Valve had no basis to bring a breach of contract claim.  The breach, which occurred under

4    clause 3.2 was timely cured under clause 3.5.

5          There is no clause in the GSLA which prohibits communications, including communications

6    which contain errors.  Thus, all of the other alleged basis for breach are not breaches.

7          **B.        Summary Judgment Standard**

8          A movant is entitled to summary judgment upon a showing "that there is no genuine dispute

9    as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

10   56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986). "Where the record taken as a whole

11   could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for

12   trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

13         Defendants agree that there are no material facts in dispute.  It is important to note that one

14   fact, not in dispute, yet left out of Plaintiff's Motion is the fact that Defendants dismissed the lawsuit

15   and that such dismissal was within the time for cure of the breach.

16         Defendants deny the numerous mischaracterizations of the facts by Plaintiff.

17         Summary judgement, dismissing Count III, breach of contract, for lack of evidence is

18   appropriate.

19         **C.        The Court Should Grant Summary Judgment In Favor Of Defendants And
                       Dismiss Count Iii, Breach Of Contract**

20

21         There can be no liability for a breach when the breach has been cured within the time set

     forth explicitly within the contract.

22

23               **1.        Plaintiff cannot recover any damages for the 2022 Breach**

           There is no evidence that the 2022 breach damaged Valve and, even if damaged, Valve

24

25   cannot recover for the 2022 breach because it was properly and fully cured under Clause 3.5 of the

26   GSLA.  Valve's only response to the 2022 breach was a single e-mail from Valve's in-house counsel

27

DEFENDANTS' COMBINED OPPOSITION AND
MOTIONS FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:23-cv-01016

Page **8** of 31

DNL Zito
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
Phone: (202) 466-3500

1  Mr. Schenck. *See* Exhibit B.  Mr. Schenck was unable to quantify the time expended on the single

2  e-mail and did not offer any records on damages from the 2022 breach.

3        Plaintiff's assertion in its motion ("Christopher Schenck, Valve's in-house counsel, testified

4  that he devoted time and resources reviewing the GSLA and evaluating and responding to the 2022

5  DT lawsuit. Machleidt Decl., Ex. (C. Schenck Tr.) at 40:19–42:12. This constitutes actual damages,

6  and those damages are undisputed.") is not accurate. Dkt. 141 ("Plaintiff's Motion") at 6.  Mr.

7  Schenck did not testify as to specific damages, he only guessed: "I mean, again, it's hard to do in the

8  abstract. I can't remember how many pages any of those things are. My guess would be more than

9  10 hours." *See* Exhibit A (Schenk Deposition) at p. 40. A guess is not a measure of damages.

10        Even if, *arguendo*, there was an uncured 2022 breach, Valve is at most entitled to a nominal

11  amount because there are no quantifiable damages. *See MBM Fin. Corp. v. Woodlands Operating*

12  *Co., L.P.*, 292  S.W.3d 660, 664 (Tex. 2009) ("We agree nominal damages are available for breach

13  of contract, as this Court has stated at least a dozen times."); *Lubbock Mfg. Co. v. Sames*, 598

14  S.W.2d 234, 237  (Tex. 1980) (collecting cases "where mere proof of the making and breach fully

15  proved plaintiff's  cause of action for which he was entitled to recover at least nominal damages,

16  regardless of  whether actual damages were proved").

17        However, because DT cured the breach, pursuant to the terms of the GSLA, there was no

18  actual resulting breach and Valve is entitled to no damages for the filing of the 2022 lawsuit by DT.

19        **2.**      **There Was No 2023 Anticipatory Breach of The GSLA.**

20        Reading a prohibition on communication into Clause 3.1 of the GSLA is not proper.  Clause

21  3.1 states in relevant part: "No royalties or payments of any kind shall be required in order to

22  maintain this Agreement in force."  Nothing in this language prohibits either party from

23  communicating or seeking additional monies from either party.  Meyler's June 2023 letter was not a

24  repudiation of the GSLA nor a requirement from Valve to maintain the GSLA in force, as asserted

25  by Valve.  In fact, no mention or assertion under the GSLA was made by Meyler nor any other

26  Defendant.

27

DEFENDANTS' COMBINED OPPOSITION AND
MOTIONS FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:23-cv-01016

Page **9** of 31

DNL Zito
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
Phone: (202) 466-3500

The June 2023 letter was not an anticipatory breach of the GSLA by any of the Defendants. The June 2023 letter sent to Valve's in-house counsel on behalf of Social Positioning Input Systems, LLC ("SPIS"), Quantum Technology Innovations, LLC ("QTI") and Rothschild Broadcast Distribution Systems, LLC ("RBDS") does not meet any of the factors necessary for repudiation under Texas law and Valve offers no evidence of repudiation. As recited in Plaintiff's brief:

> "To prevail on a claim for anticipatory breach of contract, a plaintiff must establish each of the following elements: (1) an absolute repudiation of the obligation; (2) a lack of a just excuse for the repudiation; and (3) damage to the non-repudiating party." *Good Shepherd Hosp., Inc. v. Select Specialty Hosp. - Longview, Inc.*, 563 S.W.3d 923, 929 (Tex. App. 2018) (citation modified); *see also Taylor Pub. Co. v. Sys. Mktg. Inc.*, 686 S.W.2d 213, 218 (Tex. App. 1984), *writ refused NRE* (May 8, 1985) (finding "incorrect interpretation" of the contract was not just excuse); *compare with Anadarko Petroleum Corp. v. Noble Drilling (U.S.) LLC.*, No. CV H-102185, 2012 WL 13040279, at *24 (S.D. Tex. May 3, 2012) (finding fact dispute regarding "force majeure condition" created a fact dispute regarding just excuse).

### a)    Repudiation.

Section 3.1 of the GSLA granted Valve an "irrevocable, royalty-free, fully paid-up, license." The Defendants did not cancel that license nor seek any additional royalties under that license.

Defendants did not repudiate their obligation not to sue Valve for infringement of the Licensed Patents. The June 2023 letter unintentionally mis-asserted a previously licensed patent. A mistake cannot be a knowing repudiation.

Even if, *arguendo*, the June 2023 letter could be considered a demand for payment, it was not a demand for additional payment from Valve under the GSLA. Two of the three patents mapped in the claim charts provided with the June 2023 letter were not covered by the GSLA. No mention was made of the GSLA, and in fact, when the GSLA was previously raised by Valve, Defendant DT dismissed the 2022 Complaint within eight days, having realized their error. A careless error – including a claim chart – is not a repudiation of a contractual obligation nor anticipatory breach of an agreement. The inclusion of the '221 Patent was an error not a decision. *See* Meyler Decl. at 5:3-6 ("I did not realize that the '221 Patent was one of the patents listed in the GSLA. I knew that PAM had systems and procedures in place to track licenses and to verify

DEFENDANTS' COMBINED OPPOSITION AND
MOTIONS FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:23-cv-01016

Page **10** of 31

DNL Zito
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
Phone: (202) 466-3500

1    whether an alleged infringing party had a license to a patent prior to referring the matter to outside

2    counsel, and I relied upon PAM to do so"); Rothschl Decl. at 4:18 - 5:3 ("A PAM employee

3    inadvertently failed to discover Plaintiff's license to the '221 Patent prior to sending the claim

4    charts to the Meyler Defendants.  The claim chart for the '221 Patent was sent to the Meyler

5    Defendants in error.")

6        There was no intent to request further license fees for already licensed patents, only those

7    "which were not subject to the agreement", *See* Exhibit A ("Rothschild Deposition") at 198:21-24.

8        *I authorized them to contact – both Mr. Meyler* and Mr. Falcucci to contact Valve to
     *see if they were interested in having licenses for which the -- which were not subject*
9        *to the agreement.*

10                **b)    Just Excuse**

11        Defendants provided explanations for the error made in including the '221 patent in the

12    notice communications to Valve, including the June 2023 Letter.  *See* Meyler Decl. at 5:3-6;

13    Rothschl Decl. at 4:18 - 5:3.

14        As set forth in testimony and evidence, and as acknowledged by Plaintiff in its Motion for

15    Summary Judgement, Defendants made a "clerical error." Beginning at the first hearing in this

16    matter, Defendants' prior counsel explained:

17        What you have here is an unfortunate situation of a couple of *clerical errors*, the first
     due to an attorney who was very ill and passing at the time, and the second to a new
18        attorney to the whole field.  ...

19        I don't deny that it was an *error* on the part of the Rothschild defendants to even
     include [the '221 patent] in the letter.
20

21    *See* Exhibit C ("Hearing Transcript") at 4:8-11; 5:4-5.

22                **c)    Not Only Did Valve Fail To Mitigate, Valve Rushed To File Suit
                And Thus Caused Its Own Damages.**

23        Because Valve has not moved for specific damages but has properly left the determination

24    of damages to the jury, a specific calculation of the failure to mitigate is not presented herein.

25    However, Valve's filing of this action was unnecessary and has resulted in the expenditure of

26    unnecessary resources, including attorneys' fees and costs by both parties.  Defendant's June 2023

27

DEFENDANTS' COMBINED OPPOSITION AND
MOTIONS FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:23-cv-01016

Page **11** of 31

DNL Zito
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
Phone: (202) 466-3500

1  letter sought a discussion. Valve agreed to have a discussion after July 17. Valve did not wait for a

2  July 17 discussion but instead filed this action on July 7th.

3      Defendants' failure-to mitigate defense does not focus solely on attorney fees but also

4  includes non-fee damages needlessly incurred by all parties due to Valve's choice not to engage in

5  pre-suit discussions.  The June 2023 Letter sought discussion and stated a June 30 date for filing of

6  a patent suit. Valve, in its response, stated a desire to avoid litigation and agreed to talk the week of

7  July 17.  *See* Meyler Dec., Ex. 8.  Valve's response omitted any mention of a license for the '221

8  Patent, which alone would have resolved any claim or dispute with respect to the '221 Patent. *See*

9  Meyler Decl. at 6:1-2, Ex. 8.  Despite a planned discussion and knowledge that Defendants had

10 indeed withheld filing of a patent suit by the deadline stated, Valve, without any pre-suit discussion,

11 chose to file this action on July 7, 2023.

12      Additionally, Valve's request to discuss Defendants' claims acted as an intentional and

13 voluntary temporary waiver of Valve's claims in this action. In addition, Valve's actions were an

14 admission, statement, or act inconsistent with the claim later asserted.

15      **D.    Conclusion**

16      The 2022 breach – DT's filing of a lawsuit against Valve – was timely cured.  The June

17 2023 letter was not a breach of any clause of the GSLA and was not a repudiation of any part of the

18 GSLA.  A clerical error, i.e. not logging the GSLA as applying to the '221 Patent, is neither a

19 repudiation nor a breach, it is simply that, an error.

20 **II.    CROSS MOTION FOR SUMMARY JUDGMENT DISMISSING COUNT III,
         BREACH OF CONTRACT**

21

22      Defendants incorporate the section above, and, for the reasons stated therein, move for

   summary determination dismissing Plaintiff's Breach of Contract claim, Count III.

23

24 **III.    MOTION FOR SUMMARY JUDGEMENT DISMISSING COUNT IV, VIOLATION
          OF THE WASHINGTON BAD FAITH ASSERTIONS OF PATENT
          INFRINGEMENT ACT**

25

26      The Washington Patent Troll Prevention Act (PTPA) Chapter 19.350 of the Revised Code of

27 Washington is a well-crafted statute that addresses very specific behavior and specifically excludes

DEFENDANTS' COMBINED OPPOSITION AND
MOTIONS FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:23-cv-01016

Page **12** of 31

DNL Zito
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
Phone: (202) 466-3500

1  activities that fall under Federal Patent Statutes to avoid the constitutionality problems which can be

2  associated with State laws that overlap Federal subject matter jurisdiction.

3      State statutes cannot conflict with or overlap Federal statutes which exclusively address

4  Federal Rights, see the  Supremacy Clause of the United States Constitution for the foundational

5  principle that, in general, federal law takes precedence over any conflicting state law. Established

6  under Article VI, Paragraph 2 of the U.S. Constitution.

7      Patent law is exclusively governed by Federal Law in 35 USC sec. 1 et seq.  Patent litigation

8  includes both patent infringement suits brought under 35 USC 271 and declaratory judgment suits

9  brought under 28 USC 2201.

10     The PTPA purposely excludes from its purview any patent litigation activities:

11     (d) Otherwise making claims or allegations, ***other than those made in litigation***
       against a target, that a target has engaged in patent infringement or that a target should
12     obtain a license to a patent in order to avoid litigation.

13  RCW 19.350.010(d) (Emphasis added.)

14     The PTPA also prohibits any activities that could give rise to a declaratory judgement action

15  from being acts of patent trolling:

16     RCW 19.350.020 Bad faith assertions prohibited—Evidence of bad faith—Evidence
       of good faith—Exemptions.  . . .

17
18     (3) Nothing in the demand letter or patent assertion may be used to move for
       declaratory judgment in underlying patent infringement litigation.

19  RCW 19.350.020(3).

20     Because Plaintiff has used the June 2023 demand letter as its basis for its declaratory

21  judgement action (Counts I and II of this matter), the demand letter cannot also be the basis for

22  Count IV, Violations of the PTPA.

23     Knowing that Federal statues have supremacy over state laws, the PTPA carved out two

24  exceptions to preserve the constitutionality of the PTPA.   The first, excluding claims or allegations

25  made in patent litigation (which must be brought in Federal Court) from being acts cognizable

26  under the PTPA. The second, providing that an activity which gives rise to a declaratory judgment

27

DEFENDANTS' COMBINED OPPOSITION AND
MOTIONS FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:23-cv-01016

Page **13** of 31

DNL Zito
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
Phone: (202) 466-3500

action (such as Count I and II of this action) cannot also be the basis of enforcement of the PTPA. Plaintiff herein chose to proceed in a declaratory judgement action and is thus precluded from proceeding under the PTPA. There is no dispute that the accused activity, letters and e-mails, forms the basis for a declaratory judgement action which has been asserted by Plaintiff Valve.

In the alternative, the Declaratory Judgment Counts I and II are void ab initio as violative of the PTPA. Plaintiff cannot maintain both a declaratory judgement count and a PTPA count on the same activities of Defendants.

## IV.    MOTION TO DISMISS THE MEYLER DEFENDANTS BASED ON LITIGATION PRIVILEGE

### A.    Introduction

With respect to Defendants Samuel M. Meyler and Meyler Legal, PLLC (the "Meyler Defendants"), this lawsuit is about a single, FRE 408 settlement letter (the "June 2023 Letter") that was sent on behalf of patent-owners by their local counsel. The June 2023 Letter addressed three different patents, only one of which is the subject of this lawsuit, and was sent *to Plaintiff's attorney* – not a layperson – and enclosed three "preliminary claim charts … prepared in anticipation of litigation." The June 2023 Letter offered to delay filing the patent-owners' complaints while the parties discussed resolution.

Unbeknownst to the Meyler Defendants, one of the three patents mapped in the claim charts – U.S. Patent No. 8,856,221 ("the '221 Patent") – was one of the 35 patents identified in a Global Settlement and License Agreement (the "GSLA") that Plaintiff had negotiated in 2016 with Defendant Leigh Rothschild. The claim chart for the '221 Patent was included in error – not bad faith. In response to the June 2023 Letter, Valve commenced this lawsuit against not only the patent-owner, but also the owner's local counsel – a tactic that Valve repeatedly uses to intimidate and deter its adversaries' attorneys. See *Valve Corp. v. Bucher Law PLLC*, 34 Wn. App. 2d 727, 571 P.3d 312 (2025) (Remanding and ordering dismissal of Valve's tortious interference and abuse of process claims against its adversaries' attorneys).

DEFENDANTS' COMBINED OPPOSITION AND
MOTIONS FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:23-cv-01016

Page **14** of 31

DNL Zito
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
Phone: (202) 466-3500

1    Plaintiff's only remaining claim against the Meyler Defendants, Count IV of Plaintiff's

2    Second Amended Complaint ("SAC," Dkt. 38), allegedly arises under Washington's Consumer

3    Protection Act, which Valve has coupled with a predicate claim under the Patent Troll Prevention

4    Act. As set forth in Defendants' Motion for Partial Summary Judgment Dismissing Count IV of the

5    Second Amended Complaint for Lack of Standing (the "Standing MSJ") (Dkt. 111), Plaintiff lacks

6    standing to pursue claims directly under the Patent Troll Prevent Act. And, Plaintiff's claim against

7    the Meyler Defendants also fails for at least three additional reasons: (1) Washington's litigation

8    privilege immunizes attorney communication that is "pertinent or material to the redress or relief

9    sought, whether or not the statements are legally sufficient to obtain that relief," (2) the *Noerr-*

10   *Pennington* doctrine protects pre-suit petitioning such as the demand and settlement correspondence

11   at issue here; and (3) Valve cannot satisfy the elements of the Washington State Consumer

12   Protection Act or the Patent Troll Act.

13   Because the litigation privilege and *Noerr-Pennington* doctrine foreclose liability for the

14   conduct alleged here, and because Valve cannot prove the elements of its CPA claim on this record,

15   summary judgment should be entered dismissing the Meyler Defendants.

16   **B.    Statement Of Facts**

17       **1.    The Rothschild Defendants.**

18   Leigh Rothschild is the sole inventor of more than 130-issued patents. Rothschild Decl. at

19   2:9-10. His first patent for quadrophonic music was conceived when he was 17 years of age and

20   granted shortly thereafter. Rothschild Decl., Ex. 1.

21   Mr. Rothschild is a former presidential appointee to the High-Resolution Board under

22   former President George H. W. Bush. *Id.* He has served governors on technology boards and served

23   as a special advisor to then-Florida Secretary of Commerce Jeb Bush. Mr. Rothschild also served on

24   the IT Florida Technology Board as an appointee of former Governor Jeb Bush. *Id.*

25   The Rothschild Defendants would under no circumstances intentionally accuse a licensee –

26   such as Plaintiff – of infringing a patent that they already had a license for. What occurred in the

27

DEFENDANTS' COMBINED OPPOSITION AND
MOTIONS FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:23-cv-01016

Page **15** of 31

DNL Zito
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
Phone: (202) 466-3500

case of Plaintiff was an administrative error. Prior to contacting an alleged infringer, whether directly by a PAM employee or through outside counsel, the license database maintained by PAM is reviewed in an effort to verify that an alleged infringer does not have a license to the patent at issue.

In the case of the three claim charts attached to the June 2023 Letter, a PAM employee made a mistake and failed to discover that one of the three patents mapped in the claim charts was included in a group of 35 patents covered by the GSLA. *See* Meyler Decl. at 5:3-6; Rothschl Decl. at 4:18 - 5:3.

### 2. The 2016 Global Settlement and License Agreement and History with Plaintiff.

In 2016, following extensive negotiations in an ongoing patent litigation in Texas, a settlement was reached between Rothschild, DT and Valve in which Plaintiff obtained licenses for 35 specific patents in exchange for payment and dismissal of the 2015 Texas lawsuit.

The GSLA documented the terms negotiated, which included a license to 35 specific patents – 20 patents owned or under the control of DT, Rothschild or an affiliate at that time, and 15 other patents contingent upon DT, Rothschild or an affiliated entity gaining ownership or control or those patents in the future.  Dkt. 38-1 at Exs. C and D.  Plaintiff was aware that the patents in the Rothschild Defendants' portfolios may change in the future, but declined the option for an omnibus license covering *all* present and future patents in the Rothschild Defendants' portfolios.

As was anticipated by the express terms of the GSLA, the portfolios of patents owned or being managed by the Rothschild Defendants evolved over the years; new patents were issued to and/or acquired by the Rothschild Defendants.  Some of those patents were not covered by the GSLA and it became apparent to the Rothschild Defendants that Plaintiff was infringing on certain of the non-covered patents.  PAM's Chief Operating Officer attempted to contact Plaintiff several times through Plaintiff's in-house counsel, but those communications were completely ignored by Plaintiff.

DEFENDANTS' COMBINED OPPOSITION AND
MOTIONS FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:23-cv-01016

Page **16** of 31

DNL Zito
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
Phone: (202) 466-3500

### 3. The 2022 infringement lawsuits and engagement of the Meyler Defendants.

After Plaintiff ignored PAM's attempts to communicate and after consultation with third-party experts and lead litigation counsel, DT, as the owner of U.S. Patent No. 9,300,723 ("the '723 Patent"), and Social Positioning Input Systems, Inc. ("SPIS"), as the owner of U.S. Patent No. 9,261,365 ("the '365 Patent"), proceeded with filing complaints for patent infringement claims against Plaintiff.  At the time, Jay Johnson and his law firm Kizza Johnson, PLLC served as lead litigation counsel to the Rothschild Defendants.  Meyler Decl. at 3:1-3.

PAM's Chief Operating Officer had a prior relationship with Meyler, reached out to Meyler, and engaged the Meyler Defendants to serve as local counsel under the direction of PAM's lead litigation counsel, Mr. Johnson. *Id.* at 2:7-15. The Meyler Defendants have never held themselves out as being patent litigators or providing patent-related services.  *Id.* at 2:3-6.

Prior to commencing any work for any of the Rothschild Defendants, Meyler conducted research and due diligence regarding his clients, Plaintiff Valve, and the allegations asserted in the complaints. *Id.* at 2:16-17. On September 27, 2022, complaints prepared by lead litigation counsel were filed by the Meyler Defendants as local counsel on behalf of DT alleging infringement of the '723 Patent, and on behalf of SPIS alleging infringement of the '365 Patent. *Id.* at 3:4-7.  Before the complaints could be served on Plaintiff, Plaintiff's in-house counsel, Christopher Schenck, emailed Meyler regarding the lawsuits DT and SPIS lawsuits.  Meyler directed Schenck to communicate with lead counsel regarding the matters. *Id.* at 3:16-21.

The DT case would be dismissed eight days later at the direction of Johnson, but the SPIS case for infringement of the '365 Patent remained open. *Id.* at 4:3-6. Shortly thereafter, issues started to arise with respect to Johnson's responsiveness, and it got progressively worse over time. In or around January 2023, the Meyler Defendants and Rothschild Defendants would come to learn that Johnson was terminally ill with late-stage cancer.  *Id.* at 4:7-9.

A decision was made to voluntarily dismiss the SPIS lawsuit while they sought new lead counsel.  SPIS filed a Notice of Voluntary Dismissal on February 3, 2023. Meyler emailed

DEFENDANTS' COMBINED OPPOSITION AND
MOTIONS FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:23-cv-01016

Page **17** of 31

DNL Zito
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
Phone: (202) 466-3500

1  Plaintiff's lead litigation counsel, Dario Machleidt, advising SPIS had dismissed due to Johnson

2  being terminally ill. *Id.* at 4:12-15.

3  ### 4.    The '221 Patent Claim Chart and June 2023 Letter.

4        On or around March 1, 2023, the Rothschild Defendants engaged attorneys at the firm

5  Garteiser Honea as their new lead litigation counsel.  The Rothschild Defendants began

6  transitioning legal matters from Kizzia Johnson to Garteiser Honea.  *Id.* at 4:16-17.

7        In April 2023, the Meyler Defendants were provided with three claim charts in anticipation

8  of litigation.  One of those was the claim chart for the '365 Patent that had previously been filed in

9  the 2022 SPIS lawsuit that had been dismissed.  The other two claim charts were for U.S. Patent

10  No. 7,650,376 ("the '376 Patent") owned by Quantum Technology Innovations, LLC ("QTI") and

11  U.S. Patent No. 8,856,221 ("the '221 Patent") owned by RBDS.  *Id.* at 4:18-22.

12        The '221 Patent, which was now owned by RBDS, was one of the 35 patents listed in the

13  exhibits to the GSLA.  PAM's employee failed to discover Plaintiff's license to the '221 Patent in

14  PAM's files prior to sending the claim charts to outside counsel.

15        The Meyler Defendants conducted due diligence and research upon receiving the claim

16  charts. The Meyler Defendants were not involved in the preparation of the claim charts, did not

17  make any modifications to the claim charts, and were not involved in the decision to assert

18  infringement claims against Plaintiff.  *Id.* at 5:1-2.

19        The Meyler Defendants did not realize that the '221 Patent, which was owned by RBDS,

20  was one of the 35 patents listed in the GSLA.  RBDS was not a party to the GSLA.  Meyler relied

21  upon PAM's systems and procedures to track licenses and to verify whether an alleged infringing

22  party had a license to a patent prior to referring the matter to outside counsel. *Id.* at 5:3-6.

23        Meyler reached out to Machleidt by email and subsequently sent a FRE 408 letter to

24  Machleidt with the three "preliminary claim charts" attached that were "prepared in anticipation of

25  litigation."  Machleidt responded and advised Meyler that, "We do not currently represent Valve in

26  this matter, and I have not shared your letter with Valve." *Id.* at 5:7-14.  Accordingly, Meyler sent

27

DEFENDANTS' COMBINED OPPOSITION AND
MOTIONS FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:23-cv-01016

Page **18** of 31

DNL Zito
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
Phone: (202) 466-3500

1  the FRE 408 June 2023 Letter, addressed to Valve's in-house counsel, Mr. Schenck, enclosing three

2  "preliminary claim charts … prepared in anticipation of litigation," and offering to delay filing the

3  patent-owners' complaints while the parties discussed resolution. *Id*. at 5:15-19.

4       On June 29, 2023, Valve's in-house counsel responded to the June 21-letter.  Valve's in-

5  house counsel advised that, "Valve always prefer[s] to avoid litigation when [it] can," that he was

6  "headed out of town for the next two weeks" to visit family on the East coast, and asked to "set up a

7  time to chat the week of July 17."  *Id*. at 5:20-23.  Meyler extended Valve's in-house counsel a

8  professional courtesy and chose not to disturb Mr. Schenck during his family vacation.  *Id*. at 6:3-6.

9  Eight days later – in the middle of the two week vacation period – Valve filed the present action. *Id.*

10      Valve's claim against the Meyler Defendants boils down to the Meyler Defendants sending

11  the June 2023 FRE 408 settlement letter.  (Dkt. No. 38 at Pg. 14, ¶ 81)  While Valve alleges that

12  "all Defendants" made a pre-suit assertion of patent infringement by sending demands via PAM's

13  Chief Operating Officer in March 2022 on behalf of DT (Dkt. No. 38 at Pg. 14, ¶ 79), the Meyler

14  Defendants had not been retained as local counsel in March 2022 and had no knowledge of the

15  March 2022 demands.

16      **C.    Argument**

17      **1.    The litigation privilege bars Valve's claims against the Meyler
        Defendants because the June 2023 FRE 408 letter was pertinent or material to
18      the redress or relief sought on behalf of their clients.**

19      At the pleading stage of this lawsuit, the Court denied the Meyler Defendants' motion to

20  dismiss based on litigation privilege.  (Dkt. #56.)  The Court relied on *Mason*, and held that:

21  "Accepting the facts alleged in the SAC, the Court finds that the June 2023 demand letter sent by

22  the Meyler Defendants was an extrajudicial, bad-faith assertion of patent infringement unrelated to

23  any actual litigation and therefore unprotected by litigation privilege and actionable under the

24  PTPA."

25

26

27

DEFENDANTS' COMBINED OPPOSITION AND
MOTIONS FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:23-cv-01016

Page **19** of 31

DNL Zito
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
Phone: (202) 466-3500

1    Since that time, Division I of the Washington State Court of Appeals issued its ruling

2    against Valve in *Bucher Law*, distinguishing *Mason* and ruling that an attorney's extrajudicial pre-

3    suit correspondence and his activity in arbitration was protected by the litigation privilege.

4    "[A]ttorneys and law firms have absolute immunity from liability for acts arising out
      of representing their clients." *Valve Corp. v. Bucher Law PLLC*, 34 Wn. App. 2d 727,

5    741, 571 P.3d 312 (2025) (citing *Jeckle v. Crotty*, 120 Wash. App. 374, 386, 85 P.3d
      931 (2004)). "Attorney conduct is 'absolutely privileged' when it is **pertinent or**

6    **material to the redress or relief sought, whether or not the statements are legally**
      **sufficient to obtain that relief.**'" *Id.* (citing *McNeal v. Allen*, 95 Wash.2d 265, 267,

7    621 P.2d 1285 (1980)) (Emphasis added).

8
      "[T]he litigation privilege 'protects participants from **retaliatory, derivative**

9    **lawsuits—regardless of the merit of those suits**—instead relying on checks by the
      trial court such as sanctions to address false testimony…The privilege 'recogniz[es]

10   that our legal system depends on reducing the threat that every statement or argument
      may lead to further litigation.'" *Id.* at 741–742 (citing *Young v. Rayan*, 27 Wash. App.

11   2d 500, 503, 533 P.3d 123, 128 (2023)).

12   Just as in the matter before the Court now, "the Bucher Defendants initiated the dispute

13   resolution process by **sending a letter on behalf of their clients** relating to Valve's alleged

14   anticompetitive practices and **proposing settlement terms pursuant to the informal dispute**

15   **resolution process.**" *Bucher, 34 Wn. App. 2d* at 732.  (Emphasis added.)  In response, Valve filed

16   tortious interference and abuse of process claims against its adversaries' attorneys.  The *Bucher*

17   Defendants filed a dispositive motion seeking dismissal under Washington's Anti-SLAPP statute,

18   the Uniform Public Expression Protection Act, Chapter 4.105 RCW ("UPEPA"), CR 12, and CR

19   56.  *Id*. at 733.

20   In opposition to the Bucher Defendants' motion, "Valve claim[ed], and the trial court

21   agreed, the litigation privilege does not apply here because its scope is 'limited to situations where

22   some power to discipline remains available.' " *Bucher*, 34 Wn. App. 2d at 743.  "The trial court

23   denied the Bucher Defendants' motion, holding (a) Valve has alleged sufficient facts to establish

24   plausible claims for tortious interference and abuse of process, (b) the Bucher Defendants had failed

25   to establish the litigation privilege precluded Valve's claims, and (c) "a statutory exception to

26

27

DEFENDANTS' COMBINED OPPOSITION AND
MOTIONS FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:23-cv-01016

Page **20** of 31

DNL Zito
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
Phone: (202) 466-3500

1    UPEPA" applied to the Bucher Defendants' actions." *Valve Corp. v. Bucher Law PLLC*, 34 Wn.

2    App. 2d 727, 733, 571 P.3d 312, 317 (2025).

3         Division I reversed and remanded for entry of an order dismissing Valve's claims against the

4    Bucher Defendants with prejudice. *Id*. at 744. On the merits of the Bucher Defendants' litigation

5    privilege arguments, the Court of Appeals held that:

> "Attorney conduct is 'absolutely privileged' when it is 'pertinent or material to the
> redress or relief sought, whether or not the statements are legally sufficient to obtain
> that relief.'" *Id*. at 741 (Citing *McNeal*, 95 Wash.2d at 267. ""[P]otential harms of a
> broad application of litigation privilege ... are blunted by forms of accountability **such
> as sanctions and 'professional disciplinary proceedings**, which may occur based on
> ... behavior during litigation and which are therefore an additional avenue to confront
> harm caused by privileged statements.'" *Bucher*, 34 Wn. App. 2d at 742 (citing *Young*,
> 27 Wash. App. 2d at 510). The Court of Appeals in *Bucher* made it unequivocally
> clear to Valve that "**professional responsibility disciplinary avenues are available
> to Valve to address its concerns**." *Id*. at 742. (Emphasis added.) The availability of
> professional disciplinary avenues and Rule 11 sanctions are, "sufficient to show the
> 'availab[ility]' of 'some' power to discipline, **even though it is not the remedy Valve
> prefers**." *Id*. (citing *Deatherage v. Examining Bd. of Psychology*, 134 Wash. 2d 131,
> 136 (1997)) (Emphasis added.)

13         The Court in *Bucher Law* distinguished *Mason*. In *Mason*, the Plaintiff sued her ex-

14   husband's attorney, alleging that he had "pursued a parenting plan modification for a client to

15   intentionally place the other parent's immigration status at risk." *Bucher Law PLLC*, 34 Wn. App.

16   2d at 743 (citing *Mason v. Mason*, 19 Wn. App. 2d 803, 835 (2021)). Division II held that, "if

17   Tatyana's allegation as to Robertson's purpose in engaging in the family law proceedings is proved,

18   that purpose would be unrelated to the legitimate goals of the legal proceedings, and Robertson is

19   not entitled to litigation privilege." *Mason*, 19 Wn. App. 2d at 840. That narrow exception to the

20   litigation privilege –using a legal proceeding for an improper purpose unrelated to the legitimate

21   goals of the legal proceeding – does not apply to the circumstances here.

22         Here, as was the case in *Buchar Law*, the June 2023 FRE 408 settlement letter was sent by

23   the Meyler Defendants for purposes of settling their clients' imminent legal claims. By its very

24   nature, the pursuit of pre-litigation settlement is inherently intrinsic to a client's claims. Even if that

25   were not the case, the steps taken and actual lawsuits filed prove as much.

26

27

DEFENDANTS' COMBINED OPPOSITION AND
MOTIONS FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:23-cv-01016

Page **21** of 31

DNL Zito
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
Phone: (202) 466-3500

1    The Rothschild Defendants had engaged new lead litigation counsel who were prepared to

2  proceed.  In anticipation of filing their complaints, claim charts were prepared by third-party

3  experts.  Meyler understood that the clients had completed their typical due diligence and vetting

4  procedure in anticipation of litigation, including confirming whether the infringing company had a

5  license to the patents at issue.

6    The June 2023 Letter was prominently marked "FRE 408." Meyler Decl. at 5:15-19.  The

7  letter encloses "preliminary claim charts… prepared in anticipation of litigation," states that the

8  "clients are willing to delay the filing of their complaints," and that if counsel or Valve did not

9  respond, the "clients will assume that Valve would prefer to litigate."  *Id*.

10    The claim chart for the '365 Patent was related to actual litigation at the time that the June

11  2023 Letter was sent – the 2022 SPIS lawsuit that had been dismissed due to Johnson's terminal

12  illness.  QTI and SPIS would ultimately file their complaints against Valve for infringement of the

13  '376 patent and '365 patent, *viz. Quantum Technology Innovations, LLC v. Valve Corporation, et*

14  *al.,* Case No. 2:23-cv-00425 (ED Tex.) and *Social Positioning Input Systems, LLC v. Valve*

15  *Corporation, et al.,* Case No. 2:23-cv-00422 (ED Tex.).

16    All three patents were duly issued by the USPTO and the patent-owners had every right to

17  enforce the patents.  PAM's error in providing the Meyler Defendants with a claim chart for the

18  '221 Patent does not negate the validity and enforceability of the '221 Patent, nor does it diminish

19  the owner's rights with respect to the '221 Patent.

20    Across jurisdictions, courts extend the litigation privilege (called the "judicial privilege" in

21  many jurisdictions) to pre-suit attorney communications that are pertinent or material to seriously

22  contemplated litigation.

23  - Massachusetts — *Sriberg v. Raymond*, 370 Mass. 105, 109, 345 N.E.2d 882, 884
24    (1976) (statements in attorney demand letter are privileged when litigation is
    "contemplated in good faith and under serious consideration.")

25  - New York — *Front, Inc. v. Khalil*, 24 N.Y.3d 713, 720, 28 N.E.3d 15, 19, 4 N.Y.S.3d
26    581, 585 (2015) (privilege covers pre-suit letters "pertinent to a good faith anticipated
    litigation.")

27

DEFENDANTS' COMBINED OPPOSITION AND
MOTIONS FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:23-cv-01016

Page **22** of 31

DNL Zito
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
Phone: (202) 466-3500

- California — *Blanchard v. DIRECTV, Inc.*, 123 Cal. App. 4th 903, 919–922, 20 Cal. Rptr. 3d 385 (2004) (litigation privilege "has been broadly applied to demand letters and other prelitigation communications by attorneys.")

- Arizona — *Hall v. Smith*, 214 Ariz. 309, 152 P.3d 1192, 1196–99 (Ct. App. 2007) (judicial privilege applied to letter to parent-company CEO)

- New Jersey — *Ruberton v. Gabage*, 280 N.J. Super. 125, 654 A.2d 1002 (N.J. Super. Ct. App. Div. 1995) (Statements by attorneys in out-of-court settlement negotiations that pertain to litigation are absolutely privileged.)

- Illinois — *Atkinson v. Affronti*, 369 Ill. App. 3d 828, 836, 861 N.E.2d 251, 258 (Ill. App. Ct. 2006) (Privilege applies to "written communications from an attorney to a potential litigant to the extent that the communication pertains to proposed litigation or other proceedings")

Valve's allegations against the Meyler Defendants arise out of the representation of their clients and communication(s) on behalf of their clients in anticipation of judicial proceedings. Regardless of whether the clients would ultimately prevail on their claims, the Meyler Defendants had a good faith intent to pursue litigation, the letters were sent into contemplation thereof, and Valve can prove no other extrinsic or nefarious purpose on the part of the Meyler Defendants.

The transmittal of a letter to a defendant that is subject to FRE 408 with claim charts attached "in anticipation of litigation" falls squarely within the scope and purpose of the litigation privilege and Valve's claims against the Meyler Defendants are precisely the type of retaliatory derivative action that the litigation privilege is intended to prevent.

## V.    MOTION TO DISMISS THE MEYLER DEFENDANTS UNDER NOERR-PENINGTON

### A.    Valve's Claim Against The Meyler Defendants Fails Because The Act OF Sending The Prelitigation Letter Is Subject To Immunity Under *Noerr-Pennington*.

Prelitigation communications proposing settlement of legal claims are protected under the *Noerr-Pennington* doctrine and the Meyler Defendants are thus immunized from liability.  *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 942 (9th Cir. 2006).  The *Noerr-Pennington* doctrine bars a plaintiff's state law claims based on a defendant's bona fide efforts to seek redress from the judiciary.  *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1251 (9th Cir. 1982).  The *Noerr-Pennington* doctrine "provides that litigation activity (including pre-

DEFENDANTS' COMBINED OPPOSITION AND MOTIONS FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:23-cv-01016

Page **23** of 31

DNL Zito
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
Phone: (202) 466-3500

1    litigation cease-and-desist letters) cannot form the basis of liability unless the litigation is a 'sham.'"

2    *Rock River Commc'n., Inc. v. Universal Music Group, Inc.*, 745 F.3d 343, 347 n.1 (9th Cir. 2014).

3    "[T]o be a 'sham,' litigation must meet a two-part definition.  First, the lawsuit must be objectively

4    baseless in the sense that no reasonable litigant could realistically expect success on the merits.

5    Only if challenged litigation is objectively meritless may a court examine the litigant's subjective

6    motivation."  *Prof'l Real Estate Inv'rs, Inc. ("PREI") v. Columbia Pictures Indus., Inc.*, 508 U.S.

7    49, 50, 113 S. Ct. 1920, 1922, 123 L. Ed. 2d 611 (1993).  As long as there is an "objectively

8    reasonable effort to litigate," a lawsuit "cannot be a sham regardless of subjective intent." *Id.* at 57.

9        **B.    Valve Cannot Establish Objective Baselessness.**

10        Under the first part of the test, "the lawsuit must be objectively baseless in the sense that no

11   reasonable litigant could realistically expect success on the merits."  *Id.*  This objective component

12   considers whether a reasonable litigant had probable cause to bring the lawsuit on which the

13   plaintiff's state law claim is based.  *Id.* at 62.  If a litigant could conclude that the lawsuit as a whole

14   "is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*[-

15   *Pennington*] and a [plaintiff's claim] premised on the sham exception must fail." *Id.*  **"[A]n**

16   **allegation that a single claim is objectively baseless does not bring . . . [the] filing of the entire**

17   **complaint within the sham exception."** *Meridian Project Sys., Inc. v. Hardin Const. Co., LLC*,

18   404 F. Supp. 2d 1214, 1222 (E.D. Cal. 2005) (citation omitted); *PREI*, 508 U.S. at 60 (stating that

19   the "*lawsuit* must be objectively baseless") (emphasis added).

20        Here, all three patents that were mapped in the claim charts attached to the June 2023 Letter

21   were duly issued by the USPTO and the patent-owners had every right to enforce two of the patents

22   against Valve.  SPIS had already filed its lawsuit against Valve in 2022 and sought to recommence

23   that action after securing replacement lead counsel.  The patent-owners had pursued litigation on the

24   claims in the past and intended to do so based on the presented claims of infringement.

25        Objectively, there is no question that the patent-owners intended to pursue the claims.  The

26   fact that Valve licensed the '221 Patent is indicia of Valve's use and exploitation of the technology

27

DEFENDANTS' COMBINED OPPOSITION AND
MOTIONS FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:23-cv-01016

Page **24** of 31

DNL Zito
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
Phone: (202) 466-3500

1    and Valve's licensing of patents from DT and Rothschild to settle previous litigation leant

2    credibility to the legitimacy of the claims and the intent of the Defendants to pursue those claims.

3    Moreover, Valve does not claim that it had a license to the other two patents and QTI and SPIS did

4    ultimately file their complaints against Valve for infringement of the '376 patent and '365 patent.

5    The fact that Valve may have ultimately had a defense to one of the three claims does not negate the

6    reasonable belief that the patent-owners had legitimate claims against Valve and intended to pursue

7    them.  Valve cannot establish that all of the Defendants claims were objectively baseless.

8    Therefore, Valve's claims against the Meyler Defendants should be dismissed.

9          **C.    Valve Cannot Establish Subjective Baselessness.**

10          Only if a court does find that the "challenged litigation is objectively meritless" may the

11    court move on to examine the "subjective motivation."  *Id*.  Even if the Court was to deny summary

12    judgment based on objective baselessness, the Meyler Defendants' subjective motivation warrants

13    dismissal of the claims against the Meyler Defendants.

14          In addition to the factors outlined above, there is no evidence that the Meyler Defendants

15    had any other intent besides the legitimate pursuit of claims of their clients.  Any suggestion

16    otherwise stretches credulity to its breaking point.

17          The Meyler Defendants would never knowingly or intentionally make an allegation of

18    patent infringement against a party that had a license to use the patent. It is simply preposterous to

19    suggest that is what happened here. Meyler relied upon PAM's systems and procedures to track

20    licenses and to verify whether an alleged infringing party had a license to a patent prior to referring

21    the matter to outside counsel.  PAM's employee failed to discover Plaintiff's license to the '221

22    Patent prior to sending the claim charts to the Meyler Defendants.  The Rothschild Defendants had

23    engaged new lead litigation counsel and began transferring legal matters to them.  The facts that a

24    PAM employee made an error does not negate Meyler subjective belief that the Rothschild

25    Defendants had the right to enforce their duly issued patents, and that they intended to do so.

26

27

DEFENDANTS' COMBINED OPPOSITION AND
MOTIONS FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:23-cv-01016

Page **25** of 31

DNL Zito
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
Phone: (202) 466-3500

## VI.    DISMISSAL OF THE MEYLER DEFENDANTS FROM THE WASHINGTON CONSUMER PROTECTION ACT CLAIMS

### A.    Valve Cannot Establish Any Of The CPA Elements Against The Meyler Defendants.

To establish a claim under Washington's Consumer Protection Act, Valve must establish: (1) an unfair or deceptive act; (2) in trade or commerce; (3) public interest impact; (4) injury to business or property; and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784–93, 719 P.2d 531 (1986). "When, as here, the parties do not dispute that particular conduct occurred, the question whether those actions give rise to a CPA violation is reviewable as a question of law." *Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*, 110 Wn. App. 412, 438, 40 P.3d 1206, 1220 (2002). Lack of proof on any one element defeats a consumer protection action. Id. at 439 (citing *Hangman Ridge,* 105 Wn.2d at 780).

Valve's claims against the Meyler Defendants for violation of the PTPA/CPA should be dismissed because Valve is unable to satisfy at least three of the CPA elements.

### B.    Valve Cannot Establish The "Unfair/Deceptive Act" Element Against The Meyler Defendants

The Meyler Defendants sending an FRE 408 settlement letter to Valve's counsel that included a claim chart provided by the patent-owner in error is not an unfair or deceptive act or practice by the Meyler Defendants. The Meyler Defendants believed that the patent-owner had a legitimate and enforceable patent, experts had confirmed that there was *prima facie* evidence of infringement by Valve, and that the patent-owner imminently intended to commence litigation to pursue the claim. Valve clearly was not deceived or misled, and cannot claim that any other party might be deceived or misled based on the unique circumstances of this case, i.e., Valve negotiated for a unique license and the patent-owner erred in failing to identify Valve as having a license to the '221 Patent.

DEFENDANTS' COMBINED OPPOSITION AND
MOTIONS FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:23-cv-01016

Page **26** of 31

DNL Zito
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
Phone: (202) 466-3500

**C.    Valve Cannot Establish The "Trade Of Commerce" Element Against The Meyler Defendants.**

"As used in [the CPA], '[t]rade' and 'commerce' shall include the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington."  RCW 19.86.010(2).  The Washington Supreme Court has held that only "entrepreneurial aspects of the practice of law, which are principally counterclaimed by defendant, fall within the sphere of 'trade or commerce' under RCW 19.86.010(2) and 19.86.020."  *Short v. Demopolis*, 103 Wn.2d 52, 65, 691 P.2d 163, 170 (1984) (See also *Demopolis v. Peoples Nat. Bank of Washington*, 59 Wn. App. 105, 119, 796 P.2d 426, 434 (1990)).

Providing legal services "does not generally fall within the definition of 'trade or commerce,' 'except as it relates to the 'entrepreneurial aspects' of the practice of law."  *Eriks v. Denver,* 118 Wn.2d 451, 463, 824 P.2d 1207 (1992) (citing *Short,* 103 Wn.2d at 60–61.) Entrepreneurial aspects of legal practice encompass "how the price of legal services is determined, billed, and collected and the way a law firm obtains, retains, and dismisses clients." *Id.* at 464.

Relying on a Connecticut decision, Division I of the Washington Court of Appeals concluded that private CPA claims may not be raised against an opposing party's attorney:

> "Providing a private cause of action under [the Connecticut Unfair Trade Practices Act] to a supposedly aggrieved party for the actions of his or her opponent's attorney would stand the attorney-client relationship on its head and would compromise an attorney's duty of undivided loyalty to his or her client and thwart the exercise of the attorney's independent professional judgment on his or her client's behalf."

*Jeckle v. Crotty,* 120 Wn.App. 374, 384–85, 85 P.3d 931, 937 (2004) (citing *Jackson v. R.G. Whipple, Inc.,* 225 Conn. 705, 727, 627 A.2d 374 (1993)).  Pursuant to *Jeckle,* even where the alleged wrongs relate to "both the legal aspects and the business aspects of the defendants' law practice[,]" **a CPA suit against a litigation opponent's lawyer is not a cognizable claim and must be dismissed**.  *Id.* (affirming trial court dismissal of CPA claim).

Valve's claims against the Meyler Defendants arise out of the Meyler Defendants' practice of law – sending the FRE 408 June 2023 Letter.  Valve does not claim an wrongful act by the Meyler Defendants that is related to the business aspects of the Meyler Defendants' law practice.

DEFENDANTS' COMBINED OPPOSITION AND MOTIONS FOR PARTIAL SUMMARY JUDGMENT Case No. 2:23-cv-01016

Page **27** of 31

DNL Zito
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
Phone: (202) 466-3500

The Meyler Defendants have never advertised that they provide patent related services or advertised seeking clients with claims against Plaintiff Valve. As such, Valve's claims must be dismissed.

### D. Valve Cannot Establish The "Public Interest" Element Against The Meyler Defendants.

"It is the obvious purpose of the Consumer Protection Act to protect the public from acts or practices which are injurious to consumers and *not to provide an additional remedy for private wrongs which do not affect the public generally*." *Lightfoot v. MacDonald*, 86 Wn.2d 331, 333, 544 P.2d 88, 89 (1976). "It is, however, the intent of the legislature that this act shall not be construed to prohibit acts or practices which ... are not injurious to the public interest,..." *Lightfoot*, 86 Wn.2d at 333 (*Citing* RCW 19.86.920). "Ordinarily, a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest." *Hangman Ridge*, 105 Wn.2d at 790. "[T]he Act's private remedy is not available for contract disputes between individuals unless a public interest subject is involved." *Rounds v. Union Bankers Ins. Co.*, 22 Wn. App. 613, 615, 590 P.2d 1286, 1287 (1979) (Citing *Lightfoot*).

The CPA's public-interest requirement is not met by a single, attorney-to-attorney FRE 408 letter where recipient has a private license agreement that the recipient and attorney's client are parties to. Valve's entire case turns on a bespoke GSLA covenant, alleged breach of that private agreement applicable only to Valve and on non-public, pre-suit communications directed solely to Valve's in-house counsel. That is a private commercial dispute between sophisticated parties, not a practice affecting the public at large,  which is evidenced further by the scope of Valve's own Prayer for Relief – limited to protecting Valve. (SAC at p.18-19.)

Valve prays that the Court award damages *to Valve* and grant injunctive relief that is specific, unique and limited *to Valve*, *to the GSLA*, *and to the specific patents covered by the GSLA* – proving that the only interested party here is Valve. Contrast this to the relief prayed for by the Washington State Attorney General in *State of Washington v Landmark Technology A, LLC*, where the Attorney General prays that the Court (a) enjoin the defendants from taking any action to enforce the patents at issue *against anyone*, including issuing demand letters *to anyone* and/or filing

DEFENDANTS' COMBINED OPPOSITION AND
MOTIONS FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:23-cv-01016

Page **28** of 31

DNL Zito
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
Phone: (202) 466-3500

patent infringement lawsuits *against anyone*, and (b) pay restitution to *all* companies that were allegedly harmed by Landmark.  *State of Washington v Landmark Technology A, LLC, et al.,* Case No. 2:21-cv-00728 (WD Wash.)

This is a private, unique dispute arising out of Plaintiff's contract with the Rothschild Defendants.  There is no capacity to injure others because Plaintiff is the only other party to the contract.  Therefore, Plaintiff's claim against the Meyler Defendants must be dismissed.

## VII.    CONCLUSION

For at least the reasons set forth above, Defendants' Cross-Motion for Partial Summary Judgment should be granted and Plaintiff's Motion for Partial Summary Judgment should be denied, County III of Plaintiff's Second Amended Complaint, Dkt. 38, alleging Breach of Contract should be dismissed with prejudice, County IV of Plaintiff's Second Amended Complaint, Dkt. 38, alleging violation of the Washington Patent Troll Prevention Act ("PTPA") Chapter 19.350 RCW should be dismissed with prejudice, and all claims against Defendants Samuel Meyler and Meyler Legal, PLLC should be dismissed with prejudice and said parties should be dismissed from this action .

Dated: November 17, 2025                          Respectfully submitted,

By:  /s/ Joseph J. Zito
Joseph J. Zito
DNL ZITO
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
Tel: (202) 466-3500
Email: jzito@dnlzito.com

/s/ René A. Vazquez
René A. Vazquez (*pro hac vice*)
DNL ZITO
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036

 /s/ Matthew J. Cunanan
Matthew J. Cunanan (#42530)
DC LAW GROUP
12055 15th Ave NE, Suite B

DEFENDANTS' COMBINED OPPOSITION AND
MOTIONS FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:23-cv-01016

Page **29** of 31

DNL Zito
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
Phone: (202) 466-3500

1

2

3

Seattle, WA 98125
Tel: (206) 494-0400
Fax: (855) 494-0400
Email: matthew@dclglawyers.com

4

5

6

7

*Attorneys for Defendants Leigh
Rothschild, Rothschild Broadcast
Distribution Systems, LLC, Display
Technologies, LLC, Patent Asset
Management, LLC, Meyler Legal, PLLC,
and Samuel Meyler*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANTS' COMBINED OPPOSITION AND
MOTIONS FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:23-cv-01016

Page **30** of 31

DNL Zito
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
Phone: (202) 466-3500

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on November 17, 2025, the forgoing Combined Motions was filed the

3    through the CM/ECF system of This Court and that notice will be sent electronically to all counsel

4    who are registered participants identified in this matter.

5

6                                    /s/ Joseph J. Zito

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANTS' COMBINED OPPOSITION AND
MOTIONS FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:23-cv-01016

Page **31** of 31

DNL Zito
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
Phone: (202) 466-3500