# EXHIBIT A

# Deposition Transcript

Case Number: 2:23-cv-1016-JNW
Date: August 21, 2025

In the matter of:

# VALVE CORPORATION v ROTHSCHILD, et al.

# Christopher Schenck - 30(b)(6)

## Confidential

**CERTIFIED COPY**

Reported by:
Yvonne A. Gillette



Steno
Agency, Inc.

315 West 9th Street
Suite 807
Los Angeles, CA 90015
concierge@steno.com
(888) 707-8366
NV: Firm #108F

1          IN THE UNITED STATES DISTRICT COURT

2        FOR THE WESTERN DISTRICT OF WASHINGTON

3                      AT SEATTLE

4    _____

5    VALVE CORPORATION,                    )
                                           )
6    Plaintiff,                            )
                                           )
7            vs.                           )No. 2:23-cv-1016-JNW
                                           )
8    ROTHSCHILD, et al.,                   )
                                           )
9    Defendants.                           )

10   _____

11        Deposition Upon Oral Examination Of

12                 CHRISTOPHER SCHENCK

13              Rule 30(b)(6) Designee

14              *** CONFIDENTIAL ***

15   _____

16

17

18                 9 o'clock a.m.

19                August 21, 2025

20              10400 Fourth Avenue NE

21               Bellevue, Washington

22

23

24

25   REPORTED BY:  Yvonne A. Gillette, RPR, CCR No. 2129.

```
 1                    A P P E A R A N C E S

 2

 3    For the Plaintiff:

 4            DARIO MACHLEIDT
              KATHLEEN GEYER
 5            KEN CHU  (Via Zoom.)
              Kilpatrick Townsend & Stockton
 6            1420 Fifth Avenue
              Suite 3700
 7            Seattle, Washington  98101
              206.467.9600
 8            dmachleidt@ktslaw.com

 9

10

11    For the Defendants:

12            JOE ZITO  (Via Zoom.)
              RENE VAZQUEZ  (Via Zoom.)
13            DNL Zito
              1250 Connecticut Avenue
14            Suite 700
              Washington, DC  20036
15            202.466.3500
              jzito@dnlzito.com
16

17

18

19

20

21

22

23

24

25
```

```
 1              E X A M I N A T I O N   I N D E X

 2

 3   By Mr. Zito                                    5 - 79

 4   By Mr. Machleidt                              79 - 80

 5

 6

 7

 8

 9

10              E X H I B I T   I N D E X

11

12                                              MARKED

13

14   Exhibit 2   Second Amended Complaint           11

15   Exhibit 10  Email, November 18, 2021           21

16   Exhibit 11  Email, December 15, 2021           21

17   Exhibit 12  Email String, December 28, 2021    21

18   Exhibit 13  Email String, January 31, 2022

19   Exhibit 4   Email String, March 15, 2022       24

20   Exhibit 14  Email String, February 22, 2022    25

21   Exhibit 15  Email String, March 15, 2022       25

22   Exhibit 16  Email, April 19, 2022              30

23   Exhibit 17  Email String, October 5, 2022      32

24   Exhibit 5   Letter to Samuel Meyler            33

25   Exhibit 22  Email, December 22, 2022           35
```

```
 1              E X H I B I T   I N D E X

 2

 3                                                       MARKED

 4

 5  Exhibit 18  Email String, October 17, 2022           36

 6  Exhibit 19  Email String, November 18, 2022          40

 7  Exhibit 23  Email String, January 3, 2023            44

 8  Exhibit 20  Notice of a Lawsuit and Request to Waive 45

 9              Service of a Summons

10  Exhibit 24  Letter, January 3, 2023                  45

11  Exhibit 25  Email String, February 3, 2023           50

12  Exhibit 6   Notice of Voluntary Dismissal Without    55

13              Prejudice

14  Exhibit 26  Letter, May 26, 2023                     57

15  Exhibit 27  Email String, May 26, 2023               58

16  Exhibit 28  Email, May 31, 2023                      60

17  Exhibit 29  Email, June 21, 2023                     60

18  Exhibit 7  Letter, June 21, 2023                     60

19  Exhibit 30  Email String, June 29, 2023              63

20  Exhibit 31  Complaint                                66

21  Exhibit 21  Requests for Production                  71

22  Exhibit 9   Subpoena                                 73

23

24

25
```

```
 1                      Thursday, August 21, 2025

 2                           9 o'clock a.m.

 3                              * * * * * *

 4    CHRISTOPHER SCHENCK,          called as a witness in the

 5                                  above-entitled cause, being

 6                                  first duly sworn, testified

 7                                  as follows:

 8

 9                      EXAMINATION

10    BY MR. ZITO:

11    Q       Good morning, Mr. Schenck.

12    A       Good morning.

13    Q       I'm pronouncing your name correctly?

14    A       It was a little hard to hear, but I think

15    so.

16    Q       Yeah.  You're a little bit quiet too.

17            I'm going to turn my sound up.  Any easier

18    to hear me now?

19    A       Yeah.

20    Q       Okay.  I'll try to talk a little louder.

21    Sorry about that.

22    A       No problem.  Thank you.

23    Q       If you can't hear me or don't understand a

24    question, please feel free to ask or ask for

25    clarification.  As you're probably aware, if you need
```

1   a break at any time, just go ahead and ask, and we'll

2   take a break.  Could I get you to state your name for

3   the record?

4   A        Christopher spelled normal, most usual way,

5   and then Schenck, S-C-H-E-N-C-K.

6   Q        And what state and city do you currently

7   reside?

8   A        I live in Sammamish, Washington.

9   Q        All right.  And where do you currently work?

10  A        Valve Corporation.

11  Q        And do you have a job title at Valve

12  Corporation?

13  A        Deputy general counsel.

14  Q        What generally are your responsibilities as

15  deputy general counsel?

16  A        There's a wide range.  I don't know that

17  there's a specific -- you know, it kind of changes

18  from day-to-day.

19  Q        Are you involved in employment issues?

20  A        Sometimes.

21  Q        Are you involved in litigation issues?

22  A        Yes.

23  Q        Any particular areas of litigation or all

24  areas of litigation?

25  A        I'm involved in just about every litigation

```
 1   that Valve is involved in, which is not all areas of

 2   litigation, but all the ones we're in at the moment.

 3   Q        Any areas you're excluded from?

 4   A        I don't know what you mean.

 5   Q        Well, I don't know.  Let's assume there was

 6   a mineral rights litigation at Valve.  Would you be

 7   involved in that too?

 8   A        I don't think we would be involved in that,

 9   but if we were, I would probably be involved in it.

10   Q        Okay.  Is this based upon any particular

11   training or skill or experience you have?

12   A        Is what based on that?

13   Q        Your inclusion in everything.

14   A        I'm not sure.

15   Q        Okay.  What background do you bring to the

16   job at Valve?  What did you do before that?

17   A        I was a partner at a law firm.

18   Q        And what areas of law did you practice in?

19   A        Primarily patent litigation, but also patent

20   prosecution, other things involving technology and

21   other forms of intellectual property, also various

22   kinds of other litigation.

23   Q        In your role at Valve, do you make only

24   legal decisions, only business decisions, a

25   combination of both, or neither?
```

1              MR. MACHLEIDT:  Object to form.

2    Q        I understand that's compound.

3              MR. MACHLEIDT:  Object to form.

4    A        I would say that I make legal decisions and

5    business decisions.

6    Q        All right.

7    A        Or at least I help make legal decisions and

8    business decisions.  Depends on the decision.

9    Q        So you're not the primary decision maker at

10   Valve?

11   A        It depends on what decision is being made.

12   Q        Okay.  What sorts of decisions would you be

13   the primary decision maker on, if you are?

14   A        I mean there's a wide range.  I mean, if the

15   copier is out of paper, and I decide to put paper in

16   it, that would be me putting paper in the thing and

17   making that decision.

18   Q        Is that a business decision or a legal

19   decision?

20   A        I have no idea.

21   Q        All right.  Did you make the decision to

22   file this suit that we're having a deposition on?

23             MR. MACHLEIDT:  Object to form.

24   A        I was involved in the decision that was made

25   by Valve to file the complaint.

1    Q        What were the -- or was the reason or

2    reasons for filing the complaint?  And I'm not asking

3    you about the legal decisions or the legal aspects.

4    I'm talking about the factual things that happened

5    that caused Valve to make the decision to file the

6    complaint.

7            MR. MACHLEIDT:  Object to form.  And just to

8    put it out there, obviously don't reveal any

9    privileged information as part of that answer.  If you

10   can answer, please do so.

11   A        I don't know how to untangle those things.

12   Q        Okay.  Well, shouldn't be too difficult.

13   What happened that was the impetus for Valve filing

14   suit?

15           MR. MACHLEIDT:  Object to form and same

16   cautionary instruction.

17   A        I mean, again, when you're asking the

18   question the way you're asking it, I don't know how to

19   untangle the legal parts from the factual parts.  If

20   you read the complaint, there is a list of factual

21   things that happened before the complaint was filed.

22   You know, we could talk about that.  But the way you

23   ask the question, I don't know that I could untangle

24   the privileged and work product things from the things

25   that are just factual.

1    Q        Okay.  I'm having difficulty with that.

2    What would be a factual thing that happened that has

3    no legal basis -- no legal aspect to it?

4            MR. MACHLEIDT:  Object to form and same

5    caution.

6    A        I mean, the fact that Display Technologies

7    sued Valve in -- I think it was 2015, that's a fact

8    that happened before we filed this complaint.

9    Q        Was that a fact that caused the complaint to

10   be filed?

11   A        I mean, again, the complaint has a large

12   list of facts.  And if you want to pull the complaint

13   up, we can go through those facts if you like.

14   Q        Okay.  And would you be able to identify

15   which, if any, of those facts are the reason why Valve

16   filed suit?

17           MR. MACHLEIDT:  Object to form.

18   Q        Or would that still be too complex a

19   question?

20           MR. MACHLEIDT:  Object to form and misstates

21   the testimony.

22   A        I don't think it's a complex question.  I

23   think it is possible for me to answer the question.  I

24   think it is impossible for me to answer the question

25   the way that you have asked it without getting into

 1   privileged and work product.  But, again, the

 2   complaint lists out a bunch of facts that are relevant

 3   to the complaint because that's why they're in the

 4   complaint.

 5   Q        Great.  But I can read those facts.  I want

 6   to know why Valve filed the complaint.  And you can't

 7   tell me that answer?

 8            MR. MACHLEIDT:  Object to form.

 9   Argumentative and same cautionary instructions.

10   A        Yeah.  It's in the complaint.  I don't know

11   what else to tell you.

12   Q        DDX has been published.  DDX 1 or DDX 2, I

13   think, is the complaint.  DDX 2 is the second amended

14   complaint.

15            (Exhibit No. marked for identification.)

16   A        Okay.

17   Q        You can pull that up.

18   A        Are you asking me to pull that up?

19   Q        Yeah.  Go ahead.  Take a look at it.  You

20   wanted to look at that complaint to help you out with

21   this answer.

22   A        Okay.  I have it up.

23   Q        Okay.  Can you identify which, if any, or

24   all of the facts in that complaint are the reason why

25   Valve filed suit?

1           MR. MACHLEIDT:  Object to form.  Compound.

2    A        I mean, the question you're asking is a

3    legal question.  So I can't answer it without getting

4    into legal things.  There is a list of facts here.

5    There's also -- you know, we have provided

6    interrogatory answers that list out facts as well.  I

7    just -- the way you're asking the question makes it so

8    that I cannot answer.

9    Q        Valve made a business decision to file this

10   suit, as well as a legal decision to file this suit;

11   is that correct?

12           MR. MACHLEIDT:  Same objections.  Same

13   instructions.

14   A        I'm not sure.  I mean, a lawsuit is a legal

15   issue.  Filing a lawsuit is a legal decision.

16   Q        Right.  But there's also -- there's also

17   business decisions -- let me take this back.  Did the

18   lawyers decide to file the lawsuit and not ask anyone

19   in the business department?

20           MR. MACHLEIDT:  Objection.  I'm instructing

21   you not to answer that question on the grounds of

22   privilege.  I also object to form.

23   Q        Does the legal department have their own

24   budget to file any lawsuit they feel like?

25           MR. MACHLEIDT:  Object to form.

1    A          No.

2    Q          Okay.  Someone at Valve had to decide to

3    spend the money that's being spent on litigation; is

4    that correct?

5               MR. MACHLEIDT:  Same objection and same

6    privilege instruction.  To the extent privilege is

7    bound up in that answer, don't reveal the substance of

8    the privilege.

9    A          I think the question you asked was -- I'm

10   having a hard time remembering, but was did someone

11   make the decision to file this lawsuit?  The answer is

12   yes.

13   Q          I asked, did someone make the decision to

14   spend the money that would be incurred in filing this

15   lawsuit?

16               MR. MACHLEIDT:  Object to form.

17   A          Yes.

18   Q          Okay.  Is spending the money -- do you

19   consider that a legal decision that would -- that

20   privilege would prevent you from answering?

21   A          Prevent me from answering what?

22   Q          Okay.  I asked you who made the decision to

23   spend the money to file the lawsuit.  You claimed

24   privilege.

25               MR. MACHLEIDT:  Object --

1    A          Sorry.  That's not what you asked.

2              MR. MACHLEIDT:  Sorry.  I'll object.

3    Q          We can go back a couple of questions if you

4    want.  But let me ask you that question.  Did someone

5    make a decision to spend money on the lawsuit?

6              MR. MACHLEIDT:  Objection.  Asked and

7    answered.

8    A          A group of people at Valve made the decision

9    to file the lawsuit.  Filing a lawsuit comes with

10   costs that are involved.

11   Q          Is the cost a legal decision or a business

12   decision to your understanding?

13             MR. MACHLEIDT:  Object to form.

14   A          The -- filing a lawsuit was a legal

15   decision.  That comes with cost.  I don't -- I don't

16   think you can separate that out.

17   Q          So is there anyone at Valve who can give me

18   an answer as to what the business decisions were in

19   instituting the lawsuit?

20             MR. MACHLEIDT:  Object to form.

21   Speculation.

22   A          Yeah.  There are people that were involved

23   in filing the lawsuit.  I can answer -- like I know

24   the answer to who was involved in that.  And I'm happy

25   to give you the names of the people that were involved

1  in that decision if that's what you're asking.  You

2  haven't actually asked that question.

3  Q        Certainly.  Can you give me their names?

4  A        Sure.  Scott Lynch, Liam Lavery, Christopher

5  Schenck.

6  Q        Would all of your thought process behind

7  that be unavailable due to privilege?

8           MR. MACHLEIDT:  Object to form.

9  A        I don't know what you're asking.  I'm sorry.

10 Q        I'm asking why was the lawsuit brought.  And

11 I'm not asking the legal basis for it.  Did -- for

12 instance, did Valve say, the cost of continued

13 communication with Patent Asset Management outweighs

14 the cost of filing this suit, therefore making a

15 business decision to file the suit?

16          MR. MACHLEIDT:  Object to form.

17 Hypothetical.

18 Q        That's the question.  Absolutely

19 hypothetical.

20          MR. MACHLEIDT:  Counsel agrees with me.  And

21 if you can answer excluding anything that's

22 privileged, you may do so.

23 A        I think the answer to that is -- no.  Sorry.

24 I can't answer that question.

25 Q        My question -- I'll go ahead and do it

1  again.  There would be legal aspects to why some

2  company would file a lawsuit.  The legal aspects might

3  be the evaluation of the cause of action.  Let's say

4  it's breach of contract.  That's a legal aspect.  And

5  maybe or maybe not that's covered by privilege.

6         There are also business aspects.  The breach

7  of contract costs us ten dollars.  It will cost us a

8  million dollars to litigate.  Let's not file the suit,

9  even though legally we have a reason.  We don't have a

10 business reason.  I'm asking you to separate the

11 business reasons that would not be privileged from the

12 legal reasons and asking, can you do that and give me

13 some examples of business reasons for filing the suit?

14        MR. MACHLEIDT:  Object to form.  Vague.

15 Compound.  Plenty of hypotheticals in there.  Same

16 objections and same instructions.

17 A      Okay.  There are none.  There are no

18 business reasons.

19 Q      There are -- to file the suit?

20 A      Correct.  The lawsuit was filed for legal

21 reasons.

22 Q      Can you tell me any of those legal reasons?

23        MR. MACHLEIDT:  Object to form.  Same

24 privilege instructions.

25 A      I mean, I think if you read the complaint

1    and the interrogatory answers, that's probably a

2    pretty full sum answer.  You will probably get a more

3    full sum answer as expert reports and the rest of, you

4    know, this unfolds.

5    Q        Looking at the complaint, the first

6    chronologically factual, not necessarily

7    chronologically in the complaint seems to be a June

8    8th, 2015 litigation where DTI sued Valve.  Are you

9    aware of that fact, that occurrence?

10   A        I don't know what DTI means in your

11   question.

12   Q        If you look at paragraph 11 of the second

13   amended complaint which should be Exhibit 2 that

14   you're looking at.

15   A        Yep.

16   Q        Okay.  It says Display Technologies filed

17   suit.  Do you see that?

18   A        Yes.

19   Q        Okay.  That's what I'm talking about.  What

20   is your knowledge of that fact?

21            MR. MACHLEIDT:  Object to form.  You can

22   answer factually.  Don't reveal any privileged

23   information about that suit.

24   A        I mean, I know that it happened.

25   Q        Were you involved in that suit?

1   A        I did not start working at Valve until

2   after.  I don't think I started at Valve until 2018,

3   so I was not involved in that suit.

4   Q        So I assume that you were not involved in

5   the next fact, number -- paragraph 12.

6            MR. MACHLEIDT:  Object to form.

7   A        Sorry.  I'm going to read the paragraph.

8   Q        Sure.

9   A        I was not involved in the negotiation or

10  execution of the 2016 global settlement and license

11  agreement mentioned in Paragraph 12.

12  Q        I assume you have read that agreement; is

13  that correct?

14  A        I have.

15  Q        Then we'll go on to -- Paragraph 13 refers

16  to the same agreement, so I'm assuming you did not --

17  your answer would be the same in Paragraph 13.  You

18  were not involved in the 2016 agreement and

19  negotiation, correct?

20  A        That is correct.

21  Q        Just making sure we cover all the factual

22  paragraphs here.  Paragraph 14 talks about a March 20,

23  2022 communication.  It says, "began sending numerous

24  emails."  Go ahead and read the whole paragraph if you

25  would like.

1    A        Okay.  I've read the paragraph.

2    Q        Were you involved in those communications?

3             MR. MACHLEIDT:  Object to form.  And as

4    always, don't reveal any privileged information that

5    may relate to those communications.

6    A        I was not a direct recipient of any of those

7    communications, but I was made aware of them around

8    the time that they came in.

9    Q        Do you recall who was the direct recipients?

10   A        I believe -- I believe we produced all of

11   these to you.  But I believe the direct recipients

12   were Liam Lavery, Karl Quackenbush, and Steve Allen.

13   Q        And who are those three people briefly?

14   A        Valve employees.

15   Q        And what positions do they hold?

16            MR. MACHLEIDT:  Object to form.

17   A        Liam Lavery is general counsel.  Karl

18   Quackenbush is now retired.  Steve Allen is also now

19   retired.

20   Q        And what did Valve do in response to those

21   communications from Mr. Falcucci?

22            MR. MACHLEIDT:  Object to form.  I'll let

23   you answer if you can disconnect the actions from

24   anything privileged.

25   A        Sure.  We reviewed them and analyzed them.

1   I don't know that I could say much more than that

2   without going into privilege.

3   Q         Was that review extensive?  Was that

4   analysis extensive, or was it brief?  Do you recall?

5             MR. MACHLEIDT:  Object to form.

6   A         Yeah.  I'm not sure exactly what you mean by

7   extensive or brief.  I think we also produced a

8   privilege log that would give you some idea about

9   communications that happened internally at Valve that

10  are related to those communications.  That could, you

11  know, maybe give you a sense of what it was, but there

12  would be other things that would have happened that

13  would have been just not in communications obviously,

14  because you have got to read the thing, see what it

15  says.

16  Q         Were there also communications from Patent

17  Asset Management prior to the communications beginning

18  in March of 2022?

19            MR. MACHLEIDT:  Object to form.

20  A         I'm sure there were -- well, I don't know --

21  I don't know if you count the lawsuit and the -- the

22  2015 Display Technologies lawsuit.  There would have

23  been communications related to that that may be

24  indirectly or directly to Valve from Patent Asset

25  Management.  Sitting here today, I don't recall any

1    communications from Patent Asset Management before the

2    2022 ones that are referenced in Paragraph 14 of the

3    complaint following the prior lawsuit.

4    Q        Let me go ahead and publish what we're

5    marking as Valve 10 then.

6    A        Okay.

7    Q        Hang on a second.  10, 11, 12, and 13.

8            (Exhibits No. 10-13 marked for

9    identification.)

10   Q        Okay.  If I could just get you to take a

11   moment to look at Exhibits 10, 11, 12, and 13, which

12   you should have available now.

13   A        Okay.  Sorry.  I hit the back button on the

14   browser, and it took me to a place I wasn't supposed

15   to go, but I think I'm back now.

16   Q        Take your time.

17   A        Okay.  Yeah, I looked at them.

18   Q        Does that refresh your recollection as to

19   any communications between 2016 and 2022?

20   A        Yeah.  Looks like there were some at the end

21   of 2021.  I had seen them before.  I just didn't

22   remember the date on them.

23   Q        Fair enough.  Why were those not included in

24   the complaint or referenced in the complaint?

25            MR. MACHLEIDT:  Object to form.  I'm going

 1   to instruct you not to answer that question on grounds

 2   of privilege and work product.

 3   Q        Okay.  There's no non-privileged reason that

 4   you know of why they were not included or referenced

 5   in the complaint?

 6            MR. MACHLEIDT:  Object to form.  I'm going

 7   to give the same instruction.

 8            MR. ZITO:  He can answer yes or no if he's

 9   aware of any non-privileged reason.

10            MR. MACHLEIDT:  Well, I'm not done yet, Joe.

11            MR. ZITO:  Okay.  Fair.

12            MR. MACHLEIDT:  Mr. Schenck, for that

13   question, you can answer yes, no, you don't know.

14   A        I don't know.

15   Q        Looking at Exhibits 10, 11, 12, and 13,

16   would you characterize them as emails and messages to

17   members of Valve's legal team?

18            MR. MACHLEIDT:  Object to form.

19   A        Could we do those one at a time?  I would

20   have to look at each one as we do it.

21   Q        Okay.  Let's look at number 10.

22   A        Okay.

23   Q        Would you consider that -- I'm reading the

24   language from Paragraph 14 -- emails and messages to

25   members of Valve's legal team.  Would you consider

1    Exhibit No. 10, DDX 10, would it be -- would you

2    characterize it that way, or would you characterize it

3    some other way?

4              MR. MACHLEIDT:  Object to form.

5    A         I'm not sure.  I got a little lost there.

6    You made a couple statements, and then -- can you

7    ask --

8    Q         Okay.  Let me start again.

9    A         Okay.  Thanks.

10   Q         Looking at Exhibit 10, would you

11   characterize that -- and I'm reading from Paragraph

12   14 -- emails and messages to members of Valve's legal

13   team?

14   A         No.

15   Q         Okay.  How would you characterize it

16   differently?

17   A         I would characterize it as one email to a

18   member of Valve's legal team.

19   Q         Now you see why I asked the question

20   originally about 10, 11, 12, and 13 collectively.  So

21   let's do 11 separately.  Would you characterize 11 as

22   an email or message to members of Valve's legal team?

23   A         I would call Exhibit 11 an email to a member

24   of Valve's legal team.

25   Q         Would you characterize Exhibit 12 as an

1  email or message to a member of Valve's legal team?

2  A          Exhibit 12 is an email to a member of

3  Valve's legal team.

4  Q          And what about Exhibit 13?  Would you also

5  characterize that as an email to a member of Valve's

6  legal team?

7  A          Sorry.  Let me pull that up.  Exhibit 13 is

8  an email to a member of Valve's legal team.

9  Q          Do you have any awareness of whether or not

10  any of Exhibits 10 through 13 were responded to by any

11  members of Valve's legal team?

12          MR. MACHLEIDT:  Object to form.  You can

13  answer that yes, no, or you don't know.

14  A          I don't have firsthand knowledge of

15  whether -- I do not have firsthand knowledge of

16  whether any of those were responded to, as I was not

17  the recipient of any of them.

18  Q          Let's look at what's marked as DDX 4.  I'm

19  going to go ahead and publish that, which is Exhibit 5

20  from the second amended complaint.

21          (Exhibit No. 4 marked for identification.)

22  Q          Just take a look at that and let me know if

23  you have seen it before.

24  A          Yeah.  I've seen it before.

25  Q          Have you seen it before as an exhibit to the

1   complaint or prior to that?

2   A        Both.

3   Q        I'll introduce DDX 14.

4            (Exhibit No. 14 marked for identification.)

5   Q        I'll ask you to take a look at that.  And do

6   you recognize that as an unredacted copy as Exhibit 5

7   to the complaint?

8            MR. MACHLEIDT:  Object to form.  Joe, I'm

9   going to object because that misstates Exhibit 14.  It

10  may be that you just added the wrong thing.

11  A        Yeah.  That's not the same one.

12  Q        That's correct.  That's the response.

13  Excuse me.  Let me introduce Exhibit 15.

14           (Exhibit No. 15 marked for identification.)

15  Q        That's the one that's -- okay.  If you could

16  take a look at Exhibit 15.

17  A        Okay.

18  Q        Is that an unredacted copy of -- DDX Exhibit

19  15 is an unredacted copy of Exhibit 5 to the

20  complaint; is that correct?

21           MR. MACHLEIDT:  I'm going to object to form

22  again and state again, I think that is a misstatement

23  of -- that question implies -- I'll let -- I'll let

24  the witness answer.

25  A        The answer is no.  Those are not the same

```
 1   thing.

 2   Q        What is the difference you see?

 3   A        Okay.  So we're talking about Exhibit DDX 4,

 4   which is Exhibit 5 to the complaint?

 5   Q        Correct.

 6   A        And DDX 15, which is an email from Daniel

 7   Falcucci to Karl Quackenbush?

 8   Q        DDX 15 should be --

 9   A        I mean, the answer is they're just not the

10   same.  I don't know how to spell it out.

11   Q        That's because the wrong exhibit uploaded.

12   Let's go off the record for a moment.

13            (Pause in proceedings.)

14   Q        I removed the document that was previously

15   uploaded as 15, which should have been 16, and

16   re-uploaded 15, if you could take a look at that.

17   A        Sure.

18   Q        Does that appear to be an unredacted copy of

19   Exhibit 5 to the second amended complaint?

20   A        Sorry.  Let me look at it a little closer.

21   The software is a little clunky for comparing things,

22   so I've got to close out and look at the other one, so

23   just give me a second.

24   Q        All right.

25   A        Yes.  DDX 15 as corrected appears to be the
```

1   same as DDX 4 without the redactions.

2   Q        Since we're talking about redactions -- and

3   not to take anything from you, Dario, do you want to

4   mark this confidential also?

5            MR. MACHLEIDT:  Yep.  We're going to mark

6   the entire transcript as confidential.

7            MR. ZITO:  Okay.  All right.

8   A        Thank you.

9   Q        No problem.  Was there -- was there a reason

10  for the March 15th, 2022 email we marked as DDX

11  Exhibit 15 to be a triggering event where the previous

12  emails we looked at, DDX 10 through DDX 13, were not?

13           MR. MACHLEIDT:  Object to form.  Vague.  If

14  you can answer that without touching on privilege --

15  A        I don't know what you mean by triggering

16  event.

17  Q        It's the first one that's mentioned in the

18  second amended complaint.  So, as you said, one could

19  understand what the reasoning is by looking at the

20  complaint.  And taking your advice earlier, if I look

21  at the complaint, I see that the first four emails

22  aren't mentioned, and so there must be something

23  special about this email that's not in the first four

24  emails.  Is that a proper interpretation using what

25  you said was, look at the complaint and find out why

 1  we filed suit?

 2          MR. MACHLEIDT:  Object to form.  Misstates

 3  the prior testimony.  Argumentative.  If you have an

 4  answer, you may give it.

 5  A       Yeah.  I don't think I said what you just

 6  said that I said.

 7  Q       Okay.

 8  A       Paragraph 14 in the complaint talks about

 9  March 2022, so they were -- and, you know, we've

10  looked at some messages that were before that.  I'm

11  not exactly sure what your question is.

12  Q       All right.  What did -- please correct my

13  understanding because I don't want to continue on with

14  a misunderstanding.  When I asked you earlier, can you

15  explain the reasons why the complaint was filed, you

16  said the facts behind the filing of the complaint --

17  and I'm paraphrasing -- are found in the complaint,

18  and that would explain much better why the complaint

19  was filed as well as the legal issues that were

20  presented in the complaint.  That's what I heard.  If

21  you said something different, please clarify.

22          MR. MACHLEIDT:  Object to form.

23  A       Okay.  I said that you could look at the

24  complaint, and you could also look at interrogatory

25  answers, and you would also get additional information

1  as the case unfolds.  I know we have provided a lot of

2  documents to you.  You have shown us a couple.

3  There's a lot more there than just what's in the

4  complaint.  And if I led you to believe earlier that

5  it was just what was written in the complaint, I

6  apologize for that.  But there's a lot more to it than

7  that.  The complaint is one place that you could look.

8  And that's what I think I said earlier, but if I

9  didn't say that earlier, I'm saying it now.

10  Q       And we should also look at the documents

11  we've just seen now that were produced by Valve in

12  discovery, correct, in addition to what's in the

13  complaint?

14  A       I don't know what you mean.  That wasn't a

15  very good question.

16  Q       Okay.  Sorry.  We just looked at DDX 10

17  through 14 and 15, because it's slightly different

18  than the exhibit to the complaint.  Those are some of

19  the documents that you're referring to that were

20  produced in discovery that would also form the basis,

21  the factual basis for the suit.

22  A       Those are factual things that happened

23  before we filed the lawsuit.

24  Q       All right.  When did Valve begin to

25  undertake an evaluation of the communications from

1   Mr. Falcucci?

2              MR. MACHLEIDT:  Object to form.  Give me a

3   minute.  You can answer that to the extent that

4   information would appear in a privilege log.  Don't go

5   further, if you know.

6   A       I mean, each communication as it's received

7   would have been received and looked at and evaluated

8   in some sense.

9   Q       Is DDX 15 the first time you were made aware

10  of communications?  I know that you're a recipient of

11  DDX 15.

12             MR. MACHLEIDT:  Object to form.  Yeah.

13  A       Let me look at this email again.  I don't

14  believe so, no.

15  Q       You believe -- your recollection is you were

16  made aware prior to that?

17  A       That's correct.

18  Q       Okay.  All right.  I've just published what

19  is DDX 16.

20             (Exhibit No. 16 marked for identification.)

21  Q       Have you seen that document before?

22  A       Sorry.  Did you want me to look at it?

23  Q       Yes.  Please look at it.

24  A       Sorry.  When you put it up there, I have to

25  click a button to look at it.  So if you want me to

 1  look at it, make sure you tell me, because it doesn't

 2  pop up automatically.

 3  Q        Thank you.

 4  A        Okay.  I've looked at that Exhibit 16.

 5  Q        Do you know whether or not Mr. Falcucci had

 6  received a response to any of his previous

 7  communications prior to March 19th, 2022?

 8           MR. MACHLEIDT:  Object to form.  You can

 9  answer.

10  Q        April.  April 19th, 2022.  My mistake.

11  A        I do not know.

12  Q        All right.  Are you aware of any documents

13  that Valve has produced to indicate that any responses

14  were sent?

15  A        No.  I personally don't think a response was

16  sent, but, you know, I'm not Karl Quackenbush, so I

17  couldn't tell you for certain whether Karl had

18  responded to a message.

19  Q        Do you have an understanding of when a

20  response was first sent?

21           MR. MACHLEIDT:  Object to form.  And

22  misstates the testimony.

23  A        Yeah.  I think I just told you, I didn't

24  know that a response was sent.

25  Q        No, no.  Right.  After April 22nd of -- 19th

1   of 2022, are you aware of a date -- a first response

2   after that date?

3            MR. MACHLEIDT:  Same objection.

4   A        First response to what?

5   Q        Okay.  All right.  Maybe this got a little

6   confusing.  I asked if you were aware of any response

7   to Mr. Falcucci's communications prior to April 19th,

8   2022.  I believe you indicated you weren't aware of

9   any response prior to that date; is that correct?

10  A        I personally am not aware of any response.

11  If there was one, we would have produced it in the

12  documents for the case.

13  Q        Were you aware of any response subsequent to

14  the date of April 19th, 2022?

15  A        Response to Daniel Falcucci?

16  Q        Correct.

17  A        I do not recall one of those off the top of

18  my head.  But, again, it would be in the document

19  production that we provided to you if there was one,

20  or your client would have it.

21  Q        I'm going to introduce as Exhibit 16, DDX

22  16 -- I'm sorry -- 17, and ask you to take a look at

23  it.

24            (Exhibit No. 17 marked for identification.)

25  A        Okay.  I've looked at it.

1   Q        I'm also going to introduce Exhibit DDX 5.

2            (Exhibit No. 5 marked for identification.)

3   Q        And I know with this system, it's hard to

4   look at two exhibits at the same time.  I would ask

5   you to take a look at that, which is also Exhibit 6

6   from the second amended complaint.

7   A        Sorry.  You want me to look at DDX 5 now?

8   Is that what you're saying?

9   Q        Yes.  And I'm going to ask you about 5 and

10  17 to try and understand it.  Excuse me.  Yes.

11  A        Okay.  Number 5 is pretty long, but I will

12  read through it.  Okay.  I've looked at 5.

13  Q        All right.  And that's attached to the

14  complaint as Exhibit -- the second amended complaint

15  as Exhibit 6, correct?

16  A        Sorry.  I'll pull it back up.  I see that it

17  says Exhibit 6 at the top.  And then there's a

18  document number that's 38-6.  I don't know whether

19  Document 38 is the second amended complaint or not.

20  Q        Okay.  But if it is, it references Exhibit 6

21  at the end of that Paragraph 22, correct?

22           MR. MACHLEIDT:  Object to form.

23  Q        I'm sorry.  Exhibit 6 to the second amended

24  complaint -- I'm sorry.  If you look at -- back up.

25  If you look at DDX 2, which is the second amended

1  complaint, you will see that that is Document 38.

2  A       Okay.

3  Q       And in Paragraph 22 of the second amended

4  complaint, Document 38, it references an Exhibit 6.

5  A       Yes.

6  Q       Is that the once in October or the once in

7  December where Valve informed Display Technologies?

8            MR. MACHLEIDT:  Object to form.

9  A       You know, the -- I actually feel bad about

10 this.  The letter that is Exhibit DDX 5, which is

11 Exhibit 6 to Document 38, you know, so that document

12 starts with a two-page letter and then attaches the

13 global settlement and license agreement.  I did not

14 put a date on that letter.  I know there is an email

15 that this letter was attached to that has the date on

16 it.  I do not recall sitting here today what the date

17 of that email was, but I'm sure you have it.  And my

18 template letters now have dates on them.

19 Q       Excellent.  Yes.  And even though we'll take

20 things out of order, I'm going to go ahead and mark --

21 I guess this should be DDX 22.  Let me make sure it's

22 written down here.

23            MR. VAZQUEZ:  It is, Joe.  It's DDX 22.

24 Q       Right, but down here -- this is just DDX 22.

25 And if you take a look at it, is that the correct

1   email cover sheet?

2              (Exhibit No. 22 marked for identification.)

3   A       Give me a second to look at it.  I believe

4   so, yes.  I believe -- let me be precise here.  I

5   believe the same thing you have marked as Exhibit 22

6   is a cover sheet for the letter that I sent to Samuel

7   Meyler by email that is also attached -- that is

8   Document 38-6 in the case and is Exhibit DDX 5 today.

9   Q       So that was a December letter, not an

10  October letter that's referred to in Paragraph 22 of

11  the second amended complaint?

12  A       Can you -- again, I can only have one

13  document up at one time.  What number is the

14  complaint?

15  Q       Document 2.

16  A       Okay.  Which paragraph were you talking

17  about?

18  Q       22, which refers to October and December.

19  A       You've got to give me a second to get there,

20  please.  Okay.  Yeah.  The email that is marked as DDX

21  22 attached a letter -- was an email from me to Samuel

22  Meyler.  It attached a letter, and that letter

23  attached the global settlement and license agreement

24  or included it.  That email was sent December 22 of

25  2022.

1    Q        Prior to December, at least as early as

2    October 5, 2022, had you not already sent Mr. Meyler a

3    copy of the global license and settlement agreement?

4    And for reference, DDX 17, which I think I've already

5    published.  Yes.

6    A        Yes.  So if you go back to DDX 17, that's

7    a -- the top email there is a response from Samuel

8    Meyler.  And it's copying Jay Johnson and Angela

9    Kearney.  He's responding to an email I sent him on

10   October 5, 2022.  And I attached the global settlement

11   and license agreement to that email as well.

12   Q        Do you recall what, if anything, Mr. Meyler

13   did in response to receiving the global settlement and

14   license agreement from you?

15   A        You would have to ask Mr. Meyler what

16   Mr. Meyler did.

17   Q        Do you have an understanding of anything he

18   did?  I mean, for example --

19   A        I'm not sure what you're asking me.

20   Q        Obviously October 5th, the same day, he

21   responded thanking you for your email, correct?

22   A        Sure.  He did write me back, yes.

23   Q        Okay.  And then did he also write you --

24   well, then you -- let me publish DDX 18.

25            (Exhibit No. 18 marked for identification.)

 1           MR. ZITO:  Go off the record for a moment.

 2           THE WITNESS:  We don't need to go off the

 3    record.  I'm sitting here.  I'm ready for you to ask

 4    me a question.

 5           MR. ZITO:  Okay.  I have to -- there's a --

 6    just as you have difficulty on your end looking at

 7    multiple documents at the same time because of the

 8    constraints doing it remotely, I also have the problem

 9    that, when I uploaded exhibits, they did not upload in

10    the correct order, so I have to find Exhibit 18.

11           MR. MACHLEIDT:  Joe, that's fine.  We'll sit

12    here patiently but we don't go off the record unless

13    all counsel agree.  And we do not agree.  Do what you

14    need to do to find your exhibits.  But going off the

15    record for things like this unnecessarily extends the

16    deposition.  We gave you the courtesy the first time

17    around.  Obviously take the time you need to get your

18    stuff in order, and we'll sit here patiently.

19           MR. ZITO:  It's not my intent to extend the

20    deposition.  I won't go anywhere near seven hours.  It

21    was simply to avoid this kind of muttering on the

22    record about technical difficulties.  I'll just mute.

23           MR. MACHLEIDT:  We're still on the record.

24           THE WITNESS:  I'm going to mute us as well,

25    Joe.  When you're ready, let us know.

 1   Q        (Mr. Zito continuing.)  Located the correct

 2   Exhibit 18, and I'm going to introduce that.  If I

 3   could get you to take a look at Exhibit 18.

 4   A        Okay.  Okay.  I've looked at it.

 5   Q        You responded to Mr. Meyler's October 5th

 6   email; is that correct, where you said, "Okay.  Great.

 7   Thank you."?

 8   A        Looks like on October 5th, 10:52 a.m.,

 9   Mr. Meyler sent me an email.  And I responded to him a

10   minute later and said, "Okay.  Great.  Thank you."

11   Q        And then Mr. Meyler responded to you on the

12   17th; is that correct?

13   A        Yeah.  At the top of this email chain,

14   there's an email from Mr. Meyler to me on October 17.

15   Q        And what did you understand that Mr. Meyler

16   did in response to your pointing out the existence of

17   the global settlement and license agreement?

18            MR. MACHLEIDT:  Object to form.

19   A        This email says that a notice of voluntary

20   dismissal was filed on behalf of Display Technologies,

21   LLC, and the case has been closed.  I don't know if

22   Mr. Meyler himself filed that, but he's reporting it

23   to me here.

24   Q        Was that an objective you were seeking from

25   your correspondence with Mr. Meyler?

1    A        I'm going to go back and read my earlier

2    email.  Do you have a copy of the notice of voluntary

3    dismissal that's attached to that?  The reason I'm

4    asking is, I think it was dismissed without prejudice,

5    and that makes a difference.

6    Q        Yes.  It's actually attached.  It's the

7    fourth and -- third and fourth pages.

8    A        Sorry.  Again, this software is goofy.

9    Yeah.  Okay.  So page 3 of DDX 18 is a notice of

10   voluntary dismissal without prejudice.  I don't think

11   that quite matches up with what I would have liked to

12   have happen in that situation.

13   Q        But partially at least?  Was it at least

14   partially what you hoped to obtain?

15   A        I'm having a hard time answering that

16   question.  I mean, he dismissed the lawsuit that he

17   brought, that they filed with no basis, and that was a

18   good thing to have happened.

19   Q        How much time did you put into this period

20   of correspondence with Mr. Meyler?  And when I say

21   this period, I mean in the October time between what

22   we looked at as 17, your October 5 email, to reviewing

23   the October 17th email.

24            MR. MACHLEIDT:  I'm going to object to form.

25   A        I'm not sure I could answer that off the top

1   of my head right now.  There's -- there's more

2   documents, I think, than that that are involved that

3   would help me sort of put that together.  I'm certain

4   it was some number -- I mean, some number of hours,

5   but I'm having a hard time giving you a specific

6   answer off the top of my head right now.

7   Q        Can you give me a range, was it less than

8   one hour?  More than a thousand hours?

9   A        It was definitely in between one and a

10  thousand.

11  Q        Okay.  Was it more than 10 hours?  And we're

12  including the time it took you to reread the global

13  settlement and license agreement and maybe the

14  complaints.

15  A        I mean, again, it's hard to do in the

16  abstract.  I can't remember how many pages any of

17  those things are.  My guess would be more than 10

18  hours.

19  Q        More than 10.  So more than 20 hours?

20  A        I'm not sure.

21  Q        Publish number 19, which is a four-page

22  string of emails.

23           (Exhibit No. 19 marked for identification.)

24  Q        Ask you to take a look at that when it shows

25  up.

1    A        Okay.  I don't have it yet.  There it is.

2    Okay.  I've looked at it.

3    Q        I note -- if you look at the second page,

4    your Monday, October 17th email in response to

5    Mr. Meyler's October 17th email, and this time not a

6    minute later, but an hour and a half later, you also

7    CC Jay Johnson and Angela Kearney.  Were they part of

8    a group or a team helping you evaluate this matter?

9            MR. MACHLEIDT:  Object to form.

10   A        If you read the prior email from

11   Mr. Meyler -- it's actually two emails down from

12   Mr. Meyler on October 5th, he says, "I have copied Jay

13   Johnson and his paralegal, Angie Kearney.  Jay will

14   appear pro hoc vice and serve as lead counsel in these

15   cases."

16   Q        So was there anyone else from Valve involved

17   in this correspondence, this exchange?

18           MR. MACHLEIDT:  Object to form.

19   A        There was no one else from Valve copied on

20   these emails if that's what you're asking.

21   Q        That was one question.  Was there anyone

22   else from Valve assisting you in the evaluation you

23   were doing of the underlying documents that are

24   referred to here?

25           MR. MACHLEIDT:  Object to form and mind

1   privilege.  I restrict you to a yes, no, or you don't

2   recall and see where it goes.

3   A          I don't believe so at that time.

4   Q          When you estimated the greater -- the sum --

5   well, greater than 10, but unknown number of hours,

6   did that include determining that, quote, the patent

7   seems very far afield from what we are doing with our

8   technology, closed quote?

9   A          I mean, one, that was an estimate.  And,

10  two, I said I would need to look at all the documents

11  to be accurate.  But I made that determination before

12  I sent this email.

13  Q          Fair enough.  In the last email of the

14  string, the first email of the document, you make him

15  a thousand dollar offer.  Were you able to make that

16  offer yourself without having to gain authority from

17  someone else at Valve?

18  A          Yes.

19  Q          What was the basis for your determination to

20  make that offer?

21  A          I think you will see in this email chain

22  that we don't see this case as having any merit

23  whatsoever.  That's there right at the top.  And then

24  lower down in my October 17 email, it said -- I was

25  hoping to have a conversation with someone before I

1  hired an outside lawyer.  And outside lawyers can

2  cost, you know, a lot of money.  And so the fact that

3  the case had no merit, and I wanted to avoid paying a

4  lawyer to have to show up in court to deal with it

5  were part of the thinking there.

6  Q        So the thousand dollars was not based upon a

7  merit evaluation, a positive merit evaluation of the

8  case.  It was based upon avoidance of cost, correct?

9  A        I don't know if that's exactly what I said.

10  I mean, I said the case had no merit whatsoever.

11  Q        Right.  Agreed.  That was your statement.

12  But you were offering that to avoid the cost of

13  outside litigation, or hoping to avoid the cost of

14  outside counsel?

15  A        Yeah.  That was part of it.

16  Q        The date of DDX 19, which is November 18 of

17  2022, do you recall having written or drafted any

18  letters or attachments of explanation as to your

19  concerns with the materials that Mr. Meyler had sent

20  you?

21          MR. MACHLEIDT:  Object to form.

22  A        Yeah.  I -- I mean, we produced the things

23  that I sent to him.

24  Q        Okay.

25  A        And I don't remember the exact dates of

1   those things.

2   Q        If you could look at Exhibit 22 again for a

3   moment.  That's your -- what we have now identified as

4   the December 22nd letter, correct?

5           MR. MACHLEIDT:  Object to form.

6   A        Exhibit 22 is the -- it's the email

7   attaching the letter, and it's dated December 22 from

8   the year 2022.  There's a lot of 22s there.

9   Q        There are a lot of them.  Do you recall any

10  letters like that prior to December of 2022?

11  A        I don't recall sending any letters, like

12  formal letters like this as opposed to emails, to

13  Mr. Meyler prior to that point in time.  There may

14  have been one.  If there is, we would have produced it

15  to you.

16  Q        I'll publish Exhibit 23.  Ask you to take a

17  look at that when it shows up for you.

18           (Exhibit No. 23 marked for identification.)

19  A        All right.  I've got it.  Okay.  I've read

20  it, but the top email mentions an attached

21  correspondence, but I don't see that attachment as

22  part of this document.

23  Q        Let me go ahead -- I've premarked them.

24  Whether or not it's sequential, that's okay.  I'm

25  going to publish DDX 20 and DDX 24.

1               (Exhibit No. 20 marked for identification.)

2               (Exhibit No. 24 marked for identification.)

3     Q         Take a look at those when they show up for

4     you.

5     A         Which ones?

6     Q         20 and 24.  And ask if those are the -- to

7     the best of your recollection, those are the two

8     attachments?

9     A         Let me look at 20.  Okay.  Can you ask that

10    question again?  I've looked at the documents.

11    Q         Sure.  You said Exhibit 23 referred to two

12    documents attached.  I believe one was the request for

13    waiver, and the other was Mr. Meyler's letter of

14    January 3.

15    A         I think I only mentioned one of those, but

16    the email does say that there are two attachments.

17    Q         All right.  To the best of your

18    recollection, are those -- are 20 and 24 the two

19    attachments?

20    A         24 is a letter from Mr. Meyler to me, dated

21    January 3rd, 2023, which is the same date as that

22    email.  That looks to be the -- one of the

23    attachments.  The Exhibit 20 is a notice of lawsuit

24    and request to waive service that is -- it's dated

25    December 15th.  It's also missing some pages.  But,

1   you know, the email from January 3rd said he was

2   attaching this type of document, so it could very well

3   be the attachment to DDX 23.

4   Q        And is it your understanding that, by

5   January 3rd, 2023, you and Mr. Meyler were discussing

6   one of the two cases that was originally discussed in

7   your prior letter, prior letters of October and

8   December?

9   A        I'm not -- we were discussing -- I think

10  it's the Social Positioning Input Systems case in this

11  latest correspondence, which is one of the --

12  Q        And that was --

13  A        Sorry.  Which is one of the lawsuits that

14  Mr. Meyler filed on behalf of companies owned by

15  Patent Asset Management and Lee Rothschild against

16  Valve back in October -- it was either September or

17  October of 2022.

18  Q        September of 2022.  There were two lawsuits.

19  One involved a patent that was in the 2016 global

20  settlement and licensing agreement, correct?

21          MR. MACHLEIDT:  Object to form.

22  A        Yeah.  The US Patent 9,300,723 was asserted

23  against Valve in a lawsuit filed in September 2015.

24  That patent is, I believe, a continuation or a

25  continuation-in-part of a patent that is listed,

1   specifically listed in the global settlement and

2   license agreement between Valve and Lee Rothschild,

3   Patent Asset Management, and some other entities which

4   I can't recall the names of from 2016.  And that same

5   global settlement and license agreement extends to

6   continuations and continuations-in-part, and that's

7   got hyphens in between each word, and then divisionals

8   is another -- I may be missing things.  There are

9   words in the license agreement that I may be missing

10  here.

11  Q        You pointed that fact out to Mr. Meyler in

12  October, correct?

13           MR. MACHLEIDT:  Object to form.

14  A        Yeah.  The email I sent -- the email I sent

15  to Mr. Meyler in October, October 5th, 2022, I sent

16  him a license.  And I said, if you haven't seen it

17  already, I think you should read it.  I had a hard

18  time seeing how Valve isn't already licensed to US

19  Patent No. 9,300,723, the patent asserted by Display

20  Technologies.

21  Q        Subsequent to that, in October, the

22  litigation involving that patent was dismissed without

23  prejudice, correct, voluntarily dismissed without

24  prejudice?

25  A        I believe you said that correctly, yes.

1   Q        So by January 3rd, 2023, Mr. Meyler and you

2   were discussing the other litigation, which is the

3   Social Positioning Input Systems litigation, correct?

4   A        The reason I'm hesitating here is because,

5   if you look at DDX 24, which is his letter from

6   January 3rd, there's a reference to the global

7   settlement and license agreement with Display

8   Technologies.  And he says -- he said that Valve's

9   contentions regarding the 2015 global settlement and

10  licensing agreement with Display Technologies, LLC and

11  Mr. Rothschild were misleading.  And earlier in this

12  letter, he says, "This correspondence is provided in

13  response to your letter sent to me on December 22,

14  2022.", which is DDX 2022.  I'm sorry.  DDX 22.

15  Again, too many 22s.  If you go back to DDX 22 and you

16  read my letter, that letter references the Display

17  Technologies lawsuit that was brought in 2022.  So I

18  don't think it's quite as clean as what you're saying.

19  Q        So did you -- in January of 2023, was it

20  Valve's position that the issue regarding the Display

21  Technologies patent had not been resolved?

22           MR. MACHLEIDT:  Object to form.

23  A        The lawsuit had been dismissed without

24  prejudice, which means Display Technologies could,

25  under the legal rules, file that lawsuit again.

1   Q        And did Valve consider that an unresolved

2   issue?

3   A        Since Display Technologies had already sued

4   us on a patent we had a license to, there was still

5   some fear that they would do that again.

6   Q        How strong was that fear, if you can rate

7   it?

8   A        I can't answer that question for you.

9   Q        Because of privilege or because you can't

10  rate fear?

11  A        I think it's impossible to rate fear,

12  particularly from almost three years ago.

13  Q        All right.  Understood.  Do you know whether

14  or not defendants, not including PAM, DT, all the

15  defendants, all the Patent Asset Management related

16  parties, did they consider that issue resolved, the

17  issue of suing Valve under the patents that were in

18  the global settlement and license agreement?

19           MR. MACHLEIDT:  Object to form.

20  A        Those entities presently have a counterclaim

21  against Valve for patent infringement of a patent that

22  is specifically mentioned in the global settlement and

23  license agreement.

24  Q        So I take that that your answer is your

25  understanding is, no, they don't consider it resolved

 1  either?

 2  A          I have no idea what they're thinking.

 3  Q          I'll publish DDX 25.  I'm going to retract

 4  that because it didn't get produced properly.  When

 5  you get a chance, could you take a look at that?

 6  A          Which one?

 7  Q          DDX 25.

 8  A          Sure.

 9             (Exhibit No. 25 marked for identification.)

10  A          All right.  I've looked at it.

11  Q          Do you recall receiving this email from

12  Mr. Meyler?

13             MR. MACHLEIDT:  You can answer that -- I

14  object to form.  You can answer that as a yes, no, or

15  you don't recall.

16  A          Yeah.  This email wasn't sent to me.

17  Q          Correct.  But do you recall receiving a copy

18  of this email?

19             MR. MACHLEIDT:  Same objection.  Same

20  instruction.  Yes, no, or you don't recall.

21  A          I don't recall.

22  Q          Have you seen this email before today?  And

23  I'm including in looking through the documents that

24  were produced, looking for documents that were

25  produced, in preparation for today's deposition,

1   anything like that.

2   A        I'm not a hundred percent sure.  I mean, I

3   know that I learned about some of the things that are

4   listed here.  I don't recall if I read them in an

5   email or not.

6   Q        Okay.  So you learned about some of these

7   things in the timeframe of February of 2023?

8   A        I'm not sure.

9   Q        Okay.

10  A        I just know -- I know sitting here today

11  that I know some of these things.  I cannot recall

12  exactly how I got that knowledge.  I'm sorry.

13  Q        Is one of those things that the second

14  lawsuit was dismissed voluntarily?

15  A        I believe I found out about that when it

16  happened.

17  Q        Okay.  So somewhere in the February 2023

18  timeframe?

19  A        Yes, if that's when it happened.  I can't

20  recall the exact date.

21  Q        What about Mr. Johnson's illness?  Do you

22  recall when you -- if you ever learned about that?

23  A        I did, yes.  I was sorry to hear about that.

24  Q        Do you recall -- do you recall the rough

25  timeframe of that?

1    A        I think that would have been around the same

2    time.

3    Q        Okay.  What was your understanding as to the

4    resolution of the second lawsuit around that time,

5    February, March of 2023?

6    A        I believe it was dismissed without prejudice

7    voluntarily like the other one.

8    Q        And that left the issue unresolved in

9    Valve's opinion or resolved in Valve's opinion?

10   A        I mean, if -- again, without prejudice means

11   the person can bring the lawsuit again, whether

12   there's merit to it or not, so it's unresolved.

13   Q        I'm going to ask you again the same estimate

14   I asked you before.  Do you know how much time -- at

15   this point in time, do you know how much time you had

16   invested into this matter, the evaluation, the

17   reading, the correspondence, and the like?

18            MR. MACHLEIDT:  Object to form.  Vague.

19   A        Sorry.  Dario looks like he's still

20   thinking.  I want to make sure he gets all his

21   objections.

22            MR. MACHLEIDT:  I'm done.

23   A        Okay.  I would probably give a similar

24   answer as to before.  I'm not sure I could put a

25   number on that in terms of my time without sitting

1  down and looking back through the documents and

2  everything.  But, again, it would have been between

3  one and a thousand, to use the numbers from before for

4  sure.

5  Q        We were closer to more than 10 and maybe

6  more than 20 before.  Are we definitely more than 20

7  now, maybe more than 30?  Do you know --

8  A        Are we talking about all together?

9  Q        All together from beginning to end.  How

10  much have we increased at this point, if you recall?

11  A        I'm not sure off the top of my head.  I'm

12  sorry.

13  Q        Okay.

14          MR. MACHLEIDT:  Joe, just as a favor, just

15  thinking through this, I know we're looking at Exhibit

16  25.  It may help clean up some of my past objections

17  and ongoing objections.  When you're referring to this

18  lawsuit or the second lawsuit, do you mean the Western

19  District of Washington SPIS lawsuit?

20          MR. ZITO:  When I was referring to -- his

21  time commitment, is that what you're talking about?

22          MR. MACHLEIDT:  No.  Just the most recent

23  questions about Mr. Schenck's knowledge about this

24  lawsuit, the second lawsuit.  I just wanted to see if

25  you will clarify for me, for the record, that you mean

1    the Washington SPIS case and not some other second

2    lawsuit.

3              MR. ZITO:  Correct.  I mean the two

4    lawsuit -- the first and second of the two lawsuits

5    that were filed in September of 2022.  One was

6    dismissed in October of 2022.  The second one was

7    dismissed in February of 2023.  Those are the two

8    suits I have been talking about this entire time,

9    other than the current suit we're in.

10   A        That was my understanding as well, that we

11   were talking about the September 2022 lawsuits.

12   Q        I don't want to drag you through all the

13   records.  And let me ask you, you kept accurate

14   records of your time devoted to different projects at

15   Valve during the time period we have been discussing?

16   A        I mean, I'm not at a law firm anymore, so I

17   don't, you know, keep track of my time to the minute.

18   But, you know, you can -- you can make estimations

19   about how much time you spent by looking at the things

20   you did around that time.

21   Q        All right.  Speaking of time, I think we

22   have been going for almost two hours now.  Is that

23   right?  Yeah.  Want to take a break for ten minutes?

24   I know it's, what, 11 o'clock where you are.

25   A        Yeah.  Ten minutes would be good.

1           MR. ZITO:  Okay.  Let's take a short

2     10-minute break.

3           (Recess taken.)

4     Q     Let's stay in chronological -- are we back

5     on the record?  Are we ready?

6           THE COURT REPORTER:  Yes.

7     A     Yes.

8     Q     All right.  The voluntary dismissal was

9     mentioned in the February 3rd letter I believe, which

10    is DDX 24.  January.  I do not know why they're not

11    sorting.

12          In DDX 25, there is a -- it's a February

13    3rd, 2023 email referencing a voluntary dismissal.

14    The voluntary dismissal was attached as Exhibit 7 to

15    the complaint, and it was previously marked as DDX 6.

16    So I'm going to introduce that now and have the

17    witness take a look at it.  And if you could confirm.

18          (Exhibit No. 6 marked for identification.)

19          MR. MACHLEIDT:  Joe, are you uploading DDX

20    6?

21    Q     Yes.  I just uploaded that.  So when it

22    shows up, you can take a look at it.

23    A     Yeah.  I see it now.  Okay.  I have looked

24    at DDX 6.

25    Q     Does that -- have you seen that document

1  before?

2  A        Yes.

3  Q        Does it look to be the dismissal in February

4  of the second of the lawsuits that we're discussing?

5           MR. MACHLEIDT:  Object to form.

6  A        This one -- so DDX 6 is a notice of

7  voluntary dismissal without prejudice of Display

8  Technologies, LLC versus Valve Corporation, and it's

9  got a '22 case number, so I believe that's the

10 September 2022 Display Technologies lawsuit against

11 Valve.  This is a dismissal without prejudice of that.

12 Q        We're about to get to that case.  That's

13 correct.  That is a later case.  Thank you.  So that's

14 not one of the two cases we're discussing, correct?

15           MR. MACHLEIDT:  Object to form.

16 A        I believe this is one of the two cases we

17 were discussing.  This is the Display Technologies

18 case that was filed in September 2022 and dismissed

19 October 13th, 2022.

20 Q        Right.  And it's got a 2024 date because it

21 was attached to the second amended complaint in this

22 case?

23 A        The blue date that says filed 01/16/24 at

24 the top is because it was filed in this case as

25 Exhibit 7 to Document 38.

1    Q        Thank you.  Marked as -- I'm going to mark

2    and introduce as Exhibit DDX 26 a letter from

3    Mr. Meyler, dated May 26th, 2023 and ask you to take a

4    look at it.

5            (Exhibit No. 26 marked for identification.)

6    Q        Have you seen that letter before?

7    A        Sorry.  Give me a minute to look at it.

8            MR. MACHLEIDT:  I'll object to form.

9    A        I do not recall off the top of my head

10   whether I have seen this before or not.  We just

11   looked at some of the email chain that's attached to

12   it, so I definitely have seen parts of it because we

13   have seen parts of it today.

14   Q        You think this is referring to some of the

15   email chains we have been discussing?

16   A        It looks like there's -- let's see.  On page

17   3 of this, there is an email from Samuel Meyler to

18   Dario that looks like DDX 25 maybe.  Yeah.  It looks

19   like it's a different format.  But, yeah, the email on

20   page 3 of DDX 26 looks to be a similar email as to

21   what DDX 25 was, or a portion of that.

22   Q        Do you remember being told about this

23   correspondence in May of 2023?

24           MR. MACHLEIDT:  Objection.  I'll instruct

25   you not to answer on privilege.

1  Q        I'll ask you to take a look at DDX 27.  I'm

2  going to put that up.

3  A        I've looked at the exhibit cover sheet and

4  the letter.  Do you want me to spend time looking at

5  all of the attached claim charts as well?

6  Q        No, no.  Just the cover sheet and the

7  letter.

8  A        Okay.

9  Q        And then I'm going to ask you a question

10 about it.  This is -- I'm going to go ahead and

11 withdraw, because it's repeat of DDX 7, which was

12 attached to the complaint, so let me retract what I

13 just marked as Exhibit 27, and I'm going to mark a

14 different one as DDX 27.  My apologies.

15 A        No problem.  Take your time.

16 Q        Now, let's take a look at DDX 27.

17          (Exhibit No. 27 marked for identification.)

18 Q        Do you recall seeing this email string

19 before?

20 A        Give me a second to look at it please.

21          MR. MACHLEIDT:  And I'll just say objection,

22 because it's not showing up just yet.

23 A        We're talking about DDX 27.

24 Q        Yes, 27, which is an email string.  Top one

25 is 5/26 of 2023, between Mr. Meyler and Mr. -- and

 1   Dario.

 2   A         Okay.  Do you see it now?

 3            MR. MACHLEIDT:  I do.  I'll object.  And I

 4   think the question was, do you recall seeing it?  I'll

 5   let you answer with a yes, no, or you don't recall.

 6   A         I do not believe I've ever seen that.

 7   Q         Do you recall in May of 2023 being aware of

 8   renewed communications from Patent Asset Management or

 9   Mr. Meyler towards -- directed towards Valve?

10            MR. MACHLEIDT:  Object to form.

11   A         I don't recall that.  I don't know when

12   he -- I can't remember when he sent the letter to me.

13   I know we looked at it, or I think we looked at it.  I

14   remember getting the letter from Mr. Meyler.

15   Q         Do you remember being aware of any renewed

16   contact before receiving the letter from Mr. Meyler?

17            MR. MACHLEIDT:  Object to form.

18   A         Not that I recall.

19   Q         All right.  Just to make the record

20   complete, I'm going to show you 28 and 29.  I assume

21   the answer is going to be the same, but I'm going to

22   ask you the question anyway.

23   A         Okay.

24   Q         I'm going to show you both at the same time.

25   No, just 28.  Take a look at 28.  Do you recall seeing

1   that email at any point in time?

2          (Exhibit No. 28 marked for identification.)

3          MR. MACHLEIDT:  Again, give me a minute,

4   because the Steno page seems to be going slow.  You

5   can answer that yes, no, or you don't recall.

6   A       I don't think I've ever seen this before.

7   Q       I'm going to introduce number 29, which is

8   an email to you from Mr. Meyler, and ask if you have

9   seen that before, or recall.

10         (Exhibit No. 29 marked for identification.)

11  A       Well, sorry, I'm laughing because there's

12  not a whole lot here.  It does have my name in the to,

13  or my email address in the to section, and it actually

14  says Ms. Schenck.  But I don't recall specifically

15  receiving this email.  There's just not enough

16  substance for me to know whether I saw that, to

17  remember.

18  Q       Perfectly understandable.  Now I'm going to

19  ask you to take a look at -- where did it go?  Put it

20  back up there -- DDX 7, which was -- is Exhibit 8 to

21  the second amended complaint, which is the June 21

22  letter from Mr. Meyler to you, and ask if you have

23  seen that before.

24         (Exhibit No. 7 marked for identification.)

25  A       Okay.  Give me a minute.  Okay.  Again, I'm

1  only looking at the cover sheet and the letter, which

2  is page 2 of DDX 7.  There are another 40 pages, I

3  believe, of claim charts.  I'm not looking at those at

4  the moment.  But I do recall seeing the letter that is

5  page 2 of DDX 7.

6  Q        And does this appear to be the letter that

7  you referred to earlier as the first time you were

8  aware of renewed communications?

9            MR. MACHLEIDT:  Object to form.

10  A        Yeah.  I -- I have a hard time with the

11  timeframe when you say renewed.  That's the first

12  communication that I recall after the two lawsuits

13  that were filed in 2022 were dismissed without

14  prejudice.

15  Q        If you can recall, what were your personal

16  thoughts at the time that you received this letter?

17            MR. MACHLEIDT:  Object to form.  You may

18  answer, but be mindful of privilege.  I'll leave it

19  there.

20  A        I don't -- I don't recall.  Yeah.  I don't

21  really know how to answer the question.  I don't

22  recall.  I don't know if you said feelings.  I don't

23  know how to answer that.

24  Q        Feelings, impressions, thoughts.

25  A        I mean, I -- I obviously read it in detail

1  at that time.  And then I think, you know, if you

2  read, you know, the Social Positioning Input Systems

3  one, I think, if I'm remembering right -- I would have

4  to do more reading today to be sure.  I think the

5  charts that were attached to this letter were similar

6  to the charts that were attached previously.  So I

7  imagine my thoughts about Social Positioning Input

8  Systems and the merits of that allegation were similar

9  to what I had thought before.  At some point, you

10  know, I looked again at the global settlement and

11  license agreement and realized that one of the patents

12  mentioned here was covered by that license.  And I

13  remember being surprised by that.  But those are the

14  things I can remember off the top of my head.

15  Q        What surprised you about that?

16  A        I mean, this is a letter from a lawyer.

17  Lawyers have ethical duties to do their job.  And I

18  had just sent the license agreement to Mr. Meyler

19  twice.  And he had said in one of his responses to

20  that that he had reviewed it carefully.  Or actually,

21  I think he said it was one of the Rothschild entities

22  had reviewed it carefully.  So I was just surprised

23  that, once again, there would be an assertion against

24  Valve of a patent that we had already paid for and

25  licensed.

1   Q       What was Valve's impression as opposed to

2   yours?

3               MR. MACHLEIDT:  Object to form.

4   A       I don't have --

5   Q       As a 30(b)(6) witness, what was Valve's

6   impression?

7               MR. MACHLEIDT:  Object to form.

8   A       I'll just -- similar to mine.

9   Q       And what was -- did Valve make any decision

10  at that time upon receipt of this letter?

11              MR. MACHLEIDT:  Object to form.  You may

12  answer yes, no, or you don't recall.

13  A       We definitely made a decision by the --

14  whatever date we filed the lawsuit.  Did we make a

15  decision the day we received the letter?  I don't

16  think so.

17  Q       DDX 30.  I'll have you take a look at that.

18              (Exhibit No. 30 marked for identification.)

19  Q       Have you seen DDX 30 before?

20  A       Yes.

21  Q       Okay.  What did you intend to convey to

22  Mr. Meyler by this email?

23  A       I mean, I think I intended to convey the

24  words that I put in the email.

25  Q       That you wanted to speak to him in July?

1   A        I think I said, could we set up a time to

2   chat the week of July 17th, and then I also said I

3   could talk -- I could conceivably chat before then if

4   necessary, but I'll be on the east coast visiting

5   family.  I'm not sure what my exact availability will

6   be.

7   Q        Did you speak to -- what was the intent of

8   having -- your intent or your thoughts or intents on

9   what the conversation would be about with Mr. Meyler

10  in July?

11           MR. MACHLEIDT:  Object to form.

12  A        I don't recall.  We never had that

13  conversation.  He never wrote me back.

14  Q        Why did you never have the conversation?

15  A        Because he never wrote me back.

16  Q        That's your understanding or at least your

17  intent at the time, that had he written you back, you

18  would have had that conversation?

19  A        I mean, that's what this email was for, was

20  could we set up a time to talk?  Because if you recall

21  from the letter we just looked at, he had threatened

22  to file lawsuits, I think, the day I sent this or

23  maybe the day before or the day after, sometime around

24  there.  And I wanted to have a conversation with him

25  about that.

1    Q        Did Mr. Meyler file that lawsuit?

2             MR. MACHLEIDT:  Object to form.

3    A        I don't -- I don't know how to answer that

4    question.  I'm not sure what you mean.

5    Q        Well, you said Mr. Meyler threatened to file

6    a lawsuit, correct?

7    A        Mr. Meyler on behalf of Rothschild and

8    Patent Asset Management and these various companies

9    that were listed in his letter threatened to file

10   lawsuits, yes.

11   Q        Did he file any of the threatened lawsuits

12   on behalf of any of his clients?

13            MR. MACHLEIDT:  Object to form.

14   A        I do not know whether Mr. Meyler was

15   involved, but there were cases filed against Valve

16   by -- and I have a hard time keeping track of all the

17   names, but some or all of those entities and possibly

18   others against Valve were filed, yes.

19   Q        Did they do that before July 17th?

20   A        I don't believe so.

21   Q        Do you know whether or not he was relying

22   upon your statements here that you're headed out of

23   town, and you should talk on the July -- the week of

24   July 17th?

25   A        I can't tell you what he was thinking.

1   Q        Okay.  Did Valve end up filing a lawsuit?

2   A        We did file a lawsuit.

3   Q        Do you know what date that lawsuit was

4   filed?

5   A        I believe it was July 7th, 2023.  But you

6   would have to check the -- check the complaint for

7   that, or the document.  Excuse me.

8   Q        That is the correct date.  I'm going to go

9   ahead and enter that here.  Sorry.  It's a multistep

10  process to add documents.

11  A        No problem.

12  Q        There we go.  I'm going to introduce as DDX

13  31 the front page of the original complaint filed in

14  this case, Docket Entry No. 1.  Let me know when you

15  can see that.

16           (Exhibit No. 31 marked for identification.)

17  A        Okay.  I can see it.

18  Q        Okay.  Can you confirm the July 7th, 2023

19  date?

20  A        Yeah.  Looks like it at the top.

21  Q        Why was a decision made to file before the

22  July 17th date for discussion that you presented to

23  Mr. Meyler?

24           MR. MACHLEIDT:  Objection.  I'll instruct

25  you not to answer that question on the grounds of

1  privilege.

2  Q        Was that made for -- was that a legal

3  decision?

4          MR. MACHLEIDT:  I'm going to give you the

5  same instruction not to answer on grounds of

6  privilege.

7  Q        Why did you tell Mr. Meyler you wanted to

8  chat the week of July 17th?

9  A        At the time, I wanted to chat with him the

10 week of the 17th or before that, as I offered in my

11 email.

12 Q        Did you change your mind between the 29th of

13 June and the 7th of July?

14 A        He didn't write me back.

15 Q        So by the 7th of July, did you no longer

16 want to speak to Mr. Meyler?

17 A        I think if he had written me back at that

18 time, I would have talked to him.

19 Q        Did he contact you after the suit was filed?

20 A        I do not recall receiving anything from him.

21 Q        Why did you include Mr. Meyler in the suit

22 and not just his clients?

23         MR. MACHLEIDT:  Objection.  I'll instruct

24 you not to answer on grounds of privilege.

25 Q        Did you or Valve to your knowledge have any

1    involvement in the Rothschild, et al. versus Starbucks

2    Corporation case in the Southern District of Florida?

3              MR. MACHLEIDT:  Objection.  Form.

4              Yvonne, would you mind reading that question

5    again, please?

6              (Record read.)

7              MR. MACHLEIDT:  Object to form.  Beyond the

8    scope.  You can answer.

9    A         No.

10   Q         And your answer?

11   A         I said no.  Sorry.

12   Q         No.  Okay.  Sorry.  I didn't hear.  All

13   right.  Did you or Valve have any involvement or

14   participation in the Analytical Technologies versus AM

15   Dairy Queen Corp. case in the Eastern Division of

16   Texas?

17             MR. MACHLEIDT:  Same objections.

18   A         I don't even know what any of those words

19   are.  I'm sorry.  Starbucks I understand.  The other

20   ones I don't really, so I don't think so.

21   Q         You don't recognize the Dairy Queen case?

22   A         I guess I do go to Dairy Queen sometimes.

23   But, no, I don't recognize that case.

24   Q         What, to your understanding, do those cases

25   have to do with any damages that Valve may have

1    suffered?

2              MR. MACHLEIDT:  Objection.  Vague.  Beyond

3    the scope.  Form.

4    A       I don't think that I can answer that without

5    divulging privileged information.

6              MR. MACHLEIDT:  Do you want to talk outside?

7              THE WITNESS:  I mean, if he wants to push

8    the question, we can take a break.

9    Q       Yeah.  What relevance -- and you can talk

10   about a couple questions here.  I'll give them to you.

11   What relevance does either of those cases have to any

12   of the issues in the current litigation, Valve versus

13   PAM, et al.?

14             MR. MACHLEIDT:  Same objections.  And I'll

15   instruct not to answer on privilege.

16   A       We can take a break and talk.  Are there any

17   other questions you want us to talk about while we

18   talk about the questions that you want us to talk

19   about?

20   Q       You can talk about those two, and the rest

21   of them are related to those two questions.

22             THE WITNESS:  Okay.  We'll be back.  Five

23   minutes.

24             MR. ZITO:  Take your time.

25             (Recess taken.)

1   Q        So is there any factual non-privileged

2   responses you can give me to that?

3              MR. MACHLEIDT:  Joe, if you don't mind, kind

4   of go back to the questions.  I'll give an

5   instruction, and we'll see kind of how much testimony

6   Mr. Schenck can give.

7   Q        Okay.  If Valve had no participation in

8   those cases, did Valve suffer any damages as a result

9   of those cases?

10             MR. MACHLEIDT:  Object to form.  Outside the

11  scope.  Subject to the discussion about privilege we

12  had a moment ago, I'll let you answer that question.

13  A        Okay.  So when you say "those cases", I take

14  it you are referring to the Starbucks and Dairy Queen

15  cases that you mentioned not very long ago.

16  Q        Correct.

17  A        I am not familiar with the substance of

18  those cases, so I don't know that I can answer your

19  question.

20  Q        How does the -- how do either of those cases

21  impact -- let's start with one issue in this case --

22  the breach of contract issue asserted by Valve in this

23  case?

24             MR. MACHLEIDT:  Same objections.  Give me a

25  minute.  Do you mind reading that back?

  1              (Record read.)

  2              MR. MACHLEIDT:  Same objections.  Same

  3     instruction.  And, again, consistent with the

  4     privilege discussion you and I had, you may answer.

  5     A        So I, again, am not familiar with the

  6     substance of those cases.  There may be some relevance

  7     for legal reasons, but I'm not sure.

  8     Q        How do either of those cases impact the

  9     claim that Valve -- rather, defendants have violated

 10     the anti-trolling statute in the state of Washington?

 11              MR. MACHLEIDT:  Same objections.  Same

 12     cautionary instruction.

 13     A        Yeah.  Same answer from a factual

 14     perspective.  I'm not sure.

 15     Q        I'll go ahead and introduce as Exhibit 21 --

 16     I'm not going in strict chronological order, because

 17     I'm backfilling -- the plaintiff Valve Corporation's

 18     Second Set of Requests for Production to Defendant

 19     Patent Asset Management.

 20              (Exhibit No. 21 marked for identification.)

 21     Q        Do you see that document?

 22     A        I have the document up.  Let me take some

 23     time to look at it.

 24     Q        I'm only going to ask you about 57, 58, 59,

 25     and 60 and ask if you see those two cases mentioned in

1  those specific requests.

2  A        Yes.  So in DDX 21, Request for Production

3  No. 57 and 58, the case Rothschild, et al. versus

4  Starbucks Corp., et al. from the Southern District of

5  Florida is mentioned.  And then in request -- is that

6  are we getting feedback?  Joe, is there like extra

7  noise coming out of something in your office or

8  something?

9  Q        I don't think so.

10  A        It's not too bad.

11  Q        I can mute and see if that helps.  Let me

12  know.

13  A        So Request for Production 59 and 60 --

14  again, this is in DDX 21.  Both of those requests

15  mention Analytical Technologies, LLC versus American

16  Dairy Queen Corp. from ED TEX.  I think you have got

17  to unmute.  There you go.  It wasn't bad.  So we'll

18  roll with it and see what happens with the sound.

19  Q        There could be something in the office

20  making noise.  I don't know if the copier is winding

21  up or something.  I don't hear it.  All right.

22          Do you know the Chong law firm in

23  Wilmington, Delaware?

24  A        Chong.

25  Q        Chong, C-H-O-N-G.  I'll go ahead and mark --

1  I'll go ahead and mark it so you can see it.  This is

2  totally random.  I'm going to make that 9 because

3  there is no 9, and I hate missing numbers.  I'm going

4  to designate that as Exhibit 9, which is a subpoena to

5  the Chong law firm.  Let me know when you can see

6  that.

7           (Exhibit No. 9 marked for identification.)

8  A        Okay.  Yeah.  I can see it.

9  Q        Okay.  Do you know him?  Are you aware of

10 him or that firm?

11 A        Yeah.  I don't -- that name does not ring a

12 bell off the top of my head today.  I don't know

13 who -- I don't know who works there.  You know, it's

14 easier for me to keep track of people than it is to

15 keep track of firms.

16 Q        Does Valve contend that Mr. Chong breached

17 any contracts with Valve?

18           MR. MACHLEIDT:  Object to form.  Outside the

19 scope.  Give me a minute.

20 Q        I didn't hear.  Is that a yes or no?

21           MR. MACHLEIDT:  No, no.  If you're specific

22 to Mr. Chong or the Chong law firm, subject to those

23 objections, I'll let Mr. Schenck answer.

24 A        Yeah.  I can't answer.  I don't know the

25 answer to that sitting here today.

1    Q        Does Valve contend that Mr. Chong helped any

2    of the defendants breach the global settlement and

3    license agreement?

4    A        Again, I don't know the answer to that

5    sitting here today.

6    Q        Does Valve contend that Mr. Chong

7    participated in any activities in violation of the

8    Washington state anti-trolling statute?

9    A        Same answer.

10   Q        Excuse me?

11   A        Same answer.

12   Q        Does Valve contend that any representation

13   of any of the defendants by Mr. Chong was in any way a

14   violation of the Washington anti-trolling statute?

15          MR. MACHLEIDT:  Object to form.

16   A        Again, I don't know the answer to that

17   sitting here today.

18          MR. ZITO:  I'm going to take a break and

19   confer with my co-counsel and then come back and see

20   if we're finished.

21          MR. MACHLEIDT:  Sure.

22          (Recess taken.)

23   Q        Couple of follow-up, close-up questions

24   here.  That's all.

25   A        Yep.

1   Q        So by July 7th, 2023 -- okay.  Going back

2   all the way around to September 27th, 2022, during

3   that time period -- again, I understand it's a rough

4   estimate.  We're over 10 hours.  We're definitely over

5   20 hours at this point.  Are we over a hundred hours

6   at this point of your time?

7            MR. MACHLEIDT:  Object to form.

8   A        So earlier, the question you just asked

9   started with September 27th, 2022.  That's the day

10  that Display Technologies and SPIS filed the lawsuits

11  in Washington.  The questions you asked earlier when

12  we were talking about time, I believe, started before

13  that with communications from Mr. Falcucci in the

14  2021, '22 period, so --

15  Q        You're correct.  Let's include that.  You're

16  correct.  Let's include that.  I'm sorry.  I misspoke.

17  A        Okay.

18  Q        November of 2021, was that correct?

19  A        That sounds about right to me, but I

20  wouldn't be sure without looking at the document.

21  Q        So that timeframe.  I'm sorry.

22  A        Do you want to ask -- yeah.  Do you want to

23  ask the question again?  I want to make sure --

24  Q        Sure.  Let's look -- just so we have the

25  timeframe right, I believe that would be -- might be

1  doc DDX 11.  Yes.  Okay.  That was December 15th,

2  2021.  Right?

3  A         That one is December 15th, 2021.  I thought

4  maybe there was an earlier one to Karl Quackenbush.

5  Yeah, DDX 10 is November 18th from 2021 from Daniel

6  Falcucci to Karl Quackenbush.  I'm not sure that --

7  I'm not sure that's the earliest one, but that seems

8  in the right ballpark.

9  Q         So going from November 18th, 2021 -- thank

10  you for correcting me -- to July 7th, 2023, when the

11  suit was filed, if you could give an estimate.  And

12  obviously documents can prove you wildly wrong.  What

13  would your estimate be of the hours you personally had

14  invested in these multivarious issues that we've

15  talked about?

16           MR. MACHLEIDT:  Object to form.

17  A         If we are talking about the communications

18  from PAM by Mr. Falcucci -- and then there is the

19  Display Technologies and SPIS lawsuits that were filed

20  in the Western District of Washington, and then there

21  was the letter from Samuel Meyler in June of 2023.  If

22  we're scoping it like that, I would say -- my guess

23  would be 40 to 50 hours.  Maybe more.  That's

24  probably -- that's probably a decent estimate.  I'm

25  not positive about that, again, without sort of

```
 1   sitting down and looking back at all the things, but
 2   that seems about right.
 3   Q        For my follow-up question, let's push it up
 4   to 60 hours.  Okay?
 5   A        Sure.
 6   Q        Does Valve put a time value on your time?
 7   As in, some companies, businesses, when they do
 8   projects, they put cost, expenses, overhead, time of
 9   engineer, time of management personnel, whatever it
10   is.  Is there some sort of time accounting for your
11   time at Valve?
12            MR. MACHLEIDT:  Object to form.
13   A        Not that I'm aware of.
14   Q        Okay.  And I'm not just saying in a billable
15   sense, but in a budgeting sense or anything like that.
16   A        Yeah.  Not that I know of.
17   Q        Okay.  Given just a generalized accounting
18   that you take salaries plus overhead plus compensation
19   and the like, and you can peg it at two to two and a
20   half times the salary as the cost of an employee, can
21   you figure an estimated cost for 60 hours of your
22   time --
23            MR. MACHLEIDT:  Object to form.
24   Q        -- using that general basis?
25            MR. MACHLEIDT:  Object to form.
```

A          Sure.  If we're talking about in the 2023
timeframe, I believe -- and, you know, I'd have to go
look at a paystub or something.  I believe my W-2
wages were in the ████ ballpark, so, you know --
and that's per year.  Sorry.  So if you did the math
on that -- and, you know, you can assume I work ████
hours a year or something.  You use your two and a
half times number, two and a half times ████
divided by ████ by ██ would get you an answer.  I
can't do that math in my head.

Q          Okay.  ████ divided by ████ is ██ an
hour.  So that would be -- if you double it, it's ████
an hour, so about ████

          MR. MACHLEIDT:  Object to form.

Q          Is that right?

A          ████ times --

Q          If it's a ████████ dollars per hour,
and you have ██ hours, that would be ████, right?

A          I believe you are doing the math correctly.

Q          Okay.  Take that as a ballpark figure.  So
given the investment of less than ████, maybe less
than ████ what was the business case for starting
a federal lawsuit on July 7th instead of waiting to
see if there was a station later in July?

          MR. MACHLEIDT:  Object to form.

1  A         I think I already answered this.  There was

2  no business case.  There was a legal case.

3              MR. ZITO:  Okay.  All right.  And I'm not

4  going to ask about the legal case because that's

5  privileged.  All right.  I think I'm done.  I turn it

6  over to you, Dario, if you have questions.  If not, I

7  thank the witness for his time.

8              MR. MACHLEIDT:  Sorry, Joe.  Say that again.

9              THE WITNESS:  He said he's done, unless you

10  have questions.

11              MR. MACHLEIDT:  Give me -- give us five

12  minutes.

13              MR. ZITO:  Not a problem.

14              (Recess taken.)

15              MR. MACHLEIDT:  Joe, just to confirm, you

16  have passed the witness?

17              MR. ZITO:  Yes.  Yes.  I've passed the

18  witness.

19                          EXAMINATION

20  BY MR. MACHLEIDT:

21  Q         Mr. Schenck, I'm going to ask you maybe one

22  question.  Maybe two.  Mr. Zito ended his portion of

23  the deposition by asking about business reasons for

24  this lawsuit, and then he raised, but did not ask the

25  question about legal reasons.  My question to you is,

1   setting aside anything that is privileged, what

2   non-privileged reasons did Valve have for filing this

3   lawsuit?

4   A          Sure.  There's a couple.  You know, first,

5   you know, as I discussed with Mr. Zito, there were a

6   lot of threats that Patent Asset Management and

7   Rothschild and the associated entities have brought

8   against Valve that were unresolved.  So getting some

9   resolution there is an important thing to do.  And

10  that's, something I would put in the legal bucket.

11  And then, you know, also those same group breached the

12  contract that they had with Valve.  So that's another

13  legal reason.  There may be more to it than that, but

14  that's what I can think of off the top of my head.

15  Q          Thank you for that.

16             And Joe, Mr. Zito, I'm going to pass the

17  witness back to see if you and are going to do some

18  ping-ponging, but I just wanted to get that clarity.

19             MR. ZITO:  I'm going to not receive that

20  pass and go ahead and thank him for his time.

21             MR. MACHLEIDT:  We reserve the right to read

22  and sign and our standard operating procedure on

23  timing and all that good stuff.

24             MR. ZITO:  Same for us.

25  (Deposition adjourned at 12:18 p.m.) (Signature was reserved.)

1              S I G N A T U R E

2

3

4

5

6          I declare under penalty of perjury under the

7    laws of the State of Washington that I have read my

8    within deposition, and the same is true and accurate,

9    save and except for changes and/or corrections, if any,

10   as indicated by me on the CHANGE SHEET page hereof.

11   Signed in _____, Washington on the _____

12   day of _____, 2025.

13

14

15

16

17                        _____

18                        CHRISTOPHER SCHENCK

19

20

21

22

23

24   Taken:      August 21, 2025
     Case Name:  VALVE v. ROTHSCHILD
25   Cause No.:  2:23-cv-1016-JNW

```
 1                    C E R T I F I C A T E

 2    State of Washington    )

 3                           )  ss.

 4    County of King         )

 5

 6            I, the undersigned Registered Professional
      Reporter and Washington Certified Court Reporter, hereby
      certify that the foregoing deposition upon Oral examination
 7    of CHRISTOPHER SCHENCK was taken before me on August 21,
      2025 and transcribed under my direction;

 8
              That the witness was duly sworn by me pursuant to
 9    RCW 5.28.010 to testify truthfully; that the transcript of
      the deposition is a full, true, and correct transcript to
10    the best of my ability; that I am neither attorney for, nor
      a relative or employee of, any of the parties to the action
11    or any attorney or counsel employed by the parties hereto,
      nor financially interested in its outcome.

12
              I further certify that in accordance with CR
13    30(e), the witness was given the opportunity to examine,
      read, and sign the deposition, within 30 days, upon its
14    completion and submission, unless waiver of signature was
      indicated in the record.

15
              IN WITNESS WHEREOF, I have hereunto set my hand
16    and seal this date, August 25, 2025:

17

18

19                    /S/Yvonne A. Gillette

20                    Yvonne A. Gillette

21                    Washington Certified Court Reporter

22                    License No. 2129

23

24

25
```

```
 1   ERRATA SHEET
     CHANGES IN TESTIMONY
 2   VALVE CORPORATION v ROTHSCHILD, et al.
     Christopher Schenck - 30(b)(6)
 3   August 21, 2025

 4   Page  Line   From                    To

 5   _____

 6   _____

 7   _____

 8   _____

 9   _____

10   _____

11   _____

12   _____

13   _____

14   _____

15   _____

16   _____

17   _____

18   _____

19   _____

20   _____

21   _____

22   _____

23

24   SIGNATURE:_____DATE:_____

25           Christopher Schenck - 30(b)(6)
```





CHRISTOPHER SCHENCK - 30(B)(6)
AUGUST 21, 2025                    Confidential                    JOB NO. 1901218

**bound** 13:7

**breach** 16:4,6 70:22 74:2

**breached** 73:16 80:11

**break** 6:1,2 54:23 55:2 69:8,16 74:18

**briefly** 19:13

**bring** 7:15 52:11

**brought** 15:10 39:17 48:17 80:7

**browser** 21:14

**bucket** 80:10

**budget** 12:24

**budgeting** 77:15

**bunch** 11:2

**business** 7:24 8:5,8, 18 12:9,17,19 14:11,18 15:15 16:6,10,11,13,18 78:22 79:2,23

**businesses** 77:7

**button** 21:13 30:25

**C**

**C-H-O-N-G** 72:25

**call** 23:23

**called** 5:4

**carefully** 62:20,22

**case** 29:1 32:12 35:8 38:21 42:22 43:3,8,10 46:10 54:1 56:9,12,13, 18,22,24 66:14 68:2,15, 21,23 70:21,23 72:3 78:22 79:2,4

**cases** 41:15 46:6 56:14,16 65:15 68:24 69:11 70:8,9,13,15,18, 20 71:6,8,25

**caused** 9:5 10:9

**caution** 10:5

**cautionary** 9:16 11:9 71:12

**chain** 38:13 42:21 57:11

**chains** 57:15

**chance** 50:5

**change** 67:12

**characterize** 22:16 23:2,11,15,17,21,25 24:5

**charts** 58:5 61:3 62:5, 6

**chat** 64:2,3 67:8,9

**check** 66:6

**Chong** 72:22,24,25 73:5,16,22 74:1,6,13

**Christopher** 5:4 6:4 15:4

**chronological** 55:4 71:16

**chronologically** 17:6,7

**city** 6:6

**claim** 58:5 61:3 71:9

**claimed** 13:23

**clarification** 5:25

**clarify** 28:21 53:25

**clarity** 80:18

**clean** 48:18 53:16

**click** 30:25

**client** 32:20

**clients** 65:12 67:22

**close** 26:22

**close-up** 74:23

**closed** 38:21 42:8

**closer** 26:20 53:5

**clunky** 26:21

**co-counsel** 74:19

**coast** 64:4

**collectively** 23:20

**combination** 7:25

**commitment** 53:21

**communication** 15:13 18:23 30:6 61:12

**communications** 19:2,5,7,21 20:9,10,13, 16,17,23 21:1,19 29:25 30:10 31:7 32:7 59:8 61:8 75:13 76:17

**companies** 46:14 65:8 77:7

**company** 16:2

**comparing** 26:21

**compensation** 77:18

**complaint** 8:25 9:2, 6,20,21 10:8,9,11,12 11:2,3,4,6,10,13,14,20, 24 16:25 17:5,7,13 21:3,24 22:5 24:20 25:1,7,20 26:4,19 27:18,20,21,25 28:8,15, 16,17,18,20,24 29:4,5, 7,13,18 33:6,14,19,24 34:1,4 35:11,14 55:15 56:21 58:12 60:21 66:6, 13

**complaints** 40:14

**complete** 59:20

**complex** 10:18,22

**compound** 8:2 12:1 16:15

**conceivably** 64:3

**concerns** 43:19

**confer** 74:19

**confidential** 27:4,6

**confirm** 55:17 66:18 79:15

**confusing** 32:6

**consistent** 71:3

**constraints** 37:8

**contact** 59:16 67:19

**contend** 73:16 74:1, 6,12

**contentions** 48:9

**continuation** 46:24

**continuation-in-part** 46:25

**continuations** 47:6

**continuations-in-part** 47:6

**continue** 28:13

**continued** 15:12

**continuing** 38:1

**contract** 16:4,7 70:22 80:12

**contracts** 73:17

**conversation** 42:25 64:9,13,14,18,24

**convey** 63:21,23

**copied** 41:12,19

**copier** 8:15 72:20

**copy** 25:6,18,19 26:18 36:3 39:2 50:17

**copying** 36:8

**Corp** 68:15 72:4,16

**Corporation** 6:10, 12 56:8 68:2

**Corporation's** 71:17

**correct** 12:11 13:4 16:20 18:13,19,20 25:12,20 26:5 28:12 29:12 30:17 32:9,16 33:15,21 34:25 36:21 37:10 38:1,6,12 43:8 44:4 46:20 47:12,23 48:3 50:17 54:3 56:13, 14 65:6 66:8 70:16 75:15,16,18

**corrected** 26:25

**correcting** 76:10

**correctly** 5:13 47:25 78:19

**correspondence** 38:25 39:20 41:17 44:21 46:11 48:12 52:17 57:23

CHRISTOPHER SCHENCK - 30(B)(6)
AUGUST 21, 2025                          Confidential                          JOB NO. 1901218

**cost** 14:11,15 15:12, 14 16:7 43:2,8,12,13 77:8,20,21

**costs** 14:10 16:7

**counsel** 6:13,15 15:20 19:17 37:13 41:14 43:14

**count** 20:21

**counterclaim** 49:20

**couple** 14:3 23:6 29:2 69:10 74:23 80:4

**court** 43:4 55:6

**courtesy** 37:16

**cover** 18:21 35:1,6 58:3,6 61:1

**covered** 16:5 62:12

**current** 54:9 69:12

---

**D**

**Dairy** 68:15,21,22 70:14 72:16

**damages** 68:25 70:8

**Daniel** 26:6 32:15 76:5

**Dario** 27:3 52:19 57:18 59:1 79:6

**date** 21:22 32:1,2,9,14 34:14,15,16 43:16 45:21 51:20 56:20,23 63:14 66:3,8,19,22

**dated** 44:7 45:20,24 57:3

**dates** 34:18 43:25

**day** 36:20 63:15 64:22, 23 75:9

**day-to-day** 6:18

**DDX** 11:12,13 23:1 24:18 25:3,18 26:3,6,8, 25 27:1,10,12 29:16 30:9,11,19 32:21 33:1, 7,25 34:10,21,23,24 35:8,20 36:4,6,24 39:9 43:16 44:25 46:3 48:5,

14,15 50:3,7 55:10,12, 15,19,24 56:6 57:2,18, 20,21 58:1,11,14,16,23 60:20 61:2,5 63:17,19 66:12 72:2,14 76:1,5

**deal** 43:4

**December** 34:7 35:9,18,24 36:1 44:4,7, 10 45:25 46:8 48:13 76:1,3

**decent** 76:24

**decide** 8:15 12:18 13:2

**decision** 8:8,9,11,13, 17,18,19,21,24 9:5 12:9,10,15 13:11,13,19, 22 14:5,8,11,12,15 15:1,15 63:9,13,15 66:21 67:3

**decisions** 7:24 8:4, 5,7,8,12 9:3 12:17 14:18

**Defendant** 71:18

**defendants** 49:14, 15 71:9 74:2,13

**Delaware** 72:23

**department** 12:19, 23

**depends** 8:8,11

**deposition** 8:22 37:16,20 50:25 79:23 80:25

**deputy** 6:13,15

**designate** 73:4

**detail** 61:25

**determination** 42:11,19

**determining** 42:6

**devoted** 54:14

**difference** 26:2 39:5

**differently** 23:16

**difficult** 9:12

**difficulties** 37:22

**difficulty** 10:1 37:6

**direct** 19:6,9,11

**directed** 59:9

**directly** 20:24

**disconnect** 19:23

**discovery** 29:12,20

**discussed** 46:6 80:5

**discussing** 46:5,9 48:2 54:15 56:4,14,17 57:15

**discussion** 66:22 70:11 71:4

**dismissal** 38:20 39:3,10 55:8,13,14 56:3,7,11

**dismissed** 39:4,16 47:22,23 48:23 51:14 52:6 54:6,7 56:18 61:13

**Display** 10:6 17:16 20:22 34:7 38:20 47:19 48:7,10,16,20,24 49:3 56:7,10,17 75:10 76:19

**District** 53:19 68:2 72:4 76:20

**divided** 78:9,11

**Division** 68:15

**divisionals** 47:7

**divulging** 69:5

**doc** 76:1

**Docket** 66:14

**document** 26:14 30:21 32:18 33:18,19 34:1,4,11 35:8,13,15 42:14 44:22 46:2 55:25 56:25 66:7 71:21,22 75:20

**documents** 29:2,10, 19 31:12 32:12 37:7 40:2 41:23 42:10 45:10, 12 50:23,24 53:1 66:10 76:12

**dollar** 42:15

**dollars** 16:7,8 43:6 78:17

**double** 78:12

**drafted** 43:17

**drag** 54:12

**DT** 49:14

**DTI** 17:8,10

**due** 15:7

**duly** 5:6

**duties** 62:17

---

**E**

**earlier** 27:20 28:14 29:4,8,9 39:1 48:11 61:7 75:8,11 76:4

**earliest** 76:7

**early** 36:1

**easier** 5:17 73:14

**east** 64:4

**Eastern** 68:15

**ED** 72:16

**email** 23:17,22,23 24:1,2,5,8 26:6 27:10, 23 30:13 34:14,17 35:1, 7,20,21,24 36:7,9,11,21 38:6,9,13,14,19 39:2, 22,23 41:4,5,10 42:12, 13,14,21,24 44:6,20 45:16,22 46:1 47:14 50:11,16,18,22 51:5 55:13 57:11,15,17,19, 20 58:18,24 60:1,8,13, 15 63:22,24 64:19 67:11

**emails** 18:24 22:16, 24 23:12 27:12,21,24 40:22 41:11,20 44:12

**employee** 77:20

**employees** 19:14

**employment** 6:19

**end** 21:20 33:21 37:6 53:9 66:1

**ended** 79:22

**engineer** 77:9

**enter** 66:9

**entire** 27:6 54:8

**entities** 47:3 49:20 62:21 65:17 80:7

**Entry** 66:14

**estimate** 42:9 52:13 75:4 76:11,13,24

**estimated** 42:4 77:21

**estimations** 54:18

**et al** 68:1 69:13 72:3,4

**ethical** 62:17

**evaluate** 41:8

**evaluated** 30:7

**evaluation** 16:3 29:25 41:22 43:7 52:16

**event** 27:11,16

**exact** 43:25 51:20 64:5

**EXAMINATION** 5:9 79:19

**examples** 16:13

**Excellent** 34:19

**exchange** 41:17

**excluded** 7:3

**excluding** 15:21

**Excuse** 25:13 33:10 66:7 74:10

**execution** 18:10

**exhibit** 11:15 17:13 23:1,10,23,25 24:2,4,7, 19,21,25 25:4,6,9,13, 14,16,18,19 26:3,4,11, 19 27:11 29:18 30:20 31:4 32:21,24 33:1,2,5, 14,15,17,20,23 34:4,10, 11 35:2,5,8 36:25 37:10 38:2,3 40:23 44:2,6,16, 18 45:1,2,11,23 50:9 53:15 55:14,18 56:25 57:2,5 58:3,13,17 60:2, 10,20,24 63:18 66:16 71:15,20 73:4,7

**exhibits** 21:8,11 22:15 24:10 33:4 37:9, 14

**existence** 38:16

**expenses** 77:8

**experience** 7:11

**expert** 17:3

**explain** 28:15,18

**explanation** 43:18

**extend** 37:19

**extends** 37:15 47:5

**extensive** 20:3,4,7

**extent** 13:6 30:3

**extra** 72:6

---

## F

**fact** 10:6,7,9 17:9,20 18:5 43:2 47:11

**facts** 10:12,13,15 11:2,5,24 12:4,6 28:16

**factual** 9:4,19,20,25 10:2 17:6 18:21 29:21, 22 70:1 71:13

**factually** 17:22

**Fair** 21:23 22:11 42:13

**Falcucci** 19:21 26:7 30:1 31:5 32:15 75:13 76:6,18

**Falcucci's** 32:7

**familiar** 70:17 71:5

**family** 64:5

**favor** 53:14

**fear** 49:5,6,10,11

**February** 51:7,17 52:5 54:7 55:9,12 56:3

**federal** 78:23

**feedback** 72:6

**feel** 5:24 12:24 34:9

**feelings** 61:22,24

**figure** 77:21 78:20

**file** 8:22,25 9:5 12:9, 10,18,24 13:11,23 14:9 15:15 16:2,8,19 48:25 64:22 65:1,5,9,11 66:2, 21

**filed** 9:21 10:8,10,16 11:6,25 16:20 17:16 28:1,15,19 29:23 38:20, 22 39:17 46:14,23 54:5 56:18,23,24 61:13 63:14 65:15,18 66:4,13 67:19 75:10 76:11,19

**filing** 9:2,13 12:15 13:14 14:9,14,23 15:14 16:13 28:16 66:1 80:2

**find** 27:25 37:10,14

**fine** 37:11

**finished** 74:20

**firm** 7:17 54:16 72:22 73:5,10,22

**firms** 73:15

**firsthand** 24:14,15

**Florida** 68:2 72:5

**follow-up** 74:23 77:3

**form** 8:1,3,23 9:7,15 10:4,17,20 11:8 12:1, 22,25 13:16 14:13,20 15:8,16 16:14,23 17:21 18:6 19:3,16,22 20:5,19 21:25 22:6,18 23:4 24:12 25:8,21 27:13 28:2,22 29:20 30:2,12 31:8,21 33:22 34:8 38:18 39:24 41:9,18,25 43:21 44:5 46:21 47:13 48:22 49:19 50:14 52:18 56:5,15 57:8 59:10,17 61:9,17 63:3, 7,11 64:11 65:2,13 68:3,7 69:3 70:10 73:18 74:15 75:7 76:16 77:12, 23,25 78:14,25

**formal** 44:12

**format** 57:19

**forms** 7:21

**found** 28:17 51:15

**four-page** 40:21

**fourth** 39:7

**free** 5:24

**front** 66:13

**full** 17:2,3

---

## G

**gain** 42:16

**gave** 37:16

**general** 6:13,15 19:17 77:24

**generalized** 77:17

**generally** 6:14

**give** 14:17,25 15:3 16:12 20:8,11 22:7 26:23 28:4 30:2 35:3,19 40:7 52:23 57:7 58:20 60:3,25 67:4 69:10 70:2,4,6,24 73:19 76:11 79:11

**giving** 40:5

**global** 18:10 34:13 35:23 36:3,10,13 38:17 40:12 46:19 47:1,5 48:6,9 49:18,22 62:10 74:2

**good** 5:11,12 29:15 39:18 54:25 80:23

**goofy** 39:8

**Great** 11:5 38:6,10

**greater** 42:4,5

**grounds** 12:21 22:1 66:25 67:5,24

**group** 14:8 41:8 80:11

**guess** 34:21 40:17 68:22 76:22

---

## H

**half** 41:6 77:20 78:8,17

**Hang** 21:7

**happen** 39:12

**happened** 9:4,13,21 10:2,8 17:24 20:9,12 29:22 39:18 51:16,19

**happy** 14:24

**hard** 5:14 13:10 33:3 39:15 40:5,15 47:17 61:10 65:16

**hate** 73:3

**head** 32:18 40:1,6 53:11 57:9 62:14 73:12 78:10 80:14

**headed** 65:22

**hear** 5:14,18,23 51:23 68:12 72:21 73:20

**heard** 28:20

**helped** 74:1

**helping** 41:8

**helps** 72:11

**hesitating** 48:4

**hired** 43:1

**hit** 21:13

**hoc** 41:14

**hold** 19:15

**hoped** 39:14

**hoping** 42:25 43:13

**hour** 40:8 41:6 78:12, 13,17

**hours** 37:20 40:4,8, 11,18,19 42:5 54:22 75:4,5 76:13,23 77:4,21 78:7,18

**hundred** 51:2 75:5

**hyphens** 47:7

**hypothetical** 15:17, 19

**hypotheticals** 16:15

---

**I**

---

**idea** 8:20 20:8 50:2

**identification** 11:15 21:9 24:21 25:4, 14 30:20 32:24 33:2 35:2 36:25 40:23 44:18 45:1,2 50:9 55:18 57:5 58:17 60:2,10,24 63:18 66:16 71:20 73:7

**identified** 44:3

**identify** 10:14 11:23

**illness** 51:21

**imagine** 62:7

**impact** 70:21 71:8

**impetus** 9:13

**implies** 25:23

**important** 80:9

**impossible** 10:24 49:11

**impression** 63:1,6

**impressions** 61:24

**include** 42:6 67:21 75:15,16

**included** 21:23 22:4 35:24

**including** 40:12 49:14 50:23

**inclusion** 7:13

**increased** 53:10

**incurred** 13:14

**indirectly** 20:24

**information** 9:9 17:23 19:4 28:25 30:4 69:5

**informed** 34:7

**infringement** 49:21

**Input** 46:10 48:3 62:2, 7

**instance** 15:12

**instituting** 14:19

**instruct** 22:1 57:24 66:24 67:23 69:15

**instructing** 12:20

**instruction** 9:16 13:6 22:7 50:20 67:5 70:5 71:3,12

**instructions** 11:9 12:13 16:16,24

**intellectual** 7:21

**intend** 63:21

**intended** 63:23

**intent** 37:19 64:7,8,17

**intents** 64:8

**internally** 20:9

**interpretation** 27:24

**interrogatory** 12:6 17:1 28:24

**introduce** 25:3,13 32:21 33:1 38:2 55:16 57:2 60:7 66:12 71:15

**invested** 52:16 76:14

**investment** 78:21

**involved** 6:19,21,25 7:1,7,8,9 8:24 14:10,22, 24,25 17:25 18:3,4,9,18 19:2 40:2 41:16 46:19 65:15

**involvement** 68:1, 13

**involving** 7:20 47:22

**issue** 12:15 48:20 49:2,16,17 52:8 70:21, 22

**issues** 6:19,21 28:19 69:12 76:14

---

**J**

---

**January** 45:14,21 46:1,5 48:1,6,19 55:10

**Jay** 36:8 41:7,12,13

**job** 6:11 7:16 62:17

**Joe** 22:10 25:8 34:23 37:11,25 53:14 55:19 70:3 72:6 79:8,15 80:16

**Johnson** 36:8 41:7, 13

**Johnson's** 51:21

**July** 63:25 64:2,10 65:19,23,24 66:5,18,22 67:8,13,15 75:1 76:10 78:23,24

**June** 17:7 60:21 67:13 76:21

---

**K**

---

**Karl** 19:12,17 26:7 31:16,17 76:4,6

**Kearney** 36:9 41:7, 13

**keeping** 65:16

**kind** 6:17 37:21 70:3,5

**kinds** 7:22

**knowledge** 17:20 24:14,15 51:12 53:23 67:25

---

**L**

---

**language** 22:24

**large** 10:11

**latest** 46:11

**laughing** 60:11

**Lavery** 15:4 19:12,17

**law** 7:17,18 54:16 72:22 73:5,22

**lawsuit** 12:14,15,18, 24 13:11,15,23 14:5,9, 14,19,23 15:10 16:2,20 20:21,22 21:3 29:23 39:16 45:23 46:23 48:17,23,25 51:14 52:4, 11 53:18,19,24 54:2,4 56:10 63:14 65:1,6 66:1,2,3 78:23 79:24 80:3

**lawsuits** 46:13,18 54:4,11 56:4 61:12 64:22 65:10,11 75:10 76:19

**lawyer** 43:1,4 62:16

**lawyers** 12:18 43:1 62:17

**lead** 41:14

**learned** 51:3,6,22

**leave** 61:18

**led** 29:4

**Lee** 46:15 47:2

**left** 52:8

**legal** 7:24 8:4,7,18 9:3,19 10:3 12:3,4,10, 14,15,23 13:19 14:11, 14 15:11 16:1,2,4,12, 20,22 22:17,25 23:12, 18,22,24 24:1,3,6,8,11 28:19 48:25 67:2 71:7 79:2,4,25 80:10,13

**legally** 16:9

**letter** 34:10,12,14,15 35:6,9,10,21,22 44:4,7 45:13,20 46:7 48:5,12, 13,16 55:9 57:2,6 58:4, 7 59:12,14,16 60:22 61:1,4,6,16 62:5,16 63:10,15 64:21 65:9 76:21

**letters** 34:18 43:18 44:10,11,12 46:7

**Liam** 15:4 19:12,17

**license** 18:10 34:13 35:23 36:3,11,14 38:17 40:13 47:2,5,9,16 48:7 49:4,18,23 62:11,12,18 74:3

**licensed** 47:18 62:25

**licensing** 46:20 48:10

**list** 9:20 10:12 12:4,6

**listed** 46:25 47:1 51:4 65:9

**lists** 11:2

**litigate** 16:8

**litigation** 6:21,23,24, 25 7:2,6,19,22 13:3 17:8 43:13 47:22 48:2,3 69:12

**live** 6:8

**LLC** 38:21 48:10 56:8 72:15

**Located** 38:1

**log** 20:8 30:4

**long** 33:11 70:15

**longer** 67:15

**looked** 21:17 27:12 28:10 29:16 30:7 31:4 32:25 33:12 38:4 39:22 41:2 45:10 50:10 55:23 57:11 58:3 59:13 62:10 64:21

**lost** 23:5

**lot** 29:1,3,6 43:2 44:8,9 60:12 80:6

**louder** 5:20

**lower** 42:24

**Lynch** 15:4

## M

**MACHLEIDT** 8:1,3, 23 9:7,15 10:4,17,20 11:8 12:1,12,20,25 13:5,16,25 14:2,6,13,20 15:8,16,20 16:14,23 17:21 18:6 19:3,16,22 20:5,19 21:25 22:6,10, 12,18 23:4 24:12 25:8, 21 27:5,13 28:2,22 30:2,12 31:8,21 32:3 33:22 34:8 37:11,23 38:18 39:24 41:9,18,25 43:21 44:5 46:21 47:13 48:22 49:19 50:13,19 52:18,22 53:14,22 55:19 56:5,15 57:8,24 58:21 59:3,10,17 60:3 61:9,17 63:3,7,11 64:11 65:2,13 66:24 67:4,23 68:3,7,17 69:2,6,14 70:3,10,24 71:2,11 73:18,21 74:15,21 75:7 76:16 77:12,23,25 78:14,25 79:8,11,15,20 80:21

**made** 8:11,24 12:9 13:22 14:8 19:7 23:6

30:9,16 42:11 63:13 66:21 67:2

**make** 7:23 8:4,7,21 9:5 13:11,13 14:5 31:1 34:21 42:14,15,20 52:20 54:18 59:19 63:9, 14 73:2 75:23

**maker** 8:9,13

**makes** 12:7 39:5

**making** 8:17 15:14 18:21 72:20

**management** 15:13 20:17,25 21:1 46:15 47:3 49:15 59:8 65:8 71:19 77:9 80:6

**March** 18:22 20:18 27:10 28:9 31:7 52:5

**mark** 27:4,5 34:20 57:1 58:13 72:25 73:1

**marked** 11:15 21:8 24:18,21 25:4,14 27:10 30:20 32:24 33:2 35:2, 5,20 36:25 40:23 44:18 45:1,2 50:9 55:15,18 57:1,5 58:13,17 60:2, 10,24 63:18 66:16 71:20 73:7

**marking** 21:5

**matches** 39:11

**materials** 43:19

**math** 78:5,10,19

**matter** 41:8 52:16

**means** 17:10 48:24 52:10

**member** 23:18,23 24:1,2,5,8

**members** 22:17,25 23:12,22 24:11

**mention** 72:15

**mentioned** 18:11 27:17,22 45:15 49:22 55:9 62:12 70:15 71:25 72:5

**mentions** 44:20

**merit** 42:22 43:3,7,10 52:12

**merits** 62:8

**message** 23:22 24:1 31:18

**messages** 22:16,24 23:12 28:10

**Meyler** 35:7,22 36:2, 8,12,15,16 38:9,11,14, 15,22,25 39:20 41:11, 12 43:19 44:13 45:20 46:5,14 47:11,15 48:1 50:12 57:3,17 58:25 59:9,14,16 60:8,22 62:18 63:22 64:9 65:1, 5,7,14 66:23 67:7,16,21 76:21

**Meyler's** 38:5 41:5 45:13

**million** 16:8

**mind** 41:25 67:12 68:4 70:3,25

**mindful** 61:18

**mine** 63:8

**mineral** 7:6

**minute** 30:3 38:10 41:6 54:17 57:7 60:3,25 70:25 73:19

**minutes** 54:23,25 69:23 79:12

**misleading** 48:11

**missing** 45:25 47:8,9 73:3

**misspoke** 75:16

**misstatement** 25:22

**misstates** 10:20 25:9 28:2 31:22

**mistake** 31:10

**misunderstanding** 28:14

**moment** 7:2 21:11 26:12 37:1 44:3 61:4 70:12

**Monday** 41:4

**money** 13:3,14,18,23 14:5 43:2

CHRISTOPHER SCHENCK - 30(B)(6)
AUGUST 21, 2025                    Confidential                    JOB NO. 1901218

**morning** 5:11,12

**multiple** 37:7

**multistep** 66:9

**multivarious** 76:14

**mute** 37:22,24 72:11

**muttering** 37:21

---

**N**

**names** 14:25 15:3 47:4 65:17

**necessarily** 17:6

**negotiation** 18:9,19

**noise** 72:7,20

**non-privileged** 22:3,9 70:1 80:2

**normal** 6:4

**note** 41:3

**notice** 38:19 39:2,9 45:23 56:6

**November** 43:16 75:18 76:5,9

**number** 18:5 22:21 33:11,18 35:13 40:4,21 42:5 52:25 56:9 60:7 78:8

**numbers** 53:3 73:3

**numerous** 18:23

---

**O**

**object** 8:1,3,23 9:7,15 10:4,17,20 11:8 12:1, 22,25 13:16,25 14:2,13, 20 15:8,16 16:14,23 17:21 18:6 19:3,16,22 20:5,19 21:25 22:6,18 23:4 24:12 25:8,9,21 27:13 28:2,22 30:2,12 31:8,21 33:22 34:8 38:18 39:24 41:9,18,25 43:21 44:5 46:21 47:13 48:22 49:19 50:14 52:18 56:5,15 57:8 59:3,10,17 61:9,17

63:3,7,11 64:11 65:2,13 68:7 70:10 73:18 74:15 75:7 76:16 77:12,23,25 78:14,25

**objection** 12:20 13:5 14:6 32:3 50:19 57:24 58:21 66:24 67:23 68:3 69:2

**objections** 12:12 16:16 52:21 53:16,17 68:17 69:14 70:24 71:2, 11 73:23

**objective** 38:24

**obtain** 39:14

**occurrence** 17:9

**October** 34:6 35:10, 18 36:2,10,20 38:5,8,14 39:21,22,23 41:4,5,12 42:24 46:7,16,17 47:12, 15,21 54:6 56:19

**offer** 42:15,16,20

**offered** 67:10

**offering** 43:12

**office** 72:7,19

**ongoing** 53:17

**operating** 80:22

**opinion** 52:9

**opposed** 44:12 63:1

**order** 34:20 37:10,18 71:16

**original** 66:13

**originally** 23:20 46:6

**outweighs** 15:13

**overhead** 77:8,18

**owned** 46:14

---

**P**

**p.m.** 80:25

**pages** 39:7 40:16 45:25 61:2

**paid** 62:24

**PAM** 49:14 69:13 76:18

**paper** 8:15,16

**paragraph** 17:12 18:5,7,11,15,17,22,24 19:1 21:2 22:24 23:11 28:8 33:21 34:3 35:10, 16

**paragraphs** 18:22

**paralegal** 41:13

**paraphrasing** 28:17

**part** 9:9 41:7 43:5,15 44:22

**partially** 39:13,14

**participated** 74:7

**participation** 68:14 70:7

**parties** 49:16

**partner** 7:17

**parts** 9:19 57:12,13

**pass** 80:16,20

**passed** 79:16,17

**past** 53:16

**patent** 7:19 15:13 20:16,24 21:1 42:6 46:15,19,22,24,25 47:3, 19,22 48:21 49:4,15,21 59:8 62:24 65:8 71:19 80:6

**patents** 49:17 62:11

**patiently** 37:12,18

**pause** 26:13

**paying** 43:3

**paystub** 78:3

**peg** 77:19

**people** 14:8,22,25 19:13 73:14

**percent** 51:2

**Perfectly** 60:18

**period** 39:19,21 54:15 75:3,14

**person** 52:11

**personal** 61:15

**personally** 31:15 32:10 76:13

**personnel** 77:9

**perspective** 71:14

**ping-ponging** 80:18

**place** 21:14 29:7

**plaintiff** 71:17

**Plenty** 16:15

**point** 44:13 52:15 53:10 60:1 62:9 75:5,6

**pointed** 47:11

**pointing** 38:16

**pop** 31:2

**portion** 57:21 79:22

**position** 48:20

**Positioning** 46:10 48:3 62:2,7

**positions** 19:15

**positive** 43:7 76:25

**possibly** 65:17

**practice** 7:18

**precise** 35:4

**prejudice** 39:4,10 47:23,24 48:24 52:6,10 56:7,11 61:14

**premarked** 44:23

**preparation** 50:25

**presented** 28:20 66:22

**presently** 49:20

**pretty** 17:2 33:11

**prevent** 13:20,21

**previous** 27:11 31:6

**previously** 26:14 55:15 62:6

**Primarily** 7:19

CHRISTOPHER SCHENCK - 30(B)(6)
AUGUST 21, 2025                    Confidential                    JOB NO. 1901218

**primary** 8:9,13

**prior** 20:17 21:3 25:1 28:3 30:16 31:7 32:7,9 36:1 41:10 44:10,13 46:7

**privilege** 12:22 13:6, 8,20,24 15:7 16:5,24 20:2,8 22:2 27:14 30:4 42:1 49:9 57:25 61:18 67:1,6,24 69:15 70:11 71:4

**privileged** 9:9,24 11:1 15:22 16:11 17:22 19:4,24 69:5 79:5 80:1

**pro** 41:14

**problem** 5:22 27:9 37:8 58:15 66:11 79:13

**procedure** 80:22

**proceedings** 26:13

**process** 15:6 66:10

**produced** 19:10 20:7 29:11,20 31:13 32:11 43:22 44:14 50:4, 24,25

**product** 9:24 11:1 22:2

**production** 32:19 71:18 72:2,13

**projects** 54:14 77:8

**pronouncing** 5:13

**proper** 27:24

**properly** 50:4

**property** 7:21

**prosecution** 7:20

**prove** 76:12

**provided** 12:5 29:1 32:19 48:12

**publish** 21:4 24:19 36:24 40:21 44:16,25 50:3

**published** 11:12 30:18 36:5

**pull** 10:12 11:17,18 24:7 33:16

**push** 69:7 77:3

**put** 8:15 9:8 30:24 34:14 39:19 40:3 52:24 58:2 60:19 63:24 77:6,8 80:10

**putting** 8:16

---

### Q

**Quackenbush** 19:12,18 26:7 31:16 76:4,6

**Queen** 68:15,21,22 70:14 72:16

**question** 5:24 9:18, 23 10:19,22,23,24 12:2, 3,7,21 13:9 14:4 15:2, 18,24,25 17:11 22:1,13 23:19 25:23 28:11 29:15 37:4 39:16 41:21 45:10 49:8 58:9 59:4,22 61:21 65:4 66:25 68:4 69:8 70:12,19 75:8,23 77:3 79:22,25

**questions** 14:3 53:23 69:10,17,18,21 70:4 74:23 75:11 79:6, 10

**quiet** 5:16

**quote** 42:6,8

---

### R

**raised** 79:24

**random** 73:2

**range** 6:16 8:14 40:7

**rate** 49:6,10,11

**re-uploaded** 26:16

**read** 9:20 11:5 16:25 18:7,12,24 19:1 20:14 33:12 39:1 41:10 44:19 47:17 48:16 51:4 61:25 62:2 68:6 71:1 80:21

**reading** 22:23 23:11 52:17 62:4 68:4 70:25

**ready** 37:3,25 55:5

**realized** 62:11

**reason** 9:1 10:15 11:24 16:9,10 22:3,9 27:9 39:3 48:4 80:13

**reasoning** 27:19

**reasons** 9:2 16:11, 12,13,18,21,22 28:15 71:7 79:23,25 80:2

**recall** 19:9 20:4,25 32:17 34:16 36:12 42:2 43:17 44:9,11 47:4 50:11,15,17,20,21 51:4, 11,20,22,24 53:10 57:9 58:18 59:4,5,7,11,18,25 60:5,9,14 61:4,12,15, 20,22 63:12 64:12,20 67:20

**receipt** 63:10

**receive** 80:19

**received** 30:6,7 31:6 61:16 63:15

**receiving** 36:13 50:11,17 59:16 60:15 67:20

**recent** 53:22

**recess** 55:3 69:25 74:22 79:14

**recipient** 19:6 24:17 30:10

**recipients** 19:9,11

**recognize** 25:6 68:21,23

**recollection** 21:18 30:15 45:7,18

**record** 6:3 26:12 37:1,3,12,15,22,23 53:25 55:5 59:19 68:6 71:1

**records** 54:13,14

**redactions** 27:1,2

**reference** 36:4 48:6

**referenced** 21:2,24 22:4

**references** 33:20 34:4 48:16

**referencing** 55:13

**referred** 35:10 41:24 45:11 61:7

**referring** 29:19 53:17,20 57:14 70:14

**refers** 18:15 35:18

**refresh** 21:18

**relate** 19:5

**related** 20:10,23 49:15 69:21

**relevance** 69:9,11 71:6

**relevant** 11:2

**relying** 65:21

**remember** 21:22 40:16 43:25 57:22 59:12,14,15 60:17 62:13,14

**remembering** 13:10 62:3

**remotely** 37:8

**removed** 26:14

**renewed** 59:8,15 61:8,11

**repeat** 58:11

**REPORTER** 55:6

**reporting** 38:22

**reports** 17:3

**representation** 74:12

**request** 45:12,24 72:2,5,13

**requests** 71:18 72:1, 14

**reread** 40:12

**reserve** 80:21

**reserved** 80:25

**reside** 6:7

**resolution** 52:4 80:9

**resolved** 48:21
49:16,25 52:9

**responded** 24:10,16
31:18 36:21 38:5,9,11

**responding** 36:9

**response** 19:20
25:12 31:6,15,20,24
32:1,4,6,9,10,13,15
36:7,13 38:16 41:4
48:13

**responses** 31:13
62:19 70:2

**responsibilities**
6:14

**rest** 17:3 69:20

**restrict** 42:1

**result** 70:8

**retired** 19:18,19

**retract** 50:3 58:12

**reveal** 9:8 13:7 17:22
19:4

**review** 20:3

**reviewed** 19:25
62:20,22

**reviewing** 39:22

**rights** 7:6

**ring** 73:11

**role** 7:23

**roll** 72:18

**Rothschild** 46:15
47:2 48:11 62:21 65:7
68:1 72:3 80:7

**rough** 51:24 75:3

**rules** 48:25

---

**S**

**S-C-H-E-N-C-K** 6:5

**salaries** 77:18

**salary** 77:20

**Sammamish** 6:8

**Samuel** 35:6,21 36:7
57:17 76:21

**Schenck** 5:4,11 6:5
15:5 22:12 60:14 70:6
73:23 79:21

**Schenck's** 53:23

**scope** 68:8 69:3
70:11 73:19

**scoping** 76:22

**Scott** 15:4

**section** 60:13

**seeking** 38:24

**sending** 18:23 44:11

**sense** 20:11 30:8
77:15

**separate** 14:16
16:10

**separately** 23:21

**September** 46:16,
18,23 54:5,11 56:10,18
75:2,9

**sequential** 44:24

**serve** 41:14

**service** 45:24

**set** 64:1,20 71:18

**setting** 80:1

**settlement** 18:10
34:13 35:23 36:3,10,13
38:17 40:13 46:20 47:1,
5 48:7,9 49:18,22 62:10
74:2

**sheet** 35:1,6 58:3,6
61:1

**short** 55:1

**show** 43:4 45:3 59:20,
24

**showing** 58:22

**shown** 29:2

**shows** 40:24 44:17
55:22

**sign** 80:22

**signature** 80:25

**similar** 52:23 57:20
62:5,8 63:8

**simply** 37:21

**sit** 37:11,18

**sitting** 20:25 34:16
37:3 51:10 52:25 73:25
74:5,17 77:1

**situation** 39:12

**skill** 7:11

**slightly** 29:17

**slow** 60:4

**Social** 46:10 48:3
62:2,7

**software** 26:21 39:8

**sort** 40:3 76:25 77:10

**sorting** 55:11

**sorts** 8:12

**sound** 5:17 72:18

**sounds** 75:19

**Southern** 68:2 72:4

**speak** 63:25 64:7
67:16

**Speaking** 54:21

**special** 27:23

**specific** 6:17 40:5
72:1 73:21

**specifically** 47:1
49:22 60:14

**Speculation** 14:21

**spell** 26:10

**spelled** 6:4

**spend** 13:3,14,23
14:5 58:4

**spending** 13:18

**spent** 13:3 54:19

**SPIS** 53:19 54:1 75:10
76:19

**standard** 80:22

**Starbucks** 68:1,19
70:14 72:4

**start** 18:1 23:8 70:21

**started** 18:2 75:9,12

**starting** 78:22

**starts** 34:12

**state** 6:2,6 25:22
71:10 74:8

**statement** 43:11

**statements** 23:6
65:22

**station** 78:24

**statute** 71:10 74:8,14

**stay** 55:4

**Steno** 60:4

**Steve** 19:12,18

**strict** 71:16

**string** 40:22 42:14
58:18,24

**strong** 49:6

**stuff** 37:18 80:23

**subject** 70:11 73:22

**subpoena** 73:4

**subsequent** 32:13
47:21

**substance** 13:7
60:16 70:17 71:6

**sued** 10:7 17:8 49:3

**suffer** 70:8

**suffered** 69:1

**suing** 49:17

**suit** 8:22 9:14 10:16
11:25 12:10 15:14,15
16:8,13,19 17:17,23,25
18:3 28:1 29:21 54:9
67:19,21 76:11

**suits** 54:8

**sum** 17:2,3 42:4

**supposed** 21:14

**surprised** 62:13,15,
22

**sworn** 5:6

**system** 33:3

**Systems** 46:10 48:3
62:2,8

---

**T**

---

**taking** 27:20

**talk** 5:20 9:22 64:3,20
65:23 69:6,9,16,17,18,
20

**talked** 67:18 76:15

**talking** 9:4 17:19 26:3
27:2 35:16 53:8,21
54:8,11 58:23 75:12
76:17 78:1

**talks** 18:22 28:8

**team** 22:17,25 23:13,
18,22,24 24:1,3,6,8,11
41:8

**technical** 37:22

**Technologies** 10:6
17:16 20:22 34:7 38:20
47:20 48:8,10,17,21,24
49:3 56:8,10,17 68:14
72:15 75:10 76:19

**technology** 7:20
42:8

**template** 34:18

**ten** 16:7 54:23,25

**terms** 52:25

**testified** 5:6

**testimony** 10:21
28:3 31:22 70:5

**TEX** 72:16

**Texas** 68:16

**thanking** 36:21

**thing** 8:16 10:2 20:14
25:10 26:1 35:5 39:18
80:9

**things** 7:20 9:4,11,21,
24 12:4 20:12 26:21
29:22 34:20 37:15
40:17 43:22 44:1 47:8
51:3,7,11,13 54:19
62:14 77:1

**thinking** 43:5 50:2
52:20 53:15 65:25

**thought** 15:6 62:9
76:3

**thoughts** 61:16,24
62:7 64:8

**thousand** 40:8,10
42:15 43:6 53:3 78:17

**threatened** 64:21
65:5,9,11

**threats** 80:6

**Thursday** 5:1

**time** 6:1 13:10 19:8
21:16 22:19 30:9 33:4
35:13 37:7,16,17 39:15,
19,21 40:5,12 41:5 42:3
44:13 47:18 52:2,4,14,
15,25 53:21 54:8,14,15,
17,19,20,21 58:4,15
59:24 60:1 61:7,10,16
62:1 63:10 64:1,17,20
65:16 67:9,18 69:24
71:23 75:3,6,12 77:6,8,
9,10,11,22 79:7 80:20

**timeframe** 51:7,18,
25 61:11 75:21,25 78:2

**times** 77:20 78:8,16

**timing** 80:23

**title** 6:11

**today** 20:25 34:16
35:8 50:22 51:10 57:13
62:4 73:12,25 74:5,17

**today's** 50:25

**told** 31:23 57:22

**top** 32:17 33:17 36:7
38:13 39:25 40:6 42:23
44:20 53:11 56:24 57:9
58:24 62:14 66:20
73:12 80:14

**totally** 73:2

**touching** 27:14

**town** 65:23

**track** 54:17 65:16
73:14,15

**training** 7:11

**transcript** 27:6

**triggering** 27:11,15

**turn** 5:17 79:5

**two-page** 34:12

**type** 46:2

---

**U**

---

**unavailable** 15:7

**underlying** 41:23

**understand** 5:23
8:2 27:19 33:10 38:15
68:19 75:3

**understandable**
60:18

**understanding**
14:12 28:13 31:19
36:17 46:4 49:25 52:3
54:10 64:16 68:24

**Understood** 49:13

**undertake** 29:25

**unfolds** 17:4 29:1

**unknown** 42:5

**unmute** 72:17

**unnecessarily**
37:15

**unredacted** 25:6,
18,19 26:18

**unresolved** 49:1
52:8,12 80:8

**untangle** 9:11,19,23

**upload** 37:9

**uploaded** 26:11,15
37:9 55:21

**uploading** 55:19

**usual** 6:4

---

**V**

---

**Vague** 16:14 27:13
52:18 69:2

**Valve** 6:10,11 7:1,6,
16,23 8:10,25 9:5,13
10:7,15 11:6,25 12:9
13:2 14:8,17 15:12 17:8
18:1,2 19:14,20 20:9,24
21:5 29:11,24 31:13
34:7 41:16,19,22 42:17
46:16,23 47:2,18 49:1,
17,21 54:15 56:8,11
59:9 62:24 63:9 65:15,
18 66:1 67:25 68:13,25
69:12 70:7,8,22 71:9,17
73:16,17 74:1,6,12
77:6,11 80:2,8,12

**Valve's** 22:17,25
23:12,18,22,24 24:1,3,
5,8,11 48:8,20 52:9
63:1,5

**VAZQUEZ** 34:23

**versus** 56:8 68:1,14
69:12 72:3,15

**vice** 41:14

**violated** 71:9

**violation** 74:7,14

**visiting** 64:4

**voluntarily** 47:23
51:14 52:7

**voluntary** 38:19
39:2,10 55:8,13,14 56:7

---

**W**

---

**W-2** 78:3

**wages** 78:4

**waiting** 78:23

**waive** 45:24

**waiver** 45:13

**wanted** 11:20 43:3
53:24 63:25 64:24 67:7,
9 80:18

**Washington** 6:8
53:19 54:1 71:10 74:8,
14 75:11 76:20

**week** 64:2 65:23 67:8,
10

**Western** 53:18 76:20

**whatsoever** 42:23
   43:10

**wide** 6:16 8:14

**wildly** 76:12

**Wilmington** 72:23

**winding** 72:20

**withdraw** 58:11

**word** 47:7

**words** 47:9 63:24
   68:18

**work** 6:9 9:24 11:1
   22:2 78:6

**working** 18:1

**works** 73:13

**write** 36:22,23 67:14

**written** 29:5 34:22
   43:17 64:17 67:17

**wrong** 25:10 26:11
   76:12

**wrote** 64:13,15

---
### Y
---

**year** 44:8 78:5,7

**years** 49:12

**Yvonne** 68:4

---
### Z
---

**Zito** 5:10 22:8,11 27:7
   37:1,5,19 38:1 53:20
   54:3 55:1 69:24 74:18
   79:3,13,17,22 80:5,16,
   19,24