**Honorable Jamal N. Whitehead**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| VALVE CORPORATION<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>LEIGH ROTHSCHILD, ROTHSCHILD BROADCAST DISTRIBUTION SYSTEMS, LLC, DISPLAY TECHNOLOGIES, LLC, PATENT ASSET MANAGEMENT, LLC, MEYLER LEGAL, PLLC, AND SAMUEL MEYLER,<br><br>　　　　Defendants. | Case No.  2:23-cv-01016<br><br>**DEFENDANTS' REPLY IN SUPPORT OF** ***DAUBERT*** **MOTIONS**<br><br>NOTE ON MOTION CALENDAR:<br>November 21, 2025<br><br>**ORAL ARGUMENT REQUESTED** |

DEFENDANTS' REPLY IN SUPPORT OF *DAUBERT* MOTIONS
(Case No. 2:23-cv-01016)

i

**DNL Zito**
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036,
Phone: (202) 466-3500

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. VALVE CONFIRMS THAT GUGLIUZZA OFFERS IMPROPER LEGAL OPINIONS, ATTORNEY ARGUMENT, AND PREJUDICIAL POLICY RHETORIC .......................... 2

    A. Gugliuzza's Legal Brief on Troll Acts is Not Permissible "Industry Background." ................................................................................................................. 2

    B. Gugliuzza Gives Ultimate Legal Conclusions of "Bad Faith" Under the Troll Act 3

    C. Gugliuzza's "Opinions" are Attorney Argument Instructing the Jury To Draw Inferences ................................................................................................................. 4

    D. Any Minimal "Background" Value is Outweighed by the Risk of Unfair Prejudice and Confusion. .......................................................................................................... 5

    E. Gugliuzza's "Methodology" is Ipse Dixit, Not a Reliable, Testable Framework. .. 6

    F. Valve's Discovery Argument is Irrelevant to Admissibility. .................................. 7

III. PLAINTIFF'S OPPOSITION FAILS TO ADDRESS DAUBERT'S "FIT" REQUIREMENT .............................................................................................................. 7

IV. DR. SORINI AND THE SCHENCK REPORT ARE MOOT .................................................. 7

V. CONCLUSION ............................................................................................................... 7

DEFENDANTS' REPLY IN SUPPORT OF *DAUBERT* MOTIONS
(Case No. 2:23-cv-01016)

ii

**DNL Zito**
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036,
Phone: (202) 466-3500

# TABLE OF AUTHORITIES

**Cases**

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579, 591 (1993) ................................................................................................ 7

*Hangarter v. Provident Life & Acc. Ins. Co.*,
    373 F.3d 998, 1016 (9th Cir. 2004) ............................................................................. 3, 4

*Nationwide Transp. Fin. v. Cass*,
    523 F.3d 1051, 1058–59 (9th Cir. 2008) ........................................................................ 3

*United States v. Bilzerian*,
    926 F.2d 1285, 1295 (2d Cir. 1991) ............................................................................... 3

*United States v. Downing*,
    753 F.2d 1224, 1242 (3d Cir. 1985) ............................................................................... 7

DEFENDANTS' REPLY IN SUPPORT OF *DAUBERT* MOTIONS
(Case No. 2:23-cv-01016)

iii

**DNL Zito**
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036,
Phone: (202) 466-3500

I. **INTRODUCTION**

Contrary to Plaintiff's assertions, Defendants did not rely on "fabricated materials" in their Motion (Dkt. 136) . An attorney used AI in organizing citations resulting in the scrambling of some citations (*e.g.*, language from a case incorrectly attributed to a different case) and in some instances inadvertently characterizing summaries of cases as actual quotes from the case. *However, none of the propositions of law in Defendants' Motion changed due to the AI citation errors*.

Attached as Exhibit A is a reproduction of the table provided in the Machleidt Declaration filed by Plaintiff (Dkt. 153) in Valve's Opposition with an additional column in yellow highlighting that provides Defendants' responses and explanations for each erroneous citation. Attached as Exhibit B are copies of all the cases in Exhibit A.

As is clear from Exhibit A, and as will be explained in more detail below, Defendants did not "fabricate" any of the materials it cited, but rather some of the citations were incorrectly attributed in some instances the correct case was identified but the citation to that case was incorrect and some material presented as quoted material should have instead been presented as a summary of a legal proposition being discussed in the cases.

In Plaintiff's Opposition, Plaintiff requests that the Court strike Defendants' Motion because "Defendants cite to cases that do not exist, attribute false quotes to cases, and cite cases for legal principals not discussed therein." This is a mischaracterization of the brief and an extreme overreach. *Defendants did not fabricate cases* as Plaintiff is asserting. Allowing improper expert testimony into a case due to citation errors would not be a reasonable sanction.

As an illustrative example, Plaintiff asserts that "Defendants cite a 2009 order from *PacTool International v. Kett Tool Company* **11 times**" but "[t]he 2009 *PacTool* order . . . does not exist." Plaintiff's Opposition at 1. As shown in Exhibit A, the order PacTool Order *does* exist,

DEFENDANTS' REPLY IN SUPPORT OF *DAUBERT* MOTIONS
(Case No. 2:23-cv-01016) Page **1**

**DNL Zito**
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036,
Phone: (202) 466-3500

1   but the September 15, 2009 date of the order should have been listed as January 4, 2012. Also,
2   the quotation marks were erroneously added by AI, as the quoted materials are summaries of legal
3   propositions.
4       In the case of the *Cordis v. Boston Scientific,* cited on page 8, the quoted material is actually
5   a summary of a different Federal Circuit case also cited on page 8 of Defendants' Motion
6   (*Sundance, Inc. v. DeMonte Fabricating Ltd.*).
7       The other instances identified by Plaintiffs in Exhibit A follow a similar pattern. However,
8   none of the propositions of law, which had already been worked into Defendants' Motion, changed
9   due to the AI errors. This is illustrated in the attached red-line of the original brief (Exhibit C),
10  which places the proper cites in the proper locations, without changing any of the legal propositions
11  presented or arguments made.
12      Striking Defendants' Motion would be a drastic and disproportionate remedy that would
13  unfairly hold Defendants responsible for briefing errors that did not present any incorrect
14  propositions of law to the Court. The firm has already taken action to prevent any recurrence, and
15  remains willing to accept any remedial measures short of penalizing Defendants for an attorney
16  error.

17  II.   **VALVE CONFIRMS THAT GUGLIUZZA OFFERS IMPROPER LEGAL OPINIONS, ATTORNEY ARGUMENT, AND PREJUDICIAL POLICY RHETORIC**
18  
19        A.   **GUGLIUZZA'S LEGAL BRIEF ON TROLL ACTS IS NOT PERMISSIBLE "INDUSTRY BACKGROUND."**
20  
21  Valve concedes that Gugliuzza is a law professor whose "scholarly research focuses on. . .
22  . efforts by both state governments and the federal government to regulate 'bad faith' assertions of
23  patent infringement." Dkt. 152 at Pg. 7. His report, Part I explains the Patent Clause of the U.S.
    Constitution, statutory patentability requirements, and PTO examination procedures. Dkt. 138 at
24  

DEFENDANTS' REPLY IN SUPPORT OF *DAUBERT* MOTIONS
(Case No. 2:23-cv-01016)    Page **2**

**DNL Zito**
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036,
Phone: (202) 466-3500

¶¶7-16.  Part II develops his preferred definition and personal views of "patent trolls," and "bottom-feeder trolls."  Dkt. 138 at ¶17.  Part III interprets and defends state anti-troll statutes, including Washington's Troll Act and includes his critique of the Federal Circuit's "objectively baseless" standard.  Dkt. 138 at ¶107.

This is not a neutral description of a "commercial or industry practice."  It is legal and policy analysis—exactly what the Ninth Circuit has repeatedly held is the province of the Court.  *See, e.g.*, *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (expert may describe industry standards but may not state legal conclusions drawn by applying the law to the facts); *Nationwide Transp. Fin. v. Cass*, 523 F.3d 1051, 1058–59 (9th Cir. 2008).

Valve's own authorities underscore the problem.  In *Bilzerian*, the Second Circuit upheld limiting expert testimony about industry practices, holding that it would be improper for the expert to testify that the defendant complied with the law, because that "would have constituted an impermissible instruction on governing law."  *United States v. Bilzerian*, 926 F.2d 1285, 1295 (2d Cir. 1991) (overruled on other grounds).  Gugliuzza proposes to do the same, instructing the jury that Defendants' conduct was "bad-faith" within the meaning of the Washington Patent Troll Act.

Gugliuzza is not an "industry practices" expert, and the Court, not an expert law professor, will instruct the jury on what patents are, what the Troll Act requires, and what counts as "bad faith."

B. **GUGLIUZZA GIVES ULTIMATE LEGAL CONCLUSIONS OF "BAD FAITH" UNDER THE TROLL ACT**

Valve insists that "Professor Gugliuzza does not… 'opine on the ultimate conclusion' of whether they acted in bad faith," claiming he merely says Defendants' conduct is "consistent with bad faith."  Dkt. 152 at Pg. 4.  That semantic argument does not hold, as the report itself sets out numerous legal conclusions, see for example:

DEFENDANTS' REPLY IN SUPPORT OF *DAUBERT* MOTIONS
(Case No. 2:23-cv-01016)    Page **3**

**DNL Zito**
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036,
Phone: (202) 466-3500

- Paragraph 108: he concludes the record "would support a finding that Defendants' assertions of infringement were **objectively baseless.**"

- Paragraphs 120–126: he expressly opines that Defendants' 2023 letter "**is a bad-faith assertion of infringement**" and that "[t]he assertion of infringement premised on a patent for which the accused party has already purchased a license is, in my opinion, **a bad faith assertion of infringement**."

- Part IV.B is titled "Defendants have not shown that their actions were done in good faith," and then marches through the Troll Act's statutory "good faith" factors, opining how each should be resolved.

Those are not abstract references to "bad faith" as a lay concept. He is directly instructing the jury that the statutory bad-faith element is satisfied. Under *Hangarter*, that is impermissible, the Ninth Circuit allowed testimony that the insurer's conduct deviated from industry standards but drew a clear line: the expert could not testify as to whether the defendants' actions constituted bad faith. *Hangarter*, 373 F.3d at 1016, exactly what *Bilzerian* forbids – characterizing Defendants' conduct as legally "bad-faith patent enforcement" under the governing statute.

### C. GUGLIUZZA'S "OPINIONS" ARE ATTORNEY ARGUMENT INSTRUCTING THE JURY TO DRAW INFERENCES

The second half of the report is not "expert analysis" at all; it is a closing argument. Starting with paragraph 85, Gugliuzza recounts a litany of lawsuits by Rothschild-related entities, quotes judicial comments about other cases, and then opines that "Defendants do not care about the merits of the lawsuits they file" and "want to initiate as many cases as possible, settling for amounts that rarely reach six figures." [1] Dkt. 138 at ¶¶85-88. He then walks through selected correspondence and unrelated cases with Talkdesk and other third parties and concludes that dismissals in those cases "would support a finding that Defendants' assertions of infringement were objectively baseless" *Id*. at ¶108.

---

[1] It should be noted that none of this material is admissible nor relevant. The issue in this case is whether or not Defendants' specific actions in Washington State, directed at Plaintiff, violated the PTPA, not whether one or more of the Defendants is generally a "troll" based upon prior activity outside of the state of Washington.

DEFENDANTS' REPLY IN SUPPORT OF *DAUBERT* MOTIONS
(Case No. 2:23-cv-01016) Page **4**

DNL Zito
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036,
Phone: (202) 466-3500

Later, under the heading "Rothschild's Targeting of Valve Since 2015," Gugliuzza simply narrates the timeline of letters, lawsuits, and the GSLA, culminating in his legal conclusion that Defendants' 2023 letter "is a bad-faith assertion of infringement." *Id*. at ¶120.

Nothing about reciting a timeline of correspondence requires specialized knowledge. Allowing a law professor to stand up and give the jury a narrative of the documents—and then announce that the ultimate legal conclusion that the conduct was "bad faith"—does not assist the trier of fact; is prejudicial and usurps the Court's and the jury's roles.

**D.    ANY MINIMAL "BACKGROUND" VALUE IS OUTWEIGHED BY THE RISK OF UNFAIR PREJUDICE AND CONFUSION.**

Valve suggests the jury needs a law professor to explain basic concepts such as "patents," "non-practicing entities," and "patent enforcement." Dkt. 152 at Pgs. 8-9. Gugliuzza's own report admits that the Federal Judicial Center has already created a juror-oriented video for exactly that purpose. Dkt. 138 at ¶18, fn. 17. The Court can instruct the jury on the patent system and, if appropriate, show the FJC video.—.

Inflammatory anti "patent troll" rhetoric "bottom-feeder trolls," "troll tax," "extortion-like" tactics, shell companies, and "gamblers playing with house money" under the guise of expertise is not appropriate. None of that language appears in the Patent Troll Prevention Act. Instead of focusing on the PTPA, Mr. Gugliuzza's proposed testimony tracks the biased and pejorative tone of his own law review articles. Injecting that rhetoric pushes an agenda, would create a serious risk of unfair prejudice and confusion and invite mini-trials on dozens of unrelated suits. Fed. R. Evid. 403. This is not the role of an expert.

The narrow question for the jury under the Troll Act is whether Defendants' specific assertions against Valve, in Washington were made in bad faith. The jury does not need to resolve

DEFENDANTS' REPLY IN SUPPORT OF *DAUBERT* MOTIONS
(Case No. 2:23-cv-01016)    Page **5**

**DNL Zito**
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036,
Phone: (202) 466-3500

competing policy debates, or Federal Circuit preemption jurisprudence, key themes of Parts II and III of his report. "Policy advocacy disguised as expert testimony," is properly excluded.

### E. GUGLIUZZA'S "METHODOLOGY" IS IPSE DIXIT, NOT A RELIABLE, TESTABLE FRAMEWORK.

Valve argues that "Professor Gugliuzza's opinions will be helpful to the jury." Dkt. 152 at Pg. 3.

Gugliuzza has "concluded in [his] scholarship that any analysis of whether patent enforcement is 'abusive' should consider both (a) the patent owner's enforcement tactics as well as (b) the merit of the patent owner's infringement claims." Dkt. 152 at ¶33. But he identifies no accepted methodology for weighing those factors, no testable criteria, and no empirical work applying that framework to real-world actors in a consistent way. Instead, he selectively cites cases and commentary that he believes show "bottom-feeder" behavior and then asserts that Defendants resemble those actors.

For example, Gugliuzza opines that sending a letter about a patent subject to a prior licensee "is, in my opinion, a bad faith assertion of infringement" without any legal or empirical analysis beyond his personal view, and without consideration of the Defendants' explanation as to why it happened, or any other related facts or circumstances. *Id*. at ¶126. Gugliuzza likewise concludes that maintaining low bank balances (*id*. at ¶117), using shell companies (*id*. at ¶¶58-64) or settling for modest sums are evidence of bad faith (*id*. at ¶¶70-72), ignoring case law and lacking analysis.

Gugliuzza's report is case citations and anecdotes on one side, a conclusory "bad faith" label on the other.

DEFENDANTS' REPLY IN SUPPORT OF *DAUBERT* MOTIONS
(Case No. 2:23-cv-01016)    Page **6**

**DNL Zito**
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036,
Phone: (202) 466-3500

### F. VALVE'S DISCOVERY ARGUMENT IS IRRELEVANT TO ADMISSIBILITY.

Defendants' objections to interrogatories that sought expert opinions does not waive Defendants' right to challenge Valve's expert under Rule 702. *Daubert* and the Federal Rules of Evidence govern admissibility of expert testimony as the gatekeeper function of the judiciary.

## III. PLAINTIFF'S OPPOSITION FAILS TO ADDRESS DAUBERT'S "FIT" REQUIREMENT

Expert testimony "fits" a case if "it will aid the jury in resolving a factual dispute" in the case. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993) (quoting *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985)). This is a crucial element of materiality in the admissibility analysis. If expert testimony is not tied to resolving a material dispute in the case, it is inefficient and, if it is truly not relevant to a disputed issue, it is presumably offered only to mislead the jury from the relevant inquiry.

Such is the case here in the Al-Salam and Schenk reports. Defendants' Motion discusses the lack of "fit" because the experts merely re-package Valve's legal arguments as "expert analysis." Dkt. 136 at 15.

Tellingly, Plaintiff's Opposition fails to address these arguments.

## IV. DR. SORINI AND THE SCHENCK REPORT ARE MOOT

The Rothschild Defendants moved to Dismiss Counterclaim Count 1 from the case (Dkt. 128), with prejudice, thus eliminating any "threat or apprehension" of suit and the case or controversy requirement for Counts I and II. Thus rendering the Sorini report and portions of the Schenk opinion Paragraph 4 and Section VIII at paragraphs 61 – 77, moot.

## V. CONCLUSION

The Court should exclude Plaintiff's expert witnesses.

DEFENDANTS' REPLY IN SUPPORT OF *DAUBERT* MOTIONS
(Case No. 2:23-cv-01016)   Page **7**

**DNL Zito**
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036,
Phone: (202) 466-3500

Dated: November 21, 2025           Respectfully submitted,

By: /s/ Joseph J. Zito
Joseph J. Zito
DNL ZITO
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
Tel: (202) 466-3500
Email: jzito@dnlzito.com
I certify that this memorandum contains 2,100 words, in compliance with the Local Civil Rules.

/s/ Rene A. Vazquez
René A. Vazquez (*pro hac vice*)
DNL ZITO
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
Tel: (703) 989-2244
Email: rvazquez@dnlzito.com

/s/ Matthew J. Cunanan
Matthew J. Cunanan (#42530)
DC LAW GROUP
12055 15th Ave NE, Suite B
Seattle, WA 98125
Tel: (206) 494-0400
Fax: (855) 494-0400
Email: matthew@dclglawyers.com

*Attorneys for Defendants Leigh Rothschild, Rothschild Broadcast Distribution Systems, LLC, Display Technologies, LLC, Patent Asset Management, LLC, Meyler Legal, PLLC, and Samuel Meyler*

DEFENDANTS' REPLY IN SUPPORT OF *DAUBERT* MOTIONS
(Case No. 2:23-cv-01016)    Page **8**

**DNL Zito**
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036,
Phone: (202) 466-3500

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2025, I filed the present DEFENDANTS' REPLY IN SUPPORT OF *DAUBERT* MOTIONS through the ECF system and that notice will be sent electronically to all counsel who are registered participants identified on the Mailing Information for C.A. No. 2:23-cv-1016.

*/s/ René A. Vazquez*

DEFENDANTS' REPLY IN SUPPORT OF *DAUBERT* MOTIONS
(Case No. 2:23-cv-01016) Page **9**

**DNL Zito**
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036,
Phone: (202) 466-3500