1

**HON. JAMAL N. WHITEHEAD**

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| VALVE CORPORATION, | Case No. 2:23-cv-1016-JNW |
| Plaintiff, | |
| v. | **PLAINTIFF VALVE CORPORATION'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |
| LEIGH ROTHSCHILD, ROTHSCHILD BROADCAST DISTRIBUTION SYSTEMS, LLC, DISPLAY TECHNOLOGIES, LLC, PATENT ASSET MANAGEMENT, LLC, MEYLER LEGAL, PLLC, AND SAMUEL MEYLER, | NOTE ON MOTION CALENDAR: **December 15, 2025** |
| Defendants. | Complaint Filed:    07/07/2023 |
| | ORAL ARGUMENT REQUESTED |

PLAINTIFF VALVE CORPORATION'S OPP. TO
DEFS' MSJ AND REPLY ISO VALVE'S MSJ1
Case No. 2:23-cv-1016                    1                    Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

1

**TABLE OF ABBREVIATIONS**

2

| Term | Definition |
|------|-----------|
| PTPA | Washington Patent Troll Prevention Act, RCW 19.350 *et seq.* |
| CPA | Washington Consumer Protection Act, RCW 19.86 *et seq.* |
| GSLA | Global Settlement and License Agreement between Valve and Defendants (Dkt. 38-2) |
| Meyler | Collectively, Defendants Samuel Meyler and Meyler Legal, PLLC |
| Rothschild | Defendant Leigh Rothschild |
| SPIS | Social Positioning Input Systems, LLC, a Rothschild patent assertion entity |
| QTI | Quantum Technology Innovations, LLC, a Rothschild patent assertion entity |
| June 2023 Letter | Demand letter sent from Meyler to Valve on behalf of Defendants, dated June 21, 2023 (Dkt. 38-8) |
| '221 patent | U.S. Patent No. 8,856,221 |
| HTC | High Tech Computer Corporation |

PLAINTIFF VALVE CORPORATION'S OPP. TO
DEFS' MSJ AND REPLY ISO VALVE'S MSJi    i
Case No. 2:23-cv-1016

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

1

2

## TABLE OF CONTENTS

**Page(s)**

**I.**    INTRODUCTION ........................................................................................1

**II.**   DEFENDANTS BREACHED THE GSLA IN 2022. ..................................1

**III.**  DEFENDANTS ANTICIPATORILY BREACHED THE GSLA IN
2023............................................................................................................2

**IV.**   DEFENDANTS' FAILURE-TO-MITIGATE DEFENSE FAILS AS
A MATTER OF LAW. ...............................................................................3

**V.**    DEFENDANTS' equitable defenses ARE SIMILARLY
UNSUPPORTED. .......................................................................................4

**VI.**   THE COURT SHOULD NOT CONSIDER DEFENDANTS'
CHALLENGES TO THE PTPA...............................................................4

**VII.**  DEFENDANTS' MOTION ON VALVE'S PTPA CLAIM UNDER
RCW 19.250.020(3) SHOULD BE DENIED..............................................6

**VIII.** MEYLER'S MOTION FOR SUMMARY JUDGMENT UNDER
LITIGATION PRIVILEGE SHOULD BE DENIED. ................................7

    A.    The Court already (correctly) ruled that litigation privilege
does not apply. ................................................................................7

    B.    Accepting Meyler's incorrect legal premises, disputes of
material fact preclude ruling on litigation privilege.......................9

**IX.**   MEYLER'S MOTION UNDER *NOERR-PENNINGTON* SHOULD
BE DENIED..............................................................................................10

    A.    Meyler's inclusion of other infringement accusations in the
June 2023 Letter does not bring his conduct within the
protection of *Noerr-Pennington* immunity. ......................................10

    B.    There are factual disputes regarding whether the non-'221
patent allegations in the June 2023 letter were objectively
baseless..........................................................................................12

    C.    There are factual disputes regarding Meyler's subjective intent
in asserting the '221 patent. ..........................................................14

**X.**    THE COURT SHOULD DENY SUMMARY JUDGMENT ON
VALVE'S CPA CLAIM. ..........................................................................15

        1.    Unfair or deceptive act ........................................................16

        2.    In trade or commerce ...........................................................16

PLAINTIFF VALVE CORPORATION'S OPP. TO
DEFS' MSJ AND REPLY ISO VALVE'S MSJ                    ii
Case No. 2:23-cv-1016

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

3.    Public interest impact ............................................................................17

**XI.**    CONCLUSION ......................................................................................................19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF VALVE CORPORATION'S OPP. TO
DEFS' MSJ AND REPLY ISO VALVE'S MSJ                iii
Case No. 2:23-cv-1016

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Avnet, Inc. v. Motio, Inc.*,
5      No. 12 C 2100, 2015 WL 5307515 (N.D. Ill. Sept. 9, 2015) .................................................. 12

6
*Bot M8 LLC v. Sony Corp. of Am.*,
       4 F.4th 1342 (Fed. Cir. 2021) ................................................................................................... 13
7

8
*Collett v. Mason Cty.*,
       No. 3:23-CV-5654-TMC-DWC, 2025 WL 1085790 (W.D. Wash. Mar. 25, 2025) ................ 4

9
*Confederated Tribes of Siletz Indians of Or. v. Weyerhaeuser Co.*,
10     No. CV 00-1693-PA, 2003 WL 24901381 (D. Or. July 5, 2003) ............................................ 5

11
*Cummings v. Amtrak Nat'l R.R. Passenger Corp.*,
       199 F.3d 1331, 1999 WL 980362 (9th Cir. 1999) ................................................................... 3
12

13
*Daniels v. Cortez*,
       No. 01-18-00086-CV, 2019 WL 3022973 (Tex. App. July 11, 2019) ..................................... 1

14
*DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*,
15     517 F.3d 1284 (Fed. Cir. 2008) ................................................................................................ 7

16
*Demopolis v. Peoples Nat'l Bank of Wash.*,
       59 Wash. App. 105 (1990) ........................................................................................................ 8
17

18
*Eriks v. Denver*,
       118 Wash. 2d 451 (1992) ........................................................................................................ 17

19
*Fostr v. United States*,
20     303 U.S. 118 (1938) .................................................................................................................. 7

21
*Frolamo, LLC v. Ortega*,
       No. 13-23-00210-CV, 2025 WL 1387070 (Tex. App. May 13, 2025) ..................................... 3
22

23
*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
       105 Wash. 2d 778 (Wash. 1986) ................................................................................. 15, 17, 18

24
*Hill v. Blind Indus. & Servs. of Md.*,
25     179 F.3d 754 (9th Cir. 1999), *amended on denial of rehearing en banc*, 201 F.3d
       1186 (2000) ............................................................................................................................... 5

26
*Jeckle v. Crotty*,
27     120 Wn. App. 374 (2004) ........................................................................................................ 16

28

PLAINTIFF VALVE CORPORATION'S OPP. TO
DEFS' MSJ AND REPLY ISO VALVE'S MSJ                    iv
Case No. 2:23-cv-1016

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

*Lantech, Inc. v. Keip Mach. Co.*,
    32 F.3d 542 (Fed. Cir. 1994) ............................................................................. 13

*Linex Techs., Inc. v. Hewlett-Packard Co.*,
    No. C 13-159 CW, 2014 WL 4616847 (N.D. Cal. Sept. 15, 2014) ....................... 12

*Lubbock Mfg. Co. v. Sames*,
    598 S.W. 2d 234 (Tex. 1980) ............................................................................... 2

*Meridian. MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*,
    708 F.2d 1081 (7th Cir. 1983) ............................................................................ 12

*Meridian Project Sys., Inc. v. Hardin Const. Co.*,
    404 F. Supp. 2d 1214 (E.D. Cal. 2005) ......................................................... 10, 11

*Ni-Q, LLC v. Prolacta Bioscience, Inc.*,
    No. 3:17-CV-000934-SI, 2019 WL 637703 (D. Or. Feb. 14, 2019) ..................... 15

*Novelty, Inc. v. Mountain View Mktg., Inc.*,
    No. 1:07-CV-01229-SEB-JMS, 2010 WL 1325436 (S.D. Ind. Mar. 30, 2010) ..... 12

*Panag v. Farmers Ins. Co. of Wash.*,
    166 Wash. 2d 27 (Wash. 2009) .......................................................................... 16

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993) ............................................................................... 11, 12, 14

*Reactive Surfaces, LLP v. Toyota Motor Corp.*,
    No. 1:14-CV-1009-LY, 2015 WL 4876810 (W.D. Tex. Aug. 13, 2015) ................. 7

*Schiff v. Liberty Mut. Fire Ins. Co.*,
    2 Wash. 3d 762, 773 (2024) (*en banc*) ............................................................... 16

*Scott v. Am. Express Nat'l Bank*,
    514 P.3d 695 (Wash. Ct. App. 2022) ................................................................... 8

*Segan LLC v. Zynga Inc.*,
    131 F. Supp. 3d 956 (N.D. Cal. 2015) ................................................................ 12

*Seyfarth v. Reese Law Grp., P.L.C.*,
    No. C09-5727BHS, 2010 WL 2698819 (W.D. Wash. July 7, 2010) ..................... 17

*Shure Inc. v. ClearOne, Inc.*,
    No. 19-cv-1343-RGA-CJB, Dkt. 547 (D. Del. Sept. 10, 2021) .............................. 5

*Starling v. Walmart Inc.*,
    No. C21-1156-RSM-MLP, 2022 WL 16815541 (W.D. Wash. Sept. 22, 2022) ...................... 4

*Testo v. Russ Dunmire Oldsmobile, Inc.*,
    16 Wash. App. 39 (1976) ................................................................................... 18

PLAINTIFF VALVE CORPORATION'S OPP. TO
DEFS' MSJ AND REPLY ISO VALVE'S MSJ    v
Case No. 2:23-cv-1016

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

*USS-POSCO Indus. v. Contra Costa Cty. Bldg. & Const. Trades Council, AFL-CIO,*
    31 F.3d 800 (9th Cir. 1994) ................................................................. 13

*Valve Corp. v. Bucher Law PLLC,*
    34 Wn. App. 2d 727 (2025) ............................................................. 7, 8

*In re Wellbutrin SR Antitrust Litig.,*
    749 F. Supp. 2d 260 (E.D. Pa. 2010) ............................................ 11, 12

*WiAV Solutions LLC v. Motorola, Inc.,*
    631 F.3d 1257 (Fed. Cir. 2010) ............................................................. 7

**Statutes**

28 U.S.C. §§ 1338, 2201 ................................................................................ 7

RCW 19.250.020(3) ...................................................................................... 6

RCW 19.350.005 ................................................................................... *passim*

RCW 19.350.010(1)(d) ................................................................................. 8

RCW 19.350.020 ........................................................................................ 15

RCW 19.350.020(3) ................................................................................. 6, 19

RCW 19.350.030 ........................................................................................ 15

RCW chapter 19.86 .................................................................................... 15

**Other Authorities**

Fed. R. Civ. P. 15(a)(2) ................................................................................. 5

Fed R. Civ. P. 20(a)(1) ............................................................................... 11

Fed. R. Civ. P. 56 ......................................................................................... 4

Fed. Rule of Evidence ................................................................................. 17

PLAINTIFF VALVE CORPORATION'S OPP. TO
DEFS' MSJ AND REPLY ISO VALVE'S MSJ
Case No. 2:23-cv-1016

vi

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

## I.      INTRODUCTION

Defendants' opposition to Valve's summary judgment fails to create disputes of material fact, cites little caselaw, and fails to address several of Valve's arguments.

Defendants' motion for summary judgment fares no better—it violates this Court's order regarding co-pending dispositive motions, interprets the PTPA contrary to its plain terms, and contains numerous bare conclusions that cite neither legal authority nor evidence.

The Court should grant Valve's motion for partial summary judgment, and deny Defendants' motion.

## II.      DEFENDANTS BREACHED THE GSLA IN 2022.

Defendants[1] conceded breach of the GSLA in the first hearing in this case. Dkt. 55 at 5:24–25. After attempting to deny that admission in their answer, the Court struck their denial (Dkt. 79 at 5) and Defendants confirmed their breach (Dkt. 80 at Answer to ¶ 80). Defendants now ask the Court not only to deny Valve's motion for summary judgment on liability[2] for their breach, but to grant summary judgment in their favor. Dkt. 160 at 7–12. Defendants' arguments should be rejected.

First, Defendants argue their breach of the GSLA should be excused because they dropped their baseless 2022 lawsuit after Valve sent them a copy of the GSLA. *Id.* at 7–8. Defendants assert that Section 3.5 of the GSLA is a "cure" provision, although it is not. *Id.* Section 3.5 describes how, if Defendants sue a third party that is covered by Valve's license, release, or covenant not to sue (termed a "Licensee Third Party"), then upon notice by Valve, Defendants must drop that suit. Dkt. 38-2 § 3.5. That provision does not apply to Valve. Moreover, that provision does not excuse liability. Other Rothschild agreements ██████████████████████ ████████████████████████, in contrast to the GSLA that does not. *See, e.g.*, Ex. 17 § 7.1; Ex. 18 § 6.1. The Court should reject Defendants' incorrect interpretation of the GSLA as a matter of law. *Daniels v. Cortez*, No. 01-18-00086-CV, 2019 WL 3022973, at *1 (Tex. App. July

---

[1] Rothschild does not oppose that he is personally liable for the 2022 breach without the need to pierce the corporate veil. Dkt. 140 at 5–6.

[2] Valve does not seek summary judgment for the amount of damages caused by Defendants' breach.

PLAINTIFF VALVE CORPORATION'S OPP. TO
DEFS' MSJ AND REPLY ISO VALVE'S MSJ
Case No. 2:23-cv-1016

1

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

11, 2019) ("If the contract's language can be given a definite legal meaning or interpretation…we will construe the contract as a matter of law." (citations omitted)).

Second, Defendants' argument that Valve was not meaningfully damaged by their breach is irrelevant. Defendants concede that "Valve is…entitled to a nominal [damages] amount." Dkt. 160 at 9. That is all that is required for finding liability. *See Lubbock Mfg. Co. v. Sames*, 598 S.W. 2d 234, 237 (Tex. 1980) (collecting cases confirming proof of breach when plaintiff "was entitled to recover at least nominal damages" is sufficient for liability). Moreover, Valve was actually damaged—Defendants' breach caused it to spend time and resources it otherwise would not have. Dkt. 160-2 (Schenck Tr.) at 39:19–40:19. Defendants' breach also means Valve is entitled to restitution. Dkt. 138-2 (Schenk Rpt.) ¶ 39 ("[R]estitution focuses on 'the defendant's ill-gotten gains rather than the plaintiff's loss.'"). While Defendants assert Valve's actual damages might be "guesswork," they make no argument about Valve's claim for restitution.

Defendants admit that (i) they breached the GSLA in 2022, (ii) Valve was at least nominally damaged by that breach, and (iii) "there are no material facts in dispute." Dkt. 160 at 7–9. Those admissions resolve Defendants' liability, making summary judgment appropriate.

## III.    DEFENDANTS ANTICIPATORILY BREACHED THE GSLA IN 2023.

The undisputed evidence shows Defendants[3] anticipatorily breached GSLA Sections 3.1 and 3.2 by sending the June 2023 Letter stating their intent to sue on a licensed patent if Valve did not pay them more money. Dkt. 140 at 2–12; Dkt. 140-3 at 114:25–115:7 ██████████ ████████████████████████████████████████████████████████ ███████████████ Defendants agree: "there is no question that [they] intended to pursue the claims" raised in that letter. Dkt. 160 at 24.

Nonetheless, Defendants argue that Section 3.1 does not prohibit communications demanding additional payment. Dkt. 160 at 9.[4] Section 3.1 states the opposite: Defendants are prohibited from demanding more money to comply with the license and covenant not to sue. Dkt.

---

[3] Rothschild does not oppose that he is personally liable for the 2023 anticipatory breach without the need to pierce the corporate veil. Dkt. 140 at 10.

[4] Defendants do not make the same argument regarding their anticipatory breach of Section 3.2.

PLAINTIFF VALVE CORPORATION'S OPP. TO
DEFS' MSJ AND REPLY ISO VALVE'S MSJ          2
Case No. 2:23-cv-1016

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

38-2 § 3.2. The June 2023 letter repudiated Defendants' obligations under Section 3.1 without just excuse and damaged Valve. It is the *contents* of Defendants' communication that confirmed their anticipatory breach, not that communication's existence.

Defendants also conclusorily assert (i) their claimed "mistake" or "careless error" cannot amount to repudiation, and (ii) their same "clerical errors" rise to the level of "just excuse." Defendants cite no law for either proposition. Instead, the opposite is true. Dkt. 140 at 8–23; *Frolamo, LLC v. Ortega*, No. 13-23-00210-CV, 2025 WL 1387070, at *6 (Tex. App. May 13, 2025) ("Repudiation is accomplished by a contracting party's words or actions indicating it is not going to perform the contract in the future.").

There is no dispute of material fact that Defendants anticipatorily breached the GSLA in 2023. Because the parties agree there are no disputed issues of material fact, the Court should grant summary judgment of liability of Valve's anticipatory breach claim.

## IV.    DEFENDANTS' FAILURE-TO-MITIGATE DEFENSE FAILS AS A MATTER OF LAW.

Defendants assert a failure-to-mitigate defense focused on Valve's filing and prosecution of this case, and Valve's attorneys' fees incurred in doing so. Dkt. 80 ¶ 93. Because this defense does not address the actual *damages* (distinct from fees) Valve incurred, summary judgment is appropriate. Dkt. 140 at 13–14. Defendants brief cites no case law rebutting this point. And their brief actually confirms their "defense" is solely based on the fact that "Valve ... chose to file this action." Dkt 160 at 11–12. But mitigation deals with damages—not attorneys' fees. *See, e.g.*, *Cummings v. Amtrak Nat'l R.R. Passenger Corp.*, 199 F.3d 1331, 1999 WL 980362, at *4 (9th Cir. 1999). Defendants do not contend Valve failed to mitigate *damages* between receiving the June 2023 Letter and filing this suit. Dkt. 140 at 13–14. Nor do Defendants argue that their failure-to-mitigate defense applies to Valve's PTPA or declaratory judgment claims. *Id.*

Defendants also failed to put forth any evidence about "the amount by which damages would have been mitigated," a necessary element of the defense. *Cummings*, 1999 WL 980362, at *4; *see* Dkt. 140 at 13. They similarly failed to dispute that a mitigation defense cannot require Valve to surrender its meritorious claims against Defendants. *See* Dkt. 140 at 14.

PLAINTIFF VALVE CORPORATION'S OPP. TO
DEFS' MSJ AND REPLY ISO VALVE'S MSJ
Case No. 2:23-cv-1016

3

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

1    Defendants have failed to provide any evidence in support of, or show any factual issues of

2    dispute on, an issue for which they bear the burden of proof. Summary judgment is appropriate.

3    ## V.    DEFENDANTS' EQUITABLE DEFENSES ARE SIMILARLY UNSUPPORTED.

4    Valve moved for summary judgment on Defendants' multiple equitable defenses. Dkt. 140

5    at 14-16. Defendants' opposition is two sentences long, recites the legal tests for waiver and

6    equitable estoppel, and concludes Valve's Troll Act claim fails in light of these defenses. Dkt. 160

7    at 12. Such unsupported, conclusory argument is not evidence. *Starling v. Walmart Inc.*, No. C21-

8    1156-RSM-MLP, 2022 WL 16815541, at *10 (W.D. Wash. Sept. 22, 2022), *report and*

9    *recommendation adopted*, No. C21-1156-RSM-MLP, 2022 WL 16775286, at *1 (W.D. Wash.

10   Nov. 8, 2022). Defendants fail to rebut any of Valve's substantive arguments regarding these

11   affirmative defenses. And despite bearing the burden of proof on these issues, Defendants did not

12   identify any disputed issues of material facts. "The district court has no obligation under Rule 56

13   'to scour the record in search of a genuine issue of triable fact.'" *Collett v. Mason Cty.*, No. 3:23-

14   CV-5654-TMC-DWC, 2025 WL 1085790, at *15 (W.D. Wash. Mar. 25, 2025) (citation omitted).

15   Summary judgment is appropriate. *Id.*

16   ## VI.    THE COURT SHOULD NOT CONSIDER DEFENDANTS' CHALLENGES TO THE PTPA.

17   Defendants filed an earlier, still-pending motion for summary judgment on Valve's PTPA

18   claim. Dkt. 111. Under LCR 7(e)(3), Defendants were not allowed to file a second summary

19   judgment motion. Accordingly, Defendants requested permission to file their present (second)

20   motion, *inter alia*, "as to the Meyler Defendants … only on Valve's" PTPA claim. Dkt. 129 at 2.

21   Based on the limited scope of Defendants' request, Valve did not oppose and the Court granted

22   Defendants' request. Dkt. 129 at 2.

23   Defendants, however, violated the Court's Order granting their request by raising multiple

24   summary judgment grounds on Valve's PTPA claim that would apply to all Defendants. They did

25   so explicitly by asking the Court to find that Valve's claim goes against the terms of the statute

26   (Section III), and implicitly by asking the Court to grant summary judgment in favor of Meyler

27   under *Noerr-Pennington* (Section V) and where Meyler argues Valve cannot prove a CPA claim

28

PLAINTIFF VALVE CORPORATION'S OPP. TO
DEFS' MSJ AND REPLY ISO VALVE'S MSJ
Case No. 2:23-cv-1016                                        4                    Kilpatrick Townsend & Stockton LLP
                                                                                 1420 Fifth Avenue, Suite 3700
                                                                                 Seattle, WA 98101
                                                                                 (206) 467-9600

(Section VI). *See generally* Dkt. 160. While the latter two sections purportedly apply only to Meyler, Defense counsel intends for them to apply to all Defendants: "If the Court grants it, we feel it should also be dispositive as to the Rothschild Defendants…but we'll let the Court decide." Ex. 19.

As explained below, none of Defendants' improperly-raised arguments have merit. But they should nonetheless be stricken because they violate this Court's Order. *See Shure Inc. v. ClearOne, Inc.*, No. 19-cv-1343-RGA-CJB, Dkt. 547 at 8 (D. Del. Sept. 10, 2021).

The Court should also not consider Defendants' newly raised *Noerr-Pennington* defense, finding instead that Defendants waived or abandoned it. That defense does not appear in any of Defendants' three answers. Nine days before the last day to serve discovery, counsel indicated that "Defendants intend to amend their affirmative defenses to clarify that their failure to state a claim affirmative defense encompasses preemption, unconstitutionality, and Noerr-Pennington immunity." Ex. 20. In response, Valve noted:

> [T]he Court already gave you an opportunity to clarify any affirmative defenses. Defendants chose not to assert these defenses at that time. Moreover, these defenses should have been well-known to Defendants since the inception of the case and should not be raised in Defendants' requested **third** amended answer when there are less than six weeks left in fact discovery….

Ex. 21. Defendants never responded to Valve's email nor sought leave to amend, thus abandoning those defenses. Fed. R. Civ. P. 15(a)(2); LCR 15. Valve never had notice or opportunity to engage in related discovery.

To avoid any doubt, a party can waive arguments under *Noerr-Penington* if not timely asserted or disclosed. *Confederated Tribes of Siletz Indians of Or. v. Weyerhaeuser Co.*, No. CV 00-1693-PA, 2003 WL 24901381, at *6 (D. Or. July 5, 2003); *Hill v. Blind Indus. & Servs. of Md.*, 179 F.3d 754, 758 (9th Cir. 1999), *amended on denial of rehearing en banc*, 201 F.3d 1186 (2000). Courts have only allowed defendants to raise late challenges under *Noerr-Pennington* at summary judgment when there is no prejudice to plaintiff because it was on notice that *Noerr-Penington* was at issue. *See, e.g., United Tactical Sys., LLC v. Real Action Paintball, Inc.*, No. 14-CV-04050-SK, 2018 WL 11417383, at *2 (N.D. Cal. Sept. 7, 2018) (no prejudice when "Real Action was aware of the *Noerr-Pennington* doctrine as early as November 2015" over a year

PLAINTIFF VALVE CORPORATION'S OPP. TO
DEFS' MSJ AND REPLY ISO VALVE'S MSJ
Case No. 2:23-cv-1016

5

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

before summary judgment, even though not included as a defense). That is not the case here—Defendants' discovery tactics and failure to litigate *Noerr-Penington* until now prejudice Valve. As explained below, Defendants refused to answer Valve's discovery requests about the Texas Lawsuits which they now rely on for *Noerr-Penington* immunity. They also refused to provide discovery on behalf of anyone other than the named defendants, thus thwarting Valve's attempts to obtain discovery from, for example, SPIS and QTI. *See infra* § IX.B.

## VII.    DEFENDANTS' MOTION ON VALVE'S PTPA CLAIM UNDER RCW 19.250.020(3) SHOULD BE DENIED.

Without citation to legal authority, Defendants assert RCW 19.350.020(3) "prohibits any activities that could give rise to a declaratory judgment action from being acts of patent trolling." Dkt. 160 at 13. That is not what the statute says, nor would any such rule be relevant here. RCW 19.350.020(3) provides, "Nothing in the demand letter or patent assertion may be used to move for declaratory judgment in underlying patent infringement litigation." RCW 19.350.020(3). But there was no underlying[5] patent infringement litigation when Valve filed this suit, and Valve's declaratory judgment claims are related solely to invalidity and unenforceability—not infringement. Thus, RCW 19.350.020(3) simply does not, and cannot, apply to this case. Defendants' later assertion of infringement of the '221 patent is of no import as it does not transform Valve's case against Defendants into "underlying patent infringement litigation." Moreover, that counterclaim was baseless when made (Dkt. 87), Defendants moved to voluntarily dismiss it (Dkt. 128), and the Court dismissed it with prejudice (Dkt. 170).

Defendants' argument, if accepted, would  severely if not entirely weaken the PTPA. The purpose of the PTPA is to discourage bad faith patent infringement assertions. RCW 19.350.005. Patent infringement assertions, whether in good or bad faith, regularly lead to declaratory judgment actions. *See* Dkt. 56 at 7. Defendants' reading would require someone to choose between adjudicating the bad faith allegations on the merits and seeking redress for bad-faith litigation, which is directly at odds with the legislatures concerns that bad-faith actors like

---

[5] The most relevant definition of "underlying" is "anterior and prior in claim." *Underlying*, Merriam-Webster, https://www.merriam-webster.com/dictionary/underlying (last visited Dec. 1, 2025).

PLAINTIFF VALVE CORPORATION'S OPP. TO
DEFS' MSJ AND REPLY ISO VALVE'S MSJ
Case No. 2:23-cv-1016                                          6                        Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

1    Rothschild can benefit "even if the claim is meritless." RCW 19.350.005. A statute should not be

2    construed in a manner contrary to its purpose. *See* Dkt. 56 at 21 ("Immunizing bad-faith demand

3    letters from liability would render the PTPA a dead letter."); *Fostr v. United States*, 303 U.S. 118,

4    120 (1938) ("Courts should construe laws in harmony with the legislative intent and seek to carry

5    out legislative purpose.").

6         Valve also cannot be precluded from bringing a declaratory judgment claim simply

7    because it brought a PTPA claim, as Defendants urge. Dkt. 160 at 13–14. State law cannot dictate

8    the basis for standing in a patent case because federal courts have exclusive jurisdiction. 28 U.S.C.

9    §§ 1338, 2201; *see also Reactive Surfaces, LLP v. Toyota Motor Corp.*, No. 1:14-CV-1009-LY,

10   2015 WL 4876810, at *2 (W.D. Tex. Aug. 13, 2015); *WiAV Solutions LLC v. Motorola, Inc.*, 631

11   F.3d 1257, 1263 (Fed. Cir. 2010). The PTPA is therefore not determinative of standing for

12   declaratory judgment of invalidity and unenforceability of a patent. *See, e.g.*, *DDB Techs., L.L.C.*

13   *v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1296 (Fed. Cir. 2008).

14   **VIII.  MEYLER'S MOTION FOR SUMMARY JUDGMENT UNDER LITIGATION**
     **PRIVILEGE SHOULD BE DENIED.**

15

16       **A.    The Court already (correctly) ruled that litigation privilege does not apply.**

16       Meyler previously asked the Court to dismiss Valve's claims against him under the

17   litigation privilege. The Court refused, finding:

18

19       [T]he June 2023 demand letter sent by the Meyler Defendants was an extrajudicial, bad-
         faith assertion of patent infringement unrelated to any actual litigation and therefore
20       unprotected by litigation privilege and actionable under the PTPA.

21   Dkt. 56 at 21. While that finding was predicated on the allegations in Valve's complaint, those

22   allegations were confirmed in discovery and are now undisputed. Meyler raises no new facts that

23   should change the Court's prior ruling. *C.f.* LCR 7(h)(1).

24       Instead, Meyler appears to be arguing that there has been a change in law due to the

25   decision of Division I of the Washington State Court of Appeals in *Valve Corp. v. Bucher Law*

26   *PLLC*, 34 Wn. App. 2d 727 (2025). Meyler's reading of *Bucher Law* is wrong.

27       In that case, Bucher Law argued that the letters it sent were part of a contractually-agreed-

28   upon and mandated pre-arbitration dispute resolution process. *Bucher Law*, 34 Wn. App. 2d at

PLAINTIFF VALVE CORPORATION'S OPP. TO
DEFS' MSJ AND REPLY ISO VALVE'S MSJ
Case No. 2:23-cv-1016                                   7                Kilpatrick Townsend & Stockton LLP
                                                                        1420 Fifth Avenue, Suite 3700
                                                                        Seattle, WA 98101
                                                                        (206) 467-9600

732–33. For this reason, the court found those letters to be sufficiently tied to judicial proceedings such that litigation privilege could apply. *Id.* at 742–43.

In contrast, Defendants' June 2023 letter was not part of any agreed-upon pre-arbitration resolution or quasi-judicial process. It was, in fact, the opposite—a breach of Defendants' obligations under the GSLA. Moreover, Defendants could have filed a patent infringement lawsuit against Valve without sending any letter, and had done just that in the recent past. *See, e.g.*, Dkt. 140 at 7 (DT lawsuit against Valve). Thus, unlike the letters in *Bucher Law*, the June 2023 Letter is simply untethered to and not "material" or "pertinent" to any judicial process.

The court in *Bucher Law* also relied on its understanding that lawyers in arbitrations are subject to disciplinary oversight as part of those proceedings. *Bucher*, 34 Wn. App. 2d at 743. The same is not true here, and Meyler does not argue otherwise. Litigation privilege "is allowed only in 'situations in which authorities have the power to discipline as well as strike from the record statements which exceed the bounds of permissible conduct.'" *Demopolis v. Peoples Nat'l Bank of Wash.*, 59 Wash. App. 105, 110, 112 (1990) (quotation omitted). Meyler has identified no authority—other than the Court—that can discipline and strike from the record bad-faith extrajudicial statements in the June 2023 Letter. Indeed, as the Court recognized, the PTPA exists precisely to provide that discipline: "The Court concludes that the Washington legislature ably accommodated Washington's litigation privilege doctrine in its drafting of the PTPA by defining the '[a]ssertion of patent infringement' to *include* 'sending or delivering a demand to a target' and "'threatening a target with litigation' while *excluding* 'claims or allegations… *made in litigation* against a target'" Dkt. 56 at 21 (quoting RCW 19.350.010(1)(d)) (emphasis added). Meyler's "new" arguments do not change the Court's prior reasoning.

Meyler nevertheless again asks the Court to expand the scope of Washington's litigation privilege by citing the law of other states that immunize litigation threat letters sent by an attorney acting in good faith. Dkt. 160 at 22–23. But as this court previously found, "Washington courts have specifically restricted the invocation of litigation privilege in cases alleging abuse of judicial process, malicious prosecution, or malicious use of the legal system." Dkt. 56 at 20–21 (*citing Scott v. Am. Express Nat'l Bank*, 514 P.3d 695, 699-700 (Wash. Ct. App. 2022)). Meyler provides

PLAINTIFF VALVE CORPORATION'S OPP. TO
DEFS' MSJ AND REPLY ISO VALVE'S MSJ
Case No. 2:23-cv-1016

8

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

no reason for this Court to deviate from that, or for Washington to change its law.

Further, the June 2023 Letter was not sent in good faith; that is at the very least a question for the jury to decide. And while Meyler is an attorney, he fully disclaimed any proficiency in patent assertions and relied entirely on the Rothschild Defendants for the relevant contents of the June 2023 Letter. *See generally* Dkt. 161. An attorney acting as an unfiltered messenger for a bad-faith extrajudicial message sent by his clients cannot hide behind litigation privilege reserved for attorneys acting in good faith.

The Court should reaffirm that the privilege does not apply here. Dkt. 56 at 20.

**B.    Accepting Meyler's incorrect legal premises, disputes of material fact preclude ruling on litigation privilege.**

Even if the Washington litigation privilege could apply here, significant factual disputes remain that preclude summary judgment. The crux of Meyler's argument is that he "had a *good faith* intent to pursue litigation" against Valve for a patent it had a license to. Dkt. 160 at 23 (emphasis added). Essentially, he is asking the Court to find as a matter of law that he did not violate the PTPA. But Meyler does not meaningfully engage with the PTPA's extensive list of good-and-bad faith factors. Nor does he provide the full factual picture, which reflects his bad faith. For example, Meyler does not mention that:

- Despite "never h[olding himself] out as a patent attorney to anyone," Meyler chose to represent Defendants on substantive patent matters and to be the sole signatory on threat letters and actual patent infringement litigation. Dkt. 161 ¶¶ 3, 23–25, 28;

- At best, Meyler did not uncover—and at worst, he ignored—widely available public information that the accused Steam Cloud product was released **four years** before the '221 patent's earliest priority date (thus making it impossible for Steam Cloud to infringe). Ex. 22;

- Meyler was aware that Defendants (with him as counsel) previously sued Valve on licensed patents, he **twice** received the GSLA from Valve in prior negotiations, and yet he ignored the GSLA when he sent the June 2023 letter. (Dkt. 160 at 22; Dkt. 161 ¶ 25).

- Meyler argues that he was "prepared to proceed" with litigation on behalf of Defendants of the '221 patent. Dkt. 160 at 22. Yet Meyler previously **denied** the allegations that the June 2023 Letter "demonstrates that it is highly likely one or more Defendants will sue Valve for infringement of the '221 Patent." Dkt. 80, Answer to ¶ 32.

- The '221 patent chart Meyler included in his June 2023 Letter included a clear disclaimer that "it is NOT to be used as a substitute for any legal opinion that may be given by a patent attorney."(Dkt. 38-8 at 27).

Meyler also relies on lawsuits filed by other lawyers on behalf of other Rothschild entities against Valve in Texas as evidence of good faith. Dkt. 160 at 22. Those lawsuits were ultimately dismissed, and the district court found that the Rothschild entities and their lawyer engaged in sanctionable conduct. Despite this ultimate outcome—a complete victory for Valve—Rothschild attempted to leverage the costs associated with those improper suits to force Valve into settling this case. Dkt. 113 at 1. There is no good faith attached to those Texas lawsuits. *See* Dkt. 160 at 21. Beyond that, Meyler was not involved in those Texas cases. As Leigh Rothschild (the manager of the entities involved in the Texas suits) stated in an interrogatory response, "[t]hose entities brought suit *through their own retained counsel* in exercise of their independent legal rights, and any decisions regarding the assertion of patent rights were made in the ordinary course of business by or on behalf of the respective companies." Dkt. 148-34 at 25–26, 28 (emphasis added). Any theoretical good faith associated with the Texas cases cannot be attributed to Meyler.

## IX.    MEYLER'S MOTION UNDER *NOERR-PENNINGTON* SHOULD BE DENIED.

### A.    Meyler's inclusion of other infringement accusations in the June 2023 Letter does not bring his conduct within the protection of *Noerr-Pennington* immunity.

Defendants agree they should not have accused Valve of infringing the '221 patent in their June 2023 letter. Dkt. 140-2 (Rothschild Tr.), 213:7–11. But in their new attempt to defend their letter, they now they contend it falls within the scope of *Noerr-Pennington* immunity because the letter also contained allegations on behalf of two other Rothschild entities, SPIS and QTI asserting two other patents. They primarily rely on a single district court case: *Meridian Project Sys., Inc. v.*

*Hardin Const. Co.,* 404 F. Supp. 2d 1214, 1222 (E.D. Cal. 2005). But *Meridian* was in the context of an actual lawsuit with a single plaintiff making multiple claims—not a pre-suit threat letter on behalf of three different potential plaintiffs. *Id. Meridian* held that "an allegation that a single claim is objectively baseless does not bring ... the entire complaint within the sham exception" to *Noerr-Pennington*. *Id.* That case, however, does not apply to here.

With pre-suit communications, the test is whether there is "probable cause to institute legal proceedings." *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 62 (1993) ("*PRE*"). When a single pre-suit communication covers multiple legal proceedings, each of those potential proceedings must be evaluated separately. That is particularly true here, where (i) Defendants' practice is to file separate, concurrent lawsuits against the same defendant on behalf of separate plaintiffs, and (ii) Federal Rule of Civil Procedure 20(a)(1) would bar three separate entities asserting three separate patents against three separate products in a single lawsuit. Indeed, Defendants ended up doing exactly that—filing three separate lawsuits against Valve on behalf of the three separate entities referenced in the June 2023 Letter. Exs. 23, 24: Dkt. 80, Counterclaim I.

Meyler cites no case where *Meridian*'s "single lawsuit" requirement has been extended to pre-suit communications, let alone when such a communication is sent in anticipation of multiple separate lawsuits on behalf of multiple entities.[6]

Moreover, other courts have rejected *Meridian*'s "single lawsuit" requirement in circumstances similar to those here. In *In re Wellbutrin SR Antitrust Litig.*, 749 F. Supp. 2d 260, 265 (E.D. Pa. 2010), the court distinguished *Meridian* and found that the single remaining patent infringement claim (out of three claims when the suit was originally filed) fell under the sham exception to *Noerr-Penington*. That case involved a single lawsuit brought by a single plaintiff, but otherwise the facts are similar.

*Wellbutrin* also explains why Meyler's citation to *PRE* fares no better. The language

---

[6] That Defendants would even make the argument that multiple Rothschild entities should be considered *together* when it serves their purpose, while otherwise steadfastly treating them as distinct entities, gives the lie to their purported corporate structure and reinforces Valve's motion to find that the Rothschild Defendants are alter egos. *See* Dkt. 146.

PLAINTIFF VALVE CORPORATION'S OPP. TO
DEFS' MSJ AND REPLY ISO VALVE'S MSJ                11
Case No. 2:23-cv-1016

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

setting forth the legal test for sham litigation in *PRE* refers to "the lawsuit," but that lawsuit was a single copyright infringement claim. *PRE*, 508 U.S. at 52, 60. *PRE* never addressed how the sham litigation test would be applied in cases with more than one claim. Courts have recognized that "reading *PRE* to hold that an entire lawsuit must be a sham in order to state a sham litigation claim, even when that lawsuit contains both sham and non-sham claims, ignores the relevant facts of that decision and ascribes to it a meaning the Court may not have had." *Wellbutrin*, 749 F. Supp. 2d at 266.

Other cases likewise question the reach of *Meridian*. *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1154–55 (7th Cir. 1983). The *MCI* court there held that "a single baseless claim could constitute sham litigation." *Id.*; *see also Novelty, Inc. v. Mountain View Mktg., Inc.*, No. 1:07-CV-01229-SEB-JMS, 2010 WL 1325436, at *2 n.2 (S.D. Ind. Mar. 30, 2010) ("Sham litigation therefore requires a claim-by-claim analysis."); *MCI*, 708 F.2d at 1154 (collecting cases holding "a single lawsuit or claim may constitute sham litigation"); *Avnet, Inc. v. Motio, Inc.*, No. 12 C 2100, 2015 WL 5307515, at *6 (N.D. Ill. Sept. 9, 2015).

Meyler essentially argues that anyone that owns a patent and makes a claim chart is immune under *Noerr-Pennington*. Dkt. 160 at 24. Courts overwhelmingly reject this, and this Court should as well. *See, e.g.*, *Segan LLC v. Zynga Inc.*, 131 F. Supp. 3d 956, 961 (N.D. Cal. 2015); *Linex Techs., Inc. v. Hewlett-Packard Co.*, No. C 13-159 CW, 2014 WL 4616847, at *5 (N.D. Cal. Sept. 15, 2014). As in *Wellbutrin*, should the Court reach the merits of this argument, it should find that the sham litigation exception to *Noerr-Pennington* applies to the June 2023 Letter.

### B.    There are factual disputes regarding whether the non-'221 patent allegations in the June 2023 letter were objectively baseless.

Even accepting Meyler's incorrect legal argument, factual disputes remain as to whether all the allegations in the June 2023 Letter were objectively baseless. That letter included allegations on behalf of the Rothschild Defendants (asserting the '221 patent) and two entities that are not parties to this lawsuit, SPIS and QTI (asserting other patents). Dkt. 38-8. Rothschild admitted that Valve should not have been accused of infringing the '221 patent. Dkt. 140-2 (Rothschild Tr.), 213:7–11 ("My understanding is RBDS should not have gone after Valve for

PLAINTIFF VALVE CORPORATION'S OPP. TO
DEFS' MSJ AND REPLY ISO VALVE'S MSJ
Case No. 2:23-cv-1016

12

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

infringement of that patent. The patent was licensed, no matter who owned it, with Valve.·So no action should have been taken regarding that patent."). But without citation to the record, Defendants argue the assertions by SPIS and QTI had some merit because SPIS and QTI ultimately did file suits against Valve. Dkt. 160 at 24.

Those lawsuits, however, were ultimately dismissed and found sanctionable. Dkt. 91-8. Before that, Valve notified Defendants (through Meyler) that the SPIS allegations were baseless (in part because they accused a product made by HTC, not Valve). Dkt. 113-5; Dkt. 113-6. The QTI allegations were also baseless because they point to two different things to meet the same element of the asserted patent claim. *Compare* Dkt. 38-8 at 7 (third-party video game server is the claimed "node server"), *with id.* at 13 (Valve's Steam is the claimed "node server"). Such inconsistencies are "fatal" to any infringement case and thus render QTI's claims baseless. *See Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1354 (Fed. Cir. 2021); *Lantech, Inc. v. Keip Mach. Co.*, 32 F.3d 542 (Fed. Cir. 1994).

Beyond that, SPIS and QTI have a bad-faith practice of asserting low quality patents for the sole purpose of extracting low-value settlements far below the cost of litigation and untethered to any alleged infringer's alleged use of any technology to avoid ever testing any case on the merits. Ex. 25 at 17–53. As part of that scheme, SPIS and QTI have filed almost 100 lawsuits asserting the patents referenced in the June 2023 Letter. Ex. 26–27. This further reflects that the allegations against Valve in the June 2023 Letter were baseless. *USS-POSCO Indus. v. Contra Costa Cty. Bldg. & Const. Trades Council, AFL-CIO,* 31 F.3d 800, 811 (9th Cir. 1994) (When evaluating whether a series of lawsuits are subject to the sham exception, courts ask, "Were the legal filings made, not out of a genuine interest in redressing grievances, but as part of a pattern or practice of successive filings undertaken essentially for purposes of harassment?").

Defendants' failure-of-proof argument that "Valve cannot establish that all of the Defendants claims were objectively baseless" (Dkt. 160 at 25) is also disingenuous. Defendants never answered Valve's discovery requests about the Texas Lawsuits. *See* Dkt. 146 at 3–4; Dkts. 148-1–148-8. When Defendants served their responses for the first time on October 29 (months after they were due), Defendants refused to answer interrogatories about SPIS's and QTI's actions

PLAINTIFF VALVE CORPORATION'S OPP. TO
DEFS' MSJ AND REPLY ISO VALVE'S MSJ
Case No. 2:23-cv-1016

13

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

in the Texas Lawsuits. Dkt. 148-34 at 25–26. Defendants likewise opposed Valve's motion to seek a privilege log related to the Texas Lawsuits. Dkt. 113.

Defendants consistently refused to provide discovery related to any non-party Rothschild entity, objecting throughout discovery to requests as "overly broad, unduly burdensome, not proportional to the needs of the case, and seeking documents that are not relevant to any party's claims or defenses to the extent it seeks documents unrelated to…*parties involved in this case*." Exs. 28, 29, 30, 31, 32 (emphasis added). Finally, Defendants did not raise the QTI or SPIS allegations as evidence of good faith at any point in discovery nor in response to contention interrogatories. Exs. 33, 34, 35, 36, 37.

Throughout this entire lawsuit, Defendants refused to provide discovery directly relevant to the *Noerr-Penington* argument they now make. Their continued gamesmanship should not be rewarded. Defendants' *Noerr-Penington* defense, to the extent Defendants are allowed to raise it, is inappropriate for summary judgment.

### C.    There are factual disputes regarding Meyler's subjective intent in asserting the '221 patent.

Meyler argues, without citation to the record or case law, that his subjective intent cannot be questioned. Dkt. 160 at 25 ("It is simply preposterous to suggest that is what happened here."). Meyler filed a lawsuit against Valve alleging infringement of a patent Valve had a license to, and Valve sent Meyler the GSLA (twice). *See supra* § VII.B. Meyler then, in bad faith, sent Valve the June 2023 Letter asserting infringement of a patent explicitly listed in the GSLA. *Id.*; *supra* § IX.B. As detailed in Section VII.B, there remain factual questions about Meyler's role in the June 2023 Letter, his failure to adequately investigate before sending that letter, and his unreasonable reliance on substandard work performed by others that was known to be flawed.

Further, as noted by the Supreme Court, evidence relevant to subjective intent includes whether Meyler "was indifferent to the outcome on the merits of the [] suit, whether any damages for infringement would be too low to justify [] investment in the suit, or whether [Defendants] had decided to sue primarily for the benefit of collateral injuries inflicted through the use of legal process." *PRE*, 508 U.S. at 65. As discussed above, Valve has set forth evidence that Defendants,

PLAINTIFF VALVE CORPORATION'S OPP. TO
DEFS' MSJ AND REPLY ISO VALVE'S MSJ
Case No. 2:23-cv-1016

14

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

including Meyler, assert low quality patents for the sole purpose of extracting low-value settlements far below the cost of litigation and untethered to any target's alleged use of any technology. Ex. 25 at 17–53. Prior to working with Defendants, Meyler "conducted research and due diligence regarding [his] clients." Dkt. 161 ¶ 6. He was thus aware of Defendants' bad-faith litigation strategy and chose to represent them anyway.

To the extent Defendants are allowed to pursue a *Noerr-Penington* defense, there are numerous factual disputes that render it inappropriate for summary judgment. *See Ni-Q, LLC v. Prolacta Bioscience, Inc.*, No. 3:17-CV-000934-SI, 2019 WL 637703, at *6 (D. Or. Feb. 14, 2019).

## X.     THE COURT SHOULD DENY SUMMARY JUDGMENT ON VALVE'S CPA CLAIM.

Defendants assert Valve cannot establish Meyler violated the Consumer Protection Act ("CPA") because Valve cannot establish the first three elements of a CPA claim: (1) an unfair or deceptive act (2) in trade or commerce that had a (3) public interest impact. Defendants are wrong as a matter of law, because any violation of the PTPA meets those three elements of the CPA, *per se*. "A violation of RCW 19.350.020 is an '*unfair or deceptive act in trade or commerce* and an unfair method of competition for purposes of applying the consumer protection act, chapter 19.86 RCW.'" Dkt. 56 at 17 (quoting RCW 19.350.030). The statute also explains that violations "harm Washington's economy," "undermine Washington's efforts to attract and nurture information technology and knowledge-based businesses," and "are matters vitally affecting the public interest." RCW 19.350.005 and RCW 19.350.030. That a violation of the PTPA meets those three elements of the CPA *per se* is confirmed by the Washington State Supreme Court Committee on Jury Instructions' instruction for "Patent infringement - bad faith assertions." Ex. 38 (annotated); *see also Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 792–95 (Wash. 1986) (detailing how a violation of an underlying statute can establish the first three elements of a CPA claim *per se*).

Thus, Valve can meet its burden of proving the first three elements of its CPA claim against Meyler by proving Meyler violated the PTPA. Summary judgment of Valve's CPA claim

PLAINTIFF VALVE CORPORATION'S OPP. TO
DEFS' MSJ AND REPLY ISO VALVE'S MSJ
Case No. 2:23-cv-1016

15

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

1    against the Meyler Defendants should be denied.

2       Even if the Court finds that violation of the PTPA is not a *per se* violation of the CPA,

3    Meyler's motion for summary judgment should still be denied because there are numerous

4    material issues of disputed facts for each of the first three elements of Valve's CPA claim raised in

5    Defendants' motion. *See Schiff v. Liberty Mut. Fire Ins. Co.*, 2 Wash. 3d 762, 773 (2024) (*en*

6    *banc*).

7                    1.    Unfair or deceptive act

8       Meyler does not cite any evidence or law in his three-sentence argument that his actions

9    were not unfair or deceptive. Instead, Meyler asks the Court to find, as a matter of law, that the

10   June 2023 Letter "is not an unfair or deceptive act or practice by the Meyler Defendants." Dkt.

11   160 at 26.

12      Whether an action constitutes an unfair or deceptive act is a fact-intensive inquiry, such

13   that "[i]t is impossible to frame definitions which embrace all unfair practices." *Panag v. Farmers*

14   *Ins. Co. of Wash.*, 166 Wash. 2d 27, 48 (Wash. 2009) (quotation omitted). Meyler (1) sued Valve

15   in 2022 for infringing a patent that Valve already had a license to (Dkt. 38-6); (2) received two

16   copies of the GSLA from Valve; and then (3) threatened to sue Valve in 2023 for infringing a

17   patent that Valve already had a license to under the GSLA. Dkt. 38-8. The June 2023 Letter

18   contains several false statements, including that Valve was infringing the licensed '221 patent, and

19   that the allegedly infringing product—Steam Cloud—was released in 2023, 15 years after its

20   actual release date in 2008. *Id*. at 19; Ex. 22. Meyler did no real investigation before sending the

21   June 2023 Letter, unreasonably relied on others, and asserted baseless claims. *Supra*, § __.

22      The specifics of Meyler's beliefs or whether Valve was deceived or misled considering the

23   actions Meyler took and failed to take (Dkt. 160 at 26) are disputed issues of fact that cannot be

24   resolved at the summary judgment stage.

25                   2.    In trade or commerce

26      Meyler's argument is premised on the principle that "a CPA suit against a litigation

27   opponent's lawyer is not a cognizable claim and must be dismissed." Dkt. 160 at 27 (citing *Jeckle*

28   *v. Crotty*, 120 Wn. App. 374, 384–85 (2004)). But as this Court has already found, the actions

PLAINTIFF VALVE CORPORATION'S OPP. TO
DEFS' MSJ AND REPLY ISO VALVE'S MSJ
Case No. 2:23-cv-1016                          16                Kilpatrick Townsend & Stockton LLP
                                                               1420 Fifth Avenue, Suite 3700
                                                               Seattle, WA 98101
                                                               (206) 467-9600

1   giving rise to Valve's claim against the Meyler defendants stem from an "*extrajudicial* attorney

2   demand letter[]" and did not occur in the context of litigation. Dkt. 56 at 20 (emphasis added).

3   There was no litigation between Valve and Defendants when Meyler sent the June 2023 Letter. An

4   attorney's false statements, made outside of litigation and for the purposes of collecting revenue,

5   are entrepreneurial aspects of the practice of law that can subject an attorney to liability under the

6   CPA. *See Seyfarth v. Reese Law Grp., P.L.C.*, No. C09-5727BHS, 2010 WL 2698819, at *3–4

7   (W.D. Wash. July 7, 2010).

8        Meyler did not draft the claim charts attached to the June 2023 demand letter, nor can he

9   testify that he did anything more than ███████████████████████████████████████████████

10  ████████████████████ Ex. 39 (Meyler Tr.) at 145:5–12, 146:7–150:4. Mr. Meyler sent the demand

11  letter for the sole purpose of executing a settlement with Valve that ████████████████████

12  ████████████████████ i.e., an entrepreneurial purpose. Ex. 40 (Engagement Letter); Ex. 39

13  (Meyler Tr.) at 30:9–15. Thus, at the very least, "[d]etermining whether [Meyer] acted for

14  entrepreneurial purposes is a question of fact" and disputed issues precludes summary judgment.

15  *Eriks v. Denver*, 118 Wash. 2d 451, 464–65 (1992).

16              3.   Public interest impact

17        Meyler attempts to characterize this action as a "bespoke" dispute between two private

18  parties. "However, it is the likelihood that additional plaintiffs have been or will be injured in

19  exactly the same fashion that changes a factual pattern from a private dispute to one that affects

20  the public interest." *Hangman Ridge*, 105 Wash. 2d at 790.

21        Meyler asserts, without evidence or legal support, that "[t]he CPA's public-interest

22  requirement is not met by a single, attorney-to-attorney FRE 408 letter where recipient has a

23  private license agreement that the recipient and attorney's client are parties to." Dkt. 160 at 28.

24  Meyler's claims are directly contradicted by the legislative findings that bad faith assertions of

25  patent infringement "undermine Washington's efforts to attract and nurture information

26  technology and knowledge-based businesses" and "harm Washingtons economy." RCW

27  19.350.005.

28        That is precisely what is happening here. When Valve received the June 2023 Letter, it had

PLAINTIFF VALVE CORPORATION'S OPP. TO
DEFS' MSJ AND REPLY ISO VALVE'S MSJ            17
Case No. 2:23-cv-1016

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

1    to expend resources that were "no longer available to invest, develop and produce new products,

2    expand, or hire new workers." *See* RCW 19.350.005. It has also spent millions of dollars in legal

3    fees litigating its claim under the PTPA and defending against meritless retaliatory lawsuits in

4    Texas and a meritless counterclaim in this case. *See, e.g.* Dkt. 136-3 ¶ 53. Like the resources

5    Valve expended when it received the June 2023 Letter, the money it has spent on lawyers cannot

6    be invested, used to develop new products, or hire new employees. *See* RCW 19.350.005. This

7    harms Washington's economy, a clear public interest.

8        *Hangman Ridge* sets forth non-exclusive factors to consider when evaluating an act's

9    impact on the public interest, including: (1) "Were the alleged acts committed in the course of

10    defendant's business?," (2) "Did defendant actively solicit this particular plaintiff, indicating

11    potential solicitation of others?," and (3) Did plaintiff and defendant occupy unequal bargaining

12    positions?" *Hangman Ridge*, 105 Wash. 2d at 790–91 (citing *Testo v. Russ Dunmire Oldsmobile,*

13    *Inc.*, 16 Wash. App. 39 (1976) for additional factors).[7] At least these factors are met here,

14    indicating a clear public interest impact.

15        Under the first factor, the June 2023 Demand letter was sent in the normal course of

16    Meyler's business. Meyler worked as local counsel for multiple Rothschild entities, discussed

17    settlement with litigation targets, and filed a lawsuit against at least one other Washington

18    company on behalf of the Rothschild Defendants. Ex. 41; Ex. 39 (Meyer Tr.) at 16:6–17:13;

19    174:8–176:5. Under the second factor, Meyler actively solicited Valve and other Washington

20    companies, by sending letters demanding payment of licensing fees. *Id.*

21        Under the third factor, the parties do not occupy equal bargaining power. Meyler

22    represented numerous Rothschild entities, each with the ability to make repeated bad-faith

23    assertions of patent infringement (as they did in this case and through the retaliatory Texas

24    Lawsuits). Rothschild has a war chest of over 100 patents that he can continue to assert against

25    companies like Valve until they settle or pay millions to win on the merits. Potential defendants,

26    however, have little bargaining power against Rothschild and his patent-holding companies. They

27    make no products and therefore are not at risk of infringement suits. They hold virtually no assets

28

---

[7] Valve does not address factors not at issue here.

PLAINTIFF VALVE CORPORATION'S OPP. TO
DEFS' MSJ AND REPLY ISO VALVE'S MSJ          18
Case No. 2:23-cv-1016

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

1  or capital, making them judgment proof should a defendant prevail and obtain a fee award against

2  them. And Rothschild himself remains shielded from personal liability because he always uses

3  LLCs to threaten and file infringement cases. Dkt. 146.

4    Taken together, even in the absence of *per se* application of the PTPA, there is at least a

5  genuine dispute of material fact regarding these factors, and summary judgment should be denied.

6  **XI.**  **CONCLUSION**

7    For the above stated reasons, the Court should grant Valve's motion for partial summary

8  judgment. The Court should also strike and decline to consider Defendants' challenges to Valve's

9  PTPA claim under (1) RCW 19.350.020(3) (Dkt. 160, Section III); (2) *Noerr-Pennington* (*id.*

10  Section V), and (3) the CPA (*id.* Section VI), but even if the Court consider them on the merits,

11  the Court should deny Defendants' motion for summary judgment.

12  DATED: December 8, 2025   Respectfully submitted,

13            KILPATRICK TOWNSEND & STOCKTON LLP

14          By: */s/ Dario A. Machleidt*
          Dario A. Machleidt (State Bar No. 41860)

15            Kathleen R. Geyer (State Bar No. 55493)
          Christopher P. Damitio (State Bar No. 58633)

16            1420 Fifth Avenue, Suite 3700
          Seattle, WA 98101

17            Telephone: (206) 467-9600
          dmachleidt@kilpatricktownsend.com

18            kgeyer@kilpatricktownsend.com
          cdamitio@kilpatricktownsend.com

19

20            David A. Reed (*pro hac vice*)
          100 Peachtree Street NE, Suite 2800

21            Atlanta, GA 30309
          Telephone: (404) 745-2548

22            dreed@ktslaw.com

23            Marianthi Karas (*pro hac vice*)
          1801 Century Park East, Ste. 2300

24            Los Angeles, CA 90067 USA
          Telephone (310) 777 3732

25            mkaras@ktslaw.com

26          Attorneys for Plaintiff
        VALVE CORPORATION

27          I certify that this memorandum contains 7,056 words,
        in compliance with the Local Civil Rules.

28

PLAINTIFF VALVE CORPORATION'S OPP. TO
DEFS' MSJ AND REPLY ISO VALVE'S MSJ     19
Case No. 2:23-cv-1016

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

1

## **CERTIFICATE OF SERVICE**

2

I hereby certify that on December 8, 2025, I served the within via the Court's CM/ECF

3

system to all counsel who are registered participants identified on the Mailing Information for C.A.

4

No. 2:23-cv-1016.

5

6

*/s/ Dario A. Machleidt*
Dario A. Machleidt

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF VALVE CORPORATION'S OPP. TO
DEFS' MSJ AND REPLY ISO VALVE'S MSJ                    20
Case No. 2:23-cv-1016

Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600