# EXHIBIT 3

# DOCUMENT TO BE SEALED

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| VALVE CORPORATION, | &#124; |
|      Plaintiff, | &#124;     Civil Action No. 2:23-cv-1016-JNW |
| | &#124; |
| v. | &#124; |
| | &#124; |
| LEIGH ROTHSCHILD et al., | &#124; |
|      Defendants. | &#124; |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S
THIRD AND FOURTH SET OF INTERROGATORIES
AND THIRD SET OF REQUESTS FOR PRODUCTION**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendants hereby responds to Plaintiff's First Set of Requests for Admission.

Defendants hereby incorporate all general and specific objections previously made in discovery.

## I. PATENT ASSET MANAGEMENT

**RESPONSE TO PLAINTIFF VALVE CORPORATION'S THIRD SET OF INTERROGATORIES TO DEFENDANT PATENT ASSET MANAGEMENT, LLC**

**INTERROGATORIES**

**INTERROGATORY NO. 8**

Describe the relationship, if any, between You, RBDS, Display Technologies,  SPIS, Quantum Technologies, Symbology, and Rothschild.

**ANSWER:**

Patent Asset Management, LLC ("PAM") objects to this Interrogatory as vague, overly broad, and not proportional to the needs of the case. PAM further objects to the extent it seeks information not relevant to any party's claims or defenses, and to the extent it seeks to impose

**INTERROGATORY NO. 16**

For each License covering at least the '221 Patent, what is the total amount of money You initially demanded in exchange for those Licenses versus the total amount of money You (or any other Rothschild-controlled entity, including Rothschild himself) received in exchange for those Licenses?

**ANSWER:**

RBDS objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case. The Interrogatory seeks information that is not relevant to any party's claims or defenses and appears intended to harass. RBDS further objects to the extent it seeks discovery of confidential business information, trade secrets, or other proprietary and competitively sensitive information, including private contractual terms and historical licensing negotiations, which are protected from disclosure under applicable law, including Rule 26 of the Federal Rules of Civil Procedure. RBDS objects to the extent the Interrogatory is vague and ambiguous, including but not limited to the terms "initially demanded," "total amount," and "Rothschild-controlled entity," which are not defined.

RBDS also objects to the extent the Interrogatory seeks information beyond the scope of permissible discovery under the Washington Patent Dispute Resolution Act (RCW 19.350). RBDS objects to the extent the Interrogatory seeks information concerning third parties or other entities not party to this case, and to the extent it improperly seeks to aggregate information from separate and unrelated license negotiations.

Subject to and without waiving the foregoing objections, RBDS states that it is not obligated to provide information regarding private licensing discussions or revenues beyond the scope of this litigation. To the extent this information is relevant, it may be subject to expert analysis and production under protective order at the appropriate stage of discovery or expert disclosures.

**INTERROGATORY NO. 17**

Identify and describe in detail what You consider to be the smallest salable patent practicing unit of the Valve instrumentality You contend infringes claim 7 of the '221 Patent.

**ANSWER:**

RBDS objects to this Interrogatory as premature, seeking expert opinion, and not appropriate for contention discovery at this stage of the proceedings. RBDS further objects on the grounds that this Interrogatory seeks a legal conclusion and/or expert analysis regarding apportionment, damages, or valuation, which are not the proper subject of fact discovery. RBDS also objects to the extent it is vague and ambiguous, including the undefined and potentially misleading phrase "smallest salable patent practicing unit."

RBDS also objects to the extent that it calls for a technical analysis of Valve's accused

**PLAINTIFF VALVE CORPORATION'S
THIRD SET OF INTERROGATORIES TO
DEFENDANT DISPLAY TECHNOLOGIES, LLC**

## INTERROGATORIES

### INTERROGATORY NO. 15

Identify and describe (e.g., by naming the target of Your assertion and the date of such assertion)
all instances where You have accused a target company of infringing either the '195 Patent or
'723 Patent, and what form that assertion took (e.g., a demand letter, a lawsuit.).

**ANSWER:**

Display Technologies, LLC objects to this Interrogatory as overly broad, unduly burdensome,
not proportional to the needs of the case, and seeking information equally available to the
propounding party through public records. DT further objects to the extent the Interrogatory
seeks confidential business information, work product, or litigation strategy.

Subject to and without waiving the foregoing objections, DT states that it has asserted U.S.
Patent Nos. 8,671,195 and/or 9,300,723 through publicly filed complaints. To the extent
additional out-of-court communications were made, DT is not presently aware of specific
instances responsive to this request.

### INTERROGATORY NO. 16

How many demand letters have You sent or have been sent on Your behalf for the '195 Patent?

**ANSWER:**

Display Technologies, LLC objects to this Interrogatory as vague, overly broad, unduly
burdensome, and not proportional to the needs of the case. DT further objects to the extent the
Interrogatory seeks information that is not presently known or readily accessible and is equally
available to the propounding party through their own discovery efforts.

Subject to and without waiving the foregoing objections, DT states that it does not currently
contend that a demand letter was sent in this matter. To the extent any demand letters were
previously sent relating to the '195 Patent, DT is not currently aware of the number or specific
details and does not concede that any such communications, if they occurred, would be relevant

to the claims or defenses at issue in this action.

## INTERROGATORY NO. 17

Of the demand letters identified in response to Interrogatory No. 16, how many of those demand letters included a threat of litigation?

**ANSWER:**

Display Technologies, LLC objects to this Interrogatory as vague, ambiguous, and lacking sufficient context—particularly as to what constitutes a "threat of litigation."

Subject to and without waiving the foregoing objections, Display Technologies states that it does not maintain a count of such correspondence, if any, and does not characterize its business communications as containing threats of litigation. Rather, to the extent any communications were sent, they were intended to open a dialogue regarding licensing or other business discussions. Display Technologies is not aware that any such letters were sent in other circumstances concerning the '195 Patent.

## INTERROGATORY NO. 18

Of the demand letters identified in response to Interrogatory No. 16, how many of those demand letters led to (1) a lawsuit, (2) a license or other agreement, or (3) no action?

**ANSWER:**

Display Technologies, LLC objects to this Interrogatory as overly broad, vague, and unduly burdensome, particularly as to the terms "demand letters," "led to," "license or other agreement," and "no action." Display Technologies further objects to the extent the Interrogatory seeks information that is publicly available or not within its possession, custody, or control.

Subject to and without waiving the foregoing objections, Display Technologies states that it is not aware that any letters were sent in connection with the '195 Patent outside of this action. If any were sent, Display Technologies would not characterize them as "demand letters," nor does it maintain a record classifying or tracking the outcomes of any such correspondence. Accordingly, Display Technologies lacks sufficient information to provide a response as to the effect or outcome of any such communications.

**INTERROGATORY NO. 19**

How many demand letters have You sent or have been sent on Your behalf for the '723 Patent?

**ANSWER:**

Display Technologies, LLC objects to this Interrogatory as vague and overly broad, particularly as to the term "demand letters." Display Technologies further objects to the extent the Interrogatory seeks information not within its possession, custody, or control, or that is publicly available.

Subject to and without waiving the foregoing objections, Display Technologies states that it is not aware that any demand letters have been sent specifically relating to the '723 Patent outside of this action. To the extent any such correspondence was sent, Display Technologies does not classify or track such letters as "demand letters," and does not maintain records reflecting a count of such communications.

**INTERROGATORY NO. 20**

Of the demand letters identified in response to Interrogatory No. 19, how many of those demand letters included a threat of litigation?

**ANSWER:**

Display Technologies, LLC objects to this Interrogatory as vague, overly broad, and seeking information not maintained in the ordinary course of business. Display Technologies further objects to the extent it mischaracterizes any prior communications as "demand letters" or as containing "threats of litigation." To the extent such communications were sent, they were business-oriented in nature and any legal implications would have been handled by counsel.

Subject to and without waiving the foregoing objections, Display Technologies states that it is not aware of any correspondence regarding the '723 Patent that included a threat of litigation, and disclaims any intent to characterize its business communications in that manner.

**INTERROGATORY NO. 21**

Of the demand letters identified in response to Interrogatory No. 19, how many of those demand letters led to (1) a lawsuit, (2) a license or other agreement, or (3) no action?

**ANSWER:**

Display Technologies, LLC objects to this Interrogatory as vague and ambiguous, including as to the term "demand letters," which it does not use to characterize its business communications.

Subject to and without waiving those objections, Display Technologies is not aware of any communications sent regarding the '723 Patent that would fall within the scope of the Interrogatory.

**INTERROGATORY NO. 22**

Explain how much (in U.S. dollars) You initially demanded from Discord to resolve allegations of patent infringement regarding the '195 Patent or '723 Patent, and explain how much (in U.S. dollars) You ultimately accepted from Discord to resolve those infringement allegations.

**ANSWER:**

Display Technologies, LLC objects to this Interrogatory as seeking information that is protected by attorney-client privilege, attorney work product doctrine, and/or confidentiality obligations.

Subject to and without waiving the foregoing objections, Display Technologies does not recall the specific figures requested, and to the extent such communications occurred, they would have involved counsel and be privileged or otherwise not readily accessible.

**INTERROGATORY NO. 23**

Explain why You agreed to settle the case captioned *Display Technologies, LLC v. Discord, Inc.*, No. 5:24-cv-00703 (N.D. Cal.), "on terms that do not include, require or contemplate any monetary or equivalent payment by" the defendant, Discord ( *see id.*, Dkt. 56).

**ANSWER:**

Display Technologies, LLC objects to this Interrogatory as seeking information protected by the attorney-client privilege and attorney work product doctrine, and to the extent it calls for disclosure of strategic legal reasoning or confidential settlement considerations.

Subject to and without waiving the foregoing, the settlement was entered into based on a variety of legal, procedural, and business considerations, which were discussed internally and with counsel. Display Technologies, LLC is not required to disclose its privileged rationale for entering into the settlement.

**INTERROGATORY NO. 24**

**REQUEST FOR PRODUCTION NO. 53**

All responses to all demand letters You have sent referencing either the '195 Patent or '723 Patent.

**ANSWER:**

**Documents have been produced. Any additional existing non-privileged documents will be produced to the extent available.**

**REQUEST FOR PRODUCTION NO. 54**

All documents, including negotiations and related correspondence, between You or anyone acting on Your behalf, and Discord.

**ANSWER:**

**Documents have been produced. Any additional existing non-privileged documents will be produced to the extent available.**

### IV.      DEFENDANT LEIGH ROTHSCHILD

### PLAINTIFF VALVE CORPORATION'S THIRD SET OF INTERROGATORIES TO DEFENDANT LEIGH ROTHSCHILD

**INTERROGATORIES**

**INTERROGATORY NO. 10**

Explain why (i) SPIS, Quantum Technologies, and Symbology—all companies You own or control—sued Valve in the U.S. District Court for the Eastern District of Texas for patent infringement after (ii) Valve sued Defendants for violation of the Washington Troll Act.

**ANSWER:**

Leigh Rothschild objects to this Interrogatory as vague, compound, overly broad, unduly burdensome, and not proportional to the needs of the case. Mr. Rothschild further objects to the extent the Interrogatory assumes facts not in evidence and seeks legal conclusions. He also objects to the extent it calls for information concerning the actions, strategies, or legal decisions of separate corporate entities, which speak for themselves through their respective counsel and records.

Subject to and without waiving the foregoing objections, Mr. Rothschild states that SPIS, Quantum Technologies, and Symbology are distinct legal entities. While Mr. Rothschild may

hold managerial interests in one or more of those entities, he is not personally a party to the lawsuits they filed against Valve. Those entities brought suit through their own retained counsel in exercise of their independent legal rights, and any decisions regarding the assertion of patent rights were made in the ordinary course of business by or on behalf of the respective companies, not by Mr. Rothschild in his individual capacity.

**INTERROGATORY NO. 11**

What is the connection, if any, between (i) the "standard early settlement offer ... for a one-time payment of 75K" for alleged patent infringement ( *e.g.*, ROTHSCHILD0002407 at 2420; ROTHSCHILD0000194 at 197) given to alleged infringers by Your patent-holding companies and (ii) the extent of an alleged infringer's use of an asserted patent?

**ANSWER:**

Leigh Rothschild objects to this Interrogatory as vague, misleading, compound, and assuming facts not in evidence, including the implication of a uniform or "standard" settlement policy or that Mr. Rothschild, in his personal capacity, has made any such offers. He further objects on the grounds that the Interrogatory seeks information that is not relevant to any party's claims or defenses, is not proportional to the needs of the case, and calls for information protected by the attorney-client privilege and/or work product doctrine. Mr. Rothschild also objects to the extent it seeks to conflate separate corporate entities and their independent legal decisions with his personal knowledge or conduct.

Subject to and without waiving the foregoing objections, Mr. Rothschild states that settlement discussions and decisions are fact-specific, made in consultation with legal counsel, and driven by a variety of business, legal, and strategic considerations unique to each situation.

**INTERROGATORY NO. 12**

Explain why You incorporate or form companies, corporations, or businesses to assert patents previously owned by You rather than assert those patents in Your own name.

**ANSWER:**

Leigh Rothschild objects to this Interrogatory as irrelevant, harassing, and not proportional to the needs of the case. The Interrogatory improperly seeks to probe Mr. Rothschild's lawful and constitutionally protected decisions regarding corporate formation, business structuring, and assertion of patent rights through legal entities—matters that are not relevant to any claim or defense in this case.

Mr. Rothschild further objects on the grounds that this Interrogatory seeks to impugn or challenge the legal existence of separate business entities without any factual basis to disregard their corporate form. The question also assumes facts not in evidence and seeks information that

is not reasonably calculated to lead to the discovery of admissible evidence. To the extent it seeks legal conclusions or mental impressions, it is improper.
Accordingly, Mr. Rothschild declines to respond further.

**INTERROGATORY NO. 13**

What amount of settlement revenue or licensing revenue obtained by RBDS and Display

Technologies is ultimately provided, directly or indirectly, to You?

**ANSWER:**

Leigh Rothschild objects to this Interrogatory as overbroad, harassing, and not proportional to the needs of the case. The Interrogatory seeks private financial information that is irrelevant to any claim or defense in this litigation and appears intended solely to invade Mr. Rothschild's personal privacy and improperly conflate the legal separateness of distinct business entities. Mr. Rothschild further objects to the extent the Interrogatory seeks information that is confidential, proprietary, and not discoverable under the Federal Rules of Civil Procedure or any applicable privilege. The Interrogatory also assumes facts not in evidence, including any entitlement to "settlement revenue" by Mr. Rothschild personally, and seeks to pierce the corporate veil without any basis to do so.

There is no set amount nor any set percentage. Mr. Rothschild benefits from the collective

income of the companies, when it exceeds expenses and thus benefits after employees,

contractors, vendors and other creditors are paid. No further response will be provided.

**INTERROGATORY NO. 14**

How much, in United States dollars, have You, on an annual basis since 2015, received (directly

or indirectly) from each of PAM, RBDS, and Display Technologies?

**ANSWER:**

Leigh Rothschild objects to this Interrogatory as irrelevant, overly broad, unduly burdensome, and not proportional to the needs of the case. The Interrogatory seeks private financial information dating back nearly a decade without any showing of relevance to the claims or defenses in this litigation. It is also harassing and appears designed to inappropriately conflate Mr. Rothschild, an individual, with distinct and independently operated legal entities.
Mr. Rothschild further objects to the extent the Interrogatory seeks information protected by privacy rights, as well as proprietary or confidential financial data, and to the extent it is intended to support an improper veil-piercing theory without legal or factual basis.

No further response will be provided.

Leigh Rothschild.

**INTERROGATORY NO. 18**

What is Your contention, if any, about the definition of the words "assert," "asserted," and "asserting" as those terms are used in the GSLA ( *e.g.*, §§ 2.3 & 9.3)?

**ANSWER:**

Leigh Rothschild objects to this Interrogatory on the grounds that it seeks a legal conclusion, calls for speculation, and is vague and ambiguous as to the meaning and scope of the terms "assert," "asserted," and "asserting." Mr. Rothschild further objects to the extent the Interrogatory seeks interpretation of a contract to which he is not the sole party and which speaks for itself.

Subject to and without waiving the foregoing objections, Mr. Rothschild states that the terms referenced are not specifically defined in the GSLA and are used in their commonly understood manner in common English usage. Mr. Rothschild reserves all rights to offer further clarification as appropriate.

**INTERROGATORY NO. 19**

Describe what was meant by "potential resolution to these claims" in the June 2023 Demand Letter.

**ANSWER:**

Leigh Rothschild objects to this Interrogatory as vague and ambiguous, including but not limited to the phrases "potential resolution" and "these claims." Mr. Rothschild further objects to the extent the Interrogatory seeks a legal conclusion, calls for speculation, or purports to characterize the content of a written document that speaks for itself. Mr. Rothschild also objects on the grounds that he is not required to interpret or explain third-party communications or provide explanations for phrasing used in correspondence issued in the name of another entity.

Subject to and without waiving the foregoing objections, Mr. Rothschild states that the phrase "potential resolution to these claims" is a common, general expression used in demand correspondence to reference the possibility of settlement.

**INTERROGATORY NO. 24**

Describe all settlement offers to or discussions with Valve, authorized by You or on Your behalf, to settle the Texas Lawsuits—including whether those settlement offers or discussions included resolving the Texas Litigations and this action and the reasons for seeking to settle all actions concurrently.

**ANSWER:**

Leigh Rothschild objects to this Interrogatory as overbroad, not reasonably calculated to lead to the discovery of admissible evidence, and not properly directed to him in his individual capacity. Mr. Rothschild was not a party to the Texas lawsuits and is not aware of any specific settlement discussions with Valve that were conducted by or on his behalf in connection with those cases. Settlement communications in those matters, if any, were handled by the respective corporate parties and their legal counsel.

**PLAINTIFF VALVE CORPORATION'S
THIRD SET OF REQUESTS FOR PRODUCTION TO
DEFENDANT LEIGH ROTHSCHILD**

**REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 91**

All documents regarding the ownership history of all patents identified in Exhibit C to the GSLA (*see* Ex. 38-1 at 18-22)—including all family members of those patents. This request includes, but is not limited to, inventor employment agreements, assignment records, ownership records, contracts, leases, etc.

**ANSWER:**

Documents have been produced.  To the extent that additional documents are uncovered by additional searching, such documents will be produced.

**REQUEST FOR PRODUCTION NO. 92**

All documents relating to the Texas Lawsuits.

**ANSWER:**

Plaintiff is already in possession of the documents from the Texas Lawsuits.

**REQUEST FOR PRODUCTION NO. 93**

All documents, including negotiations and related correspondence, between You or anyone acting on Your behalf, and Discord.

**ANSWER:**

To the extent that any non-privileged documents exist, they will be produced.


**REQUEST FOR PRODUCTION NO. 94**

All documents relating to Merchant & Gould's Motion for Leave to Withdraw as Counsel for Defendants.

**ANSWER:**

Plaintiff is already in possession of any non-privileged documents.


**REQUEST FOR PRODUCTION NO. 95**

Documents sufficient to show how much was paid to Pitch Scientific to prepare the April 4, 2023 Infringement Search Report attached to the 2023 Meyler Letter.

**ANSWER:**

Documents will be produced to the extent non-privileged documents exist.


**REQUEST FOR PRODUCTION NO. 96**

Documents sufficient to show who paid Pitch Scientific to prepare the April 4, 2023 Infringement Search Report attached to the 2023 Meyler Letter.

**ANSWER:**

Documents will be produced to the extent non-privileged documents exist.


DATED:  August 25, 2025                     Respectfully submitted,


                                            /s/ Joseph J. Zito
                                            Joseph J. Zito
                                            DNL ZITO
                                            1250 Connecticut Avenue, NW, Suite 700
                                            Washington, DC 20036
                                            202-466-3500
                                            jzito@dnlzito.com

René A. Vazquez
DNL ZITO
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
703-989-2244
rvazquez@dnlzito.com

*Counsel for*
*Defendants Rothschild et al*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 25, 2025, the foregoing Defendants'

Response, was served via email upon all counsel of record for Plaintiff Valve Corporation.

  /s/ Joseph J. Zito
Joseph J. Zito

**VERIFICATION**

The undersigned states and declares as follows:

I have reviewed the contents of the above and provided the answers thereto.and know  the contents thereof.

To the best of my knowledge, the factual information in the foregoing document is accurate and truthful as of the day they are made.

I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on *10/30/2025*

*Daniel Falcucci*
Name

Title  COO

34