# EXHIBIT 9
## FILED UNDER SEAL

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| **ANALYTICAL TECHNOLOGIES, LLC,**<br><br>     **Plaintiff,**<br><br>     v.<br><br>**AMERICAN DAIRY QUEEN CORPORATION**<br><br>     **Defendant** | **Civil Action No. 2:24-cv-00445-JRG-RSP**<br>**LEAD CASE** |
| **ANALYTICAL TECHNOLOGIES, LLC,**<br><br>     **Plaintiff,**<br><br>     v.<br><br>**STARBUCKS CORPORATION**<br><br>     **Defendant** | Civil Action No. 2:24-cv-00448-JRG-RSP<br>MEMBER CASE<br><br>**JURY TRIAL DEMANDED** |

## VERIFICATION OF DANIEL FALCUCCI
## TO PLAINTIFF ANALYTICAL TECHNOLOGIES, LLC'S RESPONSES TO
## STARBUCKS' REQUESTS FOR ADMISSION AND INTERROGATORIES

I, Daniel Falcucci, agent of Analytical Technologies, LLC ("Plaintiff"), hereby declare and state that Plaintiff's Responses to Starbucks' Requests for Admission and Interrogatories, as served on November 12, 2024, were prepared based on the records of the company and information still in existence, presently recollected and thus far discovered in the course of preparation of these answers; and subject to the limitations set forth herein, these answers are true and correct based on information reasonably available to me.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 5, 2024

*Daniel Falcucci*
_____
Daniel Falcucci
Analytical Technologies, LLC

**AT000819**

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| ANALYTICAL TECHNOLOGIES, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>AMERICAN DAIRY QUEEN CORPORATION<br><br>    Defendant | **Civil Action No. 2:24-cv-00445-JRG-RSP<br>LEAD CASE** |
| ANALYTICAL TECHNOLOGIES, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>STARBUCKS CORPORATION<br><br>    Defendant | Civil Action No. 2:24-cv-00448-JRG-RSP<br>MEMBER CASE<br><br>**JURY TRIAL DEMANDED** |

## SET 2 - VERIFICATION OF DANIEL FALCUCCI TO PLAINTIFF ANALYTICAL TECHNOLOGIES, LLC'S RESPONSES TO STARBUCKS' REQUESTS FOR ADMISSION AND INTERROGATORIES

I, Daniel Falcucci, of Analytical Technologies, LLC ("Plaintiff"), hereby declare and state that Plaintiff's Responses to Starbucks' Requests for Admission and Interrogatories, as served on December 4, 2024, were prepared based on the records of the company and information still in existence, presently recollected and thus far discovered in the course of preparation of these answers; and subject to the limitations set forth herein, these answers are true and correct based on information reasonably available to me.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 9, 2024

*Daniel Falcucci*
_____
Daniel Falcucci – Agent
Analytical Technologies, LLC

**AT000820**

## SETTLEMENT AND LICENSE AGREEMENT

This Settlement and License Agreement (this "Agreement") is by and between, on the one hand, Analytical Technologies, LLC, a Wyoming limited liability company, with a place of business at 1712 Pioneer Ave Suite 500, Cheyenne, Wyoming 8200 ("Licensor") and, on the other, American Dairy Queen Corporation, with a place of business at 8000 Tower, Suite 700, 8331 Norman Center Drive, Bloomington, MN 55437 ("ADQ") and Texas Dairy Queen Operators' Council, with a place of business at 2120 Forum Pkwy Bedford, TX 76021 (collectively "Licensees"). The term "Parties" shall refer collectively to Licensor and Licensees and each, individually as appropriate, a "Party."

WHEREAS, Licensor owns U.S. Patent No. 8,799,083 entitled "System and Method for Managing Restaurant Customer Data Elements," U.S. Patent No. 10,783,596 entitled "System and Method for Managing Restaurant Customer Data Elements" and additional patents identified in Exhibit C; and

WHEREAS Licensor brought suit against ADQ alleging infringement in the United States District Court for the Eastern District of Texas, Civil Action No. 2:24-cv-00306 (the "Pending Litigation"), regarding U.S. Patent No. 8,799,083; and

WHEREAS ADQ denies Licensor's allegations of infringement by it and/or its Affiliates; and

WHEREAS, the Parties desire to minimize the time and expense of litigation and therefore desire to resolve the Pending Litigation and prevent any future disagreements amongst them on the issue, and do so on the terms set forth herein; and

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

### Section 1.     Definitions

The terms set forth below shall have the following meanings in the Agreement:

1.1     "Affiliate" means, in relation to any Party hereto, any and all "Persons" (as hereinafter defined) now, at any time since the filing of the Pending Litigation, or in the future "Controlled" (the term "Control" and correlatives thereof shall have the meaning more particularly set forth herein) by a Party. For the purposes of this agreement, as it relates to ADQ, "Affiliate" shall also encompass International Dairy Queen, Inc. ("IDQ").

1.2     In the event that a Person is not an Affiliate as of the Effective Date of this Agreement, but later becomes an Affiliate through an acquisition by a Licensee (an "Acquired Affiliate"), such Acquired Affiliate shall be deemed to be an Affiliate for the purposes of this Agreement upon completion of such transaction or transactions, but nothing herein shall limit or impair Licensor's rights to prosecute or maintain any claim against any Acquired Affiliate with respect to activities,

1

CONFIDENTIAL UNDER THE PROTECTIVE ORDER          AT000847

events or transactions occurring prior to the time when such Person became an Acquired Affiliate. To the extent either a Licensee is acquired by or merges with another entity or reorganizes organizations in the future in a manner that meet the Control requirements herein, this shall be deemed a change in Control subject to Section 7.1.

1.3    Furthermore, in the event an Affiliate covered by this Agreement ceases to be an Affiliate (a "Departing Affiliate"), any rights under this Agreement shall continue to apply to such Departing Affiliate only with respect to any activity conducted by the Departing Affiliate during the period of time it was an Affiliate.

1.4    "Control" with respect to a Party or Person means (a) the legal, beneficial, or equitable ownership, directly or indirectly of fifty percent (50%) or more of the securities (or other equity interests) with voting rights in the election of the directors or equivalent managers  or (b) the possession, directly or indirectly, of the power to direct or cause the direction of management or policies through the legal, beneficial, or equitable ownership or control of voting securities, appointment of more than fifty percent (50%) of the board of directors by contract, or otherwise.

1.5    "Effective Date" means the last date this Agreement is executed by each Party.

1.6    "Licensed Patent" means U.S. Patent(s) as outlined in Exhibit C and any continuations, divisionals, continuations-in-part, extensions, reissues, reexaminations, any patents and/or applications for patents claiming priority to or through U.S. Patents as outlined in Exhibit C and/or substitution patents and/or patent applications thereof, as well as any and all foreign counterparts of any of the foregoing.

1.7    "Licensed Products" means all past, present and future machines, manufactures, compositions of matter, methods, processes, apparatuses, devices, hardware, software, applications, data, products, web sites, systems and other products and services, used, made, distributed, leased, imported, exported, licensed or offered to license, sold or offered for sale, or otherwise transferred by or on behalf of a Licensee, which in the absence of this Agreement would infringe at least one of the claims of any given Licensed Patent (directly, indirectly, or otherwise) or would satisfy an element or a step of at least one of the claims of any given Licensed Patent. "Licensed Products" shall not include the machines, manufactures, compositions of matter, methods, processes, apparatuses, devices, products, web sites, systems or services of any Third Party (any of the foregoing a "Third Party Product"), except as such Third Party Products are for the direct benefit of a Licensee or any of its Affiliates.

1.8    "Person" shall mean a trust, corporation, partnership, joint venture, limited liability company, association, unincorporated organization or other legal or governmental entity.

2

CONFIDENTIAL UNDER THE PROTECTIVE ORDER        AT000848

**1.9**    "Third Party" means a Person other than the Parties and their Affiliates.

**1.10**    "Franchisee" means a Person who is party to a franchise agreement with a Licensee or with a Licensee's Affiliates.

**Section 2.**    <u>**Releases and Covenants**</u>

**2.1**    **Licensor Release of each Licensee.**    Subject to the payment provided under Section 5.1, Licensor irrevocably releases, acquits and forever discharges Licensees, their Affiliates, and their respective officers, directors and attorneys from any and all past, present, or future claims or liabilities of any kind and nature, at law, in equity, or otherwise, known or unknown, suspected or unsuspected, disclosed or undisclosed, arising out of or relating in any way to acts of Licensees or their Affiliates in connection with: (i) the claims and counterclaims asserted in the Pending Litigation; (ii) the Licensed Patent solely with respect to the Licensed Products (including use or infringement thereof); and/or (iii) the conduct of settlement negotiations occurring before the Effective Date (except for representations or obligations expressly included in this Agreement).

**2.2**    **Licensor Release of Third Parties.**    Subject to the payment provided under Section 5.1, Licensor acquits and forever discharges all Franchisees, vendors, suppliers, manufacturers, developers, depositors, distributors, contractors, partners, hosts, direct and indirect customers of Licensees, their Affiliates, and end-users of the Licensed Product (such Third Parties individually referred to herein as a "Licensee Third Party" and collectively as the "Licensee Third Parties") from any and all past, present, or future claims or liabilities of any kind and nature, at law, in equity, or otherwise, known and unknown, suspected and unsuspected, disclosed and undisclosed, arising out of or relating in any way to acts of a Licensee Third Party or the Licensee Third Parties in connection with the Licensed Patent solely with respect to the Licensed Products and any Claimed methods. For clarity, this release shall only protect Licensee Third Parties and Affiliates of the Licensees to the extent their activities concern the Licensed Products of or for Licensees or any of their Affiliates.

**2.3**    **Licensees' Release.**    Subject to the compliance by Licensor with the terms and conditions of this Agreement, Licensees irrevocably release, acquit and forever discharge Licensor and their respective officers, directors, shareholders, members, employees, agents, consultants, experts, representatives, and attorneys from any and all claims or liabilities of any kind and nature, at law, in equity, or otherwise, known or unknown, suspected or unsuspected, disclosed or undisclosed, arising out of or relating in any way to acts of Licensor in connection with the claims and counterclaims asserted in the Pending Litigation, with respect to the Licensed Patent and with respect to the conduct of settlement negotiations occurring before the Effective Date (except for representations or obligations expressly included in this Agreement). Notwithstanding the foregoing, nothing in this Paragraph or in this Agreement shall prevent Licensees or any Licensee Third Party (other than as

3

provided in Paragraph 3.5 hereof) from asserting that any of the Licensed Patent is/are invalid, not infringed or unenforceable if the Licensed Patent is/are asserted against Licensees or any Licensee Third Party.

**Section 3.**      **<u>Grants and Covenants</u>**

3.1      **Licensor License to Licensees.**  Subject to the payment provided under Section 5.1, Licensor hereby grants to Licensees and their Affiliates a non-exclusive, non-transferable (except as provided for in Section 7.1), perpetual, irrevocable, royalty-free, fully paid-up, worldwide license, without the right to sublicense, in and to the Licensed Patent solely to make, have made, sell, offer for sale, import, have operated and use the Licensed Products.  Licensor hereby also grants to Licensee Third Parties, manufacturers, developers, vendors, suppliers, distributors, contractors, depositors, partners, hosts, customers and end-users a non-exclusive, non-transferable (except as provided for in Section 7.1), perpetual, irrevocable, royalty-free, fully paid-up, worldwide license, without the right to sublicense, in and to the Licensed Patent solely to make, have made, sell, offer for sale, import, have operated and use the Licensed Products.  Under the terms of this Agreement, each Licensee shall have no right to sublicense and further, there is no right to further sublicense by any Third Party.  No royalties or additional payments of any kind shall be required in order to maintain this Agreement in force.

3.2      **Covenant Not to Sue Either Licensee.**  Subject to the payment provided under Section 5.1, Licensor covenants not to sue Licensees or their Affiliates for actual or alleged infringement of the Licensed Patent.  Licensor further covenants not to sue Licensee Third Parties and their respective customers, depositors, end-users, suppliers, vendors, manufacturers, hosts, partners, distributors, contractors, developers and other Third Parties covered under this Agreement, for actual or alleged infringement of any Licensed Patent, solely with respect to Licensees' Licensed Products.

3.3      **Covenant Not to Sue Licensor.**  Subject to the compliance by Licensor with the terms and conditions of this Agreement, Licensee covenants not to sue Licensor for any claims with respect to the Licensed Patent solely.

3.4      **No Other Rights.**  No rights or covenants are granted under any patents except as expressly provided herein, whether by implication, estoppel or otherwise.  No right to grant covenants, rights, sublicenses or to become a foundry for Third Parties is granted under this Agreement.  The Parties agree that, except as explicitly set forth herein, the licenses, releases and covenants set forth in this Agreement expressly exclude any products, product lines, services, devices, systems, components, hardware, software of any Third Party, except for the Licensed Products.  The Parties further agree that, except as expressly provided herein, this Agreement does not limit in any manner Licensor's rights to enjoin, control or extract royalties with respect to products, product lines, services, devices, systems, components, hardware, software of any Third Party.

4

**3.5** **Future Enforcement Activity by Licensor.** In the event that Licensor or any successor in interest or assignee of Licensor brings a claim under the Licensed Patent against any Licensee Third Party or any entity that claims that the alleged infringing conduct arises out of any communication, interaction, transaction, cooperation, or contractual obligation with or on behalf of a Licensee, then upon the Licensee providing written notice and sufficient written evidence to corroborate that claim, Licensor shall within ten (10) days cause such claim to be dismissed with respect to such entity, to the extent the claim is based on conduct that is properly subject to protection from suit under Section 2.1, 2.2, 3.1 or 3.2.

**Section 4.** <u>**Dismissal of Litigation**</u>

**4.1** **Timing of Dismissal.** Within five (5) court days after the payment of the consideration to Licensor under Section 5.1 below, the Parties shall cause their respective counsel to file the stipulated motion as set forth in Exhibit A, dismissing with prejudice all claims brought by Licensor in the Pending Litigation. The Parties shall promptly proceed with any and all additional procedures needed to effect the above dismissal. If for any reason (except for Licensees' failure to make the payment under Section 5.1), Licensor or its counsel refuses to file the motion as set forth in Exhibit A, Licensees shall have the right to demand Licensor immediately refund in full the Consideration to Licensees.

**4.2** **Costs.** The Parties agree that they shall bear their own costs and attorneys' fees relating to the Pending Litigation and to the negotiation of this Agreement.

**4.3** **Dismissal of Licensee Third Parties.** To the extent Licensor has any pending lawsuits against Licensee Third Parties related to the Licensed Products and the Licensed Patent, Licensor will undertake to dismiss with prejudice all claims against Licensee Third Parties related to the Licensed Products within 5 days after Licensor's receipt of the payment of the "Consideration" (as hereinafter defined), provided Licensee provides written notice to Licensor of the lawsuits involving such Licensee Third Parties.

**Section 5.** <u>**Consideration**</u>

**5.1** **Payment.** In consideration of the licenses, releases, and covenants granted by Licensor and the dismissal by Licensor of the Pending Litigation, Licensees agrees to pay to Licensor a total payment of Five Thousand U.S. Dollars ($5,000.00) (the "Consideration") within fourteen (14) days of the Effective Date. In the event that Consideration is not paid within fourteen (14) days of the Effective Date, Licensor shall have the right to immediately terminate this Agreement (and Section 11.12 shall not apply). Such payment shall be by electronic or wire transfer to an account specified by Licensor and attached to this Agreement as Exhibit B. No other payments are required by this Agreement. Notwithstanding anything contained herein to the contrary, this Agreement shall not be effective until the Consideration has been received by Licensor. The Parties hereby agree that this is a settlement

5

**CONFIDENTIAL UNDER THE PROTECTIVE ORDER**          **AT000851**

and no representation is made by Licensor that the foregoing Consideration represented a reasonable royalty from the infringement alleged in the Litigation. The Consideration paid to Licensor under this Agreement shall be nonrefundable, including in the event of a finding of invalidity, unenforceability, or non-patentability of the Licensed Patent.

**5.2**     **Taxes.** Licensor shall bear all U.S. taxes imposed with respect to payments made to it hereunder. For clarity, this does not include any other taxes, charges, or fees, for example, non-U.S. taxes or non-U.S. tax withholdings. For internal tax purposes the consideration received herein is being deemed a one-time royalty payment by Licensees to Licensor.

**5.3**     **No Withholding.** Licensees' payment of the Consideration hereunder shall be made free and clear of any taxes, withholding taxes, assets, duties, permits, tariffs, fees and other charges of any kind.

## Section 6.     <u>Term and Termination</u>

**6.1**     **Term.** The term of this Agreement shall be from the Effective Date until six (6) years after the expiration of the last-to-expire Licensed Patent, unless earlier terminated as allowed by this Agreement, provided that the licenses, releases, and covenants granted by Licensor herein shall survive in perpetuity.

**6.2**     **Agreement Obligations Not Released.** Notwithstanding anything to the contrary herein, the Parties reserve all rights and remedies, including damages and equitable relief, for breach of this Agreement by the other Party and nothing herein releases any Party from its respective obligations under this Agreement or prevents any Party from enforcing the terms and conditions of this Agreement against the other.

## Section 7.     <u>Assignment and Change of Control</u>

**7.1**     **No Assignment.** In the event of a change of Control of a Licensee, this Agreement shall continue to benefit and obligate the Licensee or the successor entity, and the licenses granted in Subsection 3.1 may be assigned to such successor entity, provided that (i) such licenses will extend only to the Licensed Products and that part of the business relating to the Licensed Products prior to such change of Control and will not extend to any machines, manufactures, compositions of matter, methods, processes, apparatuses, devices, products, web sites, systems of the successor or acquiring entity (other than the Licensed Products (or reasonable extensions of the foregoing and whether rebranded or not) of the subject Licensee's business that existed prior to the change of Control); and (ii) the obligations of Licensee are similarly assigned. Any assignment or transfer in violation of this Subsection 7.1 shall be null and void, but only from such time as the violation

6

occurs.  Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the Parties and their permitted successors and assigns.  Except as set forth in this Section 7.1, this Agreement may not be assigned by Licensee without the prior written permission of Licensor and any attempt to assign without such permission will be void.

**7.2**   **Assignment by Licensor.**  Licensor may not assign, or exclusively license, any of the Licensed Patent without such assignee or licensee agreeing to be bound by the obligations of Licensor hereunder as if it were a party hereto and any assignment or exclusive license made in violation of this provision shall be voidable at Licensee's election.

**7.3**   **Notice of Assignments.** To the extent any Party makes an assignment, whether complete or partial, of its rights under this Agreement where permitted by the express terms of the Agreement, that Party shall provide written notice to the non-assigning Party.  In the event of any change of control of a Licensee, a public announcement of such change of control shall be deemed to constitute written notice of assignment for purposes of this section.

**Section 8.**   <u>**Notices**</u>

**8.1**   Notices and other communications regarding or under this Agreement shall be sent (i) by overnight courier or by registered or certified mail and (ii) if available, electronic mail to the following addresses:

**8.1.1**   Notices to Licensor shall be sent to Licensor's agent at:

> Analytical Technologies, LLC
> Attention: Outside Counsel
> Randall Garteiser
> rgarteiser@ghiplaw.com
>
> C/C:
> Attention: Director
> Leigh Rothschild
> leigh@patentmgmt.com

**8.1.2**   Notices to Licensee shall be sent to Licensee at:

> American Dairy Queen Corporation
> Attention: General Counsel
> shelly.ocallaghan@idq.com

7

**CONFIDENTIAL UNDER THE PROTECTIVE ORDER**          **AT000853**

*With a copy to:*

Neil J. McNabnay
Fish & Richardson P.C.
1717 Main St., Ste 5000
Dallas, TX 75201

**8.2**     A Party may change the above addresses for notices relating to this Agreement in a written notice to the other Party complying as to delivery with the terms of Section 8.1. All such notices, requests, demands and other communications shall be effective, if by mail or overnight courier, when delivered or if not delivered due to refusal or failure to advise the other Party of a change of address, five (5) days after depositing such notice in the U.S. mail or one (1) day after depositing such notice with an overnight courier.

**Section 9.     Representations, Warranties and Disclaimers**

**9.1**     Each Party and each person signing this Agreement on behalf of a Party represents and warrants to the other that it has the full right and power to enter into this Agreement, and the person executing this Agreement has the full right and authority to enter into this Agreement on behalf of such Party and the full right and authority to bind such Party to the terms and obligations of this Agreement.

**9.2**     Licensor represents and warrants that as of the Effective Date (a) Licensor is the sole owner of the entire right, title and interest in and to the Licensed Patent, including all rights to enforce and sue for past damages; (b) that Licensor does not own any additional patents to the patents listed in Exhibit C; and (c) Licensor has the right and authority to grant the rights, licenses and releases hereunder.

**9.3**     Other than that which is required of Licensees by Court Order or rule of law, Licensees represent and warrant that they will not contest or assist in contesting the validity or enforceability of the Licensed Patent and will so instruct their counsel and consultants retained for this case other than those retained in conjunction with co-defendants not to contest or assist in contesting the validity or enforceability of the Licensed Patent on Licensees' behalf. If Licensees or their counsel intentionally or knowingly contest or assist in the contesting of the validity or enforceability of the Licensed Patent, Licensor will have the right to unilaterally terminate this Agreement. For the avoidance of doubt, no production or response by Licensees to a subpoena or other order of a court of competent jurisdiction shall be considered contesting or assisting with a contest under this Section. Nothing in this section shall be construed so as to restrict any counsel, including ADQ's counsel in the Pending Litigation, from taking any action whatsoever (including challenging the validity and enforceability of the Licensed Patent in any judicial or administrative forum) on behalf of their clients who are not parties to this Agreement. Nothing in this Paragraph or in this Agreement shall prevent Licensees from asserting that any

8

of the Licensed Patent is/are invalid, not infringed or unenforceable if the Licensed Patent is/are asserted against Licensees or their Licensee Third Parties.

9.4    EXCEPT AS EXPRESSLY PROVIDED IN THIS AGREEMENT, NEITHER LICENSOR NOR LICENSEES MAKES ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND, EITHER EXPRESS OR IMPLIED, OR ASSUMES ANY RESPONSIBILITIES WHATSOEVER WITH RESPECT TO THE COMMERCIAL SUCCESS, USE, SALE, OR OTHER DISPOSITION BY OR FOR ANY OTHER PARTY (OR ITS SUBSIDIARIES) OR THEIR DISTRIBUTORS, USERS, OTHER CUSTOMERS, OR SUPPLIERS OF PRODUCTS INCORPORATING OR MADE BY THE USE OF INVENTIONS LICENSED HEREIN. LICENSOR DOES NOT CONVEY ANY RIGHT OR LICENSE (EXCEPT TO THE EXTENT NECESSARY TO EXERCISE THE RIGHTS EXPRESSLY GRANTED HEREIN) BY IMPLICATION, ESTOPPEL, OR OTHERWISE, EXCEPT AS EXPRESSLY GRANTED HEREIN.

9.5    In no event shall Licensor be liable for any special, punitive or exemplary damages or for loss of profits or revenue, or any indirect, consequential or incidental damages arising out of, or in connection with, this Agreement and the Licensed Products. Further, in no event shall Licensor be found liable for damages to any party for any amount that exceeds the aggregate total amount of Consideration paid hereunder with respect to this Agreement and the Licensed Products. In no event shall Licensees be liable for any special, punitive or exemplary damages or for loss of profits or revenue, or any indirect, consequential or incidental damages arising out of, or in connection with, this Agreement.

## Section 10.    **Confidentiality, Publicity Material, Marketing and Non-Disparagement**

10.1    Nothing in this Agreement shall confer upon any Party any right to include in advertising, packaging or other commercial activities, any reference to the other Parties in any manner whatsoever.

10.2    Each Party agrees not to disclose the terms of this Agreement to any Third Party without the prior written consent of the other Parties, which may be withheld in such Party's sole and absolute discretion. This obligation is subject to the following exceptions:

10.2.1    disclosure is permissible if required by government or court order, including litigation document requests and SEC (or equivalent) reporting requirements, but only to the extent so required, provided that such disclosure is subject to confidential treatment to the fullest extent allowed by law;

10.2.2    disclosure is permissible if otherwise required by law or required during the course of litigation (e.g., subpoena, discovery request or equivalent), but

9

**CONFIDENTIAL UNDER THE PROTECTIVE ORDER          AT000855**

only to the extent so required and provided that such disclosure does not affect the confidential nature of such information;

**10.2.3** disclosure is permissible to the extent the information becomes publicly available by judicial order or action;

**10.2.4** disclosure is permissible if required to enforce rights under this Agreement; and

**10.2.5** each Party may disclose this Agreement or its contents to the extent reasonably necessary, on a confidential basis, to its Affiliates, accountants, attorneys, auditors, and financial advisors, or those of any Third Party in connection with a financing or corporate transaction.

**10.2.6** Licensees may disclose this Agreement to all Licensee Third Parties covered by the releases, grants, and covenants provided in Sections 2 and 3 above.

**10.2.7** Licensor may disclose the fact that a settlement and/or license agreement has been reached with Licensee in connection with any other litigation or enforcement efforts by Licensor with respect to the Licensed Patent. The terms of the settlement or license shall remain confidential pursuant to the terms hereof.

**10.3** Unless required to do so by legal process, the Parties shall not make any disparaging statements or representations, either directly or indirectly, whether orally or in writing, by word or gesture, to any Person whatsoever, about the other Party or the other Party's representatives or Affiliates and their representatives, or any Released Party, or any of their respective directors, officers, or employees. For purposes of this paragraph, a disparaging statement or representation is any communication which, if publicized to another, would cause or tend to cause the recipient of the communication to question the business condition, integrity, competence, good character or morals, or product quality of the Person to whom the communication relates.

**Section 11.  General Terms**

**11.1** The construction, validity and performance of the Agreement shall be governed in all respects (without regard to conflicts of law provisions) by the law of the State of Texas, United States of America. The Parties hereby submit to the jurisdiction of, and waive any venue objections against, the State and Federal courts in Texas.

**11.2** Nothing in the Agreement is to be construed as requiring the commission of any act contrary to law. Wherever there is any conflict between any provision of the Agreement and any statute, law or ordinance, or a treaty and its valid regulations, the statute, law, ordinance, or treaty and its valid regulations shall prevail. In such event the provisions of the Agreement shall be curtailed and limited only to the

10

**CONFIDENTIAL UNDER THE PROTECTIVE ORDER    AT000856**

extent necessary to bring them within the legal requirements, and such provisions, so curtailed and limited, together with all other provisions of the Agreement shall continue in full force and effect.

11.3    All rights granted under the covenants not to assert, releases, discharges and other rights granted under or pursuant to this Agreement are, and shall otherwise be deemed to be, for purposes of Section 365(n) of Title 11, U.S. Code (the "Bankruptcy Code"), licenses and rights to "intellectual property" as defined under Section 101 of the Bankruptcy Code. The Parties agree that each Party shall retain and may fully exercise and enjoy all rights and elections available to them under the Bankruptcy Code and other applicable laws and regulations.

11.4    This Agreement will not be binding upon the Parties until it has been signed herein below by or on behalf of each Party, in which event, it shall be effective as of the Effective Date. No amendment or modification hereof shall be valid or binding upon the Parties unless made in writing and signed as aforesaid.

11.5    The failure of a Party to enforce any provision of this Agreement shall not prevent the subsequent enforcement of such provision. No waiver of any provision of this Agreement shall be deemed or shall constitute a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver unless expressly stated in writing by the party making the waiver. No waiver of any provision shall be binding in any event unless executed in writing by the party making the waiver.

11.6    The headings of the several Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the meaning and interpretation of this Agreement.

11.7    This Agreement embodies the entire understanding of the Parties and supersedes all previous communications, representations or understandings, either oral or written, between the Parties relating to the subject matter hereof.

11.8    Each Party shall bear its own costs, expenses and attorneys' fees incurred in connection with the making of this Agreement, and its performance under this Agreement. Each Party expressly waives any claim of costs and attorneys' fees from or against the other Party, including, without limitation, any attorneys' fees or costs that may already have been awarded in any action.

11.9    The language of this Agreement has been approved by counsel for each Party, and no Party (nor their respective counsel) shall be deemed to be the draftsman of this Agreement. Thus, any rule of construction to the effect that ambiguities are to be resolved against the drafting Party will not be applied in the interpretation of this Agreement. The words "include" and "including" and variations thereof, will not be deemed to be terms of limitation in this Agreement, but rather will be deemed to be followed by the words "without limitation." The headings in this Agreement

11

CONFIDENTIAL UNDER THE PROTECTIVE ORDER        AT000857

are for convenience and organization only, and not intended to constitute the substance of this Agreement and will not be referred to in connection with the construction or interpretation of this Agreement.

11.10   This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute but one and the same instrument. Such counterparts may be exchanged by fax, or scanned and exchanged by electronic mail, confirmed with printed copy, but shall be effective upon receipt of fax/electronic mail as applicable. The Parties agree that facsimile or scanned copies of signatures shall be deemed originals for all purposes hereof and that no Party may produce such copies, without the need to produce original signatures, to prove the existence of this Agreement in any proceeding brought hereunder.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed with intent to be bound as of the Effective Date.

**ANALYTICAL TECHNOLOGIES, LLC**

By_____

Leigh Rothschild

Title: Authorized Signatory

Date: 25 October 2024

**AMERICAN DAIRY QUEEN CORPORATION**

By_____
Shelly O'Callaghan (Oct 30, 2024 12:27 CDT)

Name: Shelly O'Callaghan

Title: Executive Vice President & General Counsel

Date: 10/30/2024

**TEXAS DAIRY QUEEN OPERATORS' COUNCIL**

By_____

Name: LOUIS M. ROMANUS

Title: CEO

Date: 10-30-24

12

**CONFIDENTIAL UNDER THE PROTECTIVE ORDER          AT000858**

THIS AGREEMENT DOES NOT BIND OR OBLIGATE ANY PARTY IN ANY MANNER UNLESS DULY EXECUTED BY AUTHORIZED REPRESENTATIVES OF ALL PARTIES.

13

**CONFIDENTIAL UNDER THE PROTECTIVE ORDER          AT000859**

**EXHIBIT A**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

**ANALYTICAL TECHNOLOGIES, LLC,**

              Plaintiff,

              v.

**AMERICAN DAIRY QUEEN**
**CORPORATION**

              Defendant.

**CASE NO. 2:24-cv-00445**

**JURY TRIAL DEMANDED**

**JOINT MOTION FOR DISMISSAL**

Under Federal Rule of Civil Procedure 41(a), Analytical Technologies, LLC moves to dismiss its claims **with prejudice**, with each party bearing its own attorneys' fees and costs.

SO ORDERED: _____

**CONFIDENTIAL UNDER THE PROTECTIVE ORDER**          **AT000860**

**EXHIBIT B**

**WIRE TRANSFER INSTRUCTIONS**

Funds should be wired, via the Federal Reserve System, to Analytical Technologies, LLC, as follows:

Analytical Technologies, LLC
1712 Pioneer Ave Suite 500
Cheyenne, Wyoming 82001

First Horizon Bank
165 Madison Ave.
Memphis, TN 38103
ABA Routing #: 084000026
Account#: 220007896574
Swift No. FTBMUS44

**CONFIDENTIAL UNDER THE PROTECTIVE ORDER        AT000861**

**EXHIBIT C**

| U.S. Patent Number | Title of Patent |
|---|---|
| 8,224,700 | "System and method for managing restaurant customer data elements" |
| 8,799,083 | "System and method for managing restaurant customer data elements" |
| 9,911,164 | "System and method for managing restaurant customer data elements" |
| 10,783,596 | "System and method for managing restaurant customer data elements" |

*(Rest of page intentionally left blank)*

**CONFIDENTIAL UNDER THE PROTECTIVE ORDER**          **AT000862**