# EXHIBIT 1
## FILED UNDER SEAL

Patent Asset Management / Rothschild Broadcast

# Transcript Export

Deponent: Batra, Sugouri

September 5, 2025

1/15/2026 10:53 am



everchron

The operating system for lawyers ®

Page 1

```
 1   UNITED STATES DISTRICT COURT
     FOR THE WESTERN DISTRICT OF WASHINGTON
 2   AT SEATTLE
     ------------------------------------------x
 3   VALVE CORPORATION,

 4                   Plaintiff,

 5                        Case No.:·
                          2:23-cv-1016
 6                        (JNW)

 7      -against--

 8   LEIGH ROTHSCHILD, ROTHSCHILD BROADCAST
 9   DISTRIBUTION SYSTEMS, LLC, DISPLAY
     TECHNOLOGIES, LLC, PATENT ASSET MANAGEMENT,
     LLC, MEYLER LEGAL, PLLC, and SAMUEL
10   MEYLER,

11                   Defendants.

12   ------------------------------------X

13

14            DATE: September 5, 2025

15            TIME:  11:34 a.m. EST

16

17

18    VIDEO DEPOSITION of SUGOURI BATRA, a

19   Non-Party Witness herein, taken by the

20   Plaintiff, pursuant to Federal Rules of

21   Civil Procedure, and Subpoena, held

22   virtually via Zoom, at the above-mentioned

23   date and time, before MARINA DUBSON, a

24   Notary Public of the State of New York.

25   JOB NO. 10172200
```

Page 2

```
 1    APPEARANCES:

 2

 3    KILPATRICK TOWNSEND & STOCKTON LLP
      Attorney for Plaintiff
 4    VALVE CORPORATION
      1420 Fifth Avenue, Suite 3700
 5    Seattle, Washington 98101
      (206) 467.9600
 6    BY:   KATHLEEN R. GEYER, ESQ.
            Kgeyer@kilpatricktownsend.com
 7
            DARIO A. MACHLEIDT, ESQ
 8
            Dmachleidt@kilpatricktownsend.com
 9

10    HOUSETONIP
      Attorney for Witness
11    SUGOURI BATRA
      5353 West Alabama Street, Suite 303
12    Houston, Texas 7056
      (832) 800-4133
13    BY:   SHEA PALAVAN, ESQ.
            Shea@housetonip.com
14

15    DNL ZITO
      Attorney for Defendants
16    LEIGH ROTHSCHILD, ROTHSCHILD BROADCAST
      DISTRIBUTION SYSTEMS, LLC, DISPLAY
17    TECHNOLOGIES, LLC, PATENT ASSET MANAGEMENT,
      LLC, MEYLER LEGAL, PLLC, and SAMUEL
18    MEYLER
      1250 Connecticut Avenue Northwest,
19    Suite 700
      Washington, DC 20036
20    (202) 466.3500
      BY:   JOSEPH J. ZITO, ESQ.
21
            Jzito@dnlzito.com
22
            RENÉ A. VAZQUEZ, ESQ.
            Rvazquez@dnlzito.com
23
            ROBERT CADLE, ESQ.
24
            (Cont'd next page.)
25
```

Batra, Sugouri Deposition                                                September 5, 2025

Page 3

```
 1     APPEARANCES (cont'd)

 2

 3     ALSO PRESENT:

 4

 5     MIRANDA PERALES, videographer

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

CONFIDENTIAL                    Kilpatrick Townsend & Stockton LLP

Batra, Sugouri Deposition                                                September 5, 2025

**Page 4**

1          IT IS HEREBY STIPULATED AND AGREED,

2     by and between the attorneys for the

3     respective parties, as follows:

4

5     THAT all objections, except as to the form

6     of the questions, shall be reserved to the

7     time of the trial;

8

9     THAT the within examination may be signed

10    and sworn to before any Notary Public with

11    the same force and effect as if signed and

12    sworn to before the Court;

13

14    THAT filing of the original transcript of

15    the examination is waived.

16

17

18

19

20

21

22

23

24

25

CONFIDENTIAL                                    Kilpatrick Townsend & Stockton LLP

**Page 5**

```
 1              S. Batra

 2         THE REPORTER:  Are you ordering

 3    a copy of this transcript?

 4         MR. ZITO:  Yes, regular

 5    turnaround.

 6         MR. PALAVAN:  No, but the

 7    witness will read and sign.

 8              XXXX

 9         THE VIDEOGRAPHER:  We're now on

10    the record.

11         Today's date is September 5,

12    2025, and the time is 11:34 a.m.

13    Eastern Time.

14         This is the remote video

15    deposition of Sugouri Batra via Zoom

16    video conference being taken in the

17    matter of Valve Corporation versus

18    Leigh Rothschild, et al, on behalf of

19    plaintiff, pending in the United

20    States District Court for the Western

21    District of Washington.  Case number

22    is 2:23-cv-1016 (JNW).

23         The witness is appearing

24    remotely from New York City,

25    New York.
```

September 5, 2025

                                                        Page 6

1                    S. Batra

2              My name is Miranda Perales

3        appearing for Aptus Court Reporting

4        located at 400 West A Street, Suite

5        1680, San Diego, California 92101.

6              I am the official videographer,

7        and this is the only authorized video

8        recording of this deposition.  The

9        audio and the video recording will

10       take place at all times unless all

11       counsel agree to go off the video

12       record.

13             Will counsel please identify

14       yourselves and state who you're with

15       Kate Geyer with Kilpatrick Townsend

16       on behalf of Plaintiff Valve

17       Corporation.  And with me is my

18       colleague Dario Machleidt.

19             MR. PALAVAN:  Shea Palavan on

20       behalf of the deponent, Sugouri

21       Batra, from HoustonIP.

22             MR. ZITO:  This is Joseph Zito.

23       And with me is René Vazquez on behalf

24       of all of the defendants in the case.

25             THE VIDEOGRAPHER:  Ms. Court

Batra, Sugouri Deposition                                                September 5, 2025

                                                                          **Page 7**

1                    S. Batra

2          reporter, please swear in the

3          witness.

4              THE REPORTER:  Will Counsel

5          please stipulate that in lieu of

6          formally swearing in the witness in

7          person, the Reporter will instead ask

8          the witness to acknowledge that their

9          testimony will be true under the

10         penalties of perjury.

11             That, Counsel will not object

12         to the admissibility of the

13         transcript based on proceeding in

14         this way, meaning virtually.

15             And that, the witness has

16         verified that she is, in fact,

17         Sugouri Batra.

18             So stipulated?

19             MS. GEYER:  Yes, for plaintiff.

20             MR. PALAVAN:  Yes, for

21         deponent.

22             MR. ZITO:  Yes, so stipulated.

23             (Whereupon, the Witness was

24         sworn in by the Court Reporter at

25         this time.)

CONFIDENTIAL                                    Kilpatrick Townsend & Stockton LLP

Batra, Sugouri Deposition

September 5, 2025

Page 8

```
 1                    S. Batra

 2                     XXXX

 3    S U G O U R I   B A T R A,

 4        after having first been duly sworn by

 5        a Notary Public of the State of New

 6        York, was examined and testified as

 7        follows:

 8    EXAMINATION

 9    BY MS. GEYER:

10        Q.    Good morning.  Could you please

11    state your full name for the record?

12        A.    Sugouri Batra.

13        Q.    What is your home address?

14            MR. PALAVAN:  You can just give

15        the city and state.

16            THE WITNESS:  I live in New

17        York City, New York.  Pretty sure you

18        have my home address.

19        Q.    Can you please confirm your

20    full home address for the record?  And if

21    this is an issue of confidentiality, we can

22    mark the transcript as confidential.

23        A.    215 East ninety -- 215 East

24    91st Avenue, apartment 14B, New York,

25    New York.
```

Valve Corporation                                      Affirmative

Batra, Sugouri Deposition                                                    September 5, 2025

**Page 9**

```
 1                    S. Batra
 2         Q.   Do you have anything in front
 3    of you today besides your computer?
 4         A.   A note pad.
 5         Q.   Is there anything on that note
 6    pad?
 7         A.   No.
 8         Q.   Is there anyone in the room
 9    with you?
10         A.   No.
11         Q.   Do you have anything open on
12    your computer besides Zoom?
13         A.   No.
14         Q.   Are you a lawyer?
15         A.   Yes.
16         Q.   Where did you go to law school?
17         A.   University of Miami.
18         Q.   When did you graduate from
19    University of Miami law school?
20         A.   2016.
21         Q.   What states are you barred in?
22         A.   Florida, Texas.  I have the
23    patent bar.  And in the Supreme Court.
24         Q.   Where did you go to undergrad?
25         A.   University of Miami.
```

Valve Corporation                                              Affirmative

Batra, Sugouri Deposition                                                September 5, 2025



**Page 10**

```
 1                S. Batra
 2       Q.   What did you study in
 3   undergrad?
 4       A.   Biology and psychology.
 5       Q.   Did you get a degree in both
 6   biology and psychology?
 7       A.   Yes.
 8       Q.   When did you graduate from
 9   undergrad?
10       A.   2013.
11       Q.   When did you start working for
12   Mr. Rothschild or one of his related
13   entities?
14       A.   March of 2021.
15       Q.   When you were working for Mr.
16   Rothschild -- strike that.
17            What specific entity were you
18   employed by?
19       A.   Patent Asset Management.
20       Q.   When did you stop working for
21   Patent Asset Management?
22       A.   October of 2022.
23       Q.   Why did you stop working for
24   Patent Asset Management?
25            MR. ZITO:  Objection if that's
```

Valve Corporation    Affirmative

Valve Corporation    Affirmative

CONFIDENTIAL                                                Kilpatrick Townsend & Stockton LLP

Batra, Sugouri Deposition                                                                September 5, 2025

**Page  11**

1                    S. Batra

2          confidential or privileged

3          information.

4               THE WITNESS:  I wanted better                    **Valve Corporation**        Affirmative

5          opportunity.

6          Q.    It was your choice to leave

7    Patent Asset Management?

8          A.    Yes.

9          Q.    What was your job title at

10    Patent Asset Management?

11          A.    General counsel.

12          Q.    You were general counsel for

13    the full time you worked there?

14          A.    Yes.

15          Q.    Would it surprise you if Mr.

16    Rothschild had told us that he fired you

17    from Patent Asset Management?

18          A.    No.

19          Q.    Why would that not surprise

20    you?

21          A.    It just doesn't.

22          Q.    Were you fired from Patent

23    Asset Management?

24          A.    No.

25          Q.    What was your role as general

Batra, Sugouri Deposition                                                                September 5, 2025

Page 12

1                S. Batra

2    counsel -- strike that.

3            If I refer to Patent Asset                    **Valve Corporation**        Affirmative

4    Management as PAM, just to say less words,

5    is that okay?

6        A.    Yes, of course.

7        Q.    What was your role as general

8    counsel at PAM?

9            MR. PALAVAN:  To the extent it

10           doesn't reveal privileged

11           information.

12           THE WITNESS:  So, I basically          **Valve Corporation**        Affirmative

13           managed patent prosecution as well as

14           litigation.  And my duties also

15           included finding, hiring, firing

16           outside counsel, transactional work.

17           So, redlining various agreements,

18           settlement agreements, NDAs,

19           covenants not to sue, consulting

20           agreements, agreements with outside

21           counsel, things like that.

22       Q.    Did you perform all of these

23   tasks on behalf of Patent Asset Management

24   and subsidiaries of Patent Asset

25   Management?

Batra, Sugouri Deposition

September 5, 2025

**Page 13**

```
1                    S. Batra

2        A.    Mostly for PAM.  Sometimes for

3   the subs, subsidiaries, as well.

4        Q.    Did you have any

5   responsibilities for the financial side of

6   the business?

7        A.    Could you please clarify what

8   you mean?

9             MR. PALAVAN:  Yeah.  Objection.

10      Vague.

11       Q.    Did you have any

12  responsibilities for setting up bank

13  accounts on behalf of PAM or any of its

14  subsidiaries?

15       A.    No.

16       Q.    Did you have any

17  responsibilities that involved moving money

18  that -- between PAM or its subsidiaries?

19       A.    No.

20       Q.    Did you have any

21  responsibilities related to ensuring

22  outside counsel got paid?

23             MR. PALAVAN:  Objection.

24      Vague.

25             MR. PALAVAN:  Can you reask?
```

Valve Corporation                              Affirmative

CONFIDENTIAL

Kilpatrick Townsend & Stockton LLP

Batra, Sugouri Deposition                                        September 5, 2025

**Page 14**

```
 1                    S. Batra
 2          That's kind of broad.  Not to be
 3          obtuse, you know.  It can include
 4          just sending an e-mail or collections
 5          and stuff.  Can you be a little more
 6          specific?
 7               MS. GEYER:  No.  I am going to
 8          let my question stand, and I would
 9          appreciate if you just objected.  I
10          can ask more targeted questions based
11          on the answers.
12               MR. PALAVAN:  Okay.  Then my
13          objection remains.
14               Objection.  Vague.
15               THE WITNESS:  Do I respond?
16               MR. PALAVAN:  Yes.  You respond
17          how you want.  If you want
18          clarification --
19               THE WITNESS:  Could you ask the
20          question again, please?
21     Q.    Of course.
22               Did you have any
23     responsibilities for ensuring outside
24     counsel was paid?
25               MR. PALAVAN:  Again, objection.
```

Batra, Sugouri Deposition                                    September 5, 2025

Page 15

                           S. Batra

1

2        Vague.

3            THE WITNESS:  So, I -- it was

4        not in my power to ensure that anyone

5        got paid, but I would, as a matter of

6        courtesy, remind Mr. Rothschild that

7        whoever needed to get paid was

8        needing to get paid.

9        Q.   Were you responsible for any

10   payments made to PAM or any of its

11   subsidiaries as a result of any licensing

12   agreements?

13           MR. PALAVAN:  Objection.

14       Vague.

15           THE WITNESS:  What do you mean?

16       Responsible how?

17       Q.   Sorry.  I didn't mean to

18   interrupt you.

19           Were you responsible for --

20   well, strike that.

21           Did you have access to any of           **Valve Corporation**          Affirmative

22   the PAM or subsidiary bank accounts?

23       A.   No.

24       Q.   Did you have any authorization

25   on behalf of PAM or any subsidiaries to

CONFIDENTIAL                                   Kilpatrick Townsend & Stockton LLP

Batra, Sugouri Deposition                                           September 5, 2025

Page 16

1                S. Batra

2    make payments?                              Valve Corporation        Affirmative

3         A.   No.

4              MR. PALAVAN:   Objection.

5         Vague.

6         Q.   Did you have access to any PAM    Valve Corporation        Affirmative

7    or its subsidiaries' credit cards?

8         A.   No.

9         Q.   Could you write checks on

10   behalf of PAM or any of its subsidiaries?

11        A.   No.

12        Q.   One of your responsibilities

13   was overseeing patent litigation, correct?

14        A.   Yes.

15        Q.   Does that involve active, filed

16   litigations?  Or would that include any

17   pre-filing enforcements, such as demand

18   letters?

19        A.   It would include both.

20        Q.   Did you have any role in

21   identifying potential targets for patent

22   litigation?

23        A.   For some campaigns, yes.  For

24   others, no.

25        Q.   What do you mean when you say a

Batra, Sugouri Deposition                                              September 5, 2025

Page 17

1            S. Batra

2      "campaign"?                                    Valve Corporation        Affirmative

3          A.   By "campaign," I mean a

4      specific patent asset or like a specific

5      patent portfolio.

6          Q.   How many campaigns were you --

7      did you oversee at your time at PAM?

8          A.   I don't recall.

9          Q.   Was it more than ten?

10         A.   Probably.

11         Q.   Who decides when to start a

12     campaign?

13             MR. PALAVAN:  Objection.

14         Vague.  Speculation.

15             Answer to the ability you can,

16         again, without revealing privileged

17         information.

18             THE WITNESS:  Mr. Rothschild      Valve Corporation        Affirmative

19         would be among.  Other than that,

20         probably outside counsel.

21         Q.   Mr. Rothschild and outside

22     counsel would identify which patent or

23     patent portfolios to begin asserting; is

24     that correct?

25             MR. ZITO:  Objection.  Calls

Kilpatrick Townsend & Stockton LLP

Batra, Sugouri Deposition                                                                    September 5, 2025

Page 18

```
1              S. Batra

2         for privileged communications.

3         Assert privilege.  Sorry.

4            MS. GEYER:  Joe, just for you,

5         I wasn't trying to get privilege.  I

6         was trying to repeat her last answer

7         back.  So, just so you know, I wasn't

8         trying to get there.  So, I'll try

9         that again.

10            MR. ZITO:  No accusation there,

11         but once you get into the substance

12         of deliberations or the existence of

13         deliberations, that's privileged

14         communication.

15            MS. GEYER:  Got it.

16         Q.   What would happen after

17    Mr. Rothschild and outside counsel decide

18    to start a campaign?

19            MR. PALAVAN:  Objection.

20         Vague.

21            THE WITNESS:  The campaign

22         would start.

23         Q.   What would that entail?

24         A.   Either a letter or a lawsuit.

25         Q.   Who would decide whether to
```

| | |
|---|---|
| **Valve Corporation** | Affirmative |

| | |
|---|---|
| **Valve Corporation** | Affirmative |

Kilpatrick Townsend & Stockton LLP

Batra, Sugouri Deposition                                                    September 5, 2025

                                                              **Page 19**

1                    S. Batra

2    send a letter or a lawsuit?

     **Valve Corporation**    Affirmative

3            MR. PALAVAN:  Objection.

4        Speculation.

5            You can answer to the ability

6        you know.

     **Valve Corporation**    Affirmative

7            THE WITNESS:  Generally,

8        definitely Mr. Rothschild.  And then

9        specifically, I don't recall the

10       specifics for each campaign.

11       Q.   What would cause Mr. Rothschild

12   to choose to go forward with a demand

13   letter as opposed to filing a lawsuit?

14           MR. ZITO:  Objection.  Calls

15       for privileged communication.

16           MR. PALAVAN:  Objection.

17       Speculation.

18           MS. GEYER:  Joe, for the

19       record, was that an instruction not

20       to answer or a caution?

21           MR. ZITO:  I'm not her

22       attorney, so I cannot instruct

23       Ms. Batra, but I am objecting to the

24       question and would be suggesting she

25       not answer it because it would reveal

Kilpatrick Townsend & Stockton LLP

Batra, Sugouri Deposition                                    September 5, 2025

**Page 20**

1                    S. Batra

2        privilege, and we're not waiving

3        privilege to that question.

4            MR. PALAVAN:  I'm going to

5        instruct her to answer to the extent

6        you can without revealing privileged

7        information.

8            THE WITNESS:  I don't feel

9        comfortable answering to the extent I

10       feel like I would be compromising

11       privilege.

12       Q.   What role would you play in

13  deciding -- strike that.

14            Did you play a role in deciding

15  whether to send a demand letter or file a

16  litigation?

17       A.   I'm sorry.  Could you repeat

18  that, please?

19       Q.   Did you play a role in deciding

20  whether to send a letter versus file a

21  litigation during a campaign?

22            MR. PALAVAN:  Objection.

23       Vague.

24            Sorry.  Go ahead.

25            THE WITNESS:  I did not make

Batra, Sugouri Deposition

September 5, 2025

**Page  21**

1              S. Batra

2        decisions.  I did make suggestions at

3        times, yes.

4        Q.   Is the ultimate decision                    **Valve Corporation**              Affirmative

5   whether to file a lawsuit or send a demand

6   letter always Mr. Rothschild?

7              MR. PALAVAN:  Objection.

8        Speculation.

9              THE WITNESS:  I'm not sure --              **Valve Corporation**              Affirmative

10       I'm not uncomfortable [sic] answering

11       a question that has "always" in it,

12       but generally, yes.

13       Q.   I believe you said earlier that

14   sometimes you were responsible for

15   identifying potential targets for campaigns

16   and then sometimes it was not you.  Is my

17   memory correct?

18       A.   Yes.

19       Q.   When it wasn't you, who else

20   was responsible for identifying potential

21   targets?

22             MR. PALAVAN:  Objection.

23       Speculation.

24             THE WITNESS:  There were              **Valve Corporation**              Affirmative

25       various vendors that PAM worked with

Batra, Sugouri Deposition                                                September 5, 2025

Page 22

1                    S. Batra

2          that made the claim charts, so it          Valve Corporation          Affirmative

3          would be one of them.

4          Q.   Who were those vendors?

5          A.   There were two firms in India.

6      I don't recall the names.

7          Q.   When you were responsible for

8      identifying the potential targets, were you

9      the one drafting the claim charts for those

10     targets?

11         A.   No.

12         Q.   Were claim charts always          Valve Corporation          Affirmative

13     drafted by those third-party vendors you

14     referenced?

15             MR. PALAVAN:  Objection.

16         Speculation.

17             THE WITNESS:  Generally, from          Valve Corporation          Affirmative

18         what I remember, yes.

19         Q.   Did you perform any

20     investigation into those targets -- strike

21     that.

22             After you identified targets

23     for investigation, what would happen

24     between that step and requesting claim

25     charts from the third parties?

Batra, Sugouri Deposition                                                September 5, 2025

**Page 23**

```
 1                S. Batra
 2           MR. ZITO:  Objection to the
 3      extent it might reveal privileged
 4      communications.
 5             MR. PALAVAN:  Objection.
 6      Speculation.
 7             Answer to the best you can
 8      without revealing privileged
 9      information.
10             THE WITNESS:  I don't think I
11      can answer without compromising
12      privilege.
13      Q.    After you received claim charts
14   from the third parties, was any additional
15   investigation performed related to those
16   targets?
17             MR. PALAVAN:  Objection.
18      Speculation.
19             MR. ZITO:  Same objection.
20             THE WITNESS:  Yes.
21      Q.    What additional investigation
22   would be performed?
23      A.    I don't feel comfortable
24   answering to the extent it will compromise
25   privilege.
```

**Page 24**

```
 1                S. Batra

 2      Q.   Who would perform that

 3   investigation?

 4           MR. PALAVAN:  Objection.

 5      Speculation.

 6           THE WITNESS:  It would depend

 7      on the campaign.

 8      Q.   Who are all the people that

 9   would perform that additional

10   investigation?

11           MR. PALAVAN:  Objection.

12      Speculation.

13           THE WITNESS:  So, as I

14      mentioned, the outside vendors would

15      for sure, and then also outside

16      counsel and whatever other counsel

17      that was ultimately involved in

18      bringing the suit.

19      Q.   When you say any other

20   counsel --

21      A.   Like local.

22      Q.   Thank you.

23      A.   Sometimes.  Not always.

24      Q.   When you were general counsel

25   at PAM, were there any other in-house
```

Batra, Sugouri Deposition                                                September 5, 2025

**Page 25**

1                    S. Batra

2    attorneys?

3          A.    Yes.   There were a few at a

4    certain point.

5          Q.    Who were they?   What are their

6    names?

7          A.    One attorney, her first name

8    was Nicolle.   I don't remember her last

9    name.   There was also Daniel.   I don't

10   remember his last name.   And then I want to

11   say that's all I recall at this point in

12   terms of attorneys in-house.

13         Q.    Was it Nicolle Lafosse?

14         A.    Yes.

15         Q.    And Daniel Falcucci sound

16   familiar?

17         A.    Yes.

18         Q.    Is there anything

19   non-privileged you can tell me about any

20   analysis, research or diligence that PAM

21   did before sending a demand letter or

22   filing a lawsuit?

23               MR. ZITO:  Same caution.

24         Privilege.

25               MR. PALAVAN:  Objection.

Batra, Sugouri Deposition                                                  September 5, 2025

**Page 26**

1                    S. Batra

2          Vague.

3              THE WITNESS:  I don't want to

4          risk compromising privilege.

5          Q.   Do you know who had access to          Valve Corporation          Affirmative

6     the bank accounts for PAM and its

7     subsidiaries?

8              MR. PALAVAN:  Objection.

9          Speculation.

10             THE WITNESS:  Yes.                        Valve Corporation          Affirmative

11             Mr. Rothschild.

12         Q.   Was Mr. Rothschild the only

13    person who had access to the bank accounts

14    of PAM and its subsidiaries?

15         A.   I don't know.

16             MR. PALAVAN:  Objection.

17         Speculation.

18         Q.   Did Mr. Rothschild have

19    approval for -- strike that.

20             Did Mr. Rothschild have to

21    approve of payments made by PAM to outside

22    counsel?

23             MR. PALAVAN:  Objection.

24         Speculation and vague.

25             THE WITNESS:  I'm not sure how

Batra, Sugouri Deposition                                            September 5, 2025

Page 27

1                    S. Batra

2        to answer that.

3        Q.   Did Mr. Rothschild have to sign                    **Valve Corporation**        Affirmative

4   off on payments that were made?

5            MR. PALAVAN:  Objection.

6        Speculation.  Vague.

7            THE WITNESS:  I'm not aware of                       **Valve Corporation**        Affirmative

8        any like signing off on amounts to be

9        paid.  I do know he would often have

10       discussions on amounts that are owed

11       and to be paid, which I usually am

12       not a part of.  And there have been

13       plenty of those types of discussions.

14       I do know that.

15       Q.   Do you know whether there's any

16   authorization or approval requirements

17   before any of those payments were made?

18           MR. PALAVAN:  Objection.

19       Speculation.  Vague.

20           THE WITNESS:  If Mr. Rothschild                      **Valve Corporation**        Affirmative

21       decided to pay, he would pay.  If he

22       decided not to, he wouldn't.  I don't

23       know what his internal procedure is

24       in deciding that.

25       Q.   Did Mr. Rothschild himself

Batra, Sugouri Deposition

September 5, 2025

Page 28

1            S. Batra

2    handle all those payments?

3        A.    Correct.  At least during the

4    time I was there.

*Valve Corporation*                                    Affirmative

5        Q.    During the time you were there,

6    did Mr. Rothschild handle -- strike that.

7            I think my line of questions

8    was limited to outside counsel, and I kind

9    of dropped that from the question.

10           So, just to clear it up a

11    little bit:  Mr. Rothschild was responsible

12    for making all the payments to outside

13    counsel; is that correct?

14           MR. PALAVAN:  Objection.

15      Speculation.

16           THE WITNESS:  That's fair to

17      state -- say, yes.

*Valve Corporation*                                    Affirmative

18       Q.    Was Mr. Rothschild responsible

19    for making payments to any vendors that you

20    used?

21        A.    Yes.

22        Q.    Was Mr. Rothschild responsible

23    for making any employee payroll payments?

24        A.    Yes, through PAM, of course.

25        Q.    Were all of the payments to

CONFIDENTIAL

Batra, Sugouri Deposition                                                          September 5, 2025

                                                                        **Page 29**

```
 1                   S. Batra
 2    outside counsel, vendors, and payroll done
 3    through PAM?
 4         A.   I don't know.
 5         Q.   When you said "through PAM,"
 6    was that specific to payroll?
 7         A.   Yes.
 8         Q.   So, payroll is paid through
 9    PAM?
10         A.   Yes.  PAM would pay me, and I
11    believe the other employees as well, not
12    Mr. Rothschild individually.
13         Q.   Mr. Rothschild individually
14    wasn't paid through PAM?
15         A.   I don't know.  I am saying the
16    paycheck would not come from him.  It would
17    come from PAM.
18         Q.   Sorry.  I got it.
19         A.   I have no idea how he paid
20    himself.
21         Q.   That was my next question.  So,
22    thank you.
23              I believe you referenced there
24    were discussions with Mr. Rothschild
25    related to some of the payment issues.
```

**Page 30**

```
  1                    S. Batra

  2            Who else was in those

  3    discussions?

  4            MR. ZITO:  I am going to object

  5       and caution on privilege.  Certainly,

  6       these could involve issues of

  7       legality of payments, obligations for

  8       payments, contractual obligations,

  9       all of which would be legal

 10       conversations.

 11            MR. PALAVAN:  Objection.

 12       Speculation.

 13            You can answer to the extent

 14       you know and can do so without

 15       revealing privileged information.

 16            THE WITNESS:  Shea, are the

 17       names of the attorneys who owed

 18       money, is divulging that privilege?

 19       Could be potentially privilege?

 20            MR. PALAVAN:  I mean, I would

 21       defer to Mr. Zito and his firm,

 22       whether or not they would consider

 23       that privileged or assert the

 24       privilege.

 25            MR. ZITO:  To the extent that
```

Page 31

```
 1              S. Batra

 2    you actually do or do not know

 3    that -- I don't even know that -- you

 4    would have gotten that information

 5    from Mr. Rothschild.  And as

 6    Mr. Rothschild's and/or PAM's

 7    in-house counsel, he would have given

 8    you that information because he was

 9    seeking your legal advice on it.  So,

10    yes, even the names of people who may

11    or may not have paid, may or may not

12    have disputed, would be part of

13    privileged communication.  Yes.

14         MS. GEYER:  I am going to back

15    up a bit because I think my question

16    wasn't clear based on everything I've

17    heard from people.  So, I am going to

18    give a narrative and explain what I

19    am asking for and try to ask better

20    questions.

21         I'm asking for conversations

22    she was personally part of, that she

23    was testifying to, who else was in

24    that conversation; so, not things she

25    learned because Mr. Rothschild told
```

Batra, Sugouri Deposition                                                    September 5, 2025

**Page 32**

| | |
|---|---|
| 1 | S. Batra |
| 2 | her that he talked to someone about |
| 3 | it; things where she was actually |
| 4 | present for and who else was just |
| 5 | like on the phone with her, if it was |
| 6 | a phone call, if it was in person, |
| 7 | for example. |
| 8 | And I think that's all |
| 9 | something that's privilege log.  That |
| 10 | would be on a privilege log. |
| 11 | Joe, do you disagree with that? |
| 12 | MR. ZITO:  You're asking was |
| 13 | Dan in the room and part of the |
| 14 | conversation.  That would not be |
| 15 | objectionable. |
| 16 | MS. GEYER:  That was what I was |
| 17 | trying to ask:  For the conversations |
| 18 | where Ms. Batra was present related |
| 19 | to payment discussions, who else was |
| 20 | in the room?  Because, not hiding |
| 21 | anything, I'm trying to understand |
| 22 | was anyone else besides |
| 23 | Mr. Rothschild involved with or |
| 24 | responsible for finances.  Maybe I |
| 25 | can try asking it that way instead. |

Kilpatrick Townsend & Stockton LLP

Batra, Sugouri Deposition                                                September 5, 2025

**Page 33**

```
1              S. Batra

2         THE WITNESS:  Could you repeat

3      the question?

4         MS. GEYER:  I'll withdraw my

5      last question to the extent it's

6      still pending anymore.  I'll try a

7      different thing.

8  BY MS. GEYER:

9      Q.    Besides Mr. Rothschild, were

10  any other PAM employees involved in or

11  responsible for ensuring payments happened;

12  for example, to outside counsel, vendors,

13  or payroll?

14         MR. PALAVAN:  Objection.

15      Speculation.

16      A.    So, the paralegal at the time,

17  Christina -- I am forgetting her last

18  name -- she would know more about this.

19  She would be more closely following on who

20  is owed what, who is getting paid what, and

21  who eventually gets paid what.

22      Q.    Is that Christina Arias?

23      A.    Yes.

24      Q.    Was Ms. Arias working there the

25  entire time you were at PAM?
```

Batra, Sugouri Deposition                                         September 5, 2025

Page 34

1                    S. Batra

2        A.    I think so.

3        Q.    Do you recall working with any

4    other paralegals at your time at PAM?

5        A.    Yes.  I'm forgetting her name.

6    I think it's Aisha.  I don't know.  She was

7    there a while before me, and she left a

8    little after I had joined.  I am blanking

9    on her name, though.

10       Q.    That one, I don't have in front

11   of me either.

12       A.    She worked before -- she was

13   employed there before Christina left.

14       Q.    Do you know why Aisha left PAM?

15            MR. PALAVAN:  Objection.

16        Speculation.

17            THE WITNESS:  I don't recall.

18       Q.    Was Nicolle Lafosse working at

19   PAM the whole time you were there?

20       A.    Not the full time.  She left

21   some time before.

22       Q.    Do you know why Ms. Lafosse

23   left PAM?

24       A.    I don't recall.

25            MR. PALAVAN:  Objection.

Batra, Sugouri Deposition                                              September 5, 2025

**Page 35**

1                    S. Batra

2         Speculation.

3              THE WITNESS:  I don't recall.

4              MS. GEYER:  And Shea, I am

5         trying to ask questions, do you know

6         who, to not have you object to

7         speculation.

8              So, I am -- I don't think it's

9         appropriate to object to speculation

10        because I am asking her if she knows,

11        because she can say no.  Just wanted

12        to point that out.

13        Q.    I believe you said one of your

14   other responsibilities was with respect to

15   agreements, NDAs, covenants not to sue; is

16   that correct?

17        A.    Yes.

18        Q.    What specifically were your

19   responsibilities for those agreements?

20        A.    Redlining them, sometimes

21   having calls with outside counsel to

22   negotiate certain points.  Other times,

23   completely redoing past templates or past

24   forms, things like that.

25        Q.    Were you responsible for

Batra, Sugouri Deposition                                                    September 5, 2025

Page 36

                    S. Batra

1

2    negotiations with third parties directly?

3    Or did you work for outside counsel?

4         A.   What do you mean by third party

5    specifically?

6         Q.   When you do covenants not to                    **Valve Corporation**          Affirmative

7    sue, for example, those would be negotiated

8    between PAM or one of its subsidiaries and

9    then a third-party target; is that correct?

10        A.   Correct.

11        Q.   In those situations, would you

12   be responsible for directly working with

13   the third party, or did you work through

14   outside counsel?

15        A.   So, sometimes yes, sometimes

16   no.  Sometimes I would do it directly.

17   Other times, outside counsel would do a lot

18   of it and I would come in towards the end

19   to finalize.  So, it just really depends.

20        Q.   Before all those agreements are

21   finalized, would Mr. Rothschild have to

22   approve of the draft and the terms therein?

23        A.   Absolutely.

24        Q.   Was there ever a time where

25   Mr. Rothschild did not approve of the final

Batra, Sugouri Deposition

September 5, 2025

**Page 37**

1    S. Batra

2    drafts and the terms for any agreement?

Valve Corporation    Affirmative

3        MR. PALAVAN:  Objection.

4    Speculation.

Valve Corporation    Affirmative

5        THE WITNESS:  Not that I am

6    aware of.

7    Q.   When you said NDA -- well,

8    strike that.

9        Was Mr. Rothschild involved in

10   any of the negotiations with the

11   third-party targets?

12       MR. PALAVAN:  Objection.

13   Speculation.

14       THE WITNESS:  Sometimes.  Yes.

15   Q.   What were the reasons why he

16   would get involved in some of the specific

17   negotiations?

18       MR. PALAVAN:  Objection.

19   Speculation.

20       And answer to the best you can

21   without divulging privileged

22   information.

23       THE WITNESS:  I don't recall

24   specifics.

25   Q.   You mentioned NDAs as well; is

Batra, Sugouri Deposition                                                September 5, 2025

                                                                    **Page  38**

1                    S. Batra

2      that right?

3           A.   Yes.

4           Q.   That's nondisclosure

5      agreements?

6           A.   Correct.

7           Q.   Were those nondisclosure

8      agreements for -- well, strike that.

9                Were those nondisclosure

10     agreements for third-party targets to

11     engage in negotiations, or were those

12     nondisclosure agreements, for example, for

13     employees or ex-employees?

14          A.   Neither.

15          Q.   What were they for?

16          A.   These would arise in the

17     context of purchasing new assets or

18     selling, like if there are patent brokers

19     involved.

20          Q.   When you say purchasing and

21     selling new assets, that means patents or

22     patent applications?

23          A.   Correct.

24          Q.   Were there any other assets

25     besides patents and patent applications?

Batra, Sugouri Deposition                                                September 5, 2025

Page 39

1                    S. Batra

2              MR. PALAVAN:  Objection.

3          Speculation.

4              THE WITNESS:  Not that I

5          recall.

6          Q.    Did you have any

7    responsibilities with respect to like

8    corporate formation documents or

9    registrations with secretaries of states

10   for PAM or any of its subsidiaries?

11         A.    That was more under Daniel's

12   department.

13         Q.    Did Mr. Falcucci work at PAM

14   the entire time you were there?

15         A.    I don't think so.  I think he

16   came after I was employed.

17         Q.    Do you recall, did he replace

18   anyone when he came in?

19         A.    No.  From what I remember, his

20   role was kind of a new role at the company

21   at the time.

22         Q.    Prior to Mr. Falcucci starting

23   at PAM, was someone else responsible for

24   the corporate formation or secretary of

25   state registrations for PAM and its

Batra, Sugouri Deposition                                                                September 5, 2025

**Page 40**

```
 1                    S. Batra

 2      subsidiaries?

 3           A.   I don't recall.

 4           Q.   That was never in your job

 5      responsibilities even before Mr. Falcucci

 6      joined?

 7           A.   What specifically?

 8           Q.   Corporate formation documents,

 9      registrations with the secretary of state,

10      those kind of things related to corporate

11      formalities for PAM and its subsidiaries?

12           A.   I don't recall.  I might have

13      looked into some of this stuff, but it

14      wasn't really my focus.

15           Q.   Did you ever assist with

16      creating a new PAM subsidiary?

17                MR. PALAVAN:  Objection.

18           Vague.

19                THE WITNESS:  Probably, but I

20           don't remember any specific

21           companies.

22           Q.   When you worked for PAM, did

23      you know how many subsidiaries it actually

24      had?

25           A.   At some point, I probably did.
```

Kilpatrick Townsend & Stockton LLP

Batra, Sugouri Deposition                                                    September 5, 2025

**Page 41**

1                S. Batra

2        Q.   Order of magnitude, do you

3    recall how many it was?

4        A.   No.

5        Q.   Was it more than 20?

6        A.   I don't recall.

7        Q.   More than 10?

8        A.   Yes.

9        Q.   Do you know why PAM had so many                    Valve Corporation          Affirmative

10   subsidiaries?

11            MR. ZITO:  Objection.  Calls

12       for privileged communication.

13            THE WITNESS:  Yeah.  I prefer                       Valve Corporation          Affirmative

14       not to answer on the basis of

15       privilege, please.

16       Q.   Do you have any non-privileged

17   information regarding why PAM has so many

18   subsidiaries?

19       A.   I don't think so.

20       Q.   Outside of the subpoena in this

21   case, are you familiar with Valve

22   Corporation?

23       A.   No.

24       Q.   When you were at Patent Asset

25   Management, did you have -- strike that.

Batra, Sugouri Deposition

September 5, 2025

Page 42

```
1                S. Batra

2            When you were at Patent Asset

3    Management, did you have any responsibility

4    for any lawsuits filed against Valve in

5    2022?

6        A.   What do you mean by "any

7    responsibility," please?

8        Q.   Were you aware that certain PAM

9    entities filed patent infringement

10   litigation against Valve in September of

11   2022?

12       A.   Yes.

13       Q.   As part of your

14   responsibilities, did you oversee those

15   lawsuits?

16           MR. PALAVAN:  Objection.

17       Vague.

18           THE WITNESS:  To the extent I

19       could.  I believe I left like a month

20       afterwards.

21       Q.   At least the initial filing of

22   those lawsuits in September of 2022, you

23   would have been involved in that process;

24   is that right?

25       A.   Yes, making sure the lawsuit
```

Valve Corporation    Affirmative

Valve Corporation    Affirmative

Batra, Sugouri Deposition

September 5, 2025

Page 43

1                    S. Batra

2      gets filed.  Correct.

3          Q.   Do you remember which PAM

4      entity sued Valve in September of 2022?

5          A.   No.

6          Q.   Do you know that -- strike

7      that.

8               Do you know how many lawsuits

9      against Valve PAM subsidiaries filed in

10      September of 2022?

11          A.   I think at least two.

12          Q.   It would be two different

13      subsidiaries because those would be two

14      different patent or patent portfolios under

15      each subsidiary; is that right?

16          A.   Yes.

17          Q.   I'll represent -- I know you

18      don't remember the names.  I'll represent

19      the two entities were Display Technologies

20      and Social Positioning Input Systems, or

21      SPIS.  Does that sound familiar at all?

22          A.   Yes.

23          Q.   Do you recall what happened in

24      the Display Technologies versus Valve

25      lawsuit in September of 2022?

Valve Corporation                    Affirmative

Valve Corporation                    Affirmative

Kilpatrick Townsend & Stockton LLP

Batra, Sugouri Deposition                                                                September 5, 2025

Page 44

1                  S. Batra

2        A.    I'm sorry.  Could you repeat

3    that?

4        Q.    Do you know how the Display

5    Technologies versus Valve lawsuit in

6    September of 2022 resolved?

7        A.    I don't recall.

8        Q.    Do you recall that Valve                    Valve Corporation          Affirmative

9    informed outside counsel for Display

10   Technologies that it was already licensed

11   to the patent asserted against it?

12       A.    Yes.

13       Q.    Did Display Technologies do any

14   investigations before suing Valve in

15   September of 2022 to ensure that or to

16   check whether Valve was licensed to that

17   patent?

18            MR. ZITO:  That's going to be

19       another caution.  Don't reveal any

20       privileged communications.

21            MR. PALAVAN:  Yeah.  Just to

22       the ability you can without revealing

23       privilege.

24            THE WITNESS:  Could you repeat

25       the question, please?

Batra, Sugouri Deposition                                                September 5, 2025

Page 45

1                S. Batra

2        Q.    Did Display Technologies check

3    whether Valve was already licensed to the

4    asserted patents in the September 2022

5    lawsuit before it filed the complaint?

6              MR. PALAVAN:  Objection.

7        Speculation.

8              THE WITNESS:  I don't recall

9         what Display did, but I do know that

10        I was informed of the prior

11        settlement after the lawsuit had been

12        filed.

13        Q.    Were you aware of the prior

14    settlement with Valve before the -- either

15    of the 2022 cases were filed against

16    Valve -- strike that.

17              Were you aware of the

18    settlement -- sorry.  We're going to go

19    back one more step.

20              The settlement with Valve you

21    referenced, is that the 2016 license

22    agreement that Valve entered into?

23        A.    Yes.

24        Q.    Were you aware of that license

25    agreement before the September 2022 Display

*Valve Corporation*                              Affirmative

*Valve Corporation*                              Affirmative

*Valve Corporation*                              Affirmative

Batra, Sugouri Deposition                                                    September 5, 2025

                                                                    **Page 46**

    1              S. Batra

    2    Technologies case against Valve?

    3        A.   No.

    4        Q.   Prior to filing the complaint                    **Valve Corporation**          Affirmative

    5    in the September '22 Display Technologies

    6    lawsuit, did anyone at PAM check to see

    7    whether Valve had a license to the asserted

    8    patent in that suit?

    9            MR. PALAVAN:  Objection.

   10        Speculation.

   11            THE WITNESS:  I don't recall.                      **Valve Corporation**          Affirmative

   12        Q.   Did you personally check

   13    whether Valve was already licensed in the

   14    asserted patent in the September 2022

   15    Display Technologies case before the case

   16    was filed?

   17        A.   No.

   18        Q.   Would someone at PAM be

   19    responsible for checking whether a

   20    potential defendant was already licensed to

   21    a patent before a complaint was filed?

   22        A.   Yes.  Mr. Rothschild would.

   23        Q.   Does Mr. Rothschild need to

   24    approve of complaints before they're filed?

   25        A.   Absolutely.

Batra, Sugouri Deposition                                                                September 5, 2025

**Page 47**

1              S. Batra

2        Q.   Did Mr. Rothschild approve of          Valve Corporation          Affirmative

3    the 20- -- September 2022 Display

4    Technologies versus Valve complaint before

5    it was filed?

6        A.   Yes.

7        Q.   How did you learn about the

8    2016 settlement agreement with Valve after

9    the Display Technologies lawsuit was filed

10   in September of 2022?

11       A.   I think because Valve had

12   brought it up.

13       Q.   You learned about it from Valve

14   and not anyone at PAM?

15       A.   I think so.

16       Q.   Who at PAM was primarily

17   responsible for the 2022 lawsuits against

18   Valve?

19       A.   Responsible in what way?

20       Q.   Making the decision to file

21   them and overseeing them.

22       A.   To file them, would be

23   Mr. Rothschild.

24       Q.   Who at PAM was primarily          Valve Corporation          Affirmative

25   responsible for overseeing the actual

Batra, Sugouri Deposition                                                September 5, 2025

Page 48

1                    S. Batra

2    litigation itself, tracking their status?

3         A.   I performed that role.

4         Q.   Until you left in October 2022?

5         A.   Correct.  But I do remember

6    spending most of October doing transitional

7    work.  So, I probably stopped doing status

8    overseeing type work sometime in September.

9         Q.   Did someone replace you as

10   general counsel, and you were transitioning

11   them in October?

12        A.   From my understanding, Daniel

13   was to replace me.

14        Q.   When you left PAM, did you sign

15   an NDA or a confidentiality agreement?

16        A.   I don't think I signed

17   anything.

18        Q.   Have you ever been asked to

19   sign an NDA or confidentiality agreement

20   about your work at PAM?

21        A.   I don't recall.

22        Q.   Are you aware of any other

23   former employees of PAM that were subject

24   to NDAs or confidentiality agreements?

25            MR. ZITO:  To the extent that

Valve Corporation                                          Affirmative

Batra, Sugouri Deposition                                    September 5, 2025

**Page 49**

1                    S. Batra

2        that doesn't reveal a privileged

3        communication.

4            THE WITNESS:  I don't recall.

5            MS. GEYER:  If counsels, both

6        counsel, all counsel, would indulge

7        me and Ms. Batra to five minutes so I

8        can just look at my notes, I think

9        I'm close to wrapping this up.

10           MR. ZITO:  No objection.

11           MR. PALAVAN:  No objection.

12           MS. GEYER:  Off the record.

13           THE VIDEOGRAPHER:  We're off

14       the record at 12:34 p.m.

15           (Whereupon, a short break was

16       taken at this time.)

17           THE VIDEOGRAPHER:  This is

18       beginning of media number two.  We're

19       back on the record at 12:46 p.m.

20   BY MS. GEYER:

21       Q.   The Display Technologies we

22   were talking about in the September of 2022

23   lawsuits against Valve, they're a

24   subsidiary of PAM, right?

25       A.   Yes.  At least during the time

Batra, Sugouri Deposition                                                    September 5, 2025

                                                                    Page 50

1                    S. Batra

2       I was there, they were.  Yep.

3            Q.   At the time of the September                Valve Corporation          Affirmative

4       2022 lawsuit, Display Technologies was a

5       subsidiary of PAM?

6            A.   I think that's accurate.  Yep.

7            Q.   Why use subsidiaries to file

8       lawsuits and not have PAM directly file

9       those lawsuits?

10            MR. ZITO:  Same caution as to

11       privilege.

12            MR. PALAVAN:  Just answer the

13       best you can to the extent you know.

14            THE WITNESS:  Yeah.  I'm going         Valve Corporation          Affirmative

15       to be over cautious here and not

16       answer at the risk of compromising

17       privilege.

18            Q.   Do you have any non-privileged

19       information about why PAM uses subsidiaries

20       to file patent infringement lawsuits

21       instead of filing them directly?

22            A.   No, I do not.  Also, I'd like

23       to clarify about the subs line of

24       questioning.  I think they were

25       subsidiaries.  I am not like a hundred

Kilpatrick Townsend & Stockton LLP

Batra, Sugouri Deposition                                                                    September 5, 2025

Page 51

1                    S. Batra

2    percent sure what the relationships were

3    because those existed -- predated my time

4    there.  So, I'm actually not sure if

5    legally, technically speaking, if those

6    companies were set up like subsidiaries

7    because it happened well before I joined.

8         Q.    Do you know whether those

9    companies, putting aside legal definition

10   of subsidiaries, were they wholly owned by

11   PAM?

12        A.    I'm not sure.

13        Q.    Earlier, you mentioned patent

14   brokers in one of your answers.

15             Do you remember that?

16        A.    Yes.

17        Q.    What is a patent broker?

18        A.    Patent broker is a person or

19   company that is in the business of

20   brokering patent assets.

21        Q.    What does it mean to broker

22   patent assets?

23        A.    Buy or sell.

24        Q.    Are patent brokers middle men,

25   or do they actually own patent assets that

September 5, 2025

Page  52

1                    S. Batra

2     they're trying to buy or sell?

3          A.   It depends.   Sometimes they own

4     the assets, sometimes they don't.   Most of

5     the times, they don't, from my experience

6     with them at PAM.

7          Q.   When you worked at PAM, do you

8     know how much revenue was in the PAM bank

9     account at any time?

10         A.   No idea.

11         Q.   Did you ever know how much          **Valve Corporation**                    Affirmative

12    revenue was in the PAM bank account while

13    you worked there?

14         A.   No.  Financial information like

15    this were not accessible to the employees,

16    at least not to me.  Definitely not to me.

17         Q.   Did you ever know how much

18    revenue was in any of the PAM affiliated

19    companies?

20              I'm using that instead of

21    subsidiaries, just based on your last

22    answer.

23         A.   Thank you.

24              No.

25         Q.   For example, you don't know how

Kilpatrick Townsend & Stockton LLP

Batra, Sugouri Deposition                                                    September 5, 2025

Page 53

1                      S. Batra

2        much revenue was in the Display

3        Technologies' bank account when you filed

4        the September 2022 lawsuit against Valve?

5              A.    Correct.  I did not.  Yeah.

6              Q.    Do you know Constance

7        Kazanjian?

8              A.    No.  Doesn't ring a bell.

9              Q.    When was the last time you

10       talked to Mr. Leigh Rothschild?

11             A.    The last day I worked there, so

12       October 2022.

13             Q.    You haven't had any

14       conversations with Mr. Rothschild after

15       your last day of work?

16             A.    Correct.

17             Q.    Have you talked to anyone else

18       who works for or worked with -- sorry.

19       Strike that.

20                   Since you stopped working at

21       PAM, have you talked to Nicolle Lafosse?

22             A.    I think I ran into her at a

23       networking Bitcoin event after.  So,

24       probably then.  But otherwise, no.

25             Q.    Were any of the discussions you

Batra, Sugouri Deposition                                                September 5, 2025

**Page 54**

```
 1                  S. Batra
 2     had with Nicolle Lafosse when you ran into
 3     her about Valve?
 4         A.   No.
 5         Q.   Were any of those discussions
 6     about your time at PAM?
 7         A.   No.
 8         Q.   Since you stopped working for
 9     PAM, have you talked to Daniel Falcucci?
10         A.   Not that I recall.
11         Q.   Since you stopped working at
12     PAM, have you talked to Christina Arias?
13         A.   No.
14         Q.   Since you stopped working at
15     PAM, have you talked to Aisha, who we don't
16     know her last name?
17         A.   No.
18         Q.   Since you stopped working at
19     PAM, have you talked to anyone else who
20     worked at PAM while you were there?
21         A.   My attorney, Shea.  We had some
22     overlap at PAM.
23         Q.   Anyone else besides Shea?
24         A.   There's a gentleman.  He was
25     part of the vendor -- overseas vendor
```

Page 55

```
 1              S. Batra
 2    company.  I forget the name of the company,
 3    but the gentleman's name is Saqish.  So, I
 4    have spoken with him.  I have also seen him
 5    at a conference.
 6              And then I do want to clarify,
 7    Shea was outside counsel at PAM during some
 8    of the time that I was in-house counsel.
 9        Q.   Prior to your deposition and
10    specifically related to this case, did you
11    ever speak to anyone at Merchant & Gould?
12        A.   No.
13        Q.   Specific to this case prior to
14    your deposition, did you speak with anyone
15    at DNL Zito?
16        A.   No.  First time I'm hearing
17    about them.
18        Q.   Did you ever recommend anyone
19    you know to apply for a job at Patent Asset
20    Management?
21        A.   I would not, no.
22        Q.   Why wouldn't you?
23        A.   For many reasons.
24        Q.   What reasons are those?
25              MR. ZITO:  Just the same
```

Valve Corporation                                              Affirmative

Batra, Sugouri Deposition                                                                 September 5, 2025

Page 56

```
1                    S. Batra

2         caution, if it would reveal any

3         privileged communications.

4              THE WITNESS:  I know I can do

5         this without compromising privilege.

6         Just give me a second while I think

7         of the appropriate words.

8         Q.    Take the time you need.  I know

9    privilege is a hard line to walk, so

10   whatever you need to do.

11        A.    May I please discuss with my

12   attorney real quick?

13             MS. GEYER:  Of course.  Can we

14        go off the record?

15             THE VIDEOGRAPHER:  Going off

16        the record at 12:57 p.m.

17             (Whereupon, a short break was

18        taken at this time.)

19             THE VIDEOGRAPHER:  This is the

20        beginning of media number three.

21        We're back on the record at 1:01 p.m.

22             THE WITNESS:  So, the question        Valve Corporation        Affirmative

23        I am answering is why I would not

24        recommend PAM for others, for people

25        that I know, to work there.  And my
```

Kilpatrick Townsend & Stockton LLP

Batra, Sugouri Deposition                                                September 5, 2025

Page 57

1                    S. Batra

2          answer is I would not recommend

3          people that I know to work at PAM

4          because I -- the way that he operated

5          is not the way that I -- does not

6          align with the way that I want to

7          practice law.  And so, I would highly

8          encourage others to find other work

9          that is better for them in all the

10         ways.

11     BY MS. GEYER:

12         Q.    I'm mindful of privilege when I

13     am asking this, and I know it's probably

14     putting you in a tough position.

15             At a high level, what about how

16     Mr. Rothschild worked did not align with

17     how you want to practice the law?

18             MR. ZITO:  I'm going to object

19         again.  That calls for not only

20         privilege and privileged

21         communication, but also her opinion

22         which would be a legal opinion which

23         would be work product.  I don't think

24         she can answer that question.

25             MS. GEYER:  I disagree with

**Valve Corporation** — Affirmative

**Valve Corporation** — Affirmative

Kilpatrick Townsend & Stockton LLP

Batra, Sugouri Deposition                                    September 5, 2025

Page 58

```
 1                S. Batra

 2        that.  What my question was getting

 3        towards and what it sounded like her

 4        answer was were actions, not

 5        conversations.  So, to the extent

 6        they're not conversations, I don't

 7        think it's privileged.  This is not a

 8        legal opinion.  This is a personal

 9        opinion.

10            MR. ZITO:  First of all, the

11        privilege doesn't just go to

12        conversations.  If an attorney

13        witnesses his client do something,

14        then that attorney cannot say what

15        that client did -- the client did in

16        their presence, whether they did it

17        verbally, with hand signals, with a

18        sign, or physically did something.

19            Privilege doesn't only apply to

20        conversations.  Also, privilege

21        extends to mental impressions of the

22        attorney.  Privilege extends to the

23        work product of the attorney.  So,

24        it's not just a conversation.  That's

25        not the only thing that's privileged.
```

Batra, Sugouri Deposition

September 5, 2025

**Page 59**

```
 1              S. Batra
 2      And even if it's a personal
 3      observation and a personal opinion --
 4      let's say he always kept the heat up
 5      at 87 degrees in the office, and
 6      people sweated like crazy, and I
 7      think that's bad business practice --
 8      that's her opinion.  But because
 9      she's a lawyer, that would then
10      become her mental legal impression of
11      the situation that's directed by her
12      client.
13          MS. GEYER:  Absolutely not,
14      Joe.  I'm sorry.  But not that one,
15      Joe.
16          MR. ZITO:  Absolutely.
17      Absolutely.
18          MS. GEYER:  I'm not anyone's
19      lawyer.  I am not going to instruct
20      anyone to do anything.  I think we
21      can have a fight over whether or not
22      the answer is privileged, and if you
23      want to move to strike it as
24      privileged later, that's on you.
25          I think the way you just
```

Kilpatrick Townsend & Stockton LLP

Batra, Sugouri Deposition                                September 5, 2025

Page  60

```
 1              S. Batra

 2   described the fact that someone's

 3   opinions about the temperature in a

 4   building, because I'm a lawyer and I

 5   have an opinion about it, that that

 6   inherently makes it privileged, I

 7   think is just so far contrary to the

 8   law that I am actually concerned now

 9   about all the instructions you've

10   been giving in all the depositions in

11   our case about privilege, because

12   that's wild to me.

13       I think this is not a fight for

14   us to have.  I think your instruction

15   has been heard.  Ms. Batra can decide

16   where she thinks the line is in

17   consultation with her lawyer if she

18   wants.  If we need to have a fight

19   later about the answer and the

20   privileged nature of it, we can.

21       MR. ZITO:  I agree, but if her

22   opinion is that high temperature is

23   unhealthy for people and that would

24   be violation of the state law or

25   state employment law, yes, that is
```

Batra, Sugouri Deposition                                                                 September 5, 2025

Page 61

```
1              S. Batra

2    absolutely legal opinion.

3         If she said I personally like

4    to wear wool sweaters and coats to

5    work so it makes me uncomfortable,

6    that wouldn't be legal opinion.  But

7    again, I don't know.  But it doesn't

8    just go to a conversation.  I'm

9    objecting to it.

10        MS. GEYER:  Your second

11   hypothetical was slightly better than

12   your first one, to be clear.  I think

13   we have our dispute.  It's on the

14   record.

15        Madam Court Reporter, could you

16   please read back what my original

17   question was?

18        (Whereupon, the requested

19   portion of the transcript was read

20   back by the reporter.)

21        THE WITNESS:  Okay.  Here's

22   what I think I would be comfortable

23   saying.  So, basically it's the whole

24   like new school versus old school way

25   of patent litigation, that based on
```

Valve Corporation                                    Affirmative

Batra, Sugouri Deposition

September 5, 2025

Page 62

1                    S. Batra

2         what I started learning at like --

3         what's happening in the patent field

4         and from conferences I was attending

5         and my other experiences, all of this

6         did not align with how PAM was

7         operating.

8              Essentially, I evolved, but

9         they -- you know, PAM did not, and it

10        was time for me to move on.  When I

11        first started, it was an incredible

12        experience.  I had just passed the

13        patent bar, and here I was, general

14        counsel of a patent monetization

15        company.  And in many ways in the

16        beginning, it was kind of like a

17        dream job.  I was doing prosecution,

18        you know, overseeing litigation.  I

19        was coordinating with other outside

20        counsel, many of which -- they were

21        all much, much older than me.  It was

22        a pretty cool gig until I learned,

23        until I plateaued, and until it

24        wasn't.

25             So, I'm very grateful for

Valve Corporation                                    Affirmative

Batra, Sugouri Deposition                                                    September 5, 2025

Page  63

1                S. Batra

2         having had the opportunities to learn

3         what to do, what not to do, how to

4         do, how to do things even better,

5         thanks to all other wonderful patent

6         colleagues that I met along the way.

7         But yes, I would not recommend PAM to

8         anyone that I know after having

9         worked there.

10         Q.   When you say you evolved your

11    practice based on conferences and your

12    experiences, what is that evolution?

13         A.   So, overall patent litigation

14    has gotten way more sophisticated, way

15    more -- just a lot more needs to go on, you

16    know, than I guess what you could have done

17    before.  Even in terms of the complaints

18    and, you know, what you're positively

19    pleading, things like that.  Again, now I'm

20    getting into specifics and I don't want to.

21              But overall, the field was

22    moving in a different way.  I feel like

23    that's where I wanted to go and that's

24    where I went.

25              MR. ZITO:  I'm going to move to

Valve Corporation                                              Affirmative

Batra, Sugouri Deposition                                                September 5, 2025

Page  64

1              S. Batra

2        strike that answer as her opinion on

3        patent law at PAM and its

4        subsidiaries and how it was

5        practiced, the decisions that were

6        made, the way it was practiced,

7        things that were done.  I think

8        that's clearly privileged

9        information.  So, I'm going to move

10       to strike that answer.

11           MS. GEYER:  We oppose.  I think

12       your motion is mischaracterizing her

13       answer completely.

14           MR. PALAVAN:  I agree with

15       that.  I don't think there's any

16       privilege in there.  It's all her

17       experience of what she learned about

18       the field.

19           So, if somebody in a conference

20       talked about change that needs to be

21       done, I think that's beyond anything

22       privileged.

23       Q.   Would you recommend working        Valve Corporation          Affirmative

24   with Leigh Rothschild personally?

25       A.   No.

Kilpatrick Townsend & Stockton LLP

Batra, Sugouri Deposition

September 5, 2025

**Page 65**

1          S. Batra

2          Q.    Why not?

3          A.    Same answer.  I would not

4    recommend anyone doing any personal

5    dealings with Mr. Rothschild.

6          Q.    Are there any other reasons why

7    you would never recommend anyone doing any

8    dealings with Mr. Rothschild besides what

9    you've already talked about?

10              THE WITNESS:  May I consult

11         with my attorney real quick?

12              MS. GEYER:  Absolutely.

13              THE WITNESS:  Thank you.

14              MS. GEYER:  Can we please go

15         off the record?

16              THE VIDEOGRAPHER:  Going off

17         the record at 1:11 p.m.

18              (Whereupon, a short break was

19         taken at this time.)

20              THE VIDEOGRAPHER:  This is

21         beginning of Media Number 4.  We're

22         back on the record at 1:15 p.m.

23              MS. GEYER:  Would it help if I

24         had the court reporter read back the

25         pending question?

Valve Corporation                                    Affirmative

Kilpatrick Townsend & Stockton LLP

Batra, Sugouri Deposition                                    September 5, 2025

Page 66

```
1              S. Batra

2         THE WITNESS:  Sure.

3         MS. GEYER:  Madam Court

4    Reporter, could you please read back

5    the last question?

6         (Whereupon, the requested

7    portion of the transcript was read

8    back by the reporter.)

9              THE WITNESS:  No.  I wish I

10   could, but I can't.

11        Q.   When you say you can't or you

12   wish you could, is that because the reasons

13   are privileged?

14        A.   Correct.

15        Q.   Did PAM have a human resource

16   department?

17        A.   Not that I recall.

18        Q.   Are the things that you're

19   concerned about that make you not want to

20   recommend anyone work with Leigh Rothschild

21   things that you would have liked to take to

22   an HR Department?

23             MR. PALAVAN:  I would instruct

24   you to be careful on that.

25             THE WITNESS:  Could you
```

Valve Corporation                                          Affirmative

Batra, Sugouri Deposition                                                                September 5, 2025

Page 67

```
 1                S. Batra

 2       clarify, like what types of things?

 3       Q.   I don't know, because some of

 4  your concerns you can't tell me.  I am

 5  trying to understand at a high level -- I'm

 6  trying to understand around the edges in a

 7  way that isn't going to implicate

 8  privilege.

 9       A.   In an abundance of caution, I

10  won't answer that.

11            MR. ZITO:  I'm going to object

12            to this whole line of questions.  It

13            is completely irrelevant to this case

14            and inappropriate.

15            MS. GEYER:  We definitely

16            disagree on relevance there.  We're

17            allowed to inquire into the

18            credibility of a named defendant.

19            MR. ZITO:  That's not what

20            you're inquiring into.  We made our

21            objection.

22            MS. GEYER:  Agree to disagree.

23       Q.   When you worked for Patent

24  Asset Management, did you work remotely or

25  in an office?
```

CONFIDENTIAL                                                    Kilpatrick Townsend & Stockton LLP

September 5, 2025

Page 68

```
1                 S. Batra

2        A.    At first, we worked remotely,

3    because I believe it was the height of the

4    pandemic when I started.  And then we did

5    go -- we had some in-person meetings, a few

6    meetings.  But overall, yes, it stayed

7    remote.

8        Q.    In those in-person meetings,

9    was Mr. Rothschild there personally or in

10   person?

11       A.    Yes.

12       Q.    Would you be in the same room

13   as Mr. Rothschild again today?

14           MR. ZITO:  Again, same

15       objection.  Inappropriate question

16       and irrelevance.  And I don't need to

17       discuss my objection with you.

18       That's not appropriate, Ms. Geyer.  I

19       made my objections.

20           MS. GEYER:  Then you can leave

21       out your narrative as well.

22           MR. ZITO:  No narrative there.

23       That's my objection.

24           THE WITNESS:  I will not be

25       hanging out with him voluntarily, be
```

Batra, Sugouri Deposition                                            September 5, 2025

Page 69

1              S. Batra

2         in the same place with him.  I mean,

3         if I happen to run into him, I'll say

4         hello.  No hard feelings, but I will

5         not be calling him to see how he's

6         doing.

7         Q.   Earlier, I think you talked                   **Valve Corporation**        Affirmative

8    about old school versus new school patent

9    litigation.  Am I remembering that

10   correctly?

11        A.   Yes.

12        Q.   What is old school, or what did

13   you mean by old school patent litigation?

14        A.    Without revealing too much

15   specifics, old school basically is how

16   patent litigation was done around or

17   shortly after Alice.  And then new school

18   patent litigation is how patent litigation

19   is currently being handled for the most

20   part much after Alice and in light of all

21   of the recent case law that's come out that

22   has in some way, shape, or form cautioned

23   or otherwise created more precise contours

24   on the specific statutory limitations or

25   specific requirements of patent eligibility

Batra, Sugouri Deposition

September 5, 2025

Page 70

1                    S. Batra

2    and patent ability, things like that.  So,

Valve Corporation                                    Affirmative

3    where the patent law was, you know, a

4    decade or two ago versus where it is now,

5    it's very different.  I would even go as

6    far as to say that currently it's kind of

7    a -- it's not as pro -- it's not pro

8    patent.  It's almost like anti patent

9    atmosphere that one really needs to

10    navigate.  So, those would be the

11    differences between old school and new

12    school.

13         Q.   And you consider the work that

14    PAM does to be in the old school camp while

15    you were there?

16         A.    Generally.  But then there were

17    also campaigns that I pride us, and PAM,

18    and the attorneys that were involved in

19    those campaigns, that were handled

20    differently in the new school way.  Very

21    proud of those.  So, generally, yeah, but

22    not always.

23         Q.   Would you say that the Display

24    Technologies and SPIS cases against Valve

25    in September of 2022, would those be the

Page 71

```
1                    S. Batra

2      old school way or new school way?

3          A.   Hard to say.  I would have to

4      look at the specific complaints and the

5      case.  But, yeah, hard to say.  But then at

6      that point, I feel like I shouldn't answer

7      it, so...

8          Q.   What would you be looking for

9      in the complaint that would tell you

10     whether it fell into the old school or new

11     school bucket?

12         A.   Probably like the depth of

13     analysis, what's been positively pleaded in

14     the complaint, things like that.

15         Q.   Can you be any more specific?

16         A.   I can't.

17         Q.   So the record is clear:  You

18     can't because of privilege?

19         A.   Correct.  And also, it's kind

20     of hard to quantify as well, looking at

21     documents to equate like the depth of

22     analysis and things like that.

23             MS. GEYER:  I know I said this

24         last time when I asked for a

25         five-minute break, but I do think I'm
```

Batra, Sugouri Deposition                                          September 5, 2025

**Page  72**

```
 1              S. Batra

 2      actually really close to wrapping up

 3      this time.  So, if counsel agrees, we

 4      can go off the record for a quick

 5      break.

 6              THE VIDEOGRAPHER:  Going off

 7      the record at 1:26 p.m.

 8              (Whereupon, a short break was

 9      taken at this time.)

10              THE VIDEOGRAPHER:  This is

11      beginning of media number five.

12              We're back on the record at 1:36 p.m.

13   BY MS. GEYER:

14      Q.   I know I've asked you a number

15   of questions.  And we had some privilege

16   stuff, so I kind of want to close

17   everything out.

18              What, if anything else, can you

19   tell me about why you would not recommend

20   anyone working with Mr. Rothschild that is

21   not privileged?

22      A.   Nothing.

23      Q.   At the beginning of the

24   deposition, I asked you if you would have

25   been surprised to learn that Mr. Rothschild
```

CONFIDENTIAL                                          Kilpatrick Townsend & Stockton LLP

Batra, Sugouri Deposition                                                        September 5, 2025

                                                                    **Page 73**

    1                    S. Batra

    2        had said that he fired you.

    3                    Did Mr. Rothschild ever

    4        threaten to fire you or file a lawsuit

    5        against you?

    6            A.    Yes.

    7            Q.    When was that?

    8            A.    A few times.  I don't recall

    9        exactly.

   10            Q.    Were those threats to fire you,

   11        or were they threats to file a lawsuit, or

   12        both?

   13            A.    To fire me.

   14            Q.    Is there anything

   15        non-privileged you can tell me about the

   16        reasons he made those threats to fire you?

   17            A.    Monetary.  Basically, when I

   18        finally decided to leave, he had told me

   19        that he could no longer pay me what he's

   20        paying me, and if I didn't agree to a

   21        substantial pay cut, that I -- that I won't

   22        be able to work there.

   23                    And in response, I said, thank

   24        you, I will not be agreeing to that.  And I

   25        decided to leave.

Kilpatrick Townsend & Stockton LLP

Batra, Sugouri Deposition                                          September 5, 2025

Page 74

```
1                    S. Batra

2              To which he said, you're fired.

3              So, it went on something like

4    that.

5         Q.   Is there anything

6    non-privileged you can tell me about why he

7    wanted to make you take a substantial pay

8    cut?

9         A.   I'm sorry.  Could you repeat

10   that?

11        Q.    Is there anything

12   non-privileged you can tell me about why

13   Mr. Rothschild was demanding you take a

14   substantial pay cut?

15        A.    I don't know why he -- like he

16   was having monetary issues since I joined.

17   So, my job was, I guess, like always on the

18   line.

19        Q.    Do you know what those monetary

20   issues were?

21        A.    Yeah.  Just like, oh, we can't

22   afford this.

23        Q.    Not enough revenue to afford

24   your position?

25        A.    I don't know the specifics,
```

Batra, Sugouri Deposition                                        September 5, 2025

Page 75

```
 1                    S. Batra

 2    like who, what revenue.  I don't know.  But

 3    yeah, that's all I can say right now.

 4    Yeah.

 5         Q.    How substantial was the pay

 6    cut?

 7         A.    Can I consult my calculator?

 8         Q.    Absolutely.  I never heard that

 9    one before.  That was good.

10         A.    I would say about one-third of

11    a cut.

12              MS. GEYER:  I pass the witness.

13              MR. ZITO:  I'm sorry.  Did you

14         say you pass the witness?

15              MS. GEYER:  Yes.

16              MR. ZITO:  I will defer to

17         Mr. Palavan, ask my questions when

18         he's done.

19              MR. PALAVAN:  Nothing for me as

20         well.

21              MR. ZITO:  I guess I would like

22         to explore a little bit about this

23         old school/new school.  I am not sure

24         I was following.

25                    XXXX
```

Batra, Sugouri Deposition                                                    September 5, 2025

Page 76

```
 1                  S. Batra
 2      EXAMINATION
 3      BY MR. ZITO:
 4          Q.   Do you know what year Alice was
 5      decided, the Supreme Court version of
 6      Alice?
 7          A.   Yes.  In 2012, I want to say.
 8          Q.   It was 2014.
 9               I'm assuming you learned about
10      Alice in law school in a patent class?
11          A.   Correct.
12          Q.   Do you consider Alice good law,
13      bad law, or are you neutral?
14          A.   I think Alice did not age well.
15          Q.   What I take that as:  It was
16      not well-decided law as opposed to good or
17      bad?
18               MR. PALAVAN:  I'm going to
19           object to the extent -- I don't want
20           to be annoying, but if you're going
21           have her talk about, you know, her
22           opinions on case law, I don't think
23           that's really too relevant here.  If
24           you want to have more general
25           questions, that's fine.  I'm not
```

Batra, Sugouri Deposition                                                   September 5, 2025

**Page 77**

```
1              S. Batra

2    trying to be annoying, but she's not

3    a law professor or anything.

4         MR. ZITO:  I agree.  Her

5    opinions on old school, new school,

6    bad law, aren't anything relevant at

7    all to this case.  I agree 100

8    percent.  But they have been let in,

9    and I am going to need to clarify

10    them.  So, I am not trying to be

11    annoying either.

12         MS. GEYER:  Objection to

13    counsel testifying.

14         Joe, you said earlier that --

15    you'd asked me not to argue with

16    objections.  I would ask you to do

17    the same thing.

18         MR. ZITO:  Thank you.  I really

19    very much appreciate the advice from

20    you, Kate.  I think that's very

21    helpful.

22    BY MR. ZITO:

23         Q.    Now, when you say "old school,"

24    do you mean patents that were issued before

25    Alice?  And by new school, you mean patents
```

Batra, Sugouri Deposition                                                September 5, 2025

Page 78

```
 1                    S. Batra
 2    that were issued after Alice?
 3         A.   No.  That's not what I mean.  I
 4    mean the general style of -- general style
 5    of enforcement.
 6         Q.   How is that related to Alice?
 7         A.   I was giving a rough timeframe
 8    in case you wanted to consult the type of
 9    cases that were being brought around that
10    time versus now.
11         Q.   Do you think that all cases
12    before Alice were put together better, and
13    all cases after Alice are not?
14         A.   I can't agree with either of
15    those statements.
16         Q.   Okay.  So, you were just using
17    Alice as a time reference to when you
18    perceive there was a change in how patent
19    law was conducted?
20         A.   Yes.
21         Q.   Okay.  All right.  Then that
22    answers my questions as to where old
23    school, new school, and Alice came
24    together.  You were not -- I am just trying
25    to make sure I got your answer.
```

Batra, Sugouri Deposition                                                     September 5, 2025

1          S. Batra

2              You're not referring to patents

3    issued before or patents issued after

4    Alice, correct?

5        A.    Correct.

6        Q.    Are you referring to patents

7    that have 101 considerations as opposed to

8    patents that don't have 101 considerations?

9              MS. GEYER:  Object to form.

10             THE WITNESS:  What do you mean?

11       Q.    You understand Alice refers to

12   section 101, 35 USC, section 101 subject

13   matter?

14       A.    Yes.

15       Q.    Okay.  So, when you interjected

16   Alice into old school/new school, were you

17   referring to old school as patents that do

18   not have 101 issues and new school as

19   patents that do have 101 issues?

20       A.    Not specifically.  I am

21   referring to just a general style of

22   enforcement when I mean old school versus

23   new school.

24             MR. ZITO:  Thank you.  Those

25       are my clarifying questions.  Thank

Batra, Sugouri Deposition                                                                September 5, 2025

**Page 80**

```
 1              S. Batra

 2      you.  I pass the witness.

 3          MS. GEYER:  Give me 30 seconds.

 4      We don't need to go off the record

 5      but I am going to mute myself.

 6          (Whereupon, an off-the-record

 7      discussion was held.)

 8   EXAMINATION

 9   BY MS. GEYER:

10      Q.    What is the general style of

11   enforcement for old school as you've been

12   using that term?

13      A.    I'd rather not get into

14   specifics.

15      Q.    I was trying to keep it

16   general, using your phrase, general style

17   of enforcement.  At a level you're

18   comfortable explaining, can you please

19   explain what you mean by the old school

20   general style of enforcement?

21      A.    I think I'm better equipped to

22   give some insights on the newer style,

23   because I just wasn't practicing law when

24   the older was being done.  So, from the

25   newer style, the newer style of enforcement
```

Valve Corporation                                                    Affirmative

CONFIDENTIAL                                                Kilpatrick Townsend & Stockton LLP

Batra, Sugouri Deposition                                                September 5, 2025

**Page 81**

1                    S. Batra

2      would entail much greater analysis.  It

3      would entail much greater evaluation.  It

4      would entail more thorough claim charts.

5      Things like that.

6           Q.    When you say greater analysis,

7      more thorough, that's in comparison to the

8      old school style; is that right?

9           A.    Correct.  Yes.

10                    MS. GEYER:  I have no further

11          questions.

12                    MR. ZITO:  Thank you,

13          Ms. Batra.

14                    (Page break to accommodate

15          jurat.)

16     THE VIDEOGRAPHER:  Do you want to get the orders on
            record or off?

17     MR. ZITO:  Off record.

18     THE VIDEOGRAPHER: This concludes the deposition for today.
            We're now off the record at 1:49 p.m. Eastern Time.

19

20     (Whereupon, at 1:50 P.M., the Examination of this
         Witness was concluded.)

21

22

23

24

25

Valve Corporation                                        Affirmative

Batra, Sugouri Deposition                                                    September 5, 2025

Page 82

```
 1                      S. Batra

 2                   E X H I B I T S

 3

 4      PLAINTIFF EXHIBITS

 5

 6      EXHIBIT   EXHIBIT                     PAGE

 7      NUMBER    DESCRIPTION

 8      (None)

 9

10

11                     I N D E X

12

13      EXAMINATION BY                   PAGE

14      MS. GEYER                        8

15      MR. ZITO                         76

16

17        INFORMATION AND/OR DOCUMENTS REQUESTED

18      INFORMATION AND/OR DOCUMENTS       PAGE

19      (None)

20

21         QUESTIONS MARKED FOR RULINGS

22      PAGE LINE QUESTION

23      (None)

24

25
```

CONFIDENTIAL                                           Kilpatrick Townsend & Stockton LLP

**Page 83**

```
1                    S. Batra

2               C E R T I F I C A T E

3

4    STATE OF NEW YORK      )
                            :
5    COUNTY OF RICHMOND     )

6

7         I, MARINA DUBSON, a Notary Public for

8    and within the State of New York, do hereby

9    certify:

10        That the witness whose examination is

11   hereinbefore set forth was duly sworn and

12   that such examination is a true record of

13   the testimony given by that witness.

14        I further certify that I am not

15   related to any of the parties to this

16   action by blood or by marriage and that I

17   am in no way interested in the outcome of

18   this matter.

19        IN WITNESS WHEREOF, I have hereunto

20   set my hand this 5th day of September 2025.

21

22

23        ---------------------------
                MARINA DUBSON
24

25
```

```
                                                        Page  84

   1              DECLARATION UNDER PENALTY OF PERJURY

   2     Case Name: Valve Corporation
                    vs. Leigh Rothschild, et al.

   3     Date of Deposition: 09/05/2025

   4     Job No.: 10172200

   5

   6              I, SUGOURI BATRA, hereby certify

   7     under penalty of perjury under the laws of the State of

   8     _____ that the foregoing is true and correct.

   9              Executed this _____ day of

  10     _____, 2025, at _____.

  11

  12

  13                   ---------------------------------

  14                   SUGOURI BATRA

  15

  16     NOTARIZATION (If Required)

  17     State of _____

  18     County of _____

  19     Subscribed and sworn to (or affirmed) before me on

  20     this _____ day of _____, 20__,

  21     by_____,    proved to me on the

  22     basis of satisfactory evidence to be the person

  23     who appeared before me.

  24     Signature: _____ (Seal)

  25
```

Batra, Sugouri Deposition                                                          September 5, 2025

**Page 85**

    1    DEPOSITION ERRATA SHEET
         Case Name: Valve Corporation
    2           vs. Leigh Rothschild, et al.
         Name of Witness: Sugouri Batra
    3    Date of Deposition: 09/05/2025
         Job No.: 10172200
    4    Reason Codes:  1. To clarify the record.
                        2. To conform to the facts.
    5                   3. To correct transcription errors.

    6    Page _____ Line _____ Reason _____

    7    From _____ to _____

    8    Page _____ Line _____ Reason _____

    9    From _____ to _____

   10    Page _____ Line _____ Reason _____

   11    From _____ to _____

   12    Page _____ Line _____ Reason _____

   13    From _____ to _____

   14    Page _____ Line _____ Reason _____

   15    From _____ to _____

   16    Page _____ Line _____ Reason _____

   17    From _____ to _____

   18    Page _____ Line _____ Reason _____

   19    From _____ to _____

   20    Page _____ Line _____ Reason _____

   21    From _____ to _____

   22    Page _____ Line _____ Reason _____

   23    From _____ to _____

   24    Page _____ Line _____ Reason _____

   25    From _____ to _____

Batra, Sugouri Deposition                                                September 5, 2025

**Page 86**

```
1    DEPOSITION ERRATA SHEET

2    Page _____ Line _____ Reason _____

3    From _____ to _____

4    Page _____ Line _____ Reason _____

5    From _____ to _____

6    Page _____ Line _____ Reason _____

7    From _____ to _____

8    Page _____ Line _____ Reason _____

9    From _____ to _____

10   Page _____ Line _____ Reason _____

11   From _____ to _____

12   Page _____ Line _____ Reason _____

13   From _____ to _____

14   Page _____ Line _____ Reason _____

15   From _____ to _____

16   Page _____ Line _____ Reason _____

17   From _____ to _____

18   Page _____ Line _____ Reason _____

19   From _____ to _____

20   Page _____ Line _____ Reason _____

21   From _____ to _____

22   _____ Subject to the above changes, I certify that the
             transcript is true and correct
23   _____ No changes have been made. I certify that the
             transcript  is true and correct.

24

                 _____
25                        SUGOURI BATRA
```