1

2

**Honorable Jamal N. Whitehead**

3

4

5                    **UNITED STATES DISTRICT COURT**
                     **WESTERN DISTRICT OF WASHINGTON**
6                              **AT SEATTLE**

7

8    VALVE CORPORATION                    Case No. **2:23-cv-01016**

                        Plaintiff,
9         v.                             **DEFENDANTS' OPPOSITION TO VALVE**
                                         **CORPORATION'S MOTIONS *IN LIMINE***
10
     LEIGH    ROTHSCHILD,    ROTHSCHILD      NOTE ON MOTION CALENDAR:
11   BROADCAST DISTRIBUTION SYSTEMS,      **January 23, 2026**
     LLC, DISPLAY TECHNOLOGIES, LLC,
12   PATENT ASSET MANAGEMENT, LLC,
     MEYLER LEGAL, PLLC, AND SAMUEL
13   MEYLER**,**

14                      Defendants.

15

16

17

18

19

20

21

22

23

24                                        #

DNL Zito
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
Phone: (202) 466-3500

1

## **TABLE OF CONTENTS**

2

3    I.    INTRODUCTION AND SUMMARY OF REQUESTED RELIEF ............................... 5

4    II.   RELEVANT BACKGROUND. ............................................................................... 6

5    III.  LEGAL STANDARD ............................................................................................. 7

6    A.  Motions in limine are targeted evidentiary motions, not vehicles for merits rulings or
     sweeping sanctions. .............................................................................................. 7

7
     B.  Rule 37(c)(1) exclusion is not automatic; it requires analysis of
8    justification/harmlessness and proportionality. ...................................................... 7

9    C.  Privilege does not protect underlying facts; it protects confidential communications. .... 7

     IV. ARGUMENT ....................................................................................................... 7
10
     MIL NO. 1 PRECLUDES DEFENDANTS FROM INTRODUCING EVIDENCE OR
11   MAKING ARGUMENTS ON ISSUES WHERE THEY FAILED OR REFUSED TO
     PROVIDE DISCOVERY ........................................................................................... 8
12
     A.  Rothschild's responses to Interrogatories Addressed to Rothschild ........................ 9
13
     B.  Late Responses ............................................................................................. 10
14
     C.  Defendants' provided information during depositions. ...................................... 10
15
     MIL NO. 2 SHOULD BE DENIED BECAUSE IT IMPROPERLY SEEKS TO BAR
16   STATE-OF-MIND EVIDENCE CENTRAL TO VALVE'S OWN "BAD FAITH"
     THEORIES AND STATUTORY ELEMENTS. ............................................................ 10
17
     MIL NO. 3 PRECLUDE THE MEYLER DEFENDANTS FROM INTRODUCING
18   EVIDENCE OR MAKING ARGUMENTS REGARDING ANY ALLEGED DUE
     DILIGENCE ........................................................................................................... 12
19
     A.  Privilege does not bar testimony about underlying facts, including what diligence was
20   performed. ........................................................................................................... 13

21   B.  Valve's requested preclusion is also inequitable because Valve simultaneously seeks to
     blame Defendants for a purported absence of diligence. ......................................... 15
22
     MIL NO. 4: PROHIBIT ROTHCHILD DEFENDANTS FROM INTRODUCING
23   EVIDENCE OR MAKING ARGUMENT RELATED TO IRRELEVANT ISSUES
     ROTHSCHILD RAISED IN DEPOSITIONS ........................................................... 16

24

#

DNL Zito
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
Phone: (202) 466-3500

1

**MIL NO. 5: PRECLUDE ARGUMENT OR EVIDENCE RELATED TO DEFENDANTS' ABANDONED BREACH OF CONTRACT CLAIM** ............................................................... 18

**MIL NO. 6: THE PARTIES CAN DISCUSS THE '221 PATENT COUNTERCLAIM, INCLUDING THE COURT'S DISMISSAL WITH PREJUDICE** ...................................... 19

**MIL. NO. 7: LIMITING DEFENDANTS' ARGUMENTS AND EVIDENCE RELATING TO ALLEGED VALIDITY OF THE '221 PATENT** ............................................................. 21

**MIL NO. 8: PRECLUDE DEFENDANTS FROM INTRODUCING EVIDENCE OR MAKING ARGUMENTS RELATED ONLY TO LEGAL ISSUES** .................................... 23

**MIL NO. 9: PRECLUDE ARGUMENTS OR EVIDENCE RELATED TO LEGALLY INCORRECT STATEMENTS THAT A LICENSE IS EVIDENCE OF USE OF A PATENT** ........................................................................................................................... 25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

#

DNL Zito
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
Phone: (202) 466-3500

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Bunch v. Pac. Cycle, Inc.*,
No. 4:13-CV-0036-HLM,  2015 WL 11622952, at *8 (N.D.  Ga.  Apr. 27, 2015)................. 18

4

*Chevron Corp. v. Pennzoil Co.*,
974 F.2d 1156, 1162 (9th Cir. 1992) ........................................................................... 14

5

6

*GSI Technology, Inc. v. United Memories, Inc.,*,
No. 5:13-cv-01081, 2016 WL 3035699 (N.D. Cal. May 26, 2016) ........................................ 21

7

*McCoy v. Mennerich*,
584 F. Supp. 3d 635,  643 (S.D. Ill. 2022)............................................................................. 17

8

*Prof'l Real Estate Inv'rs, Inc. ("PREI") v. Columbia Pictures Indus., Inc.*,
508 U.S. 49, 50, 113 S. Ct. 1920, 1922, 123 L. Ed. 2d 611 (1993)........................................ 22

9

10

*R&R Sails, Inc. v. Ins. Co. of Pa.*,
673 F.3d 1240, 1247–48 (9th Cir. 2012) .................................................................. 6, 8

11

*Upjohn Co. v. United States*,
449 U.S. 383, 395–96 (1981).......................................................................... 8, 14

12

13

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
259 F.3d 1101, 1106–07 (9th Cir. 2001) .................................................... 6, 8, 13

14

*Young v. Whidbey Island Bd. of Realtors*,
96 Wn.2d 729, 731–32, 638 P.2d 1235, 1237 (1982)................................................ 25

15

**Statutes**

16

RCW 19.30.020(5)............................................................................................................. 12

17

RCW 19.350.020(4)(b)(ii) ............................................................................................... 12

18

**Rules**

19

Fed. R. Civ. P. 37(c)(1)....................................................................................................... 8

20

Fed. R. Evid. 401–403 ...................................................................................................... 8

21

Fed. R. Evid. 402 ............................................................................................................... 24

22

Fed. R. Evid. 403 ............................................................................................................... 24

23

24

#

DEFENDANTS' OPPOSITION TO VALVE
CORPORATION'S MOTIONS *IN LIMINE* – Page **4** of 26
Case No. 2:23-cv-01016

DNL Zito
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
Phone: (202) 466-3500

I.      **INTRODUCTION AND SUMMARY OF REQUESTED RELIEF**

Plaintiff Valve Corporation ("Valve") seeks broad trial preclusion under the rubric of motions in limine.  Valve's nine requests largely operate as improper attempts at excluding entire categories of defenses and rebuttal evidence because the evidence does not fit Valve's narrative.  Valve's motions in Limine are made without the findings required under Federal Rule of Civil Procedure 37 and Ninth Circuit precedent governing severe evidentiary preclusion.  See, e.g., *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106–07 (9th Cir. 2001); *R&R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1247–48 (9th Cir. 2012).  Motions *in limine* exist to streamline trial by resolving focused admissibility disputes; they are not a substitute for litigating merits or imposing outcome-shaping sanctions by generalization.

Valve's MIL No. 3 illustrates the overreach.  Valve asks this Court to bar the Meyler Defendants from mentioning any due diligence or research on the ground that Mr. Meyler "refused" to provide "specifics" in deposition due to privilege.  Valve's Motions in Limine, Dkt. 182 at 12.  Valve omits the critical, dispositive context: before any depositions took place, all Defendants offered to waive all privilege "as to all documents, materials, and communications relating to the enforcement of U.S. Patent Nos. 8,671,195; 8,856,221; and 9,300,723," conditioned on preserving privilege for communications with counsel defending this lawsuit.  Declaration of Eric R. Chad at Ex. 1.  Valve refused, insisting instead that any waiver would be total and unlimited—including privileged communications with Defendants' litigation counsel in this case.  *Id*. at Exs. 2 and 3.

Valve now seeks to deploy its own refusal as a litigation weapon—using privilege as a sword and a shield—by (1) attempting to preclude even non-privileged testimony that Defendants

DEFENDANTS' OPPOSITION TO VALVE
CORPORATION'S MOTIONS *IN LIMINE* – Page **5** of 26
Case No. 2:23-cv-01016

DNL Zito
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
Phone: (202) 466-3500

1    did diligence while (2) urging an instruction inviting the jury to infer liability from an asserted

2    failure to do due diligence.  See Valve's proposed instruction, Dkt. 202 at 35.

3         Furthermore, all of Valve's allegations of discovery "failures" and "tactics" are limited to

4    the Rothschild Defendants.  Dkts. 75, 83, 115, 146 and 182 at 1.  However, Valve's MILs seek

5    broad, sweeping sanctions that would improperly sanction and punish the Meyler Defendants as

6    well; an unacceptable result.

7         The Court should deny Valve's sweeping MIL requests, or at minimum narrow them to

8    tailored rulings grounded in the Federal Rules of Evidence (Rules 401–403) rather than Rule 37

9    sanctions-in-disguise against all of the Defendants.

10   **II.    RELEVANT BACKGROUND.**

11        Valve asks the Court to exclude broad categories of defense evidence/argument because

12   Valve claims Defendants "failed or refused" to provide discovery.  (Id. at 7–8.)  Valve also targets

13   Defendants' anticipated trial themes concerning good faith/bad faith and pre-suit diligence.  (Id.

14   at 9–12.)

15        As to MIL No. 3, Valve asserts that the privilege invoked by Meyler's former clients[1]

16   should bar the Meyler Defendants from offering any evidence/argument that they did diligence

17   "before filing the 2022 lawsuit against Valve and in reviewing the '221 patent claim chart before

18   sending the June 2023 Letter."  Dkt. 182 at 11–12.  But Valve's motion omits that Defendants

19   affirmatively attempted to eliminate the privilege dispute altogether, proposing a broad waiver of

20   matters relevant to this case, but excluding communications/work product of Defendants' counsel

21   defending this action.  Chad Decl., Ex. 1.  Valve rejected that proposal, taking the position that

22

23   _____

[1] Valve's argument implies that the privilege is Meyler's to waive, but it clearly is not.  Meyler cannot unilaterally
24   waive his former clients' privilege.  "It's not his choice. It's not his privilege to waive."  Declaration of Dario A.
     Machleidt in Support of Valve Corporation's Motions *In Limine* at Ex. 12 ("Meyler Tr.") at 168:15-24.

DEFENDANTS' OPPOSITION TO VALVE
CORPORATION'S MOTIONS *IN LIMINE* – Page **6** of 26
Case No. 2:23-cv-01016

DNL Zito
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
Phone: (202) 466-3500

1  any waiver must be complete and would necessarily extend to communications with Defendants'

2  litigation counsel in this case.  (Chad Decl., Ex. 2.)

3  ### III. LEGAL STANDARD

4  #### A. Motions in limine are targeted evidentiary motions, not vehicles for merits rulings or sweeping sanctions.

5

6  The Court has discretion to resolve focused admissibility issues in advance of trial.  Fed.

7  R. Evid. 401–403.  But a motion in limine should not be used to obtain "broad" exclusions that

8  depend on disputed factual premises or that function as de facto case-dispositive sanctions.  See,

9  e.g., R&R Sails, 673 F.3d at 1247–48 (reversing severe evidentiary sanction where district court

10  failed to consider required factors/alternatives).

11  #### B. Rule 37(c)(1) exclusion is not automatic; it requires analysis of justification/harmlessness and proportionality.

12  Rule 37(c)(1) authorizes exclusion when a party fails to disclose information required by

13  Rule 26(a) or (e), unless the failure was substantially justified or harmless.  *Yeti by Molly*, 259 F.3d

14  at 1106. Where the requested exclusion is severe—effectively disposing of claims or defenses—

15  the Ninth Circuit requires careful consideration of proportionality and alternatives.  *R&R Sails*,

16  673 F.3d at 1247–48.

17  #### C. Privilege does not protect underlying facts; it protects confidential communications.

18

19  It is black-letter law that the attorney-client privilege protects communications, not the

20  underlying facts.  *Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981).  A witness may be

21  required to disclose relevant facts even if those facts were learned in the course of consulting

22  counsel, so long as the witness is not compelled to reveal privileged communications.  *Id*.

23  ### IV. ARGUMENT

24

#

DNL Zito
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
Phone: (202) 466-3500

1  **MIL NO. 1 PRECLUDES DEFENDANTS FROM INTRODUCING EVIDENCE OR MAKING ARGUMENTS ON ISSUES WHERE THEY FAILED OR REFUSED TO**
2  **PROVIDE DISCOVERY**

3  MIL 1 should be denied because it is an overbroad request for discovery-sanction

4  preclusion and Defendants attempted to waive privilege in good faith but Valve refused.

5  Defendants have not refused to provide relevant information in response to any discovery

6  requests.   Plaintiff sought an extremely wide-reaching range of discovery, mostly seeking

7  unrelated and inadmissible evidence.   Defendants have provided over 300,000 pages of documents

8  in discovery for a case that centers around only 33 documents and a small set of events.

9  Defendants have at all times diligently complied with their discovery obligations and

10  struggled to keep up with the demands of Plaintiff, to the full extent of their resources.   Although

11  some material may have been untimely produced,[1] all responsive and substantially non-relevant

12  material has been produced.   Defendants have no intention of "introducing evidence" that has not

13  been produced during discovery, nor making arguments not previously raised.   None of the

14  Defendants' Exhibits and none of the proposed witness testimony is based upon any unproduced

15  material or unanswered interrogatories or deposition questions.

16  Defendants can, however, present rebuttal evidence, to the extent allowed in the FRE.

17  If Plaintiff makes arguments, Defendants cannot be precluded from addressing those

18  arguments and presenting counterarguments simply based upon a discovery dispute.

19  For example, Defendants do not intend to present arguments as to:

20  The amount of licensing revenue attributable to the '221 patent because Defendants do "not
    track licensing revenue . . . on a patent-by-patent basis." Ex. 1 at 15–16  (RBDS Resp. to
21  Interrog. 13); Ex. 2 at 5–6 (PAM Resp. to Interrog. 7).

22
_____
23  [1] It is noted that much of the material asserted as unproduced at the time of the filing of the MILs
    in December has been subsequently produced.
24

#

DNL Zito
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
Phone: (202) 466-3500

1    However, if Plaintiff argues that no licensing revenue is attributable to the '221 Patent,

2    Defendants should not be precluded from counter-asserting that licensing revenue was received

3    from licensing of the '221 patent

4    Similarly for all of Plaintiff's examples, Defendant does not intend to introduce any

5    withheld evidence but should not be precluded from responding to issues raised by Plaintiff.  If

6    Plaintiff asserts that there were or were not "'out-of-court communications' where DT has accused

7    another company besides Valve of infringing the '195 or '723 patent," Defendants should not be

8    precluded from responding to such accusation.  In fact, Defendants' response as quoted by Plaintiff

9    – i.e. "DT is not presently aware of specific instances" of such communications – leaves open

10    responses to instances of which Defendants were not aware.

11    Plaintiff's assertion that Rothschild did not provide an answer to the question of why he

12    forms companies/businesses to assert patents rather than assert those patents in his own name, is

13    not correct.  Mr. Rothschild, in his deposition provided extensive responses to this question.

## A.  Rothschild's responses to Interrogatories Addressed to Rothschild

15    Plaintiff asks the Court to preclude answers where Mr. Rothschild clearly answered from

16    his own personal knowledge.  .

17    Any prior art searching or diligence performed regarding the validity of the '221 patent
18    because he "states he currently has no recollection of any prior art to the '221 Patent." Ex.
      4 at 3-4 (Rothschild Resp. to Interrog 5).

19    and

20    Why  SPIS, QTI, and Symbology brought suit in EDTX against Valve because  Rothschild
21    stated these "entities brought suit through their own retained counsel in  exercise of their
      independent legal rights, and any decisions regarding the assertion  of patent rights were
22    made in the ordinary course of business by or on behalf of the  respective companies, not
      by Rothschild in his individual capacity." Ex. 3 at 25-26  (Rothschild Resp. to Interrog.
23    10).

23    and

#

DEFENDANTS' OPPOSITION TO VALVE
CORPORATION'S MOTIONS *IN LIMINE* – Page **9** of 26
Case No. 2:23-cv-01016

DNL Zito
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
Phone: (202) 466-3500

The content or substance of any settlement offers or discussions with Valve regarding the Texas lawsuits because Rothschild stated he "was not a party to the Texas lawsuits and is not aware of any specific settlement discussions with Valve that were conducted by or on his behalf in connection with those cases." *Id.* at 32 (Rothschild Resp. to Interrog. 24).

Parties are supposed to answer interrogatories based upon their own knowledge, not the knowledge of other parties. This MIL is improper.

### B. Late Responses

Preclusion of evidence which has been produced is not a proper sanction for late production. The Court has already imposed a proper sanction, the payment of fees, for late production. Preclusion is an extreme sanction not warranted here.

### C. Defendants' provided information during depositions.

As set forth above, Defendants do not intend to introduce any evidence that was not previously produced. Defendants should not, however, be precluded from responding to evidence introduced by Plaintiff. Including the topics that Plaintiff knows are not relevant and were only sought in discovery to harass:

Rothschild's personal life, including his family and personal employees. *Id.* at 44:15–22 (Counsel for Rothschild explaining, "he's not going to answer questions related to his personal life . . .").

The proposed order would bar even foundational context and impeachment use. Moreover, Plaintiff's MIL seeks to include limitations and sanctions against *all* Defendants – including the Meyler Defendants – for alleged discovery failures by the Rothschild Defendants. Plaintiff's MIL No. 1 should be denied.

## MIL NO. 2 SHOULD BE DENIED BECAUSE IT IMPROPERLY SEEKS TO BAR STATE-OF-MIND EVIDENCE CENTRAL TO VALVE'S OWN "BAD FAITH" THEORIES AND STATUTORY ELEMENTS.

MIL No. 2 should be denied because it seeks to improperly bar state of mind testimony central to Valves own bad faith theories and statutory elements.

\#

DNL Zito
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
Phone: (202) 466-3500

Valve seeks to exclude the Rothschild Defendants' "undisclosed theories" of good faith and alleged Valve bad faith. (Dkt. 182 at 9–10.) But the "bad faith" framing is not collateral; it is central to Valve's claims as pleaded and tried, including the "bad faith" narrative Valve has advanced throughout the case. Valve cannot simultaneously prosecute a case premised on "bad faith" conduct while insulating the jury from rebuttal evidence of good faith, reasonableness, or state of mind.

As acknowledged by Plaintiff, Defendants' assertions of good faith are set forth in the filings in this matter, including Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 27) and Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. 40)." *See, e.g.*, Ex. 9 at 4.

Defendants' Pretrial Statement does not raise any new arguments, it echoes Defendants position on good faith as consistently presented throughout this matter. Defendants are not trolls; they conduct proper and thorough pre-trial and pre-notice letter investigations and analysis. Defendants' approach to accusations, litigation and resolution has at all times been appropriate and reasonable. These arguments were also repeated throughout the depositions of individuals and 30(b)6 witnesses.

Defendants assertions that under RCW 19.350.020(4)(b)(ii), and that the "majority of the 'bad acts' alleged by Valve are specifically excluded from being considered or construed" under RCW 19.30.020(5). is not an argument of good or bad faith, it is an argument addressing Valve's inability to satisfy the statutory requirements where they have the burden. Plaintiff's inability to satisfy their burden has been a constant throughout this matter.

Plaintiff is wrong, the determination of whether the facts fit the statute is exactly the province of the jury. Defendants' allegations that the activities characterized by Valve as "bad

DEFENDANTS' OPPOSITION TO VALVE
CORPORATION'S MOTIONS *IN LIMINE* – Page **11** of **26**
Case No. 2:23-cv-01016

DNL Zito
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
Phone: (202) 466-3500

faith" or "bad acts" do not satisfy the requirements of the statute are appropriate to argue to the jury because they involve issues of fact, not statutory construction. No "new theories of bad or good faith conduct" have been proposed by Defendants.

To the extent Valve's motion is really a Rule 37(c)(1) request, the Court must analyze disclosure, justification, harmlessness, and proportionality—not assume that "good faith" becomes inadmissible because Valve labels it a "new theory." *Yeti by Molly*, 259 F.3d at 1106–07. And the remedy (if any) must be tailored to the supposed nondisclosure, not used to eliminate defenses wholesale.

## MIL NO. 3 PRECLUDE THE MEYLER DEFENDANTS FROM INTRODUCING EVIDENCE OR MAKING ARGUMENTS REGARDING ANY ALLEGED DUE DILIGENCE

MIL No. 3 should be denied because Valve refused to enter into a limited privilege waiver agreement.

Valve argues the Meyler Defendants should be precluded from testifying about due diligence because Mr. Meyler "refused due to privilege to disclose specifics." Dkt. 182 at 12. That argument is misleading absent the history of Valve's refusal to accept a privilege waiver, and specifics of what was disclosed:

- Defendants offered to waive privilege as to "all documents, materials, and communications relating to the enforcement" of the three patents at issue, which necessarily would have permitted fulsome examination regarding due diligence and pre-suit investigation. Chad Decl., Ex. 1.

#

- Defendants' proposed waiver was limited only to preserve privileged communications and work product relating to this lawsuit between Defendants and their litigation counsel—an appropriate and common limitation. *Id.*

- Valve refused the offered waiver and demanded a complete waiver extending to communications with Defendants' counsel in this lawsuit. *Id.* at Ex. 2.

Having refused a reasonable, targeted waiver that would have mooted Valve's asserted prejudice, Valve cannot now claim that privilege should operate to strip Defendants of their ability to rebut Valve's "bad faith/no diligence" narrative. That is exactly the "sword and shield" misuse courts prohibit. See *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992).

### A. Privilege does not bar testimony about underlying facts, including what diligence was performed.

Even apart from Valve's refusal of the offered waiver, Valve's requested order is legally overbroad and Valve fails to advise the Court of all of the details that Mr. Meyler has disclosed. Privilege protects confidential communications—not the underlying facts. *Upjohn*, 449 U.S. at 395–96. The Meyler Defendants can testify about non-privileged facts such as what materials were reviewed (e.g., patents, public information, claim charts, publicly available technical materials), and what steps were taken without disclosing attorney-client communications. In fact, Mr. Meyler did disclose this information in both written interrogatory responses and in his deposition. For example:

> "Meyler conducted specific pre-assertion investigations, including a review of the asserted patents and claim charts prepared by third party consultants mapping Valve's products to the claims of the patents asserted, which demonstrate a thorough effort to establish a good faith infringement analysis before any communications or litigation commenced." Dkt. 183-10 at 5.

Mr. Meyler considered licensing information:

#

DNL Zito
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
Phone: (202) 466-3500

"The patents at issues or substantially similar patents owned by the same or related entities had previously resulted in successful licensing or settlements through litigation or negotiation with numerous companies, including Valve… [which] further reinforced Meyler's belief in the validity and enforceability of the patents…" *Id.* at 6.

"Prior to filing *Display Techs., LLC v. Valve Corp.*, Case No. 2:22-cv-1365 (W.D. Wash. Sept. 27, 2022), the Meyler Defendants performed investigations regarding their clients, their clients' lead litigation counsel at the time (Jay Johnson, deceased), Valve, U.S. Patent No. 9,300,723 and the claims that were asserted against Valve." *Id.*

Mr. Meyler considered and relied upon the knowledge and skill of lead litigation counsel…

"After performing his own independent analysis, lead litigation counsel for the clients of the Meyler Defendants, who was a skilled and experienced patent litigator, found that the clients' claims were sufficiently grounded in law and fact to pursue." *Id.*

Notwithstanding the fact that an error occurred, Mr. Meyler investigated the existence of systems and procedures that the Rothschild Defendants had in place:

"The Meyler Defendants were aware that their clients had systems and procedures in place that were intended to prevent mistakenly asserting an infringement claim against a party that already had a license to a patent, even though an error ultimately occurred in this particular case with Valve." *Id.* at 7.

Mr. Meyler's due diligence included obtaining and reviewing claim charts….

"The Meyler Defendants required claim charts mapping patent claims to infringing products as a prerequisite to sending any correspondence to a party that their clients alleged were infringing on a patent in order to validate the legitimacy of the claim." *Id.*

"Defendants performed investigations regarding their clients, their clients' lead litigation counsel at the time (Jay Johnson, deceased), Valve, and the claims that were asserted against Valve. Defendant Samuel Meyler drafted and signed the letter, received and attached the claim charts to the letter, and emailed the letter to Valve's attorney." Id at 2.

"Defendants state that Defendants Samuel Meyler and Meyler Legal PLLC conducted investigations regarding the relevant patents; the Patent Troll Prevention Act, Chapter 19.350 RCW; and new lead litigation counsel, Garteiser Honea. Mr.

#

Meyler's and Meyler Legal PLLC's investigations regarding the relevant patents; the Patent Troll Prevention Act, Chapter 19.350 RCW; and new lead litigation counsel, Garteiser Honea, took place prior to sending the May 26, 2023 letter to Mr. Machleidt." *Id*. at 3.

At his deposition, Mr. Meyler testified…

"Q      What is your general practice when doing due diligence before filing?
A       I will conduct some research regarding --  . . . . .I may look into that information regarding the attorney.
        That's generally where I start with that type of general research and . . . . . . I may do some general research into the types of claims that are being asserted or being defended against.  The more significant research probably comes a little bit later, but usually I'll do a little bit of upfront research as well to kind of get an idea of what I'm dealing with, you know, unless it's something that I'm already pretty familiar with.
        Somehow I missed that I would have to run a conflict check.  That would have been the very first thing.  And so before I did anything, I would have been doing that.  I think that that's a fair summary of my general practices." *Id*. at Ex. 2. (Meyler Tr. at 77:8-79:1)

Valve's motion improperly seeks to transform privilege into a gag order on non-privileged facts that have already been disclosed to Valve both in written discovery responses and at Mr. Meyler's deposition.

### B.  Valve's requested preclusion is also inequitable because Valve simultaneously seeks to blame Defendants for a purported absence of diligence.

Valve's MIL No. 3 strategy is paired with Valve's effort to present the jury with a liability narrative grounded in an alleged failure to do diligence and to propose instructions that would have the jury hold Defendants liable on that basis. See Dkt. 202 at 35. Valve cannot fairly insist on a jury instruction premised on "no diligence" while asking the Court to preclude testimony that diligence occurred—particularly after Valve rejected Defendants' proposed waiver that would have allowed Valve to probe the diligence fully. Chad Decl., Exs. 1–2.

#

DNL Zito
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
Phone: (202) 466-3500

1    At minimum, if the Court has concerns about privilege boundaries, the proper solution is a

2    limiting order (e.g., no disclosure of privileged communications) rather than blanket preclusion of

3    the subject matter.

4    **MIL NO. 4: PROHIBIT ROTHCHILD DEFENDANTS FROM INTRODUCING
     EVIDENCE OR MAKING ARGUMENT RELATED TO IRRELEVANT ISSUES**

5    **ROTHSCHILD RAISED IN DEPOSITIONS**

6    MIL No. 4 should be denied or narrowed it is vague and would improperly restrict relevant

7    content.

8    Once again, Defendants have no intention of introducing irrelevant and/or unduly

9    prejudicial testimony and expect the same standard to be applied to the irrelevant and unduly

10   prejudicial testimony proposed by Valve.  However, Defendants will respond to any irrelevant

11   issues raised by Valve, including:

12       Defendants' unrelated lawsuits and arbitrations;

13       Valve's opinions regarding what they consider Defendants' improper motives behind this

14       lawsuit or any other lawsuit;

15       Defendants' revenue;

16       Prior unrelated counsel's unrelated sanctions in unrelated cases.

17   Defendants agree with Plaintiff that the fact that Defendants "are and have been involved

18   in lawsuits and arbitrations against entities/persons unrelated to the Plaintiff is irrelevant to any

19   claim and defense and that the Court should exclude mention of such unrelated Defendant

20   litigations and arbitrations" by all parties.  Defendants agree that *McCoy v. Mennerich*, 584 F.

21   Supp. 3d 635,  643 (S.D. Ill. 2022) (granting motion in limine "to prohibit McCoy from offering

22   evidence or testimony of other lawsuits involving Defendants. . . . such testimony is unfairly

23   prejudicial, [irrelevant], and constitutes inadmissible character evidence under Rule 404(b)");

24

DEFENDANTS' OPPOSITION TO VALVE
CORPORATION'S MOTIONS *IN LIMINE* – Page **16** of 26
Case No. 2:23-cv-01016

DNL Zito
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
Phone: (202) 466-3500

*Bunch v. Pac. Cycle, Inc.*, No. 4:13-CV-0036-HLM, 2015 WL 11622952, at *8 (N.D. Ga. Apr. 27, 2015), precludes the majority of Plaintiff's proposed exhibits and testimony.

In fact, Plaintiff's suit is premised on the assertion that PAM is a troll, because they have a litigation history. Plaintiff all but ignores the limited interactions between Plaintiff and Defendants. Plaintiff even acknowledges its position that the rule should only apply in one direction – a completely unfair proposition – in its footnote 2 on page 9 of Plaintiff's MILs.

> "[2] - . . . Evidence of Defendants' other lawsuits . . . and Rothschild's overall history of vexatious litigation are relevant to Valve's WPTPA claim."

Despite Plaintiff's arguments as to the relevance of Mr. Rothschild's testimony, Plaintiff named Mr. Rothschild personally as a Defendant and should not now be allowed to preclude him from any and all expression of personal opinion, especially in areas where he has substantial knowledge and experience.

Valve seeks to bar *all* Defendants – not just the Rothschild Defendants – from presenting "irrelevant issues" referenced in the Rothschild Defendants' depositions and a call with Valve's 30(b)(6) witness, including topics like an abandoned breach-of-contract claim, alleged contractual "cure" issues, and alleged "motive" for this lawsuit. Dkt. 182 at 13–14. As drafted, the motion is both vague ("irrelevant issues") and overinclusive. It invites pretrial exclusion without a concrete evidentiary proffer and without the Court being able to weigh relevance, unfair prejudice, confusion, and completeness under Rules 401–403.

Valve's proposed order would also restrict *any* of the Defendants from presenting evidence that goes directly to the applicability of the PTPA ("small and medium-sized entities and nonprofits") by precluding testimony and evidence regarding Valve's size, as well as testimony and evidence that goes directly to the bad faith/good faith factors set forth in the PTPA, e.g., litigation history.

#

DEFENDANTS' OPPOSITION TO VALVE
CORPORATION'S MOTIONS *IN LIMINE* – Page **17** of 26
Case No. 2:23-cv-01016

DNL Zito
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
Phone: (202) 466-3500

If Valve seeks to exclude particular inflammatory or clearly irrelevant questions or arguments specific to the Rothschild Defendants, Valve should do so at trial. The Court should deny the motion or reserve ruling until the evidence is offered at trial.

## MIL NO. 5: PRECLUDE ARGUMENT OR EVIDENCE RELATED TO DEFENDANTS' ABANDONED BREACH OF CONTRACT CLAIM

MIL No. 5 should be denied or clarified; exclusion cannot extend to admissible evidence concerning the parties' agreements and course of dealing.

Valve asks to preclude "arguments or evidence related to the legally abandoned breach of contract claim." Dkt. 182 at 15. Defendants do not need an abandoned contract claim to introduce admissible contract evidence for relevant purposes—context, course of dealing, state of mind, and impeachment. The Court can prevent any party from implying that an abandoned claim remains pending, but it should not bar relevant evidence merely because it touches a topic once pleaded.

Abandonment of a specific claim for relief does not make facts disappear. Defendants continue to maintain that Valve breached the GSLA by filing a suit for declaratory judgement of invalidity. This action by Valve remains at the center of the entire suit and remains relevant to many of the issues and accusations raised by Valve.

Defendants did not abandon this fact, nor abandon the consequences of valve's actions, they only dropped their claim for relief. Valve asserts and intends to introduce its theory that the Texas suits were in retaliation for the PTPA claim. Defendants maintain that they were the proper response to Valve's breach and abandonment of the GLSA, not an act of retaliation. Thus, the breach by Valve remains relevant to all parties and remains admissible.

Plaintiff proposal that Valve can discuss GSLA breaches, but Defendants cannot, is improper.

#

DNL Zito
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
Phone: (202) 466-3500

None of Defendants' arguments are in conflict.  The GSLA was "void" as of the filing of Valve's complaint and thus Valve does not now have a valid and enforceable covenant not to sue.  Defendants' Answer (Dkt. 80 at paragraphs 32–34, 49, 50) is stated as to the moment BEFORE filing the suit which was a breach of the GSLA.  Defendants were responding to the Complaint's allegation that Valve had a reasonable apprehension of suit prior to the filing of the DJ claim so as to create standing.  Defendants were not stating the status of the GSLA after suit was filed.  Paragraph 32 of the Second Amended Complaint (Dkt. 38) places the allegations in context, at the time of "The most-recent demand letter."  Paragraphs 49 and 50 assert a basis for jurisdiction, which is prior to suit, i.e. before the breach.

## MIL NO. 6: THE PARTIES CAN DISCUSS THE '221 PATENT  COUNTERCLAIM, INCLUDING THE COURT'S DISMISSAL WITH  PREJUDICE

MIL No. 6 should be denied or tightly limited; the "dismissal with prejudice" of the '221 counterclaim is a legal matter likely to confuse the jury.

Valve seeks permission to "inform the jury about the dismissal with prejudice of Valve's '221 patent counterclaim," and to argue its purported "legal import."  Dkt. 182 at 16–17.  This request invites confusion and legal mini-trials.  A dismissal with prejudice may carry claim-preclusion consequences as a matter of law, but it is not a jury fact issue, and it is easily mischaracterized as a merits adjudication on infringement/validity.

Valve's request is an incorrect statement of law.  The dismissal of a claim with prejudice means that a party cannot reassert that claim.  The dismissal of a claim does not make any underlying fact true or false.  Although Valve technically prevailed on the issue of infringement, there was no determination by the Court or admission by either party that Valve did or did not infringe the '221 Patent.  To allow such statement into the record would be judicial error.

#

DNL Zito
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
Phone: (202) 466-3500

1    The dismissal means only that Defendants cannot sue for infringement.  The dismissal does

2    not have any implication on any actual determination of infringement.

3        Plaintiff's assertion that the bringing and dismissal of the patent claims is somehow

4    relevant to "this case's focus on Defendants' bad-faith assertions of infringement" is incorrect.

5    This case's focus is on the actions of Defendants before suit, and, as specifically alleged by

6    Plaintiff, Defendants' June 2023 Letter to Valve.  In addition, although a dismissal with prejudice

7    technically means that the other party prevailed, it is not a determination on the merits and certainly

8    not a determination as to bad faith, and any such inference or specific assertion by Plaintiff allowed

     in would be highly prejudicial.

9        In addition, allowing negative inferences from voluntarily dismissed claims would severely

10   prejudice a party and discourage resolution of issues by parties to simplify a litigation and would

11   stifle attempts at settlement and resolution.

12       Plaintiff's reliance on *GSI Technology, Inc. v. United Memories, Inc.,*, No. 5:13-cv-01081,

13   2016 WL 3035699 (N.D. Cal. May 26, 2016), is misplaced.  ISSI was sued by GSI and

14   counterclaimed that the suit by GSI was brought in bad faith.  There is no such count or accusation

     here.  Valve did not bring any cause of action asserting that the counterclaim was brought in bad

15   faith and despite every opportunity to amend its pleadings, never added such a count.

16       Valve only asserted that the June 2023 Letter was in violation of the PTPA.  The pre-suit

17   letter is the issue before the jury.  Allowing testimony that the voluntary dismissal of the

18   counterclaim was an act of bad faith would confuse and severely prejudice the jury, likely leading

19   them to think that the issue of bad faith in the pre-suit letters has already been decided.

20       There is no bad faith as to counterclaims issue that will go to the jury and thus no reason

     or basis to allow in evidence that which is prejudicial and not relevant to any count in this action.

21       If the Court permits any reference, it should be strictly neutral and accompanied by a

22   limiting instruction that the dismissal does not constitute a jury finding on infringement, validity,

23

24                                                    #

DNL Zito
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
Phone: (202) 466-3500

or "who was right," and that the jury must decide the remaining claims on the evidence presented at trial.

Further, the fact that Valve may have ultimately had a defense with respect to the '221 patent claim does not negate the Meyler Defendants' reasonable belief that the patent-owners had legitimate claims against Valve and intended to pursue them, going to the objective/subjective baselessness test. *Prof'l Real Estate Inv'rs, Inc. ("PREI") v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 50, 113 S. Ct. 1920, 1922, 123 L. Ed. 2d 611 (1993).

## MIL. NO. 7: LIMITING DEFENDANTS' ARGUMENTS AND EVIDENCE RELATING TO ALLEGED VALIDITY OF THE '221 PATENT

Plaintiffs seek to preclude the inventor of the '221 Patent, Mr. Rothschild, who is also personally named as a defendant, from discussing the '221 Patent and its validity. The presumption of validity is based upon prior art and the examination of the patent during prosecution, thus Plaintiff has stated that they will be discussing the distinctions of the '221 Patent over the prior art. Defendants will not introduce any new evidence, the patent, its prosecution history and the prior art are already in evidence. Mr. Rothschild will discuss the prosecution and the prior art and what makes his invention an invention, all issues well within his personal knowledge and well within the scope of his deposition. Plaintiff took Mr. Rothschild's deposition without any restrictions on these topics and had the opportunity to explore this to the fullest extent.

Contrary to the assertions of Valve in its MILs, Valve never served a contention interrogatory seeking Defendants' response to its invalidity contentions, and none of the exhibits attached to the MILs presents such an interrogatory. Plaintiff cites to "*See, e.g.*, Ex. 9 (RBDS Interrog. Resp.) at 4." However, Interrogatory 2 did not ask about validity. Interrogatory 2 was directed at "Your contention that assertions of patent infringement against Valve were in good faith...." In addition, only Defendant RBDS was asked about these contentions, Defendant

#

DEFENDANTS' OPPOSITION TO VALVE
CORPORATION'S MOTIONS *IN LIMINE* – Page **21** of 26
Case No. 2:23-cv-01016

DNL Zito
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
Phone: (202) 466-3500

Rothschild was never asked about validity in an interrogatory and Plaintiff has made no such

showing.  Even the Court's Order supports that only Defendant RBDS was asked contentions,

finding that "the factual underpinnings of RBDS's contention" must be disclosed during fact

discovery. Dkt. 175 at 5.

Plaintiff purports to support its assertions with the following citations, each of which is

inaccurate:

> Rothschild cannot be permitted to present testimony regarding validity because: (1) Rothschild has no knowledge of any prior art (Ex. 4 at 3–4 (Rothschild Resp. to Interrog. 5); (2) Rothschild has no opinion on validity beyond the patent is presumed valid (Ex. 5 (Rothschild Tr.) at 309:24–310:15)

(1) Mr. Rothschild, in his April 2025 answers to interrogatories did not state that "he has

no knowledge of any prior art" as asserted by Valve.  Mr. Rothschild stated that "Defendant states

he currently has no recollection of any prior art to the '221 Patent." (see Ex 4)

(2) Mr. Rothschild, at his deposition did not state that "Rothschild has no opinion on

validity beyond the patent is presumed valid." In fact Mr. Rothschild was never asked about his

opinion on the validity for the '221 Patent nor any other patent. Mr. Rothschild was asked about

some other attys letter regarding the '221 Patent.  The actual quote cited by Plaintiff is:

> Q. The fact that the Exhibit 23 letter is dated 2021 and, as of August 2025, RBDS continues to assert the '221 patent, what does that indicate to you about RBDS's views of the potential invalidity of claim 7 of the '221 patent?
>
> A. I have no opinion other than the fact that if we're filing cases -- filing a particular case, we're filing it with merit and diligence beforehand. That would be my opinion.
>
> I don't take a legal -- I don't have a legal opinion on infringement on the claim 7 or any of the other claims except that, if we are proceeding with the case, it's our opinion, obviously, that there's infringement and that claim 7 is a valid claim.

Mr. Rothschild' response to that question is not a denial of knowledge of prior art or

validity, it is a denial of knowledge about a specific letter in a different litigation.

DEFENDANTS' OPPOSITION TO VALVE
CORPORATION'S MOTIONS *IN LIMINE* – Page **22** of **26**
Case No. 2:23-cv-01016

DNL Zito
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
Phone: (202) 466-3500

As stated above, Plaintiff had the opportunity to question Mr. Rothschild about validity and prior art and chose not to do so.

Valve seeks to limit *all* Defendants from presenting evidence and argument regarding the "alleged validity" of the '221 patent. Dkt. 182 at 17–18. But validity-related evidence is also relevant to Defendants' state of mind and to whether enforcement activity was undertaken in bad faith or good faith. Moreover, if Valve seeks Rule 37(c) exclusion of validity evidence, it must meet the Rule 37 standard and the Ninth Circuit proportionality requirements for severe preclusion. *Yeti by Molly*, 259 F.3d at 1106–07; *R&R Sails*, 673 F.3d at 1247–48. Blanket exclusion is not warranted via a motion *in limine*.

## MIL NO. 8: PRECLUDE DEFENDANTS FROM INTRODUCING EVIDENCE OR MAKING ARGUMENTS RELATED ONLY TO LEGAL ISSUES

Defendants and Plaintiff should both be excluded from introducing evidence and making arguments related solely to legal issues to be decided by the Court. Introducing such irrelevant issues to the jury would be prejudicial and likely to confuse the jury. Fed. R. Evid. 402, 403.

Defendants agree that neither party should argue issues of law to be decided by the Court to the jury.

Valve's over reaction is not a legal issue but a fact to be considered by the jury, along with all of the other facts that both sides will present. Plaintiff cannot preclude facts that it does not like, simply because Plaintiff does not like the fact. Valve's explanation that "The reality, however, is that Valve was required to bring this case in federal court because federal courts have exclusive jurisdiction over patent declaratory judgment claims." is simply the other side's view of the facts. Demonstrating that this is a fact issue for the jury, not a legal issue. Defendants are not arguing the legal requirements for jurisdiction but simply setting forth the facts of the matter and Defendants position on

\#

DEFENDANTS' OPPOSITION TO VALVE
CORPORATION'S MOTIONS *IN LIMINE* – Page **23** of 26
Case No. 2:23-cv-01016

DNL Zito
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
Phone: (202) 466-3500

1    alternative courses of action.  Just as Valve proposes that an alternative course of action

2    for Defendants would have been to not send the June 2023 letter.

3         Defendants position that the GSLA contains a cure provision is a factual issue, not

4    a legal issue.  Juries read and interpret contracts as part of their function, based upon

5    instructions from the Court.  What a contract means is a part of the fact-finding process.

6    Valve's assertion that the "language of Section 3.5 of the GSLA is not ambiguous" was

7    never raised by Valve, despite Defendants assertion of cure and it is too late for Valve to

8    ask that "the Court should 'construe the contract as a matter of law' to confirm no such

9    cure provision exists."

10        Valve seeks to exclude evidence/argument "related solely to legal issues," including (as

11   examples) a "cure" provision, Defendants' mitigation defense, and attorney's fees.  Dkt. 182 at

12   18–20.  To the extent Valve is requesting that the Court prevent parties from arguing pure law to

13   the jury, the Court already controls that through jury instructions and trial management. But the

14   motion goes further, risking exclusion of factual evidence merely because it connects to a legal

15   theory.

16        Valve's proposed order would prevent *all* Defendants from being able to present evidence

17   in support of their failure-to-mitigate affirmative defense. "Mitigation of damages," also termed

18   doctrine of avoidable consequences, "applies in damage actions authorized by RCW 19.86."

19   *Young v. Whidbey Island Bd. of Realtors*, 96 Wn.2d 729, 731–32, 638 P.2d 1235, 1237 (1982)

20   (collecting cases where "courts have said that the plaintiff in an antitrust suit has a duty to mitigate

21   damages.")  Virtually all damages that Plaintiff alleges it incurred between the time that Plaintiff's

22   in-house counsel received the June 2023 FRE 408 Letter and the filing of the present action could

23   have easily been avoided.

24

#

DNL Zito
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
Phone: (202) 466-3500

Plaintiff's proposed order would result in the dismissal of this affirmative defense. The present motion should be denied.

**MIL NO. 9: PRECLUDE ARGUMENTS OR EVIDENCE RELATED TO LEGALLY INCORRECT STATEMENTS THAT A LICENSE IS EVIDENCE OF USE OF A PATENT**

As clearly set forth in Valve's brief, Defendants are not asserting that a license is used, they are asserting that "Rothschild's technologies are in use at companies ranging from most major automotive companies, eBay, to the US Department of Commerce, and Citrix, also among many others." This is Defendants' position regardless of licenses. When a patent owner forms an opinion on infringement, it means that the infringer is using the patented technology. Every accusation of infringement by Defendants is an assertion that the accused infringer is using the technology. Valve seeks to enter evidence of accusations of infringement, such accusations are assertions of use.

Defendants are not asserting that settlement agreements are evidence of admitted infringement.

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Valve's Motions in Limine. Dkt. 182. Alternatively suggesting that the Court should narrowly tailor any relief to specific, identified evidentiary disputes and specific Defendants, and reject Valve's attempt to convert motions in limine into sweeping issue preclusion.

I certify that this memorandum contains 6,297 words, in compliance with the Local Civil Rules.

#

DNL Zito
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
Phone: (202) 466-3500

Dated: January 23, 2026.                     Respectfully submitted,


                                      By:  */s/ Joseph J. Zito*
                                           Joseph J. Zito
                                           DNL ZITO
                                           1250 Connecticut Avenue, NW, Suite 700
                                           Washington, DC 20036
                                           Tel: (202) 466-3500
                                           Email: jzito@dnlzito.com

                                           René A. Vazquez (*pro hac vice*)
                                           DNL ZITO
                                           1250 Connecticut Avenue, NW, Suite 700
                                           Washington, DC 20036

                                            */s/ Matthew J. Cunanan*
                                           Matthew J. Cunanan (#42530)
                                           DC LAW GROUP
                                           12055 15th Ave NE, Suite B
                                           Seattle, WA 98125
                                           Tel: (206) 494-0400
                                           Fax: (855) 494-0400
                                           Email: matthew@dclglawyers.com

                                           *Attorneys for Defendants Leigh Rothschild,*
                                           *Rothschild Broadcast Distribution Systems,*
                                           *LLC, Display Technologies, LLC, Patent Asset*
                                           *Management, LLC, Meyler Legal, PLLC, and*
                                           *Samuel Meyler*

### CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2026, I filed the within through the ECF system and that notice will be sent electronically to all counsel who are registered participants identified on the Mailing Information for C.A. No. 2:23-cv-01016.

                                            */s/ Joseph J. Zito*
                                           Joseph J. Zito

#

DEFENDANTS' OPPOSITION TO VALVE
CORPORATION'S MOTIONS *IN LIMINE* – Page **26** of **26**
Case No. 2:23-cv-01016

DNL Zito
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
Phone: (202) 466-3500