1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

VALVE CORPORATION,                    CASE NO. 2:23-cv-01016-JNW

8
                        Plaintiff,         ORDER DENYING DEFENDANTS'
9                                          MOTION FOR PARTIAL SUMMARY
            v.                             JUDGMENT
10
     ROTHSCHILD ET AL,
11
                        Defendants.
12

13

## 1. INTRODUCTION

This matter comes before the Court on Defendants Leigh Rothschild,

Rothschild Broadcast Distribution Systems, LLC, Display Technologies, LLC,

Patent Asset Management, LLC, Meyler Legal, PLLC, and Samuel Meyler's Motion

for Partial Summary Judgment. Dkt. No. 111. Having reviewed the motion,

Plaintiff Valve Corporation's response, Dkt. No. 121, the reply, Dkt. No. 125, and all

other supporting materials, the Court DENIES the motion.

## 2. BACKGROUND

This case concerns Valve's claims that Defendant Leigh Rothschild and his

associated corporate entities improperly threatened legal action against Valve for

ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 1

allegedly infringing certain patents—U.S. Patent No. 8,671,195 ("'195 Patent"), U.S. Patent No. 9,300,723 ("'723 Patent"), and U.S. Patent No. 8,856,221 ("'221 Patent")—which Valve had previously licensed from Rothschild under the 2016 Global Settlement and License Agreement. *See generally*, Second Amended Complaint ("SAC"), Dkt. No. 38.[1]

On July 7, 2023, Valve sued Defendants, seeking declaratory judgment that the '221 Patent is invalid (Count I) and unenforceable against Valve (Count II); judgment that Defendants breached the GSLA (Count III); and judgment that Defendants' unfair business practices and bad faith assertions of patent infringement violated the Washington Patent Troll Protection Act (PTPA), RCW 19.350 et seq.; and the Washington Consumer Protection Act (CPA), RCW 19.86 et seq. (Count IV). SAC at 11–18.

Defendants moved to dismiss the SAC, arguing that Count IV failed because Valve had not adequately alleged facts showing that Defendants' infringement claim regarding the '221 Patent was made in bad faith. Dkt. No. 40 at 18. The Court denied the motion, finding that Valve had plausibly alleged that Defendants' various demand letters were made in bad faith under the statute. *See* Dkt. No. 56 at 18–19. The Court also found that a violation of the PTPA is an "unfair or deceptive act in trade or commerce and an unfair method of competition for purposes of applying the consumer protection act, chapter 19.86 RCW." *Id.* at 17 (quoting RCW

---

[1] An in-depth discussion of the claims at issue here can be found at the Court's September 26, 2024, Order denying Defendants' motion to dismiss. *See* Dkt. No. 56 at 2–5.

ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 2

19.350.030) (citing *Microsoft Corp. v. MediaPointe, Inc.*, 626 F. Supp. 3d 1129 (C.D. Cal. 2022)). Defendants now ask the Court to revisit this determination.

## 3. DISCUSSION

### 3.1 Legal standard.

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party," and a fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a summary judgment motion, the court must view all facts in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *Hawai'i Disability Rts. Ctr. v. Kishimoto*, 122 F.4th 353, 363 (9th Cir. 2024).

### 3.2 The CPA provides a private right of action for PTPA violations.

The Parties' dispute centers on RCW 19.350.030, the PTPA's enforcement provision, which states:

> *The attorney general may* bring an action in the name of the state, or as parens patriae on behalf of persons residing in the state, to enforce this chapter. *For actions brought by the attorney general* to enforce the provisions of this section, the legislature finds that the practices covered by this section are matters vitally affecting the public interest for the purpose of applying the [CPA], chapter 19.86 RCW. *For actions brought by the attorney general* to enforce this chapter, a violation of this chapter is not reasonable in relation to the development and preservation of business and is an unfair or deceptive act in trade or commerce and an unfair method of competition for purposes of applying the [CPA], chapter 19.86 RCW.

RCW 19.350.030 (emphasis added).

Defendants contend that Valve lacks standing to assert a PTPA claim because the Washington legislature did not intend to create a private right of action under the PTPA, but rather sought to "empower the Washington State Attorney General"—and only the attorney general—to prosecute so-called patent trolls through the CPA's enforcement scheme. Dkt. No. 111 at 5–8. Valve counters that because the PTPA designates violations as unfair or deceptive acts under the CPA, the CPA's private right of action applies—regardless of the statute's references to the attorney general. Valve has a better argument.

The CPA prohibits "unfair or deceptive acts or practices" in the conduct of trade or commerce. RCW 19.86.020. It provides that "[a]ny person who is injured in his or her business or property" by a CPA violation "may bring a civil action" for injunctive relief, actual damages, attorney fees, and treble damages. RCW 19.86.090. The Washington Supreme Court has emphasized that "[p]rivate actions by private citizens are now an integral part of CPA enforcement[,]" with private plaintiffs acting "as private attorneys general in protecting the public's interest against unfair and deceptive acts and practices in trade and commerce." *Scott v. Cingular Wireless*, 161 P.3d 1000, 1006 (Wash. 2007) (citing RCW 19.86.090; *Lightfoot v. MacDonald*, 544 P.2d 88 (Wash. 1976)). An act or practice is "injurious to the public interest" if it violates a statute that incorporates the CPA or "contains a specific legislative declaration of public interest impact[.]" RCW 19.86.093.

The PTPA satisfies both criteria. First, the PTPA incorporates the CPA—the statute expressly provides that PTPA violations are "unfair or deceptive act[s] in

trade or commerce and an unfair method of competition for purposes of applying the [CPA]." RCW 19.350.030. Because the PTPA "must be read in the context of the larger statutory scheme" of consumer protection, *Wright v. Lyft, Inc.*, 406 P.3d 1149, 1151 (Wash. 2017), this incorporation brings with it the CPA's enforcement mechanisms, including its private right of action.

Second, the PTPA contains a specific legislative declaration of public interest impact. The legislature found that bad-faith patent claims "impose a significant burden on individual Washington businesses and other entities," forcing them to divert resources from productive uses like "invest[ing], develop[ing] and produc[ing] new products, expand[ing], or hir[ing] new workers." RCW 19.350.005. "[S]mall and medium-sized entities and nonprofits" are particularly vulnerable, as they often lack the resources needed to defend against "expensive and protracted litigation," and are thus given "no choice but to settle and to pay a licensing fee, even if the claim is meritless." *Id.* Accordingly, the legislature passed the PTPA "to protect Washington's economy from abusive and bad faith assertions of patent infringement." *Id.* In doing so, the legislature expressly declared that the practices prohibited by the PTPA constitute "matters vitally affecting the public interest" under the CPA. RCW 19.350.030.

Taken together, these provisions establish that a PTPA violation is a cognizable claim under the CPA. And because the CPA provides a private right of action for such violations, one exists here. *See Microsoft*, 626 F. Supp. 3d at 1136-37 ("The Court interprets the plain text of the statutes to explicitly grant a litigant the ability to bring a claim for a violation of the PTPA under section [the CPA].").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Defendants' arguments to the contrary are not persuasive. Defendants mainly focus on the phrase "[f]or actions brought by the attorney general," arguing it limits enforcement exclusively to the Attorney General. Dkt. No. 125 at 4–6. But as explained above, the findings in RCW 19.350.005 are not so limited, and they independently satisfy the CPA's public interest requirement under RCW 19.86.093. After all, the PTPA's declaration that violations "are" unfair or deceptive acts in trade or commerce does not change just because it is a private party who seeks relief.

In any event, the legislature knows how to foreclose private enforcement when it intends to do so, and it *did not* do so here. Other Title 19 statutes passed around the same time as the 2015 PTPA show that when the legislature intends to vest enforcement authority exclusively in the Attorney General, it says so explicitly. For example, the state's 2017 biometric protection statute, limits any enforcement to "*solely* . . . the attorney general under the [CPA]." RCW 19.375.030 (emphasis added). The 2018 Open Internet Access law uses identical language: the Act "may be enforced solely by the attorney general under the [CPA]." RCW 19.385.010. And RCW 19.415.060, 19.425.060—a pair of right to repair laws made effective only last year—entrust their enforcement "solely" to the attorney general. The PTPA contains no such limiting language. *See Perez-Crisantos v. State Farm Fire & Cas. Co.*, 389 P.3d 476, 481 (Wash. 2017) ("[W]here the legislature includes particular language in one section of a statute but omits it in another, the exclusion is presumed intentional."). The legislature thus had a "clear blueprint for express language" precluding a private right of action but chose not to include it in the

ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 6

PTPA. *Anthis v. Copland*, 270 P.3d 574, 580 (Wash. 2012); *see also State v. Nelson*, 381 P.3d 84, 86 (Wash. Ct. App. 2016) ("We recognize that the legislature intends to use the words it uses and intends not to use words it does not use.").

Defendants raise a related argument, but it fares no better. They read the phrase "[t]he attorney general *may* bring an action in the name of the state … to enforce this chapter," as granting exclusive authority to the Attorney General. RCW 19.350.030. While there are many definitions of the verb "may," the most applicable one in this context is "have permission to," or "have liberty to;" a definition which is "used nearly interchangeably with can." *May,* Webster's Third New Int'l Dictionary (2021). As used in the statute, the word "may" is permissive. *See Freeman v. Freeman,* 239 P.3d 557, 560 (Wash. 2010) ("The term 'may' in a statute generally confers discretion."). It *authorizes* the attorney general to enforce the PTPA—as in *Washington v. Landmark Tech. A, LLC*, 637 F. Supp. 3d 1154 (W.D. Wash. 2022)— but says nothing about excluding others. Given this silence, the Court will not construe the statute otherwise.

Defendants implicitly invoke the canon *expressio unius est exclusio alterius*, suggesting that the legislature's express grant of enforcement authority to the Attorney General excludes private enforcement by implication. This argument fails. Under Washington law, the canon "is subordinate to the primary rule of statutory interpretation, which is to follow legislative intent." *O.S.T. ex rel. G.T. v. Regence BlueShield*, 335 P.3d 416, 421 (Wash. 2014). Here, the legislature's intent is evident from its decision to characterize PTPA violations as CPA violations. Private enforcement of such violations has long been available.

1    Defendants also rely on legislative history, citing testimony from a January

2    2015 hearing in which a bill sponsor and an Attorney General's office representative

3    discussed the Attorney General's role as "gatekeeper." Dkt. No. 111 at 7. But

4    "[w]here the plain language of a statute is unambiguous and legislative intent is

5    apparent, [courts] will not construe the statute otherwise." *Anthis*, 270 P.3d at 576.

6    A court should "not construe a statute contrary to Washington law or use legislative

7    statements of purpose to vitiate a cause of action the plain text of the statute

8    provides." *Microsoft*, 626 F. Supp. 3d at 1137 (citing *Anthis*, 270 P.3d at 576).

9    Regardless, "one cannot rely on affidavits or comments of individual legislators to

10    establish legislative intent." *Johnson v. Cont'l W., Inc.*, 663 P.2d 482, 485 (Wash.

11    1983). And the legislative record is not one-sided, as Valve points to a bill report

12    noting that the CPA allows "[a] person [to] bring a lawsuit to recover actual

13    damages sustained from an unfair or deceptive act," which is the framework into

14    which the PTPA was inserted. Dkt. No. 123-1 at 2.

15    Finally, the PTPA is remedial in nature, and like all remedial statutes, it

16    must be construed liberally "in accordance with the legislative purpose behind" it.

17    *Jametsky v. Olsen*, 317 P.3d 1003, 1006 (Wash. 2014); *see also* RCW 19.86.920 (CPA

18    "shall be liberally construed that its beneficial purposes may be served").

19    Defendants' interpretation cannot be squared with this mandate. Under their

20    reading, a PTPA violation would be an unfair and deceptive act "vitally affecting the

21    public interest," yet no private party could ever obtain redress. The Court declines

22    to adopt an interpretation that would leave injured parties without recourse while

23    simultaneously declaring their injuries to be matters of vital public concern.

ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

### 4. CONCLUSION

So in the end, the Court reaches the same conclusion it reached in its prior order denying Defendants' motion to dismiss—a private right of action exists under the CPA for PTPA violations. Defendants' motion is thus DENIED.[2]

Dated this 28th day of January, 2026.

Jamal N. Whitehead
United States District Judge

---

[2] Because the CPA provides a private right of action to address violations of the PTPA, the Court need not address whether the PTPA independently creates an implied right of action.

ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 9