1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

VALVE CORPORATION,

8                          Plaintiff,

9          v.

10   ROTHSCHILD ET AL,

11                          Defendants.

12

13

CASE NO. 2:23-cv-01016-JNW

ORDER ON CROSS-MOTIONS FOR
PARTIAL SUMMARY JUDGMENT

14              **1.  INTRODUCTION**

15          This matter comes before the Court on Plaintiff Valve Corporation's motion

16   for partial summary judgment, Dkt. No. 140, and Defendants' opposition and cross-

17   motion for partial summary judgment, Dkt. No. 160. Having reviewed the responses

18   and replies, Dkt. Nos. 173, 176, the relevant record, all supporting materials, and

19   finding oral argument unnecessary, the Court GRANTS Plaintiff's motion IN PART,

20   and DENIES Defendants' motion IN FULL.

21
22
23

## 2. BACKGROUND

This dispute is between Plaintiff Valve Corporation ("Valve"), a video game developer and distributor, and Defendants Leigh Rothschild ("Rothschild"); Display Technologies, LLC ("DT"); Rothschild Broadcast Distribution Systems, LLC ("RBDS"); and attorneys Samuel Meyler ("Meyler") and Meyler Legal, PLLC (together, "Meyler Defendants"). The Rothschild entities are owned by Patent Asset Management LLC ("PAM"), of which Rothschild is the sole owner. Dkt. No. 80 at Responses to ¶¶ 9, 44. Valve sues Defendants, alleging they made bad-faith assertions of patent infringement against Valve.

### 2.1 The Global Settlement and License Agreement.

In 2016, Valve and Defendants Rothschild and DT, entered a Global Settlement and License Agreement ("GSLA") to resolve patent litigation filed by DT against Valve in the Eastern District of Texas. *See generally* GSLA, Dkt. No. 142-1. The GSLA is governed "by the law of the State of Texas." *Id.* § 11.1.

The Parties' dispute centers on the GSLA's "Grants and Covenants" provisions, which granted Valve a "non-exclusive, non-transferable ..., perpetual, irrevocable, royalty-free, fully paid-up, worldwide license" to numerous patents—the "Licensed Patents"—owned by Rothschild, DT, and other companies associated with Rothschild. *Id.* § 3.1. Section 3.1 of the GSLA (the license agreement) provides that "[n]o royalties or additional payments of any kind shall be required in order to maintain this Agreement in force." Section 3.2 (the covenant not to sue Valve)

provides that the Licensor (i.e., DT and Rothschild) agree "not to sue Licensee [(i.e., Valve)] or its Affiliates for actual or alleged infringement of the Licensed Patents."

The Licensed Patents are enumerated in Exhibit C to the GSLA. Relevant here, Exhibit C lists U.S. Patent No. 8,856,221 ("'221 Patent'") and U.S. Patent No. 8,671,195 ("'195 Patent'"), a parent patent to U.S. Patent No. 9,300,723 ("723 Patent'"). *Id*. at 19–20. Rothschild signed the GSLA in his personal capacity and on behalf of DT and all entities listed as "Assignee" in the agreement. *Id.* at 15.

Section 3.5 of the GSLA addresses future enforcement activity by Rothschild or DT against third parties who use the Licensed Patents: "[i]n the event that Licensor brings a claim under the Licensed Patents against any Licensee Third Party or any entity" who claims that the alleged infringing conduct arises out of "any communication, interaction, transaction, cooperation, or contractual obligation," with or on behalf of Valve, Valve had the option to provide "notice and sufficient written evidence to corroborate" the claim. Receipt of Valve's notice will start a ten-day clock for the Licensor to "cause such claim to be dismissed with respect to such entity," as if it were subject to the releases and covenants in the GSLA. *Id.* § 3.5.

Valve paid valuable consideration for the licenses, releases, and covenants granted by Rothschild and DT, GSLA § 5.1, which were intended to survive "in perpetuity." *Id.* § 6.1. The Parties "reserve[d] all rights and remedies, including damages and equitable relief, for breach" of the GSLA. *Id.* § 6.2.

**2.2    The alleged 2022 breach of the GSLA.**

Six years after the Parties ratified the GSLA, Valve received a series of marketing messages from Daniel Falcucci, on behalf of Defendant PAM, a company founded and run by Rothschild. Dkt. No. 142-4 at 2; Dkt. No. 162 ¶ 4. According to Rothschild, PAM "is a leading intellectual property holding and management company," which "manages other corporate entities that own or have the rights to enforce duly issued patents, including . . . DT," and Defendant RBDS. Dkt. No. 162 ¶¶ 4–5. While acknowledging the GSLA, Falcucci nevertheless urged Valve to "discuss reaching a new deal" regarding the previously licensed patents as well as "new inventory." Dkt. No. 142-4 at 2.

Valve did not respond to Falcucci's messages, so DT—represented by the Meyler Defendants—sued Valve in the Western District of Washington in September 2022. *See Display Technologies LLC v. Valve Corp.*, 2:22-cv-01365-TSZ (W.D. Wash. Sept. 27, 2022).[1] DT alleged that Valve had infringed the '723 Patent, a continuation of the '195 Patent, which Valve had licensed through the GSLA. Within a few weeks, Valve's in-house counsel, Christopher Schenck, emailed the Meyler Defendants, attaching a copy of the GSLA, and advising Meyler "[i]f you haven't seen [the GSLA] already, I think you should read it. I have a hard time seeing how Valve isn't already licensed to [the '723 Patent]." Dkt. No. 142-3. A week

---

[1] On the same day, the Meyler Defendants sued Valve on behalf of a different Rothschild-associated entity. *See Soc. Positioning Input Systems LLC. v. Valve*, 2:22-cv-01366-JHC (W.D. Wash. Sept. 27, 2022). Social Positioning Input Systems voluntarily dismissed that case on February 3, 2023, *see id.* at Dkt. No. 6, and is not named as a Defendant in Valve's lawsuit.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

later, DT voluntarily dismissed its claims against Valve. *See Display Technologies LLC v. Valve Corp.*, 2:22-cv-01365-TSZ, Dkt. No. 6.

In December 2022, Schenck sent the Meyler Defendants a letter related to their representation of the Rothschild Defendants' patent infringement claims. Dkt. No. 142-4. In that letter, Schenck warned Meyler that his "behavior indicates that you had failed to do the appropriate Rule 11 inquiry" on behalf of his client's claims, and that the DT suit "was also a clear breach" of the GSLA. *Id.* Meyler responded in January 2023 that he had carefully reviewed the GSLA. Dkt. No. 142-5.

## 2.3    The alleged 2023 breach of the GSLA.

On June 21, 2023, Meyler sent a letter to Schenck on behalf of RBDS and other Rothschild entities. The letter was marked "FRE 408 – Settlement Communication" and addressed three patents owned by various Rothschild entities, including Defendant RBDS. The letter included "preliminary claim charts," which were "prepared in anticipation of litigation," and sought to negotiate the infringement claims. Dkt. No. 142-2. The letter set a deadline of June 30, 2023, stating that if Meyler did not "hear from you or Valve" by that date, "my clients will assume that Valve would prefer to litigate." *Id.*

Among the claim charts attached to the letter was one for the '221 Patent—a patent licensed to Valve under the GSLA. Dkt. No. 142-1 at 20.

Schenck responded to Meyler by email on June 29, 2023, offering to "set up a time to chat the week of July 17," after he returned from a family vacation. Dkt. No.

142-6. Not wanting to "trouble" Schenck during his vacation, Meyler did not reply. Dkt. No. 161 ¶ 31; Dkt. No. 143-7 at 5; Dkt. No. 143-4 at 8.

**2.4    This lawsuit.**

On July 7, 2023, Valve filed this lawsuit. *See* Dkt. No. 1. On January 30, 2024, Valve filed its Second Amended Complaint ("SAC"). *See* Dkt. No. 38. The SAC asserts four counts: declaratory judgment that the '221 Patent is invalid (Count I) and unenforceable against Valve (Count II); judgment that Defendants breached the GSLA (Count III); and judgment that Defendants violated the Washington Patent Troll Prevention Act (PTPA), RCW 19.350 et seq. and the Washington Consumer Protection Act (CPA), RCW 19.86 et seq. (Count IV).

**2.5    The pending motions.**

The Parties now seek partial summary judgment on Valve's claims. Valve moves for summary judgment on its breach of contract claim (Count III) and on Defendants' affirmative defenses for failure to mitigate, unclean hands, and various equitable doctrines. Valve does not present argument on the patent invalidity or unenforceability claims. Dkt. No. 141.

Defendants move for summary judgment on Valve's breach of contract claim (Count III), PTPA claim (Count IV), and all claims against the Meyler Defendants under (1) litigation privilege; (2) the *Noerr-Pennington* doctrine; and (3) failure to state a CPA claim. Dkt. No. 160.

1

## 3.  DISCUSSION

2   **3.1   Legal standard.**

3         "[S]ummary judgment is appropriate when there is no genuine dispute as to

4   any material fact and the movant is entitled to judgment as a matter of law."

5   *Frlekin v. Apple, Inc.*, 979 F.3d 639, 643 (9th Cir. 2020) (internal citation omitted).

6   A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving

7   party," and a fact is "material" if it "might affect the outcome of the suit under the

8   governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When

9   considering a summary judgment motion, courts must view the evidence "'in the

10  light most favorable to the non-moving party.'" *Barnes v. Chase Home Fin., LLC*,

11  934 F.3d 901, 906 (9th Cir. 2019) (internal citation omitted). "[S]ummary judgment

12  should be granted where the nonmoving party fails to offer evidence from which a

13  reasonable jury could return a verdict in its favor." *Triton Energy Corp. v. Square D

14  Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Summary judgment should also be granted

15  where there is a "complete failure of proof concerning an essential element of the

16  non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

17  **3.2   Breach of contract.**

18        Because the Parties agreed that Texas law would govern any dispute arising

19  under the GSLA, the Court will apply Texas substantive law to Valve's breach of

20  contract claims. Dkt. No. 56 at 13. Under Texas law, a breach of contract claim

21  requires that "(1) a valid contract exists; (2) the plaintiff performed or tendered

22  performance as contractually required; (3) the defendant breached the contract by

23

failing to perform or tender performance as contractually required; and (4) the plaintiff sustained damages due to the breach." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019). "[W]hether a party 'breached a contract' is a question of law rather than fact, and should not be submitted to the jury." *Garza v. Southland Corp.*, 836 S.W.2d 214, 219 (Tex. App. 1992).

The first two elements of Valve's breach of contract claim are undisputed. Defendants do not contest the validity of the GSLA, nor do they dispute that Valve performed as contractually required under the GSLA. *See* Dkt. No. 141 at 7–8. The disputed issues are whether Defendants breached the GSLA in 2022 and 2023, and whether Valve sustained any damages as a result.

### 3.2.1    Valve is entitled to summary judgment on its claims related to the 2022 breach.

Valve moves for summary judgment on its claim that DT's September 27, 2022, lawsuit breached the GSLA's covenant not to sue. Dkt. No. 141 at 8–10. Defendants concede the breach, *see* Dkt. No. 160 at 7; Dkt. No. 80 ¶ 76 ("Display Technologies admits it breached the covenant not to sue when it asserted U.S. Patent No. 9,300,723 in its 2022 lawsuit against Valve . . ."), but claim the breach was "promptly and fully cured" under Section 3.5 of the GSLA when DT voluntarily dismissed the lawsuit. *See* Dkt. No. 160 at 8. This argument fails, as it relies on misreading of Section 3.5.

Section 3.5 provides:

**Future Enforcement Activity by Licensor.** In the event that Licensor brings a claim under the Licensed Patents against any Licensee Third Party or any entity that claims that the alleged

infringing conduct arises out of any communication, interaction, transaction, cooperation, or contractual obligation with or on behalf of Licensee, then upon Licensee providing written notice and sufficient written evidence to corroborate that claim, then Licensor shall within ten (10) days cause such claim to be dismissed with respect to such entity, to the extent the claim is based on conduct that is properly subject to protection from suit under Section 2.1, 2.2, 3.1 or 3.2.

Dkt. No. 142-1 at 6.

By its plain text, Section 3.5 is a prophylactic measure aimed at preventing Rothschild or DT from filing claims against third parties who, in working with or on behalf of Valve, make use of the Licensed Patents. The provision does not—as Defendants would have it—create a "cure" mechanism excusing breaches of Section 3.2's covenant not to sue Valve itself. The key distinction lies in the clause's use of the term "Third Party," which the GSLA defines as "a Person other than the Parties"—i.e., a person or organization other than Valve, Rothschild, or DT. *Id.* at 4 (Section 1.9). Because Valve is a Party to the GSLA, not a "Third Party," Section 3.5's dismissal mechanism does not apply to suits filed against Valve.

Accordingly, the Court finds as a matter of law that Rothschild and DT breached the GSLA by suing Valve on September 27, 2022, and that prompt dismissal of the lawsuit did not cure the breach under GSLA Section 3.5. Valve's motion for summary judgment on the 2022 breach is GRANTED.

### 3.2.2    A genuine dispute of material fact exists as to whether the June 2023 letter was an anticipatory breach.

Valve also moves for summary judgment on its claim that the June 2023 letter sent by Meyler on behalf of Rothschild and RBDS threatening to sue for infringement of the '221 Patent constituted anticipatory breach of the GSLA. Dkt.

No. 141 at 7–16. Defendants respond that the letter was not an absolute repudiation, or alternatively, that the inclusion of the '221 Patent in the letter was a genuine mistake. Dkt. No. 160 at 10–11.

Under Texas law, to prevail on a claim for anticipatory breach, "a plaintiff must establish each of the following elements: (1) an absolute repudiation of the obligation; (2) a lack of a just excuse for the repudiation; and (3) damage to the non-repudiating party." *Gonzalez v. Denning*, 394 F.3d 388, 394 (5th Cir. 2004); *Good Shepherd Hosp., Inc. v. Select Specialty Hosp. - Longview, Inc.*, 563 S.W.3d 923, 929 (Tex. App. 2018). "Whether a party has repudiated an agreement is a question of fact." *Tubb v. Aspect Int'l, Inc.*, No. 12-14-00323-CV, 2017 WL 192919, at *3 (Tex. App. Jan. 18, 2017) (citing *Berg v. Wilson*, 353 S.W.3d 166, 176 (Tex. App. 2011)).

Beginning with the first element, the Court finds that the June 2023 letter was an absolute repudiation of the GSLA. "An absolute repudiation of the obligation 'may consist of either words or actions by a party to that contract that indicate an intention that he or she is not going to perform the contract according to its terms.'" *Watson v. Citimortgage, Inc.*, 814 F. Supp. 2d 726, 733 (E.D. Tex. 2011) (quoting *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 631 (N.D. Tex. 2010)). By instructing Meyler to send the June 2023 letter, Rothschild and RBDS indicated an intention ignore the terms of the GSLA in at least two ways. First, despite Valve possessing a "perpetual, irrevocable, royalty-free, fully paid-up, worldwide license" to the '221 Patent under Section 3.1 of the GSLA, the letter was sent to extract a settlement payment from Valve. *See* Dkt. No. 142-2 (entitled "FRE 408 – Settlement Communication"); *see also* Dkt. No. 140-3 at 7–8. Second, each paragraph of the

letter references—and threatens—pending litigation against Valve related to the '221 Patent, contrary to the terms of Section 3.2 of the GSLA. And Defendants admit there was "no question" that Rothschild and RBDS "intended to pursue the claims" listed in the 2023 letter. Dkt. No. 160 at 24. The Court finds that the June 2023 letter constituted an "unconditional declaration of an intention to not perform the contract," *Davis v. Canyon Creek Ests. Homeowners Ass'n*, 350 S.W.3d 301, 313 (Tex. App. 2011), reflecting an "fixed intention to abandon, renounce, and refuse to perform his [contractual] obligation," *Cont'l Cas. Co. v. Boerger*, 389 S.W.2d 566, 568 (Tex. Civ. App. 1965), *writ dismissed* (July 14, 1965). Valve has satisfied the first element needed to show anticipatory breach.

The second element—a lack of a just excuse for the repudiation—presents a genuine dispute of material fact. Specifically, Defendants contend they had a just excuse for the repudiation because the '221 Patent was included in the June 2023 letter by mistake. Under Texas law, "there is no repudiation if the refusal to perform is based upon a genuine mistake or misunderstanding as to matters of fact or law." *Jenkins v. Jenkins*, 991 S.W.2d 440, 447 (Tex. App. 1999) (citing *McKenzie v. Farr*, 541 S.W.2d 879, 882 (Tex. App. 1976)); *see also Preston v. Love*, 240 S.W.2d 486, 487 (Tex. Civ. App. 1951) (no anticipatory breach where a refusal to perform under the terms of a contract is "based upon a genuine mistake or misunderstanding as to matters of fact or law.").

The record contains conflicting evidence about whether the inclusion of the '221 Patent in the June 2023 letter was a genuine mistake or misunderstanding. Defendant Meyler states that he "did not realize that the '221 Patent was listed in

the GSLA," and that he had "relied upon PAM," who created the claim charts, "to track licenses and to verify whether an alleged infringing party had a license to a patent." Dkt. No. 161 ¶¶ 23–25; *see also* Dkt. No. 162 ¶ 23 (Rothschild claiming that "[t]he claim chart for the '221 Patent was sent to the Meyler Defendants in error."). Valve argues that his claim "strains credulity" and provides evidence that Meyler and Rothschild were—or should have been—keenly aware of Valve's possession of a license to the '221 Patent. Dkt. No. 141 at 16. These arguments may ultimately prove persuasive, but whether Meyler's failure to cross-reference the GSLA reflects a willful act or genuine oversight is a credibility determination for the jury. Because genuine disputes of material fact exist as to whether the '221 Patent was mistakenly included in the June 2023 letter, the Court DENIES the motion on the 2023 breach.

### 3.2.3    The issue of damages remains an issue for trial.

Defendants briefly argue that there "is no evidence that the 2022 breach damaged Valve," and ask the Court to enter summary judgment in their favor on that basis. Dkt. No. 160 at 8–9.[2] But in the same breath, Defendants concede that Valve is entitled to nominal damages, *see id.*, which under Texas law, is enough to sustain a breach of contract claim. *See MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 664 (Tex. 2009) (nominal damages available for breach of contract claims). Furthermore, Valve has put forth evidence showing that it

---

[2] Valve does not move for summary judgment on the issue of damages related to the 2022 breach, *see* Dkt. No. 141 at 10 n.5, and instead choosing to reserve that issue for trial, *see id.* at 6.

1   sustained actual damages in the form of time and resources spent by Schenck in

2   reviewing the GSLA and 2022 complaints. *See* Dkt. No. 143-4 at 5 (Schenck

3   testifying that he spent "more than 10 hours" in response to the 2022 breach). Thus,

4   there remains a genuine dispute of material fact pertaining to damages suffered by

5   Valve related to the 2022 breach.

6       For the reasons stated above, Valve's motion for summary judgment on its

7   breach of contract claim is GRANTED IN PART. Summary judgment is GRANTED

8   as to Defendants' liability for the 2022 breach and DENIED as to Defendant's

9   liability for the 2023 breach. Defendants' motion for summary judgment on Valve's

10  breach of contract claim is DENIED.

11  **3.3    Affirmative defenses.**

12      Valve moves for summary judgment on three of Defendants' four affirmative

13  defenses: failure to mitigate (second), unclean hands (third), and equitable

14  estoppel/laches (fourth). The Court addresses each in turn.

15  ### 3.3.1    Failure to mitigate.

16      Defendants' second affirmative defense claims that Valve failed to mitigate

17  its damages because "the filing of this action by Valve was unnecessary and has

18  resulted in the expenditure of unnecessary resources, including attorneys' fees and

19  costs." Dkt. No. 80 at 30–31. Valve argues that, among other things, Defendants

20  have not identified "'the amount by which damages would have been mitigated,' as

21  required to sustain a mitigation defense." Dkt. No. 141 at 17–18 (quoting

22

23

1    *Cummings v. Amtrak Nat'l R.R. Passenger Corp.*, 199 F.3d 1331, 1999 WL 980362,

2    at *4 (9th Cir. 1999)).

3        Because failure to mitigate damages is an affirmative defense, "the question

4    on summary judgment is whether the party asserting the defense raises a genuine

5    issue of material fact that the injured party acted unreasonably in failing to

6    mitigate damages." *KIC, LLC v. Zhejiang Dicastal Hongxin Tech. Co., LTD*, No.

7    3:19-CV-05660-RJB, 2021 WL 4860793, at *2 (W.D. Wash. Oct. 19, 2021) (citation

8    omitted). Defendants have not carried this burden. They adduce no evidence of

9    actual damages that Valve could have mitigated, conceding instead that Valve's

10   decision not to seek summary judgment on specific damages absolves them from

11   presenting "a specific calculation." Dkt. No. 160 at 11. Defendants vaguely reference

12   "non-fee damages needlessly incurred by all parties," *id.* at 12, but point to nothing

13   in the record to substantiate this claim. Because Defendants provide no evidence to

14   show the existence of *any* non-fee damages, they cannot avoid summary judgment

15   on their affirmative defense. *See Nissan Fire & Marine Ins. Co. v. Fritz Companies,*

16   *Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000) (citing *Celotex,* 477 U.S. at 322).

17       In the alternative, Defendants argue that Valve could have mitigated *all* its

18   damages by "engag[ing] in pre-suit discussions." Dkt. No. 160 at 12. But the GSLA

19   expressly preserves each party's right to seek legal recourse for breach. GSLA § 6.2.

20   "The duty to mitigate does not require a party to take actions that would impair its

21   rights." *Press Rentals, Inc. v. Genesis Fluid Sols., Ltd.*, No. 5:11-CV-02579-EJD,

22   2014 WL 31251, at *12 (N.D. Cal. Jan. 3, 2014).

23

1    Accordingly, Valve's motion for summary judgment is GRANTED on
2    Defendants' second affirmative defense.

### 3.3.2    Unclean hands and other equitable defenses.

Defendants' third and fourth affirmative defenses assert that Valve's claims are barred by unclean hands, waiver, acquiescence, estoppel, and laches for filing suit on July 7, 2023, despite requesting a conference regarding the claims for the week of July 17, 2023. Dkt. No. 80 at 31–32. Valve argues that these "bare allegations" are insufficient to show (1) waiver of its rights under the GSLA; (2) acquiescence, ratification, or consent to Defendants' infringement claim regarding the '221 Patent; (3) that Valve's request for a conference estopped them from filing suit; or (4) that the alleged rug-pull was so morally repugnant as to leave Valve with unclean hands. Dkt. No. 141 at 18–20. The Court agrees with Valve.

The undisputed evidence shows that Schenck's email to Meyler addressed only Defendants' patent infringement threats and not any litigation brought by Valve. Schenck wrote that Valve "always prefer[s] to avoid litigation," this statement was made with regard to "the claims in [Defendants'] letter"—i.e., allegations of patent infringement contained in the claim charts. Dkt. No. 142-6 at 2; Dkt. No. 142-2 at 2. Nothing in Schenck's letter referred to Valve's intention, rights, or ability to bring this action.

With this in mind, the Court finds that Valve is entitled to judgment as a matter of law on Defendants' third and fourth affirmative defenses. There is no waiver, acquiescence, ratification, or consent because the Schenck letter was not an

ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT - 15

"intentional and voluntary relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right." *Bowman v. Webster*, 269 P.2d 960, 961 (Wash. 1954). Nor was Valve estopped from suing Defendants, as nothing in the Schenck letter was "inconsistent with the claim" eventually brought by Valve, nor is there any evidence in the record to show that Defendants took any action relying on the letter.[3] *Saunders v. Lloyd's of London*, 779 P.2d 249, 255 (Wash. 1989). And nothing in the letter rises to the "unconscionable" or "morally reprehensible" behavior which would allow Defendants to invoke the doctrine of unclean hands. *See J. L. Cooper & Co. v. Anchor Sec. Co.*, 113 P.2d 845, 857 (Wash. 1941) ("The complainant ought not to be the transgressor himself, and then complain that by chance he has been injured on account of his own wrongful misconduct.").

Finally, the Court rejects any argument that Schenck was obligated to mention Valve's license for the '221 Patent. *See, e.g.*, Dkt. No. 160 at 12 ("any mention of the '221 Patent . . . would have resolved any claim or dispute"). Valve's in-house counsel had no duty to correct Defendants' due diligence failures—particularly after Schenck had already provided Meyler with a copy of the GSLA in October 2022 and advised him to "read it." Dkt. No. 142-3 at 2.

Accordingly, Valve's motion is GRANTED as to Defendant's third and fourth affirmative defenses.

---

[3] Defendants claim that Schenck's response shows that Valve had "knowledge that Defendants had indeed withheld filing of [their] patent suit." Dkt. No. 160 at 12. This claim is unsupported by the record. Indeed, it appears that Defendants did not even respond to Schenck's email. *See* Dkt. No. 160 at 19; Dkt. No. 161 ¶ 31.

**3.4    PTPA claim.**

Defendants move for summary judgment on Valve's PTPA claim, arguing RCW 19.350.020 bars Valve from using the June 2023 letter as "as the predicate for both a [declaratory judgment] and a PTPA action." Dkt. No. 176 at 4; Dkt. No. 160 at 12–14. Valve responds that "RCW 19.350.020(3) simply does not, and cannot, apply to this case," because (1) the June 2023 letter was issued before Valve filed this suit; and (2) Valve's declaratory judgment actions do not allege infringement. Dkt. No. 173 at 13–14. The Court agrees with Valve.

RCW 19.350.020(3) provides that "[n]othing in the demand letter or patent assertion may be used to move for declaratory judgment in *underlying* patent infringement litigation." (emphasis added). The most relevant definition of the adjective "underlying" is "anterior and prior in claim." *Underlying*, Webster's Third New Int'l Dictionary (2021). As used in the statute, the word "underlying" would prohibit the demand letter from being used in any disputes involving prior claims of patent infringement. Despite the June 2023 letter's threats, there was no "underlying" active litigation between the Parties. And even if there were prior litigation, .020(3) applies only to "patent infringement litigation." But Valve's lawsuit seeks judgment as to the invalidity and unenforceability of the '221 Patent and does not allege infringement. The Court finds that RCW 19.350.020(3)'s prohibition does not apply to Valve's claims, and thus DENIES Defendant's motion seeking to dismiss Count IV.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**3.5    Motion to Dismiss Meyler Defendants.**

The Meyler Defendants move for summary judgment on all claims against them, asserting (1) litigation privilege and (2) immunity under the *Noerr-Pennington* doctrine. For the reasons discussed below, the motion is DENIED.

### 3.5.1    The Meyler Defendants are not entitled to litigation privilege for their extrajudicial pre-suit conduct.

The Meyler Defendants argue that their transmittal of the June 2023 letter is protected by Washington's litigation privilege, which shields attorneys from liability for conduct undertaken in the course of representing clients. Dkt. No. 160 at 19–23. The Court disagrees.

This is not the Meyler Defendants' first attempt to invoke the litigation privilege. In its June 26, 2024, order denying Defendants' motion to dismiss, this Court found that "the June 2023 demand letter sent by the Meyler Defendants was an extrajudicial, bad-faith assertion of patent infringement unrelated to any actual litigation and therefore unprotected by litigation privilege and actionable under the PTPA." Dkt. No. 56 at 21. Defendants acknowledge this previous ruling, *see* Dkt. No. 160 at 19, but seek reconsideration in light of the recent state-court appellate decision in *Valve Corp. v. Bucher L. PLLC*, 571 P.3d 312, *review denied*, 579 P.3d 792 (Wash. Ct. App. 2025). That case does not change the outcome here.

In *Bucher*, a Washington Court of Appeals held that the litigation privilege applied to an attorney who had "agreed to represent clients individually in arbitration pursuant to Valve's [arbitration clause]," and then "contacted Valve in accordance with its prescribed dispute resolution process." 571 P.3d at 321. The

court reasoned that Washington's litigation privilege is broadly "limited" to situations in which other "forms of accountability such as sanctions and professional disciplinary proceedings" were available to remedy attorney misconduct, and that Valve did "not dispute that litigation privilege could extend, when appropriate, to lawyers appearing in arbitration proceedings." *Id.* at 321 (quotations modified). Because Valve had opted for arbitration, and because the arbitrator possessed "some power to discipline" Bucher for impermissible conduct related to the mass arbitrations he had filed on behalf of his clients, litigation privilege applied to Bucher's contacts and required dismissal of Valve's claims. *Id.* at 322.

*Bucher* is distinguishable. There, Valve's claims were brought *after* the arbitrations were filed, and therefore the arbitrator could reasonably have held Bucher to account for his actions. Here, by contrast, Meyler's alleged misconduct—sending the June 2023 letter—occurred *before* any case was brought against Valve related to the patents identified in the June 2023 letter. At the time of Meyler's conduct, there was no arbitrator, district court judge, or any authority with "some power to discipline" the Meyler Defendants for their alleged violation of the PTPA and CPA. Valve's only avenue was to file this lawsuit. Because no alternative mechanism existed to hold the Meyler Defendants accountable for their alleged PTPA and CPA violations, the litigation privilege does not apply to the Meyler Defendants for their communications with Valve and its counsel in June 2023.

1

2

### 3.5.2    The Meyler Defendants are not entitled to immunity under the *Noerr-Pennington* doctrine.

The Meyler Defendants alternatively seek immunity under the *Noerr-Pennington* doctrine, which protects attorneys and legal counsel from liability for acts done in the course of litigation or for "conduct incidental to the prosecution of" a lawsuit, including "prelitigation letters and notices that threaten legal action and make legal representations." *Sosa v. DirecTV, Inc.*, 437 F.3d 923, 936-37, 940 (9th Cir. 2006). This protection does not apply, however, if the threatened lawsuit is a "sham." *see Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.*, 745 F.3d 343, 351 (9th Cir. 2014). A sham lawsuit is one where "the suit is both 'objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits' and 'an attempt to interfere *directly* with the business relationship of a competitor through the use of the governmental *process*—as opposed to the *outcome* of that process.'" *Rock River*, 745 F.3d at 351 (emphasis in original) (quoting *Prof'l Real Est. Inv'rs, Inc. v. Columbia Pictures Indus., Inc. (PREI)*, 508 U.S. 49, 60–61 (1993)).

Defendants argue that there is a factual question as to whether Meyler's prelitigation threats fall into the sham lawsuit exception. Dkt. No. 173 at 17–18. The Court agrees. There is no genuine dispute that the threat related to the '221 Patent was objectively baseless. Defendants concede as much but argue that the threatened lawsuit was not a sham because the remaining claims—those for the '367 and '365 Patents—were "legitimate claims against Valve" which they "intended to pursue." Dkt. No. 160 at 24–25. Defendants rely on *Meridian Project Sys., Inc. v.*

1    *Hardin Const. Co., LLC*, for the proposition that an "allegation that a single claim is

2    objectively baseless does not bring [the] filing of the entire complaint within the

3    sham exception." 404 F. Supp. 2d 1214, 1222 (E.D. Cal. 2005). But *Meridian*

4    involved a question of whether the sham exception applied to a single plaintiff's

5    entire lawsuit, which contained eight total claims, when only one claim was alleged

6    to be objectively baseless. *Id.* at 1221. The court there found that "to fall within the

7    sham exception, Meridian's filing of the *lawsuit*," *i.e.*, the totality of the

8    claims, "must be objectively baseless." *Id.* at 1221–22 (emphasis in original).

9        In comparison, the June 2023 letter contained three separate threatened

10   lawsuits related to three separate patents registered to three separate entities. Dkt.

11   No. 142-2 at 2. Unlike in *Meridian*, where the flaws of a single claim were not

12   imputed to the lawsuit as a whole, each claim and related litigation threat in the

13   June 2023 letter stands alone when assessing whether each discrete legal action

14   threatened was objectively baseless. *See PREI*, 508 U.S. at 60 ("*lawsuit* must be

15   objectively baseless"); *Meridian*, 404 F. Supp. 2d at 1222 (same). As discussed

16   above, the threat made as to the '221 Patent was objectively baseless.

17       But even if Meyler's pre-suit litigation threats were righteous, Defendants

18   behavior reflects a strategy of seeking settlement through the threat of litigation

19   rather than fulsome prosecution of their infringement claims. The Court is aware of

20   at least five patent infringement claims filed by the Rothschild Defendants and

21   other known Rothschild-related companies, all of which have been voluntarily

22   dismissed. *See Display Technologies LLC v. Valve Corp.*, 2:22-cv-01365-TSZ, Dkt.

23   No. 6; *Soc. Positioning Input Systems LLC. v. Valve*, 2:22-cv-01366-JHC (W.D.

Wash.) at Dkt. No. 6; *Quantum Tech. Innovations, LLC v. Valve Corp., et al.,* Case No. 2:23-cv-00425 (E.D. Tex.) at Dkt. No. 56; *Soc. Positioning Input Systems, LLC v. Valve Corp., et al.,* Case No. 2:23-cv-00422 (E.D. Tex.) at Dkt. Nos. 29, 30; *Symbology Innovations, LLC v. Valve Corp., et al.*, Case No. 2:23-cv-00419 (E.D. Tex.) at Dkt. No. 82. At least one district court has sanctioned counsel for the Rothschild Defendants for bringing false allegations and "unnecessarily delaying the resolution of Valve's motion to dismiss and needlessly increasing the cost of litigation." *Symbology Innovations, LLC v. Valve Corp.*, No. 2:23-CV-00419-JRG, 2025 WL 364075, at *7 (E.D. Tex. Jan. 31, 2025). At a minimum, Defendants' strategies and conduct in similar areas of litigation suggest that they seek to achieve their goals "through the litigation *process* rather than through the *result* of that process, satisfying the second criterion for the sham exception." *Rock River*, 745 F.3d at 353.

Accordingly, Defendants' motion is DENIED as to the Meyler Defendants' claims to *Noerr-Pennington* immunity.

### 3.5.3    Valve alleges a *per se* violation of the CPA.

Finally, the Meyler Defendants seek dismissal of the CPA claim on the grounds that Valve cannot prove the first three elements of a CPA claim: "(1) an unfair or deceptive act or practice (2) in trade or commerce, (3) which affects the public interest[.]" *Schiff v. Liberty Mut. Fire Ins. Co.*, 542 P.3d 1002, 1006 (Wash. 2024) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986)).

1    The parties dispute whether a PTPA violation establishes these elements *per*

2 *se*. Valve contends that RCW 19.350.030's characterization of PTPA violations as

3 "unfair or deceptive act[s] in trade or commerce" applies no matter who sues. Dkt.

4 No. 173 at 22. The Meyler Defendants counter that the *per se* provisions are limited

5 to actions brought by the Attorney General. Dkt. No. 176 at 8–9. But the Court

6 recently rejected this argument. In it order denying Defendants' motion for partial

7 summary judgment, the Court held that the PTPA's characterization of violations

8 as unfair or deceptive acts in trade and commerce—and its legislative declaration

9 that such violations vitally affect the public interest—applies regardless of who

10 brings suit. Dkt. No. 216 at 5–6. The Court reasoned that the findings in RCW

11 19.350.005 are not limited to Attorney General actions, and that the legislature's

12 decision not to include "solely" language (as it did in other Title 19 statutes), among

13 other things, confirms that private enforcement is available. *Id.*

14    Alternatively, even if the *per se* characterization in RCW 19.350.030 were

15 limited to actions brought by the Attorney General, Defendants would still not be

16 entitled to summary judgment. The first element of a CPA claim, whether an act or

17 practice is "unfair or deceptive," is a question of law. *Panag v. Farmers Ins. Co. of*

18 *Washington*, 204 P.3d 885, 894 (Wash. 2009); *accord Schiff*, 542 P.3d at 1006. The

19 Meyler Defendants contend that their bona fide (albeit mistaken) belief in the

20 legitimacy of the '221 Patent, coupled with the fact that Valve "clearly was not

21 deceived or misled," defeats this element. Dkt. No. 160 at 26. But Valve need not

22 show that the June 2023 letter was intended to deceive or that it was deceived, only

23 that the letter "had the capacity to deceive a substantial portion of the public."

1    *Panag,* 204 P.3d at 894. A letter asserting patent infringement against a party that

2    already holds a license to that patent will qualify, regardless of the sender's

3    subjective belief. *See id.*

4        As for the second element, the parties dispute whether Meyler's conduct

5    occurred in trade or commerce. This is a closer call. "[C]ertain entrepreneurial

6    aspects of the practice of law," including "how the price of legal services is

7    determined, billed, and collected and the way a law firm obtains, retains, and

8    dismisses clients," are "within the 'trade or commerce' definition of the CPA." *Short*

9    *v. Demopolis*, 691 P.2d 163, 168 (Wash. 1984). But claims "directed to the

10   competence of and strategy employed" by attorneys sound in negligence or

11   malpractice, not consumer protection, and as such, are not actionable under the

12   CPA. *Id.* Whether a particular action was "for the purpose of increasing profits or

13   gaining clients" is a question of fact. *Eriks v. Denver*, 824 P.2d 1207, 1214 (Wash.

14   1992)

15       Here, whether Meyler sent the June 2023 letter, which contained the false

16   assertion made as to the '221 Patent, to further his client's potential legal claims or

17   solely to increase his own profits, presents a triable issue. Valve points to Meyler's

18   deposition testimony and an engagement letter as evidence that the June 2023

19   letter was sent "for the sole purpose of executing a settlement with Valve," which

20   may indicate an entrepreneurial motive subject to CPA liability. Dkt. No. 173 at 24

21   (citing *Seyfarth v. Reese L. Grp.*, P.L.C., No. C09-5727BHS, 2010 WL 2698819, at *3

22   (W.D. Wash. July 7, 2010)). Meanwhile, Defendants proffer no evidence to support

23   their claims that the letter was pure advocacy. *See* Dkt. No. 160 at 27–28; Dkt. No.

176 at 10. In failing to do so, Defendants do not satisfy the standard needed to prevail on summary judgment.

Defendants' argument that "private CPA claims may not be raised against an opposing party's attorney," *see* Dkt. No. 160 at 27 (citing *Jeckle v. Crotty*, 85 P.3d 931, 937 (Wash. Ct. App. 2004)), does not apply here. *Jeckle* involved conduct occurring during pending litigation—namely, an attorney's solicitation of plaintiffs to join an existing class action. 85 P.3d at 937. Here, as discussed above, the parties were not yet engaged in litigation; therefore Meyler was not yet the "opposing party's attorney," and he is thus subject to private CPA claims for his entrepreneurial actions. Accordingly, Defendant's reliance on *Jeckle* is unavailing.

Third, as to the public interest at stake, Meyler's actions implicate conduct— a "meritless" patent infringement claim—that the legislature has found to impose a "significant burden on individual Washington businesses and other entities" and that "harm[s] Washington's economy." RCW 19.350.005. The Court is satisfied that the public interest prong is met. To be sure, "a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest," Dkt. No. 176 at 10 (quoting *Hangman Ridge*, 719 P.2d at 538), but the Meyler Defendants—against whom the claim is brought—were not parties to the GSLA and therefore could not breach it.

### 4. CONCLUSION

In sum, the Court ORDERS the following:

1. Valve's motion for summary judgment on its breach of contract claim is GRANTED IN PART. Summary judgment is GRANTED as to Defendants'

liability for the 2022 breach and DENIED as to Defendants' liability for the 2023 breach.

2.   Defendants' motion for summary judgment on Valve's breach of contract claim is DENIED.

3.   Valve's motion for summary judgment is GRANTED as to Defendants' second, third, and fourth affirmative defenses.

4.   Defendants' motion to dismiss Valve's PTPA claim (Count IV) is DENIED.

5.   Defendants' motion to dismiss the Meyler Defendants is DENIED.

Dated this 28 day of January, 2026.

Jamal N. Whitehead
United States District Judge