UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VALVE CORPORATION,<br><br>               Plaintiff,<br><br>v.<br><br>ROTHSCHILD ET AL,<br><br>               Defendants. | CASE NO. 2:23-cv-01016-JNW<br><br>ORDER ON EVIDENTIARY MOTIONS |

## 1.  INTRODUCTION

This matter comes before the Court on three sets of pretrial evidentiary motions. First, Defendants move to exclude the testimony of Valve's experts: Professor Paul Gugliuzza, Ramsey Al-Salam, Kimberly Schenk, and Dr. Adam Sorini. Dkt. No. 167-3. Second, Valve has filed nine motions in limine. Dkt. No. 182. Third, Defendants have filed six motions limine. Dkt. No. 184. The motions are fully briefed. Additionally, the briefing on Defendants' *Daubert* motion raises a separate matter concerning the use of artificial intelligence in the filings submitted to this Court. The Court addresses each issue in turn.

## 2.  BACKGROUND

This dispute is between Plaintiff Valve Corporation ("Valve"), a video game developer and distributor, and Leigh Rothschild ("Rothschild"); Display Technologies, LLC ("DT"); Patent Asset Management, LLC ("PAM"); Rothschild Broadcast Distribution Systems, LLC ("RBDS"); Attorney Samuel Meyler; and Meyler Legal PLLC. Valve sues Defendants, alleging among other things that they made bad-faith assertions of patent infringement against Valve.

## 3.  DEFENDANTS' MOTION TO EXCLUDE

Valve has retained experts whose opinions it intends to rely on during their presentation of evidence. Valve retained Professor Paul Gugliuzza to present his opinion regarding the patent enforcement industry and Defendants' practices in relation to that industry. Valve retained Ramsey Al-Salam, to offer his opinion on the reasonableness of Valve's legal fees. Valve also retained Kimberly Schenk, who will testify about the damages incurred by Valve and to rebut Defendants' claims that their patent "has been copied and is commercially successful." And Valve retained Dr. Adam Sorini, Ph.D., who opines on the validity of U.S. Patent 8,856,221.

Defendants have retained no experts in support of their defense, but now seek to exclude the expert witness testimony and opinions of Gugliuzza, Al-Salam, Schenk, and Sorini. Dkt. No. 167-3. The Court reviews the legal standard before addressing each expert in turn.

### 3.1 Legal Standard

Rule 702 of the Federal Rules of Evidence governs the admission of expert opinion testimony in federal court:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 is to be applied with a "liberal thrust favoring admission, [but] it requires that expert testimony be both relevant and reliable." *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) (cleaned up). "Expert opinion testimony is *relevant* if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is *reliable* if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006) (emphasis added) (citation modified).

The Rule 702 reliability inquiry assesses "not the correctness of the expert's conclusions but the soundness of his methodology." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995). The Supreme Court in *Daubert* set forth several factors that courts may consider in assessing reliability, such as testing, peer review and publication, error rates, and scientific consensus. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593–94 (1993). But the inquiry is "flexible," *id.*, and courts have "broad latitude" in deciding "whether *Daubert*'s

specific factors are, or are not, reasonable measures of reliability in a particular case[.]" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153 (1999). "Shaky but admissible evidence" is to be attacked by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof"—not exclusion. *Daubert*, 509 U.S. at 596.

**3.2    Gugliuzza.**

Gugliuzza is the Thomas W. Gregory Professor of Law at the University of Texas Austin School of Law. His "scholarly research focuses on patent law and patent litigation," including "efforts by both state governments and the federal government to regulate 'bad faith' assertions of patent infringement." Dkt. No. 138 (Gugliuzza Report) ¶¶ 2, 6–7. His 59-page expert report is broken up into four sections: (1) a "background of the patent system and patent enforcement"; (2) an explanation of the term "patent troll" and abusive assertions of patent infringement; (3) a survey of state statutes like the Washington Patent Troll Prevention Act, RCW 19.350 et seq.; and (4) his expert opinions as to whether "Defendants' assertions of patent infringement were consistent with bad faith." *Id.* ¶ 10.

Defendants argue that Gugliuzza will be opining on issues of law, rather than fact, and therefore should be excluded in full. The Court disagrees in part. Regarding emergent or specialized areas of law, "expert testimony may help a jury understand unfamiliar terms and concepts." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991). Gugliuzza is qualified to provide the jury with an

understanding of the complexities of patent enforcement and abusive assertions of patent infringement, which are key issues as to Valve's PTPA claim. The Court concludes that his testimony about those topics is reliable, relevant, and useful for the fact finder under Rule 702.

That said, the Court is mindful that "[i]ts use must be carefully circumscribed to assure that the expert does not usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *Id*. The Ninth Circuit has drawn a clear line in this area. In *Hangarter v. Provident Life & Accident Insurance Co.*, 373 F.3d 998 (9th Cir. 2004), the court permitted expert testimony that an insurer's conduct "deviated from industry standards" in ways that "supported a finding of bad faith," while holding that the expert could not testify that the defendants "actually acted in bad faith." *Id*. at 1016. As the Ninth Circuit has emphasized, "instructing the jury as to applicable law 'is the distinct and exclusive province' of the court." *Id*. (quoting *United States v. Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir.1993)).

Applying this framework, the Court finds that portions of Gugliuzza's proposed testimony are admissible and portions are not. Specifically, Gugliuzza *may* testify about the following:

(a) Background on the patent system and patent enforcement, including the role of the Patent and Trademark Office and the nature of patent rights;

(b) The meaning of industry-specific terms and concepts relevant to the Parties' presentations, such as "non-practicing entity," "patent enforcement," and "patent troll";

(c) Industry practices in patent enforcement, including what constitutes typical patent licensing conduct, the use of demand letters, and the structure of patent assertion entities;

(d) Whether Defendants' specific conduct deviates from standard industry practices in patent enforcement.

Gugliuzza *may not* testify about the following:

(e) Whether Defendants acted in "bad faith" or "good faith" under the PTPA, including the statements in his report that Defendants' 2023 letter "is a bad-faith assertion of infringement," Dkt. No. 138 (¶ 120), and that the record "would support a finding that Defendants' assertions of infringement were objectively baseless" *Id.* (¶ 108);

(f) The legal meaning or elements of the statutory factors under RCW 19.350.020(2), or the application of those factors to this case;

(g) His views on Federal Circuit precedent, constitutional patent policy, or law reform;

(h) Inflammatory or pejorative characterizations—such as "bottom-feeder trolls," "troll tax," or "gamblers playing with house money"—that go beyond objective description and risk unfair prejudice under Rule 403.

This latter restriction reflects the Court's independent obligation under Rule 403 to ensure that the probative value of expert testimony is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. While the patent enforcement industry context is relevant, rhetoric designed to inflame rather than inform has no place in expert testimony.

ORDER ON EVIDENTIARY MOTIONS - 6

Accordingly, Defendants' motion to exclude Gugliuzza is GRANTED IN PART, consistent with guidelines set forth above.

### 3.3 Al-Salam.

Al-Salam is a partner at Perkins Coie LLP in Seattle, Washington and has been practicing in the patent litigation field in Seattle for over thirty years. Dkt. No. 224-2. As such, he has specialized knowledge as to the rates charged by attorneys in the Seattle market, of the time necessary to allocate to particular litigation tasks, including those which Valve intends to seek recovery under should it prevail on its PTPA claim. *Id.*

Defendants argue that Al-Salam's opinions on the "reasonableness" of Valve's fees constitute impermissible legal conclusions, that his methodology is unreliable, and that his testimony lacks "fit." Dkt. No. 136 at 13–16. The Court is not persuaded.

As a threshold matter, Valve does not intend to rely on Al-Salam's testimony during its presentation to the jury as the issue of reasonable attorneys' fees is "an issue for the Court to decide." Dkt. No. 152 at 11. The Rule 702 standard is accordingly more flexible as to Al-Salam's opinions. *See F.T.C. v. BurnLounge, Inc.*, 753 F.3d 878, 888 (9th Cir. 2014) ("there is less danger that a trial court will be 'unduly impressed by the expert's testimony or opinion' in a bench trial" as opposed to a jury trial) (quoting *Shore v. Mohave Cnty., State of Ariz.*, 644 F.2d 1320, 1322–23 (9th Cir. 1981)).

On the merits, Al-Salam's opinion will aid the Court in the "inherently difficult" task of determining the appropriate market rate for attorneys' fees should such a determination become necessary. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984)). His thirty years of experience in patent litigation in the Seattle market provide a reliable foundation for his opinions on prevailing rates and the reasonableness of time spent on particular tasks. Defendants' methodological objections go to the weight of his testimony, not its admissibility. *See Daubert*, 509 U.S. at 596 ("[S]haky but admissible evidence" is properly tested through "vigorous cross-examination, [and the] presentation of contrary evidence," not exclusion).

Accordingly, Defendants' motion to exclude Al-Salam is DENIED.

### 3.4    Schenk.

Kimberly Schenk is Vice President at Charles River Associates ("CRA"), an international consulting firm dedicated to advising clients and counsel in the areas of business valuation, licensing, and litigation support services. Dkt. No. 224-1 ¶ 1 She is a Certified Public Accountant, certified in Financial Forensics by the American Institute of Certified Public Accountants, a member of the American Intellectual Property Law Association and the American Bar Association's Intellectual Property Law Section. *Id.* ¶ 8. Her expert report and testimony concern damages due to Valve should it prevail on its breach of contract and PTPA/CPA claims. *Id.* at 1.

Defendants first argue that Schenk's opinions related to Defendants' "commercial success" or "copying" are questions of law. But Schenk's opinion is limited to whether Defendants' history of settlements supports a *finding* of commercial success or copying. *See, e.g.*, Dkt. No. 224-1 ¶ 77. Her opinion does not reach "an ultimate issue of law." *Hangarter*, 373 F.3d at 1016.

Defendants next argue that Schenk's damages calculations are unreliable because she has no basis to opine on the reasonability of attorney rates and hours worked. But Schenk relies on the expert opinion of Al-Salam, an attorney with decades of experience in patent litigation, for her assumptions as to those rates and fees, *see* Dkt. No. 224-1 ¶¶ 53–54, which is permissible under Rule 703.

Defendants next argue that Schenk's testimony does not help the jury reach the issues which it must necessarily decide. But Schenk's report and testimony speak directly to damages, an issue which the jury will determine should Valve prevail on its breach of contract or CPA/PTPA claims. This same testimony includes an allocation of costs which Valve claims it incurred due to Defendants' actions, which assists—but does not replace—the jury's role as the ultimate finder of fact regarding damages.

Accordingly, Defendants' motion to exclude Schenk is DENIED.

### 3.5   Dr. Sorini.

Defendants claim that by dismissing their infringement counterclaim, "[t]he issue of validity has thus been removed from the case" and so the expert opinion of Dr. Sorini, which concerns the validity of the '221 Patent, should be excluded in its

entirety. *See* Dkt. No. 136 at 20; Dkt. No. 167 at 10. However, this argument fails because Defendants have not moved to dismiss Valve's invalidity claim and the issue remains ripe for the Court's consideration. *See Epic Games, Inc. v. Acceleration Bay LLC*, No. 4:19-CV-04133-YGR, 2020 WL 1557436, at *3 (N.D. Cal. Apr. 1, 2020) ("The Supreme Court has expressed a preference for deciding issues of patent validity independent of any infringement claim in order to prevent wasteful re-litigation and provide final resolution to accused infringers.") (citing *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 100–01 (1993)). Defendants raise no other arguments regarding Dr. Sorini's testimony.

Accordingly, Defendants' motion to exclude Dr. Sorini is DENIED.

## 4. MOTIONS IN LIMINE

### 4.1 Legal standard.

"A motion in limine is a procedural mechanism to limit in advance [of trial] testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). They're "useful tools to resolve issues which would otherwise 'clutter up' the trial." *Palmerin v. City of Riverside*, 794 F.2d 1409, 1413 (9th Cir. 1986). Motions in limine must identify the specific evidence sought to be excluded and detail the reasoning for inadmissibility. *United States v. Lewis*, 493 F. Supp. 3d 858, 861 (C.D. Cal. 2020) (citing *Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc.*, No. 08-CV-08525-PSG (PJWx), 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010)). A motion devoid of specificity or merely reminding the court to follow established rules will be denied. *See id.* Trial courts need no reminder of their

fundamental duty to enforce the federal rules during trial—that much is self-evident and requires no motion to secure.

Trial courts possess broad discretion when ruling on motions in limine. *Heller,* 551 F.3d at 1111. Denial of a motion in limine does not guarantee admission of contested evidence, but merely indicates that without trial context, the court cannot make a proper determination regarding exclusion. *See id.* And if the court grants a motion in limine, it may still revisit its earlier ruling based on the events at trial. *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) ("[*I*]*n limine* rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial.").

### 4.2    Valve's reply.

Valve seeks leave to file a reply in support of its motions in limine, for the express purpose of "correcting a number of factual and legal misrepresentations made in Defendants' opposition[.]" Dkt. No. 211. In this district, parties are instructed that they cannot file replies in support of a motion in limine. LCR 7(d)(5) ("No reply papers shall be filed."). The rules say what they mean. Accordingly, the Court DENIES Valve's motion for leave and will not consider the arguments made in the proposed reply brief, Dkt. No. 211-1.

### 4.3    Valve's motions in limine.

1.    Valve's first motion in limine seeks to preclude Defendants from "introducing evidence or making arguments related to every written discovery request and deposition question Defendants refused to answer . . . [or] failed to

respond to during fact discovery." Dkt. No. 182 at 5–10. The Court has already granted Valve similar relief based on Defendants' discovery misconduct, including an exclusionary sanction and a jury instruction telling the jury that Defendants did not comply with their discovery obligations. *See* Dkt. No. 230. The Court will not extend these sanctions further at this stage. Accordingly, the motion is DENIED.

2. Valve moves to prevent Defendants from arguing or introducing facts at trial relating to good/bad faith bases for patent infringement other than those explicitly discussed in their motions to dismiss, as referred to by Defendants' response to a contention interrogatory. Dkt. No. 182 at 10–11. Specifically, Valve moves to exclude Defendants from arguing that their "approach to resolution has at all times been appropriate and reasonable," and that "majority of the 'bad acts' alleged by Valve are specifically excluded from being considered or construed" under RCW 19.350.020(5). *Id.* But in both of Defendants' motions to dismiss, they argued an attempt was made to "negotiate and appropriate remedy in a reasonable manner," and discuss the good faith exclusions under RCW 19.350.020(5). Valve may test these arguments via cross-examination and the introduction of contrary evidence, but there is no basis for outright exclusion. The motion is DENIED.

3. Valve moves to exclude all evidence and argument that the Meyler Defendants acted in good faith by performing pre-suit and pre-assertion diligence related to the 2022 lawsuit or June 2023 letter. Dkt. No. 182 at 11–13. Valve argues the Meyler Defendants used the attorney-client privilege as both a sword and a shield by affirmatively arguing that their pre-demand efforts were reasonable, ethical, and done in good faith, only for Meyler to invoke attorney-client privilege as

ORDER ON EVIDENTIARY MOTIONS - 12

a basis for his refusal to respond certain deposition inquiries. *Id.* (citing *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992)).

On this record, the Court declines to exclude all evidence and argument related to whether Meyler Defendants' pre-demand efforts were done in good faith. The privilege dispute underlying this motion arose during Meyler's August 2025 deposition but was not brought before the Court through a motion to compel or for a protective order. As a result, the record before the Court does not address "whether the claimed noncompliance involved willfulness, fault, or bad faith." *R & R Sails, Inc. v. Ins. Co. of PA*, 673 F.3d 1240, 1247 (9th Cir. 2012). A categorical exclusion is a significant sanction, and the Court is not prepared to impose one on a record developed only through motion in limine briefing. Accordingly, the motion is DENIED.

That said, denial of this motion does not endorse the practice of invoking privilege to shield the specifics of one's diligence while simultaneously arguing that the diligence was adequate. The Court will address any sword-and-shield issues as they arise at trial. If a witness testifies on direct that pre-demand diligence was performed but then invokes privilege on cross-examination to avoid questioning about the substance of that diligence, the Court may limit the scope of the testimony, strike it, or give an appropriate instruction.

4. Valve next seeks an order prohibiting discussion of irrelevant and unduly prejudicial subjects. Dkt. No. 182 at 13–14. While the Court strains to envision a scenario in which some of the information referred to by Valve would have any bearing on claims at issue in this trial, the Court will not speculate about

the relevance of that information without the context of trial itself. Accordingly, the motion is DENIED.

5. Valve seeks to prevent Defendants from arguing or introducing evidence that Valve breached or "voided" the GSLA. Dkt. No. 182 at 14–15. Defendants admitted in their Answer that Valve "*has* a valid and enforceable covenant not to sue for the '221 patent." Dkt. No. 80 (Answers to ¶¶ 32–34). That admission is a judicial admission. Permitting Defendants to argue at trial that Valve breached or voided the GSLA would directly contradict this admission. Accordingly, the motion is GRANTED.

6. Valve seeks to allow reference to RBDS's counterclaim for infringement of the '221 Patent and the subsequent voluntary dismissal. Dkt. No. 182 at 15–17. This issue is a matter of public record and speaks to Valve's argument that Defendants' business model involves filing unreasonable patent infringement demands in bad faith. Accordingly, the motion is GRANTED.

7. Valve seeks to limit Defendants' rebuttal presentation on the issue of patent validity to (i) presumption of validity and (ii) secondary considerations of licensing. Dkt. No. 182 at 17–18. The motion is GRANTED IN PART. To the extent that Defendant Rothschild is the named inventor of the '221 Patent, he may testify about matters squarely within his personal knowledge, such as the nature of his invention and his personal involvement in the patent process. He may not, however, offer testimony that amounts to an expert opinion on patentability. Defendants did not serve an expert report addressing validity and did not depose Valve's invalidity expert. Permitting Rothschild to offer what would amount to expert opinion

testimony on patentability at trial—including analysis of prior art references or claim-by-claim comparisons—would effectively circumvent those discovery obligations. Valve may probe the accuracy and veracity of Rothschild's testimony on cross-examination.

8. Valve seeks to preclude Defendants from introducing evidence and making arguments "related solely to legal issues to be decided by the Court." Dkt. No. 182 at 18–20. Valve identifies several examples, including arguments about a "cure" provision in Section 3.5 of the GSLA, Defendants' mitigation defense, and the recoverability of attorney's fees.

The motion is DENIED as unnecessary. The division of labor between judge and jury is not a matter for the parties to establish by motion. The Court will define the applicable law and instruct the jury accordingly. The parties must confine their trial presentations to the facts and may not argue matters of law to the jury. To the extent specific disputes arise at trial about whether a particular argument constitutes an impermissible legal argument, the parties must raise the issue outside the jury's presence.

The Court notes that, to the extent Valve's motion encompasses the "cure" provision in Section 3.5 of the GSLA, the Court has already construed that provision as a matter of law. Dkt. No. 218 at 9. Similarly, the Court granted summary judgment on Defendants' failure-to-mitigate affirmative defense. Dkt. No. 218 at 14. Accordingly, neither the "cure" provision nor the mitigation defense may be argued to the jury in any form.

9. Valve finally moves to preclude Defendants from arguing that licensees "use" the subject matter claimed in patents based on licenses. Dkt. No. 182 at 20–21. The motion is DENIED. Defendants may offer testimony about the status of their patents and licensees. Whether a license reflects actual use of a patented technology or merely a litigation settlement is a factual dispute that Valve explores through cross-examination and the introduction of contrary evidence.

**4.4    Defendants' motions in limine.**

1. Defendants first seek to prohibit the introduction of pleadings and documents from other cases involving Rothschild as inadmissible. Dkt. No. 184 at 1–3. Valve has withdrawn its intention to present certain exhibits, but whether the remainder are admissible depends on the context of trial. Therefore the motion is DENIED.

2. Defendants next seek to exclude certain third-party media posts, such as articles, blog posts, website articles, Wikipedia citations, web citations, and other "reputation" evidence as inadmissible. Dkt. No. 184 at 2. The Court will not speculate about the admissibility of such information without the context of trial itself. Accordingly, the motion is DENIED.

3. Defendants next seek to exclude certain deposition designations from witnesses. The motion is DENIED on the basis that Defendants fail to identify which designations they seek to exclude, and the basis on which the specific exclusion should be taken.

4. Defendants next seek to exclude "Docket Navigator" searches. Valve has withdrawn its intention to present this evidence, so the motion is DENIED as MOOT.

5. Defendants next seek to exclude any introduction of "prior art" as irrelevant in the face of a non-existent motion to dismiss on Valve's invalidity claim. Dkt. No. 184 at 6–7. Because no such motion was filed, the motion is DENIED.

6. Defendants finally seek to exclude evidence/argument implying the Meyler Defendants violated ethics rules, committed "litigation misconduct," or similar character attacks. Dkt. No. 184 at 7. Whether or not this information is more prejudicial than probative to Valve's CPA/PTPA claims remains to be seen and is contingent on the context of trial. Accordingly, the Motion is DENIED.

## 5. ORDER TO SHOW CAUSE

Defendants' originally filed Daubert motion, Dkt. No. 136, contained fabricated case citations, nonexistent quotations, and fake quotes attributed to Valve's expert reports. Defendants' counsel has acknowledged that a contract attorney used AI in preparing the brief. Dkt. No. 158. But counsel's letter leaves important questions unanswered, and the corrected brief, Dkt. No. 167-3, apparently still contains errors, Dkt. No. 169 at 2–3. The Court has treated the corrected brief as the operative pleading for purposes of the *Daubert* analysis above, but that does not resolve whether sanctions are warranted.

The Court ORDERS Defendants' lead counsel, Joseph J. Zito, to SHOW CAUSE why sanctions should not be imposed under Rule 11. Within TWENTY-ONE (21) days, counsel must file a sworn declaration addressing:

(a) Whether any AI tools were used to process, summarize, or analyze Valve's expert reports, and if so, the identity of those tools and whether materials designated as confidential under the Protective Order were submitted to any AI platform;

(b) Whether the corrected brief at Dkt. No. 167-3 contains any remaining inaccurate citations or quotations, and if so, identification of each;

(c) A description of the supervisory procedures in place for the contract attorney referenced in counsel's letter at the time of filing; and

(d) A detailed description of the specific measures counsel has implemented to ensure that AI-generated content is not submitted to this Court in future filings.

## 6. CONCLUSION

The parties must comply with the Court's rulings at trial. If questions arise about the application or scope of the Court's rulings, they should be addressed outside the jury's presence.

Dated this 9th day of February, 2026.

Jamal N. Whitehead
United States District Judge