Honorable Jamal N. Whitehead

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| VALVE CORPORATION<br><br>    Plaintiff,<br><br>    v.<br><br>LEIGH ROTHSCHILD, ROTHSCHILD BROADCAST DISTRIBUTION SYSTEMS, LLC, DISPLAY TECHNOLOGIES, LLC, PATENT ASSET MANAGEMENT, LLC, MEYLER LEGAL, PLLC, AND SAMUEL MEYLER,<br><br>    Defendants. | Case No.  2:23-cv-01016<br><br><br>**DECLARATION OF JOSEPH ZITO IN RESPONSE TO ORDER TO SHOW CAUSE (Dkt. No. 234)** |

DEFENDANTS' REPLY IN SUPPORT OF *DAUBERT* MOTIONS
(Case No. 2:23-cv-01016)                                i

**DNL Zito**
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036,
Phone: (202) 466-3500

On February 9, 2026 in DE#234, the Court issued an Order to Show Cause, requiring Plaintiff's counsel to address the following issues in connection with a pleading, DE#136.

**5. ORDER TO SHOW CAUSE**

Defendants' originally filed Daubert motion, Dkt. No. 136, contained fabricated case citations, nonexistent quotations, and fake quotes attributed to Valve's expert reports. Defendants' counsel has acknowledged that a contract attorney used AI in preparing the brief. Dkt. No. 158. But counsel's letter leaves important questions unanswered, and the corrected brief, Dkt. No. 167-3, apparently still contains errors, Dkt. No. 169 at 2–3. The Court has treated the corrected brief as the operative pleading for purposes of the *Daubert* analysis above, but that does not resolve whether sanctions are warranted.

The Court ORDERS Defendants' lead counsel, Joseph J. Zito, to SHOW CAUSE why sanctions should not be imposed under Rule 11. Within TWENTY-ONE (21) days, counsel must file a sworn declaration addressing:

**(a)** Whether any AI tools were used to process, summarize, or analyze Valve's expert reports, and if so, the identity of those tools and whether materials designated as confidential under the Protective Order were submitted to any AI platform;

**(b)** Whether the corrected brief at Dkt. No. 167-3 contains any remaining inaccurate citations or quotations, and if so, identification of each;

**(c)** A description of the supervisory procedures in place for the contract attorney referenced in counsel's letter at the time of filing; and

**(d)** A detailed description of the specific measures counsel has implemented to ensure that AI-generated content is not submitted to this Court in future filings.

Counsel address each of these issues in turn:

**(a)     Whether any AI tools were used to process, summarize, or analyze Valve's expert reports, and if so, the identity of those tools and whether materials designated as confidential under the Protective Order were submitted to any AI platform;**

No AI tools were used in any evaluation, analysis nor summarization of any confidential materials. The firm does not have nor utilize any such tools. Undersigned personally read each report in its entirety and made his own evaluation based upon experience and knowledge, prior to the engagement of contract counsel. The misquotations are not from any AI summaries of reports,

DECLARATION IN REPLY TO SHOW CAUSE
(Case No. 2:23-cv-01016)            Page **1**

**DNL Zito**
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036,
Phone: (202) 466-3500

but appear to be examples of an associate mistaking my characterization in a draft as a quotation and/or AI attributing quotations in the brief that fit the narrative and case law of the brief, and an error in review of the brief in preparation of the red-line.

> **(b)  Whether the corrected brief at Dkt. No. 167-3 contains any remaining inaccurate citations or quotations, and if so, identification of each;**

At DE#169, Plaintiff's counsel identified a new error made by counsel in the red-line, not an AI generated error:

> For example, Defendants now aver that "[i]n *PacTool*, Judge Settle excluded expert testimony that offered legal opinions on claim interpretation and patent validity." Dkt. 167-3 at 4. That is false. The 2012 *PacTool* order that Defendants now cite (as opposed to the nonexistent 2009 order they cited previously) does not address claim interpretation. *See generally* Dkt. 167-2 at 2–8 (permitting testimony on "certain aspects of the prior art and its relevance in this case").

DE#167-3 is the red-line version of the corrected brief.  At page 4 does not contain any remaining AI generated inaccurate quotations, however a new error was inadvertently introduced by counsel during review of the original brief, inserting quotation marks where they did not belong during the red-line process.  *PacTool* holds that: *"Tarkany, however, may not testify regarding pure issues of law, such as obviousness,"* This is a correct quote, however, the words "offered legal opinions on claim interpretation and patent validity" should not have had quotation marks added in the red-line.  This misquote was not in the original AI tainted brief and was not referenced in the Reply Brief DE#167 and was not the product of AI.  The quotation marks were erroneously placed there by an attorney, as is evident from the blue color shown in the red-line DE#167-3.

Plaintiff's counsel asserts that some errors remained in the red-lined brief:

> Defendants also purport to quote that order [*PacTool*] for the statements, "interpreting the law is the Court's responsibility" (Dkt. 167-3 at 9) and "parrot counsel's arguments" (*id*. at 15). Neither quote exists. *See generally* Dkt. 167-2 at 2–8.

DECLARATION IN REPLY TO SHOW CAUSE
(Case No. 2:23-cv-01016) Page **2**

**DNL Zito**
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036,
Phone: (202) 466-3500

The correct *PacTool* cite is "Courts do not permit expert testimony that invades the province of the jury to find facts and that of the court to make ultimate legal conclusions." Two incorrect quotes, "interpreting the law is the Court's responsibility" (167-3 at 9) and "parrot counsel's arguments" (167-3 at 15) (having the same meaning) remained in from the original brief, despite careful review by counsel, that error was not caught.

Finally, Plaintiff's counsel asserts that:

> Dkt. 152 at 3, 9–10; Dkt. 167-3 at 6 (still including false quote "fits the statutory definition of bad-faith patent enforcement" and incorrectly saying Professor Gugliuzza discusses *Octane Fitness*), 13 (still including false quote "understands to be reasonable").

One other paragraph of the brief referenced by Defendant contains two short portions in quotations, that are not found in the Gugliazzi Report. That paragraph of the brief reads as follows:

> Between pages 25 and 31 of his report, Professor Gugliuzza recites the WPTPA's elements and paraphrases *Octane Fitness's* "exceptional case" standard before concluding that Defendants' conduct "fits the statutory definition of bad-faith patent enforcement." This is not technical analysis—it is legal advocacy. See *Sundance*, 550 F.3d at 1364. As the Ninth Circuit held in *Crow Tribe*, experts cannot apply law to facts. The Court must be the "exclusive expositor of the law." *Burkhart v. WMATA*, 112 F.3d 1207, 1213 (D.C. Cir 1997).

The material in quotes "exceptional case" was not a quote attributed to professor Gugliuzza, it was reference to the standard set forth in *Octane,* and the passage does not state that Professor Gugliuzza discusses *Octane* but asserts that those pages of Professor Gugliuzza's report are a parphrase of Octane and thus an improper exposition of the law prohibited under *Burkhart*. The other quote was intended to convey characterizations of Professor Gugliuzza's testimony emphasized to demonstrate the inappropriate effect of his testimony. This was erroneously placed in quotations and was not caught in the review of the brief and the quotation marks were not removed. A broad portion of his report, "between pages 25 and 31" is being summarized and characterized as a paraphrase of *Octane's* exceptional case standard and being proffered as an

DECLARATION IN REPLY TO SHOW CAUSE
(Case No. 2:23-cv-01016) Page **3**

**DNL Zito**
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036,
Phone: (202) 466-3500

improper clear legal conclusion of bad-faith. Defendants did not assert that Professor Gugliuzza cited Octane, only that his analysis followed Octane's standard. It was to illustrate that he was improperly attempting to apply the legal framework without admitting to doing that. The term "bad faith" alone and in combination with other terms such as "patent enforcement" and "assertion of patent infringement" appear 13 times on those six pages.

The paragraph included in the brief was intended as a summary of the import and impact of these six pages, (i.e. the message the trier of fact would hear) it was not intended as a citation to the expert report. The quotation marks should not have been placed there.

**(c)  A description of the supervisory procedures in place for the contract attorney referenced in counsel's letter at the time of filing; and**

The contract attorney was tasked with preparation of the *Daubert* motions. He was provided with issues of improper expert testimony identified by other counsel on the case and given instructions on what issues to address in the motion. Undersigned counsel discussed the reports and the *Daubert* issues and provided guidance on the arguments to be made. A significant portion of the arguments made in the brief was provided to the attorney prior to drafting. His first draft was reviewed and he was tasked with updating the law, to identify any new cases or cases from the State of Washington, or the Ninth Circuit.

It is undersigned counsel's understanding, from discussions after the brief was identified as containing errors, with the attorney that prepared the case law, that the organizing and updating of citations, using AI, resulted in the scrambling of some citations (*e.g.*, language from a case incorrectly attributed to a different case) and in some instances inadvertently characterizing summaries of cases as actual quotes from the case. However, none of the propositions of law in Defendants' Motion changed due to the AI citation errors.

DECLARATION IN REPLY TO SHOW CAUSE
(Case No. 2:23-cv-01016)    Page **4**

**DNL Zito**
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036,
Phone: (202) 466-3500

Because the cases cited in the brief did not present any new, unusual or incorrect propositions of law, undersigned counsel did not suspect that any AI had been used. Undersigned counsel has seen previous briefs prepared with AI and the law and propositions are often contrary to know case law and/or absurd. As demonstrated in the red-line brief DE#167-3, the propositions of law were correct, only the citations to cases and the exact quotes, in some instances, were inaccurate. Counsel had no reason to suspect AI, especially in view of the widespread knowledge that AI should not be used in briefs, and the lack of any anomalies; however, in retrospect should have asked as a matter of procedure.

**(d)     (d) A detailed description of the specific measures counsel has implemented to ensure that AI-generated content is not submitted to this Court in future filings.**

In addition to immediately terminating the only attorney at the firm that has ever used AI to prepare any materials, briefs or otherwise, counsel has reaffirmed as a group and with each and every attorney at the firm, that no use of AI in any manner is acceptable at the firm in the preparation of any attorney work product. The policy is discussed often and enforced through review and inquiry. In addition, this response to show cause has been circulated through the entire firm. A formal written policy reiterating the prohibition on the use of AI in preparing or analyzing case materials has been added to the firm's Policies and Procedures folder, accessible on the firm document server to all firm employees.

Undersigned counsel immediately filed an open letter of apology to the Court and accepted full responsibility for the unknown use of AI. Counsel has suffered financially and also reputationally due to this error and believes that no additional sanctions should be applied, but leaves to the Court's discretion to determine if any additional sanctions are warranted.

Undersigned counsel is well aware of the problems that AI presents in the practice of law and has never and would never use any AI in the preparation of any materials.

DECLARATION IN REPLY TO SHOW CAUSE
(Case No. 2:23-cv-01016)                           Page **5**

**DNL Zito**
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036,
Phone: (202) 466-3500

I declare under penalty of perjury that the foregoing is true to best of my knowledge.

Dated: February 26, 2026

Respectfully submitted,

By: /s/ Joseph J. Zito
Joseph J. Zito
DNL ZITO
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
Tel: (202) 466-3500
Email: jzito@dnlzito.com

*Attorneys for Defendants Leigh Rothschild, Rothschild Broadcast Distribution Systems, LLC, Display Technologies, LLC, Patent Asset Management, LLC, Meyler Legal, PLLC, and Samuel Meyler*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2026, I filed the present **DECLARATION OF JOSEPH ZITO IN RESPONSE TO ORDER TO SHOW CAUSE (Dkt. No. 234)** through the ECF system and that notice will be sent electronically to all counsel who are registered participants identified on the Mailing Information for C.A. No. 2:23-cv-1016.

/s/ Joseph J. Zito

DECLARATION IN REPLY TO SHOW CAUSE
(Case No. 2:23-cv-01016)   Page **6**

**DNL Zito**
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036,
Phone: (202) 466-3500